Michael Louis Kelly (SBN 82063)
mlk@kirtlandpackard.com
Behram V. Parekh (SBN 180361)
bvp@kirtlandpackard.com
KIRTLAND & PACKARD LLP
2361 Rosecrans Avenue, Fourth Floor
El Segundo, California 90245
Telephone: 310.536.1000

Ben Barnow (*pro hac vice*)
b.barnow@barnowlaw.com
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois 60602
Telephone: 312.621.2000

Joe R. Whatley Jr. (*pro hac vice*)
jwhatley@wdklaw.com
WHATLEY DRAKE & KALLAS LLC
1540 Broadway, 37th Floor
New York, New York 10036
Telephone: 212.447.7070

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| In Re:<br>TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 08:10ML2151 JVS (FMOx)<br><br>The Honorable James V. Selna<br><br>**SEPARATE STATEMENT IN RESPONSE TO THE COURT'S ORDER NO. 1 BY BEN BARNOW, MICHAEL LOUIS KELLY AND JOE R. WHATLEY, JR.**<br><br>Hearing Date: May 13, 2010<br>Hearing Time: 9:00am |

Ben Barnow, Michael Louis Kelly, and Joe R. Whatley, Jr., each being counsel in cases pending in this MDL,[1] respectfully submit their Separate Statement in Response to the Court's Order No. 1.[2]

## I. INTRODUCTION

The Court suggested, in its Orders dated April 14, 2010, and April 19, 2010, that a liaison counsel structure be established for the Personal Injury/Wrongful Death Cases, and that a lead counsel/committee structure be established for the Economic Loss Cases. Implicit in the Court's suggestion is the recognition that plaintiffs alleging personal injury or wrongful death claims have separate and sometimes disparate interests from those solely alleging claims for economic loss.

Plaintiffs' counsel herein respectfully suggest that in addition to such separation, cases representing *consumers* with economic loss only claims should be provided separate leadership representation from those cases representing *non-consumers*, such as dealerships, rental agencies/fleets, third-party payors, and governmental entities. As discussed below, there are significant potential conflicts of interest between consumer and non-consumer cases, and representation by separate lead counsel would ensure that each group is properly represented and help alleviate even the appearance of conflict.

Further, given the number of cases filed, and the breadth and complexity of the underlying issues, counsel respectfully suggest that in addition to the Lead-Counsel

---

[1] Ben Barnow is counsel for plaintiff in *Lane v. Toyota Motor Sales, U.S.A., Inc.*, Case No. 2:09-cv-09158 (C.D. Cal). Michael Louis Kelly is counsel for plaintiffs in the following C.D. Cal. cases: *Kmetz v. Toyota Motor Sales, U.S.A., Inc.*, Case No. 2:09-cv-08478; *Hauter et al. v. Toyota Motor Sales U.S.A. Inc.*, Case No. 8:10-cv-00105; and *Tang v. Toyota Motor Sales, U.S.A., Inc.*, Case No. 2:10-cv-01939. Joe R. Whatley, Jr. is counsel for plaintiffs in *Heilbrunn v. Toyota Motor Corp.*, Case No. 9:10-CV-80208-WJZ (S.D. Fla.); *Laudicina v. Toyota Motor Corp.*, Case No. 2:10-CV-01030 (C.D. Cal.) and several other MDL cases.

[2] Counsel herein conveyed the concerns expressed in this Statement, and the suggested solutions to those concerns, to Interim Designated Counsel. The existence of such concerns, however, was not reflected in the draft Reports circulated on April 26, 2010 and April 29, 2010, hence, necessitating this filing. *See*, Draft Reports, Exhibits A – C to the Declaration of Michael Louis Kelly in Support ("Kelly Decl."), filed concurrently herewith.

Committee structure suggested in the Joint Preliminary Report ("Report"), a broader Executive Committee, consisting of the lead economic loss counsel and eight additional counsel, be formed to manage and coordinate the various complex aspects of the economic loss side of the litigation. While the Report also recognizes this goal, as discussed below, the detailed sub-committee structure proposed in the Report is both unwieldy and unnecessary at this time.

Finally, counsel herein would also respectfully urge that, in order to avoid any appearance of potential conflict, and to also avoid any potential arguments from defendants or objectors at a later point in the litigation that the appointed Lead Counsel Committee(s) are conflicted or inadequate, that regardless of the final structure the Court orders, the Court should appoint Lead Counsel who solely represent plaintiffs with cases of the specific type represented by that leadership, and who do not simultaneously represent plaintiffs with other types of claims (e.g. Lead Counsel Committee members representing Consumer Economic Loss claims should not also be counsel of record in cases with Personal Injury/Wrongful Death or Non-Consumer Economic Loss claims).

