GERAGOS & GERAGOS
A PROFESSIONAL CORPORATION
LAWYERS
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 625-1600

MARK J. GERAGOS      SBN 108325
SHELLEY KAUFMAN   SBN 100696
TAMAR ARMINAK       SBN 238677

Attorneys for Plaintiffs Ani Gazaryan, Svetlana Abajyan,
Elza Dzhvalegyan, Tamara Harutyunyan, Nerses Mazrnanyan,
Karine Maznanyan, Hrayr Okkasian, Christine Aznavour,
Akop Galadzhyan, Nellie Yaritchyan, Aza Srourian,
Bertain Srourian, Walter McKinney, Frankie McKinney,
Robyn Horn, Thomas Davis, and Troy Menssen

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation | Case No: 8 10 ML2151 JVS (FMOx) |
| | APPLICATION OF MARK J. GERAGOS FOR APPOINTMENT PURSUANT TO ORDER NO. 1: INITIAL CONFERENCE |
| This Document Relates to:  ALL CASES | Date:     May 13, 2010 |
| | Time:     9:00 a.m. |
| | Place:   Courtroom No. 10C |

## INTRODUCTION

Pursuant to the Court's April 14, 2010 Order No. 1: Initial Conference and the Court's April 19, 2010 Order Re Clarifying the Scope of Applications, Mark J. Geragos of the law firm Geragos & Geragos hereby respectfully applies for appointment in a leadership position as deemed appropriate by the Court, or alternatively, for appointment as a member of the core discovery committee or a

1    specialized committee, as described in the structure outlined by the Court's interim

2    designees.

3

4    DATED: April 30, 2010                    GERAGOS & GERAGOS, APC

5

6                                    By: _____/s/_____

7                                         MARK J. GERAGOS
                                          Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# APPLICATION OF MARK J. GERAGOS

At the outset I would like to say that the legal talent of the lawyers applying for leadership in this matter is truly the most impressive assembly I have ever seen. It humbles me to read my colleagues' pedigrees and to submit my own application alongside theirs.

I have had the good fortune to represent some of the most prominent figures in the world and am considered by some to be one of the leading trial attorneys in the United States today.  I have been lead counsel in over three hundred (300) jury trials ranging from the successful defense of murder cases to civil victories in class action and complex trade secret matters.  But it is more than my legal experience which makes me an enormous asset to the plaintiffs in this litigation.  As explained below, the depth and breadth of my practice, which includes criminal defense, complex federal and state civil litigation, and media expertise provides a unique and necessary component to the successful prosecution of the plaintiffs' claims in this matter.

In reviewing the submitted applications for appointment by some of the most talented and experienced lawyers in multidistrict litigation ("MDL"), I would submit that there are additional components unique to this particular MDL, including the media component, both on a national and international level, and the criminal component, not just in the event that a RICO claim is pursued against Toyota but given that there are presently multiple criminal investigations in connection with the subject matter of this litigation.  My firm possesses the unique set of skills including a criminal and media background in addition to complex civil litigation experience to best serve the plaintiffs in this particular MDL.

As this Court knows, this MDL, which may well be the largest consumer-fraud case of all time, has attracted and will continue to attract an enormous amount of publicity.  Therefore, in addition to the extensive legal work which will be required in this case, plaintiffs will also need to be well equipped to manage and

1   respond to the media frenzy surrounding this case and to Toyota's aggressive

2   public relations, crisis management, and publicity campaigns.

3         Aside from my general experience in regularly dealing with high-profile

4   cases attracting both national and international media attention, I also have specific

5   experience in dealing with the Japanese media.  Less than two years ago, I

6   represented Kazuyoshi Miura in the *People of the State of California v. Miura* in a

7   case which was an absolute Japanese media obsession, and often referred to as the

8   Japanese equivalent of the O.J. Simpson case.[1]  While the leadership in this MDL

9   is and will undoubtedly be comprised of a highly qualified and experienced team

10  of civil practitioners,  I believe that my comprehensive background in criminal law,

11  and particularly, high-profile criminal cases, in addition to my experience in

12  complex civil litigation, make me invaluable to plaintiffs in this case and warrant

13  my inclusion in the leadership group.

