CARI K. DAWSON (GA SBN 213490)
Email: cari.dawson@alston.com
**ALSTON + BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7766
Facsimile: (404) 253-8567

LISA GILFORD (CA SBN 171641)
Email: lisa.gilford@alston.com
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

*Lead Defense Counsel for Economic Loss Cases*

VINCENT GALVIN, JR. (CA SBN 104448)
Email: vgalvin@bowmanandbrooke.com
**BOWMAN AND BROOKE**
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845

JOEL SMITH (SC SBN 5266)
Email: joel.smith@bowmanandbrooke.com
**BOWMAN AND BROOKE**
1441 Main Street, Suite 1000
Columbia, SC 29201
Telephone: (803) 726-0020
Facsimile: (803) 726-0021

*Lead Defense Counsel for Personal Injury/Wrongful Death Cases*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORIA

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 8:10ML2151 JVS (FMOx) |
| | **DEFENDANTS' PROPOSED DISCOVERY PLAN** |
| This documents relates to: | Date:          June 23, 2010 |
| ALL CASES | Time:          9:00 a.m. |
| | Location:      Court Room 10C |
| | Judicial Officer:   Hon. James V. Selna |

## I.   PRELIMINARY NATURE OF THIS DISCOVERY PLAN

Federal Rule of Civil Procedure 26(b)(1) permits discovery of matters, not privileged, "relevant to the claim or defense of any party." For this reason, a discovery plan should be based on the "identif[ication of] the primary issues, at least preliminarily, based on the pleadings and the parties positions at the initial conference." *Manual for Complex Litigation* § 11.31 (4th ed. 2004) (hereinafter "MCL"). In the present case, however, although certain individual personal injury/wrongful death cases have been filed and may be subject to case-specific discovery, the Plaintiffs have not yet filed their Consolidated Class Action Complaint or identified their class claims, the class definition(s), or the theory or theories of defect.[1] In addition, certain individual lawsuits and the Consolidated Class Action Complaint may be subject, in whole or in part, to Rule 12 Motions, that may further refine and narrow the claims at issue in this litigation. Accordingly, this Discovery Plan is preliminary and will be subject to further amendment and revision, as the factual and legal issues in dispute are more clearly identified and defined by the Court and the Parties.

## II.   SEQUENCING OF DISCOVERY

Defining the scope of the issues in the MDL and prioritizing those issues in this MDL to correspond to the specific stages of the litigation are necessary to establish the appropriate sequence and limits for discovery and to effectively manage the discovery in the MDL. MCL at § 11.422 ("Discovery control in complex litigation may take a variety of forms, including time limits, restrictions on scope and quantity, and sequencing."). Discovery should be sequenced in light of the material issues in controversy, including but not limited to phasing and focusing discovery on causation, injury, damages, class certification (where appropriate) and technical issues. While it

---

[1]    The Parties have informed the Court that the Plaintiffs have not yet determined whether they intend to pursue claims on behalf of a "recall class," i.e., on behalf of consumers who purchased vehicles recalled by Toyota, or whether the consolidated complaint will only proceed on the basis of an alleged defect in ETCS.

is anticipated that there will be some overlap between the individual personal injury/wrongful death lawsuits and the Consolidated Class Action Complaint, this Court recognizes that different tracks for the discovery may be necessary depending upon the theories of liability and defect alleged in the lawsuits, issues specific to the individual plaintiffs and class representatives, and the requirements of Federal Rule of Civil Procedure 23.   Staging and sequencing discovery will assist the parties in preventing "unreasonably cumulative or duplicative" discovery and discovery for which "the burden or expense . . . outweighs its likely benefit" under Rule 26(b)(2).

It is the intent of the Court that discovery is sequenced to avoid as much as possible wasting time and resources on discovery that could ultimately be unnecessary based on the claims ultimately asserted by Plaintiffs in the Consolidated Class Action Complaint and the outcome of motions to dismiss, *Daubert* motions, and class certification motions.  Moreover, the discovery plan should correspond to the Court's anticipated orders on overall case scheduling, which will include dates for the technical tutorial, deadlines for identification of experts and completion of expert reports, and deadlines for filing motions for summary judgment, motions for class certification, and *Daubert* motions.   To accomplish this goal while simultaneously moving forward with discovery that advances this litigation, the Parties shall prioritize certain areas of discovery as set forth in the discovery plan below.

Phase I priorities to be focused upon, though not required to be completed, in the next 90-150 days: (1) completion of initial disclosures by Plaintiffs, (2) production of documents that Toyota previously produced to NHTSA, the United States Congress, and State Attorneys General as required pursuant to Order No. 3, (3) preliminary 30(b)(6) Depositions focused on threshold issues identified in Part III, *infra*, (4) Case-Specific Discovery in Personal Injury/Wrongful Death Cases, (5) commencement of targeted class certification discovery, and (6) commencement of targeted ETCS merits discovery.  Commencement of any discovery shall be subject to and consistent with the specific dates identified in this Order, *infra*, any subsequent

order on discovery scheduling, or by agreement of the Parties.  The end of Phase I roughly corresponds to the date on which the briefing and oral argument on Rule 12 motions will be completed, and rulings on those motions may further define the issues in the MDL.

Phase II priorities to be focused upon, though not required to be completed, in the 90-120 days following the end of Phase I: (1) continuation of Case-Specific Discovery in Personal Injury/Wrongful Death Cases, (2) continuation of class certification discovery, and (3) continuation of targeted ETCS discovery. Commencement of any discovery shall be subject to and consistent with the specific dates identified in this Order, *infra*, any subsequent order on discovery scheduling, or by agreement of the Parties.

At this stage in the litigation, this Court will not identify further phases, but reserves the right to do so in future orders.

The Court and the Parties anticipate that this discovery plan will be revisited and revised throughout this litigation as claims, issues, and defenses are narrowed and refined, and that additional areas of discovery will be addressed in subsequent discovery plans.

## III.   PRELIMINARY 30(B)(6) DEPOSITIONS

The Court understands that lead Counsel for the Plaintiffs initially proposed a detailed list of the topics they wish to cover through depositions pursuant to Fed. R. Civ. Pro. 30(b)(6) during Phase I of discovery.  Although Defendants  objected to certain categories as too broad, undefined, and unfocused, Defendants were in agreement that limited Rule 30(b)(6) depositions would assist the parties and the Court in identifying the proper parties to this litigation and developing a more narrowly tailored discovery plan.

After meeting and conferring, the Parties have reached general agreement about the topics that should be covered in these preliminary Rule 30(b)(6) depositions, and the Toyota Defendants have agreed to produce a witness (or witnesses) for deposition

3

pursuant to Fed. R. Civ. Pro. 30(b)(6), on topics limited to threshold issues, such as:

- The Toyota defendants' organizational structure;
- The roles and responsibilities of the various Toyota companies with respect to the design, manufacture and sale of Toyota vehicles;
- The relationships among various Toyota entities, between Toyota entities and Toyota and Lexus dealers, and between Toyota entities and its suppliers;
- The nature, location and retention of documents related to ETCS design, evaluation, and testing of the ETC system and components, including specifically drawings, specifications, testing standards, test reports, and Failure Mode and Effects Analysis ("FMEA") (including Fault Tree Analysis ("FTA") and Design Review Based on Failure Mode ("DRBFM");
- The nature, location and retention of documents related to the manufacture of the ETC system and components, including specifically quality control documents;
- Persons and departments involved in the design, evaluation, testing and manufacture of the ETCS and its components;
- The nature, location and retention of documents related to information Toyota receives about speed control, surge, and UA events in Toyota and Lexus vehicles, including specifically warranty records, customer complaints, claims and lawsuits ("Field Performance Documents");
- Persons and departments involved in the intake and evaluation of Field Performance Documents;
- The nature, location, and retention of documents related to electronic data recorders, electronic data readers, and stored electronic data (collectively "EDRs");

- Persons and departments knowledgeable about EDRs and stored data in Toyota and Lexus vehicles; and

- The nature, location, and retention of sales and marketing documents.

