Elizabeth J. Cabraser, Bar No. 083151
ecabraser@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Mark P. Robinson, Jr., Bar No. 054426
mrobinson@rcrlaw.net
ROBINSON, CALCAGNIE &
  ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Marc M. Seltzer, Bar No. 054534
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3102
Facsimile: (310) 789-3006

Plaintiffs' Co-Lead Counsel for
Personal Injury/Wrongful Death Cases

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL
  SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 268-9320
Facsimile: (206) 623-0594

Frank M. Pitre, Bar No. 100077
fpitre@cpmlegal.com
COTCHETT, PITRE &
  MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Plaintiffs' Co-Lead Counsel for
Economic Loss Cases

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>**This Document Relates To:**<br><br>ALL CASES | **Case No. 8:10ML2151 JVS (FMOx)**<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' PROPOSED DISCOVERY PLAN**<br><br>Date: June 23, 2010<br>Time: 9:00 a.m.<br>Place: Courtroom 10C |

Co-Lead Counsel for plaintiffs submit the following Memorandum in support of their proposed Discovery Plan:

## I.   INTRODUCTION

On June 8, 2010, Co-Lead Counsel for plaintiffs, submitted to counsel for the Toyota defendants, a detailed and comprehensive initial proposal for discovery. (See Exhibit "1" hereto).  The proposal included an itemized list of subject matter categories for early depositions pursuant to F.R.Civ.P. 30(b)(6), (Ex."1:A"), a list of all vehicles pertinent to the discovery proposals, (Ex."1:B"), an exemplar overview of categories of ("ETCS") (electronic throttle control system) related documents the Plaintiffs will be seeking in discovery (Ex."1:C"), and a list of sales, marketing, advertising and media documents that plaintiffs will ask the Toyota defendants to produce. (Ex. "1:D")  On June 16, 2010, the Toyota defendants provided plaintiffs with their own "working draft" of Toyota's plan (Exhibit 2).

On June 18, 2010, and again on June 21, counsel for Toyota and counsel for plaintiffs conducted meet and confer teleconferences to discuss the significant differences in the proposals.  Filed concurrently with this brief is Plaintiffs' Proposed Discovery Plan, which narrows the discovery initially sought in plaintiffs' June 8, 2010 proposals.  Instead of commencing with comprehensive discovery, plaintiffs are now agreeing to a more narrowed 75-day period of initial discovery. However, at some point comprehensive discovery will need to commence.  The staging of discovery in Plaintiffs' Proposed Discovery Plan is to enable the parties to design more comprehensive discovery based on that obtained in the initial phase of our litigation.  This memorandum will address the critical differences between plaintiffs' proposed plan and Toyota's, and the reasons, both legal and practical, why we respectfully submit that the Court should not accept Toyota's plan. Toyota's proposals are not only impractical and unreasonably restrictive, but if adopted, would obstruct and delay completion of discovery in a timely manner.

/ / /

/ / /

1

MEMORANDUM IN SUPPORT OF PLAINTIFFS' PROPOSED DISCOVERY PLAN

## II. PLAINTIFFS' POSITION STATEMENT RE INITIAL DISCOVERY

Over 37,000 events of sudden unintended acceleration ("SUA") have been reported by owners and operators of a variety of Toyota and Lexus automobiles and trucks. Despite multiple recalls of over a dozen Toyota models related to acknowledged defects in floor mats and accelerator assemblies, numerous instances of SUA have continued to be reported. A Congressional investigation has noted the dramatic rise in reported Toyota SUA events after 2001, when Toyota adopted an electronic throttle control system ("ETCS") for its Toyota and Lexus automobiles and trucks.

In this MDL proceeding, cases have been filed seeking remedies for personal injury, wrongful death and economic losses arising out of the apparent defective design of these vehicles that has led to this very large volume of SUA events. The root cause of the abnormal and unsafe performance of Toyota vehicles is currently under investigation. Toyota's repeated denial that there is anything wrong with its ETCS has been characterized by the Congressional Committee conducting one such investigation as being not supported by the evidence provided by Toyota.

