Steve W. Berman
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 268-9320
Facsimile:   (206) 623-0594

Marc M. Seltzer, Bar No. 054534
*mseltzer@susmangodfrey.com*
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3102
Facsimile:   (310) 789-3006

Co-Lead Counsel for Consumer Economic Loss Plaintiffs

Frank M. Pitre, Bar No. 100077
*fpitre@cpmlegal.com*
COTCHETT, PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577

Lead Counsel for Non-Consumer Economic Loss Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This documents relates to:<br><br>ALL ACTIONS | Case No.:  8:10ML2151 JVS (FMOx)<br><br>**MEMORANDUM OF ECONOMIC LOSS PLAINTIFFS IN SUPPORT OF PROPOSED ORDER REGARDING THE EFFECT OF THE ECONOMIC LOSS MASTER COMPLAINT AND THE FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>Date:       Sept. 13, 2010<br>Time:       3:00 p.m.<br>Location:  Courtroom 10C |

1278838v1/011847

# TABLE OF CONTENTS

**Page**

1. The MCC should not supersede the underlying complaints, thereby merging all constituent class actions into a single consolidated action. ........................ 1

2. Plaintiffs who originally filed suit in California have a right to have their state-law claims governed by the same law that would apply in California state court............................................................................................................... 4

    A.    *Klaxon* ................................................................................................ 4

    B.    *Van Dusen* ......................................................................................... 5

    C.    *Ferens* ............................................................................................... 6

    D.    The rule of *Van Dusen* applies in the MDL context. ............................. 6

3. Toyota's position violates the letter and the spirit of *Erie*, *Klaxon*, *Van Dusen*, and *Ferens*. .................................................................................... 7

4. The Amended California Complaint preserves the choice-of-law rights of plaintiffs in constituent class actions originally filed in California. ................. 8

5. Toyota's authorities do not require plaintiffs to move for class certification based on a consolidated complaint; nor do they require the Court to apply the choice-of-law rules of all transferor fora to claims asserted by plaintiffs in the California Actions. .................................................................................... 9

    A.    *Mercedes-Benz* ..................................................................................9

    B.    *ConAgra* ........................................................................................ 10

    C.    *Ford Ignition Switch* ...................................................................... 11

    D.    *Managed Care* and *Onstar* .............................................................. 12

6. Toyota's remaining arguments with respect to the Amended California Complaint are meritless................................................................................... 13

7. The MCC should not dismiss claims or defendants not named or asserted therein. ........................................................................................................... 15

8. Conclusion ..................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page**

*Adams v. California Department of Health Services*,
  487 F.3d 684 (9th Cir. 2007) .................................................................................. 14

*In re Air Crash Disaster Near Chicago, Ill.*,
  644 F.2d 594 (7th Cir. 1981) .................................................................................... 6

*In re Career Academy Antitrust Litigation*,
  57 F.R.D. 569 (E.D. Wis. 1972) ............................................................................... 3

*In re ConAgra Peanut Butter Products Liability Litigation*,
  251 F.R.D. 689 (N.D. Ga. 2008) ...................................................................... 10, 11

*In re Energy Systems Equipment Leasing Securities Litigation*,
  642 F. Supp. 718 (E.D.N.Y. 1986) ........................................................................... 3

*Erie Railroad Co. v. Tompkins*,
  304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) .................................................. 4

*Ferens v. John Deere Co.*,
  494 U.S. 516, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990) .............................. 4, 6, 7

*In re Ford Motor Co. Ignition Switch Products Liability Litigation*,
  174 F.R.D. 332 (D.N.J. 1997) ................................................................................ 11

*Garber v. Randell*,
  477 F.2d 711 (2d Cir. 1973) ..................................................................................... 2

*Geddes v. United Financial Group*,
  559 F.2d 557 (9th Cir. 1977) ................................................................................... 2

*In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*,
  489 F. Supp. 2d 932 (D. Minn. 2007) ...................................................................... 7

*H.L. Green Co. v. MacMahon*,
  312 F.2d 650 (2d Cir. 1962) ..................................................................................... 5

*Headrick v. Atchison, T. & S.F. Railway Co.*,
  182 F.2d 305 (10th Cir. 1950) .............................................................................. 5, 6

