CARI K. DAWSON (GA SBN 213490)
Email: cari.dawson@alston.com
**ALSTON + BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7766
Facsimile: (404) 253-8567

LISA GILFORD (CA SBN 171641)
Email: lisa.gilford@alston.com
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

*Lead Defense Counsel for Economic Loss Cases*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This documents relates to:<br><br>**ALL CASES** | Case No.: 8:10ML2151 JVS (FMOx)<br><br>**TOYOTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF (1) MOTION TO DISMISS PLAINTIFFS' ECONOMIC LOSS MASTER CONSOLIDATED COMPLAINT AND (2) MOTION TO STRIKE**<br><br>[Filed concurrently with Motion to Dismiss; Motion to Strike; Declaration of Lisa Gilford; Request for Judicial Notice; Appendix of Non-Federal and Out-of-State Authorities; and [Proposed] Orders]<br><br>Date: November 19, 2010<br>Time: 9:00 a.m.<br>Location: Court Room 10C<br>Judicial Officer: Hon. James V. Selna |

TOYOTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED ECONOMIC LOSS COMPLAINT

LEGAL02/32167063v1

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................... 1

II.   ARGUMENT AND CITATIONS OF AUTHORITY ........................................ 3

      A.   Standard of Review. ...........................................................3

      B.   There Is No Support for Plaintiffs' Attempt to Apply California
           Law to the Entire Class...........................................................5

           1.   The Motion to Dismiss Properly Addresses Only Those
                Causes of Action Pled in the Master Consolidated
                Complaint........................................................................ 6

           2.   A Conflicts Analysis Is Premature, and the "Choice of Law
                Allegations" Are Contested and Insufficient for the
                Analysis........................................................................ 6

      C.   Numerous Consumer Plaintiffs and All Non-Consumer Plaintiffs
           Lack Standing Because They Have Not Suffered Injury-In- Fact. ............8

           1.   Plaintiffs Who Did Not Experience a Manifestation of the
                Alleged Defect Lack Standing as They Have Not Suffered
                Injury-in-Fact. ................................................................ 10

           2.   Plaintiffs Received The Benefit of the Bargain, and Thus,
                Have Not Suffered an Injury-In-Fact.................................... 13

      D.   Plaintiffs Lack Standing to Bring the UCL, FAL, and CLRA
           Claims. ...........................................................................15

           1.   Plaintiffs Lack Standing for the UCL and FAL Claims
                Under California Proposition 64............................................ 15

           2.   Plaintiffs Lack Standing Under the CLRA Because They
                Cannot Show Actual Causation and Reliance. ...................... 19

i

E.    Plaintiffs' UCL, FAL, CLRA and Fraud By Concealment Claims
      Fail as a Matter of Law...........................................................................20

           1.    Plaintiffs' FAL, CLRA, UCL, and Fraud by Concealment
                 Claims Are Subject to the Heightened Pleading Standard of
                 Rule 9(b). ............................................................................ 21

           2.    Plaintiffs Have Not Sufficiently Alleged a Violation of
                 California False Advertising Law § 17500, et seq. ............... 23

           3.    Plaintiffs Have Not Sufficiently Alleged a Violation of
                 California's CLRA.................................................................. 24

           4.    Plaintiffs Fail to State a Claim for Fraud by Concealment as
                 a Matter of Law...................................................................... 27

F.    Plaintiffs Fail to State Claims for Breach of Express Warranty. .............31

           1.    Plaintiffs Have Failed to Plead the Existence of Valid
                 Warranties. ............................................................................ 31

           2.    Plaintiffs Have Failed to Sufficiently Plead a Breach of
                 Warranty Claim Based on Failure to "Repair or Adjust.".....32

           3.    Plaintiffs' Alleged Design Defect Does Not Fall Within the
                 Scope of the Express Warranty in Toyota's Warranty
                 Manual. .................................................................................. 33

           4.    Plaintiffs' Request for Damages Is Improper Because Repair
                 or Adjustment Is the Exclusive Remedy Available Under
                 Toyota's Warranty Manual..................................................... 34

           5.    Numerous Class Representatives Fail to Meet Other
                 Requirements For a Valid Express Warranty Claim. ............ 36

G.     Plaintiffs Fail to State a Claim for Breach of Implied Warranty of
       Merchantability..................................................................................38

       1.     The Requisite Privity Does Not Exist Between Plaintiffs and
              Toyota. .................................................................................. 38

       2.     Many Plaintiffs Have Not Alleged Manifestation of a Defect
              And Thus Cannot Bring a Claim for Breach of Implied
              Warranty.............................................................................. 42

H.     Plaintiffs' Claims Under the Magnuson-Moss Warranty Act Fail as
       a Matter of Law. ...............................................................................43

       1.     Plaintiffs Have Failed to Establish a State Law Warranty
              Claim Under Magnuson-Moss............................................... 43

       2.     Numerous Plaintiffs Failed to Follow Toyota's Informal
              Dispute Resolution Procedures as Required by 15 U.S.C. §
              2310(a). ................................................................................ 44

I.     Plaintiffs Fail to State a Claim for Revocation of Acceptance. ...............45

       1.     Plaintiffs May Not Seek Revocation of Acceptance Against
              a Manufacturer Who Did Not Sell The Product to the
              Plaintiff................................................................................ 45

       2.     Plaintiffs Have Failed to Plead the Required Elements of a
              Claim for Revocation of Acceptance..................................... 47

       3.     Plaintiffs' Revocation Claim Also Fails Because the Express
              Warranty Limits Remedies to Repair and Adjustment.......... 49

J.     Plaintiffs' Claims for "Breach of Contract/Common Law
       Warranty" Fail for the Same Reasons Plaintiffs' Breach of Express
       and Implied Warranty Claims Fail. ....................................................49

K.     Plaintiffs' Claims for Unjust Enrichment Fail as a Matter of Law..........50

1              1.      Unjust Enrichment is Not a Recognized Cause of Action..... 50

2              2.      Plaintiffs Allege Numerous Adequate Remedies at Law. ...... 50

3       L.     Plaintiffs' Request for Injunctive Relief Requiring Toyota to
4              Implement Fail-Safe Mechanisms Amounts to a Court-Ordered
5              Nationwide Recall and is Preempted by the National Traffic and
               Motor Vehicle Safety Act..................................................................51
6
7       M.     This Court Should Defer to the NHTSA Under the Doctrine of
               Primary Jurisdiction and Dismiss Plaintiffs' Claim for Injunctive
8              Relief...............................................................................................54

9       N.     Plaintiffs'   Request   for   "Restitution   and/or   Restitutionary
10             Disgorgement" Should Be Stricken With Respect to the UCL and
               FAL Claims. ...................................................................................55
11
12  III.   CONCLUSION..................................................................................... 57

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Acri v. Int'l Ass'n of Machinists & Aerospace Workers*,
    781 F.2d 1393 (9th Cir. 1986)..................................................................... 6

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ...........................................38-39

*Applications, Inc. v. Hewlett-Packard, Co.*,
    501 F. Supp. 129 (S.D.N.Y. 1980)................................................................ 37

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)............................... 3, 36, 52

*Baba v. Hewlett-Packard Co.*,
    No. C 09-05946, 2010 WL 2486353 (N.D. Cal. June 16, 2010)...................... 36

*Baggett v. Hewlett-Packard Co.*,
    582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................................. 50

*Baggett v. Hewlett-Packard Co.*,
    No. SACV07-0667, 2009 WL 3178066 (C.D. Cal. Sept. 29, 2009) ................ 13

*Balisteri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1999).................................................................. 4

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009).........................................................10, 12-13, 43

*Briehl v. Gen. Motors Corp.*,
    172 F.3d 623 (8th Cir. 1999)................................................................... 10-12

*Brothers v. Hewlett-Packard Co.*,
    No. C-06-02254, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007)........................ 33

*Brownfield v. Bayer Corp.*,
    2:09-cv-00444, 2009 WL 1953035 (E.D. Cal. July 6, 2009) ............................ 20

*Bussian v. DaimlerChrysler Corp.*,
    411 F. Supp. 2d 614 (M.D.N.C. 2006) ........................................................ 55

*Cantrell v. City of Long Beach*,
    241 F.3d 674 (9th Cir. 2001)................................................................... 9

v

*Carlson v. Gen. Motors Corp.,*
   883 F.2d 287 (4th Cir. 1989)........................................................ 42

*Chamberlan v. Ford Motor Co.,*
   314 F. Supp. 2d 953 (N.D. Cal. 2004) ........................................ 54

*Chin v. Chrysler Corp.,*
   182 F.R.D. 448 (D.N.J. 1998) ..................................................... 42

*Clemens v. DaimlerChrysler Corp.,*
   534 F.3d 1017 (9th Cir. 2008)............................................ 38-39, 41

*Computerized Radiological Servs. v. Syntex Corp.,*
   786 F.2d 72 (2d Cir. 1986)......................................................... 48

*Consol. Data Terminals v. Applied Digital Data Sys., Inc.,*
   512 F. Supp. 581 (N.D. Cal. 1981) ............................................ 34

*Contreras v. Toyota Motor Sales USA, Inc.,*
   No. C 09-06024, 2010 WL 2528844 (N.D. Cal. June 18, 2010)..... 11, 13, 16, 19

*Cooper Power Sys., Inc. v. Union Carbide Chem. & Plastics Co.,*
   123 F.3d 675 (7th Cir. 1997)...................................................... 41

*Cooper v. Pickett,*
   137 F.3d 616 (9th Cir. 1997)...................................................... 21

*Coto Settlement v. Eisenberg,*
   593 F.3d 1031 (9th Cir. 2010)...................................................... 5

*Crouch v. Johnson & Johnson Consumer Co.,*
   No. 09-CV-2905, 2010 WL 1530152 (D.N.J. Apr. 15, 2010)............. 4

*Davis v. Chase Bank U.S.A., N.A.,*
   650 F. Supp. 2d 1073 (C.D. Cal. 2009) ...................................... 26

*Delhomme Indus., Inc. v. Houston Beechcraft, Inc.,*
   735 F.2d 177 (5th Cir. 1984)...................................................... 48

*Digital Commc'ns Network, Inc. v. AT&T Wireless Servs.,*
   63 F. Supp. 2d 1194 (C.D. Cal. 1999) ........................................ 54

*Doe 1 v. AOL, LLC,*
   No. C 06-5866, 2010 WL 2524494 (N.D. Cal. June 22, 2010)........ 26

*Far E. Conference v. United States*,
  342 U.S. 570, 72 S. Ct. 492, 96 L. Ed. 576 (1952)...........................................54-55

*Fedrick v. Mercedes-Benz USA, LLC*,
  366 F. Supp. 2d 1190 (N.D. Ga. 2005) ........................................................ 46

*Ferens v. John Deere Co.*,
  494 U.S. 516, 110 S. Ct. 1274, 108 L. Ed. 2d 443 (1990)................................... 8

*Fraker v. KFC Corp.*,
  No. 06-CV-01284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ................... 24

*Gertz v. Toyota Motor Corp.*,
  CV 10-1089 PSG (C.D. Cal. Sept. 10, 2010) 17-18, 21-22, 30-31, 33-34, 43,
  ............................................................................................................................ 50

*Glen Holly Entm't Inc. v. Tektronix Inc.*,
  343 F.3d 1000 (9th Cir. 2003)......................................................................... 23

*Golden Needles Knitting & Glove Co. v. Dynamic Mktg. Enters., Inc.*,
  766 F. Supp. 421 (W.D. N.C. 1991) .............................................................. 47

*Gonzalez v. EJ Mortg., Inc.*,
  No. 09-cv-2812, 2010 WL 1996609 (S.D. Cal. May 17, 2010) ..................... 27

*Grupo Sistemas Integrales de Telecomunicacion S.A. de C.V. v. AT&T Commc'ns, Inc.*,
  No. 92 CIV. 7862, 1996 WL 312535 (S.D.N.Y. June 10, 1996) .................... 34

*Harlan v. Roadtreck Motorhomes, Inc.*,
  No. 07-CV-686, 2009 WL 928309 (S.D. Cal. Apr. 2, 2009) .................... 39, 41

*Haskell v. Time, Inc.*,
  857 F. Supp. 1392 (E.D. Cal. 1994).............................................................. 23

*Hoey v. Sony Elecs.*,
  515 F. Supp. 2d 1099 (N.D. Cal. 2007) .................................................. 24, 30

*Hovsepian v. Apple, Inc.*,
  No. 08-5788, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .................... 22, 29

*In re Actimmune Mktg. Litig.*,
  614 F. Supp. 2d 1037 (N.D. Cal. Apr. 28, 2009)........................................... 19

*In re Actimmune Mktg. Litig.*,
     No. C 08-02376, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) ....... 15, 17-19, 22

*In re Air Bag Prods. Liab. Litig.*,
     7 F. Supp. 2d 792 (E.D. La. 1998) ................................................................. 42

*In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*,
     153 F. Supp. 2d 935 (S.D. Ind. 2001) ........................................................... 53

*In re Checking Account Overdraft Litig.*,
     694 F. Supp. 2d 1302 (S.D. Fla. 2010) ........................................................... 5

*In re ConAgra Peanut Butter Prods. Liab. Litig.*,
     No. 1:07-md-1845-TWT, 2008 WL 2132233 (N.D. Ga. May 21, 2008)........... 7

*In re Emulex Corp. Sec. Litig.*,
     210 F.R.D. 714 (C.D. Cal. 2002) .................................................................... 6

*In re Facebook PPC Adver. Litig.*,
     09-cv-03043, 2010 WL 1746143 (N.D. Cal. Apr. 22, 2010) ..................... 19, 51

*In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*,
     664 F. Supp. 2d 752 (E.D. Mich. 2009)......................................................... 51

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
     966 F. Supp. 1525 (E.D. Mo. 1997)............................................................... 10

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
     No. 09-md-2087, 2010 WL 2232151 (S.D. Cal. June 3, 2010)...................... 28

*In re Late Fee & Over-Limit Fee Litig.*,
     528 F. Supp. 2de 953 ...................................................................................... 50

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
     632 F. Supp. 2d 42 (D. Me. 2009) .................................................................... 5

*In re NVIDIA GPU Litig.*,
     No. C 08-04312, 2009 WL 4020104 (N.D. Cal. Nov. 19, 2009) ................ 40-41

*In re OnStar Contract Litig.*,
     600 F. Supp. 2d 861 (E.D. Mich. 2009).......................................................... 7

*In re OnStar Contract Litig.*,
     No. 07-MDL-1867, 2010 WL 3516691 (E.D. Mich. Aug. 25, 2010) ............. 7-8

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.,*
  578 F. Supp. 2d 1229 (C.D. Cal. 2008) ................................................. 32

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009)..................................................... 16, 21

*Kent v. DaimlerChrysler Corp.,*
  200 F. Supp. 2d 1208 (N.D. Cal. 2002) ............................................. 54

*Laster v. T-Mobile USA, Inc.,*
  407 F. Supp. 2d 1181 (S.D. Cal. 2005)........................................... 15, 18

*Lee v. Am. Nat'l Ins. Co.,*
  260 F.3d 997 (9th Cir. 2001)........................................................ 9

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*
  523 U.S. 26, 35, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998)................................. 2

*Lilly v. Ford Motor Co.,*
  No. 00C7372, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002) ................................ 53

*Long v. Hewlett-Packard Co.,*
  No. 06-02816, 2007 WL 2994812 (N.D. Cal. July 27, 2007) ..................... 49, 50

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).........................8-9, 12

*Mack Boring & Parts, Co. v. Novis Marine, Ltd.,*
  No. 06-2692, 2008 WL 4371769 (D.N.J. 2008) ................................................. 47

*Mayfield v. United States,*
  599 F.3d 964 (9th Cir. 2010).......................................................... 9

*McKinniss v. Gen. Mills, Inc.,*
  No. CV 07-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ..................... 23

*Morris v. BMW of N. Am., LLC,*
  No. C 07-02827, 2007 WL 3342612 (N.D. Cal. Nov. 7, 2007) ...................... 16

*O'Neil v. Simplicity, Inc.,*
  553 F. Supp. 2d 1110 (D. Minn. 2008)............................................... 10

*Oestreicher v. Alienware Corp.,*
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ........................................22, 24-25, 28-29

ix

*Ontario Hydro v. Zallea Sys., Inc.,*
    569 F. Supp. 1261 (D. Del. 1983) ................................................................. 37

*Parkinson v. Hyundai Motor Am.,*
    258 F.R.D. 580 (C.D. Cal. 2008) ............................................................44-45

*Parks Sch. of Bus., Inc. v. Symington,*
    51 F.3d 1480 (9th Cir. 1995) ...................................................................... 3

*Philippine Nat'l Oil Co. v. Garrett Corp.,*
    724 F.2d 803 (9th Cir. 1984) ................................................................34-35

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.,*
    No. SACV-07-1306, 2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) ................. 8

*Salinas v. City of San Jose,*
    No. C09-04410, 2010 WL 725803 (N.D. Cal. Feb. 26, 2010) ......................... 41

*Sanders v. Apple, Inc.,*
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ..............................................5, 29-30, 38

*Sheris v Nissan N. Am., Inc.,*
    No. 07-2516, 2008 WL 2354908 (D.N.J. June 3, 2008) ................................. 42

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976) .................................. 9

*Starr-Gordon v. Mass. Mut. Life Ins. Co.,*
    No. Civ. S-03-68, 2006 WL 3218778 (E.D. Cal. Nov. 7, 2006) ...................... 56

*Stearns v. Select Comfort Retail Corp.,*
    No. 08-2746 , 2010 WL 2898284 (N.D. Cal. July 21, 2010) ............................ 5

*Stearns v. Select Comfort Retail Corp.,*
    No. 08-2746-JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009)....... 23, 28, 31, 35,
    ................................................................................................................. 43

*Sw. Eng'g, Inc. v. Yeomans Chicago Corp.,*
    No. 09-cv-110, 2009 WL 3720374 (S.D. Cal. Nov. 3, 2009)........................... 36

*Talalai v. Cooper Tire & Rubber Co.,*
    No. 00CV5694, 2001 WL 1877265 (D.N.J. Jan. 8, 2001) .............................. 54

