Vincent Galvin (Cal. SBN 104448)
vincent.galvin@bowmanandbrooke.com
Anne O. Hanna (Cal. SBN 120947)
anne.hanna@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone No.: (408) 279-5393
Fax No.: (408) 279-5845

Joel H. Smith (SC SBN 5266)
joel.smith@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
1441 Main Street, Suite 1000
Columbia, SC 29201
Telephone No.: (803) 726-0020
Fax No.: (803) 726-0021

Lead Defense Counsel for Personal Injury/Wrongful Death Cases

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION – SANTA ANA)

| | |
|---|---|
| In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation<br><br>This document relates to:<br><br>PERSONAL INJURY/WRONGFUL DEATH CASES | Case No. 8:10ML02151 JVS (FMOx)<br><br>Assigned to: Hon. James V. Selna<br>Discovery: Mag. Fernando M. Olguin<br><br>NOTICE OF MOTION AND MOTION OF CTS CORPORATION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE: November 19, 2010<br>TIME: 9:00 a.m.<br>DEPT: Courtroom 10C |

TO ALL PARTIES AND TO THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 19, 2010 at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 10C of the Ronald Reagan Federal Building and U.S. Courthouse at 411 W. Fourth Street, Santa Ana, California, defendant CTS Corporation

will move this Court for an order dismissing plaintiffs' actions in their entirety against CTS Corporation under Federal Rules of Civil Procedure 12(b)(6) on the grounds that the complaints fail to state a claim upon which relief may be granted.

Defendants seek dismissal of the complaints against CTS Corporation in the following cases:

1. Aukland, 2:10CV06082 GAF (PJWx)
2. Bond, 2:10CV03565 JVS (FMOx)
3. Burack, 2:10CV03254 JVS (FMOx)
4. Cangelosi, 2:10CV01997 JVS (FMOx)
5. Devlin, 8:10CV00616 JVS (FMOx)
6. Donoghue, 2:10CV01057 JVS (FMOx)
7. Flury, 2:10CV01584 JVS (FMOx)
8. King, 2:10CV03255 JVS (FMOx)

This motion is made following the conference of counsel pursuant to L.R. 7.3 as fully set forth in the Declaration of Anne O. Hanna filed herewith.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support hereof, Affidavit of Christine Trowbridge, Declaration of Anne O. Hanna, on such oral and documentary evidence that may be introduced at the time of the hearing, and on all papers and pleadings on file with the court herein.

///
///
///
///
///
///
///

Alternatively, CTS Corporation respectfully requests that pursuant to Federal Rules of Civil Procedure 12(d), the Court treat this motion and the accompanying documents in support thereof as a motion for summary judgment under Rule 56.

Dated: September 13, 2010                              Respectfully submitted,

By:  /s/ Vincent Galvin

VINCENT GALVIN (Cal. SBN 104448)
E-mail: vgalvin@bowman-brooke.com
BOWMAN AND BROOKE LLP
1741 Technology Drive, Suite 200
San Jose, CA   95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845

JOEL SMITH (SC SBN 5266)
E-mail: jsmith@bowman-brooke.com
BOWMAN AND BROOKE LLP
1441 Main Street, Suite 1000
Columbia, SC 29201
Telephone: (803) 726-0020
Facsimile: (803) 726-0021

Lead Defense Counsel for Personal Injury/Wrongful Death Cases

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs' complaints arise out of accidents involving a Toyota or Lexus vehicle. Plaintiffs claim the accidents were caused by a non-specific defect that resulted in the subject vehicles' unintended acceleration. Plaintiffs name various Toyota entities and CTS Corporation ("CTS") as defendants.

In 2004 CTS began manufacturing accelerator pedal assemblies for certain North American Toyota vehicles. Affidavit of Christine Trowbridge ("Trowbridge Aff.") ¶ 3. CTS did not supply or manufacture the accelerator pedal assembly for any of the subject vehicles involved in the noticed actions.

CTS manufactured accelerator pedal assemblies for only the following North American Toyota vehicles:  2005-2010 Avalon; 2007-2010 Camry; 2009-2010 Corolla; 2010 Highlander; 2009-2010 Matrix; 2009-2010 RAV4; 2008-2010 Sequoia; 2010 Sienna; and 2007-2010 Tundra. Trowbridge Aff. ¶ 4. CTS was not the sole provider of accelerator pedal assemblies for 2007-2010 Camry vehicles; other companies also supplied accelerator pedal assemblies for the 2007-2010 Camry. Id. ¶ 6. CTS did not supply Toyota with accelerator pedal assemblies for any North American model year Lexus or Toyota Tacoma, Echo, Yaris or Prius vehicles. Id. ¶ 5.

