Vincent Galvin (CA SBN 104448)
vincent.galvin@bowmanandbrooke.com
Anne O. Hanna (CA SBN 120947)
anne.hanna@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone No.: (408) 279-5393
Fax No.: (408) 279-5845

Joel H. Smith (SC SBN 5266)
joel.smith@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
1441 Main Street, Suite 1000
Columbia, SC 29201
Telephone No.: (803) 726-0020
Fax No.: (803) 726-0021

Lead Defense Counsel for Personal Injury/Wrongful Death Cases

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION – SANTA ANA)

| | |
|---|---|
| In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation<br><br>This document relates to:<br><br>PERSONAL INJURY/WRONGFUL DEATH CASES<br>_____ | ) Case No. 8:10ML02151 JVS (FMOx)<br>)<br>) Assigned to: Hon. James V. Selna<br>) Discovery: Mag. Fernando M. Olguin<br>)<br>) NOTICE OF MOTION AND MOTION<br>) OF DEFENDANTS TOYOTA MOTOR<br>) SALES, U.S.A., INC., TOYOTA MOTOR<br>) CORPORATION, TOYOTA MOTOR<br>  NORTH AMERICA, INC., TOYOTA<br>  MOTOR ENGINEERING &<br>  MANUFACTURING NORTH AMERICA,<br>  INC., TOYOTA MOTOR<br>  MANUFACTURING, CALIFORNIA, INC.<br>  AND CTS CORPORATION TO DISMISS<br>  CERTAIN CLAIMS FOR FAILURE TO<br>  STATE A CLAIM; MEMORANDUM OF<br>  POINTS AND AUTHORITIES IN<br>  SUPPORT THEREOF _____<br><br>DATE: November 19, 2010<br>TIME: 9:00 AM<br>DEPT: Courtroom 10C |

::ODMA\PCDOCS\SJO\248714\1

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 19, 2010 at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 10C of the Ronald Reagan Federal Building and U.S. Courthouse at 411 W. Fourth Street, Santa Ana, California, defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing California, Inc. and CTS Corporation will move this Court for an order:

1.      Dismissing plaintiffs' complaints under Federal Rules of Civil Procedure, Rule 12(b)(6) on the grounds that the complaints fail to state a claim upon which relief may be granted. Defendants seek dismissal of the negligence and products liability claims for relief against all plaintiffs;

2.      Dismissing plaintiffs' claims for breach of express and/or implied warranty of merchantability for failure to state a claim upon which relief can be granted.  Specifically, the complaints fail to allege facts showing the existence of vertical privity between the parties.  Moreover, plaintiffs have not alleged the express warranty claimed to have been breached by the defendants.  Defendants seek dismissal of this claim for relief against certain plaintiffs as delineated on the dismissal chart below;

3.      Dismissing plaintiffs' claims for breach of implied warranty of fitness for a particular purpose for failure to state a claim upon which relief can be granted.  In these actions involving ordinary passenger vehicles, plaintiffs have not made any allegations that would support a "particular purpose" claim.  Defendants seek dismissal of this claim for relief against certain plaintiffs as delineated on the dismissal chart below;

4.      Dismissing plaintiffs' claims for breach of the covenant of good faith and fair dealing for failure to state a claim upon which relief can be granted.  Defendants seek

NOTICE OF MOTION AND MOTION OF TOYOTA DEFENDANTS TO DISMISS CERTAIN CLAIMS FOR
FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

1 | dismissal of this claim for relief against certain plaintiffs as delineated on the dismissal chart

2 | below;

3 |      5.     Dismissing plaintiffs' claims for fraudulent concealment for failure to state a

4 | claim upon which relief can be granted.  The parties were not in a fiduciary or confidential

5 | relationship.  Absent a fiduciary or confidential relationship between the parties, plaintiffs

6 | must allege facts demonstrating that a duty to disclose arose through defendants' conduct,

7 | which has not been done in this case.  Defendants seek dismissal of this claim for relief

8 | against certain plaintiffs as delineated on the dismissal chart below;

9 |      6.     Dismissing plaintiffs' claims for intentional and negligent misrepresentation for

10 | failure to state a claim upon which relief can be granted.  Plaintiffs have not identified any

11 | representations of fact made by the Toyota Defendants that were not true.  Plaintiffs' claims

12 | for misrepresentation are based on Toyota's opinions about the safety and reliability of its

13 | vehicles.  Opinions as to quality or value of a product are not actionable under California

14 | Civil Code sections 1572 or 1710.  Defendants seek dismissal of this claim for relief against

15 | certain plaintiffs as delineated on the dismissal chart below;

16 |      7.     Dismissing plaintiffs' claims under Business and Professions Code sections

17 | 17200 and 17500 for failure to state a claim upon which relief can be granted.  Plaintiffs

18 | have not identified what advertisements disseminated by the defendants were false or

19 | misleading.  Unless plaintiffs can identify advertising that is actually false or misleading (as

20 | opposed to puffery) this claim should be dismissed.  Moreover, relief under these statutes

21 | is not available to out-of-state plaintiffs seeking to regulate conduct occurring outside of

22 | California.  Defendants seek dismissal of this claim for relief against certain plaintiffs as

23 | delineated on the dismissal chart below;

24 |      8.     Dismissing plaintiffs' claims for fraud, concealment, misrepresentation, unfair

25 | competition and false advertising for failure to state with particularity the circumstances

26 | ::ODMA\PCDOCS\SJO\248714\1

1  constituting fraud or mistake as required under Rule 9(b) of the Federal Rules of Civil

2  Procedure.  Defendants seek dismissal of this claim for relief against certain plaintiffs as

3  delineated on the dismissal chart below.

4        This is motion is made following the conference of counsel pursuant to L.R. 7.3 as

5  set forth fully in the Declaration of Anne O. Hanna filed herewith.

| Case Name and Number | 1. Negligence & Strict Products Liability - ETCS-i | 2A. Implied Warranty | 2B. Express Warranty | 3. Particular Purpose Warranty | 4. The Covenant of Good Faith & Fair Dealing | 5. Fraudulent Concealment | 6. Misrepresentation | 7. Unfair Comp. and /or False Advertising | 8. Failure to Plead Fraud w/ Particularity – Rule 9(b) |
|---|---|---|---|---|---|---|---|---|---|
| Akamike 2:10CV06081 JVS (FMOx) | x | x | x | | x | x | x | x | x |
| Aukland 2:10CV06082 JVS (FMOx) | x | x | x | | x | x | x | x | x |
| Barlow (FAC) 2:10CV01902 JVS (FMOx) | x | x | | x | | x | | | |
| Bond 2:10CV03565 JVS (FMOx) | x | x | | x | | x | | x | x |
| Broden (FAC) 2:10CV02228 JVS (FMOx) | x | x | x | | | x | | | x |
| Burack 2:10CV03254 JVS (FMOx) | x | x | x | | | x | | | |
| Cangelosi 2:10CV01997 JVS (FMOx) | x | x | | x | | x | | x | x |
| Carmichael (FAC) 2:10CV02943 JVS (FMOx) | x | x | x | | | x | | x | x |
| Chang (FAC) 2:10CV01993 JVS (FMOx) | x | x | | x | | x | | | x |
| Christian (FAC) 2:10CV01806 JVS (FMOx) | x | x | | x | | x | | | x |
| Crank (FAC) 2:10CV01821 JVS (FMOx) | x | x | | x | | x | | | x |
| Cruikshank 8:10CV00780 JVS (FMOx) | x | x | x | x | | x | | | x |
| Devlin (FAC) 8:10CV00616 JVS (FMOx) | x | x | | x | | x | | | x |
| Dion 2:10CV03237 JVS (FMOx) | x | x | | x | | x | | x | x |
| Donoghue 2:10CV01057 JVS (FMOx) | x | x | | x | | x | | x | x |

::ODMA\PCDOCS\SJO\248714\1

NOTICE OF MOTION AND MOTION OF TOYOTA DEFENDANTS TO DISMISS CERTAIN CLAIMS FOR
FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

| Case Name and Number | 1. Negligence & Strict Products Liability- ETCS-i | 2A. Implied Warranty | 2B. Express Warranty | 3. Particular Purpose Warranty | 4. The Covenant of Good Faith & Fair Dealing | 5. Fraudulent Concealment | 6. Misrepresentation | 7. Unfair Comp. and /or False Advertising | 8. Failure to Plead Fraud w/ Particularity – Rule 9(b) |
|---|---|---|---|---|---|---|---|---|---|
| Elmes 2:08CV01300 [Bloch]* | x | x | x | | | | | | |
| Flury 2:10CV01584 JVS (FMOx) | x | x | | x | | x | | x | x |
| Fontenot 8:10CV00748 JVS (FMOx) | x | x | | | | | x | | |
| Fox (FAC) 8:10CV00604 JVS (FMOx) | x | x | | | | x | | | x |
| Green 1:10CV04302 [Eve]* | x | | | | | | | | |
| Hanna (FAC) 2:10CV01756 JVS (FMOx) | x | x | | x | | x | | | x |
| Ifergan 1:10CV01116 JVS (FMOx) | x | x | | | | | | | |
| Izenstark 1:10CV04350 [Leinenweber]* | x | | | | | | | | |
| Jimerson 8:10CV00997 JVS (FMOx) | x | x | | | | | | | |
| G. Johnson 8:10CV00575 JVS (FMOx) | x | x | | | | | | | |
| King 2:10CV03255 JVS (FMOx) | | | | | | | | | |
| Krieger (FAC) 2:10CV01753 JVS (FMOx) | x | x | | x | | x | | | x |
| Lauderdale 2:10CV02940 JVS (FMOx) | x | x | x | | | x | | | |
| Livingston (FAC) 2:10CV01290 JVS (FMOx) | x | x | | x | | x | | | x |
| Mitchell 8:10CV01206 JVS (FMOx) | x | x | x | | | | | | |
| Morgan 8:10CV00999 JVS (FMOx) | x | x | | | | x | x | | x |
| Murphy 8:10CV00749 JVS (FMOx) | x | x | x | x | | | | | |
| Pittman 2:10CV00761 [unassigned]* | x | x | x | | | x | x | | |
| Rhooms 2:10CV02944 JVS (FMOx) | x | x | x | | | x | | | x |
| Roberts (FAC) 2:10CV01986 JVS (FMOx) | x | x | | x | | x | | | |
| Rookard 8:10CV01004 JVS (FMOx) | x | x | | | | | | | |

