Vincent Galvin (CA SBN 104448)
vincent.galvin@bowmanandbrooke.com
Anne O. Hanna (CA SBN 120947)
anne.hanna@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
1741 Technology Drive, Suite 200
San Jose, CA  95110
Telephone No.: (408) 279-5393
Fax No.:  (408) 279-5845

Joel H. Smith (SC SBN 5266)
joel.smith@bowmanandbrooke.com
BOWMAN AND BROOKE LLP
1441 Main Street, Suite 1000
Columbia, SC  29201
Telephone No.:  (803) 726-0020
Fax No.:  (803) 726-0021

Lead Defense Counsel for Personal Injury/Wrongful Death Cases

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

(SOUTHERN DIVISION – SANTA ANA)

| | |
|---|---|
| In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation<br><br>This document relates to:<br><br>2:10CV05461 JVS (FMOx)<br>2:10CV06081 JVS (FMOx)<br>2:10CV05463 JVS (FMOx)<br>2:10CV06082 JVS (FMOx)<br>2:10CV05700 JVS (FMOx)<br>2:10CV03899 JVS (FMOx) | Case No.  8:10ML02151 JVS (FMOx)<br><br>Assigned to:  Hon. James V. Selna<br>Discovery:  Mag. Fernando M. Olguin<br><br>NOTICE OF MOTION AND MOTION OF DEFENDANTS TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., AND TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:  November 19, 2010<br>TIME:  9:00 AM<br>DEPT:  Courtroom 10C |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND TO THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 19, 2010 at 9:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 10C of the Ronald Reagan Federal Building and U.S. Courthouse at 411 W. Fourth Street, Santa Ana, California, defendants Toyota Motor Sales, U.S.A., Inc., Toyota Motor Corporation, Toyota Motor North America, Inc., and Toyota Motor Engineering & Manufacturing North America, Inc. will move this Court for an order:

1.      Dismissing plaintiffs' First Amended Complaints under Federal Rules of Civil Procedure, Rule 12(b)(6) on the grounds that the amended complaints fail to state a claim upon which relief may be granted.  Defendants seek dismissal of the negligence and products liability claims for relief against all plaintiffs;

2.      Dismissing plaintiffs' claims for breach of implied warranty of merchantability for failure to state a claim upon which relief can be granted.  Specifically, the amended complaints fail to allege facts showing the existence of vertical privity between the parties. Defendants seek dismissal of this claim for relief against all plaintiffs;

3.      Dismissing plaintiffs' claims for breach of implied warranty of fitness for a particular purpose for failure to state a claim upon which relief can be granted.  In this action involving ordinary passenger vehicles, plaintiffs have not made any allegations that would support a "particular purpose" claim.  Defendants seek dismissal of this claim for relief against all plaintiffs;

4.      Dismissing plaintiffs' claims for fraudulent concealment for failure to state a claim upon which relief can be granted.  The parties were not in a fiduciary or confidential

relationship. Absent a fiduciary or confidential relationship between the parties, plaintiffs must allege facts demonstrating that a duty to disclose arose through defendants' conduct, which has not been done in this case. Defendants seek dismissal of this claim for relief against all plaintiffs.

This motion is made following the conference of counsel pursuant to L.R. 7.3 as fully set forth in the Declaration of Brooke A. Baires-Irvin filed herewith.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support hereof, on such oral and documentary evidence that may be introduced at the time of the hearing, and on all papers and pleadings on file with the court herein.

Dated: October 12, 2010

Respectfully submitted,

By: ___/s/ Vincent Galvin_____
VINCENT GALVIN (CA SBN 104448)
E-mail: vgalvin@bowman-brooke.com
BOWMAN AND BROOKE LLP
1741 Technology Drive, Suite 200
San Jose, CA  95110
Telephone:  (408) 279-5393
Facsimile:  (408) 279-5845

JOEL SMITH (SC SBN 5266)
E-mail:  jsmith@bowman-brooke.com
BOWMAN AND BROOKE LLP
1441 Main Street, Suite 1000
Columbia, SC 29201
Telephone:  (803) 726-0020
Facsimile:  (803) 726-0021

Lead Defense Counsel for Personal Injury/Wrongful Death Cases

# TABLE OF CONTENTS

Page

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.   PLAINTIFFS' ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

      A.   The Underlying Motor Vehicle Accident . . . . . . . . . . . . . . . . . . . . . . .   1

III.  PLAINTIFFS' CLAIMS ARE FATALLY DEFECTIVE AND MUST BE
      DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

      A.   Dismissal of the Complaints is Appropriate under Federal Rules
           of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

      B.   Plaintiffs Fail to Allege That the Subject Accidents Were Caused
           by a Defect Contained in the Subject Vehicles . . . . . . . . . . . . . . . . . .   5

      C.   Plaintiffs Fail to State a Claim for Breach of the Implied Warranty
           of Merchantability Because the Requisite Privity Does Not Exist
           Between Plaintiffs and Toyota . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

      D.   Plaintiffs Fail to State a Claim for Breach of the Implied Warranty
           Of Fitness for a Particular Purpose . . . . . . . . . . . . . . . . . . . . . . . . .  14

      E.   Plaintiffs' Claim for Fraudulent Concealment Should be Dismissed
           Because Plaintiffs Failed to Sufficiently Allege Fraud . . . . . . . . . . . . .  15

           1.  Plaintiffs' Fraudulent Concealment Claim Fails Because
               Toyota had no Duty to Disclose Facts About an Alleged
               Defect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

           2.  Toyota did not Have Exclusive Knowledge of Material Facts
               That Were not Known or Knowable to Plaintiffs. . . . . . . . . . . . . .  17

           3.  Toyota did not Conceal any Material Facts Where Plaintiffs do
               not Allege Having Made an Investigation or Having Sought
               Information From Toyota . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

