1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    CENTRAL DISTRICT OF CALIFORNIA

8

9                                              Case No. 8:10ML 02151 JVS (FMOx)

10    IN RE: Toyota Motor Corp.
      Unintended Acceleration Marketing,
11    Sales Practices, and Products Liability    ORDER GRANTING IN PART AND
      Litigation                                 DENYING IN PART TOYOTA'S
12                                               MOTIONS TO DISMISS

13    This document relates to:

14    All personal liability/wrong death
      cases.
15

16

17

18

19

20

21

22

23

24

25

1

Table of Contents

2

3

I.    Factual Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.     Roberts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4

     B.     Scott . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5

     C.     Akamike . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6

     D.     Riegel Breit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7

II.    Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8

III.    Plaintiffs' Products Liability and Negligence Claims . . . . . . . . . . . . . . . . . . 5
     A.     Products Liability Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9

10

          1.     Design Defects . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11

          2.     Warning Defect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12

          3.     Manufacturing Defects . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

13

     B.     Negligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

14

     C.     Conclusion for Products Liability and Negligence Claims . . . . . . . 16

15

IV.    Breach of Express and Implied Warranties . . . . . . . . . . . . . . . . . . . . . . . . . 16

16

V.    Breach of the Covenant of Good Faith and Fair Dealing . . . . . . . . . . . . . . 19

17

VI.    Fraudulent Concealment, Intentional & Negligent Misrepresentation, and
     Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18

     A.     Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

19

          1.     Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

20

          2.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

21

     B.     Fraudulent Concealment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

22

          1.     Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

23

          2.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

24

               a.     Exclusive Knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . 22

25

1

          b.     Concealment of Material Facts . . . . . . . . . . . . . . . . . . . 25

2

          c.     Partial Representations . . . . . . . . . . . . . . . . . . . . . . . . . 27

3

          d.     Trust and Confidence . . . . . . . . . . . . . . . . . . . . . . . . . 29

4

          e.     Matters of Public Safety . . . . . . . . . . . . . . . . . . . . . . . . 30

5

   C.    Misrepresentation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

6

7

VII.  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

This multi-district litigation arises out of Plaintiffs' purchase of vehicles designed, manufactured, distributed, marketed and sold by Defendants Toyota Motor Corporation dba Toyota Motor North America, Inc. ("TMC"), and its subsidiary, Toyota Motor Sales, U.S.A., Inc. ("TMS") (collectively, "Toyota" or "Defendants").  Presently before the Court are Toyota's Motions to Dismiss claims asserted by Plaintiffs claiming personal injury and/or wrongful death as a result of events of sudden, unintended acceleration ("SUA") of Toyota vehicles.

This ruling applies to all of Toyota's Motions to Dismiss (specifically, to Docket Nos. 335, 377, 409, 489, 495), unless otherwise noted.  It also applies to the Motion to Dismiss filed by Defendant The Hertz Corporation (Docket No. 372), which incorporates Toyota's Motion to Dismiss (Docket No. 335) as to the negligence claim.  Because the substance of all of the listed motions is the same, for efficiency, the Court cites only to Defendants' Memorandum of Points and Authorities (Docket No. 335) ("Defs.' Mem.").  Similarly, to the extent the substance of all exemplar complaints cited by Toyota is the same, the Court cites only to the Roberts complaint in the discussion sections that follow.

I.    Factual Allegations

In support of its Motions to Dismiss certain personal injury/wrongful death complaints, Toyota cites to four exemplar complaints.[1]  The complaints

---

[1]  The Court initially contemplated Toyota filing only two motions per issue, with the ruling on those cases to provide guidance on all other cases raising the same issue.  (Docket No. 193 at 8.)  However, Toyota has filed three main Motions

1

collectively raise the following claims under California law: (1) negligence, (2) products liability, (3) breach of express and implied warranties, and (4) fraudulent concealment.  The individual factual allegations contained therein are summarized below.  As it must pursuant to the relevant legal standard, for the purposes of Toyota's Motions to Dismiss, the Court accepts as true all well-pled factual allegations set forth in the complaints.

A.   Roberts

Plaintiff Omar Roberts ("Roberts") is a resident of Brooklyn, New York. (¶ 24.)[2]  Roberts was the owner of a 2009 Toyota Camry.  (¶ 26.)  On October 7, 2008, Roberts was driving his Toyota Camry at a safe rate of speed when the vehicle "suddenly accelerated at a high rate of speed and he was unable to stop the vehicle by braking."  (¶ 27.)  Roberts' car struck the car in front of him, and as a result of the collision, Roberts suffered numerous traumatic injuries, including

_____

to Dismiss that cite to four underlying complaints: Roberts FAC, Scott, Akamike FAC, and Reigel Breit  (Docket No. 335, applicable to all personal injury/wrongful death cases; Docket No. 377, applicable to one case; and Docket No. 409, applicable to six cases.)  In addition, Toyota has filed additional follow-on motions adopting its earlier briefing.  (Docket Nos. 489, 495; see also Docket No. 499 (Amended Notice of Motion with updated chart identifying actions that have been voluntarily dismissed, complaints that have been amended, new actions that have been filed or transferred into the MDL, and actions that are expected to be transferred no later than the date of the hearing on the Motions to Dismiss).)  While this structure of motions covering various overlapping complaints is not what the Court envisioned, the Court has nonetheless considered all complaints cited by Toyota and rules on all of the outstanding motions.

[2]  Here and elsewhere, citations to a complaint are citations to the operative complaint filed by the Plaintiff being discussed.

broken legs and torn tendons.  (¶¶ 27-28.)  Residual effects of the accident continue to impact Roberts' daily life, including his mobility.  (¶ 28.)  At all relevant times, Roberts was unaware of his vehicle's hidden defects.  (¶ 26.)

