Mark P. Robinson, Jr., Bar No. 054426
mrobinson@rcrlaw.net
ROBINSON, CALCAGNIE &
  ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Elizabeth J. Cabraser, Bar No. 083151
ecabraser@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Plaintiffs' Co-Lead Counsel for
Personal Injury/Wrongful Death Cases*

Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL
  SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 268-9320
Facsimile: (206) 623-0594

Marc M. Seltzer, Bar No. 054534
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3102
Facsimile: (310) 789-3006

Frank M. Pitre, Bar No. 100077
fpitre@cpmlegal.com
COTCHETT, PITRE &
  MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Plaintiffs' Co-Lead Counsel for
Economic Loss Cases*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | Case No. 8:10ML2151 JVS (FMOx)<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' BRIEF RE PHASE II DISCOVERY** |

## I. DEFENDANTS' BRIEF WAS NOT ANTICIPATED BY PLAINTIFFS

Co-Lead Counsel for the Personal Injury/Wrongful Death ("PI/WD") and Economic Loss ("EL") Plaintiffs respectfully submit the following response to Defendants' Brief in Support of Joint Proposed Order on Phase II Discovery which was filed on Friday, December 17, 2010, at 8:42 p.m. (the "Toyota Brief"). Plaintiffs never intended to file this brief. During the hearing on December 9, 2010, the Court directed the parties to meet and confer regarding the Phase II discovery items that can be "accomplished within the next 120 days, propose a hearing date and schedule for submitting modified proposals for scheduling the balance of the dates." Decl. 9, 2010 Hrg. Trans., at 97:11-15. The Court directed the parties to submit a ***joint*** proposed order by Friday, December 17, 2010, limited to "[i]dentify[ing] what interim tasks are going to get accomplished in the next 120 days[,]" and "[i]dentify[ing] a date for deciding the balance of the discovery plan." Dec. 9, Hrg. Trans., at 97:11-21. To that end, Plaintiffs' Co-Lead Counsel met and conferred with Toyota's counsel and a joint proposed order was prepared and filed on December 17, 2010.

The Court did not authorize any other briefing on the Phase II discovery plan. During the course of the meet and confer process, Toyota's counsel never told Plaintiffs' counsel that Toyota would be filing a separate brief in support of its proposals. This brief is respectfully submitted in response to the Toyota Brief.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## II. THE FOUR ARGUMENTS IN THE TOYOTA BRIEF

### A. Case-Specific Discovery In The PI/WD Bellwether Cases

#### 1. Toyota Proposal's For Broad Case-Specific Discovery In Every PI/WD Case Is Inconsistent With The Approach Followed In Virtually Every MDL And What This Court Has Envisioned In Its Orders And Articulated At The Hearings

The Toyota Brief makes clear that Toyota seeks to bury Plaintiffs' counsel with massive case-specific discovery in all of the dozens of PI/WD cases included in this MDL proceeding that is totally inconsistent with the bellwether process that it proclaims to support, the approach adopted by virtually every other MDL court, and the process envisioned by this Court in its November 5, 2010 order. "Toyota proposes that the defendants be permitted to serve up to twenty case-specific interrogatories and requests for production in each personal injury case and that the parties be allowed to depose up to five witnesses (three selected by Toyota and two selected by plaintiffs) in each personal injury case." Toyota Brief, at 2:17-21.

If Toyota is allowed to take 5 depositions in each PI/WD case, the result be will a minimum of 255 depositions. In other mass tort litigation, the case-specific discovery that Toyota proposes conducting is generally reserved for designated bellwether cases only. *See*, *e.g.*, *In re Medtronic, Inc. Implantable Defibrillator Prod. Liab. Litig.*, 2007 WL 846642, *3-4 (D. Minn. Mar. 6, 2007) (allowing limited case-specific discovery in bellwether cases only); *In re Vioxx Prods. Liab. Litig.*, MDL 1657; *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Prac. & Prods Liab. Litig.*, 2010 WL 4024778, *2 (S.D. Ill. Oct. 13, 2010 ("The pool of cases, with which discovery will be pursued, from which the bellwether trials will be drawn will consist of [] twenty-four (24) cases."); *In re MTBE Prods. Liab. Litig.*, 2010 WL 1328249, *1 (S.D.N.Y. Apr. 5, 2010) (adopting bellwether approach); *In re Prempro Prods. Liab. Litig.*, 2010 WL 703151, *2 (E.D. Ark. Feb. 23, 2010).

