Mark P. Robinson, Jr. (SBN 54426)
*mrobinson@rcrlaw.net*
Scot D. Wilson (SBN 223367)
*swilson@rcrlaw.net*
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA  92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Elizabeth J. Cabraser (SBN 083151)
*ecabraser@lchb.com*
Todd A. Walburg (SBN 213063)
*twalburg@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Plaintiffs' Co-Lead Liaison Counsel for the Personal Injury/Wrongful Death Cases*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>    ALL CASES | Case No. 8:10ML2151 JVS (FMOx)<br><br>**PLAINTIFFS' BELLWETHER SELECTION PROPOSAL** |

1    In accord with both Toyota's offer and this Court's *Order No. 11: Scheduling*
2 ("To submit a list of three to five bellwether cases from which the initial trials will
3 be drawn no later than April 21, 2011"), Plaintiffs agree to submit a list of five
4 bellwether plaintiffs on April 21, 2011.

5    Plaintiffs' proposal for bellwether trial selection is the plan offered by
6 Toyota's counsel during the hearing on December 9, 2010:

7    MR. JOEL SMITH:  "In terms of selection, we think it's
8    appropriate for the plaintiff to identify five cases, and we will
9    pick one. We can pick one from their five. We believe the case
10    selection is an easy thing for us to do, and it could be done by
11    the time we have another hearing. We could work out
12    hopefully on the front end these front-end things that we have
13    got identified as happening early in the big orange arrow…
14    (Transcript of December 9, 2010 Hearing, 71:17-72:1) *See*
15    *Exhibit A*.

16    Bellwether selection details were further discussed in the same hearing, in a
17 dialogue between the Court and Mark Robinson, as follows:

18    MR. MARK ROBINSON: Your Honor, I really think that first
19    of all this chart is just crazy.  I mean, they want to do the expert
20    discovery on a Camry case in July of next year…
21    **THE COURT: "Mr. Galvin suggests or Mr. Young suggests**
22    **-- one or the other -- you pick the five.** ***You pick them, and***
23    ***they will just take anything you put on the table.***
24    MR. MARK ROBINSON: Any of those 50 cases that are filed?
25    They are nodding their heads, Your Honor. Well, that's a start.
26    (Transcript of December 9, 2010 Hearing, 83:3-6; 83:21-84:2)
27    *See Exhibit A*.
28

1    Following this discussion of the bellwether selection process, Plaintiffs'
2    counsel indicated agreement with Toyota's proposal:
3        MR. MARK ROBINSON: "I agree with their concept of
4        letting us pick five bellwethers." (Transcript of December 9,
5        2010 Hearing, 85:23-24).  *See Exhibit A*.
6    Toyota's statement that Plaintiffs can pick five cases and that Toyota will
7    pick one of those five cases for trial did not narrow the bellwether selection criteria
8    to only cases involving a Toyota Camry, or any other vehicle for that matter.  In
9    fact, the "big orange arrow" discussed by counsel during the hearing refers to
10   Toyota's proposed schedule, and does not even mention the Toyota Camry.
11       Toyota's new proposal is a "bellwether vehicle" plan rather than a bellwether
12   trial plan, and it self-servingly attempts to force Plaintiffs to select only Toyota
13   Camry cases.  Plaintiffs contend that it is inappropriate for Toyota to change their
14   proposed bellwether selection process at this time.  Fundamentally, it would be
15   unfair to allow Toyota to direct Plaintiffs to pick five out of the fifty plus cases, and
16   then pull a "bait-and-switch" just as Plaintiffs get close to selecting the five cases.
17   Plaintiffs bought into this concept – " hook, line and sinker" – and it is not fair for
18   Toyota to now claim that their counsel did not actually mean what he said on the
19   record.  This is especially true when Toyota's counsel all nodded and indicated that
20   they agreed with Plaintiffs when selection from "[a]ny of those 50 cases that are
21   filed" was discussed.  (Transcript of December 9, 2010 Hearing, 83:24-84:2) *See*
22   *Exhibit A*.
23       Per Toyota's original proposal, Plaintiffs agree to pick five bellwether
24   plaintiffs on April 21, 2011, prior to fact discovery and before significant time and
25   costs are expended on expert discovery.  From that list of five bellwether plaintiffs,
26   Toyota will be permitted to select one of those cases to be the first Personal
27   Injury/Wrongful Death ("PI/WD") case to be tried.  Also, in order to avoid delay
28   and to ensure that an additional PI/WD bellwether trial is prepared to proceed,

