CARI K. DAWSON (GA SBN 213490)
Email: cari.dawson@alston.com
**ALSTON + BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7766
Facsimile: (404) 253-8567

ANNA S. McLEAN (CA SBN 142233)
Email: amclean@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP**
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 434-9100
Facsimile: (415) 434-3947

LISA GILFORD (CA SBN 171641)
Email: lisa.gilford@alston.com
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

ASHLEY E. MERLO (CA SBN 247997)
Email: amerlo@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP**
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626-1993
Telephone: (714) 513-5100
Facsimile: (714) 513-5130

*Lead Defense Counsel for Economic
Loss Cases*

*Attorneys for Toyota Motor Credit
Corporation*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to: THE AMENDED FOREIGN ECONOMIC LOSS MASTER CONSOLIDATED COMPLAINT | Case No.: 8:10ML2151 JVS (FMOx)<br><br>TOYOTA DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOREIGN PLAINTIFFS' AMENDED COMPLAINT FOR FORUM NON CONVENIENS<br><br>[FILED CONCURRENTLY WITH NTC. OF MTN. AND MTN. TO DISMISS FOREIGN PLAINTIFFS' AMENDED COMPLAINT FOR FORUM NON CONVENIENS; REQ. FOR JUDICIAL NOTICE; SUPPORTING DECLARATIONS; AND [PROPOSED] ORDER]<br><br>Date: July 5, 2011<br>Time: 1:30 p.m.<br>Location: Court Room 10C<br>Judicial Officer: Hon. James V. Selna |

# TABLE OF CONTENTS

Preliminary Statement ........................................................................................ 1

Background ........................................................................................................ 3

Argument ........................................................................................................... 6

I.   DISMISSAL IS PROPER WHERE AN ADEQUATE ALTERNATIVE
     FORUM EXISTS AND PRIVATE AND PUBLIC INTEREST FACTORS
     FAVOR THE FOREIGN FORUM .............................................................. 6

II.  EACH OF Foreign Plaintiffs' HOME COUNTRIES CONSTITUTES AN
     ADEQUATE ALTERNATE FORUM .......................................................... 9

     A.   Australia is an Adequate Alternate Forum ................................... 11

     B.   China is an Adequate Alternate Forum ......................................... 13

     C.   Egypt is an Adequate Alternate Forum ......................................... 14

     D.   Germany is an Adequate Alternate Forum .................................... 16

     E.   Guatemala is an Adequate Alternate Forum ................................. 17

     F.   Indonesia is an Adequate Alternate Forum ................................... 18

     G.   Jamaica is an Adequate Alternate Forum ..................................... 20

     H.   Malaysia is an Adequate Alternate Forum .................................... 21

     I.   Mexico is an Adequate Alternate Forum ....................................... 22

     J.   The Philippines is an Adequate Alternate Forum ......................... 23

     K.   Russia is an Adequate Alternate Forum ........................................ 24

     L.   South Africa is an Adequate Alternate Forum .............................. 25

     M.   Turkey is an Adequate Alternate Forum ....................................... 27

III. THE PRIVATE AND PUBLIC INTEREST FACTORS WEIGH HEAVILY
     IN FAVOR OF DISMISSAL ..................................................................... 28

     A.   All of the Private Interest Factors Favor Dismissal, as the Parties,
          Witnesses and Evidence are Located Abroad ............................... 30

1.   Plaintiffs, Witnesses, and Proper Defendants are Located
     Abroad..............................................................................30
2.   California is Not Convenient to the Litigation ...................31
3.   Evidence is Located Abroad.............................................31
4.   Unwilling Witnesses Cannot Be Compelled to Testify.....32
5.   There Will Be Significant Costs in Bringing Witnesses to
     Trial.................................................................................33
6.   Trial Will Be Easier and More Expeditious in Foreign
     Plaintiffs' Home Forums...................................................33

B.   Public Interest Factors Also Weigh Heavily in Favor of the Foreign
     Forums ......................................................................................34

     1.   Plaintiffs' Own Countries Have the Greatest Interest
          in the Lawsuit..................................................................34

     2.   Foreign Plaintiffs' Own Courts Are Most Familiar With
          Their Own Laws, Which Will Apply to Foreign
          Plaintiffs' Claims ............................................................35

     3.   This Case Would Impose a Burden on Local Courts
          and Factfinders................................................................36

     4.   Court Congestion Weighs in Favor of Trial Abroad in
          Each of Foreign Plaintiffs' Forums ..................................37

     5.   This Costly Litigation Is Unrelated to This Forum ...........38

CONCLUSION ...........................................................................................39

TOYOTA DEFS.' PTS. & AUTH. IN SUP. OF MTN. TO DISMISS FOREIGN PLTFS.' AMEND. COMPLAINT
LEGALO2/32462891v9

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Aldana v. Del Monte Fresh Produce N.A., Inc.*
  578 F.3d 1283 (11th Cir. 2009).................................................................. 18

*Auxer v. Alcoa, Inc.*
  No. 10-2132, 2011 WL 180034 (3d Cir. Jan. 20, 2011)..................................... 12

*Baumgart v. Fairchild Aircraft Corp.*
  No. SA-90-CA-818, 1991 WL 487242 (W.D. Tex. Sept. 30, 1991)................. 17

*Blanco v. Banco Indus. de Venez., S.A..*
  997 F.2d 974 (2d Cir. 1993)..................................................................... 15

*Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.*
  918 F.2d 1446 (9th Cir. 1990)............................................................ 24, 34

*Dabbous v. Am. Express Co.*
  No. 06 Civ. 11345, 2009 WL 1403930 (S.D.N.Y. May 8, 2009)................ 15, 37

*Deirmenjian v. Deutsche Bank, A.G.*
  No. 06-00774, 2006 WL 4749756 (C.D. Cal. Sept. 25, 2006) ........................... 10

*Delgado v. Shell Oil Co.*
  890 F. Supp. 1324 (S.D. Tex. 1995) ........................................................... 24

*Dornberger v. Metro. Life Ins. Co.*
  182 F.R.D. 72 (S.D.N.Y. 1998) ................................................................ 11

*Gallego v. Garcia*
  No. 07CV1185, 2010 WL 2354585 (S.D. Cal. June 9, 2010) ........................... 23

*Gulf Oil Corp. v. Gilbert*
  330 U.S. 501, 67 S. Ct. 839 (1947)................................................... 2, 7, 8, 34, 36

*Helog AG v. Kaman Aerospace Corp.*
  228 F. Supp. 2d 91 (D. Conn. Sept. 30, 2002)........................................... 17

*Huang v. Advanced Battery Technologies, Inc.*
  No. 09 CV 8297, 2010 WL 2143669 ..................................................... 14, 34

*In re Air Crash over the Mid-Atlantic on June 1, 2009*
   No. 10-2144, -- F. Supp. 2d. --, 2010 WL 3910354 (N.D. Cal. Oct. 4, 2010) ......
   .............................................................................................................. 30, 36

*In re Air Crash over the Taiwan Straits on May 25, 2002*
   331 F. Supp. 2d 1176 (C.D. Cal. 2004) ........................................ 7, 30, 31, 33, 36

*In re Alcon Shareholder Litig.*
   719 F. Supp. 2d 263 (S.D.N.Y. 2010).................................................................. 10

*In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984*
   634 F. Supp. 842 (S.D.N.Y. 1986)....................................................................... 10

*Intercontinental Dictionary Series v. De Gruyter*
   822 F. Supp. 662 (C.D. Cal. 1993) ...................................................................... 12

*Jayaraman v. Salomon, Inc.*
   No. 87 Civ 2781, 1991 WL 61071 (S.D.N.Y. Apr. 5, 1991)............................. 22

*Kirch v. Liberty Media Corp.*
   No. 04 Civ 667, 2006 WL 3247363 (S.D.N.Y. Nov. 8, 2006) .......................... 16

*Lockman Found. v. Evangelical Alliance Mission*
   930 F.2d 764 (9th Cir. 1991)............................................................................. 9, 10

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*
   583 F.3d 656 (9th Cir. 2009) ............................................................................. 9, 23

*Lueck v. Sundstrand Corp.*
   236 F.3d 1137 (9th Cir. 2001)................................... 7, 8, 9, 28, 29, 32, 35, 36, 38

*Mastafa v. Australian Wheat Bd. Ltd.*
   No. 07 Civ. 7955, 2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008)..................... 12

*Mercier v. Sheraton Int'l, Inc.*
   981 F.2d 1345 (1st Cir. 1992) ............................................................................. 27

*Morrison v. Nat'l Austl. Bank Ltd.*
   130 S. Ct. 2869 (2010) .......................................................................................... 9

*Niv v. Hilton Hotels Corp.*
   710 F. Supp. 2d 328, 2008 WL 4849334 (S.D.N.Y. 2008) .......................... 10, 15

TOYOTA DEFS.' PTS. & AUTH. IN SUP. OF MTN. TO DISMISS FOREIGN PLTFS.' AMEND. COMPLAINT
LEGALO2/32462891v9

*Nolan v. Boeing Co.*
   919 F.2d 1058 (5th Cir. 1990)..................................................................... 37

*Overseas Media, Inc. v. Skvortsov*
   277 F. App'x 92 (2d Cir. 2008) .................................................................. 25

*Palacios v. Coca-Cola Co.*
   No. 10 Civ. 3120 --- F. Supp. 2d ----, 2010 WL 4720409 (S.D.N.Y. Nov. 19,
   2010)........................................................................................................... 9, 18

*Paolicelli v. Ford Motor Co.*
   289 F. App'x 387 (11th Cir. 2008) ............................................................. 15

*Piper Aircraft Co. v. Reyno*
   454 U.S. 235, 102 S. Ct. 252 (1981)..................... 7, 9, 10, 14, 30, 31, 34, 35, 37

*Proyectos Orchimex de Costa Rica S.A. v. E.I. du Pont de Nemours & Co.*
   896 F. Supp. 1197 (M.D. Fla. 1995)........................................................... 21

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*
   138 F.3d 65 (2d Cir. 1998)......................................................................... 19

*Ruelas Aldaba v. Michelin N. Am., Inc.*
   No. C 04-5369, 2005 WL 3560587 (N.D. Cal. Dec. 29, 2005)................... 23

*Rustal Tarading U.S., Inc. v. Makki*
   17 F. App'x 331 (6th Cir. 2001) ................................................................ 15

*Seales v. Panamanian Aviation Co.*
   356 F. App'x 461 (2d Cir. 2009) ............................................................... 20

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*
   549 U.S. 422, 127 S. Ct. 1184 (2007)................................................. 1, 7, 14

*Tang v. Synutra Int'l, Inc.*
   No. 09-0088, 2010 WL 1375373 (D. Md. March 29, 2010) ..................... 8, 14

*Thomson v. Toyota Motor Corp. Worldwide*
   545 F.3d 357 (6th Cir. 2008)............................................. 26, 29, 30, 33, 35

*Turedi v. Coca Cola Co.*
   460 F. Supp. 2d 507 (S.D.N.Y 2006)......................................................... 7, 8, 27

*Vorbiev v. McDonnell Douglas Helicopters, Inc.*
   No. C 08-05539, 2009 WL 1765675 (N.D. Cal. June 18, 2009)........... 25, 37, 39

TOYOTA DEFS.' PTS. & AUTH. IN SUP. OF MTN. TO DISMISS FOREIGN PLTFS.' AMEND. COMPLAINT
LEGAL02/32462891v9

## FEDERAL RULES AND STATUTES

Fed. R. Civ. P. 9(b)...................................................................................................... 1

28 U.S.C. § 1782 ......................................................................................................... 32

TOYOTA DEFS.' PTS. & AUTH. IN SUP. OF MTN. TO DISMISS FOREIGN PLTFS.' AMEND. COMPLAINT
LEGALO2/32462891v9

## PRELIMINARY STATEMENT

Toyota Motor Corporation ("TMC"), Toyota Motor Sales, U.S.A., Inc. ("TMS"), Toyota Motor North America, Inc. ("TMA"), Toyota Motor Credit Corporation ("TMCC") and Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") (collectively, "Toyota Defendants") hereby move to dismiss the class action complaint brought by foreign plaintiffs in thirteen[1] countries (the "Foreign Plaintiffs") on *forum non conveniens* grounds.

