Monica R. Kelly (Illinois Bar ID 6225920)
*monicakelly@ribbecklaw.com*
*mervinmateo@ribbecklaw.com*
RIBBECK LAW CHARTERED
505 N. Lake Shore Drive, Suite 102
Chicago, IL 60611
Telephone: (312) 822-9999

*Lead Counsel for Foreign Economic
Loss  Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:10ML2151 JVS (FMOx) **FOREIGN ECONOMIC LOSS PLAINTIFFS' OPPOSITION TO TOYOTA DEFENDANTS' MOTION TO DISMISS FOREIGN PLAINTIFFS' AMENDED COMPLAINT** |
| This Document Relates To: **FOREIGN ECONOMIC LOSS PLAINTIFFS** | |

1

# TABLE OF CONTENTS

2

<u>PAGE</u>

3

4

5

I.   FOREIGN PLAINTIFFS HAVE PLEADED PLAUSIBLE FACTUAL ALLEGATIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ..............................................................................2

6

7

A.   The requirements set forth in Iqbal and Twombly have been sufficiently met by foreign plaintiffs pursuant to Federal Rule of Civil Procedure 12(b)(6)...................................................................................4

8

9

B.   Foreign plaintiffs have amply included facts to state a viable claim against the U.S. Toyota Defendants .................................................7

10

C.   Foreign plaintiffs have established economic loss suffered and caused by Toyota Defendants.......................................................................13

11

12

D.   The California consumer fraud claims sufficiently satisfy the pleading standard of Federal Rule of Civil Procedure 9(b) .....................15

13

14

15

II.   FOREIGN PLAINTIFFS HAVE SUFFICIENTLY PLEADED FACTS TO STATE THEIR RICO CLAIMS BASED ON FRAUD (RESPONSE TO TOYOTA DEFENDANTS' ARGUMENTS A, B AND C)...................................................................................................................16

16

17

III.   THE CLAIMS RAISED IN THE AMENDED CONSOLIDATED FOREIGN PLAINTIFFS' COMPLAINT APPLY TO EXTRATERRITORIAL ACTIONS ............................................................19

18

19

A.   RICO extraterritoriality ...................................................................................19

B.   Magnuson-Moss Warranty Act ......................................................................23

20

21

IV.   EACH SUBSECTION OF THE RICO STATUTE HAS BEEN FULLY SATISFIED ..................................................................................................25

22

23

A.   18 USC 1962(a) - Foreign Plaintiffs Were Injured by Toyota Defendants' Use or Investment of Racketeering Income .........................25

24

25

B.   18 USC 1962(b) - Toyota Defendants Gained Control of a RICO Enterprise ........................................................................................................28

26

C.   18 USC 1962(c) - Foreign Plaintiffs Have Sufficiently Alleged Claims Against an "Enterprise" ......................................................................29

27

28

V.       IMPROPER JOINDER ............................................................................32

VI.      JURISDICTION ..................................................................................35

A.       Diversity Jurisdiction..........................................................................35

B.       Joinder...................................................................................................36

VII.     CONCLUSION ....................................................................................38

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

<u>PAGE(S)</u>

3

## <u>FEDERAL CASES</u>

4

5
*Allendale Mutual Ins. Co. v. Bull Data Sys*, 10 F. 3d 425 (7th Cir. 1993) ...................35

6
*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................................. *passim*

7
Bell Atlantic. Corp. v. Twombly, 550 U.S. 544 (2007)........................................ passim

8
*Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553 (11th Circ. 1989)..............................35

9

10
*Carl Schroeter GmbH & KO., KG v. Crawford & Co.*, 2009 WL
    1402100 (E.D. Pa. May 19, 2009)................................................................33

11
*Cedeno v. Intech Group, Inc.*, 733 F. Supp. 2d 471 (S.D.N.Y. 2010)...................20, 21

12

13
*Cedric Kushner Promotions, Ltd. V. King*, 121 S.Ct. 2087 (2001) ...............................14

14
*Churchill Village, LLC v. General Electric Company*, 169 F. Supp. 2d
    1119 (N.D. Cal. 2000) .................................................................................24

15
*Clemens v. Daimler Chrysler Corp.*, 534 F. 3d 1017 (9th Cir. 2008) ..........................23

16

17
*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997)..............................................................14

18
*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266
    (Fed. Cir. 1998) .........................................................................................32

