App. 4th Dist. 1999); *Tidenberg v Bidz com, Inc.*, 2009 WL 05249 (C.D. Cal. March 4, 2009).

Each of these three cases focuses on the lack of specific facts linking the non-California plaintiffs to the United States. The unique situation in this case is that the history of deception promulgated by Toyota spans local, domestic and foreign plaintiffs, unlike in *Churchill*, *Norwest* and *Tidenberg*. This situation allows extraterritorial application since the enterprise and the impact of the predicate activity originated and were supported by acts in California.

Thus, foreign plaintiffs have sufficiently plead a clear nexus between California and the conduct and transactions giving rise to their claims against Toyota Defendants.

IV. **EACH SUBSECTION OF THE RICO STATUTE HAS BEEN FULLY SATISFIED**

Defendants next maintain that certain subsections of the RICO statute do not apply to the claims. To the contrary, as illustrated below, foreign plaintiffs have set forth sufficient facts supporting liability for these subsections.

A. **18 USC 1962(a) – Foreign Plaintiffs Were Injured by Toyota Defendants' Use or Investment of Racketeering Income**

The plain language of 18 U.S.C. § 1962(a) suggests that the unlawful act is the investment of income derived by racketeering activities into an enterprise that is engaged in interstate commerce:

"It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of Section 2, Title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a).

Courts have read a proximate cause requirement into the statute. For the plaintiffs to successfully plead a violation of Section 1962(a) they must sufficiently allege a "direct relationship," as they have done in this case, between the claimed injury and the unlawful act. *Hemi Group, LLC v. City of New York*, NY, 130 S.Ct. 983, 989 (2010). *Sybersound Records, Inc. v. UAV Corp.*, cited by the Defendants, is the case that most closely deals with the proximate cause requirement as it applies to Section 1962(a).

In *Sybersound*, the court determined that a plaintiff "must allege facts tending to show that he or she was injured by the use or investment of racketeering income." 517 F.3d. 1137, 1149 (9th Circ. 2008) (quoting *Nugget Hydroelectric, L.L.P. v. Pacific Gas and Elec. Co.*, 981 F.2d 429, 437 (9th Circ. 1992)). Therefore, the act of investing the racketeer income must have been the proximate cause of the plaintiff's

injuries. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d. 1137, 1149 (9th Circ. 2008).

A plaintiff cannot satisfy proximate cause merely by showing that racketeering income was reinvested into an enterprise to continue the racketeering activity. *Id.* A Section 1962(a) allegation fails if the alleged injury from the investment of racketeer income is the same injury as that caused by the predicate acts. *See Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F.Supp.2d 439, 447 (E.D.N.Y. 2010) (finding that the predicate act of selling tax-free cigarettes caused the same injury as the investment of that racketeer income to expand the sale of tax-free cigarettes; therefore, there was no distinct injury to support a Section 1962(a) allegation).

At the outset, foreign plaintiffs note that Defendants misquote *Sybersound*. In their Motion to Dismiss, the Defendants quote *Sybersound* as requiring the plaintiffs show an injury "separate and apart from any injury flowing from the predicate act." (Defendant's Motion to Dismiss, p. 24-26) However, the actual text of *Sybersound* reads, "separate and distinct from the injury flowing from the predicate act." *See* 517 F.3d 1149.

In the context of this case, Toyota Defendants have admitted that they mislead the public. The profits gained from their deliberate sale and marketing of defective products establishes racketeering activity that directly caused harm to foreign plaintiffs. Significantly, Toyota was in the exclusive possession of the information which was material to the domestic and foreign plaintiffs. The foreign plaintiffs

reasonably expected that their vehicles would not contain a serious safety defect, especially since they purchased the vehicle because Toyota touted it as being the "safest" vehicle available. Thus, foreign plaintiffs have established that they have been injured, not only physically but economically as well, by Toyota's pattern of racketeering activity.

B. <u>18 USC 1962(b) – Toyota Defendants Gained Control of a RICO Enterprise</u>

Defendants next claim that foreign plaintiffs fail to state conclusive language alleging a claim under the above statute. Their reference and citation to *U.S. Concord, Inc. v. Harris Graphics* to support this argument is highly misleading. The language "an owner of an enterprise infiltrated as a result of racketeering activity" appears in a footnote where the court was merely providing an example of the type of allegation that could succeed under Section 1962(b). *See* 757 F. Supp. 1053, 1060 (N.D.Cal. 1991). The court's language does not restrict actions under Section 1962(b) to an owner whose enterprise has been infiltrated.