## II.  ARGUMENT

### A.  Concerns with the Structure Proposed by the Report

#### 1.  *There is No Recognition of Potential Conflicts of Interest between Consumer and Non-Consumer Economic Loss Cases*

Just as counsel representing personal injury plaintiffs have potential conflicts of interest with economic loss only plaintiffs, counsel representing non-consumer economic loss plaintiffs have significant potential conflicts of interest with consumer economic loss plaintiffs. The structure proposed by the Report does not recognize, or even discuss, these potential conflicts, and thus, provides no mechanism for separate Lead Counsel Committee representation.

Some examples of the potential conflicts between non-consumer plaintiffs and others include the fact that some of the consumer and personal injury cases name

dealerships, rental car agencies, and third-party payors as defendants in their cases; that dealerships and other large-fleet entities were privy to non-public information, such as service bulletins from Toyota, incident reports, customer complaints of sudden acceleration, and warranty claims; and that dealerships, large-fleet entities, and third-party payors may have conveyed material non-public information to Toyota, such as reports of sudden acceleration incidents and customer complaints.

Other examples include: that many of these entities have on-going business relationships with Toyota, which may create incentives to pursue this litigation in a manner contrary to the best interests of consumers; that some of these entities may have arbitration provisions that limit their ability to participate in class actions; that damages to these entities may vary; and that these entities may be subject to specialty defenses such as mitigation, reliance, privity, knowledge, etc… *See*, *e.g.*, *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 230 F.R.D. 61, 80 (D. Mass. 2005) (finding lack of adequacy and typicality of third party payors to represent individual claimants due to specialized defenses and potential conflict with respect to allocation of any settlement).

Further, third-party payors, in particular, may have conflicts with their own client consumers related to what portion, if any, of the amounts recovered by third-party payors should go to their consumer clients. *Id*. Finally, governmental entities, in particular, may have conflicts related to civil fines assessed and payable to governmental entity versus damages/restitution to consumers; conflicts related to entanglements with Toyota, such as to the tax base/revenues earned from Toyota facilities located in such cities, counties or states; former governmental employees now working for Toyota which may be witnesses in the litigation; and issues related to sovereign interests and privileges.

Given the above examples, it appears clear that there is certainly the appearance and potential of conflict between parties in consumer and non-consumer economic loss cases, and thus, such conflicts will render counsel representing such

entities incapable of adequately representing consumers.  The structure suggested below, wherein consumer and non-consumer economic loss cases are represented by separate lead counsel committees, alleviates any such potential conflict.

### 2. *There is No Recognition of Potential Conflicts of Interest if Counsel in Lead Positions Represent More Than One Type of Plaintiff*

It is unclear at this stage just what assets Toyota brings to this litigation.  There has been no discovery related to liquid assets, insurance policies that may cover these claims, and the ability or willingness of Toyota to pay damages in the billions if not tens of billions of dollars while remaining a liquid entity.  Just recently, for example, Moody's downgraded Toyota's credit rating, and S&P has Toyota's credit rating on a negative watch. Further, Toyota forecasts an operating loss of $1.65 billion for the fiscal year ending March, 2010.

While no one would presently argue that Toyota has insufficient assets to pay settlements or judgments in these actions on a liquidation basis, as a practical matter, both counsel and the Court are well aware from experience that there will always be a limited pool of money that a defendant will be willing to part with to settle claims short of a jury verdict and appeal.  As a practical matter, any analysis of conflict should be performed under the assumption that a limited pool of assets are available for this litigation, and that counsel representing distinct plaintiffs groups will be competing for the same pool of assets.  Thus, any conflict which renders the interests, burdens, and defenses available to a particular group of plaintiffs distinct from those of others should be separated for purposes of representation by counsel in a leadership position.

This Court has already recognized in its Orders that plaintiffs with personal injury claims should have separate leadership from plaintiffs with economic loss claims.  As discussed above, counsel herein also believe that consumer plaintiffs and non-consumer plaintiffs should have separate leadership representation.  The Report does not address, however, the role of counsel whose firms represent multiple

plaintiffs in multiple cases with differing claims. Counsel herein would suggest that counsel with such potentially divided loyalties are subject to at least the appearance of conflict if they are assigned to a Lead Counsel Committee role, and are certainly subject to the argument from both defendants and objectors that they may be conflicted or inadequate.[3] *See, e.g., Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) (Conflict existed where class counsel represented same named plaintiffs in class action and separate related individual actions. The court held that "the 'appearance' of divided loyalties refers to differing and potentially conflicting interests and is not limited to instances manifesting such conflict."); *Sullivan v. Chase Investment Services of Boston, Inc.,* 79 F.R.D. 246, 258 (N.D. Cal. 1978) (Class counsel are inadequate where they also represent individuals in a parallel case. "The possibility that assets and insurance of the defendants who may have committed fraud against the plaintiffs will be insufficient to satisfy an alleged liability to the class of over $20 million is great enough to influence litigation strategy.")