14        I support the proposed lead counsel positions set forth in the interim

15  designees' Preliminary Joint Report and their applications for permanent

16  appointment.  Specifically, I support the appointment of Steve W. Berman, Marc

17  M. Seltzer, and Wiley Aitken as Co-Lead Counsel to chair a Lead Counsel

18  Committee for the economic loss cases.  I also support the appointment of

19  Elizabeth J. Cabraser and Mark P. Robinson Jr. as Co-Lead Liaison Counsel to

20  chair a Liaison Counsel Committee for the personal injury and wrongful death

21  cases.

22        I respectfully request that I be appointed to a leadership position as deemed

23  appropriate by the Court.  In the alternative, I request that I be appointed to a core

24  _____

25        [1] *See, e.g.*, *Kazuyoshi Miura Case: Major Players and Case Timeline*, Trials and
    Tribulations (Mar. 27, 2008) *available at* http://sprocket-trials.blogspot.com/ 2008/03/

26  kazuyoshi-miura-case-major-players-case.html (describing Miura case as "way

27  bigger" in Japan than the O.J. Simpson case was here).

28

discovery committee or specialized committee for discovery, foreign discovery, or class certification, within the proposed leadership structure outlined by the Court's interim designees.  As described below, I have the requisite criteria identified by the Court for appointment to any of these positions in this MDL.

### 1.   Knowledge and Experience in Prosecuting Complex Litigation
#### a.   Federal court background

Jumping straight into private practice with my father, Paul J. Geragos, I was sent to handle a matter in the United States District Court for the Central District of California on the very first day I began practicing law.  Federal court is thus not foreign to me, or to my firm.  I have tried to verdict eight federal cases[2] before then Judge and now Justice of the Ninth Circuit, Paez, Judges Takasugi and Baird in the Central District of California, Judge Burns in the Southern District of California, and Judge Kauffman in the Eastern District of Pennsylvania.  Within the last year my firm has also tried civil cases before Judges Snyder and Stotler in the Central District of California.

 One of the most renowned federal cases that I tried and which drew national media attention, was the representation and successful acquittal of Whitewater figure and former business partner of President Clinton, Susan McDougal, on charges of contempt and obstruction of justice.  *United States v. McDougal*, USDC, Eastern District, Arkansas, LR-CR-98-82.  This case came on the heels of a fifteen-count acquittal I obtained for Ms. McDougal in *People of the State of California v. McDougal*, which was tried in Los Angeles Superior Court before Judge Les Light.

More recently, I, along with John R. Climaco, challenged the Ohio Elections

---

[2]  In state court, I have tried more than hundreds of cases to verdict, including complex white collar cases.

1    Commission for attempting to curtail congressional candidate David Krikorian's

2    speech about the incumbent Congresswoman in the election for United States

3    Representative from the Second Congressional District of the State of Ohio.

4    *Krikorian v. Ohio Elections Commission*, USDC, Southern District, Ohio, Case

5    Number 1:10 CV 00103, Chief Judge Susan J. Dlott.  I successfully represented

6    Judge Pat Gray in a similar First Amendment case in *Gray v. Hanlon*, USDC Case

7    Number 01-1829- ABC (Cwx).

8                   **b.     Complex litigation/class action background**

9            As an active and committed member of the Armenian community, starting in

10   2001, I commenced my class action career fighting on behalf of Armenian families

11   and organizations to assert what many thought to be long lost claims arising out of

12   the Armenian Genocide.  Along with committed and experienced co-counsel, I

13   prosecuted the following four class action lawsuits, and I continue to prepare

14   others, for payment on insurance policies and recovery of bank deposits and land

15   confiscated from Armenians prior to World War I:

16           *Marootian, et al. v. New York Life Insurance*,

17                   USDC Case No. CV 99-12073   CAS (Mcx);

18           *Kyurkjian, et al. v. Axa, S.A., a French Corporation*,

19                   USDC Case No. CV 02-01750 CAS (Mcx);

20           *Movsesian, et al. v. Victoria Versicherung, A.G., a German Corporation*,

21                   USDC Case No. CV 03-9407 CAS (Mcx);

22           *Deirmenjian, et al. v. Deutsche Bank, A.G.*,

23                   USDC Case No. CV 06-00774 MMM (RCx).

24           These cases presented plaintiffs with a multitude of legal challenges of both

25   a procedural and substantive nature, including jurisdictional issues related to some

26   of the international companies, preclusion under the foreign affairs doctrine, and

27   affirmative challenges based on the statute of limitations.  The cases were met by

28   many, and in particular the national and international defendant corporations, with

1   skepticism of how claims ninety years old could succeed.  Through tireless efforts
2   and extraordinary legal work, the initial two cases resulted in highly successful
3   settlements totaling nearly 40 million dollars for Genocide family survivors and
4   charitable organizations throughout the world.  The settlement of these cases were
5   groundbreaking in that they represent the oldest resolved cases in U.S. history and
6   are the first recorded cases addressing issues involving the Armenian Genocide.
7   The last two cases listed above are still pending.

8         My class action background has come to include cases involving various
9   types of corporate misconduct.

10        My firm represented spouses in wrongful death cases and seriously injured
11  plaintiffs in the recently settled cases of *In Re Vioxx: Products Liability Litigation*,
12  MDL No. 1657 and *In Re Bextra and Celebrex Marketing Sales Practices and*
13  *Product Liability Litigation*, M:05-CV-01699-CRB, MDL No. 1699.

14        My firm currently serves as co-lead counsel on behalf of the class against
15  AT&T, as well as several individual plaintiffs, in the well-known *In Re Pellicano*
16  case, Los Angeles Superior Court Case Number BC 316318.  The related cases
17  involve multiple lawsuits against former private investigator Anthony Pellicano,
18  prominent attorneys, entertainment figures, former law enforcement officers, and
19  AT&T employees for having engaged in illegal wiretapping of private
20  conversations, primarily of individuals involved in pending family law litigation.

21        My firm has also recently undertaken the representation of victims of
22  attorney Joel Bander's fraud in mortgage litigation in the pending class action,
23  *Hakobyan v. Bander Law Firm*, Los Angeles Superior Court Case Number
24  BC429310, before Judge William F. Highberger.

25              **c.    Corporate misconduct background**

26        My firm has pursued numerous large corporate entities in a variety of cases
27  claiming malfeasance, including cases against Ford Motor Company,
28  Bridgestone/Firestone, Medtronics, Inc., Pfizer, Inc., CIGNA Healthcare, Inc.,

1    Bank of America, N.A., NASCAR, Inc., Amtrak, Burlington Northern Sante Fe

2    Corporation, Aladdin Hotel & Casino of Las Vegas, and Bernini Clothing, Inc.

3         In 2008, I represented a non-profit organization against pharmaceutical giant

4    Pfizer, Inc. for trade secret misappropriation and related claims. The jury's verdict

5    of over $58 million dollars was named one of the top ten jury verdicts in California

6    by The Daily Journal and one of the top 100 jury verdicts in the United States by

7    The National Law Journal. *Ischemia Research and Education Foundation v.*

8    *Pfizer, Inc.*, Superior Court of Santa Clara, Case Number 1-04-CV 026653.