The Court agrees that the limited 30(b)(6) deposition(s) will assist the parties and the Court in identifying proper parties to the litigation and in developing a more narrowly tailored discovery plan. Accordingly, during Phase I of discovery, the Toyota Defendants shall produce a witness (or witnesses) for deposition pursuant to Fed. R. Civ. Pro. 30(b)(6) to address threshold topics as agreed to by the Parties. The Parties are directed to meet and confer regarding threshold topics in addition to those identified above which may be covered in the limited 30(b)(6) deposition(s), including but not limited to the additional twelve (12) topics identified by Plaintiffs on June 21, 2010, and to attempt to reach agreement. If no agreement can be reached, the Parties may seek intervention from the Court. This limited 30(b)(6) deposition(s) is not intended to be an exploration of the merits of the Plaintiffs' claims at this early stage of the litigation, and it shall not involve asking the deponent to comment on the substance or merits of any claims asserted in the MDL or any documents already produced to Plaintiffs, except as such documents relate to defining roles and responsibilities among or within the Toyota defendants.

Lead Plaintiffs' counsel shall provide a 30(b)(6) deposition notice consistent with this Order to the Toyota Defendants. The Toyota Defendants shall provide objections to that notice consistent with the Federal Rules of Civil Procedure and local rules of district, and the process and procedure for resolving such discovery disputes shall follow those same rules. No 30(b)(6) deposition notice under this provision shall require deponents to produce documents or other tangible evidence. However, nothing herein shall prohibit deponents from bringing exemplar documents to their depositions if they so choose.

To the extent that the deposition rules and procedures contained *infra* in Section VIII. C. do not conflict with the procedures outlined in this Section, these limited

5

30(b)(6) deposition(s) shall be noticed and conducted pursuant to the procedures set forth in Section VIII. C.

Because this preliminary Rule 30(b)(6) deposition is intended to educate the Plaintiffs so that discovery requests can be more narrowly tailored, except as expressly provided *infra*, Plaintiffs shall not propound written discovery on Defendants until this limited Rule 30(b)(6) deposition(s) has been completed.  At the conclusion of these 30(b)(6) depositions, the Parties are directed to meet and confer and submit a more tailored discovery plan to the Court based upon the information learned in the depositions.

## IV.   CASE-SPECIFIC DISCOVERY IN PERSONAL INJURY AND WRONGFUL DEATH CASES

The parties are directed to commence (or continue) with case-specific discovery in personal injury/wrongful death cases as outlined below.  Case-specific discovery shall include discovery related to eye witnesses, medical witnesses, individual plaintiffs, the vehicles involved in any alleged unintended acceleration incidents, and any other discovery that would not be duplicative of discovery in any other case, including other Personal Injury/Wrongful Death Cases or the Class Actions.  Except as explicitly provided, Section III of this Discovery Plan shall not apply to the economic loss class actions.

### A.   Vehicle Preservation And Inspection[2]

#### 1.   Accident Vehicles in Plaintiff's Possession, Custody or Control

Plaintiff shall preserve the vehicle in its post-incident condition.  Within thirty (30) days of service of the Complaint and Summons on Toyota in an individual case, plaintiff shall advise Toyota of the whereabouts of the vehicle, if known.

Plaintiff shall make the vehicle available for a reasonable number of non-destructive inspections upon request, with reasonable notice, not less than twenty (20)

---

[2]   Vehicle Preservation and Inspection Issues relevant to the class actions are discussed *infra* at Section V.C.2.a.

days.  The parties understand that a specific protocol will be agreed upon in advance and will take into consideration the nature of the claims as well as the condition and availability of the vehicle.   Depending on the circumstances, Toyota's initial inspection will include:

> 1)   Inspect/photograph the interior and exterior of the vehicle;

> 2)   Inspect/photograph the engine compartment and undercarriage;

> 3)   Measure oil, brake fluid, and transmission fluid levels;

> 4)   Inspect/photograph the accelerator and brake pedals, measure positioning of pedals, measure pedal travel;

> 5)   Connect the Techstream tool and measure accelerator and throttle sensor voltage;

> 6)   Connect the event data recorder ("EDR") read out tool to the supplemental restraint system airbag electronic control unit and "read out" the available EDR data.

> 7)   Remove accelerator pedal and inspect/photograph it, then replace it with a new pedal if appropriate (e.g. recall service not yet performed);

> 8)   Inspect/photograph both sides of the floor mats; and

> 9)   If the vehicle is operational, test drive the vehicle on city streets and on the highway, with multiple applications of the brake and accelerator pedals; confirm operation of air conditioner, power steering, and cruise control.

Toyota shall provide Plaintiff with an electronic copy of the data retrieved with the Techstream tool as well as the raw hexadecimal readout data and  print out from the read out retrieved from the supplemental restraint system electronic control unit EDR."  Toyota shall not be precluded from further reasonable inspection(s) of the subject vehicle; subsequent inspections (e.g., by an accident reconstruction expert) need not follow the protocol provided above but the general scope of said inspection must be agreed to in advance.  The parties shall be permitted to make modifications to

1  the protocol or procedure of the inspection, however, the protocol provided above will

2  be permitted and followed, at a minimum.

3  No party may inspect the subject vehicle without providing reasonable advance

4  notice to the other party(s), not less than twenty (20) days.  Each party is entitled to

5  attend and document the other's inspections.  Such notice must also explicitly state

6  whether the inspection will involve any destructive inspection to testing or retrieval of

7  any electronic data from the on-board computer modules.

8  If a party objects to a proposed inspection, or the scope/protocol of the

9  inspection, the party must give notice of the intent to file a motion for protective order

10  at least five (5) days before the date noticed for the inspection, outlining the objections

11  and basis for the motion, and must file the motion within seven (7) days thereafter.

12  Upon receipt of such notice, the proposed inspection shall be stayed pending the

13  court's ruling on the objecting party's motion for protective order.

14  **2.    Accident Vehicles <u>Not</u> in Plaintiff's Possession, Custody or**

15  **Control**

16  To the extent possible, plaintiffs must make all reasonable efforts to preserve

17  vehicles in their post-incident condition, including sending correspondence to the

18  vehicle owner, if known, requesting that the vehicle be preserved and not destroyed or

19  salvaged.

20  Within thirty (30) days of service of the Complaint and Summons on Toyota in

21  an individual case, plaintiff must advise Toyota of the whereabouts of the vehicle, the

22  vehicle owner, and the date on which the vehicle left plaintiff's possession, custody or

23  control, if applicable and if known.

24  To the extent possible, plaintiff is to cooperate in efforts to coordinate Toyota's

25  inspection of the vehicle.  Plaintiff shall make reasonable efforts to encourage the

26  vehicle owner to cooperate in making the vehicle available for inspection.  Should the

27  vehicle owner refuse to informally make the vehicle available for inspection or

28  requires a subpoena, either party may issue a subpoena to initiate the inspection

process.  If Toyota issues a subpoena, then within three (3) business days of receipt of said service, plaintiff shall provide written notice to the owner advising that plaintiff joins in the subpoena and has no objection.

No party may inspect the subject vehicle without providing reasonable advance notice to the other party(s), not less than twenty (20) days.  Each party is entitled to attend and document the other's inspections.  Such notice must also explicitly state whether the inspection will involve any destructive inspection to testing or retrieval of any electronic data from the on-board computer modules.

If a party objects to a proposed inspection, or the scope/protocol of the inspection, the party must give notice of the intent to file a motion for protective order at least five (5) days before the date noticed for the inspection, outlining the objections and basis for the motion, and must file the motion within seven (7) days thereafter.

### 3.   Non-Accident Vehicles

With respect to vehicles that allegedly experienced what is claimed to be an unintended acceleration event, the owner/operator shall document the mileage when such event or events occurred, or a best estimate, and notify counsel for Toyota so an inspection of the vehicle can be scheduled as soon as practicable.  The parties will confer to agree on a protocol for any such inspection.