The complexities of designing a case discovery plan in this MDL proceeding are accentuated by three factors: (1) the representation by counsel for defendants that most, if not all, documents related to the design, development, testing and evaluation of the ETCS system are in Japanese and that the persons most knowledgeable about those systems are Japanese speaking; (2) the lack of clear demarcation in the public record about the division of responsibilities among defendants Toyota Motor Corporation ("TMC"), Toyota Motor Sales, U.S.A., Inc. ("TMS") and other Toyota-affiliated companies over the sales and marketing of the Toyota vehicles and the means and manner of communicating with Toyota owners and dealers, governmental agencies and the public over recalls, repairs, warnings and investigation of the causes of SUA in Toyota and Lexus vehicles; and (3) the nature and operational details of the ETCS and diagnostics required for proper evaluation of the vulnerabilities of the system in the affected models.

Plaintiffs understand from discussions with defendants' counsel that design and manufacturing documents and their employees with knowledge of these issues reside principally with TMC in Japan, and that sales and marketing materials reside principally with TMS in California. Given the early stage of the litigation, plaintiffs propose an intensive and focused seventy-five (75) day period of initial discovery whereby targeted Fed. R. Civ. P. 30(b)(6) depositions of TMC are taken to obtain, among other things: (1) a historical overview of the design and development of the ETCS system; (2) an understanding of the basic architecture of the ETCS system and any modifications or adaptations of the ETCS system relating to various Toyota and Lexus models; (3) the categories and locations of documents that will enable plaintiffs to develop targeted document discovery requests regarding the causes of SUA and alternative throttle system designs; and (4) the identities of individuals with knowledge of matters relevant to these proceedings.

The initial discovery phase is designed to provide practical guidance and understanding of the Toyota design, development, and testing processes, as well as identification of individuals and clarity as to terminology, to assist in the selection of documents required for analysis. Additionally, it will allow the parties to assess the time necessary for appropriate translation of documents from Japanese to English.

During the same time, Rule 30(b)(6) depositions of TMS and other Toyota-related defendants will be conducted to obtain a similar understanding of their respective roles regarding: (1) sales and marketing activities; (2) communications with Toyota owners and dealers, government agencies and the public regarding SUA and recalls of vehicles for floor mats and accelerator pedal defects; (3) sales, marketing, testing and communications with Toyota owners and dealers regarding SUA and the public generally; and (4) communications with suppliers of component parts to Toyota.

Finally, during this same seventy-five (75)-day period, plaintiffs propose that named plaintiffs in Personal Injury/Wrongful Death actions and named class plaintiffs

who may be proffered as class representatives in plaintiffs' consolidated class action complaint provide defendants with completed fact sheets, enabling defendants to assess the nature and scope of their claims and identity of documents and witnesses.

The discovery plan proposed by plaintiffs is intended to provide a tailored approach for conducting core discovery that plaintiffs believe is relevant to the claims and defenses in both Personal Injury/Wrongful Death and Economic Loss Class Action cases, while conserving judicial resources, eliminating duplicative discovery, and promoting the just and efficient conduct of this litigation. Plaintiffs' proposed plan is intended to apply to all cases transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to its order of April 9, 2010, and any related actions that have been or will be included as part of MDL No. 2151.

### III.  BIFURCATION OF CLASS & NON-CLASS CLAIMS IS UNWARRANTED

Plaintiffs respectfully submit that the Court should not approve a discovery plan that attempts to bifurcate or phase discovery along class/non-class lines. Such an attempt at bifurcation is at odds with the key insight of this case, articulated by this Court in its April 14, 2010 Order No. 1: Initial Conference and May 14, 2010 Order No. 2: Adoption of Organization Plan and Appointment of Counsel, which places the initiation and completion of core discovery, *i.e.*, discovery common to all claims, as a chief object of this litigation. This discovery includes "discovery of the development, marketing, sales, manufacture, and administration of the Toyota products and product programs at issue in this case." (Order No. 1 at 2: 18-20). Such discovery is of equal importance to class plaintiffs in meeting their Rule 23 burden, and to both class and individual plaintiffs in proving Toyota's liability. Thus, "to the extent possible, individual case needs will be combined and coordinated with core discovery." (Order No. 1 at 2: 23-24). Toyota's proposed discovery plan strays from this central vision and discovery coordination goal.