*Johnson v. Manhattan Railway Co.*,
  289 U.S. 479 (1932) ................................................................................................. 2

*Katz v. Realty Equities Corp. of New York*,
  521 F.2d 1354 (2d Cir. 1975) ................................................................................... 2

*Klaxon Co. v. Stentor Electric Manufacturing Co.*,
  313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941) .......................................... 4, 5

*In re Managed Care Litigation*,
  298 F. Supp. 2d 1259 (S.D. Fla. 2003) ............................................................. 12, 13

*Menowitz v. Brown*,
  991 F.2d 36 (2d Cir. 1993) .................................................................................. 6

*In re Mercedes-Benz Tele Aid Contract Litigation*,
  257 F.R.D. 46 (D.N.J. 2009) .......................................................................... 9, 10

*In re Onstar Contract Litigation*,
  600 F. Supp. 2d 861 (E.D. Mich. 2009) ............................................................ 12

*In re Phenylpropanolamine Products Liability Litigation*,
  460 F.3d 1217 (9th Cir. 2006) .......................................................................... 3, 8

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) ................................... 12

*In re Propulsid Products Liability Litigation*,
  208 F.R.D. 133 (E.D. La. 2002) .................................................................... 2, 13

*In re Prudential Securities Inc. Ltd. Partnerships Litigation*,
  158 F.R.D. 562 (S.D.N.Y. 1994) ......................................................................... 3

*In re Temporomandibular Joint Implants Products Liability Litigation*,
  97 F.3d 1050 (8th Cir. 1996) ............................................................................... 6

*Van Dusen v. Barrack*,
  376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) ................................. 4, 5, 8

*In re Vioxx Products Liability Litigation*,
  239 F.R.D. 450 (E.D. La. 2006) ........................................................................ 13

*Washington Mutual Bank v. Superior Court*,
  24 Cal. 4th 906, 103 Cal. Rptr. 2d 320 (2001) .............................................. 7, 12

*In re Wirebound Boxes Antitrust Litigation*,
  128 F.R.D. 262 (D. Minn. 1989) ......................................................................... 2

## STATUTES AND RULES

28 U.S.C. § 1404(a) ................................................................................................. 5

28 U.S.C. § 1407(a) ......................................................................................... passim

## OTHER AUTHORITIES

Diane E. Murphy, *Unified and Consolidated Complaints in Multidistrict Litigation*,
  132 F.R.D. 597 (1991) ......................................................................................... 3

Toyota has taken two positions with respect to the Economic Loss Master Consolidated Complaint ("MCC") (Doc. 263) and the First Amended Consolidated Complaint ("Amended California Complaint") (Doc. 264).  First, Toyota argues that plaintiffs must move for class certification based on a consolidated complaint that supersedes all underlying class action complaints.  Second, Toyota contends the Court must apply the choice-of-law rules of <u>all</u> transferor fora to <u>every</u> named plaintiffs' claims at class certification.  Those two positions are inherently contradictory.  None of the cases cited by Toyota supports either position.

As we discuss below, Toyota's positions are directly contrary to two fundamental rules of complex litigation.  First, MDL consolidation does not merge constituent actions together or otherwise affect the rights of the parties.  Second, plaintiffs have a right – rooted in federalism and *Erie* – to have their claims governed by the same law that would apply in the absence of MDL consolidation.

As applied to this litigation, those two precepts counsel the following with respect to the MCC and Amended California Complaint:  First, the MCC should not supersede underlying complaints in the constituent class actions.  Second, the Amended California Complaint should not be stricken.  Instead, the Court should allow class plaintiffs to use the Amended California Complaint as the operative pleading for class certification and, later, trial in this District.

**1.    The MCC should not supersede the underlying complaints, thereby merging all constituent class actions into a single consolidated action.**

Below, we amplify the arguments and authorities presented in our initial statement with respect to the effect of the MCC.  But first, we wish to point out that Toyota's response sheds almost no light on its position with respect to the effect of the MCC.  Toyota simply states (in a footnote) that it "strenuously oppose[s] Plaintiffs' proposal with respect to the effect of the MCC and will submit full briefing on this issue on September 9."  Doc. 310 at 1 n.1.  Toyota's proposed order also is silent with respect to the effect of the MCC.  *See* Doc. 310-1.  Toyota

apparently seeks to deny plaintiffs a meaningful opportunity to address its position in writing, even though the Court requested full briefing on this issue.