*Thompson v. Jiffy Lube Int'l, Inc.,*
    250 F.R.D. 607 (D. Kan. 2008) .................................................................. 8

x

*Tomlinson v. Indymac Bank, F.S.B.*,
    359 F. Supp. 2d 891 (C. D. Cal. 2005) .......................................... 55-56

*Tietsworth v. Sears*,
    No. 5:09-cv-00288, 2010 WL 1268093 (N.D. Cal. Mar. 21, 2010) ...... 31, 35, 38

*Tietsworth v. Sears, Roebuck & Co.*,
    09-CV-00288, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ..................... 25, 30

*U.S. v. 14.02 Acres of Land More or Less in Fresno Cnty.*,
    547 F.3d 943, 955 (9th Cir. 2008) ........................................................ 5

*Van Dusen v. Barrack*,
    376 U.S. 612, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) ......................................... 8

*Vega v. JP Morgan Chase Bank, N.A.*,
    654 F. Supp. 2d 1104 (E.D. Cal. 2009) ......................................................... 21

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................................... 21

*Voytovich v. Bangor Punta Operations, Inc.*,
    494 F.2d 1208 (6th Cir. 1974) ..................................................................... 46

*Walker v. USAA Cas. Ins. Co.*,
    474 F. Supp. 2d 1168 (E.D. Cal. 2007) ........................................................ 50

*Whitson v. Bumbo*,
    No. C07-05597, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) ................... 10-11

*Wilkerson v. Butler*,
    229 F.R.D. 166 (E.D. Cal. 2005) ................................................................ 49

**CALIFORNIA CASES**

*All W. Elecs., Inc. v. M-B-W, Inc.*,
    64 Cal. App. 4th 717, 75 Cal. Rptr. 2d 509 (1998) ......................................... 38

*Am. Suzuki Motor Corp. v Super. Ct. of L.A. Cnty.*,
    37 Cal. App. 4th 1291, 44 Cal. Rptr. 2d 526 (1995) .................................... 42, 55

*Aron v. U-Haul Co. of Cal.*,
    143 Cal. App. 4th 796, 49 Cal. Rptr. 3d 555 (2007) ..................................... 35-36

xi

*Buckland v. Threshold Enters., Ltd.*,
    155 Cal. App. 4th 798, 66 Cal. Rptr. 3d 543 (2007)............................................ 15

*Cardinal Health 301, Inc. v. Tyco Elec. Corp.*,
    169 Cal. App. 4th 116, 87 Cal. Rptr. 3d 5 (2008)............................................. 38

*Consumer Advocates v. Echostar Satellite Corp.*,
    113 Cal. App. 4th 1351, 8 Cal. Rptr. 3d 22 (2003)........................................... 25

*Daro v. Super. Ct.*,
    151 Cal. App. 4th 1079, 61 Cal. Rptr. 3d 716 (2007)........................................ 17

*Daugherty v. Am. Honda Motor Co.*,
    144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006)............................. 24, 37, 43

*Farmers Ins. Exch. v. Super. Ct.*,
    2 Cal. 4th 377, 6 Cal. Rptr. 2d 487 (1992)....................................................... 55

*Fieldstone Co. v. Briggs Plumbing Prods. Inc.*,
    54 Cal. App. 4th 357, 62 Cal. Rptr. 2d 701 (1997)........................................... 38

*Graham v. Scissor-Tail, Inc.*,
    28 Cal. 3d 807, 171 Cal. Rptr. 604 (1990) ..................................................... 35

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 93 Cal. Rptr. 3d 559 (2009)................................... 15, 17, 19, 23

*Jogani v. Super. Ct.*,
    165 Cal. App. 4th 901, 81 Cal. Rptr. 3d 503 (2008).......................................... 50

*Keith v. Buchanan*,
    173 Cal. App. 3d 13 (1985)............................................................................. 32

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003)................................................. 56

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779, 131 Cal. Rptr. 2d 347 (2003)........................................ 50

*Morgan v. AT&T Wireless Servs., Inc.*,
    177 Cal. App. 4th 1235, 99 Cal. Rptr. 3d 768 (2009)........................................ 26

*Osborne v. Subaru of Am., Inc.*,
    198 Cal. App. 3d 646, 243 Cal. Rptr. 815 (1988)........................................ 39, 41

*Outboard Marine Corp. v. Super. Ct. of Sacramento Cnty.*,
    52 Cal. App. 3d 30, 124 Cal. Rptr. 852 (1975)...................................... 26

*Peterson v. Lamb Rubber Co.*, 54 Cal. 2d 339 (1960)............................................ 41

*Peterson v. Cellco P'ship*,
    164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (2008)........................... 13

*Pollard v. Saxe & Yolles Dev.*,
    12 Cal. 3d 374, 115 Cal. Rptr. 648 (1974)........................................ 49

*Wilens v. TD Waterhouse Group, Inc.*,
    120 Cal. App. 4th 746, 15 Cal. Rptr. 3d 271 (2003)........................... 19

**OTHER STATE CASES**

*Coker v. DaimlerChrysler Corp.*,
    No. 01CVS1264, 2004 WL 32676 (N.C. Super. Jan. 5, 2004)........................... 53

*Falcon Tankers, Inc. v. Litton Sys., Inc.*,
    300 A.2d 231 (Del. Super. Ct. 1972) ................................................. 34

*Ford Motor Credit Co. v. Mellor*,
    748 S.W.2d 410 (Mo. Ct. App. 1988) ............................................... 48

*Gasque v. Mooers Motor Car Co.*,
    227 Va. 154, 313 S.E.2d 384 (1984)......................................... 46, 48

*Gast v. Rogers-Dingus Chevrolet*,
    585 So. 2d 725 (Miss. 1991).......................................................... 47

*Golembieski v. O'Rielly R.V. Ctr., Inc.*,
    147 Ariz. 134, 708 P.2d 1325 (Ct. App. 1985)........................................ 48

*Henderson v. Chrysler Corp.*,
    191 Mich. App. 337, 477 N.W.2d 505 (1991)................................ 46

*J.A. Indus., Inc. v. All Am. Plastics, Inc.*,
    133 Ohio App. 3d 76, 726 N.E.2d 1066 (1999)................................ 47

*Jenkins v. Gen. Motors Corp.*,
    240 Ga. App. 636, 524 S.E.2d 324 (1999)................................. 48-49

*Mydlach v. DaimlerChrysler Corp.*,
    226 Ill. 2d 307, 875 N.E.2d 1047 (2007)........................................ 46

*Palmucci v. Brunswick, Corp.*,
  311 N.J. Super. 607, 710 A.2d 1045 (1998) ..................................... 49

*Seekings v. Jimmy GMC of Tucson, Inc.*,
  130 Ariz. 596, 638 P.2d 210 (1981)............................................. 46

*Smyser v. W. Star Trucks Corp.*,
  247 Wis. 2d 282, 634 N.W.2d 134 (Ct. App. 2001) ......................... 48

*Thiedemann v. Mercedes-Benz USA, LLC*,
  183 N.J. 234, 872 A.2d 783 (2005)............................................. 13-14

**FEDERAL STATUTES**

15 U.S.C. § 2310 ........................................................................... 44

28 U.S.C. § 1407 ........................................................................... 2

49 U.S.C. § 30111 ......................................................................... 51

49 U.S.C. § 30112 ......................................................................... 51

49 U.S.C. § 30116 ......................................................................... 51

49 U.S.C. § 30118 ................................................................ 51, 53, 55

49 U.S.C. § 30119 ................................................................... 51, 55

49 U.S.C. § 30120 ................................................................... 51, 55

Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 ................... 43-45, 51

National Traffic and Motor Vehicle Safety Act of 1996,
  49 U.S.C. § 30101 ...................................................... 16, 17, 51, 53-54

**STATE STATUTES**

Cal. Bus. Prof. Code § 17200 ......................................................... 15

Cal. Bus. & Prof. Code § 17204......................................................... 15

Cal. Bus. & Prof. Code § 17500......................................................... 15, 23

Cal. Bus. & Prof. Code § 17535......................................................... 15

Cal. Civ. Code § 1639 ................................................................... 37

Cal. Civ. Code § 1689 ................................................................ 46

Cal. Civ. Code § 1782 ............................................................. 26-27

Cal. Civ. Code § 1791 ................................................................ 45

Cal. Com. Code § 2313 ......................................................... 31, 49

Cal. Com. Code § 2314 ...................................................... 38-39, 49

Cal. Com. Code § 2608 ......................................................... 45-48

Cal. Com. Code § 2719 ......................................................... 32-35

Civil Code Section 1780 ............................................................ 19

Unif. Com. Code § 2-608:61 (2009) ............................................ 49

**RULES**

Fed. R. Civ. R. 8(a)(2) ................................................................ 4

Fed. R. Civ. R. 9(b) .......................................................... 21-22, 28-30

Fed. R. Civ. R. 12(b)(6) .................................................... 3, 6-7, 23, 26

Fed. R. Civ. R. 12(f) ................................................................ 56

TOYOTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED ECONOMIC LOSS COMPLAINT

# I.   **INTRODUCTION**

Plaintiffs' 153-page Master Consolidated Complaint ("MCC") is replete with hyperbole, misleading statistics, anecdotes, and legal conclusions, but notably absent is an identified common defect in the Electronic Throttle Control System ("ETCS" or "ETCS-i") of Toyota vehicles.[1]   Half of the 52 purported class representatives have not experienced an unintended acceleration event, still own their vehicles, and drive them with no manifestation of the as-yet unidentified defect.   Yet, they seek for themselves and on behalf of a putative nationwide class, economic damages and injunctive relief based not upon reliable, verifiable empirical evidence and valid scientific analysis, but upon a rush to judgment fueled by incomplete and inaccurate information and analysis.

On virtually every roadway in America, approximately 40 million of these same vehicles are providing daily transportation.   Toyota has already undertaken substantial recalls and safety campaigns to fully address the identifiable sources of potential unintended acceleration ("UA") in its vehicles, namely floor mat entrapment and "sticky" accelerator pedals.   In fact, to date, the accelerator pedal and floor mat recalls have been completed on 81.8% and 55.5% of recalled vehicles, respectively.[2]   Notably though, the claims of the MCC are *not* predicated on either the floor mat or pedal recalls.   Rather, the MCC is founded entirely on what Plaintiffs describe as an "unknown" defect in the ETCS.   To date, no defect or malfunction has ever been identified in the ETCS.

Plaintiffs' inability to identify any *actual* defect in Toyota's ETCS within their

---

[1]   *See* MCC, ¶ 80.   The Toyota vehicles referenced in the MCC include various models and years of Toyota, Lexus, and Scion vehicles.

[2]   The floor mat recall was rolled out by model and only recently has been available for some models.   The completion rate for the first three models is as follows: Lexus ES350 - 83.6%, Toyota Camry – 78.8%, and Toyota Avalon – 77.4%.   These figures as well as the accelerator pedal recall completion rate already exceed the recognized national average for completion rate of automobile recalls after 18 months (72%).

410-paragraph MCC persists in the face of Plaintiffs receiving thousands of pages of documents from Toyota prior to filing the MCC, in addition to rarely equaled public attention surrounding these matters, including current investigations by the National Highway Traffic Safety Administration ("the NHTSA"), which has enlisted the aid of NASA and the National Academy of Sciences in studying Toyota's ETCS. Plaintiffs fail to explain what aspect of the ETCS they claim is malfunctioning and how that malfunction is causing Toyota vehicles to experience UA. Instead, Plaintiffs merely jump to the unsupported conclusion that certain electronics, mechanics, and fail-safes should have been designed differently in the ETCS. Plaintiffs' vague, unsupported allegations are no substitute for pleading a product defect theory. No doubt, Plaintiffs will "promise" this Court that they will develop such a theory, but it is nowhere to be found in the MCC.

The fact that so many named Plaintiffs and, by any statistical measure, the vast majority of putative class members, have experienced no manifestation of any defect in their vehicles, leads to the inescapable and fundamental legal conclusion that they have experienced no Article III injury. Without suffering an injury-in-fact, they have no standing to bring their claims and the Constitution bars their access to federal courts. The wisdom of this rule is unmistakable here: Even accepting the truth of Plaintiffs' own unsubstantiated and speculative allegations in the MCC, fewer than six-tenths of one percent of Toyota owners have complained of UA since 2001.[3]

Looking at the named Plaintiffs as a whole, it is a varied group from 19 different states,[4] with different makes, models, usage profiles, and conditions of their

---

[3] Plaintiffs seem to rely on statistics to advance their sole ETCS defect theory, which Toyota reserves the right to contest. These statistics undoubtedly include incidents and complaints that were caused by a variety of other issues, including pedal misapplication. Moreover, Plaintiffs cite examples of alleged incidents in cars *without* ETCS, further undermining the credibility of their "unknown" ETCS defect theory.

[4] While Toyota agrees that this Court is the proper venue for this MDL proceeding, Toyota does not agree to venue or waive any venue objections that may be raised in the underlying actions. 28 U.S.C. § 1407(a); *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998).

2

1    vehicles:  from those who claim mere ownership of a Toyota vehicle and have never

2    experienced UA, to those who allege collisions; from those who have received recall

3    repairs, to those who have refused to drive their vehicles to their independent Toyota

4    dealerships to complete the recall remedies; from those who have traded in or sold

5    their vehicles, to those who continue to drive their vehicles without incident every

6    day; and from those who are in the business of renting vehicles, to those in the

7    business of insuring residual automobile values.  Despite the highly individualized

8    nature of Plaintiffs' claims, which begs the plausibility of class certification should

9    this matter reach that stage, for purposes of this motion, we have "grouped" certain

10   Plaintiffs and their legal claims to aid the Court's analysis of the legal sufficiency (and

11   more specifically, lack thereof) of those claims.  *See* Declaration of Lisa Gilford,

12   dated September 13, 2010 ("Gilford Decl."), ¶ 2 & Exs. A-1 to A-9 (Charts

13   Categorizing Class Representative Plaintiffs).

14         Fundamental issues, which are detailed below, including constitutional

15   standing, privity, the enforceability of express warranties, and the NHTSA's

16   predominant role, dictate that Plaintiffs' claims fail as a matter of law and should be

17   dismissed.

18   **II.    ARGUMENT AND CITATIONS OF AUTHORITY**

19         **A.    Standard of Review.**

20         This Court must dismiss Plaintiffs' claims under Rule 12(b)(6) if, accepting the

21   allegations as true, the MCC fails to state facts that would support relief.  *See Parks*

22   *Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In reviewing the

23   allegations, however, the Court is "not bound to accept as true a legal conclusion

24   couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50, 173 L.

25   Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct.

26   1955, 1965, 167 L. Ed. 2d 929 (2007)).  The action should be dismissed when there is

27   either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged

28

3

TOYOTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED ECONOMIC LOSS COMPLAINT

1    under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696,
2    699 (9th Cir. 1999).

3         Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-
4    harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or 'a
5    formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting
6    *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it
7    tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949.
8    (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966). "[O]nly a complaint that
9    states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.  The
10   Supreme Court explained:

11       To survive a motion to dismiss, a complaint must contain sufficient
12       factual matter, accepted as true, to "state a claim to relief that is plausible
13       on its face."  A claim has facial plausibility when the plaintiff pleads
14       factual content that allows the court to draw the reasonable inference that
15       the defendant is liable for the misconduct alleged.  The plausibility
16       standard is not akin to a "probability requirement," but it asks for more
17       than a sheer possibility that a defendant has acted unlawfully.  Where a
18       complaint pleads facts that are "merely consistent with" a defendant's
19       liability, it "stops short of the line between possibility and plausibility of
20       'entitlement to relief.'"

21   *Id.* at 1949 (citations omitted) (quoting *Twombly*, 550 U.S. at 556-57, 570, 127 S. Ct.
22   at 1965, 1966-68, 1974).

23        Lawsuits involving product defect allegations are no different and must be
24   dismissed when they fail to state a claim upon which relief can be granted.  *See*
25   *Crouch v. Johnson & Johnson Consumer Co.*, No. 09-CV-2905, 2010 WL 1530152,
26   at *4 (D.N.J. Apr. 15, 2010) (dismissing, for lack of standing, the complaint of parent
27   who used allegedly carcinogenic bath product on her infant for failure to plead a
28   sufficient injury-in-fact).  As shown below, even accepting the allegations as true,

4

1   Plaintiffs' MCC should be dismissed, because it fails to sufficiently allege facts

2   supporting its claims for relief.[5]

3           Toyota is also entitled to strike certain allegations and requests for relief in the

4   MCC as improper.   Under Rule 12(f), a court may strike from a pleading "an

5   insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

6   Fed. R. Civ. P. 12(f).   A court may grant a motion to strike class allegations if it is

7   clear from the complaint that the class claims cannot be maintained.   *See Sanders v.*

8   *Apple, Inc.*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009).   Moreover, a court may

9   strike prayers for relief which seek remedies that are unavailable as a matter of law, on

10  the grounds that such remedies are immaterial.   *See Stearns v. Select Comfort Retail*

11  *Corp.*, No. 08-2746 , 2010 WL 2898284, at *8 (N.D. Cal. July 21, 2010).

12      **B.      There Is No Support for Plaintiffs' Attempt to Apply California Law**

13              **to the Entire Class.**

14          Plaintiffs have deliberately adopted the unusual strategy of pleading the claims

15  of a purported nationwide class solely under one state's law.   *Compare with, e.g., In*

16  *re Checking Account Overdraft Litig.,* 694 F. Supp. 2d 1302, 1307-08 (S.D. Fla. 2010)

17  (MDL court analyzing claims pled under the consumer statutes of 21 states); *In re*

18  *New Motor Vehicles Canadian Export Antitrust Litig.,* 632 F. Supp. 2d 42, 44-46 (D.

19  Me. 2009) (MDL court analyzing claims pled under the consumer statutes of 19

20  states).   Compounding their unusual tactic, Plaintiffs also asserted an entirely separate

21  "First Amended Consolidated Complaint" consolidating only California-filed actions

22  in an attempt to circumvent the black letter law requiring this Court to use all

23  transferor courts' conflicts analysis frameworks (Dkt. 306) and Toyota has separately

24  opposed this attempted gamesmanship (Dkt. 310).

25

26  [5]   A party may attach public records and documents referenced in a complaint to a
    motion to dismiss without converting the motion into one for summary judgment.
27  *Coto Settlement v. Eisenberg,* 593 F.3d 1031, 1038 (9th Cir. 2010).   Likewise, a party
    may attach documents to provide background information to the court.   *U.S. v. 14.02*
28  *Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008).