Plaintiffs' complaints do not allege any facts that link CTS to any alleged defect in the subject vehicles or any facts from which to infer that CTS contributed to the accident or plaintiffs' injuries. Plaintiffs claim the subject vehicles are defective because they are susceptible to sudden uncontrolled acceleration and because they lack a fail-safe that allows the driver to stop the vehicle during such an incident. Plaintiffs do not allege any facts that identify CTS as having any relation to the subject vehicles and their alleged non-specific defect of unintended acceleration and lack of a fail-safe feature in the subject vehicles.

::ODMA\PCDOCS\SJO\248501\1                         1

NOTICE OF MOTION AND MOTION OF CTS CORPORATION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Plaintiffs merely state that CTS "designed and manufactured accelerator pedals for the Toyota entities" (Burack Complaint at 4:27-28), and that CTS provided the subject vehicle with component parts (Burack Complaint at 29:12-17, 30:15-20). As established in the accompanying affidavit of Christine Trowbridge, CTS did not manufacture or supply the subject vehicles in the noticed actions with accelerator pedal assemblies.

Plaintiffs do not identify any facts, action or inaction taken by CTS with respect to any of the causes of action, the subject vehicles, or the conduct of Toyota. Accordingly, CTS respectfully requests that the Court dismiss plaintiffs' complaints against CTS.

II. ARGUMENT

A. RULE 8 PLEADING STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that in order to state a claim for relief, a pleading must contain a "short plain statement of the claim showing that the pleader is entitled to relief." In interpreting Rule 8, the United States Supreme Court in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), held that the general pleading standard delineated in Rule 8 requires that a complaint contain well-pleaded factual allegations that make the claim against a defendant "plausible," not just probable. Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556).

In Twombly the Court reversed the circuit court of appeals' decision and reinstated the district court's dismissal of the plaintiffs' complaint, finding that conclusory allegations in support of the elements of a claim are not sufficient to show that the pleader is entitled to relief. Twombly, 550 U.S. at 557. The court explained that:

> While a complaint attacked by a 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

///

Id. at 555 (internal citations omitted). The Twombly Court's interpretation of Rule 8 requires the pleader to make enough factual allegations to "raise a right to relief above the speculative level." Id. The court found that naked assertions in a complaint of the elements of a claim, "but without further factual enhancement[,] stop[s] short of the line between possibility and plausibility of entitlement to relief." Id. at 557. The Court ultimately held that dismissal of plaintiffs' complaint was proper because plaintiffs did not state enough facts to nudge their claims across the line from conceivable to plausible. Id. at 570.

The Iqbal Court advanced the Twombly decision in two important ways by (1) clarifying the Court's intention that the Twombly pleading standard apply to all federal civil actions; and (2) setting forth a two-part framework for use in the determination of whether a pleading states a claim. Iqbal, 129 S.Ct. at 1953. First, Iqbal makes very clear that the heightened Twombly pleading standard "expounded the pleading standard for 'all civil actions.'" Id. All cases governed by the Feral Rules of Civil Procedure now fall within the broad reach of Iqbal/Twombly.

Second, the Court in Iqbal set up a road map to aid courts in determining when a litigant has sufficiently stated a claim. The first step in the analysis is to identify any conclusory pleading. Id. at 1950. Pleadings that are factually or legally conclusory are not entitled to a presumption of truth and must be supported by well-pleaded factual allegations. Id. "Threadbare recitals of the elements of a claim, supported by mere conclusory statements, do not suffice." Id. at 1949 (citing Twombly, 550 U.S. at 555). Where a pleading contains well-pleaded factual allegations, the second step in the analysis, is to "assume their veracity and determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. The Court went on to state that the standard for plausibility "is not akin to a 'probability

::ODMA\PCDOCS\SJO\248501\1                 3

NOTICE OF MOTION AND MOTION OF CTS CORPORATION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556).

B. THE COMPLAINT FAILS TO STATE FACTS SUFFICIENT TO APPRISE CTS OF THE CLAIM AGAINST IT

The question as to the sufficiency of a complaint is whether it contains sufficient allegations to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quotation omitted). No claim for relief is stated when the complaint pleads facts insufficient to show that a legal wrong has been committed, or omits affirmative statements necessary to establish a wrong, or fails to link parties with a wrong to entitle plaintiff to redress. Sutton v. Eastern Viavi Co., 138 F.2d 959, 961 (7th Cir. 1943); see also Suever v. Connell, 579 F.3d 1047, 1061 (7th Cir. 2009) (affirming district court's dismissal of plaintiffs' complaint because the complaint, inter alia, failed to link any particular harm plaintiffs suffered to any defendant). Although pleadings are given liberal construction in federal courts, Federal Rules contemplate some factual statement in support of a claim, and general allegations unsupported by any factual statements have usually been rejected as insufficient. Huey v. Barloga, 277 F. Supp. 864, 871 (1967 N.D. Ill.).