NOTICE OF MOTION AND MOTION OF TOYOTA DEFENDANTS TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

| Case Name and Number | 1. Negligence & Strict Products Liability- ETCS-i | 2A. Implied Warranty | 2B. Express Warranty | 3. Particular Purpose Warranty | 4. The Covenant of Good Faith & Fair Dealing | 5. Fraudulent Concealment | 6. Misrepresentation | 7. Unfair Comp. and/or False Advertising | 8. Failure to Plead Fraud w/ Particularity – Rule 9(b) |
|---|---|---|---|---|---|---|---|---|---|
| Ross 2:10CV05700 JVS (FMOx) | x | x | x |  | x | x | x | x | x |
| Schreckengost 2:10CV06088 JVS (FMOx) | x | x | x |  | x | x | x | x | x |
| Schwartz 2:10CV00710 JVS (FMOx) | x | x |  | x |  |  |  | x | x |
| Scott 8:10CV1156 JVS (FMOx) | x | x | x |  |  | x |  |  | x |
| Sims 8:10CV00998 JVS (FMOx) | x |  |  |  |  |  |  |  |  |
| St. John 4:10CV00075 [Land]* | x |  |  |  |  |  |  |  |  |
| Wachtel 2:10CV03899 JVS (FMOx) | x | x | x |  | x | x | x | x | x |
| Warren (FAC) 2:10CV01650 JVS (FMOx) | x | x |  | x |  | x |  |  | x |
| Weinberger 8:10CV01002 JVS (FMOx) | x | x | x |  |  | x |  |  | x |
| West 2:10CV02938 JVS (FMOx) | x | x | x |  |  | x |  | x | x |
| Williams, H. (FAC) 2:10CV01366 JVS (FMOx) | x |  |  | x |  | x |  |  | x |
| Williams, R. 2:10CV01438 JVS (FMOx) | x |  |  |  |  | x |  |  | x |
| Xhakli 1:10CV03999 [Castel]* | x | x | x |  |  |  |  |  | x |
| Young 8:10CV01095 JVS (FMOx) | x | x | x | x |  | x | x |  | x |

\* In the process of being transferred.  It is anticipated these cases will be in the MDL before the November 19, 2010 hearing date.

/ / /

/ / /

/ / /

/ / /

NOTICE OF MOTION AND MOTION OF TOYOTA DEFENDANTS TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

1    This motion will be based upon this Notice of Motion and Motion, the Memorandum

2    of Points and Authorities in support hereof, the Request for Judicial Notice, on such oral

3    and documentary evidence may be introduced at the time of the hearing, and on all papers

4    and pleadings on file with the court herein.

5    Dated: September 13, 2010                 Respectfully submitted,

6                                              By:    /s/ Vincent Galvin

7                                              VINCENT GALVIN (Cal. SBN 104448)
                                               E-mail: vgalvin@bowman-brooke.com
8                                              BOWMAN AND BROOKE LLP
                                               1741 Technology Drive, Suite 200
9                                              San Jose, CA  95110
                                               Telephone:  (408) 279-5393
                                               Facsimile: (408) 279-5845
10

11                                             JOEL SMITH (SC SBN 5266)
                                               E-mail:  jsmith@bowman-brooke.com
12                                             BOWMAN AND BROOKE LLP
                                               1441 Main Street, Suite 1000
13                                             Columbia, SC 29201
                                               Telephone: (803) 726-0020
                                               Facsimile: (803) 726-0021
14
                                               Lead Defense Counsel for Personal Injury/Wrongful
15                                             Death Cases

16

17

18

19

20

21

22

23

24

25

26   ::ODMA\PCDOCS\SJO\248714\1                      - 6 -
     NOTICE OF MOTION AND MOTION OF TOYOTA DEFENDANTS TO DISMISS CERTAIN CLAIMS FOR
     FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................... 1

II.  PLAINTIFFS' ALLEGATIONS .......................................................................... 2

III. PLAINTIFFS' CLAIMS ARE FATALLY DEFECTIVE AND MUST BE DISMISSED.... 5

   A.   Dismissal of the Complaints Is Appropriate Under Federal Rules of Civil Procedure 12(b)(6) ......................................................................... 5

   B.   Plaintiffs Fail to Allege That the Subject Accidents Were Caused By A Defect Contained In the Subject Vehicles ........................................ 7

   C.   Plaintiffs Fail to State a Claim For Breach of the Implied Warranty of Merchantability and Fitness for A Particular Purpose Because The Requisite Privity Does Not Exist Between Plaintiffs and Toyota ....................... 14

   D.   Plaintiffs Fail to State a Claim For Breach of the Implied Warranty of Fitness for a Particular Purpose ........................................................ 16

   E.   Plaintiffs Have Not Alleged What Express Warranty Toyota Allegedly Breached ........................................................................... 17

   F.   Plaintiffs' Claims for Breach of the Covenant of Good Faith and Fair Dealing Fails Because Plaintiffs Have Not Alleged a Contract Exists Between the Parties ....................................................................... 18

   G.   Plaintiffs' Claims for Fraudulent Concealment Should Be Dismissed Because Plaintiffs Failed to Sufficiently Allege Fraud ........................... 19

        1.   Plaintiffs' Fraudulent Concealment Claims Fail Because Toyota Had No Duty to Disclose Facts about an Alleged Defect ........................ 19

        2.   Toyota Did Not Have Exclusive Knowledge of Material Facts that Were Not Known or Knowable to Plaintiffs ........................................ 21

        3.   Toyota Did Not Conceal Any Material Facts From Plaintiffs Where No Plaintiff Alleges Having Made an Investigation or Having Sought Information from   Toyota ..................................................... 23

        4.   Toyota's Opinions Regarding the Quality and Reliability of Its Products Are Not Actionable as Representations of Fact ........................ 24

/ / /

/ / /

/ / /

H.  Plaintiffs' Claims for Violation of California Business and Professions Code
    §§ 17200 and 17500 Fail Because Plaintiffs Have Not Identified Any False or
    Misleading Advertising Done by Toyota; and the Statute Does Not Apply to
    Out-of-State Residents ......................................................................................... 26

I.  Plaintiffs' Have Not Pled Their Fraud Claims with the Particularity Required
    by Rule 9(b) ......................................................................................................... 28

V.   CONCLUSION ............................................................................................................ 29

TABLE OF CONTENTS

TABLE OF AUTHORITIES

**Federal Cases**

Anunziato v. eMachines, Inc.,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................................ 18, 25, 27

Ashcroft v. Iqbal,
   129 S.Ct. 1937 (2009) ....................................................... 6, 9, 10, 13, 14

Ayala v. World Savings Bank, FSB,
   616 F. Supp. 2d 1007 (C.D. Cal. 2009) .......................................................... 28

Bell Atlantic Corporation v. Twombly,
   550 U.S. 544 (2007) ........................................................ 6, 7, 9, 10, 11, 13, 14

Clemens v. Daimler-Chrysler Corp.,
   534 F.3d 1017 (9th Cir. 2008) ................................................................. 15

Conley v. Gibson,
   (1957) 355 U.S. 41[78 S.Ct. 99, 2 L.Ed.2d 80] ................................................ 9

Cooper v. Pickett,
   137 F. 3d 616 (9th Cir. 1997) ................................................................. 28

DM Research, Inc. v. College of American Pathologists,
   170 F.3d 53 (1st Cir. 1999) ................................................................... 10

Falk v. General Motors Corp.,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................... 21, 26

Harlan v. Roadtrek Motorhomes, Inc.,
   No. 07-CV-686, 2009 WL 928309 (S.D. Cal. April 2, 2009) ....................................... 15-16

Kinkade v. Trojan Express, LLC,
   No. 08-1362, 2009 WL 799390 (C.D. Cal. March 23, 2009) ......................................... 28

Neilson v. Union Bank of Cal., N.A.,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ........................................................ 28

Oestreicher v. ,
   Alienware Corporation, 544 F. Supp. 2d 964 (N.D. Cal. 2008) .................................... 25

O'Neil v. Simplicity, Inc.,
   574 F.3d 501 (8th Cir. 2009) ................................................................. 13

Parks Sch. of Bus. v. Symington,
   51 F.3d 1480 (9th Cir. 1995) .................................................................. 5

Southland Sod Farms v. Stover Seed Co.,
   108 F.3d 1134 (9th Cir. 1997) ................................................................ 25

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001)............................................................................... 5

*Stearns v. Select Comfort Retail Corp.,*
  No. 08-2746, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ......................... 27, 28

*Stickrath v. Globalstar, Inc.,*
  527 F. Supp. 2d 992 (N.D. Cal. 2007) ...................................................... 25. 27

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.,*
  933 F. Supp. 918 (C.D. Cal. 1996) ................................................................. 18

*Tietsworth v. Sears, Roebuck and Co.,*
  No. 5:09-CV-00288, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ................. 22

**State Cases**

*American Suzuki Motor Corporation v. Superior Court,*
  (1995) 37 Cal. App. 4th 1291 ......................................................................... 16

*Anthony v. Kelsey-Hayes Co.,*
  (1972) 25 Cal. App. 3d 442............................................................................ 15

*Diamond Multimedia Systems, Inc. v. Superior Court,*
  (1999) 19 Cal. 4th 1036 ................................................................................. 27

*Greening v. General Air Conditioning Corporation,*
  (1965) 233 Cal. App. 2d 545...................................................................... 13-14

*Mesmer v. White,*
  (1953) 121 Cal. App. 2d 665.......................................................................... 21

*Norwest Mortgage, Inc. v. Superior Court,*
  (1999) 72 Cal. App. 4th 214........................................................................... 27

*Osborne v. Subaru of America,*
  (1988) 198 Cal. App. 3d 646.......................................................................... 15

*Racine & Laramie, Ltd. v. Department of Parks & Recreation,*
  (1992) 11 Cal. App. 4th 1026......................................................................... 19