           4.  Toyota's Opinions Regarding the Quality and Reliability of its
               Products are not Actionable as Representations of Fact . . . . . . . .  19

      F.   Plaintiffs Have not Pled Their Fraud Claims With the Particularity
           Required by Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

<u>TABLE OF AUTHORITIES</u>

**Federal Cases:**

<u>Anunziato v. eMachines, Inc.</u>,
   402 F. Supp. 2d 1133 (C.D. Cal. 2005) ....................................................................20

<u>Ashcroft v. Iqbal</u>,
   129 S.Ct. 1937 (2009) ........................................................ 4, 7, 8, 9, 11, 12

<u>Ayala v. World Savings Bank, FSB</u>,
   616 F. Supp. 2d 1007 (C.D. Cal. 2009) ..............................................................21

<u>Bell Atlantic Corporation v. Twombly</u>,
   550 U.S. 544 (2007) ...............................................................3, 4, 7, 8, 9, 11, 12

<u>Clemens v. Daimler-Chrysler Corp.</u>,
   534 F.3d 1017 (9th Cir. 2008) ..........................................................................13

<u>Conley v. Gibson</u>,
   (1957) 355 U.S. 41[78 S.Ct. 99, 2 L.Ed.2d 80] ( ..................................................7

<u>Cooper v. Pickett</u>,
   137 F. 3d 616 (9th Cir. 1997) ..........................................................................21

<u>DM Research, Inc. v. College of American Pathologists</u>,
   170 F.3d 53 (1st Cir. 1999) ..............................................................................8

<u>Falk v. General Motors Corp.</u>,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................................17

<u>Harlan v. Roadtrek Motorhomes, Inc.</u>,
   No. 07-CV-686, 2009 WL 928309 ....................................................................14

<u>Kinkade v. Trojan Express, LLC</u>,
   No. 08-1362, 2009 WL 799390 (C.D. Cal. 2009) ................................................21

<u>Neilson v. Union Bank of Cal., N.A.</u>,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................21

<u>Oestreicher v.</u> ,
   <u>Alienware Corporation</u>, 544 F. Supp. 2d 964 (N.D. Cal. 2008) ............................20

<u>O'Neil v. Simplicity, Inc.</u>,
   574 F.3d 501 (8th Cir. 2009) ..........................................................................11

<u>Parks Sch. of Bus. v. Symington</u>,
   51 F.3d 1480 (9th Cir. 1995) ............................................................................3

<u>Southland Sod Farms v. Stover Seed Co.</u>,
   108 F.3d 1134 (9th Cir. 1997) ........................................................................20

<u>Sprewell v. Golden State Warriors</u>,
   266 F.3d 979 (9th Cir. 2001) ............................................................................3

Stearns v. Select Comfort Retail Corp.,
   No. 08-2746, 2009 WL 1635931 (N.D. Cal. June 5, 2009)................................20, 21

Stickrath v. Globalstar, Inc.,
   527 F. Supp. 2d 992 (N.D. Cal. 2007) ........................................................................20

Tietsworth v. Sears, Roebuck and Co.,
   2009 WL 3320486 ......................................................................................................17

**State Cases:**

American Suzuki Motor Corporation v. Superior Court,
   (1995) 37 Cal. App. 4th 1291 , n.2 ............................................................................14

Anthony v. Kelsey-Hayes Co.,
   (1972) 25 Cal. App. 3d 442 .......................................................................................13

Greening v. General Air Conditioning Corporation,
   (1965) 233 Cal. App. 2d 545 .....................................................................................12

Mesmer v. White,
   (1953) 121 Cal. App. 2d 665 .....................................................................................16

Osborne v. Subaru of America,
   (1988) 198 Cal. App. 3d 646 , n.6 ....................................................................... 13, 14

United States Roofing, Inc. v. Credit Alliance Corp.,
   (1991) 228 Cal. App. 3d 1431 ....................................................................................13

Warner Construction Corp. v. City of Los Angeles,
   (1970) 2 Cal. 3d 285...................................................................................................18

**Federal Rules:**

Federal Rules of Civil Procedure, Rule 1 .................................................... 8

Federal Rules of Civil Procedure, Rule 12(b)(6) ........................................1, 3

Federal Rules of Civil Procedure, Rule 8........................................4, 5, 7, 12

Federal Rules of Civil Procedure, Rule 9(b) ......................... 15, 20, 21

**Other Authorities:**

1 Witkin, Summary of Calif. Law (10th ed. 2005) Contracts, § 292 ...............................19

5 Witkin, Summary of Calif. Law (10th ed. 2007) Torts, § 794 .......................................17

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION

This multidistrict litigation action concerns automobile accidents involving various Toyota vehicles produced since 2000. Each of the accidents in question is alleged to have been preceded by a sudden, unintended acceleration event in the involved subject vehicles. In some of the complaints, plaintiffs allege that the unintended acceleration event combined with an inability to stop the vehicle by applying the brake. Plaintiffs theorize that these alleged unintended acceleration events are somehow related to the electronic throttle control system in certain Toyota vehicles. Plaintiffs are pursuing claims against Toyota Motor Sales, U.S.A., Toyota Motor Corporation, Toyota Motor North America, Inc. and Toyota Motor Engineering & Manufacturing North America, Inc. (collectively "Toyota Defendants") for negligence, strict products liability, breach of implied warranties and fraudulent concealment.

Defendants seek dismissal of the entire action pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) on the grounds that plaintiffs have failed to state a claim upon which relief can be granted for negligence, strict products liability, breach of implied warranties and fraudulent concealment as it relates to the subject vehicles. Although plaintiffs claim without any support that Toyota vehicles have a past history of unintended acceleration events, plaintiffs have failed to allege with the requisite specificity any alleged defect in the subject vehicles.