B.   <u>Scott</u>

Plaintiffs Saundra Hill Scott ("Mrs. Scott") and Raleigh Scott ("Mr. Scott"), husband and wife, reside in Lee County, Florida.  (¶ 12.)  On April 12, 2010, while Mrs. Scott was driving her 2004 Toyota Prius in Miami Gardens, Florida, the Prius suddenly and unexpectedly accelerated.  (¶¶ 19-20.)  Mrs. Scott attempted to control the sudden acceleration by stepping on the brake pedal.  (¶ 20.)  However, the vehicle would not stop and instead accelerated through four lanes of traffic, and collided with a fence and a tree.  (<u>Id.</u>)  The Florida Traffic Crash Report associated with the incident read, "Driver 1 stated the accelerator of the vehicle got stuck and she could not control the vehicle."  (<u>Id.</u>)  The crash resulted in injury and damage to Mrs. Scott.  (¶ 21.)  Toyota never provided a warning to Mrs. Scott regarding the dangerous propensities of her vehicle.  (<u>Id.</u>)

C.   <u>Akamike</u>

Plaintiff Romanus Akamike ("Akamike") is a resident of Texas.  (¶ 1.)  Akamike purchased a 2007 Toyota Camry, alleging that at the time of purchase, he thought "he was investing in a safe and reliable vehicle" and that he was "unaware of the vehicle's concealed and potentially lethal defects of which Toyota was or should have been aware."  (¶ 16.)  On December 15, 2009, Akamike was driving

his Toyota Camry when his car "suddenly accelerated, causing the car to flip
several times before coming to a stop." (¶ 17.)  Akamike suffered general bruising
over his entire body, left shoulder pain, and a large subdural hematoma.  (¶ 19.)
The day after the accident, Akamike "was found unresponsive" and transported by
ambulance to a nearby medical center, where he was diagnosed as having a head
injury.  He was taken by helicopter to a different facility, where he had brain
surgery and was discharged on December 19, 2009.  (Id.)  Since the accident,
Akamike alleges that he has undergone brain surgery and physical therapy as a
result of his injuries.  (Id.)

        D.    Riegel Breit


        Plaintiff Suzanne Riegel Breit ("Riegel Breit") is a resident of Virginia and
is the administrator for the estate of Decedent Wava Joy Riegel ("Riegel").  On
September 24, 2009, Riegel was driving her 2010 Toyota Camry in an intended
and foreseeable manner when it suddenly and unexpectedly accelerated.  (¶ 19.)
The vehicle collided with a tree, resulting in fatal injuries to Riegel.  (¶ 20.)  Riegel
Breit alleges that at no time prior to September 24, 2009 was Riegel warned of the
dangerous propensities within Riegel's Camry.  (¶ 21.)


II.    Legal Standard


        To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff
must state "enough facts to state a claim to relief that is plausible on its face."  Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Court recently discussed

1  this standard and the applicable case law in its Order Granting in Part and Denying

2  in Part Toyota's Motion to Dismiss and Motion to Strike the Economic Loss

3  Plaintiffs' Master Consolidated Complaint (Docket No. 510 at 32) ("Economic

4  Loss Order").  The Court adopts that discussion here.

5

6

7  III.  Plaintiffs' Products Liability and Negligence Claims

8

9      Toyota argues that Plaintiffs' products liability and negligence claims are

10  deficient under Twombly and Iqbal because they fail to offer specific allegations of

11  an actual defect in Toyota's electronic throttle control system ("ETCS" or "ETCS-

12  i").  (Defs.' Mem. at 7.)  According to Toyota, Plaintiffs do not identify or describe

13  any alleged defect in the  ETCS-i, or sufficiently allege that the ETCS-i defect was

14  a substantial factor in causing any of the accidents that led to Plaintiffs' injuries.

15  (Defs.' Mem. at 8.)  Instead, Plaintiffs rely on conclusory allegations regarding

16  past incidents of SUA events compiled from media reports, NHTSA databases, and

17  third party complaints.  (Defs.' Mem. at 7.)  In Toyota's view, because products

18  liability and negligence claims must be plausible, Plaintiffs' failure to identify

19  "what specific defect, if any, is causing the alleged [SUA] events" renders their

20  allegations insufficient.  (Defs.' Mem. at 11.)  Thus, Toyota reasons, Plaintiffs'

21  products liability and negligence claims should be dismissed because Plaintiffs

22  have "concluded, not shown, that the subject accidents were caused by a specific

23  defect in the  ETCS-i."  (Defs.' Mem. at 14.)  Toyota concludes, therefore, that

24  "[i]f the holdings of Iqbal and Twombly have any purpose, it is that the Toyota

25  Defendants do not have to guess or speculate as to Plaintiffs' allegation of the

5

1   cause of the alleged acceleration events."  (Defs.' Reply at 2.)

2

3           Plaintiffs respond that they properly allege that their Toyota vehicles are

4   defective because they suddenly accelerate on their own and lack a brake override

5   system to prevent, mitigate, or stop an SUA event.  (Pltfs.' Opp'n at 5.)  Plaintiffs

6   allege that their vehicles failed to perform as safely as an ordinary consumer would

7   expect when used in an intended or reasonably foreseeable manner, and Plaintiffs

8   argue that they are not required to plead, let alone prove at trial, a more specific

9   "defect" to prevail under California design defect law.  (Pltfs.' Opp'n at 5-6.)

10  Moreover, under Twombly and Iqbal, Plaintiffs contend that their claims suffice

11  because "'the very nature of a products liability action' makes it difficult 'to know

12  with specificity before discovery what was the likely source of the defect,' or 'to

13  pinpoint a specific source of a defect.'"  (Pltfs.' Opp'n at 8 (quoting Bailey v.

14  Janssen Pharmaceutica, Inc., No. 07-12258, 2008 WL 2898214, at *6 (11th Cir.

15  July 29, 2008)).)  Thus, Plaintiffs argue that by "detailing the product's problem,"

16  the consequences of that problem," alleging that Plaintiffs "used the product," and

17  the "consequences that occurred[,]" their allegations "are more than sufficient"

18  under Iqbal to "nudge claims across the line from conceivable to plausible."

19  (Pltfs.' Opp'n at 8 (internal quotation marks and citation omitted).)  Plaintiffs

20  describe in detail the SUA problem with Toyota vehicles, the alleged causes of

21  SUA, Plaintiffs' use of the products in an ordinary and reasonably foreseeable

22  manner, and the adverse consequences of that use.  (Pltfs.' Opp'n at 11.)  For these

23  reasons, Plaintiffs argue that Toyota's motion should be denied.

24

25

A.    Products Liability Claims

"A manufacturer may be held strictly liable for placing a defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product."  Saller v. Crown Cork & Seal Co., Inc., 187 Cal. App. 4th 1220, 1231 (2010).  California recognizes strict liability for three types of products liability claims:  design defects, manufacturing defects, and warning defects.  Id.