/ / /

In *Medtronic*, for example, the court issued an order limiting the type of case-specific discovery that Toyota proposes conducting in all of the PI/WD cases to just "three selected bellwether cases," and even then only allowed: (1) "25 case specific interrogatories with respect to each plaintiff;" (2) "no more than 10 case specific requests for production of documents with respect to each plaintiff;" (3) "no more than 10 case specific requests for admissions with respect to each plaintiff;" and (4) "no more than 4 fact depositions." 2007 WL 846642, at *3-4. Reserving case-specific discovery to selected bellwether cases after core discovery is completed is a common practice in the vast *majority* of MDLs.[1]

The discovery pool approach has worked well in prior MDLs, and is the appropriate Phase II discovery mechanism to advance the litigation in a fair and efficient manner. In the process of preparing selected cases for trial, the Court will necessarily issue rulings that will guide the remaining cases. Moreover, the ultimate resolution of the bellwether cases – whether through trial or settlement – will inform the parties' litigation strategy in other cases. The use of bellwether cases, selected through a sensible and proven process, for case-specific discovery and ostensibly will move this litigation towards resolution. *See, e.g.*, *Eldon E. Fallon, et al.*, *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2325 (June, 2008). The bellwether approach recognizes the benefit of focusing discovery resources and activity, including depositions, on selected cases, rather than all of the cases.

/ / /
/ / /
/ / /

---

[1] Toyota seeks to have this Court follow the *minority* view, i.e., allowing case-specific discovery to proceed outside of a bellwether context concurrently with general discovery, *see*, *e.g.*, *In re Yamaha Motor Corp. Rhino ATV Prods. Litig.*, MDL 2016 (W.D. Ky.). This process has lead to unwieldy case management, extreme inefficiency, and exorbitant costs. It will also discourage participation by PI/WD plaintiffs in this MDL in favor of participation in other fora.

## 2. Toyota's Massive Case-Specific Discovery Proposal Will Overwhelm Plaintiffs' Counsel And Prevent A Focus On The Basic, Core Discovery That Should Be Addressed Initially

As the Court has previously observed, "discovery ought to be taken mindful of what our priority is here[,]" Dec. 9, 2010 Hrg. Trans., at 98:9-11), and recognizing that counsels' "manpower is not unlimited." *Id.* at 98:19-20. As Ms. Cabraser explained and the Court noted:

> MS. CABRASER: . . . Our concern is one of timing and resources and sequencing as the Court indicated. We like the core concept that case specific discovery is concentrated and focused in the bellwethers. We understand that some case specific discovery outside of those may need to take place. We want the defendants' fact sheets. It helps us pick bellwethers. . . .
> [W]hat we don't want to see is exhaustive undifferentiated case specific discovery where everything that theoretically can be done is done because I think it causes the parties to waste resources, lose focus.
>
> Our basic concept is, yes, as core discovery proceeds that case specific discovery should as well, but it should be focused and tailored to the goal of the bellwether trial.
>
> THE COURT: I agree with that. Preservation of evidence is probably too narrow a limitation on discovery in non-bellwether cases, but I think it ought to be somewhat limited. It's just a matter of practicality.

Dec. 9, 2010 Hrg. Trans., at 99:14-100:10.

Toyota's proposal is not practical or case efficient. In the first plan, core discovery should be the parties' priority. In this case, core discovery against Toyota and third-parties will undoubtedly comprise most of the total discovery effort. This should be the priority. Initially, Plaintiffs' counsel will be focused on the obtaining and analyzing documents produced by Toyota and taking Toyota employee depositions. There should be follow-up discovery regarding the Plaintiff Fact Sheets and, after May 11, 2011, case-specific discovery on the bellwether cases.

Plaintiffs agree with the Court's observation "that it makes a lot of sense in the short-run to get out the core materials that were outlined in the Phase II program." Dec. 9, 2010 Hrg. Trans., at 58:1-3. To that end, within forty-five days of Plaintiffs' receipt of complete responses to the Defense Fact Sheets, Plaintiffs will be able to select five bellwether cases. However, Toyota has objected to producing case-specific vehicle information in possession of the Toyota dealers in their Defense Fact Sheet responses. If this issue has not been resolved by then, at the hearing scheduled for January 14, 2011, Plaintiffs will request that this Court resolve this issue.

Toyota does not want to provide information from its dealers regarding the history of the Plaintiffs' own vehicles, dealer reports of servicing, repairs, reflash of vehicle systems, and complaints of UA. Toyota claims that it must subpoena the dealers in order to provide the requested information and documents. Significantly, Toyota's counsel represented the same dealers who brought motions to quash Plaintiffs' subpoenas directed to those dealers.