Plaintiffs will allow Toyota to pick a second case (from the remaining list of four cases) to be the second PI/WD bellwether trial.

The Court has stated that it will decide whether an Economic Loss or a PI/WD case will be the first trial. Consequently, this proposal pertains only to the PI/WD bellwether plaintiffs.

Plaintiffs' above proposal is summarized as follows:

- Plaintiffs shall file and serve a list of five PI/WD bellwether plaintiffs on April 22, 2011;
- Fact discovery shall proceed on all five of the PI/WD bellwether plaintiffs' cases;
- After fact discovery is completed and before expert disclosures, Toyota will select one of the five PI/WD bellwether plaintiffs' cases for trial;
- Toyota will also have the right to pick the second bellwether plaintiffs' case for trial from the remaining four cases that Plaintiffs identify on April 22, 2011.

This approach will efficiently advance the litigation. While the parties are conducting fact discovery on the five bellwether cases and preparing the selected cases for trial, the Court will necessarily issue rulings that will inform how the remaining cases will be prosecuted.[1] Moreover, the ultimate resolution of the selected cases will inform the parties' litigation strategy on other cases. For these reasons, the Manual for Complex Litigation recommends prosecution of "test" or "bellwether" cases in mass tort litigation. *Manual for Complex Litigation*, § 22.315 (4th ed. 2004).

For these reasons, Plaintiffs respectfully request that the Court enter Plaintiffs' Proposed Order Regarding Bellwether Selection.

---

[1] Plaintiffs propose that after the first two trials are completed, the Court may establish a process to decide which subsequent cases will be tried and in what order.

| | | |
|---|---|---|
| 1 | Dated: February 22, 2011 | ROBINSON, CALCAGNIE & ROBINSON |
| 2 | | By: /s/ Mark P. Robinson, Jr. |

Mark P. Robinson, Jr. (SBN 54426)
*mrobinson@rcrlaw.net*
Scot D. Wilson (SBN 223367)
*swilson@rcrlaw.net*
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA  92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Elizabeth J. Cabraser (SBN 083151)
*ecabraser@lchb.com*
Todd A. Walburg (SBN 213063)
*twalburg@lchb.com*
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Plaintiffs' Co-Lead Liaison Counsel for the Personal Injury/Wrongful Death Cases*

# EXHIBIT A

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

IN RE:  TOYOTA MOTOR
CORP. UNINTENDED
ACCELERATION MARKETING,
SALES PRACTICES, and
PRODUCTS LIABILITY
LITIGATION                    ML 10-2151-JVS(FMOx)

_____

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

December 9, 2010


SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

SHARON SEFFENS, U.S. DISTRICT COURT REPORTER

1   MR. ROBINSON: That's what we have done. In terms
2   of the chart I have just given you, we would like to stage
3   things. We would like to have some limited case specific
4   discovery. We want to get the defense fact sheets answered
5   before we do these, for example, any depositions or limited
6   interrogatories, et cetera, to the plaintiffs.
7           In terms of third-party discovery, I think we have
8   all agreed we can do third-party discovery. We want to
9   take -- if there are 51 dealers in these 51 cases, we want
10  to take their depos immediately. I just think that is going
11  to be something that we are going to be able to sit down and
12  work out. We started discussing that on Monday, and we got
13  off on the source code and other issues.
14          THE COURT: The showings the parties have made to
15  me for this hearing indicate to me that you have had
16  substantial discussions and ongoing discussions with regard
17  to a number of issues: the format for production, search by
18  documents or key words, and the source code issue. I want
19  to see those resolved shortly, but I think we need to come
20  back to the big picture for the moment.
21          Mr. Smith.
22          MR. SMITH: Thank you, Your Honor.
23          May it please the Court, if I could just answer a
24  question that you asked about selection of bellwether
25  trials. We believe that it would be appropriate to have the