It must be noted at the outset that the Toyota Defendants separately moved to dismiss the ACFPC separately on foreign jurisdictional grounds on January 25, 2011 (the "Foreign Jurisdictional Issues Motions") in accordance with the court-ordered stipulation revising the briefing schedule on moving to dismiss the amended consolidated foreign plaintiffs' complaint (the "ACFPC"). (Dkt. Nos. 657, 659, 661-664.) As is set forth in detail in those motions, the ACFPC should be dismissed against all defendants because: foreign plaintiffs fail to plead any connection between their alleged damages and the Toyota Defendants' alleged action under, respectively, *Iqbal* and *Twombly* standards and Fed. R. Civ. P. 9(b); foreign plaintiffs' statutory causes of action do not extend to foreigners' claims for damages outside the United States; foreign plaintiffs failed to join necessary foreign defendants not subject to US courts' jurisdiction; and foreign plaintiffs improperly joined U.S. Toyota Defendants in an attempt to manufacture diversity jurisdiction.

The Toyota Defendants respectfully suggest that the Court first consider and decide the issues raised in the Foreign Jurisdictional Issues Motions. *Only* if the Court determines, after analysis of those motions, that some portion of Foreign Plaintiffs' claim survives, does the Court need to consider this motion. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 434, 127 S. Ct. 1184, 1193 (2007)

---

[1] As plaintiffs have voluntarily dismissed the sole class representative for Peru, Augusto Panez, from this complaint (Dkt. No. 774), this motion to dismiss deals solely with the thirteen countries still remaining in foreign plaintiffs' case.

1    ("[O]nce a court determines that jurisdiction is lacking, it can proceed no further and

2    must dismiss the case on that account.  In that scenario '*forum non conveniens* can

3    never apply.'") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S. Ct. 839

4    (1947).

5            To the extent that any portion of the ACFPC survives the Foreign Jurisdictional

6    Issues Motions, the ACFPC should nevertheless be dismissed in favor of the courts in

7    the countries where the Foreign Plaintiffs reside.  Foreign Plaintiffs are engaged in

8    blatant forum shopping:  none of them are located in the United States, and they are

9    trying to get a free ride off of domestic defendants' litigation and discovery and to

10   drastically expand the litigation to include vehicles with little or no connection to the

11   United States.  If any Toyota customers outside the United States allege that there are

12   problems with their vehicles, their judicial recourse is through their own countries'

13   legal systems to the entities *that actually have a connection with those vehicles*.

14   Indeed, dozens of plaintiffs in foreign jurisdictions *have* brought claims in their own

15   countries -- including one of the Foreign Plaintiffs named here -- and the Foreign

16   Plaintiffs should not be allowed to clog the U.S. legal system with cases unrelated to

17   the United States in a misguided quest for opt-out class actions and contingency fees.

18           Each of the thirteen countries in which Foreign Plaintiffs reside will permit

19   litigation of the subject matter of the dispute and offer remedies for the wrongs the

20   Foreign Plaintiff allege (in the unlikely event they can prove them), and that is enough

21   to qualify them as adequate alternative forums.  In addition, if this Court dismisses

22   this litigation on the basis of *forum non conveniens*, the Toyota Defendants have

23   agreed to safeguards required by U.S. courts to ensure that the adequate alternate

24   forums will be available to these Foreign Plaintiffs.  Declaration of Jerry Koyanagi

25   ("Koyanagi Decl."), ¶6; Declaration of Kojiro Tanaka ("Tanaka Decl."), ¶6;

26   Declaration of Patrick Nepute ("Nepute Decl."), ¶2; Declaration of Kevin Ro ("Ro

27   Decl."), ¶6; Declaration of David Pelliccioni ("Pelliccioni Decl."), ¶2.

28

Once this determination is made, the Court must weigh private and public factors such as location of parties, witnesses, physical evidence, and country interests to determine whether the balance of the factors favors the foreign forum. Here, each and every single *forum non conveniens* factor favors dismissal of this case. Indeed, keeping this case in the United States would lead to the absurd and impossible spectacle of a U.S. factfinder weighing: (1) testimony of forty-one Foreign Plaintiffs; (2) expert witnesses' testimony on the comparative resale values of vehicles in each of thirteen foreign countries; (3) evidence of differences in foreign vehicle design and manufacture; and (4) documents translated from a dozen languages of each of the Foreign Plaintiffs' jurisdictions and potentially from additional foreign jurisdictions -- all in order to apply the laws of each of Foreign Plaintiffs' countries which govern Foreign Plaintiffs' allegations. To the extent that any of Foreign Plaintiffs' claims survive Defendants' Foreign Jurisdictional Issues Motions, these claims still do not belong in the United States.

## **BACKGROUND**

As the Toyota Defendants explained in greater detail in their Foreign Jurisdictional Issues Motions, the vehicles at issue in the ACFPC were manufactured, advertised, purchased, driven, maintained, and/or repaired abroad by foreign plaintiffs and have no real connection to the United States.

Toyotas are manufactured in at least 26 countries worldwide, including in the Foreign Plaintiffs' jurisdictions of China, Mexico, Germany, South Africa, Turkey, Indonesia, and the Philippines. Dkt. No. 285-2. The VIN numbers that Foreign Plaintiffs list in the ACFPC further demonstrate that Foreign Plaintiffs' automobiles are manufactured in a host of countries outside of the United States. Declaration of Lisa Gilford filed herewith ("Gilford Decl.") Exhs. A and B. Indeed, the Auris models that three of the Foreign Plaintiffs purchased are not designed, manufactured or sold in the United States at all. Dkt. No. 285-2. Neither are the AYGO, iQ, Verso, and Radford. *Id.* Similarly, Foreign Plaintiffs include vague and generic allegations

1  that each of them viewed advertisements, *inter alia*, on the television, on billboards,

2  and in brochures at their respective dealerships. ACFPC ¶¶ 36-78.  None of them

3  alleges they viewed advertisements anywhere but their home countries. *Id.*

4      Moreover, Foreign Plaintiffs admit that Toyota Motor Europe acted differently

5  than did U.S. Toyota Defendants by alleging that Toyota Motor Europe made a

6  manufacturing change and issued an accelerator pedal notification to Toyota

7  distributors in dozens of countries -- including this litigation's subject countries of

8  Germany, Russia, and Turkey -- months before such actions took place in the United

9  States.  ACFPC ¶¶ 220 and 334.  With those few paragraphs, Foreign Plaintiffs

10  acknowledge that other Toyota entities exist around the world and promulgate and

11  implement different actions affecting them and their vehicles.

12      In short, Foreign Plaintiffs' claims involve the purported marketing, purchase,

13  sale or lease of vehicles, and alleged harm stemming from those transactions, that

14  occurred entirely outside the U.S.  The limited information that Foreign Plaintiffs have

15  provided pursuant to this Court's order of October 29, 2010, requiring fact sheets

16  (Dkt. No. 433) further demonstrates that witnesses and documents relating to their

17  transactions and claimed damages are all located overseas.  For example:

18  **Named plaintiff Catherine De Bruin** is a South African citizen who lives in

19  Kempton Park, South Africa and purchased her vehicle in Fourways, South Africa.

20  She purchased a used Corolla with a VIN beginning with "AH" indicating it was

21  manufactured in South Africa.  She allegedly experienced UA in South Africa on two

22  occasions and states that the UA was witnessed by her daughter, C. van der Merwe,

23  who resides in South Africa.  She also states that she mentioned the UA incidents to

24  her dealership, "Autopedigree Fourways," when her car was serviced.  She only

25  identifies and attaches one document relating to the purchase, warranty, maintenance

26  and servicing of her vehicle: a one-page warranty document issued by Regent

27  Insurance Company Limited.  ACFPC ¶ 58; Gilford Decl., Exhs. B, C.

28

1     **Named Plaintiff Susan Ong** is a citizen of the Philippines and a resident of

2   Caroline Springs, Australia, and she purchased her vehicle in Victoria, Australia.  In

3   Australia, vehicles are driven on the left side of the road and steering wheels are on

4   the right side of the car.  She purchased a Yaris with a VIN beginning with "JT"

5   indicating that it was manufactured in Japan.  Ms. Ong alleges that she experienced

6   UA three times, but only describes one incident in which she alleges her husband

7   experienced UA when he was driving alone.  She also says that she made statements

8   regarding the event to a friend, Jose Herrera.  Ms. Ong identifies many documents

9   relating to the purchase, warranty, maintenance and servicing of her vehicle, including

10   warranty and service booklets and service invoices and receipts, but she only provided

11   five pieces of paper, most of which are cover pages for booklets and one of which

12   references implied warranties under the "Trade Practices Act 1974."  ACFPC ¶ 78;

13   Gilford Decl., Exhs. B, F.

14     **Named plaintiff Hatice Hulya Yigit** is a Turkish citizen who lives in Istanbul,

15   Turkey and purchased her vehicle there.  She purchased an Auris with a VIN

16   beginning with "NM" indicating it was manufactured in Turkey.  In fact, Toyota does

17   not manufacture, distribute or sell any Auris model in the United States.  Ms. Yigit

18   states in her fact sheet that she experienced UA in Gebze, Turkey which included a

19   collision, emergency response, injury and property damage.  She states that she made

20   written or oral statements about the UA to an insurance carrier, car dealer, mechanic

21   or other person, but does not identify any such persons. Ms. Yigit states in her fact

22   sheet that she has multiple documents relating to the purchase, warranty, maintenance

23   and servicing of her vehicle, but she did not provide those documents (nor any police

24   or insurance documents regarding her alleged UA event), as requested by the fact

25   sheet.  ACFPC ¶55; Dkt. No. 285-2; Gilford Decl., Exhs. B, G.

26     **Named plaintiff Natalia Komarova** is a Russian citizen who lives in Ufa,

27   Russia and purchased her vehicle in Ufa, Russia. She purchased a Yaris with a VIN

28   beginning with "VN" indicating it was manufactured in France.  She allegedly

1    experienced UA in Ufa, Russia, and names four witnesses to the incident:   two

2    acquaintances who live in Ufa, Russia; a second cousin who lives in Ufa, Russia, and

3    a sister who lives in Almaty, Kazakhstan.  Ms. Komarova also alleges in her fact sheet

4    that she made statements regarding the UA incident to the dealership in Ufa on two

5    occasions, and in her complaint, she alleges that the dealership refused to repair her

6    vehicle.    She also states that she communicated with the Russian "State traffic

7    inspectorate" in June 2010.   She states that she has not filed any other litigation

8    regarding her vehicle, but public documents available on the internet site of the local

9    courts in Ufa Russia show that she filed a consumer protection complaint in July 2010

10   and that her litigation is still ongoing.   ACFPC ¶ 75; Gilford Decl., Exhs. B, D, E.

11         Ms. Komarova is far from the only foreign plaintiff to sue Toyota his or her

12   own country:   indeed, as of May 2010, seventy-three unintended acceleration legal

13   proceedings had been brought against Toyota entities in fifteen separate foreign

14   countries, namely:  (1) Austria; (2) Brazil; (3) Canada; (4) Germany; (5) Iceland; (6)

15   Ireland; (7) Israel; (8) Italy; (9) Kuwait; (10) Morocco; (11) Portugal; (12) South

16   Korea; (13) Taiwan; (14) Turkey; and (15) the United Kingdom.  Of these countries,

17   Germany and Turkey are listed as residences of named plaintiffs in the ACFPC.

18   Gilford Decl., Exhs. H, I.  It is clear that dozens of foreign plaintiffs -- including Ms.

19   Komarova -- realize that their own countries are suitable and preferable venues for

20   their complaints.   Application of U.S. *forum non conveniens* doctrine will lead this

21   Court to the same conclusion.

22                              **ARGUMENT**

23   I.    **DISMISSAL IS PROPER WHERE AN ADEQUATE ALTERNATIVE**

24         **FORUM EXISTS AND PRIVATE AND PUBLIC INTEREST FACTORS**

25         **FAVOR THE FOREIGN FORUM**

26         As the Supreme Court stated in 2007, synthesizing decades of its own

27   precedent:

28

1      "A federal court has discretion to dismiss a case on the ground of

2   *forum non conveniens* 'when an alternative forum has jurisdiction to hear

3   [the] case, and ... trial in the chosen forum would establish ...