19

20
*Danjaq S.A. v. Pathe Communications Corp.*, 979 F.2d 772
    (9th Circ. 1992).........................................................................................35

21
*Dresser Industries v. Lloyds of London*, 106 F. 3d 494 (3d. Cir. 1997).....................35

22

23
*Great Lakes Intellectual Prop Ltd. V. Sakar Int'l, Inc.*,
    516 F. Supp. 2d 880 (W.D. Mich. 2007).....................................................33

24
*Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F.Supp.2d 439
    (E.D.N.Y. 2010) ...................................................................................26, 27

25

26
Hemi Group, LLC v. City of New York, NY, 130 S.Ct. 983, 989 (2010) ...................26

27
*Henriks v. Moritz*, 304 Fed. App. 491 (9th Circ. 2008)..................................................28

28

Holmes v. Securities Investor Protection Corp, 503 U.S. 258 (1992)..........................18

*In re Allustiarte*, 786 F.2d 910 (9th Cir. 1986).................................................32

*In re Olympic Mills Corp.*, 477 F.3d 1 (1st Cir. 2007) ........................................32

*Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*,
    456 F. Supp. 831 (D. Del. 1978) ...............................................................34

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 578 F. Supp. 2d 1229
    (C.D. Cal. 2008) .......................................................................................23

*Keith v. Buchanan*, 173 Cal. App. 3d 13, 21 (1985)..........................................23

*Luftfahrtversicherungs-Aktiengesellschaft v. Markel Ins. Co.*,
    1007 WL 141154 (S.D. Fla. Jan 16, 2007)...............................................37

Moore v. Kayport Package Express, Inc., 885 F.2d 531 (9th Cir.1989) ...............15

*Morris v. Princcess Cruises, Inc*, 236 F. 3d 1061 9th Cir. 2001)........................36

Morrison v. National Australia Bank, 120 S. Ct. 2896 (2010)...........................19, 20

*Norex Petroleum Ltd. v. Access Industries, Inc.*, 2010 WL 4968691
    (2nd Cir. Dec. 8, 2010) ..............................................................................20

*Norwest Mortgage, Inc v. Superior Court*, 72 Cal. App. 4th 214
    (Cal. App. 4th Dist. 1999) .........................................................................24

*Polanco v. H.B. Fuller Co.*,  941 F. Supp. 1512 (D. Minn. 1996)........................33, 34

*Provident Tradesmens Bank & Trust*, 390 U.S. at 108 (1968)..............................32

*Slavchev v.* Royal Caribbean Cruises, Ltd., 559 F.3d 251 (4th Circ. 2009)..............35

Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 746 (8th Cir.2002) ...............15

*Sollberger v. Wachovia Securities*, 2010 WL 2674456
    (C.D. Cal. June 30, 2010).............................................................................9

*Sybersound Records, Inc. v. UAV Corp.,* 517 F.3d. 1137
    (9th Circ. 2008) ..........................................................................................26, 27

*Tidenberg v Bidz com, Inc.*, 2009 WL 05249 (C.D. Cal. March 4, 2009)...................24

*Transure v. Marsh & McLennan*, 766 F. 2d 1297 (9th Cir. 1985) .........................36

1

*Travis v. Irby*, 326 F. 3d 644 (5th Cir. 2003) ...................................................36

2

*U.S. Concord, Inc. v. Harris Graphics*, 757 F. Supp. 1053
        (N.D.Cal. 1991) ...................................................28

3

4

*Whalen v. Carter*, 954 F. 2d 1087 (5th Cir. 1992) ...................................................36

5

*Wright v. General Mills Inc.*, 2009 WL 3247148
        (S.D. Cal. Sept. 30, 2009)...................................................13

6

7

8

## FEDERAL RULES AND STATUTES

9

10

18 U.S.C. § 1962(a) ...................................................25, 26

11

18 U.S.C. § 1962(b) ...................................................28

12

18 U.S.C. § 1962(c) ...................................................28, 29

13

18 U.S.C. § 1962(d) ...................................................30

14

15

Fed. R. Civ. P. 9(b) ...................................................14

16

Fed. R. Civ. P. 12(b)(1) ...................................................1

17

Fed. R. Civ. P. 12(b)(6) ...................................................2, 3

18

Fed. R. Civ. P. 12(b)(7) ...................................................34

19

Fed. R. Civ. P. 19(b)(1) ...................................................32

20

21

22

23

24

25

26

27

28

This action arises out of foreign plaintiffs' purchase or lease of vehicles designed, manufactured, distributed, marketed and sold by Defendants Toyota Motor Corporation, d/b/a Toyota Motor North America, Inc, and its subsidiaries Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc. and Toyota Motor Credit Corporation (collectively "Toyota Defendants"). A class of foreign plaintiffs seeks damages for all vehicles with electronic throttle control system ("ETCS") in their respective countries, including Mexico, China, Germany, Turkey, Jamaica, Peru, South Africa, Egypt, Malaysia, Philippines, Guatemala, Russia and Australia.