Importantly, as with Section 1962(a), recent circuit court decisions have found that plaintiffs must allege an injury from the defendant's control or acquisition of an enterprise. *See Henriks v. Moritz*, 304 Fed.App. 491 (9th Circ. 2008). In this case, foreign plaintiffs have established that the information Toyota had regarding the SUA defects was in its exclusive possession. Contrary to Defendants' claims, the act of omitting and giving false statements shows its control and acquisition over a

RICO enterprise. Consequently, foreign plaintiffs' injury resulted from that control and acquisition such that it satisfies Section 1962(b).

### C. 18 USC 1962(c) – Foreign Plaintiffs Have Sufficiently Alleged Claims Against an "Enterprise"

Toyota Defendants reach to argue that their racketeering activity, which included withholding crucial information, misleading the public, initiating a widespread world campaign to fraudulently induce the purchase of unsafe vehicles, does not constitute an "enterprise" within the meaning of the statute.

The plain language of 18 USC 1962(c) reads as follows:

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

The Supreme Court has interpreted this language to require "…two distinct entities: (1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a different name." *Cedric Kushner Promotions, Ltd. V. King*, 121 S.Ct. 2087, 2090 (2001). The Court has ratified the circuit courts' "distinctness" principal, agreeing that the same corporation cannot satisfy both the "person" and the "enterprise" requirements. *See Id.* at 2091.

However, a RICO would succeed against an employee of the corporation (the "person") and the corporation (the "enterprise"). *See Id.* at 2091-2092. In the present case, foreign plaintiffs have shown how the acts of the individual employees of Toyota contributed and facilitated the racketeering activity. For example, Christopher Tinto, vice president of regulatory affairs in Toyota's Washington, D.C. office and Christopher Santucci, contributed to stalling and otherwise misdirecting the investigation into Toyota's SUA problems. (¶ 317-318) Eight investigations were opened from 2003 to 2009 of SUA involving Toyota vehicles. These investigations were thwarted by Tinto. In fact, Tinto wrote to NHTSA that no evidence of a system or component failure was found and the vehicles were operating as designed. (¶ 322) Further, in an effort to misdirect the focus of the inquiry, Tinto wrote a letter to NHTSA stating that he felt the complaints didn't warrant NHTSA investigation and that he believed that media attention played a major role in he filing of these complaints. (¶ 325)

Likewise, Toyota intentionally and falsely denied in documents that its vehicles may contribute to a SUA event. As another example, in a June 19, 2004 communication to NHTSA, Toyota falsely stated that its ETC system contained a built in redundancy to prevent acceleration when in fact, the exact opposite is true. (¶ 328) These are but a few examples of the existence of an enterprise, sufficient to defeat Toyota Defendants' assertions otherwise.

Given that foreign plaintiffs can satisfy Sections 1962(a), (b) and (c), foreign plaintiffs have likewise satisfied subsection (d) of the RICO statute by showing that (1) foreign plaintiffs were injured by purchasing a defective Toyota vehicle; (2) Toyota Defendants gained control of the RICO enterprise through its lies, deceptive practices and omissions to its consumers, the NHTSA and its dealers; (3) Toyota Defendants constitute an "enterprise" within the meaning of the statute. To that extent, foreign plaintiffs have satisfied subsection (d). (Defendants Motion to Dismiss, Argument D, p. 26)

As a last resort, Toyota Defendants further claim that the foreign plaintiffs' RICO statement is insufficient. (Defendants' Motion to Dismiss, Argument E, p. 26) As has been established in the ACFPC, Defendants' wrongful conduct affects millions of consumers around the world who have purchased Toyota vehicles. The instrument to accomplish the conspiracy in the enterprise to defraud and misrepresent consumers includes mail and wire fraud violations, conspiracy to hide the defects in design, build and acceleration problems and omissions made in emails, brochures, internet website and advertising material that continued for a period of years.

As the RICO statement illustrates and the ACFPC complaint rightly echoes, Defendants hid their scheme or artifice to defraud, including, failing to disclose that TMC built and sold Toyota vehicles that were defective, failure to research and investigate Toyota vehicles that had sudden unintended acceleration problems which

were caused by a combination of defective floor mats, sticky gas pedals and/or a defective ETCS. Tellingly, until recent news reports detailed the investigation by NHTSA, the defect in Toyota vehicles was effectively hidden from consumers who regularly purchased Toyota vehicles both in the domestic and the foreign market. Thus, the RICO Case Statement demonstrates the applicability of RICO claims in this case.