Further, although the specific analysis was under Maine's professional responsibility law, the analysis by Judge Hornsby in the *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, MDL 1361, 2001 WL 243494 (D. Maine, March 12, 2001) is also instructive. *See*, Kelly Decl. Ex. D. In that situation, Milberg Weiss had previously represented certain retailers of compact discs in a separate price-fixing litigation. Judge Hornsby found that Milberg Weiss was subject to, at the very least, the appearance of conflict when it tried to represent consumers in a subsequent, similar price-fixing litigation, even though the specific retailers were not named as defendants in the new litigation, and representations were made that they would not be named as defendants. Judge Hornsby found that measures Milberg Weiss may take to protect its former clients "unfortunately . . . carry the distinct

---

[3] That such an argument may come from an objector is not simply speculation. At the recent meeting of Toyota plaintiffs' counsel held in Las Vegas, Nevada, a well known "serial" objectors' counsel was found in the meeting room and had to be asked to leave.

potential of reducing Milberg Weiss's effectiveness in representing the putative consumer plaintiff class vigorously here." *Id*. For example, "the prior representation has created an incentive for Milberg Weiss not to name those retailers as defendants or to seek any information from them that may be helpful in prosecuting the consumer case." *Id*.

Similarly, in the instant case, representation of personal injury or non-consumer clients by counsel in this litigation carries with it the distinct possibility of reducing their effectiveness in representing the putative consumer plaintiff class vigorously, and vice-versa. For example, counsel with a specific fact-pattern personal injury case may be conflicted, or at least reduced in effectiveness, if the consumer litigation chooses to focus on a theory which would exclude such fact-pattern. Similarly counsel with a non-consumer entity may be conflicted or reduced in effectiveness if there is a question as to whether that entity should be named as a defendant, or have discovery directed against it.

Where, as here, there are more than enough capable non-conflicted counsel seeking leadership positions, counsel herein respectfully suggest that the Court has no reason to appoint counsel to Lead Counsel Committee positions where they would be subject to even the appearance of conflict, and possibly subject to arguments as to adequacy or disqualification at a later stage of the litigation.

### 3. *A Detailed Sub-Committee Structure is Unnecessary at This Time*

The Report recommends a slew of specialized committees to potentially assist the Core Discovery Committee and Lead Counsel Committees. It is unclear from the Report how such committee members are to be named, as the Report both states that such committee members should not be named at this time and that the formation of such committees should require Court approval, but then goes on to state that counsel

can and should apply for such committees at this time.[4] Counsel herein believe that creating, appointing or formalizing such a detailed sub-committee structure at this time is unwarranted, potentially wasteful, and could lead to significant inefficiencies and turf wars.

While counsel herein fully support, and, in fact, initially articulated the goal advocated in the Report of an inclusive approach which would allow the many excellent and experienced counsel in this litigation to lend their strengths to the overall betterment of the result, counsel herein would respectfully suggest that the same goal would be better achieved by the appointment of a general, broader Executive Committee. Such an Executive Committee, and selection of additional counsel on an *ad hoc* basis by the Executive Committee to address specific issues as needs arise, without requiring Court intervention, as discussed below, would better suit the needs of the litigation at this point than the formalized and appointed specialized committees suggested in the Report.

### B. Separated Lead Counsel Committees and an Executive Committee Structure, As Proposed Below, Alleviates These Concerns

#### 1. *Personal Injury/Wrongful Death Leadership Structure*

Counsel herein do not have any personal injury or wrongful death cases and therefore take no position as the structure of the personal injury/wrongful death leadership structure other than to suggest that, as discussed above, counsel with personal injury/wrongful death cases should not be appointed to Economic Loss side Lead Counsel Committee positions. Similarly, counsel with Economic Loss side cases should not be appointed to lead positions on the personal injury/wrongful death side.

---

[4] *See*, April 29, 2009 Draft Report at p. 3-4, Kelly Decl. Ex. C (Lead Counsel Committees "may, upon post-appointment consultation and subject to Court approval, form specialized subcommittees") versus at p. 6 ("Plaintiffs' counsel may choose to apply to chair or serve on such committees at this time and the Court may determine whether such counsel are generally qualified to so serve, and recommendations for service on those committees may also be made at this time.")