9         Cases involving automotive malfunction have also been a part of my firm's

10   practice for years. In 2008, I successfully settled a multi-injury and wrongful death

11   Ford rollover case in *Eng v. Ford Motor Company*, Superior Court of Washington,

12   Case Number 06-2-07541-1 (confidential settlement). My firm also pursued

13   Bridgestone/Firestone North America Tire in a products liability action arising out

14   of the tire blowout problem experienced by many drivers, including our seriously

15   injured plaintiff. *Samsonyan v. Bridgestone*, Los Angeles Superior Court Case

16   Number BC 318516.

17              **d.    Extensive experience with foreign discovery**

18        The national and international aspects of my firm's practice have caused our

19   attorneys, including myself, to conduct discovery, investigation, and depositions

20   throughout the United States and the world, including Armenia, France, Germany,

21   Mexico, Moldova, Romania, and the United Kingdom. For example, in the

22   Armenian Genocide class actions discussed above, my team devoted countless

23   hours reviewing thousands of pages of discovery at defendant banks' offices in

24   Germany, which documents were in large part in German or French and dated back

25   almost a hundred years.

26        My extensive experience with discovery has also included a federal case

27   involving bribery of a public official which I singlehandedly tried against four

28   Assistant United States Attorneys in the matter of the *United States of America v.*

1  *Wilkes*, in which case the Government provided to us, and my team reviewed, over

2  290,000 pages of Bates-stamped discovery in the weeks leading up to trial.

3         **e.**      **Personal background**

4        While born and raised in Southern California, I ventured to the east coast to

5  obtain by Bachelor's degree from Haverford College in Philadelphia.  I returned

6  home to California where I graduated from Loyola Law School in 1982 and was

7  admitted in June of 1983.  I immediately began private practice with my father and

8  am now the principal of Geragos & Geragos, APC.  I am admitted to practice in all

9  the district courts of California, and in the United States District Courts for

10  Arizona, Arkansas, the Northern District of Texas, and the Northern District of

11  Ohio.  I am also admitted to the United States Court of Appeals for the Fourth,

12  Ninth and Eleventh Circuits.

13        I was awarded the prestigious California Lawyer of the Year award in Civil

14  Litigation in 2006 for my work involving the Armenian class action lawsuits

15  mentioned above.  Previously, I have been named "Trial Lawyer of The Year" by

16  the Los Angeles Criminal Courts Bar Association, making me one of only two

17  lawyers ever named Lawyer of the Year in both the criminal and civil arenas.

18  California Law Business Magazine has named me as "one of the 100 Most

19  Influential Attorneys in California" three years in a row and I have repeatedly been

20  voted by my peers every year as one of Los Angeles' SuperLawyers.  I am listed in

21  Martindale Hubbell's registry of AV Preeminent Lawyers in the United States.

22

23       **2.**     **Willingness and Ability to Commit to Time-Consuming Process**

24        My extraordinary commitment to the legal community has been proven over

25  and over again by my passion, hard work, dedication, and resulting success over

26  the course of my 27 year legal career.  On a regular basis, I am a guest speaker at

27  seminars, symposiums, bar association meetings, and law schools throughout the

28  country and have published numerous articles and other publications on a variety

of legal topics.

The other lawyers at my firm are equally dedicated to the practice of law, and they are more than willing and able to commit to this case. One of the firm's senior lawyers, Shelley Kaufman, has been practicing civil law since 1981 and has successfully tried numerous federal and superior court cases, repeatedly obtaining verdicts in excess of a million dollars for individual plaintiffs. Ms. Kaufman has been devoted to the Armenian Genocide class action cases and is one of the main attorneys handling the *In Re Pellicano* cases. Eugene Harris is another senior attorney who is also an experienced and dedicated trial lawyer. Although Mr. Harris was initially exclusively trying criminal cases, within the last three years, he has successfully tried eight civil jury trials, repeatedly obtaining awards in excess of one million dollars for individual plaintiffs. Junior associates, Tamar Arminak and Tina Glandian, will also be assigned to the Toyota cases. These young lawyers have devoted themselves to the firm's active practice and have demonstrated abilities far beyond their years of practice.