To the extent that the provisions of Sections A.1. and A.2. do not conflict with the preservation obligations and inspection protocol set forth in this subsection, the provisions above that pertain to Accident Vehicles (in or out of Plaintiff's possession) are incorporated herein and apply to non-accident vehicles.

### 4.   Accident Vehicles Not-In-Suit

Any counsel that represents a client with a case pending in the MDL is hereby obligated to observe this Order's requirements regarding preservation of the subject vehicle in any other matter counsel is involved in and anticipates including in this MDL.

9

**B.      Fact Sheets[3]**

### 1.      Purpose

The Fact Sheets are intended to identify the issues in the specific cases and to provide detailed information about the specific claims and defenses in each case in order to assist the parties in efficiently litigating the cases and moving them forward. To that end, all parties are obligated to provide as complete and straightforward responses to the requests as information presently available allows.

The Fact Sheets are not meant to be a tool for obtaining general discovery relevant to multiple cases or other "Core Discovery." Instead, Fact Sheets are intended to be a means for acquiring information and documents specific to each case. Discovery relevant to multiple cases shall be dealt with via Master or Omnibus Discovery Requests applicable to both personal injury/wrongful death cases and to economic loss class actions.

### 2.      Timing of Fact Sheet Responses

#### a.      *Plaintiffs' Case-Specific Fact Sheet Responses*

For all personal injury/wrongful death cases currently in the MDL, Plaintiffs' case-specific fact sheet responses shall be due thirty (30) days from the approval of the Fact Sheet by the Court.

For future personal injury/wrongful death cases transferred to the MDL, Plaintiffs' case-specific fact sheet responses shall be due thirty (30) days from when the Conditional Transfer Order is filed with the MDL Court or from when Toyota is served with the summons and complaint, whichever is later.

Should any future personal injury/wrongful death cases be filed directly in the MDL, Plaintiffs' case-specific fact sheet responses shall be due thirty (30) days from when Toyota is served with the summons and complaint, regardless of the status or form of Toyota's response or answer to the complaint.

---

[3]      Facts Sheets for the class action cases are discussed *infra* at Section V.C.2.b.

### b.    *Toyota's Fact Sheet Responses*

For personal injury/wrongful death cases currently in the MDL, Toyota's case specific fact sheet responses shall be due seventy-five (75) days from approval of the Fact Sheet by the Court.

For personal injury/wrongful death cases transferred to the MDL in the future or later filed directly in the MDL, Toyota's case-specific fact sheet responses shall be due forty-five (45) days after service of plaintiff's fact sheet responses.

### 3.    Form of Fact Sheets

The form of the fact sheet shall be the subject of meet and confer between counsel.

As discussed *infra* in Section V.C.2.b., there shall be separate Fact Sheets for (1) individual personal injury/wrongful death cases and (2) economic loss class actions. While the information and form of Fact Sheets between these two categories are expected to be similar, the Facts Sheets will be tailored to the case type (i.e., personal injury or class economic loss).

### 4.    Responses

Fact Sheet Responses must set forth all information known or reasonably ascertainable to the party and/or their counsel. The parties are obligated to make a reasonable search and diligent inquiry for information or documents responsive to the request.

Responses to documents requests must identify the documents being produced where the fact sheet requires the production of documents. If no documents are being produced in response to the particular question, the party must affirm that it has made a reasonable search and diligent inquiry and has been unable to locate the documents because they never existed, were destroyed, have been lost, misplaced, or stolen, or have never been, or are no longer, in the possession, custody, or control of the party. The statement shall set forth the name and address of any person or organization

LEGAL02/31977743v4

known or believed by the party to have possession, custody, or control of that item or category of item.

Responses to information requests shall be deemed interrogatory responses pursuant to FRCP 33 and may be treated as such at time of trial. Responses to document requests and the production of documents are deemed responses and production under FRCP 34. All responses are enforceable under FRCP 37.

### 5.    Document Production Pursuant to Fact Sheets

Documents produced in response to fact sheets shall comport with the following requirements:

(1)    Case-specific materials shall be produced to local counsel on the particular case, copying without enclosures lead/liaison counsel.

(2)    Document production shall be due thirty (30) days after service of fact sheet responses, provided a Protective order has been entered, otherwise within ten (10) days after the entry of a Protective Order.

(3)    The production shall identify the request(s) the production is in response to by labeling or an index.

(4)    Plaintiffs' production shall include signed record release authorizations as negotiated by the parties through a meet and confer process.

(5)    The documents shall be produced in electronic format as agreed to by the parties through a meet and confer process.

(6)    The parties may establish their own document depositories but there will not be one global document management system as that is not necessarily cost effective or efficient and the parties likely have differing preferences based on experience or the ways in which the documents will be utilized or shared.

(7)    Bates labeling: the documents produced in response to fact sheets shall follow the format set forth *infra* in Section VIII.B.1.

### 6.    Additional Case-Specific Discovery

Each party may serve up to thirty (30) contention interrogatories separate and

LEGAL02/31977743v4

1  distinct from the Fact Sheets.  Contention interrogatories may not be served until sixty
2  (60) days before the close of discovery.  Responses to contention interrogatories are
3  due within thirty (30) days of service.  To the extent the party responding to the
4  contention interrogatories objects to them or withholds from the responses
5  information on the basis that it calls for premature expert discovery, that party is
6  required to automatically supplement the responses concurrent with expert disclosures
7  and production of expert reports.

8          **7.       Dispute Resolution Concerning Fact Sheets**

9          Should either party determine that the other's Fact Sheet responses are
10  inadequate, the local counsel for the parties should engage in meet and confer, either
11  telephonically or in writing, and make best efforts to resolve the dispute without
12  intervention by lead/liaison counsel or the Court.

13          In the event that the dispute cannot be resolved through informal meet and
14  confer, the party claiming deficiencies must, prior to filing a motion to compel,
15  engage in the following process:

16          (1)     Send a proposed motion to compel to local and lead/liaison counsel for
17  all parties.  The motion should not exceed five (5) pages plus a separate statement of
18  the specific items in dispute.

19          (2)     The responding party shall have five (5) business days to either send
20  correspondence detailing the responses to which they will provide supplemental
21  responses or production of documents and/or provide an opposition to the motion to
22  compel that does not exceed five (5) pages plus a response to the separate statement of
23  the specific items in dispute.

24          (3)     If necessary, the moving party may then file with the Court the motion to
25  compel and separate statement, the opposition and separate statement, and a reply
26  brief not to exceed three (3) pages, along with a declaration attaching the underlying
27  Fact Sheet responses and any meet and confer correspondence.  The Court will
28  thereafter notify the parties of a hearing date for the motion.

13

(4)     The deadline for filing a motion to compel is sixty (60) days after service of the Fact Sheet responses or supplemental Fact Sheet responses, or if the motion pertains solely to the adequacy of a party's document production, then sixty (60) days after the production.  The parties may agree, in writing, to extend the time for filing the motion to allow for further meet and confer.

### C.     Supplementation

The parties shall supplement prior Fact Sheet Responses consistent with Fed. R. Civ. P. 26(e).

### D.     Document Subpoenas

Document subpoenas for case-specific documents may be issued as of the date the Court approves this Discovery Plan.

The parties must notify each other of any subpoenas issued and the parties may join in each other's subpoenas.

Upon request in writing, a party will produce to the requesting party any documents received in response to a third-party subpoena.  The requesting party shall be responsible for reasonable copying costs.

### E.     Depositions

Case-specific depositions shall comply with the procedure set forth below in Section VIII.C.  The parties may take depositions as a necessary and appropriate means of fact gathering and assessment of the merits of their claims.  It is expected that the parties will cooperate in the scheduling of such depositions.