As to separating class and non-class discovery, the MANUAL FOR COMPLEX LITIGATION warned in 2004, at p. 256, that "there is not always a bright line between the

two."  Any bright line that ever existed between class and non-class discovery in the general case has been erased by both Rule 23 amendments, and developments in class-related jurisprudence, which have combined to push the class certification determination to a later stage of the proceedings, and to intertwine an inquiry into merits-related facts inextricably with the procedural evaluation of whether important fact issues can be proven on a common basis at trial.  Rule 23's recent amendments shifted the timing of the certification motion from the long-standing "as early as practicable" place at the outset of the case, to the more flexible (and almost invariably later) "at an early practicable time." *See* Fed. R. Civ. P. Rule 23(c)(1)(A); MANUAL FOR COMPLEX LITIGATION, FOURTH, (Federal Judicial Center 2004), Sections 21.133 (Timing of the Certification Decision) and 21.14 (Precertification Discovery).  The MANUAL advises that this "early practicable time" is "when the court has sufficient information to decide whether the action meets the certification criteria of Rules 23(a) and (b)."  MANUAL, 21.133 at pp. 252-253.  "A preliminary inquiry into the merits may be required to decide whether the claims and defenses can be presented and resolved on a class-wide basis."  MANUAL, Section 21.14 at p. 255.

The MANUAL recites the traditional practice of bifurcating class/non-class discovery, which was done primarily to heed the now-defunct "as early as practicable " timing mandate, but advises that "[c]ourts have recognized that information about the nature of the claims on the merits and the proof that they require is important to deciding certification.  Arbitrary insistence on the merits/class discovery distinction sometimes thwarts the informed judicial assessment that current class certification practice emphasizes." *Id.* at p. 256.  Such an arbitrary distinction would certainly thwart an informed determination of class certification, and the goal of conducting central core discovery common to all of the cases in this MDL proceeding.

The Ninth Circuit recently surveyed its own case law, that of district courts within the Ninth Circuit, and that of other federal Circuits, in the context of controlling Supreme

Court authority and the language of Rule 23, to determine the standard for class certification determinations within the Ninth Circuit, including the role of the merits and of discovery. *See Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 580-598 (9th Cir. 2010). Courts must avoid conducting mini-trials on, or deciding, the merits at the class certification stage. "A district court must sometimes resolve factual issues related to the merits to properly satisfy itself that Rule 23's requirements are met, but the purpose of the court's inquiry at this stage remains focused on . . . common *questions* of fact or law under 23(a)(2) or predominance under Rule 23(b)(3), not the proof of answers to those questions or the likelihood of success on the merits." 603 F.3d at 590 [italics in original]. However, merits issues, and hence merits evidence, do matter to the extent they overlap with any Rule 23 criteria, and, since defendants may seek to defer merits-related evidence to buttress arguments that merits issues cannot be proved on a class-wide basis, are due to be discovered and addressed at the class certification stage. *Id.* at 598.

The Plaintiffs' discovery plan is based on the fundamental legal premise that, subject to the agreement of the Court, the plaintiffs, and not the defendants, should be in charge of plaintiffs' lawsuit. As long as the discovery sought is relevant and not unduly burdensome, plaintiffs should control what discovery they seek, when they seek it, and how they use such information to prove their claims. Plaintiffs' Discovery Plan is also based on the fundamental factual premise that all of the plaintiffs suing Toyota over SUA issues, including for personal injury, wrongful death, economic loss, and dealership issues, must obtain information and evidence regarding the design, development, engineering, testing, manufacture, distribution, marketing, and sales of all Toyota vehicles which have a propensity for SUA.