Because Toyota has withheld its current position on the effect of the MCC, the starting point for our discussion will be the proposed stipulation and order that Toyota sent us before the MCC was filed, which stated in part:

> [T]he consolidated complaint(s) "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another," *see Geddes v. United Financial Group*, 559 F.2d 557, 561 (9th Cir. 1977) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1932)), and "[i]nstead, it should be considered only as an administrative device to aid efficiency and economy." *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 141 (E.D. La. 2002).

Exhibit A. That is a correct statement of the law.

Indeed, "[i]t is axiomatic that consolidation is a procedural device designed to promote judicial economy and that consolidation cannot effect a physical merger of the actions or the defenses of the separate parties." *Katz v. Realty Equities Corp. of N.Y.*, 521 F.2d 1354, 1358 (2d Cir. 1975). Furthermore, it is error for a district court to order the filing of a consolidated complaint that will effectively merge all constituent actions together if it threatens to prejudice a party. *See Garber v. Randell*, 477 F.2d 711, 716 (2d Cir. 1973) (reversing district court's consolidation order, which, "although purporting to be for 'pretrial purposes,' went beyond mere consolidation of the three suits for such purposes" because "it directed the filing of the Consolidated Amended Supplemental Complaint, which superseded the complaints filed in the three separate actions," thereby potentially prejudicing one of the defendants); *cf. Katz*, 521 F.2d at 1358 (affirming consolidation order where district court made clear that consolidated complaint would not supersede underlying complaints in constituent actions); *In re Wirebound Boxes Antitrust*

*Litig.*, 128 F.R.D. 262, 264 (D. Minn. 1989) ("The parties' rights and defenses are not impermissibly merged by the consolidated complaint. Such a complaint will operate in place of the original complaints for pretrial purposes but will not supersede them."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 158 F.R.D. 562, 571–73 (S.D.N.Y. 1994) (approving the use of a consolidated complaint because it mirrored, but did not supersede, constituent complaints).

As explained in our initial statement, the above-described limits on consolidation are especially important in MDL proceedings due to § 1407's remand requirement. "Transferee cases retain their individual identities, and it is intended, at least theoretically, that they will be returned to the courts of their inception at the conclusion of pretrial proceedings." *In re Career Academy Antitrust Litig.*, 57 F.R.D. 569, 571 (E.D. Wis. 1972) (refusing to consider joint motion for class certification filed by class representatives who each had initiated constituent class actions in different transferor districts because it would create the possibility of inconsistent adjudications of overlapping – indeed, "absolutely identical" – class actions upon § 1407 remand), *quoted in In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1250 (9th Cir. 2006) ("[P]laintiffs retained their individual identities when they were involuntarily transferred to MDL 1407, and their arrival in the litigation did not change their rights as parties." (internal citations and quotations omitted)). "Maintaining the individual complaints throughout the pretrial proceedings . . . may facilitate retransfer." Diane E. Murphy, *Unified and Consolidated Complaints in Multidistrict Litigation*, 132 F.R.D. 597, 603 (1991); *see also In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F. Supp. 718, 723 (E.D.N.Y. 1986) (court-ordered consolidated complaint covered five of seven consolidated actions; individual complaints remained operative in remaining two actions because they would "ultimately be returned for trial to the forums in which they were originally commenced").

2. **Plaintiffs who originally filed suit in California have a right to have their state-law claims governed by the same law that would apply in California state court.**

Toyota contends that because this MDL consolidates class actions originally filed in several federal districts across the country, the Court must apply the choice-of-law rules of <u>all</u> transferor fora to <u>every</u> named plaintiffs' claims. That clearly runs afoul of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), and the three Supreme Court decisions that extend *Erie* to choice of law in diversity cases: *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); *Van Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964); and *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990). As explained below, *Klaxon*, *Van Dusen*, and *Ferens* require the Court to apply the same choice-of-law rules to each plaintiffs' state-law claims that would be applied by a state court in the forum in which the plaintiff originally filed his action. That rule is an extension of *Erie*'s basic tenet that when a plaintiff asserts a claim governed by state law, the result in federal court should not differ from the result in state court.