5

1    Although conflicts of law issues are not yet ripe for decision in this matter, they

2    go to the heart of constitutional due process requirements.  If eventually necessary, a

3    conflicts analysis will undoubtedly result in determining that California law is

4    inapplicable to many claims.  In note 54 of the MCC, Plaintiffs rightly anticipate this

5    result and attempt to reserve the option to belatedly seek leave to amend the MCC to

6    state claims under the laws of every state, despite fully understanding the outcome and

7    consequences of their strategic decision not to do so now.  Any such eventual motion

8    for leave to amend would be improper because it will clearly prejudice Toyota and

9    result in delay and inefficiency—all of which could have been avoided through proper

10   pleading.

11           *1.*     *The Motion to Dismiss Properly Addresses Only Those Causes of*

12                   *Action Pled in the Master Consolidated Complaint.*

13           Toyota addresses only the claims asserted in the MCC.  *In re Emulex Corp. Sec.*

14   *Litig.*, 210 F.R.D. 714, 715 (C.D. Cal. 2002) ("The function of a Rule 12(b)(6) motion

15   is to test the legal sufficiency of the claims stated in the complaint").  Toyota cannot

16   and should not be asked to anticipate what the next round of Plaintiffs' claims might

17   look like—or what state laws Plaintiffs might choose to assert—assuming they seek a

18   second chance as note 54 to the MCC predicts.[6]  Instead, Toyota will address the

19   deficiency of the claims under California law, just as Plaintiffs have decided to plead

20   them.

21           *2.*     *A Conflicts Analysis Is Premature, and the "Choice of Law*

22                   *Allegations" Are Contested and Insufficient for the Analysis.*

23           Under the Supreme Court's decision in *Phillips Petroleum Co. v. Shutts*, courts

24   may not, consistent with constitutional due process requirements, apply the

25

26   [6]  Courts have denied leave to amend when facing attempts to manipulate the
     litigation.  *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393,
27   1398-99 (9th Cir. 1986) (denial of leave to amend affirmed where "the facts and the
     theory have been known to the party seeking amendment since the inception" and
28   delay in asserting was a "tactical choice").

6

TOYOTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE
PLAINTIFFS' CONSOLIDATED ECONOMIC LOSS COMPLAINT

1  substantive law of a single state to a multistate class of plaintiffs without performing a
2  conflicts of law analysis.  472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985).  In
3  order to perform this due process analysis, this Court must analyze the contacts that
4  each relevant state has to the claims asserted by each class member.  *Id.* at 821-22.

5        Although Toyota looks forward to fully briefing this issue, the analysis cannot
6  be made based solely on the limited allegations that have been cherry-picked by
7  Plaintiffs as (a) Toyota strongly disputes the accuracy of the "Choice of Law
8  Allegations"; (b) those allegations purposefully omit other key contacts in other states
9  where Toyota does business; and, further, (c) facts concerning plaintiffs' connections
10  with various states are far from developed.[7]  *See In re OnStar Contract Litig.*, 600 F.
11  Supp. 2d 861, 864-865 (E.D. Mich. 2009) (noting that a party asserted some discovery
12  would be necessary and holding that the conflicts of law analysis was premature at the
13  motion to dismiss stage); *In re ConAgra Peanut Butter Prods. Liab. Litig.*, No. 1:07-
14  md-1845-TWT, 2008 WL 2132233 at *1-*2 (N.D. Ga. May 21, 2008) (holding that
15  rigorous conflicts of law analysis at the motion to dismiss stage was premature and
16  more appropriately performed at the class certification stage).  A conflicts analysis
17  must be based on facts in evidence rather than on contested allegations that are only
18  presumed to be true at the motion to dismiss stage, and the "Choice of Law
19  Allegations" are vastly insufficient to perform the conflicts analysis.  *See In re OnStar*
20  *Contract Litig.*, No. 07-MDL-1867, 2010 WL 3516691, at *3 (E.D. Mich. Aug. 25,
21  2010) (analyzing conflicts issues after limited discovery, rather than at the motion to
22  dismiss stage of litigation).

23        As Toyota explained in its September 2 filing (Dkt. 310), the Supreme Court
24  has dictated that federal courts must apply the conflicts analysis frameworks used in

25

26  [7]  As just one example of why the MCC's "Choice of Law Allegations" cannot be
    credited, Plaintiffs attempt within a single paragraph to emphasize that California
27  contains manufacturing facilities, a single research and development center and one
    design center, while simultaneously ignoring Toyota's significant relevant presences
28  in, *e.g.*, Kentucky, Michigan, Indiana, Texas and Arizona. (MCC, ¶ 263).

7

1    the transferor forum's court. *Ferens v. John Deere Co.*, 494 U.S. 516, 532, 110 S. Ct.

2    1274, 108 L. Ed. 2d 443 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 638, 84 S. Ct.

3    805, 11 L. Ed. 2d 945 (1964).  As a predicate to performing its conflicts analysis, this

4    Court will need to determine the extent to which conflicts exist between the laws of

5    states throughout the nation, for each of the common law causes of action asserted by

6    the plaintiffs, and flesh out the differences between the laws of the states. *See, e.g.,*

7    *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 625-28 (D. Kan. 2008); *Rivera v.*

8    *Bio Engineered Supplements & Nutrition, Inc.*, No. SACV-07-1306, 2008 WL

9    4906433, at *2-*3 (C.D. Cal. Nov. 13, 2008).  This analysis typically requires

10   extensive briefing as to the elements and requirements of every state's cause of action.

11   *See OnStar Contract Litig.*, 2010 WL 3516691, at *3 (resolving conflicts issues with a

12   separate and detailed 35-page opinion once some discovery had been performed and

13   the parties had submitted separate extensive briefing on the conflicts issues).

14       Once this Court has determined the parameters of the differences between the

15   fifty states' laws regarding the relevant causes of action, it must determine the relevant

16   contacts with each state and apply the conflicts analyses for each of the transferor

17   states to determine whether that transferor state would apply its own forum's law or

18   the law of one or more other states.  Plaintiffs cannot obtain application of California

19   law to a nationwide class simply by virtue of pleading that California law applies.

20   *Rivera*, 2008 WL 4906433, at *2-*3.  Nonetheless, even under California law,

21   Plaintiffs' claims fail and should be dismissed.

22   **C.    Numerous Consumer Plaintiffs and All Non-Consumer Plaintiffs**

23       **Lack Standing Because They Have Not Suffered Injury-In- Fact.**

24       Standing is a constitutional gatekeeper—"an essential and unchanging part of

25   the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,*

26   504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  "That a suit may be a

27   class action ... adds nothing to the question of standing, for even named plaintiffs who

28   represent a class 'must allege and show that they personally have been injured, not

8

1    that injury has been suffered by other, unidentified members of the class to which they
2    belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rights Org.*,
3    426 U.S. 26, 40, n.20, 96 S. Ct. 1917, 48 L. Ed. 2d 450, 462 (1976) (quoting *Warth v.*
4    *Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L. Ed. 2d 343, 357 (1975)).
5    Further, Article III standing requirements are not coextensive with state law—
6    violations of state law cannot independently confer access to federal courts. *Lee v.*
7    *Am. Nat'l Ins. Co.*, 260 F.3d 997, 1000-02 (9th Cir. 2001); *Cantrell v. City of Long*
8    *Beach*, 241 F.3d 674, 683 (9th Cir. 2001). Plaintiffs must demonstrate constitutional
9    standing, including an actual injury. *See Lee*, 260 F.3d at 999-1000 (affirming trial
10   court's ruling that "[e]ven though the California unfair business practices statute
11   requires no such actual injury to pursue a claim in state court … Article III of the
12   Constitution 'takes priority' in federal court over the California statute's more liberal
13   standing rules"). In short, the Constitution requires that this Court dismiss the claims
14   of any named Plaintiff who cannot demonstrate constitutional standing.

15       Article III requires that (1) the plaintiff suffer an injury-in-fact which is actual,
16   not hypothetical; (2) there is a causal connection between the injury and the conduct
17   complained of; and (3) it is likely, not merely speculative, that the injury will be
18   redressed by a favorable decision. *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136. Here,
19   numerous named Plaintiffs fail to satisfy the Article III standing requirements because
20   they have not suffered any cognizable injury. Additionally, these Plaintiffs cannot
21   satisfy the causal connection requirement for standing because they have not alleged
22   an actual injury which was caused by Toyota's conduct. The "causal connection
23   between the injury and the conduct complained of" required by Article III is not
24   satisfied by mere speculation and "subjective apprehension" about what might happen
25   in the future. *Lujan,* 504 U.S. at 560, 112 S. Ct. at 2136; *see Mayfield v. United*
26   *States*, 599 F.3d 964, 970 (9th Cir. 2010).
27
28

9

1         *1.*    *Plaintiffs Who Did Not Experience a Manifestation of the Alleged*

2             *Defect Lack Standing as They Have Not Suffered Injury-in-Fact.*

3      The numerous purported class representatives who have not experienced the

4 alleged defect have not suffered actual injury-in-fact and therefore, lack standing to

5 assert claims. The mere *possibility* that a defect *might* cause a product to fail is not

6 enough.    The Ninth Circuit and other federal and California state courts have

7 consistently rejected the type of defect-without-malfunction theory asserted by many

8 of the Plaintiffs in this lawsuit. *See, e.g., Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-

9 61 (9th Cir. 2009); *Whitson v. Bumbo*, No. C07-05597, 2009 WL 1515597, at *6

10 (N.D. Cal. Apr. 16, 2009); *see also O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110,

11 1115 (D. Minn. 2008) ("It is simply not enough for a plaintiff to allege that a product

12 defect suffered by others renders his or her use of that same product unsafe; the

13 plaintiff must instead allege an *actual manifestation* of the defect *that results in some*

14 *injury* in order to state a cognizable claim ..."), *aff'd*, 574 F.3d 501 (8th Cir. 2009); *In*

15 *re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1530

16 (E.D. Mo. 1997) (holding that manifestation "is a prerequisite to recovery" and

17 dismissing claims regarding "defective" anti-lock brakes that only created a

18 "potential" for failure), *aff'd sub nom. Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th

19 Cir. 1999).

20      Furthermore, Ninth Circuit courts have held that a plaintiff lacks standing in the

21 absence of a manifested defect or actual economic loss resulting from the alleged

22 defect. In *Whitson v. Bumbo*, the named plaintiff purchased a Bumbo "Baby Sitter"

23 Seat manufactured by the defendants. 2009 WL 1515597, at *1. The Consumer

24 Products Safety Commission (CPSC) recalled the Bumbo seat, noting that out of

25 "about 1 million" units sold, the CPSC had "received 28 reports of young children

26 falling out of the Bumbo Baby Sitter seats, including three skull fractures." *Id.* at *2.

27 Whitson's class action complaint, which included both a UCL claim and an implied

28 warranty claim, alleged that the child seat was defective and dangerous. *Id.* at *4, *7.

10

TOYOTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFFS' CONSOLIDATED ECONOMIC LOSS COMPLAINT

1   However, Whitson did not allege that her child's seat had tipped over or had injured

2   any child. *Id.* at *8. Given that Whitson had not experienced any defect or pled any

3   specific economic harm, the trial court dismissed the action for lack of standing,

4   noting that the "complaint oscillates between tort and contract law language but fails

5   to allege any actual injury." *Id.* at *6.

6       Similarly, in a recent decision from the Northern District of California, the

7   court dismissed a class action against Toyota for lack of standing, because the class

8   representatives failed to sufficiently allege that they had suffered injury-in-fact.

9   *Contreras v. Toyota Motor Sales USA, Inc.*, No. C 09-06024, 2010 WL 2528844, at

10   *4-*6 (N.D. Cal. June 18, 2010). In *Contreras*, the plaintiffs pursued a class action

11   against Toyota alleging that brake issues would arise when their cars were driven

12   "under certain driving conditions in low temperatures." *Id.* at *1. Like many of the

13   putative class members in this case, the *Contreras* plaintiffs failed to allege that their

14   vehicles had malfunctioned as a result of any defect or that they incurred any out-of-

15   pocket expenses, but merely that they had "been injured … because had they known

16   of the alleged defect, they would not have purchased or would have paid less for [their

17   vehicles]." *Id.* at *2. The *Contreras* plaintiffs also contended that their vehicles were

18   "worth substantially less than they would have been without the alleged defect." *Id.* at

19   *2. The court rejected the plaintiffs' standing argument, holding that the plaintiffs

20   "fail[ed] to allege any actual injury" and "failed to allege facts sufficient to show that

21   they have suffered 'injury in fact.'" *Id.* at *6.

22       As in *Whitson* and *Contreras*, numerous class representatives have failed to

23   plead an actual injury-in-fact and instead, have attempted to piggy back their claims

24   onto those Plaintiffs who have alleged incidents of UA or out-of-pocket expenses

25   resulting from the alleged ETCS-i defect. This is simply not permitted as a matter of

26   law. Economic loss injuries based upon some expected future loss in resale value also

27   are "simply too speculative" to establish standing. *See Briehl v. Gen. Motors Corp.*,

28   172 F.3d 623, 628-629 (8th Cir. 1999) ("The Plaintiffs' assertion that their ABS-

11

1   equipped vehicles are defective and that they have suffered a loss in resale value as a

2   result of the defect is insufficient as a matter of law to plead a claim under any theory

3   the Plaintiffs have advanced."). In *Briehl*, the Eighth Circuit expressly rejected

4   plaintiffs' argument that their economic loss was measured by the difference between

5   the "vehicle with the ABS system that they expected and the system that [was]

6   actually installed in each of their vehicles." *Id.* at 629. Plaintiffs make precisely the

7   same argument in the MCC. (MCC, ¶ 336).

8       Here, the MCC reveals that 22 of the 48 Consumer Plaintiffs (and all four of the

9   Non-Consumer Plaintiffs) did not experience the manifestation of the alleged ETCS-i

10   defect, or any other defect with their vehicles. Nor did they spend any money as a

11   result of the alleged defect. *See* Gilford Decl. Ex. A-2, ("Grp. 1 Pls."). Instead, their

12   claims against Toyota are based solely upon their speculative contention that an

13   inherent "SUA defect" has reduced the value of their vehicles. For example, class

14   representative Plaintiff Ebony Brown merely alleges that "[s]he owns a 2009 Toyota

15   Camry." (MCC, ¶ 38). This allegation is clearly insufficient to satisfy the "injury in

16   fact" requirement for standing, which requires Plaintiffs to plead that they suffered or

17   are likely to suffer a "distinct and palpable injury" as a result of Toyota's alleged

18   wrongful conduct. *See Birdsong*, 590 F.3d at 961.

19       At best, these Plaintiffs fear that at some point in the future their cars may

20   manifest a defect or that if they sell their vehicles in the future they will fetch a lower

21   price because of latent defects that have not yet materialized.[8] Such a remote, might-

22   happen-in-the-future-claim clearly does not amount to an actual and concrete injury-

23   in-fact under any measure of the law or logic. *See Lujan*, 504 U.S. at 560 (requiring

24   that plaintiffs suffer an injury-in-fact that is actual, not hypothetical): *see also*

25

26   ――――――――――――――

[8] Less than 14 of the 52 plaintiffs allege that they sold or even attempted to sell their

27   vehicles, and only seven allege that they sold their vehicles at a loss. *See* Gilford
Decl. Exs. A-8, A-9. All of the rest of the plaintiffs base their alleged injuries on

28   nothing more than conjecture and speculation.

1   *Birdsong*, 590 F.3d at 961 (finding no standing where "plaintiffs simply [did] not
2   plead facts showing that hearing loss from iPod use [was] actual or imminent, as
3   required" and rejecting plaintiffs' "inherent risk" and diminished value argument);
4   *Contreras*, 2010 WL 2528844, at *6 (finding no standing where plaintiffs failed to
5   allege that their vehicles manifested the alleged defect with the vacuum-assisted brake
6   system and it was unlikely that they would do so).

7          Therefore, the 22 Consumer Plaintiffs and all four Non-Consumer Plaintiffs,
8   listed in Ex. A-2 of the Gilford Decl., lack standing, and their claims should be
9   dismissed.[9]

10          2.      *Plaintiffs Received The Benefit of the Bargain, and Thus, Have Not*
11                  *Suffered an Injury-In-Fact.*

12          Plaintiffs' contention that they suffered injury-in-fact the moment they
13   purchased their vehicles because they bargained for defect-free vehicles, also ignores
14   their written warranties which are an integral part of the transaction.   Where a
15   consumer receives the benefit of his bargain, he cannot satisfy Article III's standing
16   requirement for lack of injury.   *See, e.g., Baggett v. Hewlett-Packard Co.*, No.
17   SACV07-0667, 2009 WL 3178066, at *3 (C.D. Cal. Sept. 29, 2009) (holding that
18   there was no violation of the UCL where plaintiff "received exactly what he bargained
19   for"); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591, 80 Cal. Rptr. 3d 316,
20   322 (2008) (same).

21          In the case of a product defect claim, a plaintiff who received the benefit of a
22   warranty to repair or replace the purportedly defective product has suffered no injury.
23   *See Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 251-352, 872 A.2d 783,
24   795 (2005).   In *Thiedemann*, the New Jersey Supreme Court considered whether

---

25
26   [9]  Similarly, Plaintiffs cannot represent class members who have not experienced any
     manifestation.  *See, e.g., Bishop v. Saab Auto A.B.*, No. CV95-0721, 1996 WL
27   33150020, at *5 (C.D. Cal. Feb. 16, 1996) ("The courts have refused to certify class
     actions based on similar 'tendency to fail' theories because the purported class
28   includes members who have suffered no injury and therefore lack standing to sue.").

13

plaintiffs had suffered an "'ascertainable loss of moneys or property' … as a result of" defendant's conduct for purposes of establishing damages under New Jersey's Consumer Fraud Act ("CFA"). 872 A.2d at 786. The *Thiedemann* plaintiffs had alleged that Mercedes failed to disclose material defects in fuel gauges, and the New Jersey Supreme Court explained that there could be no claim:

> Defects can, and do, arise with complex instrumentalities such as automobiles. The mere fact that an automobile defect arises does not establish, in and of itself, an actual and ascertainable loss to the vehicle purchaser. Indeed, the warranty provided as part of the contract of sale or lease is part of the benefit of the bargain between the parties. The defects that arise and are addressed by warranty, at no cost to the consumer, do not provide the predicate "loss" that the CFA expressly requires ….