Further, "when the pleaded facts do not naturally give rise to an inference of causation, the plaintiff must plead specific facts affording an inference that one caused the other." Bockrath v. Aldrich Chemical Co., 21 Cal.4th 71, 78 (1990). In product liability actions, the plaintiff must prove that the defendants' defective product was a "substantial factor" in bringing about the plaintiff's injury. Id. at 79 (citing Rutherford v. Owens-Illinois, Inc., 16 Cal.4th 953 (1997)).

Plaintiffs named various Toyota entities and CTS as defendants in these actions. Where plaintiffs do not single out the Toyota defendants, plaintiffs refer to the defendants collectively as "Defendants." The complaint is replete with allegations that accuse all

defendants of being responsible for or knowing of the defective design of the subject vehicle and its component parts. Such allegations are conclusory and insufficient because plaintiffs fail to allege any specific facts that link CTS to a wrong that entitles plaintiffs to redress. See Sutton, 138 F.2d 959 at 961. Plaintiffs' only specific allegations with respect to CTS is that it "designed and manufactured accelerator pedals for the Toyota entities" (Burack Complaint at 4:27-28), and that it "designed, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied, and sold to distributors and retailers for sale, the subject vehicle and/or its component parts" (Burack Complaint at 29:12-17, 30:15-20).

Plaintiffs' complaints lack any factual allegations that provide an inference that CTS caused plaintiffs' injuries. Plaintiffs claim that the subject vehicles exhibited unintended acceleration without explaining what components, systems, or defect in the subject vehicles caused this alleged phenomenon. Instead, over the span of approximately 20 pages in the Complaint, plaintiffs merely explain that "Toyota knew, or should have known about the risks of sudden unintended acceleration present in Toyota vehicles for many years." (Burack Complaint at 5-26) (emphasis added). Nowhere do plaintiffs allege any facts concerning any alleged role by CTS in causing the alleged unintended acceleration of the subject vehicles. Plaintiffs simply fail to allege any facts regarding any alleged defect involving a CTS product. As such, plaintiffs' complaint fails to allege sufficient facts to apprise CTS of the grounds for plaintiffs' claims against it. Bell, 31 F.R.D. at 183; Hatten, 38 F.R.D. 496 at 498.

### C. PLAINTIFFS' COMPLAINTS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### 1. Plaintiffs Have Not and Cannot Identify a CTS Product in the Subject Vehicles

CTS did not manufacture or supply the accelerator pedal assemblies for the subject vehicles, and plaintiffs did not properly investigate their claims. Trowbridge Aff. ¶¶ 4-5.

Plaintiffs bear the burden of setting forth facts to support their claims. The <u>Twombly</u> Court found that "something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people' . . . ." <u>Twombly</u>, 550 U.S. at 557-58 (quoting <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336 (2005)). Furthermore, the Supreme Court intends for basic deficiencies in pleadings to "be exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Id</u>. at 558.

This case squarely presents this Court with the scenario contemplated by the Supreme Court in <u>Iqbal</u> and <u>Twombly</u>. Because plaintiffs have made no allegations that give rise to a plausible inference that CTS manufactured or supplied any products in the subject vehicle, let alone any defective products, and because there are no well-pleaded factual allegations that give rise to that assumption, this Court should dismiss all of plaintiffs' claims against CTS. While the failure to identify a faulty CTS product is sufficient under the Rule 8 standard to dismiss plaintiffs' claims in their entirety, CTS also outlines below the deficiencies in plaintiffs' pleading of each cause of action against CTS.

### 2. The Causes of Action Against CTS Fail Because CTS Did Not Manufacture or Supply the Accelerator Pedal Assemblies for the Subject Vehicles

First, plaintiffs' negligence claims fail to state causes of action against CTS for which relief may be granted. To state a claim based on negligence, plaintiffs must plead a duty owed that was breached and a causal relationship between the breach and injury to plaintiffs. <u>See</u> <u>Ortega v. Kmart Corp.</u>, 26 Cal.4th 1200, 1205 (2001). Absent any specific allegations identifying CTS' defective product or what role CTS played in the subject vehicles' alleged defect, plaintiffs' claims must fail because plaintiffs have not properly alleged causation. <u>Morris v. Princess Cruises, Inc.</u>, 236 F.3d 1061, 1070 (9th Cir. 2001).