*Superior Dispatch, Inc. v. Insurance Corp. of New York,*
  (2009) 97 Cal. Rptr. 3d 533 ........................................................................... 21

*United States Roofing, Inc. v. Credit Alliance Corp.,*
  (1991) 228 Cal. App. 3d 1431..................................................................... 14-15

*Warner Construction Corp. v. City of Los Angeles,*
  (1970) 2 Cal. 3d 285...................................................................................... 22

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ........................................................ 1, 2, 5, 26, 27

Cal. Bus. & Prof. Code § 17500 ........................................................ 1, 2, 5, 26, 27

Cal. Com. Code § 2313 ........................................................................ 17, 18

California Civil Code §1709 ........................................................................ 20

California Civil Code § 1710 ........................................................................ 20

**Federal Rules**

Federal Rules of Civil Procedure, Rule 12(b)(6) ........................................ 1, 5

Federal Rules of Civil Procedure, Rule 8 ..................................................... 9, 14

Federal Rules of Civil Procedure, Rule 9 ..................................................... 19, 28

**Other Authorities**

1 Witkin, Summary of Calif. Law (10th ed. 2005) Contracts, § 292 ...................... 23

5 Witkin, Summary of Calif. Law (10th ed. 2007) Torts, § 794 ........................... 21

CACI No. 1904 ........................................................................................ 25

CACI No. 1231 ........................................................................................ 14

CACI No. 1232 ........................................................................................ 14

Rest. (2d) Torts § 538A ........................................................................... 26

1    <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2    I.    <u>INTRODUCTION</u>

3          This multidistrict litigation action concerns automobile accidents involving various

4    Toyota vehicles produced since 2000.  Each of the accidents in question is alleged to have

5    been preceded by a sudden, unintended acceleration event in the involved subject vehicles.

6    In some of the complaints, plaintiffs allege that the unintended acceleration event combined

7    with an inability to stop the vehicle by applying the brake.  Plaintiffs theorize that these alleged

8    unintended acceleration events are somehow related to the electronic throttle control system

9    in certain Toyota vehicles.   Plaintiffs pursue claims against Toyota Motor Sales, U.S.A.,

10   Toyota  Motor  Corporation,  Inc.,  Toyota  Motor  North  America,  Inc.,  Toyota  Motor

11   Engineering & Manufacturing North America, Inc., Toyota Motor Manufacturing, California,

12   Inc. and CTS Corporation (collectively "Toyota Defendants") for negligence, strict products

13   liability,   breach   of   express   and   implied   warranties,   fraudulent   concealment,

14   misrepresentation, and for violation of California Business and Professions Code sections

15   17200 and 17500.

16         Defendants seek dismissal of the entire action pursuant to Federal Rules of Civil

17   Procedure Rule 12(b)(6) on the grounds that plaintiffs have failed to state a claim upon which

18   relief can be granted for negligence and strict products liability as it relates to the subject

19   vehicles.   Although plaintiffs claim without any support that Toyota vehicles have a past

20   history of unintended acceleration events, plaintiffs have failed to allege with the requisite

21   specificity any alleged defect in the subject vehicles.

22         Defendants also seek dismissal of certain claims for relief that appear in all or a

23   substantial number of the personal injury / wrongful death actions. Specifically, this motion

24   seeks the dismissal of plaintiffs' claims for (1) breach of express and / or implied warranty; (2)

25   fraudulent concealment; (3) misrepresentation; and (4) violation of California Business and

26

1  Professions Code sections 17200 and 17500 for failure to state a claim upon which relief can

2  be granted.  Defendants intend to raise issues unique to particular plaintiffs in separately

3  filed motions.

4  II.    PLAINTIFFS' ALLEGATIONS

5        This multidistrict action involves numerous complaints alleging personal injury or

6  wrongful death arising from sudden, unintended acceleration events involving various

7  Toyota and Lexus vehicles.  The numerous individual complaints filed in this action rely on

8  similar allegations in an attempt to support each plaintiff's claims for relief.  For purposes of

9  expediency and clarity, the arguments in this motion are based on the Roberts complaint

10  (2:10CV01986 JVS (FMOx)) (Attached hereto as Exhibit A is a true and correct courtesy

11  copy of the Roberts complaint), the Scott complaint (8:10CV01156 JVS (FMOx)) (Attached

12  hereto as Exhibit B is a true and correct courtesy copy of the Scott complaint) and the

13  Akamike complaint (2:10CV06081 JVS (FMOx)) (Attached hereto as Exhibit C is a true and

14  correct courtesy copy of the Akamike complaint)   These complaints are selected as

15  exemplar complaints for purposes of this motion because (1) they include many of the

16  insufficient allegations; and (2) the claims made in the other complaints filed in this action

17  are very similar and frequently identical to the claims in the Roberts, Scott and Akamike

18  complaints.[1]

19  / / /

20  / / /

21

22  [1]  The Roberts complaint was prepared by Lieff, Cabraser, Heimann & Bernstein, LLP.

23  This law firm has prepared or associated in on approximately 25 of the personal injury
   complaints filed in this action.  The law firm that prepared the Scott complaint, Robinson,

24  Calcagnie & Robinson, has prepared at least six other personal injury complaints filed in
   this action.  The Lanier Law Firm prepared the Akamike complaint and has at least three

25  other matters in this MDL.  Many other complaints filed in this action incorporate verbatim
   the language contained in these three complaints, and the rest borrow heavily from these

26  three complaints.
   ::ODMA\PCDOCS\SJO\248714\1                    2

Plaintiffs allege the following:

1.     Certain models of Toyota and Lexus brand vehicles have an unidentified defect that causes sudden, unintended acceleration to speeds up to 100 miles per hour. Roberts First Amended Complaint for Damages ("Roberts") ¶ 6; Akamike Complaint for Damages ("Akamike") ¶ 13.

2.     This defect combines with the operator's inability to stop the vehicle during a sudden, unintended acceleration event due to the absence of an alleged failsafe that would automatically reduce the engine to idle when the brake is applied.  Roberts ¶¶ 7, 11, 46; Akamike ¶¶ 13, 24; Scott Complaint for Damages ("Scott") ¶ 3.

3.     The Electronic Throttle Control System with Intelligence ("ETCS-i") controls the throttle valve on the engine through electronic signals rather than a physical linkage between the gas pedal and the engine throttle.  Roberts ¶ 41; Scott ¶ 24; Akamike ¶ 24. An electronic sensor at the accelerator detects how far the pedal is depressed.  Roberts ¶ 41. This information is then transmitted to a computer module that controls a motorized engine throttle.  Id.  The computer module determines how far the accelerator pedal has been depressed and, in turn, tells the throttle motor how far to open the throttle valve to power the engine. Id.

4.     The ETCS-i does not include: (a) mechanical linkage between the accelerator pedal and the engine throttle control; and (b) a failsafe that automatically tells the ETCS-i to reduce the engine to idle when the brake is applied.  Roberts ¶¶ 41-46; Akamike ¶¶ 24-25. The mechanical linkage is a necessary "safety system" without which the ETCS-i may "set the engine throttle to any position regardless of the accelerator position."  Akamike ¶ 25.  A "brake-to-idle override" was a necessary safety system that was absent in Toyota and Lexus vehicles during the times complained of.  Roberts ¶¶ 11, 46; Scott ¶¶ 3, 7; Akamike ¶¶ 24-25.

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

5.      The vehicles that were equipped with ETCS-i and their various components were susceptible to an unidentified malfunction caused by electronic failures such as short circuits and electromagnetic interference. Roberts ¶¶ 10, 44; Scott ¶ 2. Alternatively, plaintiffs theorize that the ETCS-i is susceptible to "electronic-related and/or mechanical related computer/software/hardware glitches."  Scott ¶ 3; see Roberts ¶¶ 10, 44.   Although it is unclear from the pleadings, plaintiffs appear to be alleging that the ETCS-i may somehow be the reason certain Toyota and Lexus vehicles are experiencing unintended acceleration events. Roberts ¶¶ 86, 93; Scott ¶¶ 2-3; Akamike ¶¶ 98, 101.

6.      Plaintiffs acknowledge a belief that the ETCS-i has a fault detection system but complain this fault detection system is not robust enough to anticipate sudden unintended acceleration.   Roberts ¶¶ 9, 45; Scott ¶ 2.

Each plaintiff contends that the subject accident was the result of a sudden, unintended acceleration event. Roberts ¶¶ 26-28; Scott ¶¶ 19-20; Akamike ¶ 17. However, plaintiffs do not and cannot attribute these sudden, unintended acceleration events to a particular defect in the vehicle. Roberts merely alleges that the "[2009 Camry] suddenly accelerated at a high rate of speed and he was unable to stop the vehicle by braking." ¶ 27. Scott alleges only that her 2004 Prius "suddenly and unexpectedly accelerated . . . through four lanes of traffic and collided with a fence and then a tree." ¶ 20. Similarly, Akamike alleges he was driving when his 2007 Camry "suddenly accelerated, causing the car to flip several times before coming to a stop." ¶ 17. Many plaintiffs allege being unable to stop the vehicle. See Roberts ¶ 27; Scott ¶ 20. The other complaints filed in this action similarly lack attribution in these accidents to a defect in the subject vehicle. For example:

Wilma Lauderdale alleges that on the day of the accident, the 2007 Toyota Yaris she was driving "suddenly and unexpectedly accelerated and veered out of control striking a curb at high speed." Lauderdale Complaint for Damages (2:10 CV02940 JVS (FMOx)) ¶ 12.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1   Steven Burack alleges that he was pulling out of a parking lot when the 2004 Toyota

2   Camry he was driving "expérienced a sudden uncontrolled full-throttle acceleration causing

3   the vehicle to accelerate at a rapid rate."   Burack First Amended Complaint for Money

4   Damages (2:10 CV 03254 JVS (FMOx)) ¶ 119.

5   The allegations respecting the events surrounding the accidents are similarly worded in

6   each individual complaint.  That is, each accident is alleged as an unattributed instance where

7   the vehicle is described to have accelerated on its own and the driver was unable to stop the

8   vehicle.