II.   PLAINTIFFS' ALLEGATIONS

A.    The Underlying Motor Vehicle Accident

This multidistrict action involves numerous complaints alleging personal injury or

1

wrongful death arising from sudden, unintended acceleration events involving various Toyota vehicles.  The six individual amended complaints that were recently filed, Akamike (2:10CV06081-JVS-(FMOx)), Ross (2:10CV05700-JVS-(FMOx)), Auckland (2:10CV06082-JVS-(FMOx)), Turner (2:10CV05461-JVS-(FMOx)), Knighton (2:10CV05463-JVS-(FMOx)) and Wachtel (2:10CV03899-JVS-(FMOx)) are almost identical and were included in the Toyota Defendants' September 13, 2010 Notice of Motion to Dismiss.  Plaintiffs have removed several claims for relief[1], but still have not cured the fundamental defects in their pleading.  For purposes of expediency and clarity, the arguments in this motion are based on the Akamike First Amended Complaint (2:10CV06081-JVS-(FMOx)) (Attached hereto as Exhibit A is a true and correct courtesy copy of the Akamike First Amended Complaint) and should apply to each of the nearly identically worded amended complaints.

Plaintiffs allege that certain models of Toyota and Lexus brand vehicles have an unidentified design defect that causes sudden, unintended acceleration to speeds up to 100 miles per hour.  First Amended Complaint ("FAC") ¶¶ 6, 9.  This defect combines with the operator's inability to stop the vehicle during a sudden, unintended acceleration event due to an alleged inadequate fault detection system and the absence of a brake override system.  FAC ¶¶ 9, 11, 45-46.  Plaintiffs claim that the defect exists as a part of the Electronic Throttle Control System with Intelligence ("ETCS-i") installed on certain Toyota vehicles.  Unlike traditional throttle control systems, the ETCS-i has no mechanical linkage from the accelerator pedal to the engine throttle.  FAC ¶ 40.  Rather a sensor at the accelerator detects how far the gas pedal is depressed and transmits that information to computer modules, which control a motorized engine throttle.  Id.  Plaintiffs allege that the

---

[1] Plaintiffs no longer assert causes of action for breach of express warranty, intentional and negligent misrepresentation, and violations of California Business and Professions Code sections 17200 and 17500.

2

ETCS-i may somehow be the reason certain Toyota and Lexus vehicles are experiencing unintended acceleration events. FAC ¶¶ 10, 43.

Plaintiffs contend that the subject accidents were the result of a sudden, unintended acceleration event. FAC ¶ 27. However, plaintiffs do not and cannot attribute these sudden, unintended acceleration events to a particular defect in the vehicle. Plaintiffs merely allege that the subject vehicles suddenly and unexpectedly accelerated. Id. The allegations respecting the events surrounding the accidents are similarly worded in each individual complaint. That is, each accident is alleged as an unattributed instance where the vehicle is described to have accelerated on its own and the driver was unable to stop the vehicle.

Plaintiffs assert the following claims for relief: (1) Negligence (FAC ¶¶ 148-155), strict products liability (FAC ¶¶ 156-164), failure to warn (FAC ¶¶ 165-173), breach of implied warranties (FAC ¶¶ 174-181) and fraudulent concealment (FAC ¶¶ 182-190).

III.   PLAINTIFFS' CLAIMS ARE FATALLY DEFECTIVE AND MUST BE DISMISSED

    A.   Dismissal of the Complaints Is Appropriate Under Federal Rule of Civil Procedure 12(b)(6)

Defendants are entitled to dismissal under Rule 12(b)(6) if, accepting the allegations as true, the complaints fail to state facts that would support relief. Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). The Court should not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Plaintiff's "obligation to provide the 'grounds' of [his] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

3

1   will not do." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007). Rather, the

2   allegations "must be enough to raise a right to relief above the speculative level." Id.

3        "[T]he tenet that a court must accept as true all of the allegations contained in a

4   complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949

5   (2009).   Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-

6   harmed-me accusation." Id. "A pleading that offers 'labels and conclusions' or 'a formulaic

7   recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S.

8   at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

9   factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). The U.S. Supreme Court

10   explained that "[t]hreadbare recitals of the elements of a cause of action, supported by

11

12   mere conclusory statements, do not suffice." Id.  Thus, while courts "must take all of the

13   factual allegations in the complaint as true" for purposes of a motion to dismiss, courts "are

14   not bound to accept as true a legal conclusion couched as a factual allegation." Id. at

15   1949-50 (internal quotations omitted).

16
17

18        "Second, only a complaint that states a plausible claim for relief survives a motion to

19   dismiss." Id. at 1950. The U.S. Supreme Court in Iqbal explained:

20            To survive a motion to dismiss, a complaint must contain

21            sufficient factual matter, accepted as true, to "state a claim

22            to relief that is plausible on its face."  A claim has facial

23            plausibility when the plaintiff pleads factual content that

24            allows the court to draw the reasonable inference that the

25            defendant is liable for the misconduct alleged.   The

26

27            plausibility standard is not akin to a "probability requirement,"

28

1    but it asks for more than a sheer possibility that a defendant
2    has acted unlawfully.  Where a complaint pleads facts that
3    are "merely consistent with" a defendant's liability, it "stops
4    short of the line between possibility and plausibility of
5    entitlement to relief."
6
7    Id. at 1949 (citations omitted).  The U.S. Supreme Court concluded:

8    Determining whether a complaint states a plausible claim for
9    relief will . . . be a context-specific task that requires the
10   reviewing court to draw on its judicial experience and
11   common sense.  But where the well-pleaded facts do not
12   permit the court to infer more than the mere possibility of
13   misconduct, the complaint has alleged — but it has not
14   'show[n]' — 'that the pleader is entitled to relief.'
15
16
17   Id. (quoting Fed. R. Civ. P. 8(a)(2)).