Here, each exemplar complaint asserts products liability claims for design and warning defects.  It appears that the Scott and Riegel Breit complaints also assert claims for manufacturing defects.  The Court addresses the sufficiency of the pleadings under each theory of liability.

1.    Design Defects

"Defective design may be established under two theories:  (1) the consumer expectations test, which asks whether the product performed as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner; or (2) the risk/benefit test, which asks whether the benefits of the challenged design outweigh the risk of danger inherent in the design."  Id. at 1231-32.  The  consumer expectations test is used when "'the product is one within the common experience of ordinary consumers.'"  Id. at 1232 (quoting Campbell v. Gen. Motors Corp., 32 Cal. 3d 112, 127 (1982)).  If the facts do not "permit an inference that the product's performance did not meet minimum safety expectations of its ordinary users," the design defect must be analyzed under the

7

1  risk-benefit test. Id. at 1233.

2

3      To meet the strictures of Twombly and Iqbal, Plaintiffs should identify

4  which design defect theory is being utilized and allege facts to support that theory.

5  Lucas v. City of Visalia, __ F. Supp. 2d. __, No. 1:09-CV-1015 AWI DLB, 2010

6  WL 2867287, at *4 (E.D. Cal. July 21, 2010).  For example, under the "consumer

7  expectations test," plaintiff "'should *describe how* the [product] failed to meet the

8  minimum safety expectations of an ordinary consumer'" of that product.  Id.

9  (quoting Altman v. HO Sports Co., No. 1:09-cv-1000 AWI SMS, 2009 WL

10 4163512, at *8 (E.D. Cal. Nov. 19, 2009)) (italics in original).  Similarly, under the

11 "risk-benefit test," a plaintiff "should allege that the risks of the design outweigh

12 the benefits, and then "explain how the particular design of the [product] caused

13 [plaintiff] harm."[3]  Id. (quoting Altman,  2009 WL 4163512, at *8).  A bare

14 allegation that the product "suffered from a 'design defect' is an insufficient legal

15 conclusion" under Twombly and Iqbal.  Id.

16

17      Here, the Court finds that the exemplar complaints allege sufficient facts

18 under both the consumer expectations and risk-benefit tests.  For example, the

19 Roberts complaint alleges that Plaintiff was "driving at a safe rate of speed" when

20 the "vehicle suddenly accelerated at a high rate of speed."  (¶ 27.)  Plaintiff was

21 "unable to stop the vehicle by braking" and consequently "struck the car ahead of

22

23      [3] But see Altman,  2009 WL 4163512 at *8 (holding that an allegation that
24 the risks outweigh the benefits is unnecessary because defendant bears the ultimate
   burden of proof, but requiring plaintiff to allege that the design "was a substantial
25 factor in causing his injuries.").

him," (¶ 27), resulting in numerous injuries including "broken legs and torn tendons." (¶ 28.)  Plaintiff further alleges that Toyota vehicles with "the electronic throttle control system . . . contain design defects that cause sudden and uncontrolled acceleration to speeds of up to 100 miles per hour or more," (¶ 6), and that these vehicles are defective because they experience SUA events and "lack a mechanism, such as a brake override system, to prevent, mitigate, or stop [an SUA] event.[4]  (¶ 7.)  Plaintiff identifies three design defects that cause or contribute to SUA events, including:  (1) an inadequate fault detection system (¶ 9), (2) an ETCS system that is "highly susceptible to malfunction caused by various electronic failures, including . . . short circuits, software glitches, and electromagnetic interference from outside sources," (¶ 10), and (3) the absence of a brake override system.  (¶ 11.)  According to Plaintiff, "[t]hese defects alone, or in combination, render certain Toyota vehicles unreasonably dangerous and unable to perform as an ordinary consumer would expect."  (¶ 12.)  By 2007, Toyota was aware that a brake override system could prevent the SUA defect and "could have easily implemented a brake override system," (¶¶ 13-14), but instead "hid the problem and proposed inadequate and misleading solutions" that led to "numerous fatalities and injuries, including those suffered by Plaintiff."  (¶ 20.)  Based on the foregoing, Plaintiff brings claims for design defects under the consumer expectations test (¶ 158) and risk-benefit test (¶ 159).

---

[4]  Plaintiff alleges that "[a]ll Toyota vehicles" with the ETCS-i system "beginning in Model Year 2002" contain the SUA defect, and that Plaintiff's vehicle was a 2009 Toyota Camry.  (¶¶ 1, 6.)  Thus, Plaintiff's vehicle was among the allegedly defective vehicles subject to SUA events.

1    The Court has no trouble discerning sufficient facts in the <u>Roberts</u> complaint

2  that support a design-defect claim under the consumer expectations test and the

3  risk-benefit test.  Under the consumer expectations test, Toyota vehicles do not

4  meet consumer expectations because they suddenly and unexpectedly accelerate

5  and cannot be stopped upon proper application of the brake pedal, which happened

6  to Plaintiff Roberts and caused his crash and injuries.  Similarly, under the risk-

7  benefit test, the ETCS-i system is defective because it causes SUA events owing to

8  an inadequate fault detection system, electronic failures, and the absence of a brake

9  override system, and the risks of SUA are not outweighed by any purported

10  benefits.

11

12    Toyota argues that Plaintiffs "fail to identify a defective cause of the alleged

13  acceleration incidents" and, as an issue of "fair notice," Plaintiffs must state "what

14  is allegedly wrong with the vehicles other than conjecture that a brake override

15  system could prevent an occurrence."  (Defs.' Reply at 2.)  Toyota demands a level

16  of specificity that is not required at the pleadings stage.  The defect is identified:

17  Plaintiffs' cars suddenly and unexpectedly accelerate and do not stop upon proper

18  application of the brake pedal.  Causes of the defect are identified:  an inadequate

19  fault detection system and electronic failures.  An alternative design (that allegedly

20  would have prevented the defect from injuring Plaintiffs) is identified:  a brake

21  override system.  These allegations do more than merely recite the elements

22  required for design defect claims under California law, and plausibly give rise to an

23  entitlement to relief.