## B. The Timing Of Class Representative Depositions And Toyota's Fact Sheet Responses And Document Production

Paragraph 5(d) of the Joint Proposed Order discusses the production of plaintiff-specific documents in response to Plaintiffs' Fifth Set of Requests for Production of Documents relating to the named class representative plaintiffs in the AMCC. Toyota's objections to the Fifth Set of Requests for Production of Documents are substantially similar to Toyota's objections to Plaintiffs' proposed Defense Fact Sheets in the PI/WD cases.

In both the EL and PI/WD cases, Plaintiffs believe that Toyota should be required to provide all responsive, non-privileged documents in their possession, custody and control relating to each of the named plaintiffs and his or her vehicle before that plaintiff's deposition is taken. Ironically, Toyota argues that Plaintiffs are trying to use this request as a tactic for delaying the depositions. In fact, the opposite is true.

/ / /

For *months*, Plaintiffs have been attempting to negotiate an agreed Toyota Fact Sheet. As set forth in the previously filed declaration of Mark P. Robinson, Jr., in response to virtually every proposal, Toyota has "gutted" basically the entire document and has refused to provide basic information.  For example, Toyota has refused to: (1) respond on behalf of any defendant other than Toyota Motor Sales, U.S.A., Inc.; (2) provide information and documents in its fact sheet responses relating to EDR readouts that it has obtained on the vehicles involved in this litigation; and (3) produce documents and records obtained from its dealerships, key suppliers, and vendors.

Plaintiffs believe that all Toyota Defendants — not just Toyota Motor Sales USA, Inc. – should provide all of the information and materials available to them and to all of the persons under their control.  *See* Fed. R. Civ. P. 34(a).  The information and materials provided should also include information and documents from third-parties over whom Toyota has control (i.e., dealerships, suppliers, vendors, etc.).  In addition to its right to obtain documents and information from its dealers (i.e., under dealer agreements and who are represented by Toyota's counsel), Toyota clearly has the ability to obtain documents from its suppliers and vendors, including many of whom in which it has an ownership interest. In *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16 (D.C.N.Y. 1984), the court reasoned:

> "It is not unusual for documents in the possession of a third party, closely connected to the litigation, to be subject to a Rule 34 request. . . .  The cases [requiring parties to produce documents and provide information available to the source's within their control] are premised on the rationale that a third party with a substantial interest in the litigation cannot be allowed to frustrate the rules of discovery to the disadvantage of a party."

*Id*. at 33-34 (citations omitted).  *See also Ice Corp. v. Hamilton Sundstrant Corp*., 2007 WL 2436765, *3 (D. Kan. Aug. 22, 2007) (requiring production of documents from "third-party source" where party did "not have actual possession of documents" but "ha[d] the practical ability to obtain the documents. . . .").

/ / /

That is exactly the situation here: Toyota clearly has the ability to provide the requested information and documents. The purpose of Fact Sheets is for parties to provide all information and documents that is within their possession, custody and control. Plaintiffs believe that Toyota has control over various third-parties, including its dealers and key suppliers. Toyota does not have to subpoena its dealers. It strains credulity to believe that Toyota dealerships would refuse to provide information and documents requested by Toyota. This information should be exchanged before depositions are taken in both the EL and PI/WD bellwether cases.

### C. The Role Of The Court And The Special Masters

Toyota argues that the parties should utilize the services of the Special Masters to resolve *routine* discovery disputes. Toyota's control over its dealers, electronically stored information ("ESI") and source code related discovery are not routine discovery issues. This Court has heard both sides of these issues for the last four (4) or five (5) months. Plaintiffs respectfully request that this Court decide these issues on January 14, 2011.

Plaintiffs have asked this Court for Defense Fact Sheets as early as June of 2010. This Court has clearly seen and heard enough to decide whether Toyota must provide dealer information about Plaintiffs' vehicles to Plaintiffs. For example, this Court has already reviewed the Toyota Dealer Agreement, and formed initial impressions regarding the degree of control that Toyota has over its dealers. The Court has also seen the law firm of Bowman & Brooke appear as counsel of record for Toyota dealers. There is no need to waste the Special Masters' time on this issue because this Court is already familiar with the issues that have been raised regarding their Fact Sheets.

The ESI and source code issues have been discussed and raised before the Court since July. Furthermore, it is known that this Court has extensive experience addressing ESI and source code issues. The Court has stated that it will rule on the issues on January 14, 2011. The Court has already made tentative rulings on EDR readout tools, etc. There is no need to try to get a different decision from a Special Master who will take weeks, if not months, to get up to speed on what the Court already knows.