1  bellwether trials -- at least the first one and probably
2  more than that tried by Your Honor.  The benefit of the
3  bellwether trial is not simply to allow us to get a case to
4  trial or to know what the settlement values of cases are,
5  but it also benefits the Court in having to go through one
6  of these trials, to go through a 702 hearing, to see the
7  details of the science because that is going to inform the
8  Court about the larger orange arrow at the top of the page.
9          In this graph, what we have tried to represent are
10 the four elements that we have tried to build into this,
11 three which Mr. Young described.  The fourth is really the
12 plaintiffs' Phase II discovery plan, which is sort of
13 front-end loaded as you can see in the first part of it.
14         What we are working on now with the plaintiffs is
15 trying to build in an agreement on all of the features, some
16 of which Mr. Robinson just mentioned, and there is ongoing
17 discussion about that.  It's been healthy and cordial and
18 appropriate.  We are trying to build that into the front
19 end.  I think I heard Your Honor say at the beginning of
20 this portion of the hearing that that was something that you
21 were looking for, the idea of getting that kind of core
22 information up front.  We are doing that, and that's part of
23 where we are going with this.
24         The other three aspects are the sequence
25 discovery, choosing -- and I think we are in agreement --

```
 1   choosing the three vehicles that have been described and
 2   trying to get those on the front end of this, and then
 3   hopefully that will inform the Court.
 4           In terms of the bellwethers, up until today, there
 5   has not been an agreement that we would do bellwethers.  We
 6   believe bellwethers need to be selected soon so that we can
 7   begin to gather full discovery.  These bellwethers are about
 8   automobile accidents, events that are remembered by
 9   individual people, and those memories need to be preserved.
10   We need to get to that as soon as possible with a full
11   discovery -- as if I had walked in your courtroom and filed
12   a Complaint today, a sequence like this would be I think
13   something consistent with Your Honor's prior rulings on
14   schedules.  Nothing about these cases and these crashes are
15   different that should require those not to go forward.  We
16   agree with that.
17           In terms of selection, we think it's appropriate
18   for the plaintiff to identify five cases, and we will pick
19   one.  We can pick one from their five.  We believe the case
20   selection is an easy thing for us to do, and it could be
21   done by the time we have another hearing.  We could work out
22   hopefully on the front end these front-end things that we
23   have got identified as happening early in the big orange
24   arrow and having those things hopefully by the next
25   hearing -- to be able to come back to you with agreements on
```

```
 1    source code and those kinds of things.
 2            Up until today there has been no agreement to
 3    select bellwethers.  Your Honor asked where we stand on this
 4    overall plan.  What the plaintiffs have told us is that they
 5    are not in a position now to set any deadlines.  We agree
 6    with Your Honor that it's absolutely appropriate now to set
 7    deadlines as if this were any other case and that we will
 8    work within those deadlines.  The other thing that the
 9    plaintiff has said that it has not agreed to do is establish
10    bellwethers now.  Those have been the two sticking points
11    that we have had up until now.  I'm not really sure I
12    understand how that all fits in this because there's not --
13    I mean, it's on a roadway, but it's not sequenced and
14    overlapping like we have tried to put it.
15            What we would hope Your Honor would tell us to do
16    is to take something very close to the exhibit we
17    provided -- Your Honor, we have actually provided one
18    without any dates on the bottom in order to respect what
19    Your Honor has said that -- we are not going to set Your
20    Honor's deadlines.  We will live with the deadlines that
21    Your Honor sets -- but to fill in for the Court in this type
22    of an exhibit the deadlines that are appropriate and to come
23    to you in January with bellwether trials that we are ready
24    to fully litigate, fully discover, on both sides experts,
25    and proceed in that direction.  We believe that those tools
```