4   oppressiveness and vexation to a defendant ... out of all proportion to

5   plaintiff's convenience, or ... the chosen forum [is] inappropriate because

6   of considerations affecting the court's own administrative and legal

7   problems.'"

8   *Sinochem*, 549 U.S. at 429, 127 S. Ct. at 1190. (citations omitted.) *See also Lueck v.*

9   *Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). This is because there is "'a

10  local interest in having localized controversies decided at home.'" *Piper Aircraft Co.*

11  *v. Reyno*, 454 U.S. 235, 260, 102 S. Ct. 252, 268 (1981) (quoting *Gilbert*, 330 U.S. at

12  509, 67 S. Ct. at 843).

13      In dismissing an action on forum non conveniens grounds the court must

14  examine: (1) whether an adequate alternative forum exists, and (2) whether the

15  balance of private and public interest factors favors dismissal. *Id.; In re Air Crash*

16  *over the Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176 (C.D. Cal. 2004).

17      "[T]he adequate alternative forum requirement of the forum non conveniens

18  doctrine is ordinarily satisfied if (1) the other forum is available because the defendant

19  is amenable to service of process there, and (2) the forum permits litigation of the

20  subject matter of the dispute and offers remedies for the wrongs the plaintiff alleges,

21  even if the causes of action and relief provided there are not identical in every respect

22  to the claims the plaintiff demands or redress he seeks in his chosen forum." *Turedi v.*

23  *Coca Cola Co.*, 460 F. Supp. 2d 507, 523 (S.D.N.Y 2006) (holding that Turkey was

24  adequate alternative forum), *aff'd*, 343 F. App'x 623 (2d Cir. 2009); *see also Taiwan*

25  *Straits Air Crash*, 331 F. Supp. 2d at 1181 (holding that Taiwan was an adequate

26  alternative forum).

27      An adequate alternative forum will be held to be "available" where the

28  defendant agrees to submit to personal jurisdiction in the foreign forum and will waive

1    applicable statute of limitations defenses in the foreign forum. *Lueck*, 236 F.3d at

2    1143; *Tang v. Synutra Int'l, Inc.*, No. 09-0088, 2010 WL 1375373, at *5 (D. Md.

3    March 29, 2010). In addition, some courts take into account whether an alternative

4    court's judgment can be readily enforced. *See, e.g., Turedi*, 460 F. Supp. 2d at 529

5    (conditioning dismissal of action on grounds of *forum non conveniens* on, *inter alia*,

6    defendants' agreement to satisfy any final judgment rendered by the foreign forum in

7    connection with subject matter of litigation). In this instance, if this Court dismisses

8    this action based on *forum non conveniens* grounds, the Toyota Defendants have

9    already agreed to accept service of process in each of the thirteen relevant foreign

10   forums, to submit to the personal jurisdiction of each foreign forum, and to comply

11   with full and final judgments in each of the foreign forums. Koyanagi Decl. ¶6;

12   Tanaka Decl. ¶6; Nepute Decl. ¶2; Ro Decl. ¶6; Pelliccioni Decl. ¶2. They have also

13   agreed to waive statute of limitations defenses that they would have against Foreign

14   Plaintiffs provided that Foreign Plaintiffs commence their foreign UA litigation within

15   120 days of a *forum non conveniens* dismissal. *Id.* These representations are

16   sufficient to make each of the foreign forums available to Foreign Plaintiffs.

17           As Toyota Defendants establish in Section II below, it is clear that each of

18   Foreign Plaintiffs' countries is an adequate alternative forum for resolving their

19   respective claims against the Toyota Defendants. The only remaining inquiry is

20   whether a balancing of the public and private interest factors articulated in *Gulf Oil*

21   *Corp. v. Gilbert* weighs in favor of dismissal. "'[I]f the balance of conveniences

22   suggests that trial in the chosen forum would be unnecessarily burdensome for the

23   defendant or the court, dismissal is proper.'" *Lueck*, 236 F.3d at 1145. Section III

24   below sets forth the multiple private and public interest reasons that maintaining this

25   litigation in the United States would be unnecessarily burdensome for plaintiffs as

26   well as defendants and for the Court, and demonstrates that this litigation should be

27   dismissed in favor of each of each of the alternate forums, which are far better suited

28   to hear Foreign Plaintiffs' claims.

## II.   EACH OF FOREIGN PLAINTIFFS' HOME COUNTRIES CONSTITUTES AN ADEQUATE ALTERNATE FORUM

A foreign forum is adequate "unless it offers no practical remedy for the plaintiff's complained of wrong." *Lueck*, 236 F.3d at 1144.  In ruling on a motion to dismiss on the basis of forum non conveniens, this Court is "not required to ask whether Plaintiffs could bring this lawsuit" in the applicable alternative forum, but rather whether the forum "offers a remedy for their losses." *Id.* at 1143.  Indeed, "[i]t is only in rare circumstances...where the remedy provided by the alternative forum...is so clearly inadequate or unsatisfactory, that it is no remedy at all, that this requirement is not met." *Id.*

The availability of an adequate alternate forum is not dependent upon "the existence of the identical cause of action" in that forum – the inquiry is concerned with whether the foreign court is capable of litigation "the essential subject matter" of the dispute. *Palacios v. Coca-Cola Co.*, No. 10 Civ. 3120 --- F. Supp. 2d ----, 2010 WL 4720409, at *8 (S.D.N.Y. Nov. 19, 2010).  For example "the inability to assert a RICO claim in a foreign forum does not preclude a forum non conveniens dismissal." *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 769 (9th Cir. 1991).

A forum will also not be deemed inadequate if it would offer plaintiffs a different or lesser remedy than they could expect to receive in the U.S. court system. *Piper Aircraft*, 454 U.S. at 250 (1981); *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656 (9th Cir. 2009); *Lueck*, 236 F.3d at 1143.  Indeed, since plaintiffs ordinarily attempt to bring suit in the forum that offers them what they perceive as the most favorable outcome, taking differences in the potential outcome into account would gut the *forum non conveniens* analysis.  *Piper Aircraft*, 454 U.S. at 250.  The Supreme Court has also recently disapproved of the notion that the U.S. should be "the Shangri-La of class-action litigation for lawyers representing those allegedly cheated" overseas.  *Morrison v. Nat'l Austl. Bank Ltd.*, 130 S. Ct. 2869, 2886 (2010).  Differences between the two legal systems, even if they inure to

1   plaintiffs' detriment, do not suggest that" a foreign forum is inadequate, and

2   "'[d]ifference is not to be equated with deficiency.'" *In re Union Carbide Corp. Gas*

3   *Plant Disaster at Bhopal, India in December, 1984,* 634 F. Supp. 842, 852 (S.D.N.Y.

4   1986), *aff'd as modified,* 809 F.2d 195 (2d Cir. 1987). Only if "the remedy provided

5   by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy

6   at all" should the difference in law weigh against dismissal. *Piper Aircraft,* 454 U.S.

7   at 254.

8           In addition, differences between legal systems and legal mechanisms, such as

9   pre-trial discovery, the availability of jury trials, and the nature of appellate review

10   will not render a forum inadequate. *Lockman Found.* 930 F.2d at 768 (9th Cir. 1991).

11   In addition, "[c]ourts must be cautious before finding incompetence or corruption by

12   other nation's judicial systems." *Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328,

13   2008 WL 4849334, at *7 (S.D.N.Y. 2008) (finding that Egypt was adequate alternate

14   forum and dismissing complaint on grounds of forum non conveniens).

15           In a hearing held on May 13, 2010, this Court asked counsel for Foreign

16   Plaintiffs "why would [foreign] plaintiffs be suing in the United States when there are

17   fully developed judicial systems in those countries?" Counsel's response provided

18   three rationales: (1) "in the countries that I have mentioned to you, they do not have

19   class actions"; (2) "[t]hey do not have the theory of liability"; and (3) "the product that

20   was defective was manufactured here in the USA." Gilford Decl., Exh. J. The first

21   rationale, while it suggests forum shopping, is otherwise meaningless to the *forum non*

22   *conveniens* analysis, because an alternative forum without a class action mechanism is

23   still adequate for *forum non conveniens* purposes. *See, e.g., In re Alcon Shareholder*

24   *Litig.,* 719 F. Supp. 2d 263, 273 (S.D.N.Y. 2010); *Deirmenjian v. Deutsche Bank,*

25   *A.G.,* No. 06-00774, 2006 WL 4749756, at *8 (C.D. Cal. Sept. 25, 2006). The second

26   rationale is incorrect: as is set forth below on a country by country basis, each of the

27   foreign forums provide theories of liability for claims such as those asserted by

28   Foreign Plaintiffs, and there is no requirement that those theories of liability must be

1   *"the"* theory of liability asserted in the ACFPC.  The third rationale, as has already

2   been explained in the Foreign Jurisdictional Issues Motions, is neither determinative

3   nor persuasive as to Foreign Plaintiffs who purchased, drove, and repaired their

4   vehicles in their own countries, particularly where their own VIN numbers prove that

5   their vehicles were manufactured outside of the United States.

6        Foreign Plaintiffs allege that the members of the purported class reside in

7   thirteen different countries:  Australia, China, Egypt, Germany, Guatemala, Indonesia,

8   Jamaica, Malaysia, Mexico, the Philippines, Russia, South Africa and Turkey.[2]

9   (ACFPC ¶ 297.)  As is described in detail below, and as has been determined by

10  multiple courts nationwide, each of these countries possesses an independent judiciary

11  and upholds the rule of law, provides plaintiffs with a remedy, and therefore

12  constitutes an adequate alternate forum.

13  **A.    Australia is an Adequate Alternate Forum**

14       Foreign Plaintiff Susan Ong is a citizen of the Philippines and a resident of

15  Australia.  Australia has a system of courts exercising state and federal jurisdiction in

16  civil matters, and it appears that the Australian Foreign Plaintiff's claims would be

17  within the jurisdiction of either the Australian state or federal court.  (Declaration of

18  Christopher John Blanden in Support of Toyota Defendants' Motion to Dismiss

19  Foreign Plaintiffs' Amended Complaint (the "Blanden Decl.") ¶¶ 12, 25.)   The

20  Australian legal system is comprised of both trial and appellate courts (as well as the

21  High Court of Australia within the federal court system). (*Id.* ¶¶ 13-19.)

22       Australian law recognizes a tort of negligence, and permits product-related

23  claims and claims for negligent misrepresentation.  (*Id.* ¶¶ 47, 49, 51.)  Australian

24  jurisprudence includes decisions against automotive manufacturers in product-related

25

26  _____

27  [2] As stated in footnote 1 above, the sole named plaintiff from Peru has been dismissed
    from the case.  Foreign named plaintiffs only have standing to represent plaintiffs
    residing in their own countries. *Dornberger v. Metro. Life Ins. Co.*, 182 F.R.D. 72, 82

28  (S.D.N.Y. 1998).  Because it no longer has a class representative, Peru is no longer at
    issue in this litigation.

1  claims. (*Id.* ¶ 47.)  Australia has also enacted consumer protection laws pertaining to

2  misrepresentation, breach of (implied) warranties, non-merchantable quality,

3  misleading or deceptive conduct, and product liability; a number of remedies,

4  including injunctions and damages, are available for violations of these laws. (*Id.* ¶¶

5  54, 57-58.)  The applicable period of limitations for claims based in contract or on

6  negligence or violations of the consumer protection laws is six (6) years; accordingly,

7  per the allegations included in the ACFPC, the Australian Foreign Plaintiff's claims

8  would not be time-barred. (*Id.* ¶¶ 60-63; ACFPC ¶ 78.)  Group proceedings or class

9  actions are permitted under Australian law per Part 4A of the Supreme Court Act

10  1986. (*Id.* ¶¶ 35-46.)