Defendants, pursuant to Fed. R. Civ. P. 12(b)(1) have moved to dismiss the Amended Consolidated Foreign Plaintiffs' Complaint ("ACFPC"). The ACFPC pleads thirteen of the following counts: Count I, Violation of Racketeer Influenced and Corrupt Organization Act (18 U.S.C. §1961, et seq.) ("RICO"); Count II, Violations of the Consumer Remedies Act (Cal. Civ. Code § 1750, et seq.); Count III, Violations of the California Unfair Competition Law (Cal. Bus. & Prof . Code § 172000, et. seq.); Count IV, Violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500 et. seq.); Count V, Breach of Express Warranty (Cal. Com. Code §2313); Count VI, Breach of the Implied Warranty of Merchantability(Cal. Com. Code § 2314); Count VII, Revocation of Acceptance (Cal. Com. §2608); Count VIII, Violation of Magnuson-Moss Warranty Act (15 U.S. C. §2301, et. seq.); Count IX Breach of Contract/Common Law Warranty; Count X,

- 1 -

Fraud by Concealment (Based on California Law); Count XI, Negligence; Count XII, Products Liability- Design Defect; and Count XIII, Unjust Enrichment (Based on California Law).

Defendants maintain that the claims warrant a Fed. R. Civ. P. 12(b) dismissal because (1) the ACFPC does not show a nexus between the Toyota Defendants' claimed U.S conduct and the foreign plaintiffs; (2) the RICO, CLRA, UCL and FAL fraudulent concealment claims do not state a cause of action pursuant to Fed. R. Civ. P. 9(b); (3) the RICO claims do not state a claim under each subsection of the RICO statute; (4) the Magnuson-Moss Warranty Act does not extend to the RICO statute; (5) the proper parties were not joined, and; (6) the court lacks subject matter diversity jurisdiction against Toyota Motor Corporation.

## I.   FOREIGN PLAINTIFFS HAVE PLEADED PLAUSIBLE FACTUAL ALLEGATIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

The Amended Consolidated Foreign Plaintiffs' Complaint ("ACFPC") has sufficiently established a causal nexus between the harm foreign plaintiffs suffered as a direct result of the actions and conduct by the Toyota Defendants. Specifically, the ACFPC establishes that Toyota Motor Corporation ("TMC") and its sales and marketing arm and subsidiaries in the United States – Toyota Motor Sales, U.S.A., Inc. ("TMS"), Toyota Motor North America, Inc ("TMNAI"), Toyota Motor Engineering and Manufacturing North America, Inc. ("TMEMNAI") and Toyota Motor Credit Corporation ("TMCC") – have sold and marketed millions of vehicles

and their respective parts to foreign countries, including Mexico, China, Germany, Turkey, Jamaica, Peru, South Africa, Egypt, Indonesia, Malaysia, Philippines, Guatemala, Russia and Australia. As illustrated in the ACFPC, all of these vehicles use an electronic throttle control system ("ETCS") that is defective.

In fact, Toyota not only marketed and sold its defective vehicles and parts in the United States, but worldwide. They have touted their vehicles and products as being extremely "safe" and capitalized on that guarantee in promoting their sales. Toyota sells its vehicles by marketing them as "MADE BY TOYOTA" as opposed to marketing them, for example, as being "Made in Germany," or "Made in Turkey," or "Made in China." In addition, a number of vehicles involved in this litigation were not manufactured and/or designed in the country where they were sold.   For example, the vehicles owned by foreign plaintiffs Laura Jimenez Centeno and Gonzalo Oros Villalobos were sold in Mexico, but said vehicles were manufactured in the U.S.

Defendants now attempt to dissect the actions of domestic defendants with those corollary foreign defendants responsible for the same defects.  They attempt to force a differentiation between the domestic and foreign defendants that goes well beyond that required by either the Federal Rules of Civil Procedure or well established precedent.