## V. **IMPROPER JOINDER**

As a general rule, determination of whether an action should be dismissed for failure to join a necessary party is the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties. Federal Rule of Evidence 19(b)(1). Contrary to Defendants' assertion, current Toyota Defendants will not be prejudiced in their defense without joinder of additional parties nor have they demonstrated how such prejudice would occur to either them or to the unnamed parties.

First, it must be noted that prejudice in not joining a party does not automatically make a party indispensible under Rule 19(b), as defendant incorrectly maintains. *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1272 (Fed. Cir. 1998). Rather, a court must employ the following factor test: (1) the interest of the outsider whom it would have been desirable to join; (2) the defendant's interest in avoiding multiple litigation, inconsistent relief, or sole responsibility for a liability it shares with another; (3) the interest of the courts and the public in

complete, consistent, and efficient settlement of controversies; and (4) the plaintiff's interest in having a forum. *In re Olympic Mills Corp.*, 477 F.3d 1, 8-9 (1st Cir. 2007); *See Provident Tradesmens Bank & Trust*, 390 U.S. at 108-11 (1968).

If the court determines that "a judgment rendered in the person's absence will be adequate" to protect his interests, the person is not indispensable." *In re Allustiarte*, 786 F.2d 910, 919 (9th Cir. 1986). The cases cited by Defendants to support their position are all distinguishable. Point in fact, they involve situations where subsidiaries either were the negligent party (and the parent corporation was sued only on the basis of agency) or where the subsidiary exercised considerable ownership, control, and maintenance so as to be partly liable. *See Carl Schroeter GmbH & KO., KG v. Crawford & Co.*, 2009 WL 1402100 (E.D. Pa. May 19, 2009); *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512 (D. Minn. 1996); *Great Lakes Intellectual Prop Ltd. V. Sakar Int'l, Inc.*, 516 F. Supp. 2d 880 (W.D. Mich. 2007).

That scenario, however, is not the case here. Namely, the foreign plaintiffs can individually initiate actions against the foreign manufacturer's and dealerships without any prejudice to either Toyota or the foreign manufacturers. Thus, unlike in *Carl Schroeter GmbH & KO*, where the foreign plaintiffs sued an American corporate defendant, seeking to hold that defendant liable for its foreign subsidiary's conduct, here the opposite is the case. In fact, the court has noted that many courts have concluded that when a defendant is sued solely in connection with its subsidiary's conduct, the subsidiary is a necessary and indispensable party." *Carl*

*Schroeter GmbH & KO., KG. v. Crawford & Co.*, 2009 WL 1408100 (E.D. Pa. 2009).

Similarly, in *Polanco*, the court held, "Equity prohibits this action from proceeding where Fuller-Guatemala will be unable to defend its products or marketing methods, but may ultimately face liability as a result of legal determinations made in its absence." *Polanco*, 941 F. Supp. at 1523. It specifically noted that it could overlook the fact that any trial here will largely be a trial of the conduct of Fuller-Guatemala." *Polanco v. H.B. Fuller Co.*, 941 F. Supp. 1512, 1523 (D. Minn. 1996) (where the suit was brought against the U.S. parent corporation, the liable actions were primarily conducted by foreign subsidiary).

A similar rationale was used in *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F. Supp. 831, 847 (D. Del. 1978). There, the court concluded that the present defendants (the parent company) could not be held liable for AON's (the foreign subsidiary) alleged breach of contract, and since no judgment can be rendered against AON in its absence. *Japan Petroleum Co.*, 456 F. Supp. at 847. It pointed out that no judgment can be rendered in the present action which would be prejudicial to AON.

The same reasoning cannot be applied in this case, despite Toyota Defendants' laborious attempt to apply it. Unlike in the above distinguishable cases, Toyota Defendants in this case are *not* the subsidiary and will suffer no prejudice any more than any other foreign defendants would suffer if they were not joined to this suit.

- 34 -

Tellingly, Toyota Defendants cannot articulate how they would be prejudiced in their defense of this matter without the joinder of parties such as South Africa's accession to the Hague Evidence Convention.

Consequently, for the reasons discussed, this matter should not be dismissed under Federal Rule of Civil Procedure 12(b)(7).

VI. **JURISDICTION**

A. **DIVERSITY JURISDICTION**

Defendants incorrectly claim that the complaint should be dismissed against all the defendants because diversity jurisdiction is lacking. Although the circuit courts differ, generally speaking a corporation has dual citizenship, for the purposes of diversity jurisdiction, in the county where it is headquartered and the location of its principal place of business. *Slavchev v. Royal Caribbean Cruises, Ltd.*, 559 F.3d 251 (4th Circ. 2009).