### 2. *Economic Loss Lead Counsel Committees*

Counsel generally agree with (and, in fact, initially suggested) the recommendation in the Report that an eight or nine person Lead Counsel Committee be appointed on the economic-loss side of the litigation, however, counsel herein would recommend that such Committee be divided into a **six-person Consumer Loss Lead Counsel Committee** and a **two-person Non-Consumer Loss Lead Counsel Committee**, in order to remove the potential conflict concerns discussed above.[5]  Further, counsel herein suggest that the Lead Counsel Committees be allowed to self-select their chair or chairs, and self-select specific leadership roles, rather than have the Court appoint a first-among-equals trio of Lead Counsel in addition to the Lead Counsel Committees.  Such self-selection will allow the Committees more flexibility in assigning leadership roles suited to individual counsel's strengths, such as communications with the Court, communications with other counsel, motion practice, discovery, and negotiation.  Counsel at this level of professionalism should be able to work cooperatively together to effectively self-select such leadership roles.

### 3. *Core Discovery Committee*

Counsel herein agree with the composition of the Core Discovery Committee as suggested in the Report, with the caveat that chairing of such committee should, again, be self-selected by the committee, and that representatives of both the consumer and non-consumer economic loss lead counsel committees be present.

### 4. *The Proposed Economic Loss Executive Committee*

Executive committees are frequently used in MDL proceedings where multiple filings frequently occur.  Counsel herein would suggest that the Court appoint a Plaintiffs' Economic Loss Executive Committee, consisting of the eight members of

---

[5] The April 26, 2010 Draft Report proposed an eight-person lead counsel committee.  The revised April 29, 2010 Draft Report expanded that committee to nine-persons.  *See*, Kelly Decl. Ex. B & C.

the two Lead Counsel Committees and eight additional counsel. This Executive Committee can then form specialized groups of counsel, including additional counsel, on an as-needed basis, to focus on one or more of the specialized topics identified in the Report, or other topics not currently considered. It is suggested that appointments to the Executive Committee be proposed by the Lead Counsel Committees appointed by the Court within the seven days of their appointment, and that Court approve such recommendations, or, should the Court so choose, through appointment by the Court directly from the applications received for committee appointments.

### C. Other Counsel Support This Proposed Structure

This proposed structure, consisting of two separate Lead Counsel Committees for the Consumer and Non-Consumer cases and a broader Executive Committee, is not only supported by counsel herein, but also by well over forty other counsel. *See*, Kelly Decl. ¶¶ 6-9, and Ex. E thereto.

Additionally, on April 28, 2010, an organizational meeting open to all plaintiffs' counsel was held in Chicago, Illinois, to discuss structure and leadership in this case. The meeting was attended, in person, by 39 counsel from around the nation, and an additional 30 counsel attended by conference call for a total of 69 plaintiff counsel[6]. During that meeting a general consensus was reached on the following points:

> i. That there should be a separation of Economic Loss Lead counsel into two lead counsel committees: a **Consumer Economic Loss Lead Counsel Committee** *consisting of 6 members*[7]; and a **Non-Consumer Economic Loss Lead Counsel Committee** *consisting of 2 members*.

---

[6] To Movants' best knowledge, no other similar organizational meeting has been held. Three of the counsel in attendance were representatives from the interim designee counsel, who indicated to counsel present that they were there to observe and listen but not to express any views on any issues, and were not part of the deliberations.

[7] A few in attendance were in favor of making the Consumer Economic Loss Lead Counsel Committee 5 members, and a few were in favor of 7 members, but the large majority agreed on 6 members.

    ii.  That an **Executive Committee** be formed to assist Economic Loss Lead Counsel which would consist of the eight members of the Consumer Economic Loss Committee and the Non-Consumer Economic Loss Committee, and eight additional members.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, counsel herein respectfully request that the Court appoint the structure suggested herein and that the Court further ensure that counsel appointed to Liaison/Lead Counsel Committee positions for each of the Personal Injury/Wrongful Death; Consumer Economic Loss and Non-Consumer Economic Loss claims are free of even the appearance of conflict by appointing the many experienced and capable counsel who have applied for such positions who do not represent multiple types of clients which might result in divided loyalties.

DATED: April 30, 2010   RESPECTFULLY SUBMITTED,

          KIRTLAND & PACKARD LLP

          By:  */s/ Michael Louis Kelly*
             Michael Louis Kelly
             Behram V. Parekh
             2361 Rosecrans Avenue, Fourth Floor
             El Segundo, California 90245
             Telephone: 310.536.1000

          BARNOW AND ASSOCIATES, P.C.

          By:  */s/ Ben Barnow*
             Ben Barnow (*pro hac vice*)
             One North LaSalle Street, Suite 4600
             Chicago, Illinois 60602
             Telephone: (312) 621-2000

          WHATLEY DRAKE & KALLAS LLC

          By:  */s/ Joe R. Whatley, Jr.*
             Joe R. Whatley Jr. (*pro hac vice*)
             1540 Broadway, 37th Floor

|   |   |
|---|---|
| 1 | New York, New York 10036 |
| 2 | Telephone: 212.447.7070 |
| 3 | *Counsel for Plaintiffs* |