### 3.   Ability to Work Cooperatively with Others

Working with other skilled attorneys has been one of the rewarding experiences in handling civil class action cases. I am honored to have closely collaborated with the prominent lawyer, John R. Climaco of Climaco, Wilcox, Peca, Tarantino & Garofoli Co., L.P.A. for more than ten years. As a result of my relationship with John R. Climaco, I have also worked closely with Stanley M. Chesley. I welcome working with esteemed lawyers across the nation and utilizing our joint talents to succeed with this case.

In collaboration with John R. Climaco, Hunter Shkolnik, Richard Arsenault and John Whaley, my firm has filed the following actions:

02/04/2010  *Ani Gazaryan v. Toyota*, Case No. 10-CV-00849;

1            USDC-Central District of California, Western Division

2

3   02/04/10      *Troy Menssen v. Toyota*; Case No. 1:10-CV-00260-SO;

4             USDC-Northern District of Ohio, Eastern Division

5

6   02/04/10      *Thomas Davis v. Toyota*, Case No. 10-CV-0900

7            USDC Southern District of New York

8

9   02/10/10      *Walter McKinney v. Toyota*, LASC Case No. BC431686,

10            removed 3/12/10 to USDC, Central District California,

11            Case No. 10-CV-01825;

12

13   02/10/2010   *Nellie Yaritchyan v. Toyota*, LASC BC431688

14            removed 3/12/10 to USDC, Central District California

15            Case No. 10-CV-01822;

16

17   02/10/10      *Robyn Horn v. Toyota*, Case No. 4:10-CV-0090-JLH,

18            USDC-Eastern District of Arkansas.

19

20       I believe that the plaintiffs' lawyers in this MDL would welcome the

21 opportunity to work with and collaborate with my team as well.  At the recent

22 HarrisMartin Toyota Recall Litigation Conference chaired by Elizabeth J.

23 Cabraser, Richard J. Arsenault, and Jimmy R. Faircloth Jr. in San Diego, which

24 attracted several hundred plaintiff and defense attorneys, I was invited to be the

25 featured keynote speaker, and asked to speak on the topic, "The Tort System's

26 Regulatory Role–How Will It Work With the Toyota Litigation?"  My speech was

27 later jokingly described as "part Kumbayah-session" because of my emphasis

28 during my speech on the importance of collaboration, not competition, among the

1   plaintiffs' lawyers in this MDL.[3]

2       I was also recently selected by the Steering Committee to be co-chair of the

3   trial committee for the multidistrict litigation case, *In Re Apple iPhone 3G and*

4   *3GS, Marketing Sales Practices Litigation*, MDL No. 2116, pending before Judge

5   Barbier in the United States District Court, Eastern District of Louisiana.

6

7       **4.    Access to Sufficient Resources to Prosecute the Litigation in a**

8            **Timely  Manner**

9       With two offices within Los Angeles county, and as co-owner of the Historic

10  Engine No. 28 building and Fine Arts Building (Los Angeles Historic-Cultural

11  Monument #125), I have the financial resources necessary to support this litigation.

12  As I have done in the past in the Armenian Genocide class actions as well as many

13  others, my firm will advance significant costs as necessary to ensure the successful

14  litigation of this case.

15  //

16  //

17  //

18

19

20

21

22

23

24

25

26

27       [3] *See* Dionne Searcey, *In Battle of Toyota Lawyers, It's Mark v. Mark v. Mark*,
    The Wall Street Journal Blogs (Mar. 25, 2010) *available at* http://blogs.wsj.com/law/
28  2010/03/25/in-battle-of-toyota-lawyers-its-mark-v-mark-v-mark/tab/article.

## CONCLUSION

In conclusion, I respectfully request that the Court consider and affirm my application to be included in the leadership group, as deemed appropriate by the Court, or alternatively, as a member of a designated committee based upon the unique background, experience, and dedication that I can offer to this team.

Dated: April 30, 2010                      Respectfully submitted,

GERAGOS & GERAGOS, APC


By: _____/s/_____

MARK J. GERAGOS
Attorney for Plaintiffs