The parties agree that the number of depositions in any given case will be limited by the facts and circumstances of the particular case and that some cases may require more or less depositions than others, depending on the number of parties, witnesses, and the type of claims at issue.   If either party believes that the number of depositions being noticed in any particular case is unreasonable or unwarranted by the facts and circumstances of that case, the parties are to meet and confer as to the rationale for taking the depositions and whether the number of depositions can be

14

limited in that case.  In the event that the dispute cannot be resolved through informal meet and confer, the party that disagrees with the number of depositions being noticed/taken must, prior to filing a motion for protective order, engage in the following process:

(1)    Send a proposed motion for protective order to local and lead/liaison counsel for all parties.  The motion should not exceed five (5) pages.

(2)    The responding party shall have five (5)  business days to respond or provide an opposition to the motion that does not exceed five (5)  pages.

(3)    If necessary, the moving party may then file with the Court the motion to protective order, the opposition, and a reply brief not to exceed three (3) pages, along with a declaration attaching the underlying deposition notices and any meet and confer correspondence.  The Court will thereafter notify the parties of a hearing date for the motion.

### F.     **Medical Examinations**

Toyota is entitled to non-invasive physical examination(s) of the plaintiffs by healthcare professional(s) where the plaintiff has put his or her physical condition in controversy, pursuant to FRCP 35.  Plaintiff may object to the request by motion for protective order.

Where plaintiff has made his or her mental condition an issue, in addition to or instead of his or her physical condition, Toyota is permitted to request a mental examination of the plaintiff.  Plaintiff may object to the request by motion for protective order.

A request for such physical or mental examination should be preceded by an effort to schedule the examination on a day and at a time convenient to the plaintiff.  However, any such request must allow at least thirty (30) days' notice and must comply with FRCP 35.

LEGAL02/31977743v4

## V.   CLASS DISCOVERY

Plaintiffs' Co-Lead Counsel for Class Actions have not yet filed their Consolidated Class Action Complaint.  Therefore, at this stage of the proceeding, it is unclear which claims and theories of defect will be asserted in the Consolidated Complaint or what definition of putative classes and/or subclasses will be included in the Consolidated Complaint.  In particular, it is not clear whether Plaintiffs intend to proceed solely on the theory of ETCS or whether the Consolidated Complaint will also include claims based on damages allegedly caused by the Pedal and/or Floor Mat Recalls.  Because the scope of permissible discovery is derived from the claims and defenses of the case, the Court believes that a detailed plan for class discovery should be developed after the Consolidated Class Action Complaint is filed.  Even at this early stage of the litigation, however, there are certain principles that should guide the Parties in the development of a more specific plan once the Consolidated Complaint has been filed.

### A.   Bifurcation Of Class And Merits Discovery

An early decision of the class certification issue will substantially advance this litigation.  MCL at § 11.213 ("Class certification or its denial will have a substantial impact on further proceedings, including the scope of discovery, the definition of issuesm the length and complexity of trial, and the opportunities for settlement."). Bifurcating discovery such that discovery directed at supporting or defending class certification is prioritized over general merits discovery  will enable the parties to brief the issue of class certification at an earlier stage of these proceedings, and, at the same time, avoid wasting time and resources on merits-related discovery that may eventually be unnecessary.  Accordingly, except for the production of documents that Toyota previously produced to NHTSA, the United States Congress, and the State Attorneys General pursuant to Order No. 3, the targeted ETCS discovery discussed below, case-specific discovery in the personal-injury/wrongful death cases,[4] or as

---

[4]   As discussed above, case-specific discovery includes discovery that is not

1   otherwise set forth in this Discovery Plan or by agreement of the Parties, the Parties

2   shall not engage in general merits discovery until the entry of the Court's decision on

3   Plaintiffs' motion for class certification.   However, limited merits discovery shall

4   proceed concurrently with class discovery as explicitly set forth in this Discovery Plan

5   and, the parties in the economic injury class actions can and shall participate so as to

6   avoid duplicative discovery.

7   **B.    Identification Of Needed Discovery And Stipulated Facts**

8   Because the scope of class discovery should be based on the claims and theories

9   set forth in the pleadings, the class discovery period shall not commence until after the

10  Consolidated Complaint is filed.   During the class discovery period, counsel in the

11  class action cases should expedite discovery needed to create an evidentiary record

12  upon which Plaintiffs' class certification motion(s) can be briefed and decided.   To

13  this end, after the filing of the Consolidated Complaint and prior to commencing

14  written discovery or depositions concerning class issues, the parties are directed to

15  develop a plan which will identify the discovery needed for class certification.

16  Specifically, no later than August 16, 2010, Plaintiffs' Co-Lead Counsel for

17  Class Actions shall submit to Defendants' Co-Lead Counsel for Class Actions a list of

18  the discovery plaintiffs believe is needed in order to brief the issue of class

19  certification ("Core Class Discovery") and a proposed schedule for class discovery

20  and class certification briefing (the "Class Discovery Plan").   The parties shall meet

21  and confer on the areas of discovery identified and the plan proposed, and no later

22  than August 30, 2010, Defendants' Co-Lead Counsel for Class Actions shall submit to

23  Plaintiffs revised proposals for Core Class Discovery and the Class Discovery

24  Schedule and a list of proposed stipulations concerning facts relevant to class

25  certification that Defendants are willing to provide in lieu of proceeding with formal

26  discovery on such issues.   Because motions to dismiss may narrow the scope of

27

28  duplicative of discovery likely to be sought in any other case, including other Personal
    Injury/Wrongful Death Cases or the Class Actions.

17

discovery relevant to class certification (for example, motions to dismiss may determine whether a class of foreign plaintiffs is allowed to proceed), Defendants' proposal should also identify areas of class discovery (if any) that Defendants believe should be postponed until after Motions to Dismiss have been ruled upon. No later than September 27, 2010, the parties shall submit to the Court a detailed schedule for class discovery and class certification briefing, with alternative provisions for any areas of disagreement.

The Court expects that Core Class Discovery may include the following:

- advertising materials
- organizational charts
- manuals, brochures, warranties, service histories, and sales documents related to the class representatives' vehicles
- identification of vehicles equipped with ETCS
- class representatives' fact sheets and related documents

It is anticipated that the Parties will be able to identify and agree upon additional areas of Core Class Discovery after the Consolidated Complaint has been filed.

### C.  **Specific Issues Concerning Class Discovery**

#### 1.  **Timing and Progression of Class Discovery**

The Class Discovery Plan submitted by the parties shall contemplate an orderly progression of discovery that will avoid duplication and unnecessary discovery. In particular, it is expected that, to the extent possible, all written and document discovery directed to class specific issues shall be completed prior to the taking of depositions necessary for the briefing of class certification. Similarly, all fact discovery related to class certification shall precede all expert discovery related to class certification issues.

As explained above, the class discovery period shall not commence until after the filing of the Consolidated Class Action Complaint. Moreover, written discovery requests shall not be served until after the submission of the Class Discovery Plan to

1   the Court as set forth above.

2        The Class Discovery Plan shall address the need for any deviations from the

3   discovery procedures set forth in the Federal Rules of Civil Procedure or in this

4   Discovery Plan, including whether additional time will be permitted to respond to

5   written discovery requests, the number of interrogatories that will be permitted,

6   whether additional time will be needed for depositions, and whether there should be

7   any limitations on the number of depositions permitted.

8           **2.**     **Discovery of Class Representatives**

9            **a.**     ***Vehicle Inspections of Class Representatives***

10       It is expected that the Class Discovery Plan will include a proposal for the

11  timing of inspections of class representatives' vehicles.   The protocol for such

12  proposals shall be substantially similar to the procedure set forth above in Section

13  IV.A. for the personal injury/wrongful death cases.

14           **b.**     ***Class Representative Fact Sheets***

15       The Court anticipates that the class representatives will submit fact sheets

16  similar to the fact sheets to be submitted in the personal injury/wrongful death cases

17  discussed above in Section IV.B.  While there may be some differences in the content

18  and timing of the Class Fact Sheets as compared to the Individual Plaintiff Fact

19  Sheets, it is expected that the procedures set forth above concerning the fact sheets

20  shall also be applied in the class actions.