There is simply no efficiency to be gained, by allowing Toyota to parcel out tidbits of information, and release only small pieces of a massive discovery puzzle, based entirely upon Toyota's preference and convenience. (*e.g.,* Toyota's offer to provide "ETCS Documents Pertaining to 2002-2006 Camry," or Toyota's offer to bifurcate "class and merits discovery" and withhold "merits"-based discovery until some undetermined future

6

1 time). Before motions such as summary judgment or class certification can be heard, or
2 evidentiary motions including *Daubert* related issues can reasonably be considered,
3 Toyota must make available to the plaintiffs core discovery regarding the subject vehicles.
4 This is likely the only means by which plaintiffs and their experts will be able to
5 thoroughly analyze the evidence, to determine the causes of SUA, and to address Toyota's
6 defenses.

7 In light of the breadth and complexity of this litigation and the issues involved, the
8 proposed plan is neither overbroad nor unduly burdensome. A district court has broad
9 discretion to shape the contours of discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th
10 Cir.2002); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH § 11.4 (2004) ("[t]he
11 Federal Rules of Civil Procedure, along with the court's inherent power, provide ample
12 authority for early and ongoing control of discovery in complex litigation.").

13 Plaintiffs believe that their proposed Discovery Plan is designed to be thorough,
14 while at the same time reasonable, cost-efficient and practical. Plaintiffs also believe that
15 this Plan will be effective in completing discovery in an orderly and timely fashion.

16 **IV. TOYOTA'S PROPOSED PLAN IS IMPRACTICAL AND UNREASONABLY**
17 **RESTRICTIVE, AND WOULD SEVERELY OBSTRUCT AND DELAY**
18 **COMPLETION OF DISCOVERY IN A TIMELY MANNER.**

19 As the Court will see from Toyota's response, Toyota opposes a thorough and
20 multi-faceted approach, preferring instead to have the tail wag the dog. Toyota would
21 have discovery proceed in a very limited fashion, with Toyota dictating not only a
22 plodding pace, but a narrowly confined scope of inquiry. Essentially, Toyota would like
23 to pick one model, namely the Toyota Camry from 2002 to 2006, and provide the
24 technical documents Toyota has collected for that vehicle. Toyota would then move on to
25 produce documents related to another vehicle such as the Tundra, and then to a third
26 vehicle like the Lexus EM.

27 Toyota's proposal fails to recognize that "relevant information need not be
28 admissible if it is "reasonably calculated to lead to the discovery of admissible evidence."

*See* Fed. R. Civ. P. 26(b)(1).  "Pretrial discovery is normally to be accorded a broad and liberal treatment." *Herbert v. Lando*, 441 U.S. 153, 183 (1979).  According to *Moore's Federal Practice*, "[a] trial court has considerable discretion in determining relevance for the purposes of discovery. If the court is uncertain as to the relevance of a discovery request, a response is generally ordered since it may be difficult to determine from the pleadings all of the issues which will be developed at trial, and if the discovered matter is offered at trial, an objection may be raised at that time." 3B James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 24.07, *cited in Habtegiorgis v. OIC of Washington*, 2010 WL 2232142 at *1, 2010 U.S. Dist. LEXIS 53832, at *2 (E.D.Wash. Jun. 2, 2010). Additionally, "[r]elevance is broadly construed and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *City of Rialto v. U.S. Dept. of Defense*, 492 F.Supp.2d 1193, 1202 (C.D.Cal. 2007).

To determine the true causes of the thousands of reports of SUA, a thorough analysis will likely be required involving all potential models and model years.  Plaintiffs and their experts must examine and evaluate evidence relating to the ETCSs in dozens of Toyota models, as well as the history of SUA events, failures and complaints for each model.  This will assist in identifying the various conditions that can lead to these events, the common causal factors involved, and the common defects and flaws in the design and manufacture of Toyota ETCSs.   The fact that these same systems are used in approximately 125 models, makes and model years dictates that an effective analysis cannot be effectively nor efficiently accomplished under the approach suggested by Toyota. A slow-motion, vehicle-by-vehicle inquiry will not only unduly delay this litigation, but it will be an exercise in futility that would thwart one of the primary goals of discovery here, which is determining the real causes of these SUA events, and the real reasons they have been and are still occurring nationwide.