A. *Klaxon*

In *Klaxon*, the Supreme Court held that, in diversity cases, federal courts must apply the same choice-of-law rules that state courts in the same forum would apply. 313 U.S. at 496. The Court reasoned:

> Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side. Any other rule would do violence to the principle of uniformity upon which the *Tompkins* decision is based. Whatever lack of uniformity this may produce between federal courts in different states is attributable to our federal system, which leaves to a state, within the limits permitted by the Constitution, the right to pursue local policies diverging from those of its neighbors.

*Id.* (internal citation omitted).

### B. *Van Dusen*

*Van Dusen* arose from an aircraft disaster. More than 100 plaintiffs filed suit in federal court in Massachusetts; another 45 plaintiffs filed suit in federal court in Pennsylvania. Pursuant to 28 U.S.C. § 1404(a), the defendants moved to transfer the Pennsylvania actions to Massachusetts. *Van Dusen*, 376 U.S. at 613–14.

In holding that transferee courts are "obligated to apply the state law that would have been applied if there had been no change of venue," *id.* at 639, the Court expressly approved of and adopted decisions of lower federal courts that "ha[d] been strongly inclined to protect plaintiffs against the risk that transfer might be accompanied by a prejudicial change in applicable state laws," *id.* at 630. Specifically, lower federal courts had developed the following rule: "'Although as a matter of federal policy a case may be transferred to a more convenient part of the system, whatever rights the parties have acquired under state law should be unaffected. The case should remain as it was in all respects but location.'" *Id.* at 633 (quoting *H.L. Green Co. v. MacMahon*, 312 F.2d 650, 652–53 (2d Cir. 1962) (citing *Headrick v. Atchison, T. & S.F. Ry. Co.*, 182 F.2d 305 (10th Cir. 1950))).

The Court acknowledged that this rule "allow[s] plaintiffs to retain whatever advantages may flow from the state laws of the forum they have initially selected. There is <u>nothing</u>, however, in the language or policy of § 1404(a) <u>to justify its use by defendants to defeat the advantages accruing to plaintiffs</u> who have chosen a forum which, although it was inconvenient, was a proper venue." *Id.* at 633–34 (emphasis added). The Court also based its holding based on *Erie* and federalism:

> [W]e should ensure that the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed. This purpose would be defeated in cases such as the present if nonresident defendants, properly subjected

5

to suit in the transferor State (Pennsylvania), could invoke § 1404(a) to gain the benefits of the law of another jurisdiction (Massachusetts).

*Id.* at 638.

### C. *Ferens*

In *Ferens*, the Supreme Court extended the rule of *Van Dusen* to plaintiff-initiated transfers, and reiterated the three rationales for the decision in *Van Dusen*:

> First, § 1404(a) should not deprive parties of state-law advantages that exist absent diversity jurisdiction. Second, § 1404(a) should not create or multiply opportunities for forum shopping.[1] Third, the decision to transfer venue under § 1404(a) should turn on considerations of convenience and the interest of justice rather than on the possible prejudice resulting from a change of law.

*Ferens*, 494 U.S. at 523.

### D. **The rule of *Van Dusen* applies in the MDL context.**

As the Second Circuit has stated in the MDL context, "*Van Dusen* furthers *Erie*'s policies by insuring that the pre-trial transfer under § 1407 does not lead to the application of a state substantive law that differs from the law applicable in the jurisdiction where the action was properly filed." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993). Thus, regardless of whether the transfer is under § 1404 or § 1407, "the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citing *In re Air Crash Disaster Near Chicago, Ill.*, 644 F.2d 594, 610

---

[1] With respect to forum shopping, the Court explained: "The *Van Dusen* policy against forum shopping simply requires us to interpret § 1404(a) in a way that does not create an opportunity for obtaining a more favorable law by selecting a forum through a transfer of venue. In the *Van Dusen* case itself, this meant that <u>we could not allow defendants to use a transfer of venue to change the law</u>." *Ferens*, 494 U.S. at 527 (emphasis added).

6

(7th Cir. 1981)); *see also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 489 F. Supp. 2d 932, 936 (D. Minn. 2007) (applying California's choice-of-law rules to claims of plaintiff who originally filed suit in California because "transfer under § 1407, even after the filing of an amended complaint, is only a change in courtrooms. Consolidation of a master complaint is merely a procedural device designed to promote judicial economy, and, as such, it does not affect the rights of the parties in separate suits.").