*Id.* at 794.

This same reasoning applies here. The warranty applicable to Plaintiffs' vehicles provides that Toyota will make any "repairs and adjustments needed to correct defects in materials or workmanship." *See* Gilford Decl. ¶ 3 & Ex. B, Warranty Manuals, at 25, 107, 181.[10] The warranty further provides that the "performance of necessary repairs and adjustments is the exclusive remedy." *Id.* at 24, 106, 179. With respect to the Plaintiffs who claim to have experienced a defect or malfunction, their sole and exclusive remedy is to seek and obtain warranty repairs from an authorized Toyota dealer. *A fortiori*, with respect to the 22 Consumer Plaintiffs and the four Non-Consumer Plaintiffs identified in Ex. A-2 of the Gilford Decl., they have not even experienced a defect which would require warranty work. Because Plaintiffs have received exactly what they bargained for, they have suffered no legally cognizable injury in connection with their alleged "defects" and thus have

---

[10] The Warranty Manuals attached as Ex. B to the Gilford Decl. are representative of the warranties applicable to each vehicle identified in the MCC in all respects relevant to the arguments set forth therein.

1   no standing to sue as a matter of law.

2        **D.**   **Plaintiffs Lack Standing to Bring the UCL, FAL, and CLRA Claims.**

3      In addition to the lack of standing under Article III, all 48 Consumer Plaintiffs

4  and all four Non-Consumer Plaintiffs lack standing to assert claims under the

5  Consumer Legal Remedies Act ("CLRA"), the California Unfair Competition Law

6  ("UCL"), and the California False Advertising Law ("FAL") (Counts I-III).

7         *1.*   *Plaintiffs Lack Standing for the UCL and FAL Claims Under*

8              *California Proposition 64.*

9      With the passing of Proposition 64, California Business and Professions Code

10  sections 17200 *et seq.* and 17500 *et seq.* were amended to provide that a plaintiff may

11  "pursue representative claims for relief on behalf of others" only if plaintiff has

12  "suffered injury in fact and has lost money or property <u>as a result of</u>" the alleged

13  wrongful conduct.  Cal. Bus. & Prof. Code §§ 17204, 17535 (emphasis added); *see In*

14  *re Tobacco II Cases*, 46 Cal. 4th 298, 325, 93 Cal. Rptr. 3d 559 (2009); *see also In re*

15  *Actimmune Mktg. Litig.*, No. C 08-02376, 2009 WL 3740648, at *15 (N.D. Cal. Nov.

16  6, 2009) ("the standing analysis under the UCL and FAL is identical").

17      In order to have standing to assert these UCL and FAL claims after Proposition

18  64, the class representatives must show that:  (1) they have suffered actual "injury in

19  fact" and have "lost money or property" and (2) such injury occurred as a result of

20  Toyota's alleged violation of the UCL or FAL.  *See Laster v. T-Mobile USA, Inc.*, 407

21  F. Supp. 2d 1181, 1193-94 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007).

22  The requisite injury must be "an invasion of a legally protected interest which is

23  (a) concrete and particularized, and (b) actual or imminent, not conjectural or

24  hypothetical." *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 814, 66

25  Cal. Rptr. 3d 543, 555 (2007) (internal citation omitted).  Plaintiffs simply do not

26  satisfy these standing requirements.[11]

27

28  [11]  The MCC asserts a UCL based upon unlawful, unfair, and fraudulent conduct. (MCC, ¶¶ 315-29).  Each prong of the UCL is a separate and distinct theory of

1     a. Numerous Plaintiffs Lack Standing Because They Do Not

2       Allege an "Injury in Fact" or "Lost Money or Property."

3  As previously established, *supra* Section II.C., at pp. 8-15, 22 of the 48

4 Consumer Plaintiffs named in the MCC have failed to allege any actual "injury in

5 fact." For the same reasons, the 22 Consumer Plaintiffs and the four Non-Consumer

6 Plaintiffs named in the MCC fail to adequately allege any loss of money or property

7 as required for standing.

8  These Plaintiffs are representative of the vast majority of putative class

9 members, *i.e.*, the millions of members of the motoring public who drive Toyota

10 vehicles every day without incident. Plaintiffs' allegations that their vehicles might

11 have an unmanifested defect and are therefore potentially worth less than what they

12 paid for them are not sufficient to show that they lost money or property necessary to

13 confer standing for the UCL and FAL claims. *See Contreras*, 2010 WL 2528844, at

14 *6 (no standing where plaintiffs did not allege they were forced to replace their

15 vehicles or that they incurred any out-of-pocket damages and rejecting plaintiffs'

16 argument that "their vehicles [were] worth substantially less" with the alleged defect

17 as "conclusory and unsupported by any facts"); *Morris v. BMW of N. Am., LLC*, No. C

18 07-02827, 2007 WL 3342612, at *4 (N.D. Cal. Nov. 7, 2007) (dismissing UCL claim

19 for lack of standing where Plaintiffs did not lose money as a result of alleged

20 conduct).

21  Additionally, Plaintiffs base their UCL claims that Toyota engaged in unlawful

22 business practices in part on alleged violations of the National Traffic and Motor

23 Vehicle Safety Act of 1996, 49 U.S.C. § 30101 *et seq.* ("Safety Act"), relating to the

24 return of a vehicle's throttle position to an idle position. (MCC, ¶¶ 319-324).

25 However, absent a violation of law which results in some harm to each of the

26

27 liability. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). Toyota seeks dismissal of each prong of Plaintiffs' UCL claim for lack of standing under

28 Proposition 64 and Article III.

Plaintiffs, they lack standing to maintain a UCL claim founded on the unlawful prong. *See Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1098-1901, 61 Cal. Rptr. 3d 716, 728-30 (2007) (concluding that plaintiffs could not maintain claim under UCL's unlawful prong when they suffered no harm as a result of violation of law at issue). The 22 Consumer Plaintiffs and 4 Non-Consumer Plaintiffs who do not allege any instance of UA lack standing to bring the UCL claim for failure to satisfy the injury-in-fact requirement. Furthermore, all 52 named Plaintiffs lack standing to assert the UCL claim against Toyota based on the unlawful prong, because they have failed to allege an actual injury caused by Toyota's alleged violation of the Safety Act and related regulations identified in the MCC. (MCC, ¶¶ 319-24).

> b.   Plaintiffs Lack Standing Because They Do Not Allege Actual Reliance.

Furthermore, all of the named Plaintiffs lack standing to assert FAL and UCL claims based on fraudulent conduct. The California Supreme Court has clarified that "actual reliance" is required to satisfy the standing requirements for fraud-based UCL or FAL claims. *See Tobacco II*, 46 Cal. 4th at 327 ("a plaintiff must plead and prove actual reliance to satisfy the standing requirement" of the UCL and FAL); *Gertz v. Toyota Motor Corp.*, CV 10-1089 PSG (C.D. Cal. Sept. 10, 2010) (in the absence of specific allegations of actual reliance on representations or advertisements regarding plaintiffs' Toyota Prius, plaintiff lacks standing to maintain a UCL claim).[12] *See also Actimmune*, 2009 WL 3740648, at *8 (the phrase "as a result" mandates that "a plaintiff demonstrate 'actual reliance' upon a defendant's misrepresentation or omission"). Although Plaintiffs need not demonstrate individualized reliance on specific representations where a long-term advertising campaign is alleged, *see Tobacco II*, 46 Cal. 4th at 327, they must, nonetheless, plead actual reliance. Plaintiffs

---

[12] A copy of Judge Gutierrez's decision in *Gertz v. Toyota Motor Corp.* is included in the Appendix of Authorities.

1  must allege that the alleged misrepresentations or omissions were an immediate cause

2  of the alleged injury-causing conduct.  *See Actimmune*, 2009 WL 3740648, at *8

3  (rejecting plaintiffs' "generalized exposure" argument with regard to defendants'

4  allegedly fraudulent marketing campaign argument).   The MCC is conspicuously

5  devoid of any such allegations.

6       The MCC exhaustively catalogues various omissions and representations

7  allegedly made in an effort to establish an extensive and long-term marketing

8  campaign by Toyota. (MCC, ¶¶ 81-105).  However, in spite of this laundry list of

9  alleged deceptive or false statements and omissions, Plaintiffs do not allege "with any

10 degree of specificity" that they personally were exposed to a single representation

11 made by Toyota, let alone that they actually relied upon any such representation when

12 purchasing their vehicles.  *Gertz v. Toyota Motor Corp.*, CV 10-1089 PSF (C.D. Cal.

13 Sept. 10, 2010) (where plaintiff does not allege that she saw specific alleged

14 advertisements, her CLRA claim fails); *Actimmune*, 2009 WL 3740648, at *11 (no

15 standing where the majority of plaintiffs failed to allege actual exposure to

16 defendants' representations concerning the allegedly defective product).

17      Instead, the MCC merely alleges in a conclusory manner that Plaintiffs "relied

18 on the misrepresentations and/or omissions of Toyota with respect to the safety and

19 reliability of the vehicles."  (MCC, ¶¶ 327, 335).  Such generalized statements are

20 insufficient to satisfy the actual reliance requirement for standing under the UCL and

21 FAL and the requisite federal pleading standards that require more than conclusory

22 allegations.  *See Actimmune*, 2009 WL 3740648, at *8 (dismissing UCL, FAL, and

23 CLRA claims where plaintiffs failed to plead actual reliance on defendants' allegedly

24 fraudulent marketing campaign); *Gertz v. Toyota Motor Corp.*, *supra*; *Laster*, 407 F.

25 Supp. 2d at 1194 (dismissing UCL and FAL claims for lack of standing, where

26 plaintiffs failed to allege "that they saw, read, or in any way relied on" meticulously

27 described advertisements; "nor [did] they allege that they entered into the transaction

28 *as a result* of [the] advertisements").

Nor can Plaintiffs rely on a presumption of reliance that arises upon an adequate
showing that a misrepresentation is material.  *See Tobacco II*, 46 Cal. 4th at 327.
Plaintiffs' consumer protection claims are based upon the conclusory premise that
Toyota vehicles with ETCS-i are defective.  Yet, Plaintiffs have not alleged a single
fact that would permit the Court to reasonably draw such an inference, let alone
identified any material misrepresentations made by Toyota.  Because the MCC does
not, specifically, allege that Plaintiffs relied upon any representations by Toyota when
purchasing their vehicles and Plaintiffs have failed to plead any facts to support their
purely conclusory theory of a defect, there can be no presumption of reliance.  *See In
re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1053-54 (N.D. Cal. Apr. 28, 2009)
(rejecting plaintiffs' attempt to avoid their burden of satisfying "the requirement that
there be a connection between the misdeed complained of and the loss suffered under
state law"); *see also In re Facebook PPC Adver. Litig.*, 09-cv-03043, 2010 WL
1746143, at *7 (N.D. Cal. Apr. 22, 2010) (finding no presumption of reliance where
plaintiffs did not allege that the representations existed at the time of the transaction or
that they knew of the existence of the representations at that time).

2.    *Plaintiffs Lack Standing Under the CLRA Because They Cannot
      Show Actual Causation and Reliance.*

Similarly, Plaintiffs lack standing to bring the CLRA claim.  Under Civil Code
Section 1780(a), a CLRA claim may be brought only by a consumer who "suffers any
damage as a result of the use or employment" of a proscribed practice.  "In
comparison to the UCL and FAL, the CLRA has a more stringent standing
requirement, in that a class representative must show actual causation and reliance."
*Actimmune*, 2009 WL 3740648, at *16; *see also Contreras*, 2010 WL 2528844, at *4
("In order to establish standing under their CLRA claim, Plaintiffs must establish they
suffered an actual injury as a result of [defendant's] alleged conduct"); *Wilens v. TD
Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754, 15 Cal. Rptr. 3d 271, 276 (2003)
("Relief under the CLRA is specifically limited to those who suffer damages, making

1    causation a necessary element of proof.").

2         As previously discussed, Plaintiffs have not alleged any facts indicating that

3    they were exposed to or relied upon any of Toyota's alleged misrepresentations and

4    omissions when purchasing their vehicles.  Nor have they alleged any facts that could

5    reasonably establish a causal connection between Plaintiffs' alleged economic harm

6    and the purportedly wrongful conduct by Toyota identified in the MCC.  There is no

7    connection between these alleged ETCS defects and related claims and the alleged

8    damages Plaintiffs claim they suffered.  Therefore, in the absence of actual causation

9    and reliance, Plaintiffs cannot meet the stringent CLRA standing requirements as a

10   matter of law.  *See Baba v. Hewlett-Packard Co.*, No. C 09-05946, 2010 WL

11   2486353, at *5 (N.D. Cal. June 16, 2010) (dismissing CLRA claim where the

12   complaint failed to allege reliance on any representations to plaintiffs "before or

13   during their respective transactions" and, instead, focused on representations made by

14   defendant *after* the purchase of the allegedly defective products); *Brownfield v. Bayer

15   Corp.*, 2:09-cv-00444, 2009 WL 1953035, at *4 (E.D. Cal. July 6, 2009) (dismissing

16   CLRA claim where plaintiffs' "conclusory allegations" did not suffice to "adequately

17   allege a connection between the [p]laintiffs' injury, if any, and the complained-of-

18   conduct" by defendants).

19       **E.    Plaintiffs' UCL, FAL, CLRA and Fraud By Concealment Claims**

20              **Fail as a Matter of Law.**

21       These claims have a consistent foundation:  that Toyota fraudulently concealed

22   "defects" in the ETCS of its vehicles and consequently, fraudulently misrepresented

23   the safety of its vehicles. (*See, e.g.*, MCC, ¶¶ 300, 324, 335, 400).  The logical gap

24   apparent on the face of the MCC is that even now, after Plaintiffs' presumed

25   inspection of vehicles, receipt of countless documents, and a public investigation of

26   the issue, Plaintiffs themselves still cannot define this allegedly concealed defect.  Yet

27   Plaintiffs claim that for years Toyota deliberately concealed that the "ETCS ... was

28   defectively designed or manufactured." (MCC, ¶ 302).  The MCC begs the question

20

of how Toyota could have fraudulently concealed and misrepresented a condition that no one, even today, can identify. Plaintiffs offer instead allegations of statistics derived from unverified reports supposedly related to UA. In other words, Plaintiffs' defect allegations, to the extent they exist at all, rest entirely on *allegations* found in other, unverified sources. Plaintiffs also unremarkably note that Toyota has "marketed its vehicles as 'safe'." (*See, e.g.*, MCC, ¶ 81). The law, however, requires substantially more when accusing a party of fraud.

1. *Plaintiffs' FAL, CLRA, UCL, and Fraud by Concealment Claims Are Subject to the Heightened Pleading Standard of Rule 9(b).*

Claims sounding in fraud are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) standard to UCL and CLRA claims); *Gertz v. Toyota Motor Corp.*, *supra*, CV 10-1089 PSF (C.D. Cal. Sept. 10, 2010). Where fraud is not a necessary element of a claim, but a plaintiff alleges a unified course of fraudulent conduct and relies on that course of conduct as the basis of such claim, any assertions of fraud must comport with Rule 9(b) or be disregarded. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Likewise, when a plaintiff alleges some fraudulent and some non-fraudulent conduct in support of a claim, Rule 9(b)'s heightened pleading requirements are applied specifically to the fraudulent "averments" and those found wanting should be stripped from the claim. *Id.* at 1104-05. To satisfy this heightened pleading standard, Rule 9(b) requires that Plaintiffs plead the "'who, what, where, when and how'" of the alleged misconduct to demonstrate it was something more than a mere business mistake. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading requirements. *See Vega v. JP Morgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1114 (E.D. Cal. 2009). *Gertz v. Toyota Motor Corp., supra*.

Because Plaintiffs' FAL, CLRA, fraud by concealment claims, and a portion of

21

1   the UCL claim each sound in fraud, they are subject to Rule 9(b)'s heightened

2   pleading standard.  Nothing in the MCC, however, fulfills this standard.  At best,

3   Plaintiffs' allegations of deliberate concealment indicate instead only that Toyota's

4   and others' investigations of a handful of *alleged* UA incidents or engine surging were

5   inconclusive.  (*See, e.g.*, MCC ¶¶ 115, 139).  It is insufficient under Rule 9(b) to

6   speculate about potential defects, (*see id.*, ¶ 245 (recounting a vague list of

7   components that "may be found to" cause UA)), and without any assertion of who,

8   what, where, when, and how, claim that Toyota committed fraud by failing to disclose

9   a product defect that is utterly undefined.  Nowhere in the lengthy text of the MCC do

10  Plaintiffs make a specific, fact-based allegation that Toyota knew of any specific

11  defect and knowingly concealed it.

12      Claiming an undefined product defect and attempting to allege fraud around it

13  is nothing new.  As one court noted, "allegations of this nature … could be made

14  about any alleged design defect in any manufactured product.  The heightened

15  pleading requirements of Rule 9(b) were designed to avoid exactly this situation."

16  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008) (finding

17  no duty to disclose where plaintiff's allegations did not specify any facts

18  substantiating the alleged fraud); *see also Hovsepian v. Apple, Inc.*, No. 08-5788, 2009

19  WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009) (12(b)(6) dismissal of fraudulent

20  omission claim where the complaint failed to describe with specificity representations

21  made by defendant with respect to the allegedly defective product).

22      Accordingly, Plaintiffs' FAL, CLRA, and fraudulent concealment claims

23  should be dismissed in their entirety in addition to the UCL prong grounded in fraud

24  and unfairness.  *See In re Actimmune*, 2009 WL 3740648, at *14, *16 (dismissing

25  UCL claims under the fraud and unfairness prongs that were based on allegations of

26  fraud that fell short of Rule 9(b)'s standards).  *Gertz v. Toyota Motor Corp., supra*

27  (same).