///

Second, plaintiffs' strict liability claims against CTS fail because plaintiffs' allegations amount to an inference that a CTS product is defective and impermissibly forces CTS to prove that it did not cause plaintiffs' injuries. See DiCola v. White Bros. Performance Products, Inc., 158 Cal.App.4th 666, 676 (2008) ("It is not a general rule in the field of products liability that the manufacturer of a defective product must prove a negative, i.e., his non-causation of plaintiffs' injuries. It is equally true that an alleged manufacturer of a defective product need not prove the negative that it did not manufacture the product which caused plaintiff injures."); see also Barret v. Atlas Powder Co., 86 Cal.App.3d 560, 565 (1978) (holding that a specific defect must be affirmatively established and a mere inference of defect as a result of the injury causing event is insufficient). Plaintiffs did not allege a specific defect with respect to a CTS product. Plaintiffs merely name CTS as a defendant and allege that it manufactured accelerator pedals for Toyota (Burack Complaint at 4:27-28) without providing any facts that a CTS product was in the subject vehicles, was defective, or in any way contributed to the subject accidents and resulting injuries. Moreover, "the manufacturer of a product component is not liable for injuries caused by the finished product into which the component is incorporated unless the component itself was defective at the time it left the manufacturer." Taylor v. Elliot Turbomachinery Co., Inc., 171 Cal.App.4th 564, 584 (2009). Therefore, alleging only that the subject vehicles were defective and that CTS manufactured or supplied a component thereof without more is insufficient.

Third, plaintiffs' claims for breach of implied warranty cannot stand because there is no privity of contract between CTS and plaintiffs. Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability. Blanco v. Baxter Healthcare Corp., 158 Cal.App.4th 1039, 1058-59 (2008). There is and can be no privity between CTS and plaintiffs because although CTS supplies accelerator pedal assemblies for some Toyota vehicles, CTS did not supply or manufacture the accelerator

::ODMA\PCDOCS\SJO\248501\1      7

NOTICE OF MOTION AND MOTION OF CTS CORPORATION TO DISMISS PURSUANT TO FED. R. CIV. PROC. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

...

pedal assemblies in the subject vehicles (Trowbridge Aff. ¶¶ 4-6), or provide them to plaintiffs.

Finally, plaintiffs' claims for wrongful death and survivorship fail because these claims are based on defendants' actions and negligence, which claims plaintiffs cannot maintain against CTS.

### D. CTS' MOTION TO DISMISS SHOULD BE GRANTED WITHOUT LEAVE TO AMEND

If plaintiffs oppose this motion in part by claiming the need to conduct discovery to supply the facts missing from their complaints, such request runs contrary to controlling Supreme Court precedent. In Twombly and Iqbal, the Supreme Court made clear that a plaintiff who fails to meet the pleading requirements of Rule 8(a) should not be allowed to proceed to the discovery phase of the case in the hopes that discovery might provide the evidence needed to support and adequately plead a claim against the defendant. Twombly, 550 U.S. at 559 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management' . . . ."). Iqbal further confirms that where a plaintiff's "complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise." Iqbal, 129 S. Ct. at 1953-54. ("We decline respondent's invitation to relax the pleading requirements on the ground that the Court of Appeals promises petitioners minimally intrusive discovery."). Whether defendants would be prejudiced by allowing plaintiffs to conduct discovery after suing defendants is irrelevant to the issue of whether plaintiffs have stated a claim against CTS. See Id.

Any investigation that plaintiffs claim they need to conduct now by way of discovery should have been done before, not after, they filed this lawsuit. See Twombly, 550 U.S. at 559; Iqbal, 129 S.Ct. at 1953-54; Bockrath, 21 Cal. 4th at 82; Fed. R. Civ. Proc. 11(b) ("By presenting to the court a pleading . . . an attorney certifies that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the

...

factual contentions have evidentiary support . . . .") Cal. Code Civ. Proc. § 1287. Indeed, since plaintiffs should have preserved the subject vehicles in order to pursue their lawsuits, plaintiffs here have had sufficient opportunity to inspect the vehicles to see if there are any CTS components in them and if any of those components are related to plaintiffs' vague, non-specific claims of unintended acceleration. They do not and plaintiffs' claims against CTS must be dismissed with prejudice.

Alternatively, CTS Corporation respectfully requests that pursuant to Federal Rules of Civil Procedure 12(d), the Court treat this motion and the accompanying documents in support thereof as a motion for summary judgment under Rule 56.

III. <u>CONCLUSION</u>

For the foregoing reasons, CTS respectfully requests that the Court grant this motion and dismiss plaintiffs' claims against CTS with prejudice.

Dated:  September 13, 2010                    Respectfully submitted,

By:  /s/ Vincent Galvin

VINCENT GALVIN (Cal. SBN 104448)
E-mail:  vgalvin@bowman-brooke.com
BOWMAN AND BROOKE LLP
1741 Technology Drive, Suite 200
San Jose, CA  95110
Telephone:  (408) 279-5393
Facsimile:  (408) 279-5845

JOEL SMITH (SC SBN 5266)
E-mail:  jsmith@bowman-brooke.com
BOWMAN AND BROOKE LLP
1441 Main Street, Suite 1000
Columbia, SC 29201
Telephone:  (803) 726-0020
Facsimile:  (803) 726-0021

Lead Defense Counsel for Personal Injury/Wrongful Death Cases