9   Plaintiffs allege the following claims for relief:  (1) Negligence (Roberts ¶¶ 146-153;

10  Scott ¶¶ 132-136; Akamike ¶¶ 186-190); (2) Strict Products Liability (Roberts ¶¶ 154-171;

11  Scott ¶¶ 127-131; Akamike ¶¶ 131-138); (3) Breach of Express and Implied Warranties

12  (Roberts ¶¶ 172-179; Scott ¶¶ 137-142; Akamike ¶¶ 167-178); (4) Fraudulent Concealment

13  and Misrepresentation (Roberts ¶¶ 180-188; Scott ¶¶ 118-126; Akamike ¶¶ 139-166); (5)

14  Breach of the Covenant of Good Faith and Fair Dealing (Akamike ¶¶ 179-185); and (6)

15  Violation of California Business and Professions Code sections 17200 and 17500 (Akamike

16  ¶¶ 191-208).

17  III.   PLAINTIFFS' CLAIMS ARE FATALLY DEFECTIVE AND MUST BE DISMISSED

18          A.     Dismissal of the Complaints Is Appropriate Under Federal Rules of
               Civil Procedure 12(b)(6)
19

20  Defendants are entitled to dismissal under Rule 12(b)(6) if, accepting the allegations

21  as true, the complaints fail to state facts that would support relief.  Parks Sch. of Bus. v.

22  Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  The Court should not accept as true

23  "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

24  inferences."   Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

25  Plaintiffs' "obligation to provide the 'grounds' of [their] 'entitle[ment] to relief' requires more

26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1 | than labels and conclusions, and a formulaic recitation of the elements of a cause of action

2 | will not do." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007). Rather, the

3 | allegations "must be enough to raise a right to relief above the speculative level." Id.

4 | "[T]he tenet that a court must accept as true all of the allegations contained in a

5 | complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

6 | (2009). Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-

7 | harmed-me accusation." Id. "A pleading that offers 'labels and conclusions' or 'a formulaic

8 | recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S.

9 | at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

10 | factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). The U.S. Supreme Court

11 | explained that "[t]hreadbare recitals of the elements of a cause of action, supported by

12 | mere conclusory statements, do not suffice." Id. Thus, while courts "must take all of the

13 | factual allegations in the complaint as true" for purposes of a motion to dismiss, courts "are

14 | not bound to accept as true a legal conclusion couched as a factual allegation." Id. at

15 | 1949-50 (internal quotations omitted).

16 | "Second, only a complaint that states a plausible claim for relief survives a motion to

17 | dismiss." Id. at 1950. The U.S. Supreme Court in Iqbal explained:

18 | To survive a motion to dismiss, a complaint must contain

19 | sufficient factual matter, accepted as true, to "state a claim to

20 | relief that is plausible on its face." A claim has facial

21 | plausibility when the plaintiff pleads factual content that

22 | allows the court to draw the reasonable inference that the

23 | defendant is liable for the misconduct alleged. The

24 | plausibility standard is not akin to a "probability requirement,"

25 | but it asks for more than a sheer possibility that a defendant

26 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1       has acted unlawfully.  Where a complaint pleads facts that

2       are "merely consistent with" a defendant's liability, it "stops

3       short of the line between possibility and plausibility of

4       entitlement to relief."

5 Id. at 1949 (citations omitted).  The U.S. Supreme Court concluded:

6       Determining whether a complaint states a plausible claim for

7       relief will . . . be a context-specific task that requires the

8       reviewing court to draw on its judicial experience and

9       common sense.  But where the well-pleaded facts do not

10      permit the court to infer more than the mere possibility of

11      misconduct, the complaint has alleged — but it has not

12      'show[n]' — 'that the pleader is entitled to relief.'

13 Id. (quoting Fed. R. Civ. P. 8(a)(2)).

14     As shown below, the complaints filed in this action should be dismissed because

15 they fail to sufficiently allege facts that show the plaintiffs' entitlement to relief.

16     B.    Plaintiffs Fail to Allege That the Subject Accidents Were Caused By

17         A Defect Contained In the Subject Vehicles

18     Common to all of the personal injury / wrongful death complaints filed in this action is

19 the complete absence of any specific allegations of the actual alleged defect in the ETCS-i

20 that caused any accidents.  Plaintiffs' complaints are replete with conclusory allegations

21 regarding anecdotal past incidents of alleged sudden unintended acceleration events taken

22 from media reports, the National Highway Traffic Safety Administration ("NHTSA") databases,

23 and third party complaints.  When the pleadings are pared down to the essential factual

24 allegations concerning each subject vehicle, plaintiffs merely allege:   (1) certain Toyota

25 vehicles are equipped with an electronic throttle control system; (2) there have been

26

1  unconfirmed past claims of sudden, unintended acceleration occurrences in individual Toyota

2  vehicles; and (3) plaintiff was in an accident involving a Toyota vehicle. Absent from plaintiffs'

3  complaints are any identification or description of any alleged defect in the ETCS-i, or

4  sufficient facts to support a claim of any alleged defect in the ETCS-i, or sufficient facts that

5  this alleged defect was a substantial factor in causing the subject accident and plaintiffs'

6  injuries. In effect, plaintiffs infer negligence and strict liability on the part of Toyota based on

7  unsubstantiated circumstantial information. This is not sufficient to support a products liability

8  or negligence claim. Unless and until plaintiffs can provide factual allegations of a specific

9  defect in the ETCS-i that caused the subject vehicle to experience a sudden unintended

10  acceleration event, plaintiffs' product liability and negligence claims should be dismissed.

11  Plaintiffs allege that Toyota is liable because its vehicles experience sudden,

12  unintended acceleration events that in the instant cases caused plaintiffs' accidents and

13  injuries. Plaintiffs assert claims for negligence (Roberts ¶¶ 146-153; Scott ¶¶ 132-136;

14  Akamike ¶¶ 186-190) and strict products liability, including design defect and failure to warn

15  (Roberts ¶¶ 154-171; Scott ¶¶ 127-131; Akamike ¶¶ 131-138). Plaintiffs allege that

16  defendants placed the subject vehicles into the stream of commerce through manufacture,

17  distribution, or sale. Roberts ¶¶ 33, 147, 155; Scott ¶¶ 13-16, 128, 133; Akamike ¶¶ 6, 12,

18  132. Plaintiffs conclude without support that the Toyota vehicles are defectively designed

19  or manufactured and inherently dangerous and have a propensity to suddenly accelerate,

20  lose control and cause injuries. Roberts ¶¶ 149-150, 131; Akamike ¶ 188. Plaintiffs allege

21  defendants failed to use due care in the design, manufacture, testing, distribution and sale

22  of their vehicles (Roberts ¶¶ 151(a), 132; Scott ¶ 134; Akamike ¶¶ 133, 188) and failed to

23  provide an adequate warning of the vehicles' susceptibility to sudden, unintended

24  acceleration events and failed to incorporate adequate safeguards and protection against

25  such incidents (Roberts ¶¶ 151(b-c), 141-142; Scott ¶¶ 2-3; Akamike ¶¶ 136, 187).

26
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1    Rule 8(a)(2) requires that in order to state a claim for relief, a pleading must contain

2   a "short plain statement of the claim showing that the pleader is entitled to relief."  Plaintiffs

3   can no longer rely on the former standard under which plaintiffs only needed "to give the

4   defendant fair notice of what the claim is and the grounds upon which it rests."  Conley v.

5   Gibson (1957) 355 U.S. 41, 47 [78 S.Ct. 99, 2 L.Ed.2d 80] (abrogated by Twombly, 550

6   U.S. 544).  After the U.S. Supreme Court's decisions in Iqbal and Twombly, plaintiffs are

7   now required to have interpreted the general pleading standard delineated in Rule 8 to

8   mean that a complaint necessarily must contain well-pleaded factual allegations that make

9   the claim against a defendant not just probable, but "plausible."  Iqbal, 129 S.Ct. at 1949

10  (citing Twombly, 550 U.S. at 556).

11   In Twombly the U.S. Supreme Court reversed the circuit court's decision and

12  reinstated the district court's dismissal of plaintiffs' complaint, finding that conclusory

13  allegations in support of the elements of a claim are not sufficient to show that the pleader

14  is entitled to relief.  Twombly, 550 U.S. at 557.  The Twombly Court explained:

15          While a complaint attacked by a 12(b)(6) motion to dismiss

16          does not need detailed factual allegations, a plaintiff's

17          obligation to provide the "grounds" of his "entitlement to

18          relief" requires more than labels and conclusions, and a

19          formulaic recitation of the elements of a cause of action will

20          not do.

21  Id. at 555 (internal citations omitted).  The Twombly Court's interpretation of Rule 8 requires

22  the pleader to make enough well-pleaded factual allegations to "raise a right to relief above

23  the speculative level."  Id.  The court found that naked assertions in a complaint of the

24  elements of a claim, "but without further factual enhancement[,] stop short of the line

25  between possibility and plausibility of 'entitle[ment] to relief.'"  Id. at 557 (quoting DM

26  

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1   <u>Research, Inc. v. College of American Pathologists</u>, 170 F.3d 53, 56 (1st Cir. 1999)).   The

2   Court ultimately held that dismissal of plaintiffs' complaint was proper because plaintiffs did

3   not state enough facts to "nudg[e] their claims across the line from conceivable to

4   plausible." <u>Id</u>. at 570.

5        <u>Iqbal</u> advanced the <u>Twombly</u> decision in two important ways by:  (1) clarifying that

6   the <u>Twombly</u> pleading standard applies to all federal civil actions; and (2) setting forth a

7   two-part framework for use in the determination of whether a pleading states a claim. <u>Iqbal</u>,

8   129 S. Ct. at 1950, 1953.  First, <u>Iqbal</u> makes very clear that the heightened <u>Twombly</u>

9   pleading standard "expounded the pleading standard for 'all civil actions.'" Id. at 1953

10   (quoting Fed R. Civ. P. 1).  All cases governed by the Federal Rules of Civil Procedure

11   now fall within the broad reach of <u>Iqbal</u>/<u>Twombly</u>.