18        As shown below, the amended complaints filed in these actions should be
19   dismissed because they fail to sufficiently allege facts that show plaintiffs' entitlement to
20   relief.

21        B.    Plaintiffs Fail to Allege That the Subject Accidents Were Caused
22              By A Defect Contained In the Subject Vehicles
23
24        The amended complaints fail to identify any specific allegation of the actual alleged
25   defect in the ETCS-i that caused the subject accidents.  Plaintiffs' amended complaints are
26   replete with conclusory allegations regarding anecdotal past incidents of alleged sudden
27   unintended acceleration events taken from media reports, the National Highway Traffic
28

5

Safety Administration ("NHTSA") databases, and third party complaints.  When the amended complaints are pared down to the essential factual allegations concerning the subject vehicles, plaintiffs merely allege:  (1) certain Toyota vehicles are equipped with an electronic throttle control system; (2) there have been unconfirmed past claims of sudden, unintended acceleration occurrences in individual Toyota vehicles; and (3) plaintiffs or their decedents were in an accident involving a Toyota vehicle.  Absent from plaintiffs' amended complaints is any identification or description of any alleged defect in the ETCS-i, or sufficient facts to support a claim of any alleged defect in the ETCS-i, or sufficient facts that this alleged defect was a substantial factor in causing the subject accidents and plaintiffs' injuries.  In effect, plaintiffs infer negligence and strict liability on the part of Toyota based on unsubstantiated circumstantial information.  This is not sufficient to support a products liability or negligence claim.  Unless and until plaintiffs can provide factual allegations of a specific defect in the ETCS-i that caused the subject vehicle to experience a sudden unintended acceleration event, plaintiffs' product liability and negligence claims should be dismissed.

Plaintiffs allege that Toyota is liable because its vehicles experience sudden, unintended acceleration events that in the instant case caused plaintiffs' accidents and injuries.  Plaintiffs assert claims for negligence (FAC ¶¶ 148-155) and strict products liability (FAC ¶¶ 156-164).  Plaintiffs allege that defendants placed the subject vehicles into the stream of commerce through manufacture, distribution, or sale.  FAC ¶ 157.  Plaintiffs conclude without support that the subject vehicles were unsafe for their intended use due to defects in their manufacture, design, testing, components and constituents, such that they would not safely serve their purpose, but would instead expose their users to serious injuries.  FAC ¶ 159.  Plaintiffs allege defendants failed to provide an adequate warning of

the vehicles' susceptibility to sudden, unintended acceleration events and failed to incorporate adequate safeguards and protection against such incidents (FAC ¶¶ 20, 170).

Rule 8(a)(2) requires that in order to state a claim for relief, a pleading must contain a "short plain statement of the claim showing that the pleader is entitled to relief." Plaintiffs can no longer rely on the former standard under which plaintiffs only needed "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Conley v. Gibson (1957) 355 U.S. 41, 47 [78 S.Ct. 99, 2 L.Ed.2d 80] (abrogated by Twombly, 550 U.S. 544). After the U.S. Supreme Court's decisions in Iqbal and Twombly, plaintiffs are now required to have interpreted the general pleading standard delineated in Rule 8 to mean that a complaint necessarily must contain well-pleaded factual allegations that make the claim against a defendant not just probable, but "plausible." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556).

In Twombly the U.S. Supreme Court reversed the circuit court's decision and reinstated the district court's dismissal of plaintiffs' complaint, finding that conclusory allegations in support of the elements of a claim are not sufficient to show that the pleader is entitled to relief. Twombly, 550 U.S. at 557. The Twombly Court explained:

> While a complaint attacked by a 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. at 555 (internal citations omitted). The Twombly Court's interpretation of Rule 8

requires the pleader to make enough well-pleaded factual allegations to "raise a right to

relief above the speculative level." Id.   The court found that naked assertions in a

complaint of the elements of a claim, "but without further factual enhancement[,] stop short

of the line between possibility and plausibility of 'entitle[ment] to relief.'" Id. at 557 (quoting

DM Research, Inc. v. College of American Pathologists, 170 F.3d 53, 56 (1st Cir. 1999)).

The Court ultimately held that dismissal of plaintiffs' complaint was proper because

plaintiffs did not state enough facts to "nudg[e] their claims across the line from

conceivable to plausible." Id. at 570.

Iqbal advanced the Twombly decision in two important ways by:  (1) clarifying that

the Twombly pleading standard applies to all federal civil actions; and (2) setting forth a

two-part framework for use in the determination of whether a pleading states a claim.

Iqbal, 129 S. Ct. at 1950, 1953.  First, Iqbal makes very clear that the heightened Twombly

pleading standard "expounded the pleading standard for 'all civil actions.'" Id. at 1953

(quoting Fed R. Civ. P. 1).  All cases governed by the Federal Rules of Civil Procedure

now fall within the broad reach of Iqbal/Twombly.

Second, Iqbal set up a road map to aid courts in determining when a litigant has

sufficiently stated a claim.   The first step in the analysis is to identify any conclusory

pleading.  Iqbal, 129 S. Ct. at 1950.  Pleadings that are factually or legally conclusory are

not entitled to a presumption of truth and must be supported by well-plead factual

allegations.   Id.   "Threadbare recitals of the elements of a claim, supported by mere

conclusory statements, do not suffice."   Id. at 1949 (citing Twombly, 550 U.S. at 556).