24

25    Accordingly, Toyota's motion is denied as it pertains to Plaintiffs'

1    allegations of design defects.[5]

2

3              2.    Warning Defect

4

5         Under a "warning defect" theory, "a product may be defective even though it

6    is manufactured or designed flawlessly."  Saller, 187 Cal. App. 4th at 1238.

7    Liability under this theory "requires that the manufacturer knows, or should have

8    known, of the danger of the product at the time it is sold or distributed," and that

9    "the plaintiff prove that defendant 'did not adequately warn of a particular risk that

10   was known or knowable in light of the generally recognized and prevailing best

11   scientific and medical knowledge available at the time of the manufacture and

12   distribution.'"  Id. (quoting Anderson v. Owens-Corning Fiberglass Corp., 53 Cal.

13   3d 987, 1002-03 (1991)).

14

15        Here, the Court finds that the exemplar complaints allege sufficient facts to

16   establish a claim for a "warning defect."  For example, the Roberts complaint

17   alleges the danger of SUA, (¶ 6), and that "Toyota was aware of the defective

18   nature of the acceleration control and throttle system in its vehicles since at least

19   2002, but failed to adequately and accurately disclose these facts to Plaintiff, the

20   public, and NHTSA."  (¶ 105.)  Paragraphs 49 through 78 contain allegations about

21   Toyota's knowledge of the alleged defects, including numerous consumer

22   complaints and investigations by NHTSA.  Paragraphs 105 through 125 contain

23   allegations that Toyota concealed the danger of these defects from the public,

24

25        [5]  Because the allegations in the other exemplar complaints are similar with
     respect to design defects, the Court does not analyze them individually.

including hiding reports of SUA and denying that SUA existed.  Paragraphs 126 through 129 contain allegations that Toyota tried to cover up the alleged ETCS-i defects by focusing on mechanical problems with the floor mats and sticky pedals. Plaintiff also alleges that he did not know of the dangers of SUA.  (¶ 26, 168.)

Taken together, these allegations are sufficient to support a claim under a warning defect theory of liability:  the particular risk allegedly known by Toyota was SUA, and that risk was not disclosed to Plaintiff.   To the extent that Toyota argues more specificity is required, the Court disagrees.

Accordingly, Toyota's motion is denied as it pertains to Plaintiffs' allegations of warning defects.[6]

3.   Manufacturing Defects

Under a "manufacturing defect" theory, "'a defective product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line.'"  Lucas, 2010 WL 2867287, at *3 (quoting Barker v. Lull Eng'g Co., 20 Cal. 3d 413, 429 (1978)).  The "manufacturing defect" theory posits that "a suitable design is in place, but that the manufacturing process has in some way deviated from that design." In re Coordinated Latex Glove Litig., 99 Cal. App. 4th 594, 613 (2002).  To satisfy Twombly and Iqbal, plaintiffs should "*identify/explain how* the [product] either deviated from [defendant's] intended

_____

[6]  Because the allegations in the other exemplar complaints are similar with respect to warning defects, the Court does not analyze them individually.

1   result/design or *how* the [product] deviated from other seemingly identical

2   [product] models." Id. at *4 (italics in original) (citing Barker, 20 Cal. 3d at 429).

3   "A bare allegation that the [product] had 'a manufacturing defect' is an insufficient

4   legal conclusion." Id.

5

6        Here, the Court finds that the Scott and Riegel Breit complaints do not

7   adequately assert claims for manufacturing defects under Twombly and Iqbal.  For

8   example, the Scott complaint alleges that the "ETCS systems and their various

9   components were defectively designed *and manufactured* in that they were highly

10  susceptible to malfunction caused by various electronic failures, including but not

11  limited to short circuits and electromagnetic interference from electromagnetic

12  sources outside the vehicle." (¶ 2 (italics added).)  Plaintiff further alleges that

13  "the Subject Prius, which was being used in a reasonably foreseeable manner,

14  failed to perform as an ordinary consumer would have expected, *failed to conform*

15  *with its manufacturing specifications*, failed to contain adequate warnings, and its

16  design was a substantial factor in causing injuries." (¶ 130 (italics added).)   Taken

17  together, these two allegations seemingly allege a manufacturing defect.  However,

18  the Scott complaint does not offer any allegations of how the vehicle deviated from

19  Toyota's intended design or other product models. See Lucas, 2010 WL 2867287

20  at *4.  Instead, the Scott complaint offers bare allegations of a manufacturing

21  defect, and thus dismissal is warranted.

22

23        Accordingly, Toyota's motion is granted as it pertains to Scott and Reigel

24

25

1    Breit's allegations of manufacturing defects.[7]   The dismissal is without prejudice.[8]

2

3

4                                            * * *

5

6         With respect to Plaintiffs' design and warning defect claims, Toyota cannot

7    credibly claim that it does not comprehend Plaintiffs' theory from the pleadings,

8    nor that it is handicapped in responding to the Complaint.

9

10

11        B.    Negligence

12

13        A negligence claim under California law requires plaintiff to allege that

14   defendant "owed [plaintiff] a legal duty, breached the duty, and that the breach was

15   a proximate or legal cause of [plaintiff's] injury."  Gonzalez v. Autoliv ASP, Inc.,

16   _____

17        [7]  As noted previously, the Roberts and Akamike complaints do not allege
18   manufacturing defect claims.  Because the allegations in the Riegel Breit complaint
     are virtually identical to those in Scott, the Court does not analyze them
19   individually.  The Court also recognizes that Toyota's Motion to Dismiss is cast in
     slightly different terms than those granted by the Court.  However, because
20   Twombly and Iqbal are at the forefront of Toyota's motion, and the manufacturing
21   defect claims in the Scott and Riegel Breit complaints clearly fail to meet Twombly
     and Iqbal, the Court grants Toyota's motion.
22
          [8]  Leave to amend should be granted when amendment would not be futile.
23   Lucas, 2010 WL 2867287 at *2 (citing Gompper v. VISX, Inc., 298 F.3d 893, 898
24   (9th Cir. 2002)).  Because it is conceivable that Plaintiffs could allege facts
     sufficient to support a claim under a manufacturing defects theory of liability, the
25   Court grants leave to amend.