### D. The Timing Of Bellwether Case Selection And For Submission Of A Plan For The Conclusion Of Discovery

The arguments in the Toyota Brief regarding the timing of bellwether case selection and the submission of a proposed scheduling order to govern the remainder of this litigation is unclear to Plaintiffs. On December 9, 2010, the Court observed:

> To come back around to the bigger picture of where we are going, . . . before we pencil in specific dates, I am willing to wait 90 to 120 days until what the parties have described as the core discovery is in place. I think I am also willing to wait that period of time to force the parties to designate the bellwether cases. Some of that core discovery may well inform the parties as to what is the optimum bellwether case or cases to put forward. . . .

Dec. 9, 2010 Hrg. Trans., at 96:14-23. Plaintiffs agree with the Court's timetable.

## III. IDENTIFYING A DATE FOR DECIDING THE BALANCE OF THE DISCOVERY PLAN

The Court has asked the parties to identify a date for deciding the balance of the discovery plan. If Plaintiffs' experts receive Toyota's source code (not bits and pieces of source code) on or before January 31, 2011, and are able to do the analysis in their experts' own laboratory with their special tools that will protect the confidentiality of the source code (not at the "neutral" place that Toyota has found), Plaintiffs believe their experts should have initial results of their analysis within six months, if not before. It should be noted, NASA has already taken eight months to do its analysis with different tools for certain Camry vehicles. Once the source code analysis is completed, Plaintiffs will be able to truly give this Court an accurate timetable.

Additionally, Plaintiffs are awaiting a large production of Japanese language documents. Since Toyota is producing these documents on a rolling basis, Plaintiffs do not know how long the production will take. Further, Plaintiffs do not know how long it will take to translate this massive production of Japanese language documents. Lastly, since Toyota is reserving its rights to object to Plaintiffs' Requests for Production of

Documents, on January 10, 2011, Plaintiffs once again do not know when they will receive the documents they have requested.

In light of the foregoing, Plaintiffs have proposed the date of May 11, 2011 with the hope that Toyota will accelerate its production of source code, ESI documents, and core document production such that Plaintiffs will have a better handle by that date on the time that it will take to translate the documents. Hopefully, by that date, Plaintiffs will know which Toyota employees they need to depose. Plaintiffs intend to start noticing the Toyota Motor Corporation ("TMC") depositions as early as March of 2011, for deposition dates after May 11, 2011, to help expedite this process.

Dated: December 19, 2010

Respectfully submitted,

By: */s/ Mark P. Robinson, Jr.*
Mark P. Robinson, Jr.

Mark P. Robinson, Jr., Bar No. 054426
*mrobinson@rcrlaw.net*
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Dated: December 19, 2010

By: */s/ Elizabeth J. Cabraser*
Elizabeth J. Cabraser

Elizabeth J. Cabraser, Bar No. 083151
*ecabraser@lchb.com*
LIEFF CABRASER HEIMANN &
 BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Dated:  December 19, 2010       By:  */s/ Steve W. Berman*
                                      Steve W. Berman

Steve W. Berman (*pro hac vice*)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 268-9320
Facsimile:   (206) 623-0594

Dated:  December 19, 2010       By:  */s/ Frank M. Pitre*
                                      Frank M. Pitre

Frank M. Pitre, Bar No. 100077
*fpitre@cpmlegal.com*
COTCHETT, PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577

Dated:  December 19, 2010       By:  */s/ Marc M. Seltzer*
                                      Marc M. Seltzer

Marc M. Seltzer, Bar No. 054534
*mseltzer@susmangodfrey.com*
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3102
Facsimile:   (310) 789-3006

Plaintiffs' Co-Lead Counsel

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

    I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 620 Newport Center Drive, 7TH Floor, Newport Beach, CA 92660.

    On December 19, 2010, I served the foregoing document described as: PLAINTIFFS' RESPONSE TO DEFENDANTS' BRIEF RE PHASE II DISCOVERY on the following person(s) in the manner indicated:
ECF SERVICE TO:
All Filing User(s) through the Court's Electronic Filing System.

**[ X ]**  (BY ELECTRONIC SERVICE)  I am causing the document(s) to be served on the Filing User(s) through the Court's Electronic Filing System.

**[ X]**  (FEDERAL)  I declare that I am a member of the Bar and a registered Filing User for this District of the United States District Court.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Certificate is executed on December 19, 2010, at Newport Beach, California.

                                               /s/Scot D. Wilson_____
                                               Scot D. Wilson