1    aspirational which you will decide is reasonable or not.
2         THE COURT: Mr. Robinson.
3         MR. ROBINSON: Your Honor, I really think that
4    first of all this chart is just crazy. I mean, they want to
5    do the expert discovery on a Camry case in July of next
6    year. The bottom line is --
7         THE COURT: That's seven months away.
8         MR. ROBINSON: We are not going to have the
9    documents or the depos done for a good year. The way it's
10   going right now I hope it's a year. I really do. One thing
11   we learned from the Japanese language depositions is that we
12   thought 11 hours would be good for a witness. It's going to
13   take three days minimum for each of those witnesses. The
14   way those questions and answers go you triple your time from
15   an English-speaking depo to the Japanese language.
16        What I think is this. I like the bellwether
17   process. We suggested it, but I think this, that really the
18   bellwether trial should not -- the picks should not be done
19   until the core discovery is complete. That just makes
20   sense.
21        THE COURT: Mr. Galvin suggests or Mr. Young
22   suggests -- one or the other -- you pick the five. You pick
23   them, and they will just take anything you put on the table.
24        MR. ROBINSON: Any of those 50 cases that are
25   filed?

```
 1              They are nodding their heads, Your Honor.  Well,
 2     that's a start.
 3              Here is the problem.  The core discovery is
 4     necessary before we actually go to experts, and part of that
 5     core discovery -- I don't know if this is true, but
 6     Mr. Galvin told me that NASA on just the Camry alone -- I
 7     don't know what Camrys they looked at, but NASA has taken
 8     eight months to look at the source code, whatever they have
 9     been given.
10              THE COURT:  Lawyers are much more motivated.
11              MR. ROBINSON:  Well, Your Honor, if these people
12     are willing to -- I really think -- what I am going to
13     propose is this.  If they want to do a rapid track, which I
14     would like to do it in some ways, I think next week we ought
15     to be ordered back here to discuss two issues with you.  We
16     should finalize the ESI issues.  We may get that done, but
17     we have to come back to you on the source code next week.  I
18     am telling you we have a major disagreement.  I don't want
19     to get into it, but we need to be able to come back on the
20     source code.
21              If I see that we're -- for example, their
22     suggestion is going to triple the time for our analysis on
23     the source code.  It will probably make it impossible for
24     our expert to do it, but if we can get our suggestion on the
25     source code, we can probably -- if they give us the source
```

1   code, I think we can get the source code analyzed maybe in
2   six months at our laboratory, so that could be a big thing.
3            In the meantime, are they going to give us these
4   documents, not just the Camry, ES, and Tacoma documents, but
5   we need other documents because when you try an auto product
6   case --
7            THE COURT:  I think they have acknowledged the
8   necessity of producing the historical documents that would
9   track the development from the mid '90s forward, so that you
10  put in context the particular design features reflected in
11  any of these three bellwether models.
12           MR. ROBINSON:  But we don't know the timing on
13  when they are going to give us these documents.  We have had
14  a good meet and confer this week, but we still don't know
15  when we are going to get those documents.  If these
16  documents are being produced in the next 120 days, I think
17  we can come back and maybe talk more on scheduling, because
18  if we don't have the documents and we don't have the source
19  code by then and our experts aren't analyzing the source
20  code, then things are going to be delayed.  If they are
21  going to give us these documents right away, then I think we
22  should come back here in 120 days and actually decide.
23           I agree with their concept of letting us pick five
24  bellwethers.  At that time, the Court can maybe make a
25  better decision on whether the Court wants to try the class