11        For these reasons, U.S. courts recognize that Australia's legal system is fair and

12  independent and determine that that Australia is an adequate alternative forum under a

13  forum non conveniens analysis. *See also Mastafa v. Australian Wheat Bd. Ltd.*, No.

14  07 Civ. 7955, 2008 WL 4378443, at *6 (S.D.N.Y. Sept. 25, 2008) (noting that

15  "Australia's judicial system is…'fair, independent and operates according to the rule

16  of law,'" and that "there is no question that Australia would be an adequate alternative

17  forum."). *See also Auxer v. Alcoa, Inc.,* No. 10-2132, 2011 WL 180034 at *2 (3d Cir.

18  Jan. 20, 2011) (upholding determination that Australia was adequate forum where

19  defendant agreed that it was subject to service of process in Australia, where Australia

20  recognized tort of negligence despite "[d]isparities between the laws of the chosen and

21  alternative forums," as referenced by plaintiffs), and despite unavailability of general

22  discovery deposition process, since all parties would be "subjected to the same

23  restrictions."); *Intercontinental Dictionary Series v. De Gruyter*, 822 F. Supp. 662,

24  681 (C.D. Cal. 1993) (disagreed with on other grounds) (holding that dismissal based

25  on forum non conveniens would be warranted, if court had subject matter jurisdiction,

26  where "Australia is an adequate alternative forum; the private interests weigh heavily

27  in favor of an Australian forum; and Australia's compelling local interest in the

28  controversy outweighs the minimal interests the United States may have in the

1   matter.").

2   **B.   China is an Adequate Alternate Forum**

3       Plaintiffs Xiaobin Wang, Dawei Li, Guicai Liu, Zhijie Deng, Lianfang Wang,

4   Lin Zhang, Yiqin Zhang, Lin Yang, Cheng Li Zhang, Wei Guo, Yilong Liu, and Hu

5   Jin are citizens and residents of China.   The People's Republic of China's ("PRC")

6   legal system exercises judicial power independently from other organizations or

7   individuals pursuant to its Constitution.   (Declaration of Randall Peerenboom in

8   Support of Toyota Defendants' Motion to Dismiss Foreign Plaintiffs' Amended

9   Complaint (the "Peerenboom Decl.") ¶ 19.)   The PRC's legal system is heavily based

10   on civil law systems; however, the influence of common law systems like that of the

11   U.S. is increasing.   (*Id.*)   Lawsuits involving foreign parties may be brought in higher

12   level courts within the PRC legal system (i.e., the Intermediate or High Courts,

13   depending on the amount in controversy), and the jurisdictional amounts of such

14   claims are lower for civil suits that involve a foreign element (such as foreign parties).

15   (*Id.* ¶ 26-27.)   If this case proceeds in China, it will be heard by higher level courts in

16   the Civil Division, which is viewed as having the most qualified and sophisticated

17   judges in the court.   (*Id.* ¶ 61.)

18       The laws of the PRC recognize and would permit the Chinese Foreign Plaintiffs

19   to bring the following claims against the Toyota Defendants:   breach of contract;

20   unfair competition; false advertisement; unjust enrichment and product liability.   (*See*

21   *id.* ¶ 22.)   The Chinese Foreign Plaintiffs' claims would not be time-barred per the

22   allegations included in the ACFPC.   (*Id.* ¶ 36.)   Discovery is available in cases

23   brought before Chinese courts, and parties may inspect documents and materials and

24   to obtain the testimony of witnesses with information about the case, who are

25   obligated to testify in the absence of hardship.   (*Id.* ¶¶ 39-43.)   Parties who fail to

26   produce evidence may be sanctioned or fined by the court.   (*Id.* ¶¶ 44-46.)   The PRC's

27   legal system would permit a multi-plaintiff suit to be brought against the Toyota

28   Defendants, and Chinese courts have extensive experience in hearing multi-party

1    cases. (*Id.* ¶¶ 30-31.)

2        U.S. courts performing a forum non conveniens analysis (including but not

3    limited to the Supreme Court) regularly hold that that China is an adequate alternative

4    forum.    *See Sinochem*, 549 U.S. at 435 (holding that China was an adequate

5    alternative forum in dispute between Chinese corporation and Malaysian company);

6    *Huang v. Advanced Battery Technologies, Inc.*, No. 09 CV 8297, 2010 WL 2143669,

7    at **5-6 (S.D.N.Y. May 26, 2010) (finding China to be adequate alternative forum for

8    contractual dispute with ancillary tort claims where defendant consented to personal

9    jurisdiction and agreed to toll statute of limitations claim for 120 days from date of

10   dismissal by U.S. court, and agreed to make all evidence and witnesses available that

11   Chinese court deemed relevant); *Tang*, 2010 WL 1375373, at **6-10 (finding that

12   defendants established that China is an adequate forum in declarations submitted by

13   parties "[u]nder the low threshold established by the Supreme Court in *Piper Aircraft*

14   *Co*.").

15       **C.    Egypt is an Adequate Alternate Forum**

16       Plaintiff Mostfa Fahmy is a citizen and resident of Egypt.  Egypt's judiciary is

17   separate and independent from the executive and legislative branches of the

18   government; its court system is based on a system of specialized circuits and is

19   divided into Civil, Commercial, Family and Criminal circuits (Declaration of Dr.

20   Osama Ahmed Shawki el Meligy in Support of Toyota Defendants' Motion to

21   Dismiss Foreign Plaintiffs' Amended Complaint (the "Shawki el Meligy Decl.") ¶¶ 6,

22   9-11, 14-16.)  Egypt's Civil Code recognizes causes of action for tort and breach of

23   contract, and permits a successful claimant to recover damages for loss resulting from

24   the failure to perform an obligation or a delay in performance.  (*Id.* ¶¶ 21-33.)  In

25   addition to monetary or pecuniary damages, the court may determine that additional or

26   other relief, including specific performance, is warranted.  (*Id.* ¶ 27.)  Egypt further

27   recognizes that a manufacturer or distributor of a product may be liable in tort where

28   that product is defective or causes physical or material damage.  (*Id.* ¶¶ 35-38.)  Based

1    on the allegations included in the ACFPC, the Egyptian Foreign Plaintiff's claims

2    would not be time-barred under Egyptian law.  (*Id.* ¶ 39.) Discovery, including the

3    production and review of documents, declarations, interrogatories, and witness

4    testimony, is available in cases brought in the Egyptian legal system.  (*Id.* ¶¶ 63-65.)

5    Egypt has a detailed system for estimating and awarding damages to successful

6    claimants.  (*Id.* ¶¶ 40-56.)

7         U.S. courts have repeatedly determined that Egypt is an adequate alternative

8    forum.  *See Niv* 710 F. Supp. 2d at 337 (S.D.N.Y. 2008) (finding Egypt to be adequate

9    alternative forum where defendants stipulated that they were amenable to service in

10   Egypt and rejecting argument that forum could not provide fair, safe trial to plaintiffs,

11   stating "[c]ourts must be cautious before finding incompetence or corruption by other

12   nation's judicial systems"); *Dabbous v. Am. Express Co.*, No. 06 Civ. 11345, 2009

13   WL 1403930, at **5-6 (S.D.N.Y. May 8, 2009) (noting that courts in jurisdiction had

14   previously found Egypt to be adequate alternative forum and finding that plaintiff's

15   argument that remedy may be more difficult or time consuming in Egypt did not

16   warrant conclusion that Egypt was not adequate alternative forum).

17        Moreover, U.S. case law is clear that the recent political events in Egypt do not

18   render Egypt an inadequate forum because these events have not had an adverse effect

19   on its judicial system.  *See Paolicelli v. Ford Motor Co.*, 289 F. App'x 387, 391 (11th

20   Cir. 2008) (noting, in upholding dismissal on grounds of forum *non conveniens*, that

21   alleged political instability in Columbia did not weigh against dismissal on grounds of

22   forum non conveniens absent a showing that unrest affected Columbian judicial

23   system or litigation of the case); *Rustal Tarading U.S., Inc. v. Makki*, 17 F. App'x 331

24   (6th Cir. 2001) (affirming dismissal on grounds of forum *non conveniens* despite

25   allegations of political unrest in Sierra Leone the absence of credible evidence that

26   parties would be prevented from accessing its courts); *Blanco v. Banco Indus. de*

27   *Venez., S.A.*., 997 F.2d 974 (2d Cir. 1993) (affirming decision that Venezuela was

28   adequate alternative forum despite allegations of political unrest in Venezuela).  As

1    Dr. Shawki el Meligy's declaration makes clear, the recent political events in Egypt

2    have not changed Egypt's Civil Code and are not expected to affect resolution of civil

3    litigation matters. (Shawki el Meligy Decl. ¶¶ 17-18.)

4        **D.**    <u>Germany is an Adequate Alternate Forum</u>

5        Plaintiff Gabriele Zieme-Diedrich is a citizen and resident of Germany.

6    Germany's judicial branch is independent from the executive and legislative branches

7    of its government and provides for the full and fair litigation of claims. (Declaration

8    of Dr. Stefan Rützel in Support of Toyota Defendants' Motion to Dismiss Foreign

9    Plaintiffs' Amended Complaint (the "Rützel Decl.") ¶ 7.) The German legal system is

10   comprised of local and regional trial courts, as well as two levels of appellate courts

11   and the Federal Constitutional Court, the highest court in Germany.   (*Id.* ¶ 9.)

12   Germany has adopted a civil law system, which includes specific provisions

13   governing contracts, torts and damages. (*Id.* ¶ 11.)

14       Causes of action similar to those asserted by the German Foreign Plaintiffs in

15   the ACFPC are available under German law, including claims for breach of contract

16   and breach of guarantee, as well as for fraudulent misrepresentation and false

17   advertising. (*Id.* ¶¶ 14-33.) Pre-trial discovery is permitted under German law, and

18   the court may order or require the production of documents or the testimony of an

19   expert in deciding a case. (*Id.* ¶ 51.) German plaintiffs with claims that are legally or

20   factually related may join their claims in a single case before a German court with

21   jurisdiction.   (*Id.* ¶ 47.)   The German legal system also provides for legal aid to

22   indigent claimants who have difficulty paying the cost of litigation of their claims. (*Id.*

23   ¶ 53.)

24       For the reasons set forth above, U.S. courts routinely find that Germany is an

25   adequate alternative forum despite superficial differences in the German and U.S.

26   legal systems. *See Kirch v. Liberty Media Corp.,* No. 04 Civ. 667, 2006 WL 3247363,

27   at **5-7 (S.D.N.Y. Nov. 8, 2006) (finding that Germany was adequate forum despite

28   differences in pleading requirements and discovery, and noting that "'some

1   inconvenience or the unavailability of beneficial litigation procedures similar to those

2   available in the federal district courts does not render an alternative forum

3   inadequate.'"); *Helog AG v. Kaman Aerospace Corp.*, 228 F. Supp. 2d 91, 93 (D.

4   Conn. Sept. 30, 2002) (holding Germany adequate forum based on recognition by

5   German law of "causes of action for products liability and wrongful death," and where

6   plaintiffs did not "seriously contend" that unavailability of trial by jury and punitive

7   damages would deprive them of adequate forum); *Baumgart v. Fairchild Aircraft*

8   *Corp.*, No. SA-90-CA-818, 1991 WL 487242, at *2 (W.D. Tex. Sept. 30, 1991), *aff'd*,

9   981 F.2d 824 (5th Cir. 1993).