- 3 -

1

2

**A.   THE REQUIREMENTS SET FORTH IN IQBAL AND TWOMBLY
HAVE BEEN SUFFICIENTLY MET BY FOREIGN PLAINTIFFS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).**

3

4

5

6

7

8

9

10

11

Toyota Defendants maintain that foreign plaintiffs have not pleaded sufficient

facts to state a claim against them.  Pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff

must state "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial

plausibility" if the plaintiff pleads facts that "allow the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009).

12

13

14

15

16

17

18

19

20

21

22

As support for this conclusion, however, Defendants point to domestic

plaintiffs' complaint, arguing that because certain portions of that complaint

necessarily overlap in argument with the foreign plaintiffs' complaint, this shows a

defect in the pleading.  To be sure, this argument fails on its face.  A review of

*Twombly* and *Iqbal* shows that foreign plaintiffs in this case have satisfied the

requirements under either case. Further, the decision in those cases, although

routinely used by defendants and defense attorneys as a shield against a viable cause

of action, is not contrary to the facts pleaded in the ACFPC.

23

24

25

26

27

28

In *Twombly,* the Court held that (at least in the context of an antitrust suit) a

complaint must allege "enough facts to state a claim to relief that is plausible on its

face."  Although the Second Circuit held that *Twombly* did not apply to Mr. Iqbal's

discrimination claims – and affirmed the decision of the lower court. – the  U.S.

- 4 -

Supreme Court reversed, making four significant holdings: (1) the heightened
pleading standards of *Twombly* apply in all federal civil actions, (2) the heightened
pleading standards of *Iqbal/Twombly* apply to allegations of all elements of a claim,
even when the plaintiff has not alleged fraud; (3) the *Iqbal/Twombly* standard
specifically requires plaintiffs to "plead factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged;" and
(4) plaintiffs cannot overcome *Iqbal* and *Twombly*'s heightened pleading standards
through promises that discovery will be limited.

Essentially, *Twombly* and *Iqbal* establish a three-step process for adjudicating
a motion to dismiss. Briefly, a court should: (1) identify the elements of a claim that
a plaintiff will ultimately need to prove for the legal theory that defendant seeks to
have dismissed; (2) excise from the complaint conclusory allegations; and (3)
determine a) whether the remaining non-conclusory allegations directly allege each
element of the claim, and if not (b) whether the non-conclusory allegations that
indirectly allege an element of a claim suggest more than a possibility that the
plaintiff will be able to prove the claims.

In the present action, foreign plaintiffs have established that the same SUA
defect in the United States exists in those automobiles sold, marketed and repaired
by foreign defendants. (¶ 3-12 of ACFPC)  Defendants' quote two paragraphs from
the ACFPC to support their claim that foreign plaintiffs take "giant leaps of logic" in
asserting the factual allegations. (Defendants Motion to Dismiss, p. 6)  Pointedly,

- 5 -

1    Toyota Defendants ignore the vast majority of the specifically alleged facts that

2    support foreign plaintiffs' arguments.  For example, numerous facts exist to support

3

4    a fraudulent course of conduct, such as the existence of both a SUA defect (*See* ¶ 88,

5    112) and a fail-safe defect (¶ 112, 116), factors that Toyota Defendants

6    systematically ignore.

7

8        Foreign plaintiffs have consistently maintained throughout the ACFPC that

9    Toyota Defendants had a commitment to "overall safety gains" and that Toyota told

10   the public that the goal is that "every Toyota customer enjoy outstanding quality,

11

12   dependability and peace of mind throughout their ownership experience". (¶ 106)

13   Toyota had advance notice of a defect and safety risks involving SUA in certain

14   vehicles as early as 2002. (¶ 119)   They persistently hid the notice of the defects

15

16   from the public, including foreign plaintiffs, through a measured and calculated

17   method of manipulation, despite the fact that there was a pronounced increase in

18   SUA complaints from owners. (¶ 130-131)

19

20        Foreign plaintiffs further allege that Toyota Defendants made repeated

21   representations that safety and security of driver and passenger has always been a

22   priority and that "building safe automobiles is the most important thing we can do."