A corporation with its principal place of business in one of the states of the United States and incorporated under the laws of a foreign state has dual citizenship for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"). *See also Danjaq S.A. v. Pathe Communications Corp.*, 979 F.2d 772, 774 (9th Circ. 1992). For purposes of diversity jurisdiction, a corporation's principal place of business outside the United States, the District of Columbia, and Puerto Rico will not defeat diversity of

citizenship when an alien is part of the opposing side." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1559 (11th Circ. 1989). In fact, jurisdiction exists where diverse citizens are joined with aliens under 28 U.S.C. § 1332(a)(3) even where the aliens appear on both sides of the controversy. *Dresser Industries v. Lloyds of London*, 106 F. 3d 494 (3d. Cir. 1997); *Allendale Mutual Ins. Co. v. Bull Data Sys*, 10 F. 3d 425 (7th Cir. 1993); *Transure v. Marsh & McLennan*, 766 F. 2d 1297, 1299 (9th Cir. 1985). Thus, foreign plaintiffs' claim need not be dismissed for lack of jurisdiction.

**B.   JOINDER**

Finally, defendants maintain that joinder is improper in this case. (Defendants' Motion to Dismiss, p. 30) Complete diversity of citizenship, as in this case, must exist between all defendants to create federal subject matter jurisdiction in a case governed by substantive state law. *See Whalen v. Carter*, 954 F. 2d 1087 (5th Cir. 1992). In this case, Defendants labor to maintain that U.S. Toyota Defendants are not properly joined to the complaint and that, in fact, this is "only between foreign plaintiffs and TMC," (Defendants' Motion to Dismiss, p. 31)

To establish improper joinder, defendants must prove: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F. 3d 644, 647 (5th Cir. 2003). Since Defendants in this case do not assert fraud by foreign plaintiffs, the test for improper joinder is "whether the defendants have demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant."

- 36 -

*Morris v. Prinncess Cruises, Inc*, 236 F. 3d 1061 9th Cir. 2001). Put another way, there is no reasonable basis for the court to predict that the plaintiff might be able to recover against an in-state defendant. *Id.*

In the present situation, the direct opposite is the case. Although Defendants couch their argument in terms of "solving a mystery," none exists in this case. The claims against U.S. Toyota Defendants has been: (1) intended from the outset, (2) recognized by state law as a viable cause of action (3) supported by sufficient actionable conduct on behalf of defendants. To claim that U.S. Toyota Defendants do not have a nexus to this lawsuit is a weak attempt to disassociate themselves from the direct results of their omissions, lies and deceit. Defendants attempt to analogize this case to *Luftfahrtversicherungs-Aktiengesellschaft v. Markel Ins. Co.*, 1007 WL 141154 (S.D. Fla. Jan 16, 2007), arguing that subject matter jurisdiction is lacking over this case because the "true dispute" is between two foreign corporations, like in the *Luftfahrtversicherungs* case. A review of the facts of that case, however, shows that the complaint was amended after a Motion to Dismiss was filed, completely unlike the present situation. Two citizens of Florida were added to the Amended Complaint only for the purpose of establishing diversity. In reply, defendant argued that the two plaintiffs were fraudulently joined for the purposes of creating diversity. The Court agreed and dismissed the suit for lack of subject matter jurisdiction.

Here, however, it is undisputed that U.S. Toyota Defendants were the intended defendants from the outset, nor do Defendants claim otherwise. Rather, they simply,

and incorrectly, assert that they should not be a party to this lawsuit. The reason for this is obvious: they seek to avoid liability. Nevertheless, as established in the ACFPC, this case is not an action between foreign parties, despite Defendants' attempt to make it so. Consequently, Defendants' request to dismiss for lack of diversity should be denied.

## VII. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the ACFPC should be denied.

DATED: March 1, 2011.

RIBBECK LAW CHARTERED

By: /s/ Monica R. Kelly

Monica R. Kelly (Illinois Bar ID 6225920)
monicakelly@ribbecklaw.com
mervinmateo@ribbecklaw.com
RIBBECK LAW CHARTERED
505 N. Lake Shore Drive, Suite 102
Chicago, IL 60611
Telephone: (312) 822-9999

*Lead Counsel for Foreign Economic Loss Plaintiffs*

## PROOF OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on March 1, 2011.

/s/ Monica R. Kelly

Monica R. Kelly