21       Among other items to be addressed by the Class Fact Sheets, Defendants have

22  indicated that the following categories of information and documents will be sought:

23      •    For Consumer Class Representatives:

24          o    Documents and information concerning the transactional history of

25              vehicles belonging to class representatives

26          o    Documents and information concerning general background

27              information regarding class representatives

28

1         o    Documents and information concerning the condition and
2              maintenance of Toyota vehicles belonging to class representatives
3         o    Documents and information concerning the response(s) to Toyota
4              recall(s) involving vehicles belonging to class representatives
5         o    Documents and information concerning any attempt to sell,
6              transfer, trade, or otherwise dispose of the Toyota vehicles
7              belonging to class representatives
8         o    Documents and information concerning alleged unintended
9              acceleration events
10        o    Documents and information concerning alleged economic damages
11        o    Documents and information concerning plaintiffs' lease and/or
12             finance contracts with Toyota Motor Credit Corporation
13             ("TMCC"), if applicable
14   •    For Non-Consumer Class Representatives:
15        o    Documents and information concerning the sale and purchase
16             history and practices of any dealer plaintiffs
17        o    Documents and information concerning  the rental history and
18             practices of any rental car company plaintiff
19        o    Documents and information reflecting the alleged lost profits of
20             any dealer or rental car company plaintiff
21   It is anticipated that the Parties will meet and confer to agree upon the information and
22   documents to be obtained via class representative fact sheets.

23              **c.    *Additional Discovery of Class Representatives***

24        It is anticipated that the use of Class Representative Fact Sheets will obviate the
25   need for extensive written discovery of class representatives.  However, it is expected
26   that additional written discovery will be needed after responses to class representative
27   facts sheets have been provided.  The Class Discovery Plan shall address the any
28   limitations on additional written discovery requests to the class representatives beyond

                                          20

LEGAL02/31977743v4

the fact sheets discussed above.

It is also anticipated that depositions of class representatives will be necessary. Unless otherwise addressed in the Class Discovery Plan, depositions of class representatives shall comply with the procedures set forth in Section VIII.C. below.

### 3.   Discovery of Defendants

#### a.   *Master Class Discovery Requests*

It is expected that Plaintiffs will propound a single set of Master or Omnibus Class Discovery Requests applicable to all defendants to the class action cases. The Class Discovery Plan will set forth the deadlines for responding to such requests and limitations concerning the number of interrogatories propounded. In particular, it is anticipated that, given the scope of these requests, it may be appropriate to extend the time permitted to respond to written requests and/or to increase the number of interrogatories permitted.

#### b.   *Depositions*

It is expected that Plaintiffs will postpone corporate depositions until documents have been produced to avoid the necessity of further depositions based on document production and review.

Except as otherwise provided in the Class Discovery Plan, depositions of class representatives shall comply with the procedures set forth in Section VIII.C. below.

### D.   **Communications With Putative Class Members**

#### 1.   **Purpose**

The administration of justice often requires that limited restrictions be placed on counsel and parties in cases in which class certification is sought or has been granted. In class actions where a putative class member is permitted to elect not to participate in the class action, there is an inherent risk that a class member's decision may, in the absence of court regulation of communications regarding the class action, not be based on a complete and balanced presentation of the relevant facts. Special management of class actions is often necessary to protect the interests of both formal

21

1 | parties and absent class members.

2 |     **2. Restrictions on Communications**

3 |   All parties and counsel are forbidden from soliciting fees and expenses or

4 | agreements to pay fees and expenses from prospective or actual class members who

5 | are not formal parties or who do not plan to become formal parties or from soliciting

6 | individuals to serve or not serve as class representatives or otherwise participate in the

7 | litigation.

8 |   All parties and counsel are forbidden to communicate with prospective or actual

9 | class members with the purpose of intentionally misleading, harassing, or threatening

10 | prospective or actual class members.  Nothing herein is intended to prevent the Toyota

11 | defendants from acting in the normal course of their continuing business operations.

12 |   The obligations and prohibitions set forth above are not exclusive. All other

13 | ethical, legal, and equitable obligations to which counsel and/or parties are subject are

14 | not affected by this subsection.

15 |     **3. Additional Restrictions on Communications**

16 |   The Parties are required to meet and confer to determine whether proper

17 | management of the case or the interests of putative class members require the entry of

18 | an order further limiting communications with putative class members.   The

19 | conference shall occur as soon as practicable, but in no event later than twenty-one

20 | (21) days after the Consolidated Complaint is served.  Within fourteen (14) days after

21 | the conference, counsel shall submit a joint statement of their collective or individual

22 | views as to whether an order should be entered limiting communications.  If counsel

23 | agree no order is necessary, they shall so state in their report to the Court.  If counsel

24 | agree that an order limiting communications should be entered, they shall submit the

25 | proposed content of such order and the grounds justifying entry of same.  If counsel

26 | cannot agree whether an order should be entered or what the content of such an order

27 | should be, they shall report this to the Court and either submit stipulated facts for the

28 | Court's consideration or request a hearing to present evidence on the issue. Based on

LEGAL02/31977743v4

the record before the Court, an order limiting communications may be entered upon a finding that a failure to so limit communications would likely result in imminent and irreparable injury to one of the parties.  Neither the parties nor their counsel shall initiate communications with putative class members regarding the substance of the lawsuit until counsel presents the required report to the Court and any necessary order is entered pursuant to the report.

### 4.   Discovery From Putative Class Members

The Toyota Defendants specifically reserve the right to seek discovery from putative class member pre-certification.  The Class Discovery Plan, see Part V, *supra*, shall address whether discovery of absent class members is necessary in this litigation and a specific plan concerning the discovery to be had.

## VI.   ETCS DISCOVERY

Although it is unclear whether Plaintiffs in the Class Actions will continue to pursue claims based on the Floor Mat and Pedal Recalls, it is evident that they do intend to proceed with claims related to an alleged defect in Toyota's ETCS. Discovery related to ETCS will also be relevant to some of the personal injury/wrongful death cases.  Accordingly, the Court believes it is appropriate to move forward with targeted discovery pertaining to ETCS prior to the Court ruling on motions to dismiss or class certification.

### A.   Targeted ETCS Discovery

This litigation involves the ETCS of numerous Toyota and Lexus models spanning more than a decade of model years.  At this stage in the litigation, the Court concludes that, rather than commencing with open-ended ETCS discovery covering numerous models and model years, it would be preferable to proceed with a more targeted approach.  *See* MCL § 11.422 ("Targeted discovery may be nonexhaustive, conducted to produce critical information rapidly on one or more specific issues."). The Court determines that ETCS discovery should initially be limited to the following three areas:

- *Documents Produced to NHTSA in RQ10-003 subject to production pursuant to the June 1 Order:*   Toyota shall produce relevant, non-privileged documents from this RQ production, subject to objections.

- *ETCS discovery produced in other cases:*   The Parties have indicated that documents relevant to ETCS have been produced in other individual products liability cases that are not a part of this MDL proceeding. The Parties are directed to meet and confer to identify and agree upon other cases likely to have relevant ETCS discovery and a timeline for producing such documents.

- *ETCS Documents Pertaining to 2002-2006 Camry:* The Court believes that it would be wise to initially limit ETCS discovery to certain exemplar vehicles. The scope of such documents and the timing of such document requests shall be subject to the meet and confer process addressed below in subsection B for developing a targeted ETCS discovery plan.

Toyota's plan proposes that targeted ETCS discovery **begin, not end** with the 2002-2006 Camry. It is Toyota's position that ETCS discovery be sequenced to focus first on the Camry before extending to other vehicle models. Although additional ETCS discovery will likely be necessary, it is the Court's intent that this initial targeted discovery will allow the Parties to proceed with ETCS in a more focused manner.