Both sides have the right to conduct thorough, comprehensive and efficient discovery.  Relevant information for purposes of discovery is information "reasonably

calculated to lead to the discovery of admissible evidence." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992) (citation omitted). District courts have broad discretion in determining relevancy for discovery purposes. *See Hallett,* 296 F.3d at 751. The Ninth Circuit has explained the broad right of discovery granted to every party:

> We start with the premise that pre-trial discovery is ordinarily "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507, 91 L. Ed. 451, 67 S. Ct. 385 (1947). If no claim of privilege applies, a non-party can be compelled to produce evidence regarding any matter "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1). This broad right of discovery is based on the general principle that litigants have a right to "every man's evidence," *United States v. Bryan*, 339 U.S. 323, 331, 94 L. Ed. 884, 70 S. Ct. 724 (1950), and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth.

*Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.1993)

Toyota may not prefer the approach plaintiffs are proposing, but the plaintiffs are not dictating to Toyota how the defense should conduct its discovery. Nor should Toyota dictate how plaintiffs conduct their discovery. "[A] party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory". 8 Wright & Miller, FED. PRAC. & PROC. CIV. § 2011 (3d ed.) Toyota should not be allowed to arbitrarily dictate both scope and the pace of discovery here, nor should it be permitted to decide which vehicles it believes are relevant and when discovery as to each vehicle should take place. In *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180 (10th Cir. 2009), for example, plaintiffs in a products liability action against a tire manufacturer based on five specifically alleged design and manufacturing flaws, were entitled, under a relaxed substantial similarity requirement, to discovery of information on tires manufactured to specifications other than the tire at issue in the crash, since plaintiffs'

claim included argument that the manufacturer was on notice of the tread separation problem. The court noted that the defendant "essentially [sought] to limit the plaintiffs' discovery based upon its own theory of what tires are substantially similar." *Id.* at 1192. The court rejected that attempt: "However, a party should not be limited by its opponent's theory of the case in determining what is discoverable. … What is "relevant to the claims or defenses depends on the circumstances of the pending action." Fed. R. Civ. P. 26 Advisory Committee's Note (2000)."

Toyota's position is the equivalent of the plaintiffs suggesting that Toyota conduct discovery one plaintiff at a time, with the plaintiffs selecting each case, and with discovery moving on to the next plaintiff only after Toyota has requested and obtained discovery in the previous case. This is no more impractical than Toyota's vehicle-by-vehicle proposal. Either approach would slow discovery to a glacial pace and give one party nearly unfettered unilateral ability to tactically limit and delay discovery, and to thwart the objectives of this MDL.

### V.   CONCLUSION

For the reasons discussed herein, plaintiffs respectfully request that the Court enter an Order adopting Plaintiffs' Proposed Discovery Plan in its entirety, or with such modifications the Court deems appropriate.

Dated:  June 21, 2010              Respectfully submitted,

By:  */s/ Mark P. Robinson, Jr.*
         Mark P. Robinson, Jr.

Mark P. Robinson, Jr., Bar No. 054426
*mrobinson@rcrlaw.net*
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Telephone:  (949) 720-1288
Facsimile:  (949) 720-1292

Case 8:10-ml-02151-JVS-FMO   Document 204   Filed 06/21/10   Page 12 of 12   Page ID #:5098

| | | |
|---|---|---|
| 1 | Dated: June 21, 2010 | By: */s/ Elizabeth J. Cabraser*<br>Elizabeth J. Cabraser |

Elizabeth J. Cabraser, Bar No. 083151
*ecabraser@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Dated: June 21, 2010                    By: */s/ Steve W. Berman*
                                                                Steve W. Berman

Steve W. Berman (*pro hac vice*)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 268-9320
Facsimile: (206) 623-0594

Dated: June 21, 2010                    By: */s/Frank M. Pitre*
                                                                Frank M. Pitre

Frank M. Pitre, Bar No. 100077
*fpitre@cpmlegal.com*
COTCHETT, PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Dated: June 21, 2010                    By: */s/ Marc M. Seltzer*
                                                                Marc M. Seltzer

Marc M. Seltzer, Bar No. 054534
*mseltzer@susmangodfrey.com*
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3102
Facsimile: (310) 789-3006

11

MEMORANDUM IN SUPPORT OF PLAINTIFFS' PROPOSED DISCOVERY PLAN