### 3. Toyota's position violates the letter and the spirit of *Erie, Klaxon, Van Dusen*, and *Ferens.*

But for diversity jurisdiction (as modified by the Class Action Fairness Act), each of the constituent actions originally filed in California ("California Actions") could proceed in California state court. A California state court would apply California's choice-of-law rules – and only those rules – to state-law claims. *See Wash. Mut. Bank v. Superior Court*, 24 Cal.4th 906, 919–21, 103 Cal. Rptr. 2d 320 (2001) (California's governmental-interest analysis applies to multi-state class actions). Yet Toyota posits that as a result of MDL consolidation, state-law claims asserted in the California Actions are governed by the choice-of-law rules of all transferor fora, not just the rules that a California state court would apply.

Toyota's position infringes each of *Van Dusen*'s three rationales. *See Ferens*, 494 U.S. at 523 (reciting *Van Dusen*'s three rationales). First, it would deprive plaintiffs in the California Actions of state-law advantages they would have but for diversity jurisdiction and MDL consolidation – namely, the application of California's choice-of-law rules, and only those rules. Second, it would create forum-shopping opportunities for defendants that would not exist absent MDL transfer; specifically, defendants would seek MDL consolidation of related actions filed in multiple jurisdictions in order to complicate the choice-of-law analysis in ways that would not be possible but for MDL consolidation. Third, the effect of MDL consolidation upon choice of law would become a factor in the JPML's

transfer decisions whenever related actions have been filed in multiple jurisdictions – even though the JPML should only consider whether such transfers "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a).

### 4. The Amended California Complaint preserves the choice-of-law rights of plaintiffs in constituent class actions originally filed in California.

Toyota's argument proceeds from the faulty premise that the economic loss plaintiffs must move for class certification in all constituent class actions, including actions transferred from other states, based on the MCC. But plaintiffs need not do so, and do not plan to do so. Instead, plaintiffs plan to move for class certification based on a pleading that relates to cases originally filed in this state and this District, over which this Court has trial jurisdiction, and as to which California choice-of-law rules apply: the Amended California Complaint. That is plaintiffs' right, and plaintiffs' choice.

"There is nothing . . . in the language or policy of [§ 1407] to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which . . . was a proper venue." *Van Dusen*, 376 U.S. at 633–34. Rather than permit Toyota to use § 1407 to its advantage, the Court must allow the litigation to proceed toward the same result that would have obtained had there been no MDL transfer. Absent MDL transfer, nobody would question that plaintiffs in constituent class actions originally filed in California could file the Amended California Complaint and use that as their operative pleading for class certification. Nobody would question that California's choice-of-law rules would apply at class certification.

The result should not be any different simply because class actions were filed in multiple jurisdictions and transferred to a single district by the JMPL. *See, e.g.*, *In re Phenylpropanolamine*, 460 F.3d at 1231 (MDL transferee courts "must figure out a way to move thousands of cases toward resolution on the merits while at the

same time respecting their individuality."). As *Van Dusen* and decisions extending its holding to § 1407 transfers make clear, an MDL should not change the result. Rather, it is to serve judicial economy by having a single court preside over pretrial proceedings in related controversies. Because the Amended California Complaint would be the proper and appropriate vehicle for class certification and trial had there been no MDL transfer, it is also the proper and appropriate vehicle for class certification and trial in these MDL proceedings.

**5.   Toyota's authorities do not require plaintiffs to move for class certification based on a consolidated complaint; nor do they require the Court to apply the choice-of-law rules of all transferor fora to claims asserted by plaintiffs in the California Actions.**

In each case cited by Toyota, the operative pleading was a consolidated complaint that encompassed constituent actions filed in multiple jurisdictions. None of the cases holds, states, or implies that the plaintiffs could not have moved for class certification in a subset of constituent class actions. (Indeed, two of the cases concerned motions to dismiss, not class certification.) Nor do they suggest that a court must apply the choice-of-law rules of all transferor fora if plaintiffs move for class certification in a subset of constituent class actions. To the contrary, several of the cases expressly acknowledge the rule that courts must apply the same choice-of-law rules that would apply if the actions had not been transferred under § 1407. Under a straightforward application of that rule in this litigation, if plaintiffs move for class certification in the California Actions, then state-law claims must be governed by California's choice-of-law rules, and only those rules.