28

1               2.      *Plaintiffs Have Not Sufficiently Alleged a Violation of California*

2                     *False Advertising Law § 17500, et seq.*

3      To state a claim for violation of California False Advertising Law pursuant to

4 Cal. Bus. & Prof. Code § 17500, *et seq.*, Plaintiffs must allege that "'members of the

5 public are likely to be deceived'" by false or misleading statements. *In re Tobacco II*,

6 46 Cal. 4th at 312; *see also* Cal. Bus. & Prof. Code § 17500, *et seq.* "The term

7 'likely' means probable, not just possible." *McKinniss v. Gen. Mills, Inc.*, No. CV 07-

8 2521, 2007 WL 4762172, at *2 (C.D. Cal. Sept. 18, 2007) (internal citation omitted).

9 If an alleged misrepresentation would not deceive a reasonable person, then a FAL

10 claim may be dismissed on a Rule 12(b)(6) motion to dismiss. *See Haskell v. Time,*

11 *Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (granting 12(b)(6) dismissal after

12 deciding that "no reasonable consumer could be misled" by defendants' alleged

13 misrepresentations).

14      The MCC details a litany of statements allegedly made by Toyota in various

15 press releases, annual reports, brochures, manuals, advertisements, and press kits.

16 (MCC, ¶¶ 81-105).    The alleged misrepresentations and omissions identified by

17 Plaintiffs in the MCC are generalized statements concerning the quality and safety of

18 Toyota vehicles.  (*Id.*).  Plaintiffs fail to identify a single representation made by

19 Toyota that is likely to deceive a reasonable consumer.

20      It is well-established that generalized statements asserting claims of quality and

21 safety are non-actionable. *See Glen Holly Entm't Inc. v. Tektronix Inc.*, 343 F.3d

22 1000, 1015 (9th Cir. 2003) (affirming 12(b)(6) dismissal of claims that were

23 "generalized, vague and unspecific assertions" as non-actionable puffery); *see also*

24 *Stearns v. Select Comfort Retail Corp.*, No. 08-2746-JF, 2009 WL 1635931, at *16

25 (N.D. Cal. June 5, 2009) (holding that statements about a product's reliability,

26 maintenance, and comfort are non-actionable "because they are generalized assertions

27 and not easily verifiable as fact").

28      In support of their FAL claim, Plaintiffs identify such generalized statements

23

as:  the Toyota Camry has become the "platinum standard" (MCC, ¶ 84); the Sienna
has "more safety" (*Id.*, ¶ 90); the Toyota 4Runner "utilizes the latest technology to
deliver a high level of occupant safety" (*Id.*, ¶ 92); "Safety First to Last" (*Id.*); the
Lexus delivers "real benefits to owners in terms of safety, performance, comfort and
convenience" (*Id.*); "driving safety is just as high a priority in our full line of SUVs"
(*Id.*); and "RAV4 still holds the ultimate advantage with Toyota quality."  (*Id.*, ¶ 95).
These statements clearly cannot form the basis of a FAL claim, as a matter of law.
*See Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008)
(granting 12(b)(6) dismissal of FAL claim where statements of product superiority
"such as 'superb, uncompromising quality' and 'faster, more powerful, and more
innovative...'" were deemed non-actionable puffery); *Fraker v. KFC Corp.*, No. 06-
CV-01284, 2007 WL 1296571, at *2-*3 (S.D. Cal. Apr. 30, 2007) (granting 12(b)(6)
dismissal of FAL claim where "'[n]o reasonable consumer'" would reply upon claims
of "'highest quality,'" "'best,'" or "'balanced'" as "'specific representations as to
health, quality, or safety'").  These generalized statements attributed to Toyota are not
actionable as a matter of law and Plaintiffs' claims are therefore subject to dismissal.

> 3.     *Plaintiffs Have Not Sufficiently Alleged a Violation of California's
>        CLRA.*

>> a.   Plaintiffs Fail to Plead a Duty to Disclose Material Facts
>>      Under the CLRA.

Under the CLRA, a failure to disclose a defect is actionable if it is "'contrary to
a representation actually made by the defendant,' [or an omission of] 'a fact the
defendant was obligated to disclose.'" *Oestreicher*, 544 F. Supp. 2d at 969 (quoting
*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835, 51 Cal. Rptr. 3d 118
(2006)); *see also Hoey v. Sony Elecs.*, 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007).
A duty to disclose is created in four circumstances: "(1) when the defendant is in a
fiduciary relationship with the plaintiff; (2) when the defendant had exclusive
knowledge of material facts not known to the plaintiff; (3) when the defendant

24

actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Oestreicher*, 544 F. Supp. 2d at 970-971 (internal citation omitted).   Absent a fiduciary relationship between plaintiff and defendant, the non-disclosed information must be "material" in order to give rise to any duty to disclose.  In order for the information to be considered material, a plaintiff must show that, had a "reasonable consumer" been aware of the information, the consumer would have behaved differently.  *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360, 8 Cal. Rptr. 3d 22, 29 (2003). Generalized allegations that plaintiffs would have behaved differently had they known of the defects are not sufficient, and not all defects are material facts. *See Oestreicher*, 544 F. Supp. 2d at 971, 972.

Plaintiffs' CLRA claim is improperly based on generalized statements that the alleged risk of throttle control failure and alleged lack of adequate fail-safe mechanisms in vehicles containing ETCS are material facts, which Toyota had a duty to disclose but failed to do so.  (*See* MCC, ¶ 300).  Plaintiffs' allegations are deficient because they do not identify <u>any</u> specific material facts, namely any specific defect, that Toyota had a duty to disclose.  As discussed above, Plaintiffs only allege in a conclusory manner that Toyota "made numerous material statements about the safety and reliability" of the vehicles that were false or misleading, which contributed to the "deceptive context" of their advertising and representations.  (*Id.*, ¶ 301).  These generalized assertions concerning "safety" are not, as a matter of law, material statements that give rise to a duty to disclose. *See Tietsworth v. Sears, Roebuck & Co.*, 09-CV-00288, 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009) (rejecting plaintiff's argument that statements made about a product's quality and dependability generally constituted a representation about the product's allegedly defective electronic control boards).  Accordingly, Plaintiffs fail to allege any material facts that Toyota had a duty to disclose concerning its ETCS-i and their CLRA claim fails as a matter of law.

b.   <u>Plaintiffs Failed to Provide the Requisite Notice Under the
CLRA, Thus Their Claim for Damages Must Be Stricken.</u>

A plaintiff seeking damages based on a CLRA claim, including on behalf of a
class, is required to provide notice to the defendant of the alleged statutory violation
and a demand to rectify the violation.  Cal. Civ. Code § 1782(a).  This notice must be
in writing and sent to the place where the transaction occurred or to the defendant's
principal place of business, not less than 30 days before the plaintiff files any claim
for damages under the CLRA.  *Id.* at § 1782(a)(2).  "This requirement exists in order
to allow a defendant to avoid liability for damages if the defendant corrects the alleged
wrongs within 30 days after notice, or indicates within that 30-day period that it will
correct those wrongs within a reasonable time."  *Doe 1 v. AOL, LLC*, No. C 06-5866,
2010 WL 2524494, at *6 (N.D. Cal. June 22, 2010) (quotations omitted); *see Morgan
v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1259-60, 99 Cal. Rptr. 3d 768,
788-89 (2009).

Nothing other than strict compliance with the notice requirement will effectuate
the intent of the CLRA.  *Outboard Marine Corp. v. Super. Ct. of Sacramento Cnty.*,
52 Cal. App. 3d 30, 41, 124 Cal. Rptr. 852, 859 (1975).  Thus, compliance with the
notice requirements is necessary to recover damages under the CLRA.  *Davis v. Chase
Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1089 (C.D. Cal. 2009).  If a plaintiff fails to
strictly adhere to the notice requirement, the claim will be dismissed with prejudice
under Rule 12(b)(6).  *Id.*

In paragraph 309 of the MCC, Plaintiffs assert that "numerous" CLRA notice
letters have been sent to Toyota in accordance with Cal. Civ. Code § 1782, including
notice letters dated November 24, 2009, March 23, 2010, and June 4, 2010.  (MCC,
¶ 309).  However, with the exception of the June 4th letter that was sent to TMS on
behalf of 17 Consumer Plaintiffs, *see* Gilford Decl. ¶ 6 & Ex. <u>E</u>, Plaintiffs do not
properly allege compliance with the CLRA pre-litigation notification requirements.
Specifically, the November 24 and March 23 letters referenced in the MCC were both

26

1  sent to Toyota on behalf of plaintiffs who are not named class representatives in this

2  MDL proceeding and who did not themselves comply with the CLRA notice

3  requirements. (*See id.* ¶¶ 3, 4 & Exs. B and C (Nov. 24, 2009 letter[13]; Mar. 24, 2010

4  letter[14]). Additionally, the MCC does not sufficiently allege that any of the 52 named

5  Plaintiffs satisfied the pre-litigation notice requirements with respect to TMC.

6         Accordingly, the majority of named Plaintiffs have failed to establish proper

7  notice to Toyota as required by Cal. Civ. Code § 1782 and therefore, their request for

8  damages under the CLRA claim must be dismissed or stricken.

9              4.    *Plaintiffs Fail to State a Claim for Fraud by Concealment as a*

10                  *Matter of Law.*

11        To state a claim for fraudulent concealment, a plaintiff must plead: "(1) the

12  defendant must have concealed or suppressed a material fact, (2) the defendant must

13  have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have

14  intentionally concealed or suppressed the fact with the intent to defraud the plaintiff,

15  (4) the plaintiff must have been unaware of the fact and would not have acted as he

16  did if he had known of the concealed or suppressed fact, and (5) as a result of the

17  concealment or suppression of the fact, the plaintiff must have sustained damage."

18  *Gonzalez v. EJ Mortg., Inc.*, No. 09-cv-2812, 2010 WL 1996609, at *2 (S.D. Cal. May

19  17, 2010) (quoting *Mktg. W., Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603,

20  612-13, 7 Cal. Rptr. 2d 859 (1992)) (internal quotations omitted).

21

22

---

23  [13]  The November 24 letter was sent on behalf of Eric Kmetz and Joe Morris, neither
     of whom are named Plaintiffs in the MCC, in connection with the action, *Kmetz and

24  Morris v. Toyota Motor Sales, U.S.A., Inc., et al.,* CV 09-8478 (C.D. Cal.). *Id.* ¶ 4 &
     Ex. C. There, Messrs. Kmetz and Morris failed to comply with the CLRA notice

25  requirements, because the letter was sent one week after the lawsuit was filed. (*Id.*).

26  [14]  Similarly, the March 24 letter was sent on behalf of Anita Jorge, who is not a
     named Plaintiff in the MCC, in connection with the action, *Jorge v. Toyota Motor N.*

27  *Am., Inc., et al.,* 10-CV-00060 (E.D. Ky.). *Id.* ¶ 5 & Ex. D. There, Ms. Jorge likewise
     failed to comply with the CLRA notice requirements, because the letter was sent on

28  the same day that the lawsuit was filed. (*Id.*).

1
2

      a.    <u>Plaintiffs Fail to Plead Concealment or Suppression of a
Material Fact.</u>

3         Plaintiffs' fraud by concealment claim (Count IX) is based upon an allegation

4  that Toyota "concealed and/or suppressed material facts concerning the safety of their

5  vehicles." (MCC, ¶ 398). Plaintiffs assert that Toyota failed to disclose alleged

6  defects with the ETCS-i; failed to disclose internal reports concerning alleged

7  incidents of UA; failed to disclose the "real reason" for various recalls implemented

8  from 2002-2009, including the floor mat and sticky pedal recalls; and failed to

9  affirmatively issue any safety advisories to consumers concerning sticky pedals. (*Id.*).

10  Although Plaintiffs allege that such assertions constitute material facts because "they

11  directly impact the safety of the Defective Vehicles," (*id.*, ¶ 400), these are nothing

12  more than conclusory statements predicated on Plaintiffs' unsupported theory that

13  Toyota vehicles containing ETCS-i are defective. Plaintiffs allege no facts warranting

14  such an inference and fail to identify any alleged representations or omissions by

15  Toyota that could serve as the basis for such claims. Therefore, Plaintiffs fail to

16  sufficiently plead concealment or suppression of a material fact. *See Oestreicher*, 544

17  F. Supp. 2d at 974 (granting 12(b)(6) dismissal of fraud by concealment claim where

18  plaintiffs failed to plead with specificity); *Stearns*, 2009 WL 1635931, at *9 (granting

19  12(b)(6) dismissal where plaintiff's conclusory allegations did not come close to

20  satisfying the pleading requirements of Rule 9(b)); *In re Hydroxycut Mktg. & Sales

21  Practices Litig.*, No. 09-md-2087, 2010 WL 2232151, at *4 (S.D. Cal. June 3, 2010)

22  (granting 12(b)(6) dismissal of fraud by concealment claim where plaintiff's

23  allegations amounted to "conclusory rather than factual statements").

24             b.    <u>Plaintiffs Cannot Establish a Duty to Disclose.</u>

25         In addition, Plaintiffs have not and cannot show that Toyota had a duty to

26  disclose. A duty to disclose arises under four circumstances: (1) when the defendant

27  is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive

28  knowledge of material facts not known to the plaintiff; (3) when the defendant

28

1   actively conceals a material fact from the plaintiff; and (4) when the defendant makes

2   partial representations but also suppresses some material facts. *Sanders v. Apple, Inc.*,

3   672 F. Supp. 2d 978, 986 (N.D. Cal. 2009) (citing *LiMandri v. Judkins*, 52 Cal. App.

4   4th 326, 337 (1997)).

5         The MCC alleges a duty to disclose arising under the second, third and fourth

6   conditions. (*See* MCC, ¶¶ 399-401).  With regard to the second condition, Plaintiffs

7   claim that Toyota "possessed exclusive knowledge of the defects rendering Defective

8   Vehicles inherently more dangerous and unreliable than similar vehicles." (*Id.*, ¶

9   400).  With regard to the third condition, Plaintiffs allege that Toyota "actively

10  concealed and/or suppressed these material facts, in whole or in part, with the intent to

11  induce Plaintiffs and the Class to purchase Defective Vehicles at a higher price for the

12  vehicles, which did not match the vehicles' true value." (*Id.*, ¶ 401).  With regard to

13  the fourth condition, Plaintiffs assert that Toyota had a duty to disclose the alleged

14  omissions detailed in paragraph 398, because they "consistently marketed their

15  vehicles as safe and proclaimed that safety is one of Toyota's highest corporate

16  priorities." (*Id.*, ¶ 399).

17        As explained above, irrespective of whether Toyota has marketed its vehicles as

18  safe, Plaintiffs' fraud by concealment claim is based upon Toyota's alleged

19  concealment of ETCS-i defects.  However, with regard to the second and third

20  conditions set forth above, Plaintiffs have failed to specify any factual basis to support

21  their conclusions that Toyota had "exclusive knowledge" of the alleged ETCS-i

22  defects or that they "actively concealed and/or suppressed" such information to induce

23  Plaintiffs to purchase their vehicles. (*See* MCC, ¶¶ 400-01).  As the *Oestreicher* court

24  noted, "allegations of this nature … could be made about any alleged design defect in

25  any manufactured product.  The heightened pleading requirements of Rule 9(b) were

26  designed to avoid exactly this situation." *Oestreicher*, 544 F. Supp. 2d at 974 (finding

27  no duty to disclose where plaintiff's allegations did not specify any facts

28  substantiating the alleged fraud); *see also Hovsepian v. Apple, Inc.*, No. 08-5788, 2009

WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009) (12(b)(6) dismissal of fraudulent omission claim where the complaint failed to describe with specificity representations made by defendant with respect to the allegedly defective product); *Gertz v. Toyota Motor Corp., supra* (claims based on alleged fraudulent omissions are dismissed based on failure to satisfy Rule 9(b)). Hence, Plaintiffs' duty to disclose arguments related to the second and third conditions are unavailing.

Similarly, Plaintiffs' fourth condition argument fails because Plaintiffs do not identify, with the requisite degree of particularity required under Rule 9(b), any partial representations made by Toyota concerning ETCS-i that would give rise to a duty to disclose. The MCC merely alludes to unspecified "representations to the public about safety." (MCC, ¶ 399). These generalized assertions concerning "safety" do not give rise to a duty to disclose as a matter of law. *See Tietsworth v. Sears, Roebuck and Co.*, 09-CV-00288, 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009) (rejecting plaintiff's argument that statements made about a product's quality and dependability generally constituted a representation about the product's allegedly defective electronic control boards); *Sanders*, 672 F. Supp. 2d at 986 (dismissing a 12(b)(6) fraud by concealment claim where plaintiff failed "to describe with specificity representations made by [defendant] with respect to the display's component parts that would give rise to a duty to disclose, how he relied on such partial disclosures, or the manner in which such representations or omissions were false and misleading"); *Hoey v. Sony Elecs., Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007) (dismissing a fraudulent concealment claim where the complaint failed to identify a representation by defendant contrary to the alleged concealment).

Accordingly, Plaintiffs cannot satisfy the duty to disclose requirement for a valid fraud by concealment claim.

**F.   Plaintiffs Fail to State Claims for Breach of Express Warranty.**[15]

    *1.   Plaintiffs Have Failed to Plead the Existence of Valid Warranties.*

Plaintiffs' breach of express warranty claim (Count IV), brought pursuant to Cal. Com. Code § 2313, cannot stand because they have failed to allege "(1) the exact terms of the warranty; [and] (2) reasonable reliance thereon…" *Tietsworth v. Sears*, No. 5:09-cv-00288, 2010 WL 1268093, at *13 (N.D. Cal. Mar. 21, 2010); *see also Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at *9 (N.D. Cal. Jun. 5, 2009) ("Such a claim must describe the exact terms of the warranty, allege that [the] buyer reasonably relied on those terms, and that the breach of warranty was the proximate cause of the buyer's injury."); *Gertz v. Toyota Motor Corp., supra* ("Plaintiff has failed to allege that she saw any of the statements at issue prior to acquiring her Prius"). An express warranty is ordinarily made at the time the product is purchased. *See* Cal. Com. Code § 2313.

Plaintiffs have looked everywhere for language to support a warranty claim except Toyota's actual, express warranty. For instance, Plaintiffs refer to alleged warranty language but they fail to allege that this language was ever disseminated to customers; in fact, the referenced language is nowhere to be found within the text of Toyota's express warranty. *Compare* MCC, ¶ 342 *with,* Gilford Decl. Ex. B, Warranty Manuals, at 25, 108, 182. Such language, therefore, cannot serve as the basis for any breach of warranty claim.