12        Second, <u>Iqbal</u> set up a road map to aid courts in determining when a litigant has

13   sufficiently stated a claim.   The first step in the analysis is to identify any conclusory

14   pleading. <u>Iqbal</u>, 129 S. Ct. at 1950.  Pleadings that are factually or legally conclusory are

15   not entitled to a presumption of truth and must be supported by well-plead factual

16   allegations. <u>Id</u>.   "Threadbare recitals of the elements of a claim, supported by mere

17   conclusory statements, do not suffice." <u>Id</u>. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556).

18   Where a pleading contains well-pleaded factual allegations, the second step in the

19   analysis, is to "assume their veracity and determine whether they plausibly give rise to an

20   entitlement to relief." <u>Id</u>. at 1950.  "A claim has facial plausibility when the plaintiff pleads

21   factual content that allows the court to draw the reasonable inference that the defendant is

22   liable for the misconduct alleged." <u>Id</u>. at 1949.   The Court went on to state that the

23   standard for plausibility "is not akin to a 'probability requirement,' but it asks for more than a

24   sheer possibility that a defendant has acted unlawfully." <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at

25   556).

26   ::ODMA\PCDOCS\SJO\248714\1                    10

As demonstrated below, plaintiffs fail to allege facts that place their negligence and product defect claims across the line from conceivable to plausible. See Twomby, 550 U.S. at 570. Plaintiffs allege no facts revealing what is claimed to be wrong with the ETCS-i. Rather, plaintiffs ask defendants and this Court to assume that "certain of Toyota's cars and trucks have a defect that causes sudden uncontrolled acceleration to speeds of up to 100 miles per hour or more" (Roberts ¶ 2; Akamike ¶ 13), that "there are serious safety defects in Toyota vehicles" (Scott ¶ 23) and that "the causes of unintended acceleration include unsafe electronic defects" (Akamike ¶ 23). Unable to identify what specific defect, if any, is causing the alleged sudden unintended acceleration events, plaintiffs merely surmise that the problem could be "electronic-related and/or mechanical related computer / software / hardware glitches." Scott ¶¶ 2-3. This is not sufficient. Plaintiffs must do more than speculate that a wrong has been committed and demand relief.

Considering only the non-conclusory factual allegations in the complaints, as Iqbal directs, plaintiffs allege that:

1.     Beginning in the late 1990s, Toyota vehicles were equipped with an electronic throttle control system. Roberts ¶ 40; Scott ¶ 24; Akamike ¶ 24.

2.     An electric throttle control system uses electronic signals rather than a mechanical linkage to determine how far the accelerator has been pressed and adjust the engine throttle accordingly. Roberts ¶ 41; Scott ¶ 24; Akamike ¶ 24.

3.     Until 2001, Toyota vehicles included a mechanical linkage between the accelerator pedal and the throttle control. Roberts ¶ 43; Scott ¶ 24; Akamike ¶ 24.

4.     The electronic throttle control system in Toyota vehicles does not have a "brake-to-idle" function that automatically reduces the engine to idle when the brakes are applied. Roberts ¶¶ 11, 46; Scott ¶¶ 3, 7; Akamike ¶ 24.

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

5.      NHTSA has investigated claims of surging and acceleration events involving Toyota vehicles.  <u>Roberts</u> ¶¶ 49-107; <u>Scott</u> ¶¶ 23-61; <u>Akamike</u> ¶¶ 33-98.

6.      Toyota recalled certain vehicles concerning potential floor mat interference with the accelerator pedal (<u>Roberts</u>  ¶¶  67, 74-75(a) at 13:18-19; <u>Scott</u>  ¶¶  40, 45-47; <u>Akamike</u> ¶¶ 85-89) and sticking accelerator pedals (<u>Roberts</u> ¶ 77(a); <u>Scott</u> ¶ 49; <u>Akamike</u> ¶ 96).

7.      There have been other motor vehicle accidents involving Toyota vehicles. <u>Roberts</u> ¶¶ 72; <u>Scott</u> ¶ 44; <u>Akamike</u> ¶¶ 60, 67, 84.

8.      Plaintiffs were in a motor vehicle accident.  <u>Roberts</u> ¶ 27; <u>Scott</u> ¶ 20; <u>Akamike</u> ¶ 17.

Setting aside the conclusory allegations contained in the "history" sections of the complaints, it is alleged consumers at various times since 2001 have petitioned NHTSA to investigate unsubstantiated unintended acceleration events in Toyota vehicles.  <u>Roberts</u> ¶¶ 51-52, 55-56, 65, 68-69, 71; <u>Scott</u> ¶¶ 26, 28-29, 32, 35-38, 41, 43, 48; <u>Akamike</u> ¶¶ 41-42, 46-48, 52-53, 57-58, 61-66, 69-73, 77-79, 82.   None of these investigations resulted in NHTSA's identification of a defect in the electronic throttle control system of various Toyota vehicles.  <u>Roberts</u> ¶¶ 59, 63, 65, 69; Scott ¶¶ 30, 35, 37-38, 42; <u>Akamike</u> ¶¶ 45, 50, 55, 61-62, 79, 81, 90, 92.

When whittled down to what have been pled as facts, plaintiffs' otherwise omnibus allegations relating to the claims of the Toyota Defendants' liability and negligence can be stated as follows:

(1)      Toyota vehicles are equipped with an electronic throttle control system;

(2)      NHTSA has opened and closed investigations without directing Toyota to take any actions concerning its vehicles' electronic throttle control system;

(3)      Toyota has issued recalls that are not related to the ETCS-i;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1          (4)     Plaintiff was in an accident while in a Toyota or Lexus vehicle;

2          (5)     Plaintiff claims he experienced a sudden, unintended acceleration incident

3     that resulted in his accident.

4          The complaints filed in this action therefore fail to allege a factual nexus among

5     these five claimed incidences.  Among the many conclusory allegations in the Roberts and

6     Akamike complaints are statements that "the vehicles' electronics cannot be ruled out as a

7     likely cause of the [sudden, unintended acceleration] incidents" (Roberts ¶ 86; Akamike ¶

8     98 (emphasis added)) and that "the ETCS is the likely cause of [unintended acceleration]"

9     (Roberts ¶ 89; Akamike ¶ 101 (emphasis added)).  The Scott complaint similarly rejoins

10    that "certain of [Toyota's] vehicles . . . contained the Defects in the acceleration control and

11    throttle system." Scott ¶ 119.  Scott speculates without any support that the defect involves

12    an (unidentified) malfunction that may be electronic or mechanical and could involve a

13    glitch in the vehicles' computer, software, or hardware. Scott ¶¶ 2-3.  The complaints

14    therefore lack sufficient factual allegations to support the conclusion that a sudden

15    unintended acceleration was caused by a particular defect in the throttle control system.

16    This shortcoming warrants dismissal of the complaints under Iqbal / Twombly.

17         The fact that Toyota vehicles are equipped with ETCS-i and the fact that consumers

18    in the past have complained about unsubstantiated surging, accelerating or other events is

19    not enough to nudge the possibility that plaintiffs' particular unattributed acceleration event

20    was caused by a defect in the ETCS-i past the line of plausibility.  Indeed, "[i]t is not enough

21    to allege that a product line contains a defect or that a product is at risk for manifesting this

22    defect; rather, the plaintiffs must allege that their product actually exhibited the alleged

23    defect." O'Neil v. Simplicity, Inc., 574 F.3d 501, 503 (8th Cir. 2009).  This is because

24    "liability arising from defective manufactured products is premised on proof of a causal

25    / / /

26
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1  relationship [cause in fact] between the defect and the injury."  <u>Greening v. General Air</u>

2  <u>Conditioning Corporation</u> (1965) 233 Cal. App. 2d 545, 549.

3     Plaintiffs have concluded, not shown, that the subject accidents were caused by a

4  specific defect in the ETCS-i.  Thus, under the standards enunciated by Federal Rules of

5  Civil Procedure, Rule 8, and by the U.S. Supreme Court in <u>Twombly</u> and <u>Iqbal</u>, plaintiffs

6  have failed to plead enough facts to make their claim "plausible" not just probable, and

7  plaintiffs clearly fall short of satisfying the heightened factual burden necessary to state a

8  claim in this case.   The complaints, therefore, should be dismissed.

9  C.   Plaintiffs Fail to State a Claim For Breach of the Implied Warranty
      of Merchantability and Fitness for A Particular Purpose Because
10     <u>The Requisite Privity Does Not Exist Between Plaintiffs and Toyota</u>

11     Plaintiffs assert a claim for breach of the implied warranty of merchantability.

12  <u>Roberts</u> ¶¶ 172-179; <u>Scott</u> ¶¶ 137-142; <u>Akamike</u> ¶¶ 173-178.  Specifically, plaintiffs allege

13  that the Toyota vehicles in question were impliedly warranted to be "of merchantable quality

14  and was safe for the use for which it was intended by the defendants, namely, for the

15  purpose of use as a passenger vehicle, and other related activities."  <u>Roberts</u> ¶ 173; <u>see</u>

16  <u>Scott</u> ¶¶ 138-139; <u>Akamike</u> ¶¶ 174-175.  To the extent it is concluded by the plaintiffs that

17  the vehicles in question were defective and dangerous, it is further concluded that Toyota

18  breached an implied warranty of merchantability with the plaintiffs.  <u>Roberts</u> ¶ 175; <u>Scott</u> ¶¶

19  138, 142; <u>Akamike</u> ¶ 174.   Plaintiffs' claims for breach of implied warranty of

20  merchantability fail as a matter of law because plaintiffs do not (and cannot) allege vertical

21  privity with the Toyota Defendants to support such claims.

22     In order to recover on a theory of breach of implied warranty of fitness and

23  merchantability, plaintiff must first demonstrate that he purchased the vehicle from

24  defendants.  CACI Nos. 1231, 1232.  It is well-established that "[p]rivity of contract is a

25  prerequisite in California for recovery on a theory of breach of implied warranties of fitness

26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1   and merchantability." United States Roofing, Inc. v. Credit Alliance Corp. (1991) 228 Cal.