Where a pleading contains well-pleaded factual allegations, the second step in the

analysis, is to "assume their veracity and determine whether they plausibly give rise to an

8

entitlement to relief." Id. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. The Court went on to state that the standard for plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

As demonstrated below, plaintiffs fail to allege facts that place their negligence and product defect claims across the line from conceivable to plausible. See Twomby, 550 U.S. at 570. Plaintiffs allege no facts revealing what is claimed to be wrong with the ETCS-i. Rather, plaintiffs ask defendants and this Court to assume that "all Toyota vehicles with the electronic throttle control systems . . . contain design defects that cause sudden and uncontrolled acceleration" (FAC ¶ 6) and that "the affected vehicles are defective because they experience UA events and because they lack a mechanism such as a brake override system, to prevent, mitigate, or stop a UA event" (FAC ¶ 7). While the amended complaints purport to allege a specific defect in the ETCS-i (see FAC ¶¶ 8-11) what the allegations amount to is a general assertion that the ETCS-i may have inadequacies or be susceptible to malfunction, which is not enough to meet Iqbal's plausibility standard. Plaintiffs must do more than speculate that a wrong has been committed and demand relief.

Considering only the non-conclusory factual allegations in the amended complaints, as Iqbal directs, plaintiffs allege that:

1.      Beginning in the late 1990s, Toyota vehicles were equipped with an electronic throttle control system. FAC ¶ 39.

9

2.      An electronic throttle control system has a sensor at the accelerator that detects how far the gas pedal is depressed and transmits that information to computer modules, which control a motorized engine throttle.  FAC ¶ 40.

3.      Until 2001, Toyota vehicles included a mechanical linkage between the accelerator pedal and the throttle control.  FAC ¶ 42.

4.      The electronic throttle control system in Toyota vehicles does not have a "brake-to-idle" function that will automatically stop any unintended acceleration when the brakes are applied.  FAC ¶¶ 11, 45.

5.      NHTSA has investigated claims of surging and acceleration events involving Toyota vehicles.  FAC ¶¶ 50-76.

6.      Toyota recalled certain vehicles concerning potential floor mat interference with the accelerator pedal (FAC ¶¶ 66, 73-74) and sticking accelerator pedals (FAC ¶ 76).

7.      There have been other motor vehicle accidents involving Toyota vehicles.  FAC ¶ 3, 5, 51.

8.      Plaintiffs or their decedents were in a motor vehicle accident.  FAC ¶ 27.

Setting aside the conclusory allegations contained in the amended complaints, it is alleged consumers at various times since 2001 have petitioned NHTSA to investigate unsubstantiated unintended acceleration events in Toyota vehicles.  FAC ¶¶ 51, 54-56, 60, 62-64, 67, 70.  None of these investigations resulted in NHTSA's identification of a defect in the electronic throttle control system of various Toyota vehicles.  FAC ¶¶ 58, 64, 68.

When whittled down to what have been pled as facts, plaintiffs' otherwise omnibus allegations relating to the claims of the Toyota Defendants' liability and negligence can be stated as follows:

(1)     Toyota vehicles are equipped with an electronic throttle control system;

(2)     NHTSA has opened and closed investigations without directing Toyota to take any actions concerning its vehicles' electronic throttle control system;

(3)     Toyota has issued recalls that are not related to the ETCS-i;

(4)     Plaintiffs or their decedents were in an accident while in a Toyota vehicle;

(5)     Plaintiffs claim they or their decedents experienced a sudden, unintended acceleration incident that resulted in their accidents.

The complaints filed in this action fail to allege a factual nexus among these five claimed incidences.  Among the many conclusory allegations in the amended complaints are statements that "all Toyota vehicles with the electronic throttle control system....contain design defects that cause sudden and uncontrolled acceleration..."  FAC ¶ 6.  Plaintiffs speculate without any support that the defect involves an (unidentified) malfunction that may be electronic and could involve a glitch in the vehicles' computer or its software. FAC ¶¶ 10, 43.     The amended complaints therefore continue to lack sufficient factual allegations to support the conclusion that a sudden unintended acceleration was caused by a particular defect in the throttle control system.  This shortcoming warrants dismissal of the complaints under Iqbal / Twombly.

The fact that Toyota vehicles are equipped with ETCS-i and the fact that consumers in the past have complained about unsubstantiated surging, accelerating or other events is not enough to nudge the possibility that plaintiffs' particular unattributed acceleration event was caused by a defect in the ETCS-i past the line of plausibility.   Indeed, "[i]t is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product actually exhibited

11

the alleged defect." <u>O'Neil v. Simplicity, Inc.</u>, 574 F.3d 501, 503 (8th Cir. 2009).  This is because "liability arising from defective manufactured products is premised on proof of a causal relationship [cause in fact] between the defect and the injury." <u>Greening v. General Air Conditioning Corporation</u> (1965) 233 Cal. App. 2d 545, 549.

Plaintiffs have concluded, not shown, that the subject accident was caused by a specific defect in the ETCS-i.  Thus, under the standards enunciated by Federal Rules of Civil Procedure, Rule 8, and by the U.S. Supreme Court in <u>Twombly</u> and <u>Iqbal</u>, plaintiffs have failed to plead enough facts to make their claims "plausible" not just possible, and plaintiffs clearly fall short of satisfying the heightened factual burden necessary to state a claim in these cases.   The amended complaints, therefore, should be dismissed.

C.   Plaintiffs Fail to State a Claim For Breach of the Implied Warranty of Merchantability Because The Requisite Privity Does Not Exist Between Plaintiffs and Toyota

Plaintiffs assert claims for breach of the implied warranty.   FAC ¶¶ 174-181.  Specifically, plaintiffs allege that the Toyota vehicles in question were impliedly warranted to be "of merchantable quality and was safe for the use for which it was intended by the defendants, namely, for the purpose of use as a passenger vehicle, and other related activities." FAC ¶¶ 175.  To the extent it is concluded by the plaintiffs that the vehicles in question were defective and dangerous, it is further concluded that Toyota breached an implied warranty of merchantability with the plaintiffs.  Complaint ¶ 177.  Plaintiffs' claims for breach of implied warranty of merchantability fail as a matter of law because plaintiffs do not (and cannot) allege vertical privity with the Toyota Defendants to support such a claim.