                                          14

154 Cal. App. 4th 780, 793 (2007). "In the context of a products liability lawsuit, '[u]nder a negligence theory, a plaintiff must also prove . . . "that the defect in the product was due to negligence of the defendant."'" Id. (quoting Merrill v. Navegar, Inc., 26 Cal. 4th 465, 479 (2001)).

Here, Toyota does not specifically challenge any particular element required for a negligence claim. Instead, Toyota broadly attacks the exemplar complaints on the same grounds that it challenged Plaintiffs' products liability claims, namely: Plaintiffs "fail to identify a defective cause of the alleged acceleration incidents," and as an issue of "fair notice" Plaintiffs must state "what is allegedly wrong with the vehicles other than conjecture that a brake override system could prevent an occurrence." (Defs.' Reply at 2.) The Court rejects Toyota's arguments for the reasons previously stated: Plaintiffs identify the alleged defect (i.e., Plaintiffs' cars suddenly and unexpectedly accelerate and do not stop upon proper application of the brake pedal), identify causes of the defect (e.g., an inadequate fault detection system and electronic failures), identify an alternative design that would have prevented the defect from injuring Plaintiffs (i.e., a brake override system), allege that the SUA risk was known by Toyota, and allege that Toyota did not disclose or eliminate the risk to Plaintiffs that culminated in Plaintiffs' injuries.[9]

---

[9] See Merril, 26 Cal. 4th at 480 (stating that "most of the evidentiary matters relevant to applying the risk/benefit test in strict liability cases are similar to the issues typically presented in a negligent design case," which is "not surprising, because to say that a product was negligently designed is to say it was defective, for purposes of establishing liability under a theory of negligence.") (internal quotation marks and citations omitted).

Accordingly, Toyota's motion is denied as it pertains to Plaintiffs' negligence claims.  Because the Court denies Toyota's motion, the Court similarly denies defendant The Hertz Corporation's motion to dismiss Count III of the Izenstark complaint for negligence.[10]  (Docket No. 372.)

C.      Conclusion for Products Liability and Negligence Claims

Accordingly, for the foregoing reasons, the Court grants Toyota's Motion to Dismiss the manufacturing defect claims in the Scott and Riegel Breit complaints, but otherwise holds that Plaintiffs have adequately alleged their products liability and negligence claims.  The Plaintiffs in Scott and Riegel Breit are granted leave to amend.

IV.     Breach of Express and Implied Warranties

The Court's previous rulings regarding the express and implied warranty claims, set forth in the Court's Economic Loss Order, are generally applicable to these same claims asserted by Plaintiffs in the personal injury/wrongful death cases.

---

[10]  The Hertz Corporation's ("Hertz") motion (Docket No. 372) expressly joined "Section III (A) and Section III (B)" of Toyota's motion, (Hertz Mem. at 5), and thereby limited itself to the issues raised by Toyota's motion:  "The reasons for the dismissal of the Izenstark complaint by the Toyota defendants are the same reasons Hertz moves to dismiss the Izenstark complaint."  (Hertz Mem. at 6.) Because Hertz does not offer additional grounds for dismissal in its moving papers, Hertz's motion is denied.

In the Economic Loss Order, the Court dismissed with prejudice the express written warranty claims to the extent those claims were premised on defects in design rather than on defects in materials and workmanship. (Economic Loss Order at 57-59.) The remaining express written warranty claims, i.e., those premised on defects in materials and workmanship, are subject to the added requirement that a Plaintiff plead that he or she sought repairs, including in response to the recalls, during the relevant warranty period. (Id. at 52-55.) The claims of those Plaintiffs who cannot allege that they sought repairs during the relevant warranty period are dismissed with prejudice. (Id.)

Examining the four exemplar complaints, *supra* n.1, two do not assert express warranty claims. (See generally Akamike FAC, Roberts FAC.) The two remaining exemplar complaints make only conclusory allegations regarding non-design defects that are insufficient to state an express warranty claim, and make no allegations regarding whether they sought repair during the relevant warranty period. (See Scott ¶ 130 (vehicle "failed to conform with its manufacturing specifications"); Riegel Breit ¶ 1 (referring to "electronic defects"), ¶ 127 (alleging that the vehicle was "defectively . . . manufactured"); cf. Roberts FAC ¶¶ 8-11 (making detailed factual allegations regarding "at least three design defects,"[11] including "inadequate fault detections systems," "components [that] are highly susceptible to malfunctions . . . such as short circuits, software glitches, and

---

[11] Of course, the allegations regarding the design defects do not state a claim for breach of express warranty. The Court's reference to these factual allegations is merely illustrative of the type of factual allegations necessary to sufficiently plead a claim for breach of express warranty based on defects in material or workmanship.

electromagnetic interference," and the "lack of a brake override system"); <u>Akamike</u> FAC ¶¶ 8-11 (same).)

The express warranty claims set forth in the exemplar complaints are therefore dismissed without prejudice.

In the Economic Loss Order, as to the implied warranty claim,[12] the Court rejected a "dangerous instrumentality" argument substantially identical to that raised by Plaintiffs in response to the present Motions, which the Court rejects here as well.  (<u>Id.</u> at 69-70.)  Nevertheless, the Court denied the Motion to Dismiss Plaintiffs' implied warranty claims, notwithstanding the lack of vertical privity, because Plaintiffs have sufficiently pled their third party beneficiary status. (<u>Id.</u> at 66-68.)

Here, none of the exemplar complaints set forth any factual allegations regarding the Plaintiffs' third party beneficiary status.  As such, the implied warranty claims are dismissed without prejudice.[13]

---

[12]  As they did in response to their Opposition to the Economic Loss Motion to Dismiss, in their Opposition to the present Motions to Dismiss, Plaintiffs indicate the intent to abandon the claim for breach of the implied warranty of fitness for a particular purpose.  (<u>See</u> Pltfs.' Opp'n at 3 n.2.)

[13]  In opposition to the present Motions to Dismiss, Plaintiffs do not argue that third-party beneficiary status saves their implied warranty claims notwithstanding the lack of vertical privity.  Nevertheless, the Court assumes Plaintiffs would request the opportunity to replead this issue, which appears to the Court, as pled in the MCC, to be equally applicable to Plaintiffs here.