10        **E.    Guatemala is an Adequate Alternate Forum**

11        Plaintiff Gustavo Lopez is a citizen and resident of Guatemala. Guatemala's

12   legal system is independent from the other branches of government, and its

13   Constitution guarantees due process to all individuals in Guatemalan courts.

14   (Declaration of Francisco Chavez Bosque in Support of Toyota Defendants' Motion to

15   Dismiss Foreign Plaintiffs' Amended Complaint (the "Chavez Decl.") ¶ 8.)   The

16   Guatemalan legal system consists of both lower and appellate courts, as well as the

17   Supreme Court of Justice. (*Id.* ¶ 9.)   Parties are permitted to engage in discovery,

18   which includes the production and exchange of documents and the taking of

19   deposition testimony, before the complaint is answered in the event that a defendant

20   raises any preliminary defenses, as well as after the complaint has been answered. (*Id.*

21   ¶¶ 21, 29.)   Parties may also make a request to the court for a declaration of an

22   opposing party or a material witness.   (*Id.* ¶¶ 23-26.)   An indigent plaintiff in

23   Guatemala may seek and obtain free legal assistance to prosecute claims. (*Id.* ¶ 14.)

24        The Guatemalan Civil Code recognizes claims sounding in both contract and

25   tort law, including claims based on alleged hidden defects in consumer products. (*Id.*

26   ¶ 38.)   The Guatemalan Foreign Plaintiffs' claims could be recognized under the

27   Guatemalan Civil Code as claims for annulment, redhibition (i.e., dissolution of

28   contract), hidden defects, negligence, damages and unjust enrichment. (*Id.* ¶ 51.)

1    Causes of action for unfair competition, products liability and violations of consumer

2    protection laws, similar to those included in the ACFPC, are also recognized by the

3    Guatemalan legal system. (*Id.* ¶¶ 56-57.)

4         Guatemalan courts will not be prevented from exercising jurdisction over

5    claims by Guatemalan Foreign Plaintiffs as a result of the filing of the ACFPC in the

6    U.S. and outside of Guatemala.    (*Id.* ¶¶ 45-47.)   If Guatemalan Foreign Plaintiffs

7    bring an action in the Guatemalan courts following a dismissal of the ACFPC on

8    grounds of forum non conveniens, the Guatemalan court will refer to the concepts and

9    amounts of damages in this Court in rendering a decision on the claims. (*Id.* ¶ 48.)

10        For the foregoing reasons, U.S. courts have held that Guatemala is an adequate

11   alternative forum. *See Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283,

12   1290-92 (11th Cir. 2009) (affirming decision that Guatemala was adequate alternative

13   forum based on determination that Guatemala possessed jurisdiction over the entire

14   case and the parties, and rejecting plaintiffs' argument that Guatemala was

15   purportedly unsafe and corrupt), *cert. denied,* 131 S. Ct. 102 (2010); *Palacios,* 2010

16   WL 4720409, at **6-12 (S.D.N.Y. Nov. 19, 2010) (concluding that Guatemala was

17   adequate alternative forum where defendant consented to process in Guatemala, where

18   plaintiffs failed to undermine showing that Guatemalan courts had not been

19   "permanently 'divested' of jurisdiction" by initiation of action in U.S., where

20   "essential subject matter" of dispute could be litigated in Guatemala, where plaintiffs

21   made no showing of inadequate procedural safeguards in Guatemalan courts, and

22   where "every American court to have considered the issue has found Guatemalan

23   courts to be adequate alternatives").

24   **F.   Indonesia is an Adequate Alternate Forum**

25        Plaintiffs Sisiliana Ridwan, Nani Indriyastuti, Melati Indrayani, Jasni, Ananda,

26   Chairul Lubis, Edward Syahputra, Herbert Sihite, Martha Siregar, Pangihutan

27   Simanjuntak, Tetti Suriati and Trimurti Jazanul are citizens and residents of

28

Indonesia.[3]  The Indonesian legal system, which is largely based on the Dutch legal system, is independent from the other branches of the Indonesian government and free from intervention by the legislature.  (Declaration of Muhammad Husseyn Umar in Support of Toyota Defendants' Motion to Dismiss Foreign Plaintiffs' Amended Complaint (the "Umar Decl.") ¶¶ 12-13, 17-18.)  The Indonesian legal system consists of a three-tiered court system that provides for various levels of appeal from lower court decisions.  (*Id.* ¶ 20.)  Class actions brought by and on behalf of consumers with claims involving common questions or fact or law are recognized by and available under Indonesian law. (*Id.* ¶¶ 53-57.)

Indonesian law, which is based on a civil law system, provides protections for consumers of goods and services under the Indonesian Consumer Protection Law.  (*Id.* ¶¶ 27-28.)  Indonesian law recognizes claims based on violations of consumer protections laws, including product liability, false advertising and misrepresentations regarding products; it recognizes claims sounding in both tort and breach of contract and provides remedies to consumers who have sustained damage under either theory of liability.  (*Id.* ¶¶ 27-45.)  Discovery, through production and examination of documentary evidence, as well as witness examinations, is available in cases brought before Indonesian courts. (*Id.* ¶¶ 60-61.)  The Indonesian legal system is efficient:  in general, an Indonesian court will render a judgment within approximately six (6) months from the commencement of an action (although a court may take longer to render a decision, depending on the complexity of the case).  (*Id.* ¶ 63.)  Based on the allegations included in the ACFPC, the Indonesian Plaintiffs' claims are not time-barred under Indonesian law. (*Id.* ¶ 49.)

U.S. courts have acknowledged that Indonesia is an adequate alternative forum. *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 74-75 (2d Cir. 1998) (affirming decision that Indonesia was adequate alternative forum for

---

[3] Plaintiffs have also voluntarily dismissed Indonesian named plaintiff Melati Indrayani from their complaint.

1   action alleging breach of contract, breach of fiduciary duty and violations of RICO

2   even though Indonesia does not have RICO statute where district court determined

3   that causes of action available in Indonesian courts adequately addressed the

4   underlying controversy).

5       **G.   Jamaica is an Adequate Alternate Forum**

6       Plaintiff Paul Anthony Banton is a citizen and resident of Jamaica. Jamaica's

7   legal system, which is patterned on that of the United Kingdom, is independent, and

8   its common law, which is the English common law, recognizes and gives effect to the

9   full range of equitable rights and remedies available under English law. (Declaration

10  of Sandra Minott-Phillips in Support of Toyota Defendants' Motion to Dismiss

11  Foreign Plaintiffs' Amended Complaint (the "Minott-Phillips Decl.") ¶ 9.)   The

12  Jamaican legal system recognizes claims that, like Foreign Plaintiffs' claims, are

13  based on alleged breach of contract and tort. (*Id.* ¶ 14.)   Jamaica has also enacted a

14  Fair Competition Act that permits consumers to bring claims arising out of alleged

15  misleading advertising, and a Consumer Protection Act that provides for civil liability

16  of a provider of goods who is found to be negligent where such goods cause personal

17  injury or other harm.   (*Id.* ¶¶ 21, 22.)   Based on the allegations included in the

18  ACFPC, claims by the Jamaican Foreign Plaintiff would not be time-barred under

19  Jamaican law, which has a six-year statute of limitations for claims in tort or contract.

20  (*Id.* ¶ 23.)

21      Jamaica's civil procedure rules permit representative actions on behalf of a

22  defined class of persons with similar claims or interests in the subject matter of

23  litigation. (*Id.* ¶ 13.)   A Jamaican court may award aggravated damages (where it

24  determines that the defendant's motives or conduct aggravated the plaintiff's injury)

25  or exemplary damages (which are intended to punish the defendant and deter

26  subsequent similar behavior) to a plaintiff where appropriate. (*Id.* ¶¶ 19, 20.)

27      U.S. courts have regularly found Jamaica to be an adequate alternative forum

28  under a forum *non conveniens* analysis. *See Seales v. Panamanian Aviation Co.*, 356

1    F. App'x 461, 463-64 (2d Cir. 2009) (finding district court did not abuse its discretion

2    in determining Jamaica was adequate forum where defendant was amenable to process

3    there and statute upon which plaintiff relied in arguing that statute of limitations

4    would bar his claim in Jamaica (1) was not raised before district court; and (2) would

5    bar suit in U.S. as well); *Proyectos Orchimex de Costa Rica S.A. v. E.I. du Pont de*

6    *Nemours & Co.,* 896 F. Supp. 1197, 1201-02 (M.D. Fla. 1995) (noting that other

7    courts have held Jamaica to be an adequate forum, and that it is not necessary for

8    alternative forum to have "extensive pre-trial discovery procedures comparable to

9    those found in the United States," in concluding that adequate alternative forum

10   existed based on the record and applicable law)

11           **H.    Malaysia is an Adequate Alternate Forum**

12           Plaintiff Mariam Ibrahim is a citizen and resident of Malaysia.  The judicial

13   system of Malaysia, which is independent from the other branches of Malaysia's

14   government per the Federal Constitution of Malaysia, is based on the common law

15   system, and English law would be applicable to claims brought in Malaysia that are

16   similar to those asserted by Foreign Plaintiffs against the Defendants.  (Declaration of

17   Dr. Yeow Choy Choong in Support of Toyota Defendants' Motion to Dismiss Foreign

18   Plaintiffs' Amended Complaint (the "Choy Choong Decl.") ¶¶ 16-17.)    Malaysian

19   law recognizes claims sounding in tort and breach of contract; Malaysia has also

20   enacted various statutes, including the Consumer Protection Act 1999 and the Sales of

21   Goods Act 1957 (Revised 1989), that permit courts to grant a wide range of relief to a

22   consumer who has suffered or is likely to suffer loss or damages in connection with

23   the purchase or use of goods, including vehicles, or for breach of warranty by a seller.

24   (*Id.* ¶¶ 25-26, 36, 41.)   The applicable period of limitations for claims founded on

25   contract or tort is six (6) years; accordingly, per the allegations included in the

26   ACFPC, the Malaysian Foreign Plaintiff's claims would not be time-barred. (*Id.* ¶ 31;

27   ACFPC ¶ 72.)  Representative Actions are available under Malaysian law to members

28   of a class with common grievances or injuries.  (*Id.* ¶ 53.)

-21-

1    U.S. courts have previously found that Malaysia is an adequate alternative

2    forum for deciding claims that, like the Malaysian Foreign Plaintiffs', sound in both

3    tort and breach of contract. *See Jayaraman v. Salomon, Inc.*, No. 87 Civ. 2781, 1991

4    WL 61071, at *4 (S.D.N.Y. Apr. 5, 1991) (holding that Malaysia was adequate

5    alternative forum for hearing claims based on breach of contract, negligence, breach

6    of fiduciary duty and infliction of emotional and physical harm where explanation of

7    Malaysia law presented in affidavit offered by defendants indicated that remedies

8    available in Malaysia were "far from 'clearly unsatisfactory.'").

9    **I.    Mexico is an Adequate Alternate Forum**

10    Plaintiffs Laura Jimenez Centeno, Eliza Esquivel Lozano, Alfredo Hernandez

11    Barranco, Ernesto Reyes Diaz, Emilio Mogollon Quintanar, and Gonzalo Oros

12    Villalobos are citizens and residents of Mexico.  The judiciary branch of Mexico is

13    stable and independent from the other branches of the Mexican government.

14    (Declaration of Professor Jose M. Serna de la Garza in Support of Toyota Defendants'

15    Motion to Dismiss Foreign Plaintiffs' Amended Complaint (the "Serna de la Garza

16    Decl.") ¶¶ 16-18.)  Similar to the legal system of the U.S., the Mexican judicial

17    system is comprised of both a federal court system and a state court system. (*Id.* ¶ 6.)

18    Mexican law recognizes and permits claims sounding in tort and in breach of

19    contract. (*Id.* ¶¶ 30-40.)  Mexico's Federal Act on Consumer Protection ("FACP")

20    provides remedies to consumers of goods or services who have been damaged or

21    incurred losses as a result of the conduct of suppliers, including claims derived from

22    alleged hidden defects of products or services.  (*Id.* ¶¶ 20, 23, 30-40.)  The FACP

23    provides for representation of consumers individually or in group actions. (*Id.* ¶¶ 26-

24    29.)   Mexican courts have the power to compel witnesses to testify in order to

25    facilitate the obtaining of evidence and information relevant to a case. (*Id.* ¶ 59.)  It

26    appears that the Mexican Foreign Plaintiffs' claims would not be time-barred because

27    Mexican law provides for the tolling of the applicable statue(s) of limitations where an

28    action is initially brought outside of Mexico; moreover, a claim may only be barred by

-22-

the statute of limitations if it is raised as a defense by the defendant.  (*Id.* ¶¶ 49-50.)