23

24   (¶¶ 90-93)  Point in fact, in advertising and selling Lexus, it emphasized that that it

25   provides its customers "with advanced safety engineering and technology." (¶ 93)

26

27   Its strategy for addressing the ever increasing complaints regarding the SUA was to

28   blame driver error. (¶ 153)

1   Significantly, despite the fact Toyota was aware and had notice of numerous

2   complaints, as late as 2009 Toyota made a conscious decision "not to budge" from

3   its position that the defects were driver errors and not defects attributable to the SUA

4   or lack of fail safe mechanisms.  It did so as a reaction to the "global ramifications"

5   that might occur were they to admit such defects to its consumers. (¶ 185)  This

6   admission shows Toyota's knowledge that its actions in the U.S. reached well

7   beyond   to the worldwide market, given the aggressive nature of their

8   advertisements, brochures, emails, letters, warranties, commercials and marketing

9   strategies that stressed over and over the safety of the vehicles.  To claim that this is

10  now only limited to domestic plaintiffs, in light of the factual evidence against that,

11  is an attempt to avoid responsibility.

12      Consequently, foreign plaintiffs have stated a viable claim upon which relief

13  can be granted pursuant to Fed. R. Civ. P. 12(b)(6).   To that extent, Toyota

14  Defendants' argument should be rejected.

**B.   FOREIGN PLAINTIFFS HAVE AMPLY INCLUDED FACTS TO STATE A VIABLE CLAIM AGAINST THE U.S. TOYOTA DEFENDANTS**

Toyota Defendants irrelevantly focus on the fact that certain portions of the

domestic plaintiffs' complaint mirror that in this case.  In an obvious attempt to

misdirect the attention away from their actions, which span more than a decade, they

simply state the foreign plaintiffs have "decided to take a free ride."  (Toyota

Defendants Motion to Dismiss, p. 9) This tactical maneuver in the Motion to Dismiss

is clearly designed to avoid the liability and ignore the tacit admissions that Toyota's defects were a "global problem."   Instead of addressing this factor, they incorrectly rely on the general proposition of a "group pleading" to maintain that the complaint is deficient.

The foreign plaintiffs' class, however, includes all individuals in the above foreign countries outside the United States who purchased, owned or leased a Toyota vehicle with defective ETCS and SUA.  Although foreign plaintiffs note that these vehicles were purchased in their own home countries, what defendants systematically and repeatedly ignore is the fact that the U.S. Toyota Defendants marketed these defective products across the world to other countries who purchased and sold the defective vehicles.   Foreign plaintiffs address section 1-4 of the Motion to Dismiss together, as the specific facts and allegations in those sections are interrelated. (Defendants' Motion to Dismiss, p. 10-13)

The repeated denial of any defect in the electronic throttle is proof positive that U.S. Toyota Defendants knowingly marketed defective products in the foreign wholesale market. In fact, as ¶ 244-275 of the ACFPC demonstrate, although Toyota continued to receive complaints of unintended acceleration by vehicles not involved in the recalls, they denied any further problems with the ETCS despite the fact that their own engineers, admitted that "there is no particular or special testing that would directly prove that there is no unintended acceleration."  (¶ 246 of ACFPC)

When questioned in March 2010 by Chairmen of the House and Subcommittee on Oversight and Investigation, they continued to maintain that there were "no electronic defects contributing to incidents of sudden acceleration." (¶ 237 of ACFPC)  However, they conducted a "webinar," where they admitted that the unintended acceleration problem still existed.    (¶ 245 of ACFPC)    This lack of truthfulness is, for obvious reasons, not addressed by defendants in their motion to dismiss. It is the cornerstone of the foreign plaintiffs' claim against defendants.

Toyota's denials of an ETCS defect persisted even when independent professional engineers concluded in February 2009, that SUA incidents were caused by deviations with ETCS.  Toyota has, in fact, openly acknowledged its emphasis on fast production.    This admission by defendants necessarily implicates foreign plaintiffs.   Without any citation reference to explain why viable arguments, facts and statistics are not available to both foreign and domestic plaintiffs, defendants merely argue the purported impropriety of using the same factual basis for both the foreign plaintiffs and the domestic plaintiffs. They attempt to hide behind the standards enunciated in *Twombly* and *Iqbal* without addressing the allegations themselves but rather attacking the drafting style of the ACFPC. Notably, had different verbiage been used in the ACFPC, the same factual specificity would exist.  The fact is that Toyota, who has admitted that it targets a market that is worldwide, consistently and uniformly rejected claims, made no disclosures to consumers and affirmatively misled consumers.  This deliberate and intentional decision to withhold information