## B.   Development Of A Targeted ETCS Discovery Plan

It is expected that the documents being produced pursuant to Order No 3, the documents identified above (i.e., ETCS documents produced pursuant to NHTSA's RQ and ETCS documents produced in other cases), and the limited Rule 30(b)(6) depositions discussed *supra* in Section III., will assist the parties in determining the proper scope of a targeted ETCS Discovery Plan focused on an exemplar vehicle or vehicles. Accordingly, a detailed ETCS discovery plan and *Daubert* briefing plan shall be postponed until after these materials have been produced and reviewed.

LEGAL02/31977743v4

Based on a review of the ETCS documents described above, the Parties shall meet and confer to determine (1) the scope of discovery necessary to expedite *Daubert* motions related to the issue of ETCS in the exemplar vehicles and (2) a proposed timeline for exemplar ETCS discovery and ETCS *Daubert* briefing.   The Parties shall then submit a Joint Report setting forth the proposed scope of targeted ETCS discovery and a proposed schedule for such discovery and ETCS *Daubert* briefing.   Should the parties be unable to reach agreement on any of these issues, the Parties' Report shall contain a sections setting forth the views of each respective position.

It is anticipated that the ETCS Discovery Plan will utilize a single set of Master or Omnibus ETCS Discovery Requests that will be propounded on each Defendant.   It is also expected that, with the exception of the limited 30(b)(6) Depositions discussed above,  written discovery will proceed prior to depositions and that fact discovery will be conducted prior to commencing expert discovery.

## VII.   **FURTHER REFINEMENT OF ISSUES**

Pursuant to Order No. 3, documents previously produced to certain government entities will be produced by Toyota in this MDL commencing on July 2, 2010 and continuing on a rolling basis thereafter.   It is anticipated that this production will assist the Plaintiffs in defining and narrowing the issues and claims in this litigation.   *See* MCL § 11.491 ("Access to such materials can reduce the need for discovery and assist in defining and narrowing issues.").   Although it is expected the production of these documents will assist Plaintiffs in drafting their Consolidated Class Action Complaint, the Court is mindful that this will be a large production of documents and that further review of these documents after the filing of the Consolidated Complaint may assist plaintiffs in further refining their claims and theories.   Accordingly, by August 23, 2010, Plaintiffs are directed to file with the Court a statement further specifying the theory(ies) of defect that plaintiffs plan to pursue in this litigation and the basis therefore,   and   indicating   whether,   based   on   information   learned   from   these

25

LEGAL02/31977743v4

documents, Plaintiffs are willing to voluntarily dismiss any of their pending claims. This statement is designed primarily to assist the Parties in refining the issues in this litigation and the proper scope of discovery, and for this reason, the statement will not be binding, will not waive claims or defenses, and may not be offered into evidence against a party in later proceedings. However, should Plaintiffs identify any claims that they wish to dismiss voluntarily, a proposed stipulation of dismissal shall be filed on August 23, 2010 so that Defendants can avoid filing any unnecessary motions to dismiss.

## VIII.  GENERAL PROVISIONS GOVERNING DISCOVERY

### A.  Service

#### 1.  Written Discovery Requests And Responses

##### a.  *Electronically Filed Documents*

Pursuant to Fed. R. Civ. P. 5(d) and Local rule 26-2, discovery requests and responses will not be filed with the Court, except when specifically ordered by the Court or to the extent they are necessary in connection with a motion. Parties shall, however, electronically file through CM/ECF (which will be electronically served on all counsel of record) a certificate of service identifying the discovery served. Plaintiffs' Co-Lead Counsel for Class Actions and for Personal Injury/Wrongful Death Cases and Defendants' Co-Lead Counsel for Class Actions and for Personal Injury/Wrongful Death Cases shall distribute such filings as appropriate to other counsel and parties on their respective sides of this proceeding who have not signed up for notification of electronic filings.

##### b.  *Non-Electronically Filed Documents*

Any discovery (with the exception of document productions), correspondence, or other document that is not filed electronically through CM/ECF shall be served through Lexis File and Serve, which will send notice of the filing and service of the document via electronic means to all parties on the Lexis File and Serve service list.

## 2. Document Productions

Defendants shall serve one copy of any documents or data produced pursuant to discovery requests or Court order by overnight delivery, by electronic mail, by facsimile, or by hand, as appropriately expeditious given the format and quantity of documents or data produced, on Plaintiffs' Co-Lead Counsel for Class Actions and on Plaintiffs' Co-Lead Counsel for Personal Injury/Wrongful Death Cases. Plaintiffs' Co-Lead Counsel shall distribute such document or data production to other Plaintiffs' counsel and plaintiffs in this proceeding, as appropriate and in accordance with any Protective Orders or agreements entered into by the Parties. Pursuant to Fed. R. Civ. P. 5, service on Plaintiffs' Co-Lead Counsel shall constitute service on all Plaintiffs. If any document or data production pertains only to a particular case or cases, Defendants shall only serve the item by overnight delivery, by electronic mail, by facsimile, or by hand, as appropriately expeditious given the format and quantity of documents or data produced, on the Plaintiffs' counsel who have entered an appearance in the particular case or cases.

Plaintiffs shall serve one copy of any documents or data produced pursuant to discovery requests or Court order by overnight delivery, by electronic mail, by facsimile, or by hand, as appropriately expeditious given the format and quantity of documents or data produced, on Defendants' Co-Lead Counsel for Class Actions and on Defendants' Co-Lead Counsel for Personal Injury/Wrongful Death Cases. Pursuant to Fed. R. Civ. P. 5, service on Defendants' Co-Lead Counsel shall constitute service on all Defendants.

Case-specific materials in the personal injury/wrongful death cases shall be produced to local counsel on the particular case, copying without enclosures lead/liaison counsel.

## B. DOCUMENT PRODUCTIONS

### 1. Document Identification

Each producing party shall give each page of any document it produces a

27

1    unique number, using a consistent numbering system that identifies the producing
2    party (using a letter or series of letters as a prefix).

3        In the event that documents produced by persons or entities who are not parties
4    to this action are not, when produced, identified by a unique numbering system, the
5    party at whose request production was made shall be responsible for numbering the
6    documents in accordance with the terms of the paragraph above.

7            **2.      Creation of Document Repositories**

8        The Parties believe that a global document management system would not
9    necessarily be cost effective or efficient given that the parties will likely have
10   differing preferences concerning the manner that documents will be utilized or shared.
11   Instead, lead Counsel for each side may establish a document depository for purposes
12   it deems appropriate and necessary to accomplish their obligations to their respective
13   constituencies in this MDL.    Security and access to such repositories shall be
14   consistent with all confidentiality and protective orders entered in this litigation.  Each
15   side shall administer and bear the costs of its own depository.

16           **3.      Privileged Information**

17             **a.     *Inadvertent Disclosure***

18       If a party inadvertently produces documents or information subject to a claim of
19   privilege or work product protection, that production will not waive otherwise
20   applicable claims of privilege or work product protection to the extent provided for
21   under Federal Rule of Evidence 502(b). Upon discovery by the receiving party, or
22   receipt of written notice from the producing party identifying privileged or protected
23   documents that were inadvertently produced, whichever first occurs, the receiving
24   party shall within seven (7) days: either (a) return the subject documents and all
25   copies, and destroy any portions of any work product containing or reflecting the
26   contents of the subject materials; or (b) after attempting to resolve any dispute with
27   opposing counsel informally, file a motion challenging the assertion of privilege and
28   tender the subject documents for in camera review with the motion. The receiving

1  party shall do nothing to compromise the privilege claim until the issue is resolved.