### A.   *Mercedes-Benz*

The first case Toyota cites is *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009). That litigation included ten constituent class actions filed in six different states. *Id.* at 55. Plaintiffs filed a single amended complaint

9

that, pursuant to a case management order, superseded the underlying complaints.[2] *Id.* Each plaintiff named in the constituent actions was also named in the amended complaint. *See id.* Plaintiffs moved for class certification based on the amended complaint. Because the amended complaint encompassed all constituent class actions, the court applied the choice-of-law rules of all transferor fora – <u>and</u> certified a nationwide class. *Id.* at 56.

### B.     *ConAgra*

*In re ConAgra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689 (N.D. Ga. 2008), included class actions filed in ten different states. Plaintiffs filed a master complaint in the MDL, and moved for nationwide class certification based on the master complaint. Indeed, each of the proposed class representatives submitted a declaration that the master complaint was their operative complaint for purposes of class certification. *Id.* at 693. All but one of the proposed class representatives had originally filed suit in Georgia (the MDL forum). Significantly, however, one class representative had originally filed suit in Tennessee. *Id.* at 693 n.1.

Plaintiffs argued that Georgia's choice-of-law rules applied; defendants argued that the choice-of-law rules of all transferor fora applied. Contrary to Toyota's suggestion, the *ConAgra* court did <u>not</u> decide whether it had to apply the choice-of-law rules of all transferor fora. The court avoided that issue because even if it only applied the choice-of-law rules of fora in which the class representatives had originally filed suit, "the substantive laws of each jurisdiction would be implicated." *Id.* at 695. This was because one of the class representatives had originally filed suit in Tennessee, which applies the law of the place of the injury (*lex loci delicti*) in tort actions. *See id.* Because the case involved peanut butter

---

[2] Apparently, none of the parties in *Mercedes-Benz* questioned the superseding effect of the amended complaint. As explained above in section 1, a consolidated complaint that supersedes all constituent actions violates the rule that consolidation should not merge actions together or affect the rights of the parties, and would potentially frustrate § 1407's remand requirement.

consumed across the country, the *lex loci delicti* rule implicated the laws of all jurisdictions. *See id.* at 691 (noting CDC reports that "628 people in 48 states had been infected with Salmonella from contaminated ConAgra peanut butter").

### C. *Ford Ignition Switch*

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332 (D.N.J. 1997), concerned class certification in an MDL consisting of 12 class actions originally filed in 11 federal districts across the country. *Id.* at 338. The MDL plaintiffs apparently moved for class certification based on a consolidated complaint that included all plaintiffs originally named in the constituent actions plus 113 additional plaintiffs. *See id.*

Toyota quotes the following sentence from the opinion: "In diversity cases transferred under the Judicial Panel on Multidistrict Litigation . . . this court is to apply the choice of law rules of the transferor courts <u>as to those incoming cases</u>, as well as the forum's choice of law rule <u>for the cases originating here</u> . . . ." *Id.* at 348 (internal citation omitted; emphasis added). In other words, cases originating in, say, South Dakota are governed by South Dakota's choice-of-law rules, cases originating in North Dakota are governed by North Dakota's choice-of-law rules, and cases originating in the MDL forum are governed by the MDL forum's choice-of-law rules. That is a correct statement of the rule of *Klaxon*, *Van Dusen*, and *Ferens* – and a far cry from Toyota's unsupported position that <u>every</u> constituent action in an MDL is governed by the choice-of-law rules of <u>all</u> transferor fora.

Based on that rule, if plaintiffs had moved for class certification in one constituent action transferred from, say, Michigan, then the *Ford Ignition Switch* court would have applied only Michigan's choice-of-law rules. But instead, the plaintiffs moved for class certification based on a consolidated complaint that included all named plaintiffs from all constituent actions. <u>That</u> is why the choice-of-law rules of all transferor fora were implicated. In no way does *Ford Ignition Switch* support Toyota's position that plaintiffs are required to move for class

11

1  certification in all constituent actions, or based on a consolidated complaint that
2  includes all plaintiffs named in all constituent actions.