Similarly, alleged statements concerning the "characteristics and qualities" of Toyota vehicles made in advertisements, e-brochures, and other materials cannot serve as the basis of an express warranty claim. (MCC, ¶ 344-45). None of these statements are sufficiently definite to create an express warranty, which can only be

---

[15] It is presumed that Plaintiff Auto Lenders is not asserting the express warranty claim set forth in Count IV, as it is a residual value insurer that has never owned or leased Toyota vehicles. If Auto Lenders does assert an express warranty claim, it fails for each of the reasons discussed in this section.

created by a specific and unequivocal representation of fact about the product. *See Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229, 1236 (C.D. Cal. 2008) (stating that to create an express warranty, the seller must make representations or promises with sufficient specificity); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (1985). Moreover, as previously addressed, *supra* E.3, such statements concerning the quality and safety of Toyota vehicles are non-actionable puffery, and therefore, cannot serve as the basis of any express warranty claim.

> 2. *Plaintiffs Have Failed to Sufficiently Plead a Breach of Warranty Claim Based on Failure to "Repair or Adjust."*

The only warranty in existence and relevant to Plaintiffs' claims is the basic warranty contained in Toyota's Warranty Manual, which expressly provides:

> **WHAT IS COVERED AND HOW LONG**
>
> **Basic Warranty:**  This warranty covers repairs and adjustments needed to correct defects in material or workmanship of any part supplied by Toyota, subject to the exceptions indicated under "What is Not Covered" on pages 13-14. …
>
> **Limitations:**  The performance of necessary repairs and adjustments is the exclusive remedy under these warranties or any implied warranties.
>
> …

*See* Gilford Decl., Ex. B, Warranty Manuals, at 24-25, 108-109, 182-183.[16]

Consistent with Cal. Com. Code § 2719(1)(a), Toyota's Warranty Manual unambiguously limits a buyer's remedy to repair or adjustment needed for any defects in material or workmanship of any part supplied by Toyota.  In an effort to circumvent this limitation, Plaintiffs baldly assert that "Toyota has not repaired or adjusted, and

---

[16]   Plaintiffs cannot maintain a breach of express warranty claim against TMC, because TMS is the sole warrantor under the Warranty Manual.  *See id.*, Ex. B, Warranty Manuals, at 24, 105, 178 ("[t]he warrantor for these limited warranties is Toyota Motor Sales, U.S.A., Inc").  *See Ackerman v. A. Levy & J. Zentner Co.*, 7 Cal. App. 2d 23, 25, 45 P.2d 386 (1935) (express warranties are contractual in nature).

32

1  has been unable to repair or adjust, the Vehicles' materials and workmanship defects"

2  without providing any factual basis for such allegations. (MCC, ¶ 343).  In fact, this

3  assertion is contradicted by the MCC itself.  With respect to 12 Consumer Plaintiffs

4  named as class representatives, these Plaintiffs concede that their vehicles were

5  tendered, repaired, and no UA event has occurred subsequent to the repairs.  *See*

6  Gilford Decl. Ex. A-3, ("Grp. 2 Pls.").  For the remaining named Plaintiffs, the MCC

7  is entirely devoid of any allegation indicating that they presented their vehicles for

8  repairs.  *See id.* Ex. A-4, ("Grp. 3 Pls.").  Therefore, in the absence of any factual

9  allegations to support their conclusory assertions, Plaintiffs' express warranty claim

10 based on failure to repair or adjust must fail as a matter of law.  *Gertz v. Toyota Motor*

11 *Corp., supra* (court rejects warranty claim where "there is no allegation that [Toyota]

12 ever refused or attempted without success to repair or adjust her Prius").

13              *3.    Plaintiffs' Alleged Design Defect Does Not Fall Within the Scope*

14                     *of the Express Warranty in Toyota's Warranty Manual.*

15         Despite their efforts to disguise the issues, the crux of Plaintiffs' express

16 warranty claim is based upon their belief that all of Toyota's ETCS-i vehicles suffer

17 from a ***design*** defect. (*See, e.g.,* MCC, ¶¶ 245, 346-47, 351).  Specifically, Plaintiffs

18 allege that the ETCS-i systems in Toyota vehicles are defectively designed and that

19 Toyota can remedy this alleged design flaw by implementing electronic and

20 mechanical fail-safes.  (*See id.,* ¶¶ 110-11, 123).    Plaintiffs then attempt to

21 characterize these allegations of product design defect as defects in "materials and

22 workmanship."  (*Id.,* ¶ 343).  However, no amount of guileful drafting can overcome

23 the obvious fact that in the MCC, Plaintiffs are complaining of a design defect, not

24 defects in materials and workmanship.  Because it is well-settled that warranties

25 concerning "material and workmanship" do not cover claims of design defect,

26 Plaintiffs' express warranty fails as a matter of law.  *See, e.g., Brothers v. Hewlett-*

27 *Packard Co.*, No. C-06-02254, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007)

28 (dismissing  express warranty claim where the warranty "does not guarantee against

33

1    design defects [but] guarantees against defects in materials and workmanship.”);

2    *Grupo Sistemas Integrales de Telecomunicacion S.A. de C.V. v. AT&T Commc'ns,*

3    *Inc.,* No. 92 CIV. 7862, 1996 WL 312535, at *7 (S.D.N.Y. June 10, 1996) (“[I]n

4    limiting its warranty to claims based on defective materials or workmanship, Article 5

5    excludes claims of *design* defect….”); *Consol. Data Terminals v. Applied Digital*

6    *Data Sys., Inc.,* 512 F. Supp. 581, 586 (N.D. Cal. 1981) (recognizing difference

7    between material and workmanship defects and design defects) *aff'd in part, rev'd in*

8    *part,* 708 F.2d 385 (9th Cir. 1983); *Falcon Tankers, Inc. v. Litton Sys., Inc.,* 300 A.2d

9    231, 238 (Del. Super. Ct. 1972) (“[C]ourts have repeatedly refused to extend so-called

10   workmanship and material guarantees to cover defects in design.”).

11                   4.     *Plaintiffs' Request for Damages Is Improper Because Repair or*

12                          *Adjustment Is the Exclusive Remedy Available Under Toyota's*

13                          *Warranty Manual.*

14         Although Plaintiffs seek damages among other relief, (MCC, ¶¶ 350-54),

15   “repair or adjustment” is the exclusive remedy under the Warranty Manual.  Thus, no

16   other remedy, including damages, is available.  *Gertz v. Toyota Motor Corp., supra*

17   (“The Court also agrees with [Toyota] that, even if Plaintiffs sufficiently alleges

18   breach of the Basic Warranty, Plaintiff's remedy on that claim is limited to repair or

19   adjustment – damages are not available”); *see also* Cal. Com. Code § 2719(1)(b)

20   (Where an express warranty contains a limitation of remedies, the limited remedy is

21   optional unless the remedy expressly provides that it is exclusive, “in which case it is

22   the sole remedy.”)  Here, the plain language of the Warranty Manual makes clear that

23   the “exclusive remedy” available under the warranty is “repair or adjustment.”

24   Gilford Decl., Ex. B, Warranty Manuals, at 24, 107, 180.

25         Plaintiffs attempt to circumvent this limitation by alleging that the repair or

26   adjustment remedy fails its essential purpose.  (MCC, ¶¶ 349, 353).  However, this

27   argument is available only where a plaintiff first gives the warrantor an opportunity to

28   repair and the warrantor refuses or fails to do so.  *See Philippine Nat'l Oil Co. v.*

34

*Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984) ("[T]he law is that a repair or replace remedy fails of its essential purpose only if repeated repair attempts are unsuccessful *within a reasonable time.*"); *see also Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at *4 n.4 (N.D. Cal. June 5, 2009) (holding that "defendant's warranty did not fail of its essential purpose because defendant was not allowed the opportunity to repair the engine") (internal citation omitted).

As noted above, only twelve Plaintiffs allege that they ever presented their vehicles for repair. *See* Gilford Decl. Ex. A-3, ("Grp. 2 Pls."). Moreover, the MCC contains only conclusory allegations that Toyota failed to repair or adjust within a reasonable time without pleading any facts to support this assertion. (*See* MCC, ¶¶ 349, 353). Absent any factual allegations that their vehicles were presented for repairs or adjustments, Plaintiffs cannot claim that the warranty fails of its essential purpose, as a matter of law. *See Philippine Nat'l Oil Co.*, 724 F.2d at 808.

Plaintiffs also try to avoid the warranty limitation by arguing that the warranty is procedurally and substantively unconscionable. (*See* MCC, ¶¶ 347-348, 351-352); *see also* Cal. Com. Code § 2719(3). Before a court will find a contract provision unconscionable, there must be *both* procedural and substantive unconscionability. *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 808, 49 Cal. Rptr. 3d 555, (2007) ("Unconscionability is a question of law for the court."). Procedural unconscionability focuses on inequality of bargaining power and surprise resulting from hidden terms. *Tietsworth v. Sears*, No. 5:09-cv-00288, 2010 WL 1268093, at *11 (N.D. Cal. Mar. 21, 2010). With respect to this procedural element, Plaintiffs allege that the Warranty Manual is unconscionable because it is an adhesion contract and Plaintiffs "do not have any meaningful choices of reasonably available alternative sources of suitable vehicles." (*See* MCC, ¶ 348). Yet "a contract of adhesion is fully enforceable according to its terms unless certain other factors are present which...operate to render it otherwise." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 819-20, 171 Cal. Rptr. 604, (1990) (*en banc*) (internal citations omitted). Despite

35

1   Plaintiffs' bald assertion that they did not have any alternatives, it is clear that there

2   were thousands of other vehicles available for purchase in the marketplace.  This is

3   precisely the sort of implausible allegation that does not withstand scrutiny under

4   *Iqbal. See, e.g., Sw. Eng'g, Inc. v. Yeomans Chicago Corp.*, No. 09-cv-110, 2009 WL

5   3720374, at *6 (S.D. Cal. Nov. 3, 2009) (applying *Iqbal* and dismissing

6   unconscionability allegations).

7         Plaintiffs also fail to allege facts sufficient to show that the warranty is

8   substantively unconscionable.  A contract is substantively unconscionable if it creates

9   "'overly harsh' or 'one-sided' results as to 'shock the conscience.'"  *Aron*, 143 Cal.

10  App. 4th at 808.  The contract need not be reasonable; the determining factor is

11  whether it "shocks the conscience." *Id.* at 809.  Again, Plaintiffs allege a "formulaic

12  recitation of the elements."  (MCC, ¶ 352); *Iqbal*, 129 S. Ct. at 1349.  However, these

13  "'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice and

14  Plaintiffs' unconscionability argument cannot survive a motion to dismiss. *Id.*

15        Accordingly, Plaintiffs' request for damages must be stricken.

16            5.   *Numerous Class Representatives Fail to Meet Other Requirements*

17                 *For a Valid Express Warranty Claim.*

18              a.   Certain Plaintiffs Have Failed to Present Their Vehicle for

19                     Repair During the Warranty Period, as Required.

20        Nine Consumer Plaintiffs do not plead that they reported any alleged defects or

21  presented their vehicles for repairs within the warranty period and therefore, have

22  failed to comply with the terms of the Warranty Manual. (*See* MCC, ¶ 39, 40, 47, 58,

23  59, 64, 65).[17]  Unlike a warranty of future performance, which expressly guarantees

24  that a product will perform in the future as promised, a repair warranty "simply

25  provides that if a product fails or becomes defective, the seller will replace or repair

26

27  _____

   [17]  The named Plaintiffs at issue include Plaintiffs D. and A. Caylor, Chambers,

28  Funez, Nyquist, Perkin, J. and T. Seymour and Tucker.

within a stated period." *Ontario Hydro v. Zallea Sys., Inc.*, 569 F. Supp. 1261, 1266 (D. Del. 1983); *see also Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 830 (2006) (quoting *Abraham v. Volkswagen of Am., Inc.* 795 F.2d 238, 250 (2d Cir. 1986) ("The general rule is that an express warranty does not cover repairs made after the applicable time or mileage period have elapsed.").

> b.   Certain Plaintiffs Have Not Tendered Their Vehicles Which Is a Condition Precedent.

For those Plaintiffs still within their warranty period, compliance with the tender requirement is necessary prior to filing a lawsuit for breach of express warranty. As noted above *(see supra* in Section F.2), many of the named Plaintiffs have not even tendered their vehicles for repair in accordance with the Warranty Manual. *See* Gilford Decl. Ex. A-4; *see also id.* Ex. B, Warranty Manuals, at 44, 126, 200 ("To obtain warranty service...take your vehicle to an authorized Toyota dealership.").

The customer's obligation to tender an allegedly defective vehicle is a condition precedent to any obligation to repair or adjust the allegedly defective parts. Here, the vast majority of Consumer Plaintiffs (and all of the applicable Non-Consumer Plaintiffs) have failed to allege that they satisfied this condition precedent. *See* Gilford Decl. Ex. A-4, ("Grp. 3 Pls."). Thus, they cannot pursue a claim for breach of express warranty. *See* Cal. Civ. Code § 1639; *Applications, Inc. v. Hewlett-Packard, Co.*, 501 F. Supp. 129 (S.D.N.Y. 1980) (applying California law and explaining that a party seeking to enforce an express warranty is bound by its terms).

> c.   Certain Plaintiffs Have Failed to Provide the Requisite Pre-Suit Notice.

Additionally, 25 Plaintiffs named in the MCC have failed to allege that they provided the requisite pre-litigation notice prior to filing suit. *See* Gilford Decl. Ex. A-5, ("Grp. 4 Pls."). Under California law, a buyer must provide notice of an alleged breach of warranty as a precondition to litigation. *See Fieldstone Co. v. Briggs*

1  *Plumbing Prods. Inc.,* 54 Cal. App. 4th 357, 62 Cal. Rptr. 2d 701, 708-09 (1997)

2  (holding that failure to provide such notice serves as a bar to suit). Failure to allege

3  pre-litigation notice requires dismissal of an action under California law. *See*

4  *Tietsworth,* 2010 WL 1268093, at *13 (citing Cal. Com. Code § 2607) ("A plaintiff

5  also must plead that she provided the defendant with pre-suit notice of the breach");

6  *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009). Simply filing a

7  complaint is insufficient to meet the notice requirement of Section 607. *See Cardinal*

8  *Health 301, Inc. v. Tyco Elec. Corp.*, 169 Cal. App. 4th 116, 135-36, 87 Cal. Rptr. 3d

9  5 (2008).

10  Because these 25 Plaintiffs fail to allege that they provided pre-suit notice, their

11  express and implied warranty claims must be dismissed.

12  **G.    Plaintiffs Fail to State a Claim for Breach of Implied Warranty of**

13  **Merchantability.**

14  *1.    The Requisite Privity Does Not Exist Between Plaintiffs and*

15  *Toyota.*

16  Plaintiffs' implied warranty of merchantability claim (Count V) brought under

17  Cal. Com. Code § 2314 must be dismissed, because Plaintiffs cannot establish vertical

18  privity as a matter of law. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017,

19  1023 (9th Cir. 2008) ("a plaintiff asserting breach of warranty claims *must* stand in

20  vertical contractual privity with the defendant") (emphasis added); *Anunziato v.*

21  *eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (Selna, J.) (dismissing

22  implied warranty claim where plaintiff "did not, and [could not] allege privity" with

23  defendant). In the absence of privity, a plaintiff is barred from bringing an implied

24  warranty claim under California law. *See All W. Elecs., Inc. v. M-B-W, Inc.*, 64 Cal.

25  App. 4th 717, 725, 75 Cal. Rptr. 2d 509, 514 (1998) ("Privity of contract is a

26  prerequisite in California for recovery on a theory of breach of implied warranties of

27  fitness and merchantability.").

28  "California courts have painstakingly established the scope of the privity

1  requirement under California Commercial Code section 2314." *Clemens*, 534 F.3d at

2  1024.  Vertical privity generally requires a direct contractual nexus between plaintiff

3  and defendant for a valid claim of breach of implied warranty.  *Osborne v. Subaru of*

4  *Am., Inc.*, 198 Cal. App. 3d 646, 656, 243 Cal. Rptr. 815 n.6 (1988).  If a purchaser

5  seeks warranty recovery "against a manufacturer with whom he has no direct

6  contractual nexus," the manufacturer has a vertical privity defense.  *Anunziato*, 402 F.

7  Supp. 2d at 1141 (internal citation omitted).

8          With respect to the threshold privity requirement, Plaintiffs assert only that they

9  had "direct dealings with either the Defendants or their agents (dealerships)" without

10  alleging any facts to support these claims.  (MCC, ¶ 363).  Plaintiffs do not allege that

11  they purchased or leased their vehicles from Toyota, nor do they allege any facts to

12  suggest any direct dealings with Toyota.  (*Id.*, ¶¶ 357-364).  Likewise, Plaintiffs have

13  failed to plead any facts indicating that the dealerships are agents of Toyota.   As

14  previously addressed before this Court in connection with the preservation order

15  briefing, the dealerships are independent, third-party entities that are not agents of

16  Toyota.  (Dkt. 205).  Plaintiffs' bald assertion to the contrary is not supported by a

17  single factual allegation in the MCC and instead, is expressly contradicted by well-

18  established case law.  *See Clemens*, 534 F.3d 1017 at 1023 (affirming dismissal of

19  implied warranty claim where plaintiff purchased vehicle from dealer, explaining that

20  consumer who purchases from retailer is not in privity with manufacturer); *All W.*

21  *Elecs.*, 64 Cal. App. 4th at 725 ("[T]here is no privity between the original seller and a

22  subsequent purchaser who is in no way a party to the original sale."); *see also*

23  *Anunziato*, 402 F. Supp. 2d at 1142 (dismissing implied warranty claim for lack of

24  privity where the allegedly defective laptop computer was purchased from retailer, not

25  the manufacturer-defendant); *Harlan v. Roadtreck Motorhomes, Inc.*, No. 07-CV-686,

26  2009 WL 928309, at *14 (S.D. Cal. Apr. 2, 2009) (granting summary judgment on

27  implied warranty claims because plaintiffs purchased motorhome from dealer and

28  were not in vertical privity with defendant-manufacturer).  Because Plaintiffs are not

39

1   in privity with Toyota, their implied warranty claim must fail as a matter of law.