2   App. 3d 1431, 1441.  Or stated another way, a prospective plaintiff must first show the

3   existence of vertical privity with the defendant. Id. "The term 'vertical privity' refers to links in

4   the chain of distribution of goods.  If the buyer and seller occupy adjoining links in the

5   chain, they are in vertical privity with each other." Osborne v. Subaru of America (1988)

6   198 Cal. App. 3d 646, 656, n.6 (internal quotation omitted).

7        "A demurrer is properly sustainable in an action predicated upon a breach of an

8   implied warranty when lack of privity between plaintiff and defendant is disclosed on the

9   face of the complaint." Anthony v. Kelsey-Hayes Co. (1972) 25 Cal. App. 3d 442, 448.

10  This rule would apply here and plaintiffs' implied warranty claims fail as a matter of law.

11  Plaintiffs allege that Toyota sold its vehicles. Roberts ¶¶ 33, 147, 155; Scott ¶¶ 13-16;

12  Akamike ¶¶ 6, 12.  However, plaintiffs have not alleged that any plaintiff purchased the

13  subject vehicle from the Toyota Defendants or that any plaintiff was the original purchaser.

14  The complaints also do not contain allegations that the Toyota Defendants are involved in any

15  way in the negotiation of the purchases.

16        Courts applying California law have repeatedly recognized the privity rule in rejecting

17  implied warranty claims brought by purchasers against car manufacturers where the

18  vehicle was purchased from a dealer. See Clemens v. Daimler-Chrysler Corp., 534 F.3d

19  1017, 1023 (9th Cir. 2008) (affirming dismissal of breach of implied warranty claim for

20  failure to state a claim because plaintiff purchased vehicle from dealer and explaining that

21  "an end consumer such as Clemens who buys from a retailer is not in privity with the

22  manufacturer"); Osborne v. Subaru of Am., Inc., 198 Cal. App. 3d 646, 656 n.6 (1988)

23  ("The distributor is normally in vertical privity with the manufacturer, and the ultimate retail

24  buyer is normally in vertical privity with the dealer.  But if the retail buyer seeks warranty

25  recovery against a manufacturer with whom he has no direct contractual nexus, the

26

1 | manufacturer would seek insulation via the vertical privity defense."); Harlan v. Roadtrek

2 | Motorhomes, Inc., No. 07-CV-686, 2009 WL 928309 (S.D. Cal. April 2, 2009) (granting

3 | motion for summary judgment on implied warranty claims because plaintiffs purchased

4 | motor home from dealer and were not in vertical privity with defendant-manufacturer).

5 |   Because it is clear on the face of the complaints that plaintiffs cannot establish privity

6 | with Toyota, their implied warranty claims fail as a matter of law and should be dismissed.

7
8 |   D.  Plaintiffs Fail to State a Claim For Breach of the Implied Warranty
     of Fitness for a Particular Purpose

9 |   The heading of Roberts' Fourth Claim for Relief states "Breach of Implied Warranties

10 | of Merchantability and Fitness for a Particular Purpose."   However, the First Amended

11 | Complaint does not contain any allegations to support a "particular purpose" claim.

12 | Instead, plaintiff alleges Toyota "impliedly warranted . . . that the subject vehicle was of

13 | merchantable quality and safe for the use for which it was intended by the defendants,

14 | namely, for the purpose of use as a passenger vehicle and other related activities" Roberts

15 | ¶ 173.  At best, plaintiff's conclusory allegation might be applied to an "ordinary purpose"

16 | claim.  A "particular purpose" claim "envisages a specific use by the buyer which is peculiar

17 | to the nature of his business."   American Suzuki Motor Corporation v. Superior Court

18 | (1995) 37 Cal. App. 4th 1291, 1295, n.2.   Nothing that has been alleged or even

19 | contemplated in Roberts' First Amended Complaint would support a "particular purpose"

20 | claim.  Purchasing a passenger vehicle for the purpose of transportation fits into the rubric

21 | of a general or ordinary purpose.  Id.  Plaintiffs have failed to allege facts to support a

22 | breach of implied warranty of merchantability and fitness for a particular purpose.  To the

23 | extent nothing in the pleading allows for the inference that recovery under such a theory is

24 | even possible (much less plausible) the dismissal of this claim should be with prejudice.

25 | / / /

26 |
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1    E.    Plaintiffs Have Not Alleged What Express Warranty Toyota
           Allegedly Breached

2

3           Express warranties are created by "affirmation[s] of fact or promise made by the

4    seller to the buyer" related to the sale of the product.  Cal. Com. Code § 2313, subd. (1)(a).

5    Plaintiffs' breach of express warranty claim fails because plaintiffs have not referenced any

6    affirmation of fact or promise made by the Toyota Defendants that would be effective to show

7    some express obligation on the part of the defendants.  While plaintiffs complain that the

8    Toyota Defendants have "touted the reliability and safety of its vehicles" (Scott ¶ 70) and

9    warranted that its vehicles were "safe to operate" (Akamike ¶ 168; see ¶ 169), such an

10   "affirmation merely of the value of the goods or a statement purporting to be merely the

11   seller's opinion or commendation of the goods does not create a warranty."  Cal. Com.

12   Code § 2313, subd. (2).  This claim should be dismissed.

13          Plaintiffs allege that Toyota breached an express warranty of merchantability when it

14   sold vehicles alleged to be defective.  Scott ¶ 139; Akamike ¶ 169.  Specifically, plaintiffs

15   allege that Toyota "expressly warranted to plaintiff[s] and foreseeable users of the [vehicle]

16   that the [vehicle] and the component parts thereof were fit for the purpose for which they

17   were intended to be used and were free from manufacturing design defects."  Scott ¶ 139.

18   Plaintiffs do not include the express language warranting each particular vehicle's fitness

19   for the intended use.  Accordingly, plaintiffs' claim for breach of express warranty should be

20   dismissed.

21          It is anticipated that plaintiffs will point to the "uniform written statement" alleged to

22   be contained in Toyota's warranty and maintenance guides.  The "uniform written

23   statement" is recited in the complaint as follows:

24               At Toyota, our top priority is always our customers.  We

25               know your Toyota is an important part of your life and

26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1          something you depend on every day.   That's why we're

2          dedicated to building products of the highest quality and

3          reliability . . . Our goal is for every Toyota customer to enjoy

4          outstanding quality, dependability, and peace of mind ..."

5   Scott ¶¶ 63, 121.

6          As will be discussed below, courts have consistently held that this type of

7   promotional language is not actionable as an express warranty since it is considered

8   Toyota's opinions about the quality and reliability of its vehicles.   The same is true of

9   representations by the Toyota Defendants that its ultimate goal is "making a vehicle that is

10  safe for everybody."   Akamike ¶ 168.   As noted, express warranties are created by a

11  sellers' affirmation of fact or promise, not an opinion or commendation of its product.  Cal.

12  Com. Code § 2313, subd. (1)(a), (2).  As shown in section G, subsection 4 below, language

13  containing words such as "reliable" and "quality" is "incapable of objective verification and

14  not expected to induce reasonable customer reliance."   Anunziato v. eMachines, Inc., 402

15  F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) (quoting Summit Technology, Inc. v. High-Line

16  Medical Instruments, Co., 933 F. Supp. 918, 913 (C.D. Cal. 1996)).   For this reason,

17  whether this particular claim survives will depend upon plaintiffs being able to direct the

18  Court's attention to an example of an express warranty that was breached when any

19  particular vehicle experienced a sudden unintended acceleration event.   To the extent

20  plaintiffs are unable to do this, this claim should be dismissed.

21          F.      Plaintiffs' Claims for Breach of the Covenant of Good Faith and Fair
                    Dealing Fails Because Plaintiffs Have Not Alleged a Contract Exists
22                  Between the Parties

23          Plaintiffs conclude that the Toyota Defendants breached the covenant of good faith

24  and fair dealing by placing a vehicle that they claim has an unidentified defect into the stream

25  of commerce.  Akamike ¶ 183.  A claim for breach of the covenant of good faith and fair

26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1  dealing requires a contractual relationship between the parties and some specific contractual

2  obligation on the part of the Toyota Defendants.  Racine & Laramie, Ltd. v. Department of

3  Parks & Recreation (1992) 11 Cal. App. 4th 1026, 1031.  Here, plaintiffs do not and cannot

4  allege that a contractual relationship existed between these parties.  For this reason, this

5  claim should be dismissed with prejudice.

6       G.     Plaintiffs' Claims for Fraudulent Concealment Should Be Dismissed
           Because Plaintiffs Failed to Sufficiently Allege Fraud
7

8       Plaintiffs claim that Toyota fraudulently concealed material facts concerning the

9  ETCS-i.  As is clear from the pleadings, the scant factual allegations in the complaints do not

10  support a claim for common law concealment nor do they support a claim that Toyota's

11  promotional materials are misleading.  Plaintiffs have failed to plead fraud with the requisite

12  particularity under Rule 9(b) and plaintiffs have failed to show that Toyota had a duty to

13  disclose information about the ETCS-i to the plaintiffs.  The parties do not have a fiduciary or

14  confidential relationship, nothing about Toyota's conduct created such a duty or relationship,

15  and plaintiffs' fraud claims should be dismissed.

16       1.     Plaintiffs' Fraudulent Concealment Claims Fail Because
           Toyota Had No Duty to Disclose Facts about an Alleged
17             Defect

18       Plaintiffs' fraudulent concealment claims are based on the unfounded

19  allegations that Toyota actively concealed the existence of a defect in their vehicles and

20  misrepresented the condition of their products as safe in its advertising and warranty

21  materials.  See Roberts ¶¶ 3-4, 20, 105-106, 137, 180-188; Scott ¶¶ 63-126; Akamike ¶¶

22  15, 32, 117, 121, 130, 139-166.  More specifically, plaintiffs allege that:

23       1.     Toyota was aware that the vehicles in question were defective and had

24  a propensity to accelerate suddenly.  Roberts ¶¶ 105, 181; Scott ¶ 63; Akamike ¶ 140;

25  / / /

26
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

2.      Toyota fraudulently concealed from and/or failed to warn plaintiffs of the defect in its vehicles.  Roberts ¶ 182;

3.      Toyota had a duty to disclose and warn plaintiffs about the alleged defects in its vehicles.  Roberts ¶ 183; Scott ¶ 120; Akamike ¶ 141;

4.      This alleged duty to disclose arose because Toyota (a) occupied a superior position of knowledge regarding the condition of its vehicles; (b) advertised the safety and quality of the subject vehicles without revealing their alleged defective nature; and (c) fraudulently and affirmatively concealed the alleged defective nature of the subject vehicles.  Roberts ¶ 183; Scott ¶ 120; Akamike ¶¶ 140, 143;

5.      Toyota concealed material facts concerning its vehicles for the purpose of inducing plaintiffs to purchase and operate Toyota vehicles.  Roberts ¶ 184; Akamike ¶ 143;

6.      If Toyota had revealed the existence and nature of the alleged defects to the plaintiffs, they would not have purchased the subject vehicles.  Roberts ¶ 185; Scott ¶ 120; Akamike ¶ 144.