In order to recover on a theory of breach of implied warranty of fitness and

merchantability, plaintiffs must first demonstrate that they purchased the vehicles from defendants.  CACI Nos. 1231, 1232.  It is well-established that "[p]rivity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability."  United States Roofing, Inc. v. Credit Alliance Corp. (1991) 228 Cal. App. 3d 1431, 1441.  Or stated another way, a prospective plaintiff must first show the existence of vertical privity with the defendant.  Id.  "The term 'vertical privity' refers to links in the chain of distribution of goods.  If the buyer and seller occupy adjoining links in the chain, they are in vertical privity with each other."  Osborne v. Subaru of America (1988) 198 Cal. App. 3d 646, 656, n.6 (internal quotation omitted).

"A demurrer is properly sustainable in an action predicated upon a breach of an implied warranty when lack of privity between plaintiff and defendant is disclosed on the face of the complaint."  Anthony v. Kelsey-Hayes Co. (1972) 25 Cal. App. 3d 442, 448. This rule would apply here and plaintiffs implied warranty claims fail as a matter of law. Plaintiffs allege that Toyota sold its vehicles.  Complaint ¶¶ 33, 157.  However, plaintiffs still have not alleged that they or their decedents purchased the subject vehicles from the Toyota Defendants or that they were the original purchasers.  The amended complaints also do not contain allegations that the Toyota Defendants are involved in any way in the negotiation of the purchases.

Courts applying California law have repeatedly recognized the privity rule in rejecting implied warranty claims brought by purchasers against car manufacturers where the vehicle was purchased from a dealer.  See Clemens v. Daimler-Chrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008) (affirming dismissal of breach of implied warranty claim for failure to state a claim because plaintiff purchased vehicle from dealer and explaining that

"an end consumer such as Clemens who buys from a retailer is not in privity with the manufacturer"); Osborne v. Subaru of Am., Inc., 198 Cal. App. 3d 646, 656 n.6 (1988) ("The distributor is normally in vertical privity with the manufacturer, and the ultimate retail buyer is normally in vertical privity with the dealer.  But if the retail buyer seeks warranty recovery against a manufacturer with whom he has no direct contractual nexus, the manufacturer would seek insulation via the vertical privity defense."); Harlan v. Roadtrek Motorhomes, Inc., No. 07-CV-686, 2009 WL 928309 (S.D. Cal. April 2, 2009) (granting motion for summary judgment on implied warranty claims because plaintiffs purchased motor home from dealer and were not in vertical privity with defendant-manufacturer).

Because it is clear on the face of the complaints that plaintiffs cannot establish privity with Toyota, their implied warranty claims fail as a matter of law and should be dismissed.

> D.   Plaintiffs Fail to State a Claim For Breach of the Implied Warranty of Fitness for a Particular Purpose

The heading of the Fourth Claim for Relief in each of plaintiffs' amended complaints states "Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose."  However, the amended complaints do not contain any allegations to support a "particular purpose" claim.  Instead, plaintiffs allege Toyota "impliedly warranted . . . that the subject vehicle was of merchantable quality and safe for the use for which it was intended by the defendants, namely, for the purpose of use as a passenger vehicle and other related activities"  FAC ¶ 175.  At best, plaintiffs' conclusory allegations might be applied to an "ordinary purpose" claim.  A "particular purpose" claim "envisages a specific use by the buyer which is peculiar to the nature of his business."  American Suzuki Motor

14

Corporation v. Superior Court (1995) 37 Cal. App. 4th 1291, 1295, n.2.  Nothing that has
been alleged or even contemplated in the amended complaints would support a "particular
purpose" claim.  Purchasing a passenger vehicle for the purpose of transportation fits into
the rubric of a general or ordinary purpose.  Id.  Plaintiffs have failed to allege facts to
support a breach of implied warranty of merchantability and fitness for a particular purpose.
To the extent nothing in the pleading allows for the inference that recovery under such a
theory is even possible (much less plausible) the dismissal of these claims should be with
prejudice.

> E.    Plaintiffs' Claim for Fraudulent Concealment Should Be Dismissed
>        Because Plaintiffs Failed to Sufficiently Allege Fraud

Plaintiffs claim that Toyota fraudulently concealed material facts concerning the
ETCS-i.  As is clear from the pleadings, the scant factual allegations in the amended
complaints do not support a claim for common law concealment nor do they support a claim
that Toyota's promotional materials are misleading.  Plaintiffs have failed to plead fraud with
the requisite particularity under Rule 9(b) and plaintiffs have failed to show that Toyota had a
duty to disclose information about the ETCS-i to plaintiffs or their decedents.  The parties do
not have a fiduciary or confidential relationship, nothing about Toyota's conduct created such
a duty or relationship, and plaintiffs' fraud claims should be dismissed.