V.   <u>Breach of the Covenant of Good Faith and Fair Dealing</u>

Although at the time of the briefing of the Motions to Dismiss, the parties addressed the viability of a claim for breach of the covenant of good faith and fair dealing ("bad faith claim") under the present facts, upon a review of the current versions of the exemplar complaints to which Defendants' Motions to Dismiss refer, the Court finds no bad faith claim asserted.  (<u>Compare, e.g.</u>, Compl. ¶¶ 92-98, <u>Ross, et al. v. Toyota Motor Corp., et al.</u>, 10-5700 (Docket No. 1) (setting forth bad faith claim) <u>with</u> Ross FAC (Docket No. 10) (no bad faith claim asserted).)

Thus, the Court does not analyze the viability of a bad faith claim at this time.

VI.   <u>Fraudulent Concealment, Intentional & Negligent Misrepresentation, and</u>
<u>Rule 9(b)</u>

A.   <u>Rule 9(b)</u>

1.   <u>Legal Standard</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), allegations of fraud "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Court recently summarized the case law applicable to Rule 9(b)'s particularity requirement in its Economic Loss Order. (Docket No. 510 at 34-36, 77-78.)  The Court adopts that discussion here.

2.    Analysis

Toyota argues that Plaintiffs fail to identify "a single instance where Toyota directed a single material misrepresentation toward a single plaintiff, much less a material misrepresentation made with knowledge of its falsity." (Defs.' Mem. at 28.)  However, Plaintiffs' fraud theory is based on fraudulent concealment, not active misrepresentation.[14]  None of the exemplar complaints contain claims for misrepresentation or negligent misrepresentation.[15]

The Court finds that Plaintiffs have sufficiently pled fraud under Rule 9(b) to survive a motion to dismiss.  In the exemplar complaints, Plaintiffs plead that Toyota concealed from Plaintiffs material facts regarding the SUA defect (e.g., Roberts, ¶¶ 6-10, 75(b), 109-14, 125), going as far back as 2002 (e.g., Roberts, ¶ 50), for the purposes of avoiding escalating recall and public relations costs (e.g., Roberts, ¶¶ 100, 133, 135-36).  Rather than disclosing the SUA defect to consumers, Toyota often blamed consumers for SUA-related problems.  (Roberts, ¶¶ 70, 139.)  These factual allegations state the "who, what, when, where, and

---

[14]  While not necessarily required to allege fraudulent *concealment* under Rule 9(b), Plaintiffs allege many instances where Toyota made partial representations and misrepresentations, giving rise to a duty to disclose, as explained below.

[15]  Plaintiffs no longer assert claims for intentional and negligent misrepresentation in certain amended complaints.  (See, e.g., Akamike FAC (Docket No. 8).)

how" of the fraudulent concealment.  Thus, Rule 9(b) is satisfied.[16]

      B.    Fraudulent Concealment

           1.    Legal Standard

The Court recently summarized the case law applicable to fraudulent concealment and the duty to disclose under California law in its Economic Loss Order.  (Docket No. 510 at 78-79, 81-86.)  The Court adopts that discussion here.

           2.    Analysis

Toyota argues that Plaintiffs cannot allege that Toyota had an independent duty to disclose facts regarding the alleged ETCS defect because Toyota did not have exclusive knowledge of material facts that were not known or knowable to Plaintiffs, Toyota did not conceal any material facts where no Plaintiff alleges having made an investigation or having sought information from Toyota, and Toyota's opinions regarding the quality of its products are not actionable as representations of fact.  (Defs.' Mem. at 21, 23, 24.)

Plaintiffs contend that Toyota had a duty to disclose the alleged defect because Toyota (a) occupied a superior position of knowledge regarding the

---

[16]  Because the allegations in the exemplar complaints are nearly identical with respect to pleading particularity under Rule 9(b), the Court does not analyze them individually.

1  condition of its vehicles; (b) made partial disclosures about the safety and quality

2  of the subject vehicles without revealing their defective nature; and (c) fraudulently

3  and affirmatively concealed the defective nature of the subject vehicles from

4  Plaintiffs.  (See, e.g., Roberts, ¶ 183.)  Plaintiffs also contend that Toyota shared a

5  relationship of "trust and confidence" with its consumers such that a duty to

6  disclose arises.  (Pltfs.' Opp'n at 14.)  Lastly, Plaintiffs argue that a duty to

7  disclose arises under California law regarding matters of public safety.  (Id. at 20.)

8

9                          a.      Exclusive Knowledge

10

11      Toyota contends that the exemplar complaints do not include sufficient facts

12  to support an exclusive knowledge claim.  (Defs.' Mem. at 22.)  Toyota also argues

13  that Plaintiffs' exclusive knowledge claim is belied by the fact that the disputed

14  facts were known and accessible to NHTSA, as well as part of the public record.

15  (Id. at 23.)

16

17      Plaintiffs argue that if the facts were known to NHTSA and the public,

18  Toyota would not have acquiesced to paying NHTSA a record $16.4 million fine

19  for belatedly disclosing defects.  (Pltfs.' Opp'n at 18.)

20

21      As an initial matter, the Court is mindful that remedial action such as

22  repairing sticky accelerator pedals (even if not disclosed to NHTSA within five

23  business days, resulting in a fine) does not support a permissible inference that

24  Toyota fraudulently concealed a defect.  See Tietsworth v. Sears, Roebuck & Co.,

25  No. 5:09-CV-00288 JF (HRL), 2009 WL 3320486, at *5 (Oct. 13, 2009 N.D. Cal.

2009).  Toyota's payment of a fine to NHTSA regarding sticky accelerator pedals is irrelevant to whether Toyota fraudulently concealed an underlying ETCS/SUA defect.

The Court finds that the exemplar complaints allege facts sufficient to demonstrate exclusive knowledge.  While some facts surrounding SUA events were known to NHTSA and/or the public early on (e.g., <u>Roberts</u>, ¶¶ 52, 58), and others came to light more recently (<u>e.g.</u>, <u>Roberts</u>, ¶¶ 73, 75(b), 81), Plaintiffs allege that Toyota had exclusive knowledge of the sheer magnitude and ongoing nature of the defect, as well as potential ways of identifying and correcting the defect.  <u>See, e.g.</u>, <u>Roberts</u>, ¶ 50 (internal recognition of SUA complaints, dating back to 2002; failure to uncover cause); ¶ 54 (internal Field Technical Report acknowledging that SUA was an "extremely serious problem for customers," expressing fear "of the frequency of this problem in near future"); ¶ 58 (knowledge of greater than 400% difference in SUA complaints in Camry models with ETCS not disclosed to consumers); ¶ 60 (receipt of a forensic report concluding presence of an ETCS defect); ¶ 90 (knowledge that recalls will not fix the problem and that software problems, faulty cruise control, and engine revs from using the air conditioning may be involved); ¶ 93 (no error codes shown, so SUA cannot be documented or replicated); ¶ 100 (convincing NHTSA to initially limit recall, saving Toyota over $100 million).