Mexican law permits the recovery of both patrimonial, or money, damages and moral damages. (*Id.* ¶ 45.)   U.S. courts have recognized the apparent availability of claims similar to those available in the U.S., as well as damages, in finding that Mexico is an adequate alternative forum and that dismissal. *See Loya*, 583 F.3d at 666 (upholding lower court determination that Mexico was adequate alternative forum, notwithstanding plaintiffs argument of difference in potential recovery, where "[u]nquestionably, Mexico provides a remedy for breach of contract"); *Gallego v. Garcia*, No. 07CV1185, 2010 WL 2354585, at *3 (S.D. Cal. June 9, 2010) (holding that Mexico was adequate alternative forum to hear plaintiffs' fraud and state law tort action where plaintiffs offered no evidence that they "will have no remedy or even a diminished remedy against Defendants should they prove their factual allegations in a Mexican court"); *Ruelas Aldaba v. Michelin N. Am., Inc.*, No. C 04-5369, 2005 WL 3560587, at *4 (N.D. Cal. Dec. 29, 2005) (noting that courts have found that Mexico is an adequate alternative forum in cases involving manufacturing defects, despite fact that strict liability theory is unavailable in Mexican legal system, in determining Mexico was adequate alternative forum).

## J.    The Philippines is an Adequate Alternate Forum

Plaintiff Francis Joseph Coronel is a citizen and resident of the Philippines. The Philippine judicial system, which is based primarily on the Spanish and American legal systems, is independent from the executive and legislative branches of the Philippine government.  (Declaration of Lorna Patajo Kapunan in Support of Toyota Defendants' Motion to Dismiss Foreign Plaintiffs' Amended Complaint (the "Patajo Kapunan Decl.") ¶¶ 15-17.)   The Philippines has a civil law system, and further recognizes and adheres to generally accepted principles of international law. (*Id.* ¶¶ 19, 22.)    The Philippine Constitution, which is based on the U.S. Constitution, recognizes the right of all people to equal protection and due process of the law. (*Id.* ¶¶ 16, 24.)

1    The law of the Philippines recognizes and permits causes of action for torts and

2    well as for breach of contract or warranty. (*Id.* ¶¶ 25, 38-40.) Additionally, the

3    Consumer Act of the Philippines provides remedies to consumers for deceptive acts or

4    practices by a seller or supplier of goods, including an injunction restraining the

5    conduct of the seller or supplier and actual damages to the victim. (*Id.* ¶¶ 41-43.) The

6    Philippine Foreign Plaintiff's claims would not be time-barred per the allegations

7    asserted in the ACFPC. (*Id.* ¶ 31; ACFPC ¶ 73.) The Philippines permits class or

8    group actions to be brought in civil cases. (*Id.* ¶¶ 58-60.) Depositions and other

9    modes of discovery, including interrogatories and other written discovery, as well as

10    production and inspection of documents and things, may be utilized by litigants in

11    cases brought in the Philippines. (*Id.* ¶¶ 69-71.)

12    The Philippines provides for legal assistance to indigent litigations, including

13    the waiver of docket fees. (*Id.* ¶¶ 61-64.)

14    U.S. courts, including courts in the Ninth Circuit, have concluded that the

15    Philippines is an adequate alternative forum in connection with a motion to dismiss on

16    grounds of forum *non conveniens*. *Delgado v. Shell Oil Co.*, 890 F. Supp. 1324,

17    1362-65 (S.D. Tex. 1995) (concluding the Philippines, among other forums, was

18    adequate alternate forum), *aff'd*, 231 F.3d 165 (5th Cir. 2000); *Contact Lumber Co. v.*

19    *P.T. Moges Shipping Co., Ltd.*, 918 F.2d 1446, 1450 (9th Cir. 1990) (affirming

20    determination that the Philippines was adequate alternative forum where defendant

21    agreed to submit to jurisdiction there and waived any defense of statute of limitations

22    which would not be available if case was heard in U.S., and where plaintiff failed to

23    present adequate support that litigation in the Philippines is time consuming or that

24    collecting a judgment is problematic

25    **K.    Russia is an Adequate Alternate Forum**

26    Plaintiffs Natalia Komarova, Igoshin Vladimir Vladimirovich, and Valerii

27    Kolganov are citizens and residents of Russia. The Russian judicial system consists

28    of a unified system of courts that are independent of the legislative and executive

1   branches of the Russian government.    (Declaration of William Elliott Butler in

2   Support of Toyota Defendants' Motion to Dismiss Foreign Plaintiffs' Amended

3   Complaint (the "Butler Decl.") ¶¶ 14, 16, 21.)    The Civil Code of the Russian

4   Federation contains various provisions intended to protect consumers in connection

5   with transactions for the purchase and sale of good, and recognizes causes of action

6   for violations of these provisions, including claims sounding in tort and breach of

7   contract.  (*Id.* ¶¶ 36-47.)  Russian courts consider thousands of consumer protection

8   cases each year.  (*Id.* ¶ 64.)  Indeed, Ms. Komarova currently has such a consumer

9   protection case pending in her local court.  Gilford Decl. Exh. E.  Class actions are

10  permitted in consumer protection cases under Russian law.  (*Id.* ¶ 41.)

11      Evidence, including documentary evidence and testimony obtained via the

12  examination of witnesses, may be obtained in the Russian judicial system, with the

13  assistance of the court or otherwise.  (Butler Decl. ¶ 46.)  Russia has a detailed system

14  for the enforcement of money judgments and other judgments in civil suits decided by

15  Russian courts.  (*Id.* ¶¶ 48-57.)

16      For the foregoing reasons, U.S. courts have repeatedly found that Russia is an

17  adequate alternative forum. *See Vorbiev v. McDonnell Douglas Helicopters, Inc.*, No.

18  C 08-05539, 2009 WL 1765675, at * 2 (N.D. Cal. June 18, 2009) (holding Russia was

19  adequate alternative forum where defendant consented to jurisdiction of Russian

20  courts; where submissions by Russian practicing lawyer established that any judgment

21  by Russian court would be enforceable and discovery would be available, and where

22  plaintiff's submission did not demonstrate that plaintiffs could not obtain relief within

23  Russian judicial system); *Overseas Media, Inc. v. Skvortsov*, 277 F. App'x 92, 97 (2d

24  Cir. 2008) (affirming determination that Russia was adequate alternative forum where

25  it was undisputed that defendant was subject to service of process).

26      **L.    South Africa is an Adequate Alternate Forum**

27      Plaintiff Catherine De Bruin is a citizen and resident of South Africa.  South

28  Africa's legal system is fair, independent and well-respected in the legal community.

1  (Declaration of Jeremy John Gauntlett in Support of Toyota Defendants' Motion to

2  Dismiss Foreign Plaintiffs' Amended Complaint (the "Gauntlett Decl.") ¶¶ 13-14).

3  South African law recognizes causes of action in both contract and tort that will

4  provide the South African plaintiff(s) with a mechanism to recover for any alleged

5  wrongdoing by the Toyota Defendants relating to the marketing, manufacturing, and

6  sale of vehicles that they purchased. (*Id.* ¶¶ 18-26.)

7      The South African legal system provides for discovery, including the

8  production of documents and the oral testimony of witnesses.    (*Id.* ¶¶ 40-43.)

9  Conducting discovery would likely be easier if the case was tried in South Africa,

10  since all the relevant acts occurred in South Africa, thus making it extremely likely

11  that all key documents and witnesses are in South Africa; in contrast, it may be

12  difficult for plaintiffs to obtain the testimony of South African witnesses in U.S.

13  litigation. (*Id.* ¶¶ 36-39.)  South African plaintiff(s) would have access to assistance

14  in funding any litigation against defendants in South Africa. (*Id.* ¶ 29.)

15      A recent Sixth Circuit decision involving a products liability case against

16  Toyota Motor Corporation Worldwide also establishes that South Africa is an

17  adequate alternative forum for purposes of deciding the claims against the Toyota

18  Defendants that are asserted in the ACFPC by the South African Foreign Plaintiffs.

19  *See Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 365 (6th Cir. 2008)

20  (affirming holding that South Africa was adequate alternative forum in products

21  liability case alleging brake failure where corporate entities were amenable to service

22  there).  In *Thomson*, the court concluded that the defendants' showing that they were

23  amenable to process in South Africa was sufficient to warrant a finding that South

24  Africa was an adequate alternative forum for hearing the case.  *Id.* at 365.  As

25  discussed supra, the Toyota Defendants agree that they are amenable to process in

26  South Africa for purposes of Foreign Plaintiffs' claims against them as alleged in the

27  ACFPC.

28

**M.     Turkey is an Adequate Alternate Forum**

Plaintiff Hatice Hulya Yigit is a citizen and resident of Turkey.  Turkey has a fair and independent judiciary and a civil law system, with a number of Turkish Codes regarding private law.  (Declaration of Murat R. Ozsunay in Support of Toyota Defendants' Motion to Dismiss Foreign Plaintiffs' Amended Complaint (the "Ozsunay Decl.") ¶¶ 8-14, 18.)  As an applicant for admission to the European Union, Turkey has enacted several new Codes that are influenced by European and Swiss-German laws. (*Id.* ¶ 24.)

Turkish law recognizes and would permit Turkish plaintiff(s) to bring claims for economic loss arising from alleged defects/malfunctions in the vehicles that they purchased in Turkey.  (*Id.* ¶¶ 27-70.)  Turkish courts would have jurisdiction over claims by purchasers of vehicles in Turkey.  (*Id.* ¶¶ 57, 73.)  Moreover, Turkey, by virtue of its extensive laws relating to consumer protection, has an interest in resolving a dispute regarding vehicles purchased in Turkey by Turkish residents.  (*Id.* ¶¶ 78-79.)

The Turkish Code of Civil Procedure recognizes and makes available to parties various procedural tools for obtaining evidence, including production of documentary evidence and examination of witnesses.  (*Id.* ¶¶ 77, 79.)  Turkish judgments are readily enforceable in Turkish courts. (*Id.* ¶ 84.)

A number of U.S. courts have already recognized Turkey as an adequate alternative forum. *See Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1349 (1st Cir. 1992) (affirming decision that Turkey was adequate alternative forum based on detailed affidavits submitted on behalf of defendants, and conditioned upon acceptance of jurisdiction by Turkish courts and defendants' agreement to submit to jurisdiction, waive statute of limitation defense, and satisfy any Turkish court judgment; differences in discovery between U.S. and Turkish judicial systems was not dispositive); *Turedi*, 460 F. Supp. 2d at 524 (noting, in finding that Turkey was adequate alternative forum, that an "'alternative forum is ordinarily adequate if the defendants are amenable to service of process there and the forum permits litigation of

1    the subject matter of the dispute,'" and rejecting argument that forum was inadequate

2    because Turkish law may not permit causes of actions or remedies "precisely

3    equivalent" to those in the United States).

4    **III.    THE PRIVATE AND PUBLIC INTEREST FACTORS WEIGH**

5    **        HEAVILY IN FAVOR OF DISMISSAL**

6    Because it is clear that each of Foreign Plaintiffs' countries is an adequate

7    alternative forum for resolving their respective claims against the Toyota Defendants,

8    the only remaining inquiry is whether a balancing of public and private interest factors

9    weighs in favor of dismissal.  "'[I]f the balance of conveniences suggests that trial in

10   the chosen forum would be unnecessarily burdensome for the defendant or the court,

11   dismissal is proper.'" *Lueck*, 236 F.3d at 1145.