2          **b.**     ***Privilege Log***

3        Subject to the exceptions below, any documents withheld from production or

4  redacted in part on the grounds of attorney-client privilege, the work product doctrine

5  or any other privilege or protection from disclosure, shall be listed on a privilege log

6  providing sufficient information to allow the receiving party to determine the basis of

7  the privilege asserted, including identification of the document, the date, author(s),

8  recipient(s), a brief description of the document (e.g., correspondence, memo, etc.),

9  and the basis for withholding the document (e.g., attorney-client privilege, attorney

10  work product, etc.). The following categories of documents protected from disclosure

11  on grounds of privilege or work product need not be included on any such privilege

12  log: (i) communications between a party and its outside counsel; (ii) outside counsel

13  communications; (iii) outside counsel and in-house counsel work product and

14  materials generated by or for counsel, including communications with and materials

15  prepared by consulting experts; and (iv) communications of common interest among

16  Plaintiffs' counsel or among Defendants' counsel.

17         **4.**     **Production of Foreign Language Documents**

18        This litigation is likely to involve a substantial number of Japanese language

19  documents.  With the exception of translated documents produced to Government

20  entities and which are to be produced by Toyota pursuant to Order No. 3, unless

21  translated versions of documents are kept in ordinary course of business, Defendants

22  are under no obligation to produce translated copies of Japanese documents.

23        The Parties recognize that disputes as to translations may develop during the

24  course of this litigation.  The Parties shall meet and confer concerning a proposal for

25  resolving such disputes with respect to documents that are to be used at depositions or

26  that any party seeks to introduce or rely upon in any submission or court proceeding

27  related to a summary judgment or other dispositive motion, or at trial in this MDL.

28

29

### 5.   Format of Produced Documents

The Parties are currently engaged in a meet and confer process concerning the format of documents to be produced in discovery in this litigation, including but not limited to "Load File Specifications" for document productions.  Should the parties be unable to reach agreement on this issue, they shall submit a joint proposal containing alternative provisions where there is disagreement.

### C.   **Depositions**

### 1.   **Avoidance of Duplicative Depositions**

The Parties expect that fact witness depositions in this matter will commence in due course. (Except as otherwise provided in this Discovery Plan, all expert witness depositions will be deferred until further order of this Court.)  The Parties' objective is to avoid the repeated depositions of any person.  Accordingly, except by agreement of the parties, as provided herein, or for good cause shown, no witness subject to these protocols shall be deposed more than once on the same subject matter. This restriction does not apply to persons rendering case-specific expert opinions.

Representatives of the Plaintiffs' Lead Counsel (and/or their designated representatives) and the Defendants' Lead Counsel (and/or their designated representatives) therefore shall attempt to establish by mutual agreement a schedule for depositions in this proceeding that reflects a sequencing that is consistent with (a) the availability of documents from among those produced by the parties and third parties; (b) the objective of avoiding the need to subject any person to repeated depositions; and (c) the need to preserve relevant testimony. Disputes concerning the timing and scheduling of depositions may be presented to the Court of Special Master in accordance with Local Rule 37 and this Discovery Plan.

### 2.   **Deposition Notices and Scheduling**

The Parties are expected to notice and take only those depositions needed to prepare their case.  The parties are further expected to cooperate in the scheduling of depositions.

LEGAL02/31977743v4

Discovery shall be staged in a manner appropriate to present specific issues to the Court.  For example, depositions of any named Plaintiffs in the Consolidated Class Action Complaint  shall be taken within a reasonable time before Defendants' briefing on class certification is due to be submitted in accordance with the class certification schedule to be established by the Parties and the Court.

Depositions of individual plaintiffs and other case-specific fact witnesses in the Personal Injury/Wrongful Death Cases may be taken in this proceeding at any time consistent with the foregoing principles of cooperation and planning.  Counsel for the parties are to meet and confer as to the sequencing and scheduling of case-specific fact discovery.

The parties shall endeavor to schedule all depositions at locations within a reasonable distance from the residence of the deponent.

Absent compelling circumstances, at least forty-five (45) days notice must be given for any non-party witness deposition.  Absent compelling circumstances, at least thirty (30) days notice must be given for any plaintiff deposition.  Absent compelling circumstances, at least forty-five (45) days notice must be given for any deposition of a domestic corporate defendant, whether taken pursuant to FRCP 30(b)(6) or as the deposition of a named employee.  Absent compelling circumstances, at least ninety (90) days notice must be given for any deposition of a foreign corporate defendant, whether taken pursuant to FRCP 30(b)(6) or as the deposition of a named employee.

Plaintiffs' Lead Counsel will be responsible for keeping the counsel that they represent fully apprised of the scheduling of any depositions in this proceeding.

### 3.   Specific Restrictions Concerning Depositions of Defendants

#### a.   *Necessity of Depositions*

Plaintiffs shall in good faith take only those depositions deemed reasonably necessary under the circumstances of this case.

#### b.   *Number of Depositions*

As to each named defendant, the parties shall meet and confer to determine the

LEGAL02/31977743v4

appropriate limits on the number of individuals, including former employees, that Plaintiffs shall be permitted to depose. Upon request by plaintiffs, a defendant shall take reasonable steps to make available for deposition requested former employees. Plaintiffs shall not contact former employees of defendants without the permission of the former employer defendant.

The Parties shall also meet and confer to determine the proper number of Rule 30(b)(6) depositions that will be permitted. However, the particular matters identified in a Rule 30(b)(6) notice shall not duplicate any matters identified in connection with a prior Rule 30(b)(6) deposition notice of that defendant.

### c.   *Avoiding Multiple Depositions*

Plaintiffs are encouraged to await corporate depositions until documents have been produced to avoid the necessity of further depositions based on document production and review. Except by agreement of parties or for good cause shown, no corporate employee or representative subject to these protocols shall be deposed more than once on the same subject matter.

### d.   *Use of Depositions at Trial*

Any corporate employee or 30(b)(6) witness that is deposed in this MDL may not be subpoenaed for attendance and testimony at trial as the deposition will be conducted pursuant to FRCP 32(a)(3) permitting use of the deposition at a hearing or trial. Toyota may elect to produce the witness at trial voluntarily.

### 4.   Attendance

While a deponent is being examined about any document designated confidential pursuant to a confidentiality agreement or order or the confidential information contained therein, persons to whom disclosure is not authorized under the confidentiality order shall be excluded.

Unnecessary attendance by counsel is discouraged, and the Court may not compensate such attendance in any fee application to the Court.

32

LEGAL02/31977743v4

### 5.    Conduct of Depositions

In any deposition, no more than two attorneys for the Plaintiffs and no more than two attorneys for Defendants may question the deponent. The Plaintiffs' questioners for each deposition shall be designated by Lead Counsel. In the case of any deposition noticed by a Defendant, the questioner(s) shall be selected jointly by Defendants' counsel. Questioners shall divide their time by agreement, asking the Court to resolve any disputes in that regard (but only where absolutely necessary).

Reasonably in advance of the date scheduled for a deposition, any attorney designated as a questioner for that deposition shall coordinate with the other counsel whose interests they represent regarding the areas of examination and specific questions to be asked. The purpose of this coordination is to ensure that a thorough deposition is conducted. Counsel who will not be serving as questioners are encouraged to submit proposed questions or lines of questioning to the attorney designated to conduct the deposition on their behalf. Attorneys will be responsible for tracking the dates of depositions and suggesting their proposed lines of questioning on a timely basis. New or supplemental depositions of witnesses will not be scheduled without prior leave of Court.

In some depositions, there may be sufficient divergence of positions among various parties that additional examiners may be appropriate on *non-redundant* (i.e., new subject) matters. In those instances, with leave of Court in advance of the deposition and upon good cause shown, additional attorneys will be permitted to question the deponent on non-redundant matters.

All objections are preserved except as to form of the question and responsiveness of the answer. Counsel shall otherwise comply with Fed. R. Civ. P. 30(d)(1) and Rule 30.1 of the Local Rules of this Court concerning the posing of objections during a deposition.