3  **D.  *Managed Care* and *Onstar***

4  Toyota finds no quarter in *In re Managed Care Litig.*, 298 F. Supp. 2d 1259
5  (S.D. Fla. 2003). That decision concerned a motion to dismiss a second amended
6  complaint that was "a composite of actions originally commenced in multiple
7  jurisdictions" before MDL consolidation. *Id.* at 1297. The *Managed Care* court
8  applied the choice-of-law rules of all transferor fora – but that was due to the
9  "composite" nature of the subject pleading.

10  Similarly, *In re Onstar Contract Litig.*, 600 F. Supp. 2d 861 (E.D. Mich.
11  2009), concerned a motion to dismiss a master amended complaint, which
12  "combined" all underlying complaints in constituent actions originally filed in at
13  least eight different states. *Id.* at 862, 865. In that circumstance, the court stated it
14  "would need to consider and apply the choice of law rules of numerous states." *Id.*
15  at 865. The court declined, however, to engage in a conflicts analysis at the
16  pleadings stage.[3] *Id.*

17  Neither *Managed Care* nor *Onstar* suggests that the plaintiffs could not later
18  have moved for class certification in a subset of the constituent actions, and there is
19  no reason to believe that if plaintiffs had chosen that approach, the courts
20  nevertheless would have applied the choice-of-law rules of all transferor fora. To

---

[3] Toyota likewise recognizes that a conflicts analysis is premature at the pleadings stage. *See* Doc. 285 at 7:13–15 ("[A] conflicts of law analysis can only be performed after discovery of jurisdictional facts and after a full analysis of these facts . . . ."). We agree. A choice-of-law analysis will be unnecessary at the pleadings stage because all state-law claims in the MCC are asserted under California law. Only two choice-of-law issues will arise in the economic loss litigation: First, under California's governmental-interest analysis, may California law be applied to the claims of non-residents? *See Wash. Mut. Bank*, 24 Cal.4th at 919–21. Second, would application of California law to a nationwide class be constitutional? *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985). Neither issue must be resolved until class certification.

the contrary, the *Managed Care* court recognized the rule of *Van Dusen*: "In cases transferred pursuant to 28 U.S.C. § 1407, the transferee district court must apply the state law, including its choice of law rules, that would have been applied had there been no change of venue."  298 F. Supp. 2d at 1296.  That rule – fundamental as federalism and mandated by *Erie* – is the very rule Toyota seeks to turn upside down in this litigation.

**6.     Toyota's remaining arguments with respect to the Amended California Complaint are meritless.**

Without any persuasive authority for its positions, Toyota resorts to suggesting that the Court would "abdicate its duties" if it were to allow plaintiffs to move for class certification based on the Amended California Complaint.  Doc. 310 at 2:1.  Judge Fallon certainly did not seem to think he was derelict in his duties in *Propulsid* and *Vioxx*.  *See In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 142 (E.D. La. 2002) ("[T]he Court looks to the specific action brought before the Court for class certification, namely the Indiana complaint, to determine which state's choice-of-law rules apply."); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 454 (E.D. La. 2006) ("[T]he Court will once again look to the specific action brought before it for class certification – the New Jersey complaint – and will apply New Jersey's choice-of-law rules . . . .").  Contrary to Toyota's suggestion, Judge Fallon did not choose "the lesser of two evils."  Doc. 310 at 3:12.  Judge Fallon clearly recognized that treating a consolidated complaint as a "traditional complaint" implicates § 1407's remand requirement.  *In re Propulsid*, 208 F.R.D. at 141.

Toyota also states that "the Court cannot ignore the claims of the majority of plaintiffs in this litigation in order to 'simplify' the case" – as if simplification is a bad thing.  Doc. 310 at 4:4–6.  The very purpose of an MDL is to "simplify" through efficiency and economy, which no doubt was the Court's objective when it ordered the filing of consolidated complaint(s).  Yet Toyota would use the MCC – the very purpose of which is to "simplify" – in order to inject issues (such as multi-

13

1  level choice-of-law analyses) that would not otherwise be implicated.

2  In any event, our proposed approach does not require the Court to ignore the claims of any plaintiff. We seek to preserve the choice-of-law rights of all economic loss plaintiffs. In our judgment, the interests of the class as a whole would best be served by proceeding based on the Amended California Complaint.