2       Furthermore, Plaintiffs' attempts to circumvent the threshold privity
3   requirement are unavailing.  Plaintiffs first argue that "privity is not required in this
4   case because Plaintiffs and Class members are intended third-party beneficiaries of
5   contracts between Toyota and its dealers."  (MCC, ¶ 363).  Although courts have
6   recognized a limited exception to the privity requirement if a plaintiff can show that
7   he was a third-party beneficiary of a contract between the defendant and a third-party,
8   this exception does not apply here, because Plaintiffs have failed to identify an
9   enforceable contract expressly made for their benefit.  It is well-established that third-
10  party beneficiary status is a matter of contract interpretation, and a plaintiff seeking to
11  enforce a contract as a third-party beneficiary "must plead a contract which was made
12  expressly for his or her benefit and one in which it clearly appears that he or she was a
13  beneficiary."  *In re NVIDIA GPU Litig.*, No. C 08-04312, 2009 WL 4020104, at *6
14  (N.D. Cal. Nov. 19, 2009) (citing *Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal.
15  App. 4th 949, 957, 23 Cal. Rptr. 3d 233, 238 (2005)).

16      Plaintiffs assert that they are the intended third-party beneficiaries of Toyota's
17  "warranty agreements."  (MCC, ¶ 363).  They allege that "[t]he dealers were not
18  intended to be the ultimate consumers of the Defective Vehicles and have no rights
19  under the warranty agreements ... [which] were designed for and intended to benefit
20  the ultimate consumers only."  (*Id.*).  This position is untenable given that Plaintiffs,
21  as a matter of law, cannot claim to be third-party beneficiaries of the Warranty
22  Manuals.  Plaintiffs are a small fraction of the millions of potential customers who
23  could have purchased a Toyota after it was sold to the dealer.   The transactions
24  between Toyota and the dealers occur without any knowledge of, much less intent to
25  benefit, any of the Plaintiffs.  There is simply no legal support for Plaintiffs' claim
26  that they should be considered intended third party beneficiaries as a way around the
27  privity rule.  The fallacy of this proposition is obvious.  Such an exception would
28  absolutely swallow the privity rule in the context of manufacturer-to-dealer and then

40

1   dealer-to-consumer transactions, and flies in the face of a litany of California cases,

2   including automobile defect cases. *See Clemens*, 534 F.3d at 1023; *Osborne*, 198 Cal.

3   App. 3d at 656 n.6; *Harlan*, 2009 WL 928309, at *14; *see also NVIDIA*, 2009 WL

4   4020104, at *6 (dismissing lawsuit where computer owners brought class action claim

5   against graphic card manufacturer); *see Cooper Power Sys., Inc. v. Union Carbide*

6   *Chem. & Plastics Co.*, 123 F.3d 675 (7th Cir. 1997) (purchasers of paint and paint

7   resin were "remote parties" and not intended third party beneficiaries of contract

8   between manufacturers and distributors). This is simply not an exception.

9        Plaintiffs next seek to avoid satisfying the privity requirement by arguing that

10   privity is not required "because Plaintiffs' and Class members' Toyotas are dangerous

11   instrumentalities due to the aforementioned defects and nonconformities." (MCC, ¶

12   363). While no California decisions support this non-existent "exception" to the

13   privity rule, Plaintiffs are not the first to attempt such an argument. Earlier this year,

14   the Northern District of California noted that California courts have not abandoned

15   privity concepts where "dangerous" products are involved. *Salinas v. City of San*

16   *Jose*, No. C09-04410, 2010 WL 725803, at *1 (N.D. Cal. Feb. 26, 2010) (citing

17   *Peterson v. Lamb Rubber Co.*, 54 Cal. 2d 339, 346-48, 5 Cal. Rptr. 863 (1960)

18   (rejecting proposition that "'privity is not required where the item sold is inherently

19   dangerous.'")).

20        The bottom line is that Plaintiffs cannot unilaterally plead around the scope of

21   required privity that "California courts have painstakingly established." *Clemens v.*

22   *DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008). Plaintiffs' implied

23   warranty claims must be dismissed, because they cannot establish privity of contract

24   and the privity exceptions pled in the MCC do not apply as a matter of law.[18]

25

26   ────────────────

27   [18]   Additionally, California law is clear that Plaintiffs' allegations concerning alleged
     representations and advertising materials from Toyota do not provide a privity
28   exception for *implied* warranty claims. *See Burr v. Sherwin Williams Co.*, 42 Cal. 2d
     682, 696, 268 P.2d 1041 (1954). *Wolph v. Acer Am. Corp.*, No. C 09-01314, 2009

41

1            2.      *Many Plaintiffs Have Not Alleged Manifestation of a Defect And*

2                  *Thus Cannot Bring a Claim for Breach of Implied Warranty.*

3        Additionally, on separate grounds, the 22 Consumer Plaintiffs[19] and all four

4 Non-Consumer Plaintiffs cannot assert a claim for breach of implied warranty,

5 because their vehicles have not experienced manifestation of the alleged defect. (*See*

6 MCC, ¶¶ 32-75). Courts in California and elsewhere have held that a product that has

7 not manifested a defect or malfunction cannot be deemed to have violated any implied

8 warranty of merchantability. *See Am. Suzuki Motor Corp. v Super. Ct. of L.A. Cnty.*,

9 37 Cal. App. 4th 1291, 1296-98, 44 Cal. Rptr. 2d 526, 529-31 (1995) (rejecting

10 proposition that remote fear or expectation that vehicle would manifest defect could

11 give rise to a claim for breach of the implied warranty of merchantability); *see also*

12 *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297-98 (4th Cir. 1989) (affirming

13 dismissal of plaintiffs' implied warranty claims where plaintiffs' vehicles did not

14 suffer from the alleged defect); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 460 (D.N.J.

15 1998) ("In most jurisdictions, the courts recognize that unless a product actually

16 manifests the alleged defect, no cause of action for breach of express or implied

17 warranty or fraud is actionable."); *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792,

18 805-06 (E.D. La. 1998) (holding that "allegation of manifest injury or defect" is a

19 "central tenet[ ]" of an implied warranty claim); *Sheris v Nissan N. Am., Inc.*, No. 07-

20 2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) ("'The weight of authority, from

21 courts across the country, indicates that plaintiffs may not recover for breach of the

22 implied warranty of merchantability under the facts' where plaintiffs have driven their

23 cars without problems for years.").

24        Because they have not alleged any manifestation of defect in their vehicles, as

25 previously explained, *supra* Section II.C., 1 at pp 10-13, the 22 Consumer and 4 Non-

26 _____

27 WL 2969467, at *4 (N.D. Cal. Sept. 14, 2009).

28 [19] *See* list of 22 Plaintiffs, Gilford Decl. Ex. A-2, ("Grp. 1 Pls.").

Consumer Plaintiffs' claim for breach of implied warranty of merchantability fails as a matter of law.[20]

**H.  Plaintiffs' Claims Under the Magnuson-Moss Warranty Act Fail as a Matter of Law.**

*1.  Plaintiffs Have Failed to Establish a State Law Warranty Claim Under Magnuson-Moss.*

The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("Magnuson-Moss") authorizes civil actions by consumers to enforce the terms of an implied or express warranty under state law. *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 833, 51 Cal. Rptr. 3d 118, 124 (2006).  It requires the *application* of state warranty laws; it does not create additional federal law protections or *expand* a plaintiff's rights under state warranty law.  *Stearns*, 2009 WL 1635931, at *9; *Daugherty*, 144 Cal. App. 4th at 833.  As such, dismissal of a plaintiff's state law warranty claims requires the dismissal of the plaintiff's claim under Magnuson-Moss. *Daugherty*, 144 Cal. App. 4th at 833 ("[T]he trial court correctly concluded that failure to state a warranty claim under state law necessarily constituted a failure to state a claim under Magnuson-Moss.").  *See also Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009) (dismissing Magnuson-Moss claims "because we conclude that the plaintiffs have failed to state a claim for breach of an express or implied warranty" under state law); *Gertz v. Toyota Motor Corp., supra* (Court dismisses Magnuson-Moss claim based on Plaintiff's failure to state claim for breach of state warranty claim).  As explained above, Plaintiffs' state law warranty claims fail for numerous reasons, necessitating the failure of the Consumer Plaintiffs'[21] warranty

---

[20]  As explained *supra* at Section II.F.5.c, at pp. 37-38, the implied warranty claims for 27 Plaintiffs also fail for lack of pre-suit notice as required under Cal. Com. Code § 2607.

[21]  This claim is only asserted by the Consumer Plaintiffs.

43

1  claims under Magnuson-Moss.

2      2. *Numerous Plaintiffs Failed to Follow Toyota's Informal Dispute*

3       *Resolution Procedures as Required by 15 U.S.C. § 2310(a).*

4    Even if Plaintiffs' state law express warranty claim were to survive this Motion

5  to Dismiss, Magnuson-Moss claims must be dismissed as to those Plaintiffs who

6  failed to take advantage of Toyota's informal dispute procedures.  Magnuson-Moss

7  contains an express policy encouraging the use of informal dispute settlement

8  mechanisms "whereby consumer disputes are fairly and expeditiously settled." 15

9  U.S.C. § 2310(a).  Congress has declared that a consumer or a class of consumers may

10  not proceed in a civil action unless the consumer or class representative first resorts to

11  the warrantor's informal dispute settlement procedure.  15 U.S.C. § 2310(a)(3)(C)(i),

12  (ii).

13    By implication, Plaintiffs have conceded that all named Plaintiffs, with the

14  exception of Susan Gonzalez and Carl Nyquist, have failed to resort to Toyota's

15  informal dispute settlement procedures.[22]  *See* Gilford Decl. Ex. <u>A-6</u>, ("Grp. 5 Pls.").

16  Plaintiffs allege that they should be "excused" from satisfying this statutory

17  requirement because Toyota allegedly "knew, should have known, or was reckless in

18  not knowing" of the purported defects and "nonetheless failed to rectify the situation

19  and/or disclose the defective design." (MCC, ¶ 388).

20    This Court has expressly rejected the contention that a warrantor's alleged

21  knowledge or concealment of a purported defect excuses a plaintiff from resorting to

22  the informal dispute settlement process.  *Parkinson v. Hyundai Motor Am.*, 258 F.R.D.

23  580, 593 (C.D. Cal. 2008).  In *Parkinson*, the plaintiffs filed a putative class action

24

25  _____

26  [22] Plaintiff's Warranty Manual expressly describes Toyota's informal Dispute
Settlement Program and the steps Toyota owners should take to invoke the program:

27  consumers "***must use the Dispute Settlement Program before seeking remedies
through a court action pursuant to the Magnuson-Moss Warranty Act***."  Gilford

28  Decl., Ex. <u>B</u>, Warranty Manuals, at 22, 99, 184.

1   against Hyundai asserting claims under the CLRA, UCL, and Magnuson-Moss Act,

2   based on alleged defects in the "flywheel system of the 2003 Hyundai Tiburon GT."

3   *Id.* at 585-87.   Although the plaintiffs alleged that Hyundai knew about the alleged

4   defects and failed to disclose the defects to consumers, *Id.* at 596, this Court held that

5   the plaintiffs were not excused from using Hyundai's informal dispute settlement

6   procedures on the grounds that such attempts would be "unnecessary and/or futile."

7   Specifically, the Court found these allegations insufficient to overcome "the strong

8   presumption in favor of encouraging alternative dispute resolution under the MMA."

9   *Id.* at 593.

10      For each of the above-stated reasons, Plaintiffs' Magnuson-Moss claim must be

11   dismissed.

12      **I.      Plaintiffs Fail to State a Claim for Revocation of Acceptance.**

13              *1.      Plaintiffs May Not Seek Revocation of Acceptance Against a*

14                      *Manufacturer Who Did Not Sell The Product to the Plaintiff.*

15      The Consumer Plaintiffs are prohibited from claiming revocation of acceptance

16   because, again, they are not in privity with Toyota.   The statute governing revocation

17   of acceptance specifically limits application of the remedy to sellers who contract

18   directly with plaintiff purchasers:   "The buyer may revoke his acceptance ... if his

19   acceptance was reasonably induced ... by the *seller's* assurances," and revocation "is

20   not effective until the buyer notifies the *seller* of it."   Cal. Com. Code § 2608

21   (emphasis added).

22      The notion that a revocation claim under the UCC does not lie against a

23   manufacturer is further supported by other California statutes governing sales

24   disputes.   The Song-Beverly Consumer Warranty Act specifically defines a

25   "manufacturer" and provides for remedies against manufacturers while

26   acknowledging interplay with the UCC.   Cal. Civ. Code § 1791.   If the California

27   legislature had intended revocation of acceptance to apply against a manufacturer, it

28   would have included the term in the statute.   Similarly, claims for rescission, which

45

1   were the subject of § 2608 before it was amended for procedural clarification, require
2   privity of contract.  *See* Cal. Civ. Code § 1689; Cal. Com. Code § 2608 cmt. 1.
3   Because a revocation of acceptance claim is essentially an evolved form of a
4   rescission claim, the privity rule applies to a revocation claim.

5        In jurisdictions like California where the privity rule is preserved, courts in
6   automobile defect cases have consistently held that revocation under the UCC is not
7   available against the automobile manufacturer when the vehicle was purchased from
8   the dealer.  Under Article 2 of the UCC, all of the relevant rights of aggrieved buyers
9   "concern what the buyer is entitled to as against the 'seller.'" *Seekings v. Jimmy GMC*
10  *of Tucson, Inc.*, 130 Ariz. 596, 600, 638 P.2d 210, 214 (1981).  "In general, the buyer
11  is entitled to recovery of the purchase price plus all damages caused by the seller's
12  failure to deliver conforming goods; the seller can recover the goods sold …. Thus,
13  the manufacturer logically cannot share the seller's burden or benefit in returning the
14  contracting parties to their presale positions." *Id.* at 600, 638 P.2d at 214.

15       "[T]he remedy of revocation of acceptance under Code § 8.2-608 [which
16  contains language identical to the California provision] is conceptually inapplicable to
17  any persons other than the parties to the contract of sale sought to be rescinded."
18  *Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 162-63, 313 S.E.2d 384, 390 (1984).
19  *See also Voytovich v. Bangor Punta Operations, Inc.*, 494 F.2d 1208, 1211 (6th Cir.
20  1974) (vacating award of revocation of acceptance while holding that buyer-seller
21  relationship is required); *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190
22  (N.D. Ga. 2005) (granting summary judgment to car manufacturer because revocation
23  requires privity of contract and may only be asserted against a seller); *Mydlach v.*
24  *DaimlerChrysler Corp.*, 226 Ill. 2d 307, 331, 875 N.E.2d 1047, 1064 (2007) (granting
25  summary judgment to car manufacturer because "revocation of acceptance is
26  'conceptually inapplicable' to a nonseller"); *Henderson v. Chrysler Corp.*, 191 Mich.
27  App. 337, 341, 477 N.W.2d 505, 507 (1991) (reversing judgment in favor of
28  purchaser and holding that action for revocation of acceptance is not available against

46

1   car manufacturer).

2   Here, Plaintiffs purchased their vehicles directly from independent, third-party

3   Toyota dealerships, not from Toyota. (MCC, ¶¶ 78, 363, 385). Because Toyota was

4   not a "seller" of the allegedly "Defective Vehicles," Plaintiffs are thus prohibited from

5   asserting a revocation of acceptance claim against Toyota.

6                    2.      *Plaintiffs Have Failed to Plead the Required Elements of a Claim*

7                            *for Revocation of Acceptance.*

8   Pursuant to Cal. Com. Code § 2608, each Plaintiff must establish that he (1)

9   revoked acceptance within a reasonable time after discovering a defect, (2) revoked

10  acceptance before causing any substantial change in the vehicle, and (3) notified the

11  seller of his revocation prior to filing this lawsuit. Plaintiffs admit that, at most, only

12  14 of the 48 named Consumer Plaintiffs notified Toyota of revocation prior to filing

13  this suit. (MCC, ¶ 366). "[N]otice by initiation of legal proceedings does not satisfy

14  the statutory mandate." *Gast v. Rogers-Dingus Chevrolet*, 585 So. 2d 725, 729 (Miss.

15  1991). Rather, notice must be given prior to a lawsuit because "the obligation under

16  the Code to act in good faith would require that the buyer not only give notice but do

17  so under such circumstances that the seller might have the opportunity … to remedy

18  his breach without the buyer's jumping into a lawsuit." *Id.* at 729. Because 38

19  Plaintiffs failed to provide Toyota with pre-suit notice of revocation, their claims fail

20  as a matter of law and should be dismissed. *See* Gilford Decl. Ex. <u>A-7</u>, ("Grp. 6

21  Pls."); *See also J.A. Indus., Inc. v. All Am. Plastics, Inc.*, 133 Ohio App. 3d 76, 83,

22  726 N.E.2d 1066, 1070 (1999); *Golden Needles Knitting & Glove Co. v. Dynamic*

23  *Mktg. Enters., Inc.*, 766 F. Supp. 421, 429 (W.D. N.C. 1991); *Mack Boring & Parts,*

24  *Co. v. Novis Marine, Ltd.*, No. 06-2692, 2008 WL 4371769, *7-*8 (D.N.J. 2008).

25  Of the 14 remaining Consumer Plaintiffs, the revocation claims of Plaintiffs

26  Atwater, Heidenreich, J. and M. Laidlaw[23] and Perkin fail because they no longer own

27

28  ---
[23] Plaintiffs, such as the Laidlaws, waive their revocation claim by simply abandoning
the vehicle on the dealer's lot. *Freidman v. Gen. Motors Corp.*, No. 08 Civ. 2458,

their vehicles.  *See* Gilford Decl. Ex. A-8, ("Grp. 7 Pls.").  Accordingly, they are unable to return the vehicles and cannot revoke acceptance as a matter of law. *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 735 F.2d 177, 181 (5th Cir. 1984).