California Civil Code section 1709 makes liable for damages "one who willfully deceives another with intent to induce [that person] to alter his position to his injury or risk." Fraudulent concealment is defined in section 1710 as "the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact."  Cal. Civ. Code § 1710.  An action for fraudulent concealment would necessarily allege facts to support a claim that: (1) Toyota concealed or suppressed a material fact; (2) Toyota had a duty to disclose the material fact to the plaintiffs; (3) Toyota's concealment or suppression of the material fact was purposeful with an intent to defraud the plaintiffs; (4) plaintiffs were unaware of the fact and would not have acted as they did if they had known of the suppressed or concealed fact;

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1   and (5) resulting damage from the fraud.  See Superior Dispatch, Inc. v. Insurance Corp. of

2   New York (2009) 97 Cal. Rptr. 3d 533, 550.

3   Plaintiffs have not and cannot allege that Toyota had an independent duty to

4   disclose facts regarding an allegedly defective ETCS-i.  It is well established that although

5   material facts are known to one party and not the other, failure to disclose them is ordinarily

6   not actionable fraud unless there is some fiduciary or other confidential relationship giving

7   rise to a duty to disclose.  See Mesmer v. White (1953) 121 Cal. App. 2d 665, 670 (no

8   special duty to disclose material facts where parties deal at arm's length and are each

9   represented by counsel throughout the negotiation, preparation and execution of contract);

10  see also 5 Witkin, Summary of Calif. Law (10th ed. 2007) Torts, § 794, at 1149-50.  Here,

11  plaintiffs do not and cannot allege that Toyota has a fiduciary or other confidential

12  relationship with plaintiffs.  Accordingly, plaintiffs' fraudulent concealment claim based on

13  Toyota's alleged failure to disclose facts about the ETCS-i fails.

14  Where there is no fiduciary relationship between the parties, failure to disclose a

15  material fact in a transaction will not amount to an actionable fraud unless one of the

16  following special circumstances exists:   (1) the defendant has exclusive knowledge of

17  material facts not known to the plaintiff; (2) the defendant actively conceals a material fact

18  from the plaintiff; and (3) the defendant makes partial representations and also suppresses

19  some material fact.  Falk v. General Motors Corp., 496 F. Supp. 2d 1088, 1095 (N.D. Cal.

20  2007).  Again, plaintiffs completely fail to allege facts establishing that one of these other

21  "duty to disclose" circumstances exist here.

22          2.      Toyota Did Not Have Exclusive Knowledge of Material Facts
                    that Were Not Known or Knowable to Plaintiffs
23

24  To successfully allege that Toyota's purported nondisclosure or concealment of a

25  defect constituted actionable fraud, plaintiffs must allege facts to support a contention that

26

1  Toyota had exclusive knowledge of material facts not known to plaintiffs.  The complaints

2  do not include sufficient facts to support plaintiffs' claim that Toyota had a duty to disclose

3  under this theory.  Plaintiffs claim of Toyota's exclusive knowledge in the <u>Roberts</u> complaint

4  is the conclusory allegation that "defendants were in a superior position to know the true

5  state of the facts about the hidden defect in the subject vehicle."  ¶ 183.  The <u>Scott</u>

6  complaint similarly concludes that "Toyota . . . had exclusive knowledge of the dangerously

7  defective nature of the acceleration control and throttle system on the subject vehicles" (¶

8  71) and that "Toyota had exclusive and superior knowledge of the defects and . . . plaintiff .

9  . . was ignorant of and was unaware of the existence and nature of the defects" (¶ 120).

10  The <u>Akamike</u> complaint fares no better by concluding that on information and belief "Toyota

11  knew for years that its vehicles were susceptible to malfunctions that could result in

12  unintended acceleration and braking conditions and serious safety issues including injury

13  and death." ¶ 130.  These generalized statements are insufficient to establish the factors

14  required to create a duty to disclose. <u>Tietsworth v. Sears, Roebuck and Co.</u>, No. 5:09-CV-

15  00288, 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009) (conclusory allegations that

16  "[d]efendants were in a superior position to know the truth about the Machines" and

17  "actively concealed" the defect are insufficient to establish a duty to disclose.)

18        Moreover, it is clear even from plaintiffs' threadbare factual allegations that

19  defendants' knowledge of its vehicles' alleged susceptibility to sudden acceleration events

20  was not "exclusive."  That is, plaintiffs' recitation of the public record is just that—public and

21  available to plaintiffs and others. <u>See</u> <u>Warner Construction Corp. v. City of Los Angeles</u>,

22  (1970) 2 Cal. 3d 285, 294 (in the absence of a fiduciary or confidential relationship, non-

23  disclosure of material facts is actionable if the facts are only known to defendant or not

24  reasonably discoverable by plaintiff).  Even a cursory review of the exemplar complaints

25  demonstrate plaintiffs going to extraordinary lengths to emphasize that Toyota vehicles

26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1   were repeatedly tested over the past decade in response to unsubstantiated complaints

2   about surging and acceleration events, including investigations of Toyota's electric throttle

3   control system. <u>See Roberts</u> ¶¶ 50-52, 55-57, 59-60, 65, 68-69, 71, 74-77(a); <u>Scott</u> ¶¶ 26-

4   30, 32-33, 35-43, 45-49, 73-77; <u>Akamike</u> ¶¶ 34, 45, 47-48, 50, 53-55, 58-59, 61-66, 72-73,

5   76, 78-79, 90.   Therefore, the very "facts" plaintiffs cite concerning alleged sudden

6   acceleration events in Toyota vehicles relating to the electronic throttle control system were

7   not only known and accessible to NHTSA and others, but as a public record were available

8   to plaintiffs as well.

9          3.      Toyota Did Not Conceal Any Material Facts Where No Plaintiff
                   Alleges Having Made an Investigation or Having Sought
10                 Information from Toyota

11          Plaintiffs' claims that Toyota actively concealed discovery of a material fact from

12   plaintiffs similarly fail.  At the outset, it should be noted that while plaintiffs put considerable

13   effort into attempting to allege that Toyota concealed or suppressed material facts, plaintiffs

14   rely on mere conclusions in efforts to establish Toyota's underlying duty to disclose these

15   material facts.   Active concealment "usually consists either in actively hiding something

16   from the other party or preventing him or her from making an investigation that would have

17   disclosed the true facts."   1 Witkin, Summary of Calif. Law (10th ed. 2005) Contracts, §

18   292, at 319.  Because plaintiffs cannot allege facts supporting instances of Toyota's active

19   concealment of information, i.e., Toyota's hiding information from the plaintiffs or preventing

20   plaintiffs  from  making  an  investigation,  plaintiffs'  allegations  rely  on  conclusions,

21   conjectures,  innuendoes,  implications,  and  assumptions  concerning  Toyota's  interaction

22   with NHTSA and others in plaintiffs' failed effort to show a pattern and practice of Toyota's

23   active concealment of facts from the plaintiffs.  <u>See Roberts</u> ¶¶ 49-139; <u>Scott</u> ¶¶ 62-117;

24   <u>Akamike</u> ¶¶ 34-96.   In fact, the <u>Scott</u> complaint summarily concludes that the Toyota

25   Defendants "thus concealed from NHTSA and the public an entire universe of potentially

26
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1  relevant complaints."  ¶ 82.  Later, Scott declares without factual support that "Toyota was

2  able to actively conceal from the public . . . the truth about the existence of the dangerously

3  defective acceleration control and throttle system in the subject vehicles."  ¶ 112; see ¶¶

4  113-114.  Thus, no individual plaintiff alleges that he attempted to investigate, and no

5  individual plaintiff alleges that he sought from Toyota information that was subsequently

6  hidden.  Toyota was not under a duty to disclose information that plaintiffs did not seek.

7  This claim should be dismissed.

8              4.      Toyota's Opinions Regarding the Quality and Reliability of Its
                        Products Are Not Actionable as Representations of Fact_____
9

10         The final special circumstance under which a duty to disclose material facts can be

11  found is where the defendant makes partial representations but also suppresses some

12  material fact.  Plaintiffs conclude that rather than reveal the unidentified alleged defects in

13  its vehicles, Toyota continued to represent that their vehicles were safe for their intended

14  use.  Roberts ¶¶ 38-39, 173; Scott ¶¶ 63, 121; Akamike ¶ 153.  The Scott complaint alleges

15  that "instead of disclosing the truth about the dangerous propensity of Toyota-manufactured

16  vehicles to suddenly and unintentionally accelerate, California consumers were given

17  assurances that their vehicles were safe and defect free."  ¶ 63; see Roberts ¶ 2; Akamike

18  ¶ 153.  The Scott complaint cites a maintenance guide touting Toyota vehicles as high

19  quality, reliable, and dependable.  ¶ 63.  Plaintiffs complain that statements like these, i.e.,

20  that Toyota vehicles are safe and reliable, are only partially true and create a duty for

21  Toyota to disclose the entire truth, i.e., that the vehicles were dangerously defective.  Scott

22  ¶ 121; Akamike ¶ 151.

23         The Toyota Defendants are alleged to have commended the vehicles as "safe" and

24  "of the highest quality and reliability."  Scott ¶¶ 63, 121.  The Toyota Defendants are further

25  alleged to have claimed as a goal that each of its customers to enjoy "outstanding quality,

26
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1   dependability, and peace of mind." Id.; see Roberts ¶¶ 38-39; Akamike ¶¶ 153, 168.