> 1.    Plaintiffs' Fraudulent Concealment Claims Fail Because
>        Toyota Had No Duty to Disclose Facts about an Alleged
>        Defect

Plaintiffs' fraudulent concealment claim is based on the unfounded allegations that
Toyota actively concealed the existence of a defect in its vehicles and misrepresented the
condition of its products as safe in its advertising and warranty materials.  See FAC ¶¶ 18,

15

20, 104, 122, 105-112, 183-189.  More specifically, plaintiffs allege that:

1.     Toyota was aware that the vehicles in question were defective and had a propensity to accelerate suddenly.  FAC ¶ 183;

2.     Toyota fraudulently concealed from and/or failed to warn plaintiffs of the defect in its vehicles.  FAC ¶ 184;

3.     Toyota had a duty to disclose and warn plaintiffs about the alleged defects in its vehicles.  FAC ¶ 185;

4.     This alleged duty to disclose arose because Toyota (a) was aware of the danger of unintended acceleration in its vehicles; (b) advertised the safety and quality of the subject vehicles without revealing their alleged defective nature; and (c) fraudulently and affirmatively concealed the alleged defective nature of the subject vehicles.  FAC ¶ 185;

5.     Toyota concealed material facts concerning its vehicles for the purpose of inducing plaintiffs and/or their decedents to purchase and operate Toyota vehicles.  FAC ¶ 186-187;

6.     If Toyota had revealed the existence and nature of the alleged defects to the plaintiffs and/or their decedents, they would not have purchased the subject vehicles.  Complaint ¶ 187.

Plaintiffs have not and cannot allege that Toyota had an independent duty to disclose facts regarding an allegedly defective ETCS-i.  It is well established that although material facts are known to one party and not the other, failure to disclose them is ordinarily not actionable fraud unless there is some fiduciary or other confidential relationship giving rise to a duty to disclose.  See Mesmer v. White (1953) 121 Cal. App. 2d

16

665, 670 (no special duty to disclose material facts where parties deal at arm's length and are each represented by counsel throughout the negotiation, preparation and execution of contract); see also 5 Witkin, Summary of Calif. Law (10th ed. 2007) Torts, § 794, at 1149-50.   Here, plaintiffs do not and cannot allege that Toyota has a fiduciary or other confidential relationship with plaintiffs.   Accordingly, plaintiffs' fraudulent concealment claims based on Toyota's alleged failure to disclose facts about the ETCS-i fail.

Where there is no fiduciary relationship between the parties, failure to disclose a material fact in a transaction will not amount to an actionable fraud unless one of the following special circumstances exists:   (1) the defendant has exclusive knowledge of material facts not known to the plaintiff; (2) the defendant actively conceals a material fact from the plaintiff; and (3) the defendant makes partial representations and also suppresses some material fact.   Falk v. General Motors Corp., 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007).   Again, plaintiffs completely fail to allege facts establishing that one of these other "duty to disclose" circumstances exist here.

> 2.   Toyota Did Not Have Exclusive Knowledge of Material Facts that Were Not Known or Knowable to Plaintiffs

To successfully allege that Toyota's purported nondisclosure or concealment of a defect constituted actionable fraud, plaintiffs must allege facts to support a contention that Toyota had exclusive knowledge of material facts not known to plaintiffs.   Plaintiffs' amended complaints do not include sufficient facts to support plaintiffs' claims that Toyota had a duty to disclose under this theory.   Plaintiffs' amended complaints rely on the conclusory allegation that on information and belief "Toyota knows and has known that its vehicles present an unreasonable danger, in that they are subject to UA as a result of

1  defects in their design and manufacture..." ¶ 19.  This generalized statement is insufficient

2  to establish the factors required to create a duty to disclose.  Tietsworth v. Sears, Roebuck

3  and Co., No. 5:09-CV-00288, 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009) (conclusory

4  allegations that "[d]efendants were in a superior position to know the truth about the

5  Machines" and "actively concealed" the defect are insufficient to establish a duty to

6

7  disclose.)

8       Moreover, it is clear even from plaintiffs' threadbare factual allegations that

9  defendants' knowledge of its vehicles' alleged susceptibility to sudden acceleration events

10  was not "exclusive."  That is, plaintiffs' recitation of the public record is just that—public and

11  available to plaintiffs and others.  See Warner Construction Corp. v. City of Los Angeles,

12  (1970) 2 Cal. 3d 285, 294 (in the absence of a fiduciary or confidential relationship, non-

13  disclosure of material facts is actionable if the facts are only known to defendant or not

14  reasonably discoverable by plaintiff).  Even a cursory review of plaintiffs' amended

15

16  complaints demonstrates plaintiffs going to extraordinary lengths to emphasize that Toyota

17  vehicles were repeatedly tested over the past decade in response to unsubstantiated

18  complaints about surging and acceleration events, including investigations of Toyota's

19  electronic throttle control system.  See FAC ¶¶ 50, 54-56, 59-60, 62, 64, 67-68.  Therefore,

20  the very "facts" plaintiffs cite concerning alleged sudden acceleration events in Toyota

21  vehicles relating to the electronic throttle control system were not only known and

22

23  accessible to NHTSA and others, but as a public record were available to plaintiffs as well.

24

25       3.  Toyota Did Not Conceal Any Material Facts Where Plaintiffs
            Do Not Allege Having Made an Investigation or Having
26           Sought Information from Toyota

27       Plaintiffs' claims that Toyota actively concealed discovery of a material fact from

28

18

plaintiffs similarly fail.  At the outset, it should be noted that while plaintiffs put considerable effort into attempting to allege that Toyota concealed or suppressed material facts, plaintiffs rely on mere conclusions in efforts to establish Toyota's underlying duty to disclose these material facts.  Active concealment "usually consists either in actively hiding something from the other party or preventing him or her from making an investigation that would have disclosed the true facts."  1 Witkin, Summary of Calif. Law (10th ed. 2005) Contracts, § 292, at 319.  Because plaintiffs cannot allege facts supporting instances of Toyota's active concealment of information, i.e., Toyota's hiding information from the plaintiff or preventing plaintiff from making an investigation, plaintiff's allegations rely on conclusions, conjectures, innuendoes, implications, and assumptions concerning Toyota's interaction with NHTSA and others in plaintiffs' failed effort to show a pattern and practice of Toyota's active concealment of facts from plaintiffs.  See FAC ¶¶ 50-77.  Thus, plaintiffs fail to allege that they attempted to investigate, and fail to allege that they sought from Toyota information that was subsequently hidden.  Toyota was not under a duty to disclose information that plaintiffs did not seek and this claim should be dismissed.