Taking Plaintiffs' allegations as true, Toyota had a duty to disclose the concealed facts because it had exclusive knowledge of those facts.  See <u>Falk v. Gen. Motors Corp.</u>, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (sufficient

1    allegations of exclusive knowledge where car manufacturer had exclusive access to

2    aggregate dealership data, pre-release testing data, and numerous consumer

3    complaints).

4

5         Toyota's reliance on Warner Constr. Corp. v. City of Los Angeles, 2 Cal. 3d

6    285, 294 (1970), does not diminish this duty to disclose.  The Warner court stated

7    that one circumstance in which non-disclosure is actionable is when "the facts are

8    known or accessible only to defendant, and defendant knows they are not known to

9    or reasonably discoverable by the plaintiff."  Id.

10

11        While prospective customers could have been tipped off to the possibility of

12   SUA by researching past complaints filed with NHTSA, many customers would

13   not have performed such a search, nor would they be expected to.  Moreover,

14   searching publicly available information through NHTSA and/or the public record

15   would have only revealed the tip of the iceberg, according to the factual allegations

16   in Plaintiffs' complaints.  Plaintiffs sufficiently allege facts that were known and

17   accessible only to Toyota that were not known or reasonably discoverable by

18   Plaintiffs.  See, e.g., Roberts, ¶ 54 (internal Field Technical Report acknowledging

19   that SUA was an "extremely serious problem for customers," expressing fear "of

20   the frequency of this problem in near future"),  ¶ 90 (internal knowledge that

21   recalls will not fix the problem and that software problems, faulty cruise control,

22   and engine revs from using the air conditioning may be involved), ¶ 106 (dealer

23   Technical Service Bulletins acknowledging SUA), ¶¶ 109-14, 128, 134 (internal

24   testing and knowledge of SUA), ¶ 122 (engineer with knowledge of SUA not

25   presented to NHTSA), ¶ 125 (internal knowledge that aggregate number of

complaints was approximately 37,900).

Thus, the Court finds that Plaintiffs have sufficiently alleged a duty to disclose based on exclusive knowledge.

b.      Concealment of Material Facts

Toyota argues that Plaintiffs cannot allege facts supporting the assertion that Toyota actively concealed information because Plaintiffs merely rely on conclusions regarding Toyota's interactions with NHTSA and others.  (Defs.' Mem. at 23.)

The Court disagrees.  Plaintiffs have alleged sufficient factual allegations to support a finding of active concealment at this stage based on alleged concealment of certain material facts.  See, e.g., Roberts, ¶ 14 (concealed knowledge that brake override could prevent SUA), ¶¶ 16, 18 (concealing fact that recall was a safety measure meant to address design defect, not just a "confidence" booster); ¶¶ 17, 19(c) (recalls do not address design defect); ¶ 50 (concealing discovery of SUA defect in 2002 and the fact that "no known remedy exists . . . at this time"); ¶ 53 (internal recognition of "unwanted acceleration" in a Sienna); ¶ 70 (dealer acknowledging SUA is "normal for this model," yet not acknowledged by Toyota overall); ¶ 75(b) (ignoring 1,200 SUA complaints over eight-year period); ¶¶ 84, 87 (recalls do not address all SUA; Toyota hiding electronic defects); ¶ 92 (erroneously asserting that the ETCS software could not be faulted); ¶ 106 (dealer Technical Service Bulletins acknowledging SUA); ¶¶ 109-14 (concealment of

internal testing and knowledge regarding SUA); ¶ 118 (concealment of relevant complaints from NHTSA); ¶ 121 (concealment of expert report regarding ETCS failure); ¶ 122 (concealing engineer who knew of electronic failures from NHTSA); ¶ 123 (removing reference to "vehicle speed control" problems); ¶ 125 (concealing actual number of complaints received reached 37,900); ¶ 128 (acknowledging it had a "less defensible product"); ¶ 130 (knowledge of SUA defect for at least three years); ¶ 134 (internal acknowledgment of SUA).  Toyota cannot credibly claim that these facts, if true, are not material.

The foregoing allegations are sufficient to demonstrate active concealment at the pleadings stage.  See Tietsworth v. Sears, Roebuck & Co., __ F. Supp. 2d __, No. 5:09-CV-00288 JF (HRL), 2010 WL 1268093, at *8 (Mar. 21, 2010 N.D. Cal. 2010) (active concealment sufficiently alleged where Plaintiffs contacted defendant for service of defective machines and were told there was no defect and/or denied free service or replacement parts).

While Toyota is correct that preventing a plaintiff from discovering an important fact is one way to demonstrate active concealment (Reply at 7, citing Judicial Council of California Civil Jury Instructions ("CACI") No. 1901), it is not the only way.  Active concealment standing alone is sufficient.  See CACI No. 1901 (one method of proving concealment is for a plaintiff to demonstrate that defendant "actively concealed an important fact from [plaintiff]").  Whether Plaintiffs first sought to discover important facts before they were actively concealed is not controlling here.  Plaintiffs plead fraudulent concealment, which by definition, means they could not be expected to seek facts which they had no

way of knowing existed.  See Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (fraudulent concealment allegations are not expected to point out the specific moment when defendant failed to act).

Thus, the Court finds that Plaintiffs have sufficiently alleged a duty to disclose based on concealment of material facts.

c.     Partial Representations

Toyota argues that Plaintiffs cannot demonstrate that it made partial representations because the statements on which Plaintiffs rely are not representations of actionable facts, but rather general, vague, and unspecific assertions that a reasonable consumer would find to be promotional statements.[17] (Defs.' Mem. at 25.)