12   In this case, not just most of the factors this Court must consider, but *every*

13   *single one* of the private interest factors, i.e.:

14       1)    "the residence of the parties and the witnesses;

15       2)    the forum's convenience to the litigants;

16       3)    access to physical evidence and other sources of proof;

17       4)    whether unwilling witnesses can be compelled to testify;

18       5)    the cost of bringing witnesses to trial;

19       6)    the enforceability of the judgment; and

20       7)    'all other practical problems that make trial of a case easy,

21          expeditious and inexpensive;'"

22   *(Id.)* weigh in favor of each plaintiff's adequate alternative forum.  Similarly, *each*

23   *and every* public interest factor, i.e.:

24       8)    "local interest of lawsuit;

25       9)    the court's familiarity with governing law;

26       10)   burden on local courts and juries;

27       11)   congestion in the court; and

28       12)   the costs of resolving a dispute unrelated to this forum"

-28-

1   (*Id.*) weighs against maintaining Foreign Plaintiffs' action in California.

2   The recent analysis of these factors in the Sixth Circuit Court of Appeals'

3   dismissal of *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357

4   conclusively demonstrates why this court should similarly dismiss the ACFPC.   In

5   *Thomson*, the court analyzed whether a U.S. products liability action involving a

6   vehicle "purchased, kept, maintained, and rented in South Africa" that was part of a

7   collision allegedly resulting from that vehicle's malfunctioning brakes should be

8   dismissed on grounds of *forum non conveniens*.   *Id.* at 366.   In affirming the trial

9   court's *sua sponte* determination that the proper forum for resolution of the dispute

10   was South Africa, the Sixth Circuit agreed that the private interest factors favored

11   dismissal because all relevant conduct, including manufacture, purchase, rental and

12   collision, occurred in South Africa, and because documents related to the vehicle and

13   the accident, as well as witnesses involved in the sale, maintenance and rental of the

14   vehicle, were located in South Africa.   *Id.*   The Court similarly determined that the

15   public interest factors favored dismissal because:

16   The result of this trial will have a greater impact on the residents of South

17   Africa; the car was manufactured to the requirements of vehicles

18   operated in South Africa, not those that govern vehicles in the United

19   States. Any outcome might alter those requirements for vehicles in South

20   Africa. If the case continued in this court, American jurors would be

21   burdened by a case whose resolution will be felt the greatest in South

22   Africa, while South African citizens would be deprived of hearing a case

23   regarding the safety of a vehicle marketed, sold, and used in their

24   country.

25   *Id.*   Notably, the Sixth Circuit reached this conclusion even though plaintiffs in

26   *Thomson* were United States citizens suing in their home jurisdiction.   As is set forth

27   in detail below, the application of the private and public interest factors to this

28   litigation lead to the inescapable conclusion that each of Foreign Plaintiffs' forums is

1    the superior forum for resolution of their claims.

2        **A.**    **All of the Private Interest Factors Favor Dismissal, as the Parties,**

3           **Witnesses and Evidence are Located Abroad**

4             1.   <u>Plaintiffs, Witnesses, and Proper Defendants are Located Abroad</u>

5        Each and every one of the named class representatives are residents and citizens

6    of foreign countries. ACFPC ¶¶ 36-78. While the forum choice of a U.S. plaintiff

7    may be subject to deference "[b]ecause the central purpose of any *forum non*

8    *conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice

9    deserves less deference." *Piper Aircraft*, 454 U.S. at 255-56. "This is because foreign

10   plaintiffs typically have fewer contacts with the forum, suggesting that they have

11   chosen it for some reason other than convenience." *Taiwan Straits Air Crash* 331 F.

12   Supp. 2d at 1190; *See also In re Air Crash over the Mid-Atlantic on June 1, 2009,* No.

13   10-2144, -- F. Supp. 2d. --, 2010 WL 3910354 at *11 (N.D. Cal. Oct. 4, 2010) (noting

14   that plaintiffs' counsel had "candidly acknowledged that the foreign Plaintiffs are

15   forum shopping" and holding that "[t]his acknowledgment – a reflection of the simple

16   reality – succinctly explains why the foreign Plaintiffs' forum choice is not entitled to

17   much deference.")    These Foreign Plaintiffs' choice to sue Toyota in the United

18   States because "in the countries that I have mentioned to you, they do not have class

19   actions" further demonstrates why their choice of forum is not entitled to much

20   deference. Gilford Decl., Exh. J.

21       Moreover, because the alleged misconduct occurred outside the U.S., the great

22   majority of the witnesses are likely to be in the foreign alternative forum. See

23   *Thomson,* 545 F.3d at 366. Indeed, to the extent that any Foreign Plaintiff named or

24   described any witnesses to alleged UA events, those witnesses either are specifically

25   listed as residing outside the United States or appear to reside outside the United

26   States. *See, e.g.,* Gilford Decl., Exhs. C, D, F, H.

27       As set forth more fully in the Toyota Defendants' Foreign Jurisdictional Issues

28   Motion, only TMC could potentially have any connection to the wrongdoing alleged

by Foreign Plaintiffs in the ACFPC.   In addition, as is set forth in the Foreign Jurisdictional Issues Motion, the proper defendants to the Foreign Plaintiffs' actions are located abroad and outside of this Court's jurisdiction. (Dkt. No. 663-1.)   While the Toyota Defendants have consented to service of process in each of the foreign jurisdictions in the event that this Court does not dismiss them pursuant to the arguments set forth in the Foreign Jurisdictional Issues Motion (Koyanagi Decl. ¶6; Tanaka Decl. ¶6; Nepute Decl. ¶2; Ro Decl. ¶6; Pelliccioni Decl. ¶2), the proper defendants to this dispute are not U.S. residents, which further favors dismissal. (Dkt. No. 663-1.)

### 2.   California is Not Convenient to the Litigation

Because Foreign Plaintiffs are not California or U.S. residents and are scattered across every continent but Antartica, they cannot argue in good faith that it would be more convenient to litigate their claims in the U.S. *Piper Aircraft* 454 U.S. at 256; *In re Taiwan Straits Air Crash,* 331 F. Supp. 2d at 1190.   Indeed, even if the Foreign Plaintiffs argue that they are willing to travel to the United States to prosecute their case, only two of the thirteen countries at issue in this litigation (i.e., Australia and Germany) are part of the United States' visa waiver program.   Consequently, Foreign Plaintiffs from other countries would be required to first visit a U.S. embassy in their home country to obtain a visa permitting travel to the United States.   Gilford Decl. Exh. K, Peerenboom Decl. ¶¶ 16, 70-73.   Even if Foreign Plaintiffs were willing to undergo this inconvenience, it is by no means certain that they will be successful in obtaining such a visa. *See, e.g.,* Peerenboom Decl. ¶ 72.   California is also not only inconvenient for the Toyota entities responsible for manufacturing and selling Foreign Plaintiffs' automobiles, but those entities are not subject to jurisdiction in the United States. (Dkt. No. 663-1.)

### 3.   Evidence is Located Abroad

Foreign Plaintiffs have alleged that they purchased and serviced their vehicles abroad, and several of them have alleged that they communicated with dealerships in

1   their home countries.[4]  As a result, the evidence regarding the marketing, advertising,

2   sale and maintenance of their vehicles is located abroad, and is not within the

3   possession, custody or control of the Toyota Defendants.  Koyanagi Decl. ¶¶2-5;

4   Tanaka Decl. ¶¶2-5; Declaration of Dino Triantafyllos ("Triantafyllos Decl.") ¶¶2-5;

5   Ro Decl. ¶¶2-5.  Any such foreign evidence, e.g. any dealership or similar third party

6   documentation is beyond the subpoena power of this Court.  In addition, to the extent

7   that any Foreign Plaintiff, such as Turkish class representative Yigit, alleges that UA

8   resulted in an accident, any related police reports and insurance claim documentation

9   are located abroad.  Gilford Decl. ¶ G.  Foreign Plaintiffs' vehicles, which are the

10  physical evidence at the heart of this litigation, particularly for those Foreign Plaintiffs

11  who allege UA, are similarly located abroad.

12      Such evidentiary materials could only be obtained by time-consuming letters

13  rogatory or Hague Evidence Convention procedures at best, and might not be

14  obtainable at all from countries such as South Africa, Australia, and Turkey, which

15  will not execute letters of request for pretrial production of documents in their

16  jurisdictions.  Gauntlett Decl. ¶37; Blanden Decl. ¶ 66; Ozunay Decl. ¶ 82.  Even to

17  the extent that any evidence relating to Foreign Plaintiffs' complaints exists in the

18  United States and is in the control of the parties, as long as the evidence in the foreign

19  alternative forum is not as accessible, this private factor weighs in favor of dismissal.[5]

20  *Lueck*, 236 F.3d at 1146.

21              4.    Unwilling Witnesses Cannot Be Compelled to Testify

22      Based on the allegations in the complaint and the fact sheets provided to date, it

23  appears that all of the witnesses to Foreign Plaintiffs' UA events are foreign citizens

24

25  ───────────────

26  [4]  As stated above, the sole exception, Paul Banton, purchased his vehicle from a
    United States dealership, but drives and maintains it in Jamaica.

27  [5]  Indeed, the United States Code provides a mechanism under which parties to a
    foreign court may apply directly to a United States court seeking Fed. R. Civ. P.
28  production of evidence found in the United States for use in that foreign tribunal. 28
    U.S.C. § 1782.

1   and residents.   Similarly, dealerships that sold and/or maintained the Foreign

2   Plaintiffs' vehicles, as well as non-party entities that manufactured the Foreign

3   Plaintiffs' vehicles, are located abroad.   These witnesses are outside of the subpoena

4   power of the court, and cannot be brought to trial, which weighs in favor of dismissal.

5   *See Thomson*, 545 F.3d at 366; *In re Taiwan Straits Air Crash*, 331 F. Supp. 2d at

6   1197-98; *see also* Patajo Kapunan Decl. ¶ 72 (noting that the Philippines is not a

7   signatory to the Hague Convention and that U.S. courts would not be able to order a

8   witness residing in the Philippines to testify in the U.S.); Serna de la Garza Decl. ¶ 59

9   (noting that it can be difficult, if not impossible, to obtain evidence from individuals

10  residing in Mexico even though Mexico is a signatory of the Hague Convention on the

11  Taking of Evidence Abroad in Civil and Commercial Matters).

12          5.   There Will Be Significant Costs in Bringing Witnesses to Trial

13          In their responses to the fact sheets ordered by this Court, Foreign Plaintiffs

14  have not identified a single witness who is present in the United States.   Even

15  assuming for the sake of argument that there were witnesses in the United States,

16  however, witnesses to the manufacture, sale, and/or maintenance of the Foreign

17  Plaintiffs' vehicles are scattered across six continents where plaintiffs purchased and

18  maintained their cars.   The costs of bringing to trial: (1) any voluntary witnesses from

19  these multiple countries and continents; (2) expert witnesses in damages issues such

20  as alleged diminishment in value of Toyotas in thirteen foreign markets; and (3)

21  translators, weigh in favor of letting these cases be decided in the countries where

22  Foreign Plaintiffs reside. *In re Taiwan Straits Air Crash*, 331 F. Supp. 2d at 1200.

23          6.   Trial Will Be Easier and More Expeditious in Foreign Plaintiffs'

24               Home Forums

25          In order to hold a trial encompassing Foreign Plaintiffs' claims, the parties

26  would need to request third party documents regarding the sale and manufacture of

27  Foreign Plaintiffs' vehicles.   Even assuming that such documents were available

28  pursuant to Hague Evidence Convention or letters rogatory procedures, this Court's

1   resolution of the action would necessarily be delayed until such discovery could be

2   requested and obtained.

3       In addition, language issues affect which forums would have an easier or more

4   expeditious trial. *Huang*, 2010 WL 2143669, at *7. To the limited extent that Foreign

5   Plaintiffs have provided any documents in response to this Court's order requiring fact

6   sheet responses, such documents are in the language of the plaintiffs' country, not in

7   English. In addition, even if third party documents regarding the manufacture or sale

8   of Foreign Plaintiffs' automobiles could be produced in the United States after third

9   party procedures, the trial would inevitably be delayed by the incredibly costly and

10  time-consuming process of translating such documents from more than a dozen

11  languages such as Afrikaans, Arabic, Chinese, French, German, Indonesian,

12  Malaysian, Portuguese, Russian, Spanish, Tagalog, Thai and Turkish.

13      Finally, the Ninth Circuit has also held that an expeditious trial is advanced by

14  the "ability to join third party defendants who otherwise would lie beyond the U.S.