### 6.    Furnishing Documents in Advance of Fact Witness Depositions

Deposing counsel, shall, ten (10) days prior to the deposition, furnish

deponent's counsel with a copy of all of the documents he or she, in good faith, expects to question the deponent about during the deposition. Where the deponent is an employee of a defendant, the deposing counsel may furnish the deponent's counsel with a list designating the Bates numbers of all the documents he or she expects to question the deponent about during the deposition in lieu of furnishing deponent's counsel with the actual documents. Deponent's counsel may prepare the deponent for the deposition in keeping with all professional and ethical rules of practice (i.e., deponent shall answer all questions fully and truthfully). In addition to providing documents to the deponent's counsel ten days prior to the deposition (or furnishing the deponent's counsel with a list of Bates numbers of documents) pursuant to this paragraph, extra copies of documents about which counsel expect to examine the deponent should ordinarily be provided to the deponent at the deposition.

Pursuant to Rule (30)(c), deposing counsel may notify deponent's counsel that he or she is withholding particular documents about which the deponent will be questioned if such documents may be withheld under F.R.E 613(a).

The foregoing provisions shall not apply to expert depositions.

### 7. Duration of Examinations

Consistent with Fed. R. Civ. Pro. 30(d)(1), depositions shall generally be limited to seven (7) total hours, excluding time taken for breaks, meals, and other reasons, not extend beyond one (1) day except by agreement of the Parties or with leave of Court. However, the Parties recognize the need for flexibility in determining the duration of examinations and shall meet and confer in good faith to attempt to resolve any disputes over appropriate exceptions to this durational limitation. Should the Parties be unable to reach agreement, deviation from these time limitations will be permitted only with leave of Court. Any request to extend the time limit on a deposition must be accompanied by a certification that compelling reasons preclude completion of the deposition during the allotted time period and that the particular information being sought cannot be elicited from a witness that is (or could be)

34

1   scheduled to appear at another time.

2       It is expected that counsel will confer prior to each deposition to determine how

3   time will be allotted to each participating attorney, consistent with the provisions set

4   forth above.  This conference should occur a sufficient time prior to the deposition to

5   permit the resolution of any disputes regarding time allocation by the Court, should

6   that become necessary.

7             **8.**    **Supplemental Depositions**

8       Witnesses shall not be subjected to more than one deposition conducted within

9   the limitations described above, nor to repetitive and redundant questioning.

10   Supplemental depositions will be permitted only upon motion demonstrating (a) a

11   compelling need for the information sought and (b) compelling reasons why the

12   desired lines of questioning could not have been pursued in the original deposition and

13   why the information cannot be obtained from any persons available for future

14   depositions.  If permitted, a supplemental deposition shall be treated as the resumption

15   of the deposition originally noticed. Examination in any supplemental deposition shall

16   not be repetitive of any prior interrogation.

17       Any person or entity who was not a party to the MDL when a corporate

18   employee or representative deposition was taken may, within sixty (60) days of

19   becoming a party and after coordination with Co-Lead Counsel for the appropriate

20   group, request permission of counsel for the deponent, and the Court if necessary, to

21   conduct a supplemental deposition of the corporate employee or representative.  If

22   permitted or ordered, the supplemental deposition shall be treated as the resumption of

23   the deposition originally noticed and shall not include examination on topics

24   addressed in prior portions of the deposition or otherwise repetitive of prior

25   interrogation.

26             **9.**    **Stenographic Recording**

27       A certified court reporter shall stenographically record all deposition

28   proceedings and testimony.  The court reporter shall administer the oath or affirmation

LEGAL02/31977743v4

to the deponent.  A written transcript by the court reporter shall constitute the official record of the deposition for purposes of Fed. R. Civ. P. 30(e) (submission to the witness) and 30(f) (filing, exhibits).

### 10.    Videotaping

A party may record a deposition by videotape pursuant to Fed. R. Civ. P. 30(b)(2) and (3). The following rules shall apply to the taking of any such deposition:

Simultaneous Stenographic Recording:    All videotaped depositions shall be simultaneously stenographically recorded.

Cost of the Deposition:    The party requesting videotaping of the deposition shall bear the expense of the videotaping. However, all parties will bear their own expense of obtaining copies of the videotaped deposition.

Videotape Operator:    The operator(s) of the videotape recording equipment shall be subject to the provisions of Fed. R. Civ. P. 28(c). At the commencement of the deposition, the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

Interruptions:    No attorney shall direct instructions to the video operator as to the method of operating the equipment. The video camera operation will be suspended during the deposition only upon stipulation by counsel and during "off the record" discussions. The video operator shall record on camera the time of suspension and any subsequent reconvening of the deposition.

Standards:    The deposition will be conducted in a manner to replicate, to the extent feasible, the presentation of evidence at trial. Unless physically incapacitated, the deponent shall be seated at a table except when reviewing or presenting demonstrative materials for which a change in position is needed. To the extent practicable, the deposition will be conducted in a neutral setting, against a solid background, with only such lighting as is required for accurate video recording. Lighting, camera angle, lens setting, and field of view will be changed only as necessary to record accurately the natural body movements of the deponent or to

portray exhibits and materials used during the deposition. Sound levels will be altered only as necessary to record satisfactorily the voices of counsel and the deponent.

Certification:  After the deposition is completed, the video operator shall certify on camera the correctness, completeness, and accuracy of the video tape recording in the same manner as a stenographic court reporter. No part of a videotaped deposition shall be released or made available to any member of the public unless authorized by the Court.

Use:  Depositions may, under the conditions prescribed in Fed. R. Civ. P. 32(a)(1)-(4) or as otherwise permitted by the Federal Rules of Evidence, be used against any party (including parties later added and parties in cases subsequently filed in, removed to, or transferred to this Court as part of this litigation): (1) who was present or represented at the deposition; (2) who had reasonable notice thereof; or (3) who, within thirty (30) days after the taking of the deposition (or, if later, within sixty (60) days after becoming a party in this court in any action that is a part of this litigation), fails to show just cause why such deposition should not be usable against such party.

### 11. Deposition Disputes

During depositions, disputes that arise that cannot be resolved by agreement and that, if not immediately resolved, will significantly disrupt the discovery schedule or require a rescheduling of the deposition, may be presented to the Court or Special Master by telephone.  The presentation of the issue and the Court's ruling will be recorded as part of the deposition.  The Court will exercise by telephone the authority granted under 28 U.S.C. § 1407(b) to act as district judge in the district in which the deposition is taken.

### D.  Discovery Dispute Resolution

To avoid unnecessary litigation concerning discovery disputes, counsel are directed to meet and confer before filing any motion on discovery issues. In any motion filed, counsel for the moving party must comply with Rule 37.1 of the Local

37

1    Rules of this Court.

2    **IX.    MODIFICATION**

3        Modification of this Order may be necessary based on experience operating

4    under it and the parties and claims ultimately included in the Master Consolidated

5    Complaint.  Any party is therefore free to seek modification of this Discovery Plan for

6    good cause shown.

7

8    Dated:  June 21, 2010                Respectfully submitted,

9

10                                        By:    /s/ Lisa Gilford

11   CARI K. DAWSON
     **ALSTON + BIRD LLP**
12   1201 West Peachtree Street
     Atlanta, GA 30309
13   Email:  cari.dawson@alston.com

14   LISA GILFORD
     **ALSTON + BIRD LLP**
15   333 South Hope Street, 16th Floor
     Los Angeles, CA 90071
16   Email:  lisa.gilford@alston.com

17   ***Lead Defense Counsel for Economic Loss Cases***

18                                        By:    /s/ Vincent Galvin, Jr.

19   VINCENT GALVIN, JR.
     **BOWMAN AND BROOKE**
20   1741 Technology Drive, Suite 200
     San Jose, CA 95110
21   Email:  vincent.galvin@bowmanandbrooke.com

22   JOEL SMITH
     **BOWMAN AND BROOKE**
23   1441 Main Street, Suite 1000
     Columbia, SC 29201
24   E-mail:  joel.smith@bowman-brooke.com

25   ***Lead Defense Counsel for Personal Injury/Wrongful
     Death Cases***

26

27

28

LEGAL02/31977743v4