Toyota's reliance on the "doctrine of claim-splitting" is misguided in the MDL context. The maintenance of "'separate actions involving the same subject matter at the same time in the same court and against the same defendant'" is an inherent feature of every MDL. *See* Doc. 310 at 4 (quoting *Adams v. California Dept. of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (not an MDL)). Moreover, Toyota's argument misapprehends the nature of the MCC. It is not a "separate action"; it is simply a tool to facilitate efficient case administration.

The Court should reject Toyota's request to strike the Amended California Complaint under F.R.Civ.P. 12(f). If Toyota is correct, then why not strike the underlying complaints in all of the constituent class actions? Of course, Toyota is wrong. As explained above in section 1, leaving the underlying complaints intact preserves the identity of the constituent class actions, thereby facilitating a § 1407 remand at the conclusion of pretrial proceedings, should such remand ever occur.

Finally, Toyota is wrong when it suggests the economic loss plaintiffs were not authorized to file the Amended California Complaint. As Toyota concedes, all but two of the plaintiffs named in the Amended California Complaint could amend their complaints as a matter of right under F.R.Civ.P. 15(a). In any event, Order No. 3 authorized plaintiffs to file "consolidated complaint(s)." Doc. 180 at 3. We interpreted that to authorize economic loss plaintiffs to file such consolidated complaint(s) as they saw fit. *See also* Tr., May 28, 2010, at 8:15–19 (The Court: "With regard to the form of the complaint, the plaintiffs are the masters of their case, and I am going to allow the plaintiffs – the economic loss plaintiffs to craft their pleading the way they desire. I don't think it's the role of the Court to impose

14

artificial constraints."). The Amended California Complaint is a "consolidated complaint" (albeit in a different sense than the MCC) because it amends several complaints simultaneously. Accordingly, all plaintiffs named in the Amended California Complaint were authorized to file that pleading by virtue of Order No. 3.

**7. The MCC should not dismiss claims or defendants not named or asserted therein.**

Just as Toyota's authorities do not require plaintiffs to move for class certification based on the MCC, they do not require the filing of the MCC to operate to dismiss claims and defendants not asserted or named therein. In this respect, we re-urge the points from our initial statement: This litigation most likely will proceed to judgment in this MDL based on the claims asserted in the Amended California Complaint, which mirror the claims asserted in the MCC. If so, Toyota's concerns will be obviated because all claims will merge into and be barred by the final judgment, even if they were not asserted in the MCC. But if – contrary to what we believe is appropriate – the Court does not certify a nationwide class, it is theoretically possible that constituent class actions will be remanded to their originating districts at the conclusion of pretrial proceedings. Upon such remand, plaintiffs in those actions might be prejudiced if the filing of the MCC is deemed to dismiss claims and defendants not asserted or named therein. *See* Doc. 306 at 2–4.

**8. Conclusion**

It is respectfully submitted that the Court should enter Plaintiffs' Proposed Order Regarding the Effect of the MCC and Amended California Complaint, which was lodged with the Court on August 31, 2010. *See* Doc. 306-1.

15

| | | |
|---|---|---|
| 1 | Dated:  September 9, 2010 | Respectfully submitted, |
| 2 | | |
| 3 | | By:   /s/ Steve W. Berman |
| 4 | | STEVE W. BERMAN (WA SBN 12536) |
| | | **HAGENS BERMAN SOBOL** |
| 5 | | **  SHAPIRO LLP** |
| | | 1918 Eighth Avenue, Suite 3300 |
| 6 | | Seattle, WA 98101 |
| | | Telephone:  (206) 268-9320 |
| 7 | | Facsimile:   (206) 623-0594 |
| | | Email:  steve@hbsslaw.com |

By:   /s/ Marc M. Seltzer

MARC M. SELTZER (CA SBN 054534)
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone:  (310) 789-3102
Facsimile:   (310) 789-3006
Email:  mseltzer@susmangodfrey.com

By:   /s/ Frank M. Pitre

FRANK M. PITRE (CA SBN 100077)
**COTCHETT, PITRE & MCCARTHY**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577
Email:  fpitre@cpmlegal.com

*Co-Lead Counsel for*
*Economic Loss Plaintiffs*