The nine remaining Consumer Plaintiffs' claims should be dismissed because they do not allege facts sufficient to establish each required element.  For instance, these Consumer Plaintiffs fail to allege that they have discontinued use of their vehicles.  Specifically, Baldisseri has driven his car for 13 months, and Nyquist and Visconi have continuously driven 2006 and 2007 models since their purchase, causing substantial change to the vehicles.  As a matter of law, these nine Plaintiffs have failed to plead facts sufficient to establish that they revoked acceptance within a reasonable time or before they caused substantial change to the vehicles.  *See Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72 (2d Cir. 1986) (citing California law); *Freidman*, 2010 WL 2540950, at *5.  *See also Gasque*, 227 Va. at 162; *Smyser v. W. Star Trucks Corp.*, 247 Wis. 2d 282, 634 N.W.2d 134 (Ct. App. 2001); *Jenkins v. Gen. Motors Corp.*, 240 Ga. App. 636, 524 S.E.2d 324 (1999); *Ford Motor Credit Co. v. Mellor*, 748 S.W.2d 410 (Mo. Ct. App. 1988); *Golembieski v. O'Rielly R.V. Ctr., Inc.*, 147 Ariz. 134, 708 P.2d 1325 (Ct. App. 1985).

Likewise, the Non-Consumer Plaintiffs fail to properly plead a claim under Section 2608.  First, Jerry Baker Auto Sales, LLC, Auto Lenders and Deluxe Holdings do not claim to purchase any vehicles from Toyota and therefore fail to establish privity.[24]  Allegations of "direct dealing" and a legal conclusion that the parties are "in privity" are insufficient.  Second, Green Spot Motors and Deluxe Holdings fail to allege no substantial change to the vehicles.  Third, Jerry Baker Auto Sales, LLC and Green Spot Motors fail to allege that they notified Toyota of revocation prior to filing

---

2010 WL 2540950, at *5 (S.D.N.Y. June 22, 2010).

[24] Plaintiff Auto Lenders is a residual value insurer and did not purchase any vehicles from anyone.

48

1   suit.  Fourth, Deluxe Holdings does not allege that it no longer rents Toyota vehicles;

2   the presumption is that the cars continue to be rented, which causes substantial change

3   to the vehicles and is inconsistent with the notion of revocation.  *Jenkins*, 240 Ga.

4   App. at 636.   None of the Plaintiffs properly allege a claim for revocation of

5   acceptance, and the MCC should therefore be dismissed.

6               3.   *Plaintiffs' Revocation Claim Also Fails Because the Express*

7                    *Warranty Limits Remedies to Repair and Adjustment.*

8         Plaintiffs' revocation claim also fails because, as previously addressed, *supra*

9   Section II.F.4 at pp. 34-36, Toyota properly limited Plaintiffs' remedies to "necessary

10  repairs and adjustments" per the express warranty.   The UCC provision permitting

11  revocation is inapplicable when a warranty limits remedies.  4 Lawrence's Anderson

12  on the Unif. Com. Code § 2-608:61 (3d ed. 2009); *Palmucci v. Brunswick, Corp.*, 311

13  N.J. Super. 607, 710 A.2d 1045, 1048 (1998).

14  **J.   Plaintiffs' Claims for "Breach of Contract/Common Law Warranty"**

15       **Fail for the Same Reasons Plaintiffs' Breach of Express and Implied**

16       **Warranty Claims Fail.**

17        Plaintiffs' claims for "breach of contract/common law warranty" (Count VIII)

18  are duplicative of their breach of warranty claims (Counts IV, V) and should,

19  therefore, be dismissed or stricken.  "In treating common law warranties, it has been

20  recognized that statutory standards should be utilized where appropriate."  *Pollard v.*

21  *Saxe & Yolles Dev.*, 12 Cal. 3d 374, 380, 115 Cal. Rptr. 648 (1974).   In California,

22  breach of warranty claims are governed by Cal. Com. Code §§ 2313 and 2314.

23  Accordingly, any claim for "common law" breach of warranty is redundant and may

24  be stricken pursuant to Fed. R. Civ. P. 12(f).  *Wilkerson v. Butler*, 229 F.R.D. 166, 170

25  (E.D. Cal. 2005) ("A 'redundant' matter consists of allegations that constitute a

26  needless repetition of other averments …").

27        Even if the Court were to address these claims separately, the same legal

28  principles would be applied as discussed in Sections F and G, *supra.  See, e.g., Long*

1    *v. Hewlett-Packard Co.*, No. 06-02816, 2007 WL 2994812, at *5-*6 (N.D. Cal. July

2    27, 2007) (applying Commercial Code provisions to common law breach of express

3    warranty claim).   Accordingly, Plaintiffs' breach of contract/common law warranty

4    claims fail for the same reasons as their express and implied warranty claims and,

5    therefore, should be dismissed or stricken from the MCC.

6            **K.    Plaintiffs' Claims for Unjust Enrichment Fail as a Matter of Law.**

7            Plaintiffs' unjust enrichment claim fails because there is no unjust enrichment

8    cause of action in California.   Even if this Court were to recognize such a claim,

9    Plaintiffs' unjust enrichment claim (Count VIII) still fails, because Plaintiffs have pled

10   numerous adequate remedies at law and are entitled to nothing more.

11                   *1.    Unjust Enrichment is Not a Recognized Cause of Action.*

12           California state and federal courts have repeatedly held that unjust enrichment

13   is not a valid cause of action.   *See, e.g.*, *In re Late Fee & Over-Limit Fee Litig.*, 528 F.

14   Supp. 2de 953, 966 (N.D. Cal. 2007) ("[T]here simply 'is *no cause of action* in

15   California for unjust enrichment.'") (internal citation omitted); *Walker v. USAA Cas.

16   Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) ("There is no cause of action in

17   California for unjust enrichment."); *Melchior v. New Line Prods., Inc.*, 106 Cal. App.

18   4th 779, 793, 131 Cal. Rptr. 2d 347, 357 (2003) ("[T]here is no cause of action in

19   California for unjust enrichment."); *Jogani v. Super. Ct.*, 165 Cal. App. 4th 901, 911,

20   81 Cal. Rptr. 3d 503, 511 (2008) ("[U]njust enrichment is not a cause of action.

21   Rather, it is a general principle underlying various doctrines and remedies"); *Gertz v.

22   Toyota Motor Corp., supra* (same).   Under the weight of this authority, Plaintiffs'

23   claim for unjust enrichment must be dismissed.

24                   *2.    Plaintiffs Allege Numerous Adequate Remedies at Law.*

25           The theory of unjust enrichment is equitable in nature and unavailable if there is

26   an adequate remedy at law, such as a statutory or express warranty claim.   *Baggett v.

27   Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1271 (C.D. Cal. 2007) (dismissing unjust

28   enrichment claim with prejudice where Plaintiff alleged claims for fraud, violations of

50

the CLRA, and violations of the UCL on the grounds that "Plaintiff will be able to pursue his remedies through those claims."); *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 664 F. Supp. 2d 752 (E.D. Mich. 2009) (dismissing unjust enrichment claim where express warranty defined the parties' rights); *In re Facebook PPC Adver. Litig.*, No. 5:09-cv-03043, 2010 WL 1746143 (N.D. Cal. Apr. 22, 2010) (dismissing unjust enrichment claim where express contract defined the parties' rights).  In this case, Plaintiffs do not plead that they lack an adequate remedy at law.  To the contrary, they allege nine purportedly adequate remedies at law:  CLRA, UCL, FAL, an express warranty, an implied warranty, revocation of acceptance, Magnuson-Moss, an express contract/common law warranty and fraud.  (MCC, ¶¶ 295-405).  Plaintiffs' unjust enrichment claim adds nothing, and therefore must be dismissed.

**L.  Plaintiffs' Request for Injunctive Relief Requiring Toyota to Implement Fail-Safe Mechanisms Amounts to a Court-Ordered Nationwide Recall and is Preempted by the National Traffic and Motor Vehicle Safety Act.**

Plaintiffs' request for "[a]n injunction ordering Toyota to implement an effective fail-safe mechanism on all vehicles with ETCS" (MCC, Prayer for Relief (i)), must be stricken, because Plaintiffs' request for a nationwide court-ordered recall is preempted by the National Traffic and Safety Act of 1966 (the "Safety Act"), 49 U.S.C. §§ 30101 *et seq.*

The Safety Act vests authority over matters regarding motor vehicle safety in the Secretary of Transportation or his delegate, and the Secretary has delegated this authority to the NHTSA.  *See* 49 U.S.C. §§ 30119, 105(d).  The NHTSA is charged with establishing motor vehicle safety standards, investigating alleged defects or noncompliance, and issuing and administering motor vehicle recalls based on a determination of a defect impacting safety.  *See* 49 U.S.C. §§ 30111, 30118-30120.  49 U.S.C. § 30112 prohibits the manufacturing and selling of vehicles that do not

51

comply with the safety standards determined by the NHTSA, and 49 U.S.C. § 30116 requires manufacturers and distributors to repurchase or remedy vehicles that have been purchased by dealers and determined by the NHTSA to be defective or in noncompliance with the NHTSA standards but have not yet been sold to purchasers. In sum, the NHTSA has the authority to do precisely what Plaintiffs seek here – issue a vehicle safety standard and administer a recall to implement measures that remedy a defect impacting safety.

As Plaintiffs recognize (MCC, ¶¶ 113-219), the NHTSA has been and continues to be intimately involved in investigating allegations of UA in Toyota vehicles. *See, e.g.*, Request for Judicial Notice, dated September 13, 2010 ("RJN"), Ex. 1, Daniel C. Smith, Associate Administrator Enforcement, NHTSA, "Overview of NHTSA and its Activities Related to Unintended Acceleration and Vehicle Electronics," June 30, 2010.[25]   Significantly, in February 2010, the NHTSA requested information and documents from Toyota relating to Toyota's UA recalls. *See* RJN Ex. 2, NHTSA Information Request dated February 16, 2010. The NHTSA requested the information "in the interest of assuring that the problems with UA have been fully identified and addressed." *Id.* at page 23. The NHTSA also indicated that its goal was to "more fully understand and evaluate, among other things, whether the scope of [Toyota's UA recalls] is sufficiently broad." *Id.*   Clearly, the NHTSA has exercised its sole authority to monitor and supervise Toyota's UA recall campaigns.

Beyond its involvement in the UA recalls, the NHTSA has conducted tests of Toyota vehicles involved in crashes blamed on UA, and has enlisted the expertise of researchers and engineers from the National Academy of Sciences and NASA to study UA and whether there are potential for defects in the electronics or software. The

---

[25] Toyota is attaching this document for the court's convenience and for informational purposes only. Toyota is not relying on the contents of this document to support its motion to dismiss. *See supra* at note 5.

1    NHTSA recently reported to Congress that its preliminary findings have not identified

2    any electronic or software defects in the Toyota vehicles. *See* RJN Ex. 1; *see*

3    *generally* So Far, Toyota Electronics Are Passing Muster, Automotive News, Aug. 16,

4    2010, at 2010 WLNR 16515704 (discussing the NHTSA's ongoing investigation and

5    preliminary findings). Thus, there is a very real and substantial possibility that any

6    court action on Plaintiffs' request for an order compelling the recall of ETCS-i-

7    equipped Toyota vehicles may frustrate, interfere and conflict with the NHTSA's

8    ongoing efforts to investigate and address the very same issues.

9          Given the comprehensive federal administrative scheme that Congress has

10   established and the ongoing, active involvement in this matter of the administrative

11   agency tasked with responsibility under that scheme, a "nationwide court-ordered

12   recall would conflict directly with and frustrate the Safety Act." *Lilly v. Ford Motor*

13   *Co.*, No. 00C7372, 2002 WL 84603, at *5 (N.D. Ill. Jan. 22, 2002). Several courts

14   addressing such requests have held that the claims are preempted by the Safety Act.

15   *See id.* (holding that the claim was preempted and explaining that "[i]t is clear that

16   Congress did not intend for the federal courts to have authority to order recalls of

17   motor vehicles on a nationwide basis for several model years."); *In re*

18   *Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935, 944-45

19   (S.D. Ind. 2001) (holding that request for nationwide recall was conflict preempted on

20   the basis of frustration of Congress' purpose under the Safety Act of providing

21   exclusive administration of recalls through the NHTSA); *see also Coker v.*

22   *DaimlerChrysler Corp.*, No. 01CVS1264, 2004 WL 32676 (N.C. Super. Jan. 5, 2004)

23   *aff'd*, 172 N.C. App. 386, 617 S.E.2d 306 (2005); *see also* 49 U.S.C. § 30118(b)(1)

24   (the Secretary of Transportation has authority to "make a final decision that a motor

25   vehicle … contains a defect related to motor vehicle safety.)".

26         In the few instances where courts addressing such requests have determined that

27   they were not wholly preempted under the Safety Act, the courts concluded that the

28   relief sought was something short of a court-ordered nationwide recall. *See, e.g.*,

53

*Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 958, 964-65 (N.D. Cal. 2004) (finding no conflict preemption where plaintiffs sought only limited, statewide injunctive relief, such as inclusion in an ongoing, voluntary, partial recall); *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1217 n.3 (N.D. Cal. 2002) (finding no conflict preemption at pleadings stage where plaintiffs from 11 states sought only a common fund for repairs); *cf. Talalai v. Cooper Tire & Rubber Co.*, No. 00CV5694, 2001 WL 1877265, at *7 (D.N.J. Jan. 8, 2001) (finding no complete preemption where Plaintiffs certified that they sought only property damages).  Here, Plaintiffs unambiguously seek a nationwide recall of Toyota vehicles with ETCS-i, including vehicles sold and those yet to be sold, despite the NHTSA's ongoing investigation. Because the prospect of a conflict between judicial proceedings and action by the NHTSA is patently clear, this Court should find that Plaintiffs' request for injunctive relief is preempted by the Safety Act.

**M.     This Court Should Defer to the NHTSA Under the Doctrine of Primary Jurisdiction and Dismiss Plaintiffs' Claim for Injunctive Relief.**

For reasons similar to those discussed above, this Court should defer to the NHTSA under the doctrine of primary jurisdiction and strike Plaintiffs' request for injunctive relief.  The doctrine of primary jurisdiction is a court-created doctrine that is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. *Digital Commc'ns Network, Inc. v. AT&T Wireless Servs.*, 63 F. Supp. 2d 1194, 1197 (C.D. Cal. 1999). The doctrine is "a principle, now firmly established, that in cases raising issues of fact not within the conventional expertise of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far E. Conference v. United States*, 342 U.S. 570, 574-75, 72 S. Ct. 492, 96 L. Ed. 576 (1952).  In determining whether to invoke the doctrine, courts will consider whether (1) the case involves a matter within the special

54

expertise of the agency; and (2) there is a need to promote uniformity in administrative policy or a possibility of inconsistent results between the courts and the agency. *Id.; see also Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 390, 6 Cal. Rptr. 2d 487, 496-97 (1992) (explaining that the doctrine of primary jurisdiction applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views").

This Court should invoke the doctrine of primary jurisdiction in connection with Plaintiffs' requested injunctive relief because this issue is within the special competence of the NHTSA. *See Am. Suzuki*, 37 Cal. App. 4th at 1299-1300; *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 628-29 (M.D.N.C. 2006) (deferring claims relating to an ongoing NHTSA investigation under primary jurisdiction doctrine). The NHTSA, through the Secretary of Transportation, is tasked by federal law with the responsibility of initiating and conducting recalls of automobiles. *See* 49 U.S.C. §§ 30118, 30119, 30120. Moreover, as explained above, the NHTSA has been investigating allegations of UA in the Toyota vehicles. Accordingly, this Court should defer to the NHTSA as to recall-type remedies because recalls are an issue within the agency's special competence.

**N.   Plaintiffs' Request for "Restitution and/or Restitutionary Disgorgement" Should Be Stricken With Respect to the UCL and FAL Claims.**

Plaintiffs improperly seek a remedy for "... money Toyota acquired by unfair competition, including restitution and/or restitutionary disgorgement ..." that is not available to them under the UCL or FAL. (MCC, ¶¶ 329, 338, Prayer for Relief (b)). Under California law for statutory violations of the UCL or FAL, the remedies available to Plaintiffs are limited to restitution or injunctive relief. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 893 (C. D. Cal. 2005) ("The California

55

Supreme Court repeatedly has held that 'under the UCL, prevailing plaintiffs are generally limited to injunctive relief and restitution.'") (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144, 131 Cal. Rptr. 2d 29 (2003) (internal citation omitted).  Plaintiffs are prohibited from seeking monetary damages or any non-restitutionary disgorgement (*i.e.*, profits) for such violations.  *Korea Supply*, 29 Cal. 4th at 1149-51.  In other words, disgorgement is available as a remedy for UCL and FAL claims only to the extent that it constitutes restitution, not as a supplement to restitutionary relief.

Plaintiffs are entitled to "restitution," and nothing more.  To the extent that Plaintiffs are seeking "money" or "restitutionary disgorgement" in addition to restitution, such a request is duplicative, at best.  *See Korea Supply*, 29 Cal. 4th at 1149 ("The object of restitution is to restore the status quo ..."); *Starr-Gordon v. Mass. Mut. Life Ins. Co.*, No. Civ. S-03-68, 2006 WL 3218778, at *7 (E.D. Cal. Nov. 7, 2006) ("disgorgement is permissible only to the extent that it constitutes restitution") (internal quotation marks and citation omitted).  For these reasons, Plaintiffs' request for "money Toyota acquired by unfair competition, including ... and/or restitutionary disgorgement" should be stricken under Rule 12(f) as immaterial, impertinent, and unduly prejudicial.  If the Court excises this language, Plaintiffs will be left with prayers for "restitution" and injunctive relief – the only relief permitted under the UCL and FAL.

III.   **CONCLUSION**

For the foregoing reasons, Toyota respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiffs' Economic Loss Master Consolidated Complaint in its entirety with prejudice.  If the Court does not dismiss all of Plaintiffs' claims and prayers for relief in their entirety,[26] Toyota requests, in the alternative, that the Court grant its Motion to Strike in its entirety with prejudice.


Dated:  September 13, 2010          Respectfully submitted,


By:   /s/ Lisa Gilford

CARI K. DAWSON
**ALSTON + BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Email:  cari.dawson@alston.com

LISA GILFORD
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Email:  lisa.gilford@alston.com

***Lead Defense Counsel for Economic Loss Cases***

---

[26]  Although Toyota has established that the MCC should be dismissed in its entirety, if the Court determines some claims survive this motion as to some Plaintiffs, the Court should nonetheless dismiss those Plaintiffs from this case who state no claim, and dismiss claims as to particular Plaintiffs where appropriate.  *See In re Heritage Bond Litig.*, No. 02-ML-1475, 2003 WL 25779465, at *5 (C.D. Cal. Aug. 18, 2003).

57