2   Courts do not consider such statements as a representation of actionable facts, but rather

3   "generalized, vague, and unspecified assertions" that a reasonable consumer would

4   understand to be a promotional statement. Oestreicher v. Alienware Corporation, 544 F.

5   Supp. 2d 964, 973 (N.D. Cal. 2008). Accordingly, such "product superiority claims that are

6   vague or highly subjective often amount to non[-]actionable puffery [while] misdescriptions

7   of specific or absolute characteristics of a product are actionable." Southland Sod Farms v.

8   Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997). Interestingly, some of the very

9   words plaintiffs attempt here to characterize as partial representations of material fact, i.e.,

10  "highest quality" and "reliability", have been specifically held to be non-actionable by this

11  Court.   Anunziato, 402 F.Supp.2d at 1140-41.   Advertisements using the word

12  "dependable" have been held not likely to mislead a reasonable consumer. Stickrath v.

13  Globalstar, Inc., 527 F. Supp. 2d 992, 999 (N.D. Cal. 2007). Since the representations

14  alleged to have been made to consumers about its vehicles in Toyota's advertising

15  materials are not false statements of fact, but rather non-actionable promotional

16  statements, plaintiffs have not alleged in the complaints an instance of defendants making

17  a partial disclosure of a material fact by that would give rise to a duty to disclose

18  information about an allegedly defective ETCS-i.

19       For these same reasons, plaintiffs' claims for intentional and negligent

20  misrepresentation are not actionable.   Specifically, plaintiffs allege that the Toyota

21  Defendants' statements that its vehicles were "safe" and "reliable" and that Toyota was a

22  "reputable and reliable business" were misrepresentations of fact. Akamike ¶¶ 149-166.

23  However, as already demonstrated, the statements plaintiffs allege to be

24  misrepresentations are not actionable because they express the Toyota Defendants'

25  "judgment as to quality, value, authenticity, or similar matters." CACI No. 1904. In other

26

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1   words, these are opinions and cannot form the basis for a misrepresentation claim.  Rest.

2   (2d) Torts § 538A.  Plaintiffs' claims for intentional and negligent misrepresentation should

3   therefore be dismissed as a matter of law.

4         Plaintiffs may argue that Toyota had a duty to disclose because the alleged defect

5   involved a safety risk.  See Roberts ¶ 5; Scott ¶ 23; Akamike ¶ 141.  This is a

6   misapplication of the law.  The fact that a safety risk is involved does not alone give rise to

7   a duty to disclose, but merely satisfies the plaintiff's burden of showing that the alleged

8   nondisclosure relates to a material fact.  See Falk, 496 F. Supp. 2d at 1096.  Plaintiffs are

9   still obligated to allege facts establishing that Toyota had exclusive knowledge of an alleged

10  defect or that Toyota actively concealed an alleged defect.  As explained above, plaintiffs

11  have not and cannot do this.

12      H.    Plaintiffs' Claims for Violation of California Business and Professions

13              Code §§ 17200 and 17500 Fail Because Plaintiffs Have Not Identified
            Any False or Misleading Advertising Done by Toyota; and the Statute

14              Does Not Apply to Out-of-State Residents

15        Plaintiffs allege that defendants made false or misleading representations in their

16  advertising materials[2].  Akamike ¶¶ 191-208.  Plaintiffs do not identify with particularity any

17  advertisements disseminated by Toyota that would constitute a false or misleading statement.

18  Instead, plaintiffs summarily conclude that defendants made misrepresentations in the

19  "repeated claims in radio, television, and internet that Toyota vehicles were safe and/or

20  reliable, and that Toyota was a reputable business."  Akamike ¶ 204.  In fact, plaintiffs do not

21

22

23  [2]    The plaintiffs represented by Lieff Cabraser Heiman & Bernstein, LLP ("Lieff

24  Cabraser") amended a number of complaints, including Roberts within the week before
this motion was filed.  Plaintiffs represented by Lieff Cabraser have dropped the false

25  advertising claim.  To the extent many plaintiffs' complaints were modeled after the
ones prepared by Lieff Cabraser, these too should be amended and drop the false

26  advertising claim.

::ODMA\PCDOCS\SJO\248714\1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1 | reference any advertisements promoting Toyota's vehicles.[3]  An allegation that this section

2 | was violated would require the usual specificity required for fraud claims.  See Stearns v.

3 | Select Comfort Retail Corp., No. 08-2746, 2009 WL 1635931, at *11 (N.D. Cal. June 5,

4 | 2009); Stickrath, 527 F. Supp. 2d at 997-98.  At a minimum, plaintiffs should be required to

5 | identify the advertising claimed to be false or misleading.

6 |    Even if plaintiffs could successfully identify with particularity any advertising by Toyota

7 | that was allegedly false and misleading and not non-actionable puffery, an action under

8 | Business & Professions Code sections 17200 and 17500 is unavailable to out-of-state

9 | residents.  False advertising is included in the definition of unfair competition under the Unfair

10 | Competition Law ("UCL").  Cal. Bus. & Prof. Code § 17200.  Unless a statute such as the UCL

11 | or section 17500 states otherwise, it will not be construed to regulate occurrences outside the

12 | state.  Diamond Multimedia Systems, Inc. v. Superior Court (1999) 19 Cal. 4th 1036, 1058-59.

13 | The UCL does not contain an "express declaration that it was designed or intended to

14 | regulate claims of non-residents arising from conduct occurring entirely outside of California."

15 | Norwest Mortgage, Inc. v. Superior Court (1999) 72 Cal. App. 4th 214, 222.  Norwest held that

16 | UCL claims could not be asserted by non-California residents for purchases that occurred in

17 | another state.  Id.  Thus, out-of-state residents who seek relief for alleged violations under

18 | section 17200 and 17500 will have to allege facts that would allow an inference that the harm,

19 | i.e., the purchase of the plaintiffs' vehicle, can be regulated by these statutes.[4]  At a minimum,

20 | Roberts, Scott and Akamike, residents of New York, Florida and Texas, respectively, must

21 | allege that the vehicles were purchased in California, which they likely cannot do.  Unless and

22 | / / /

23 |

24 | [3]  The Scott complaint includes one example of Toyota promotional copy (¶¶ 63, 121), but does not include a false advertising claim for relief, nor does the promotional copy support such a claim.

25 | [4]  See Anunziato, supra, 402 F.Supp.2d 1133, 1136-37, 1136-37 (injury in fact occurs when product being advertised in violation of this section is purchased).

26 | ::ODMA\PCDOCS\SJO\248714\1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TOYOTA DEFENDANTS'
MOTION TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM

1  until out-of-state plaintiffs can so allege, claims made under these California statutes should

2  be dismissed.

3

I.  Plaintiffs' Have Not Pled Their Fraud Claims with the Particularity
Required by Rule 9(b)

4

5  Claims predicated on alleged fraud must satisfy the heightened pleading

6  requirements of Federal Rule of Civil Procedure 9(b). See Stearns, 2009 WL 1635931 at

7  **9-11; Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).

8  Both allegations of concealment and allegations of affirmative misrepresentations are

9  subject to the heightened pleading requirements of Rule 9(b). Stearns, 2009 WL 1635931

10  at *9. Under Rule 9(b), Plaintiffs must plead with specificity the facts constituting the

11  alleged fraud. Id. At a minimum, Rule 9(b) requires that plaintiffs plead facts such as "time,

12  place, persons, statements, and explanations of why the statements are misleading."

13  Ayala v. World Savings Bank, FSB, 616 F. Supp. 2d 1007, 1011 (C.D. Cal. 2009). In other

14  words, the "who, what, when, where, and how" of the fraud must be alleged. Cooper v.

15  Pickett, 137 F. 3d 616, 627 (9th Cir. 1997).

16  Here, plaintiffs fail to plead their fraud claims with the requisite level of specificity,

17  and accordingly, their claims should be dismissed. See Kinkade v. Trojan Express, LLC,

18  No. 08-1362, 2009 WL 799390 (C.D. Cal. March 23, 2009) (dismissing fraud claim for failure

19  to satisfy Rule 9(b)'s pleading requirement). The pleadings here are rife with vague and

20  unspecified allegations that Toyota failed to disclose the fact that the subject vehicles

21  contained an unidentified defect. Such "conclusory allegations do not come close to

22  satisfying the pleading requirements of Rule 9(b)." See Stearns, 2009 WL 1635931, at *9.

23  Notably, plaintiffs fail to identify a single instance where Toyota directed a single

24  material representation toward a single plaintiff, much less a material representation made

25  with knowledge of its falsity. The complaints fall far short of setting forth the "who, what,

26  ::ODMA\PCDOCS\SJO\248714\1

1  when, where, and how" required to state a fraud claim.   Instead, plaintiffs' claims are

2  premised solely upon the vague and unsupported allegations that Toyota concealed some

3  unspecified material facts from some unspecified persons at some unspecified time, at

4  some unspecified place, through some unspecified medium.  This is not enough.

5  V.    CONCLUSION

6        For these and the foregoing reasons, the Toyota Defendants respectfully request

7  that the Court grant this Motion to Dismiss and dismiss plaintiffs' claims.

8  Dated:  September 13, 2010                Respectfully submitted,

9                                            By:  ___/s/ Vincent Galvin_____

10                                           VINCENT GALVIN (Cal. SBN 104448)
                                             E-mail: vgalvin@bowman-brooke.com
11                                           BOWMAN AND BROOKE LLP
                                             1741 Technology Drive, Suite 200
12                                           San Jose, CA  95110
                                             Telephone:  (408) 279-5393
13                                           Facsimile:  (408) 279-5845

14                                           JOEL SMITH (SC SBN 5266)
                                             E-mail:  jsmith@bowman-brooke.com
15                                           BOWMAN AND BROOKE LLP
                                             1441 Main Street, Suite 1000
16                                           Columbia, SC 29201
                                             Telephone:  (803) 726-0020
                                             Facsimile:  (803) 726-0021

17                                           Lead Defense Counsel for Personal Injury/Wrongful
                                             Death Cases
18

19

20

21

22

23

24

25

26  ::ODMA\PCDOCS\SJO\248714\1                   29