> 4.    Toyota's Opinions Regarding the Quality and Reliability of Its
>        Products Are Not Actionable as Representations of Fact

The final special circumstance under which a duty to disclose material facts can be found is where the defendant makes partial representations but also suppresses some material fact.  Plaintiffs conclude that rather than reveal the unidentified alleged defects in its vehicles, Toyota continued to represent that its vehicles were safe for their intended use.  FAC ¶ 104.  The amended complaints allege that Toyota "concealed...facts and continued to make statements touting the reliability and safety of its vehicles, including the

subject vehicles with dangerous defects…" Id.  Plaintiffs complain that statements like these, i.e., that Toyota vehicles are safe and reliable, are only partially true and create a duty for Toyota to disclose the entire truth, i.e., that the vehicles were dangerously defective.  FAC ¶ 185.

The Toyota Defendants are alleged to have "publicly committed itself to building the safest and most reliable cars on the road."  FAC ¶ 2.  Courts do not consider such statements as a representation of actionable facts, but rather "generalized, vague, and unspecified assertions" that a reasonable consumer would understand to be a promotional statement.  Oestreicher v. Alienware Corporation, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008).  Accordingly, such "product superiority claims that are vague or highly subjective often amount to non[-]actionable puffery [while] misdescriptions of specific or absolute characteristics of a product are actionable."  Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997).  Interestingly, some of the very words plaintiffs attempt to characterize as partial representations of material fact, i.e., "highest quality" and "reliability", have been specifically held to be non-actionable by this Court.  Anunziato, 402 F.Supp.2d at 1140-41.  Advertisements using the word "dependable" have been held not likely to mislead a reasonable consumer.  Stickrath v. Globalstar, Inc., 527 F. Supp. 2d 992, 999 (N.D. Cal. 2007).  Since the representations alleged to have been made to consumers about its vehicles in Toyota's advertising materials are not false statements of fact, but rather non-actionable promotional statements, plaintiffs have not alleged in their amended complaints an instance of defendants making a partial disclosure of a material fact that would give rise to a duty to disclose information about an allegedly defective ETCS-i.

F.   Plaintiffs Have Not Pled Their Fraud Claims with the Particularity Required by Rule 9(b)

20

Claims predicated on alleged fraud must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). See Stearns v. Select Comfort Retail Corp., Case No. 08-2746 JF, 2009 WL 1635931, **9-11 (N.D. Cal. June 5, 2009); Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003). Allegations of concealment are subject to the heightened pleading requirements of Rule 9(b). Stearns, 2009 WL 1635931 at *9. Under Rule 9(b), plaintiffs must plead with specificity the facts constituting the alleged fraud. Id. At a minimum, Rule 9(b) requires that plaintiffs plead facts such as "time, place, persons, statements, and explanations of why the statements are misleading." Ayala v. World Savings Bank, FSB, 616 F. Supp. 2d 1007, 1011 (C.D. Cal. 2009). In other words, the "who, what, when, where, and how" of the fraud must be alleged. Cooper v. Pickett, 137 F. 3d 616, 627 (9th Cir. 1997).

Here, plaintiffs fail to plead their fraud claims with the requisite level of specificity, and accordingly, their claims should be dismissed. See Kinkade v. Trojan Express, LLC, No. 08-1362, 2009 WL 799390 (C.D. Cal. March 23, 2009) (dismissing fraud claim for failure to satisfy Rule 9(b)'s pleading requirement). The pleadings here continue to be rife with vague and unspecified allegations that Toyota failed to disclose the fact that the subject vehicle contained an unidentified defect. Such "conclusory allegations do not come close to satisfying the pleading requirements of Rule 9(b)." See Stearns, 2009 WL 1635931, at *9.

Notably, plaintiffs fail to identify a single instance where Toyota directed a single material representation toward a single plaintiff, much less a material representation made with knowledge of its falsity. The amended complaints continue to fall far short of setting forth the "who, what, when, where, and how" required to state a fraud claim. Instead,

21

1    plaintiffs' claims are premised solely upon the vague and unsupported allegations that

2    Toyota concealed some unspecified material facts from some unspecified persons at some

3    unspecified time, at some unspecified place, through some unspecified medium.  This is

4    not enough.

5

6    IV.    CONCLUSION

7        For these and the foregoing reasons, the Toyota Defendants respectfully request

8    that the Court grant this Motion to Dismiss and dismiss plaintiffs' claims.

9    Dated:  October 12, 2010            Respectfully submitted,

10

11                                By:  ___/s/ Vincent Galvin_____
                                  VINCENT GALVIN (CA SBN 104448)
12                                E-mail:  vgalvin@bowman-brooke.com
                                  BOWMAN AND BROOKE LLP
13                                1741 Technology Drive, Suite 200
                                  San Jose, CA   95110
14                                Telephone:  (408) 279-5393
                                  Facsimile:  (408) 279-5845
15

16                                JOEL SMITH (SC SBN 5266)
                                  E-mail:  jsmith@bowman-brooke.com
17                                BOWMAN AND BROOKE LLP
                                  1441 Main Street, Suite 1000
18                                Columbia, SC 29201
                                  Telephone:  (803) 726-0020
19                                Facsimile:  (803) 726-0021

20

21                                Lead Defense Counsel for Personal
                                  Injury/Wrongful Death Cases
22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF TOYOTA DEFENDANTS TO DISMISS CERTAIN CLAIMS FOR FAILURE TO STATE A
CLAIM