Plaintiffs argue that many of their allegations concern misrepresentations of material facts, and where the speaker has special knowledge of the subject, even opinion statements may be construed as actionable factual misstatements.  (Pltfs.' Opp'n at 22 (citing  Furla v. Jon Douglas Co., 65 Cal. App. 4th 1069, 1080-81 (Cal. App. 1998)).)

----

[17]  Toyota makes similar arguments regarding allegedly false and/or misleading representations in their advertising materials with respect to claims falling under California Business and Professions Code §§ 17200 and 17500.  The Court does not address these arguments because none of the exemplar complaints, as amended, raise this type of claim.

1    The Court agrees that some of Toyota's alleged statements may fairly be

2    characterized as generalized opinions (e.g., Scott, ¶¶ 63, 121 ("high quality,

3    reliable, and dependable", "outstanding quality, dependability, and peace of

4    mind")).  See Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 973 (N.D. Cal.

5    2008); Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1140 (C.D. Cal.

6    2005).  These statements constitute "puffing" and are not analogous to the type of

7    opinion that may be construed as actionable under limited circumstances.  See 625

8    3rd St. Associates, L.P. v. Alliant Credit Union, 633 F. Supp. 2d 1040, 1051-52

9    (N.D. Cal. 2009) (construing CEO's opinion regarding the financial health and

10   prospects of his company, when made in the context of a significant corporate

11   transaction, as factual misstatements).

12

13   However, other statements cited by Plaintiffs have a factual basis and may

14   be proven true or false during discovery.  See, e.g., Roberts, ¶ 62 (stating to

15   NHTSA there was "no evidence of a system or component failure" and "vehicles

16   operated as designed"); ¶ 65 (representation that water damage caused SUA, no

17   abnormality in ETCS); ¶ 66 (telling NHTSA the floor mat issue "is not a safety

18   concern"); ¶ 75 (claiming vehicles were not defective and subsequently being

19   rebuked by NHTSA for being "inaccurate" and "misleading"); ¶ 118 (stating to

20   NHTSA that no defect trend had emerged and that ETCS could not fail in unknown

21   ways); ¶ 126 (omitting reference to SUA in customer Q&A document); ¶ 137

22   (falsely stating that "vehicle brakes would have restrained vehicle motion"); ¶ 138

23   (falsely stating that "there is no factor or trend indicating that a vehicle or

24   component defect exists"); ¶ 139 (telling customer "[i]t is virtually impossible for

25   this type of [SUA] incident to happen.").  The foregoing allegations demonstrate

Plaintiffs have sufficiently alleged actionable statements.  <u>Anunziato</u>, 402 F. Supp. 2d at 1139 ("While some of eMachines' representations constitute puffery, others do not. . . . [A]t least some actionable statements have been pled.").

Thus, the Court finds that Plaintiffs have sufficiently alleged a duty to disclose based on partial misrepresentations.

d.   <u>Trust and Confidence</u>

Plaintiffs recognize that they have not explicitly pleaded a "fiduciary" or "confidential" relationship.  (Pltfs.' Opp'n at 14.)  However, Plaintiffs argue nonetheless that they formed a relationship of "trust and confidence" with Toyota, giving rise to a duty to disclose.  (<u>Id.</u>)  Plaintiffs support this argument by citing purposeful concealment of vehicle defects and partial representations regarding safety.

Plaintiffs conflate a duty to disclose under "concealment of material facts" and "partial misrepresentations," as discussed above, with the type of relationship contemplated by <u>Ford v. Shearson Lehman Am. Express, Inc.</u>, 180 Cal. App. 3d 1011, 1020-22 (1986).  In <u>Shearson</u>, the trust and confidence arose out of a fiduciary relationship between a client and his security broker and investment adviser where the individual ceded control over his stockholdings, which were subsequently liquidated in a scheme by the fiduciaries.  This case is dissimilar because Plaintiffs allege no facts in support of finding a fiduciary or other confidential relationship based on Plaintiffs ceding control to Toyota, or a

29

1    particular vulnerability on Plaintiffs' part.

2

3    Thus, the Court finds that Plaintiffs have not stated a duty to disclose under

4    this factor.

5

6                        e.      Matters of Public Safety

7

8    Plaintiffs allege that the potential for SUA constitutes a safety hazard giving

9    rise to a duty to disclose.  (Pltfs.' Opp'n at 20.)  Toyota contends that alleging a

10   safety risk does not on its own give rise to a duty to disclose, it merely establishes

11   that the alleged nondisclosure relates to a material fact.  (Defs.' Mem. at 26.)

12

13   The Court finds that the risk of injury and/or death associated with the

14   alleged SUA defect is the type of "unreasonable risk" that leads to a duty to

15   disclose under California law.  Daugherty v. Am. Honda Motor Co., Inc., 144 Cal.

16   App. 4th 824, 836 (Cal. App. 2006).  See also Falk, 496 F. Supp. 2d at 1096 (citing

17   as further strength of plaintiffs' defect allegations "the [alleged] risk of inadvertent

18   speeding, driving at unsafe speeds, and accidents").

19

20   For the foregoing reasons, Toyota's motions to dismiss Plaintiffs' fraudulent

21   concealment claims are denied.

22

23

24

25

                                              30

1      C.    <u>Misrepresentation</u>

2

3        Toyota argues that, for the same reasons Plaintiffs cannot demonstrate

4 partial misrepresentations of fact, Plaintiffs fail to state intentional and negligent

5 misrepresentation claims.  (Defs.' Mem. at 25.)

6

7        Plaintiffs contend that Toyota's arguments are misplaced because none of

8 the exemplar complaints allege misrepresentation claims.  (Pltfs.' Opp'n at 20 &

9 n.7.)

10

11       The Court agrees with Plaintiffs.  Because none of the exemplar complaints

12 raise claims for misrepresentation and/or negligent misrepresentation, the Court

13 declines to address Toyota's arguments at this time.

14

15 VII.   <u>Conclusion</u>

16

17       As set forth herein, the Court grants in part and denies in part Toyota's

18 Motions to Dismiss.

19       Plaintiffs are granted 45 days leave to replead; defendants have 60 days

20 thereafter to respond.

21       **IT IS SO ORDERED.**

22

23 DATED:  December 9, 2010

24                         _____

25                        JAMES V. SELNA
                               UNITED STATES DISTRICT JUDGE