15  court's jurisdiction." *Contact Lumber*, 918 F.2d at 1451-52. Foreign Plaintiffs have

16  pointedly avoided naming as defendants a host of entities that are not subject to

17  jurisdiction in the United States that manufactured, distributed, sold or maintained

18  Foreign Plaintiffs' automobiles. Trial would be far more expeditious and certain if it

19  could actually proceed against defendants with some connection to Foreign Plaintiffs'

20  vehicles and asserted claims.

21      **B.**    **Public Interest Factors Also Weigh Heavily in Favor of the Foreign**

22          **Forums**

23          1.    Plaintiffs' Own Countries Have the Greatest Interest in the

24              Lawsuit

25      Because there is a "'local interest in having localized controversies decided at

26  home,'" courts look to the residencies of the plaintiffs and the places of the alleged

27  injuries in determining which jurisdiction has the greatest interest in resolving the

28  matters at issue in the litigation. *Piper Aircraft*, 454 U.S. at 260 (quoting *Gilbert*, 330

1    U.S. at 509); *see also Lueck*, 236 F.3d at 1147 (affirming dismissal and holding that

2    the foreign jurisdiction had "extremely high" interest in litigation with only foreign

3    plaintiffs). Indeed, in *Piper Aircraft*, the court held that Scotland had a "very strong

4    interest" in litigation where the accident occurred in Scotland, all decedents were

5    Scottish, and all potential plaintiffs were Scottish or English. 454 U.S. at 260. Even

6    though the plane in that litigation was manufactured in the United States, the Supreme

7    Court held that this factor could not outweigh Scottish interest in the litigation. *Id.*

8        The *Thomson* case is also instructive for this factor, because the Sixth Circuit

9    held that South Africa had a strong interest in "hearing a case regarding the safety of a

10   [Toyota] marketed, sold, and used in" South Africa that outweighed the United States'

11   interests in the litigation even where plaintiffs were United States citizens. 545 F.3d

12   at 366. The basis for this rationale is particularly demonstrated by: (1) named plaintiff

13   Ms. Komorova's pending litigation in Russia and her communication with the Russian

14   "State traffic inspectorate"; (2) named plaintiff Ms. Yigit's alleged UA incident and

15   collision involving a Toyota model which is not manufactured or sold in the U.S.; and

16   (3) other named plaintiffs who allege UA incidents in their own countries.

17       In the ACFPC, there are only Foreign Plaintiffs present, and their own

18   allegations demonstrate that their vehicles were manufactured, marketed, sold, and/or

19   used abroad. Simply put, the countries in which Foreign Plaintiffs reside have the

20   strongest interest in hearing their claims -- particularly where those claims regard the

21   safety of vehicles used in those countries -- and the United States does not even

22   possess the potentially attenuating but unavailing interests that were present in *Piper*

23   *Aircraft, Lueck,* and *Thomson.*

24       2.   Foreign Plaintiffs' Own Courts Are Most Familiar With Their

25            Own Laws, Which Will Apply to Foreign Plaintiffs' Claims

26       As was explained in detail in the Foreign Jurisdictional Issues Motion (and as is

27   demonstrated by Exhibit A submitted with that motion), Foreign Plaintiffs' ACFPC is

28   a wholesale cut and paste job of the domestic economic loss plaintiffs' complaint filed

1   on October 27, 2010. Dkt. No. 663-1, pp. 3-5; Dkt. No. 664-1, 664-2 and 664-3..

2   However, there is one very notable section of the domestic plaintiffs' complaint that

3   Foreign Plaintiffs chose to omit from their iteration of the complaint:   the domestic

4   plaintiffs' allegations that California law applied to the claims at issue. Dkt. No. 664-

5   2, pp. 96-100.   While Foreign Plaintiffs have still mimicked the domestic plaintiffs by

6   pleading their claims under California law, they have undercut this pleading by their

7   failure to assert what connection, if any, California law (or any United States law)

8   could conceivably have to their claims.

9       This Court need not make a dispositive choice of law analysis at this stage of

10  the litigation, but where it appears likely that the laws of plaintiffs' foreign forums

11  will govern their claims, the burden that likely faces this court in applying foreign

12  laws is a public factor weighing in favor of dismissal of foreign plaintiffs' claims.[6]

13  *Lueck,* 236 F.3d at 1148 n.6; *In re Mid-Atlantic Air Crash,* -- F. Supp. 2d --, 2010 WL

14  3910354 at *10; *In re Taiwan Straits Air Crash,* 331 F. Supp. 2d at 1211.

15          3.      This Case Would Impose a Burden on Local Courts and

16                  Factfinders

17      "Jury duty is a burden that ought not to be imposed upon the people of a

18  community which has no relation to the litigation." *Gilbert,* 330 U.S. at 508-09. This

19  is a complicated class action where forty-one plaintiffs -- all of them foreign -- from

20  thirteen countries have asserted claims relating to their vehicles outside the United

21  States.   Californian factfinders (a jury panel for some of the causes of action, and this

22  Court for causes of action that may not be heard by a jury) would be required to:

23      a) hear testimony from the Foreign Plaintiffs and from any additional witnesses

24  available in the United States;

25

26

27  [6] In the unlikely event that any portion of Foreign Plaintiffs' claims survive the
    Foreign Jurisdictional Issues Motion and this *forum non conveniens* motion, the
28  Toyota Defendants will separately and fully brief choice of law issues for remaining
    countries.

b) hear testimony and weigh reports from expert witnesses regarding the comparative resale values of vehicles in each of thirteen foreign countries -- including values of vehicles manufactured by Toyota and other automakers that are not even sold in the United States;

c) weigh the extent to which differences in Foreign Plaintiffs' vehicle design and manufacture (e.g., left-hand drive versus right-hand drive, the prevalence of vehicles with manual transmissions, and differing manufacturing standards and decisions by region or country) affect their claims;

d) review translated documents from each of the Foreign Plaintiffs' jurisdictions and potentially from additional foreign jurisdictions; and

e) apply the respective Foreign Plaintiffs' country's facts to the laws in each of the Foreign Plaintiffs' forums.

Consequently, the excessive burden this case would place on this Court and a jury is unwarranted. *Piper Aircraft*, 454 U.S. at 261 (noting that "the American interest in this accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here."); *Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir. 1990) (affirming the lower court ruling that none of more than 100 plaintiffs was a U.S. citizen, that the law of one foreign jurisdiction, England, would likely govern the litigation, and since a trial could last for months and the controversy did not involve the state, "such onerous jury duty should not be imposed on the citizens" of that state.)

4. <u>Court Congestion Weighs in Favor of Trial Abroad in Each of Foreign Plaintiffs' Forums</u>

Court congestion is not a determinative factor, and the real issue for such an inquiry is "not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court" *Vorbiev*, 2009 WL 1765675, at * 5; *Dabbous*, 2009 WL 1403930, at *8 (noting statistical estimates of court congestion in Egypt submitted by plaintiff and finding that dismissal on grounds of forum non conveniens

TOYOTA DEFS.' PTS. & AUTH. IN SUP. OF MTN. TO DISMISS FOREIGN PLTFS.' AMEND. COMPLAINT
LEGALO2/32462891v9

1    was nonetheless proper where evidence was contradicted by statistics provided by

2    defendants, and where this single factor was insufficient to outweigh the other facts

3    showing that Egypt had superior interest in deciding dispute locally).

4         In this particular litigation, as argued above, the tremendous task of assembling

5    and translating evidence from more than thirteen forums will greatly expand the time

6    necessary to proceed with this case in the United States. Moreover, the foreign forums

7    are efficient and capable of reaching a decision on Foreign Plaintiffs' claims in a

8    timely fashion. *See, e.g.*, Umar Decl. ¶ 63 (noting that in general, an Indonesian court

9    will render a judgment within approximately six (6) months from the commencement

10   of an action); Choy Choong Decl. ¶ 24 (noting that Malaysian judiciary has recently

11   taken steps to increase efficiency in legal system). This factor also weighs in favor of

12   dismissal of this litigation.

13              5.    This Costly Litigation Is Unrelated to This Forum

14        As the Toyota Defendants have already argued in the Foreign Jurisdictional

15   Issues Motion, Foreign Plaintiffs' claims have no relation whatsoever to the named

16   defendants and must be dismissed. Even if any portion of the ACFPC remains

17   however, there is no relation between Foreign Plaintiffs' claims and the United States,

18   particularly in light of: a) Foreign Plaintiffs' express removal of paragraphs from their

19   model domestic plaintiffs' complaint linking their claims to California; b) Foreign

20   Plaintiffs' own ACFPC admission that U.S. Toyota Defendants took different actions

21   regarding U.S. vehicles than did Toyota Motor Europe; and c) Foreign Plaintiffs' own

22   complaint allegations and fact sheets demonstrating contacts with their own countries

23   rather than the United States. Dkt. No. 664-2, pp. 96-100; ACFPC ¶¶ 220, 334;

24   Gilford Decl. Exhs. C, D, F, G.

25        U.S. citizens would be unnecessarily burdened if this case proceeds in the

26   United States, since Foreign Plaintiffs' claims have no relation to conduct or events

27   occurring in the U.S. *See, e.g., Lueck,* 236 F.3d at 1147 (affirming holding that where

28   accident and its aftermath occurred in New Zealand, and local interest in dispute was

1  comparatively low, U.S. citizens should not have to bear the burden, i.e., time and

2  expense, of litigation); *Vorbiev*, 2009 WL 1765675 at * 5 (holding that dismissal was

3  warranted where resolution of a dispute with no connection to the forum would

4  require significant costs).  There is no reason to keep this inherently foreign dispute –

5  brought against the wrong defendants – in the United States courts, when the

6  plaintiffs, correct defendants, witnesses, vehicles, additional evidence, experts,

7  applicable laws, and public interest considerations *all* point to each of the Foreign

8  Plaintiffs' own adequate alternate forums.

9  **CONCLUSION**

10      For the reasons set forth above, the Toyota Defendants respectfully request that

11  this Court dismiss all counts of the ACFPC and grant such other and further relief as

12  this Court deems just and proper.

13

14              Respectfully submitted,

15  Dated:  February 23, 2011

16  By: _____/s/_____
          Lisa Gilford

17  CARI K. DAWSON (GA SBN 213490)
18  Email:  cari.dawson@alston.com
**ALSTON + BIRD LLP**
19  1201 West Peachtree Street
Atlanta, GA 30309
20  Telephone:  (404) 881-7766
Facsimile:  (404) 253-8567

21  LISA GILFORD (CA SBN 171641)
22  Email:  lisa.gilford@alston.com
**ALSTON + BIRD LLP**
23  333 South Hope Street, 16th Floor
Los Angeles, CA 90071
24  Telephone:  (213) 576-1000
Facsimile:  (213) 576-1100

25  ***Lead Defense Counsel for Economic Loss Cases***

26

27

28

TOYOTA DEFS.' PTS. & AUTH. IN SUP. OF MTN. TO DISMISS FOREIGN PLTFS.' AMEND. COMPLAINT
LEGALO2/32462891v9

Dated:  February 23, 2011

By: _____ /s/ Anna S. McLean _____

ANNA S. McLEAN (CA SBN 142233)
Email: amclean@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone:  (415) 434-9100
Facsimile:   (415) 434-3947

ASHLEY E. MERLO (CA SBN 247997)
Email: amerlo@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626-1993
Telephone:  (714) 513-5100
Facsimile:   (714) 513-5130

***Attorneys for Toyota Motor Credit Corporation***

TOYOTA DEFS.' PTS. & AUTH. IN SUP. OF MTN. TO DISMISS FOREIGN PLTFS.' AMEND. COMPLAINT
LEGAL02/32462891v9