# EXHIBIT A

# FILED UNDER SEAL
# [PAGES 22-43]

# EXHIBIT B

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

Because there are material differences in the potential applicable laws to Plaintiffs' claims, *see* Toyota Brief, Part III.B and Dawson Decl. at Exs. D, E, F, G, H, I, and J, this Court must proceed to Step 2 of its choice-of-law analysis. Accordingly, this Court must identify each transferor jurisdiction and apply the conflict of laws rules of each transferor jurisdiction. This appendix identifies the conflict of laws rule for each transferor jurisdiction and demonstrates how those rules have been interpreted and applied to a specific set of facts.

As demonstrated by this appendix and argued in Part III.B.3 of the Brief, the "contact" that is given the most weight in the multi-faceted balancing conducted by the courts is the place of injury/place of contracting. Further, as dictated by *Phillips Petroleum Co. v. Shutts*, this Court's analysis must focus on the claims of each member of the putative class, and each of their claims' contacts with the forum jurisdiction. Thus, after a full and proper analysis and consideration of the applicable conflict of laws rules of <u>all</u> the transferor courts, the inescapable result is that the law of all 52 U.S. jurisdictions will apply to each of the various claims at issue.

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| AL[1] | **Torts:**<br>• *Lex loci delicti. See Fitts v. Minnesota Mining & Mfg. Co.*, 581 So. 2d 819 (Ala. 1991); *see also Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004); *see also* Brief at Part III.B.3.a.<br><br>**Contracts:**<br>• *Lex loci contractus*, with a place of performance exception. *See First Nat'l Life Ins. Co. v. Fidelity & Deposit Co. of Maryland*, 525 F.2d 966, 967 (5th Cir. 1976); *Stovall v. Univ. Constr. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004); *see also* Brief at Part III.B.3.a. | **Torts:**<br>• Place of injury.<br><br>**Contracts:**<br>• Place where the contract was formed.<br>• *Exception:* if the contract is to be performed in a place other than where it is made, the court will apply the law of the state where the contract is performed. | **Torts:**<br>• Place of injury for a fraud claim is the state where the plaintiff suffered the economic impact of the fraud, e.g., where the plaintiff's place of business is located. *See Glass v. S. Wrecker Sales*, 990 F. Supp. 1344, 1348 (M.D. Ala. 1998), <u>aff'd</u>, 163 F.3d 1361 (11th Cir. 1998).<br><br>**Contracts:**<br>• A contract is made in the state in which the last act essential to execution of the contract took place. *Browning Enter., Inc. v. Rex Iron & Mach. Prods. Co.*, 504 F. Supp. 2d 1217, 1226 (N.D. Ala. 2007).<br>• The state in which an insurance contract is formed is where it is made and delivered to the policyholder *See Ferris v. Jennings*, 851 F. Supp. 418, 421 (M.D. Ala. 1993).<br>• Place of performance, in a case involving sale of a bond, was where the performance on the bond would be due to plaintiff. |

---

[1] Alabama is the transferor jurisdiction for one economic loss class action case: *Harding v. Toyota Motor Corp., et al*, No. 8:10-cv-00552 (formerly 10-cv-00100) (M.D. Ala.).

LEGAL02/32548290v1

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| AK[2] | **Torts:**<br>• Most significant relationship test, using the Restatement (Second) of Conflict of Laws §§ 6 and 145. *Savage Arms, Inc. v. Western Auto Supply Co.*, 18 P.3d 49, 54 (Alaska 2001).<br><br>**Contracts:**<br>• Most significant relationship test, using the Restatement (Second) of Conflict of Laws §§ 6 and 188. *Long v. Holland America Line Westours, Inc.*, 26 P.3d 430, 433 (Alaska 2001).<br><br>**Application of the Most Significant Relationship Test:[3]**<br><br>**Step 1** – Apply the relevant presumptions.<br>• **Tort-based claims:** Place of injury, except where fortuitous or when it bears little relation to the occurrence and the parties | **Torts (§ 145(2)(a)-(d)):**<br>• Place where the injury occurred<br>• Place where the conduct causing the injury occurred<br>• Domicile, residence, nationality, place of incorporation and place of business of the parties<br>• Place where the relationship, if any, between the parties is centered<br><br>**Fraud and Misrepresentation claims (§ 148(2)(a)-(f)):**<br>• Place of reliance<br>• Place where representations were received<br>• Place where representations were made<br>• Domicile, residence, nationality, place of incorporation and place of business of the parties<br>• Place where subject of the transaction was situated<br>• Place where plaintiff is to render performance under fraudulently induced contract<br><br>**Contract (§ 188(2)(a)-(f)):**<br>• Place of contracting<br>• Place of negotiation of contract | **Torts:**<br>• The state with the most significant relationship to the occurrence and the parties in a products liability tort case was:<br>  o Where plaintiffs resided at the time of injury;<br>  o Where the product was purchased and used;<br>  o Where another person could have been injured by plaintiffs' product's use.<br><br>*Savage Arms, Inc. v. W. Auto Supply Co.*, 18 P.3d 49, 54 (Alaska 2001).<br><br>**Contracts:**<br>• The place of performance is of primary importance: it has "so close a relationship to the transaction and the parties that it will often be the state of the applicable laws;"<br>• The parties' domicile, residence, place of incorporation, and/or place of business deserves less consideration than the place of contract performance; and<br>• Where the parties conduct negotiations from separate states by mail and telephone, the place of negotiation and contracting is less important than party location and place of performance.<br><br>*Long v. Holland Am. Line Westours, Inc.*, 26 P.3d 430, 433 (Alaska 2001). |

[2] Alaska is the transferor jurisdiction for one economic loss class action case: *Robson v. Toyota Motor Corp.*, No. 8:10-cv-00551 (formerly 3:10-cv-00037) (D. Alaska). *Robson* has since been voluntarily dismissed without prejudice. Given the dismissal of *Robson*, there are no cases currently pending in this MDL that were transferred from Alaska. Therefore, Toyota does not include Alaska as one of the forty-one transferor jurisdictions. Nevertheless, for the Court's convenience, Alaska's choice-of-law analysis is included herein.

[3] Where states use the Restatement (Second) of Conflict of Laws test to determine tort and contracts choice-of-law issues, Toyota will not restate this multi-step test or the corresponding contacts and factors for each state, but will instead note any state's modification of the Second Restatement test or any emphasis placed on a specific factor or presumption.

- 2 -

000045

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | with respect to the particular issue. § 145 cmt. e. <br> • **Fraud-based claims**: Place of reliance if made and received in the same state. § 148(1). But, general approach is to presume application of law of state where plaintiff received and relied on representations. *See* § 148 cmt. j. <br> • **Fraud-based claims**: It is presumed that "[t]he place of negotiating the contract and the place of performance are in the same state," this state is presumed to have the most significant relationship to the transaction and the parties. § 188(3). <br><br> **Step 2** – Determine if some other state has a more significant relationship and therefore rebuts the relevant presumption by weighting the claim-specific contacts (§§145, 148, 188) in light of the general public policy principles (§ 6). | • Place of performance <br> • Location of the subject matter of the contract <br> • Domicile, residence, nationality, place of incorporation and place of business of the parties <br><br> **General Public Policy Principles** (§ 6(2)(a)-(g)): <br> • The need of the interstate and international systems <br> • The relevant policies of the forum <br> • The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue <br> • The protection of justified expectations <br> • The basic policies underlying the particular field of law <br> • Certainty, predictability and uniformity of result <br> • Ease in determination and application of the law to be applied | |

LEGAL02/32548290v1

000046

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| AZ[4] | **Torts:**<br>• Most significant relationship test, using the Restatement (Second) of Conflict of Laws. *Garcia v. Gen. Motors Corp.*, 195 Ariz. 510, 517 (Ariz. App. Div. 1999); *Bates v. Superior Ct. of Ariz.*, 156 Ariz. 46, 49 (Ariz. 1988); *see also* Brief at Part III.B.3.b.<br><br>**Contracts:**<br>• Most significant relationship test, using Restatement (Second) of Conflict of Laws. *CLN Props., Inc. v. Republic Servs., Inc.*, 688 F. Supp. 2d 892 (D. Ariz. 2010); *see also* Brief at Part III.B.3.b. | See Restatement factors enumerated above, pp. 2-3. | **Torts:**<br>• In a case alleging a vehicle's product defect causing personal injury, the court applied the law of the plaintiffs' state, as the parties' relationship was centered in the state where plaintiffs resided, rented the van, began their trip, and intended to return. *Garcia*, 195 Ariz. at 517.<br>• The court pays particular interest to the state's policies underlying the field of law: even where Arizona's laws potentially provide less recovery for plaintiffs, Arizona nevertheless has strong policy interests behind those laws outweighing the interests of the state where personal injury fortuitously happened. *Garcia*, 195 Ariz. at 518, 520.<br>• In a bad faith insurance case, plaintiffs' current state of residence was place where she suffered mental, physical or financial injuries. The state where she resided when she purchased the insurance policy at issue was not relevant. The relationship between her and the insurer was centered at the insurer's home office, because that is where claims are accepted or rejected. *Bates*, 156 Ariz. at 51<br>• The courts also use Restatement (Second) §146, which states that where the injury occurred is determinative unless some other state has a more significant relationship, to apply the law of the state where plaintiffs resided and was injured. *Bates*, 156 Ariz. at 51.<br><br>**Contracts:**<br>• Court applies the law of the place where plaintiffs reside, where the contracts were created, negotiated, and to be performed, and where the subject matter of the contract was located. The defendant's contacts in Arizona were not as strong, and the location of defendant's alleged wrongful decision is not one of the primary factors Arizona courts consider under the Restatement. *CLN Props.*, 688 F. Supp. 2d at 897.<br>• If a contract for sale of goods is negotiated between an out of state seller and an in-state purchaser, then the law of the state of purchase applies, because the injury occurred when the goods were used and |

[4] Arizona is the transferor jurisdiction for two economic loss class action cases: *Smyser v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00720 (formerly 2:10-cv-00741) (D. Ariz.) and *Bowron v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv 10-00719 (formerly 2:10-cv-00580) (D. Ariz.).

- 4 -

000047

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | | | the underlying damage occurred; the purchaser's state also has a superior policy interest in using warranties to protect its resident purchaser's contractual interests. *Greer v. T.F. Thompson & Sons, Inc.*, No. CV-10-0799-PHX-SMM, 2011 WL 175889 (D. Ariz. Jan 19, 2011). |
| AR[5] | **Torts:** <br> • Courts use *lex loci delicti*, but also look to Leflar's five choice-influencing considerations "to soften th[at] formulaic application." *Ganey v. Kawasaki Motor Corp., U.S.A.*, 234 S.W.3d 838, 846-47 (Ark. 2006); *see also* Brief at Part III.B.3.c.(2). <br><br> **Contracts:** <br> • Law of the state with the most significant relationship to the issue at hand. *Crisler v. Unum Ins. Co. of Am.*, 366 Ark. 130, 233 S.W.3d 658 (Ark. 2006); *see also* Brief at Part III.B.3.b. | **Torts:** <br> • Place where the wrong took place <br> • Lesser weight given to: <br>   ○ Predictability of results <br>   ○ Maintenance of interstate and international order <br>   ○ Simplification of the judicial task <br>   ○ Advancement of the forum's governmental interests <br>   ○ Application of the better rule of law <br><br> **Contracts:** <br> • Place of contracting <br> • Place of negotiation of contract <br> • Place of performance <br> • Location of subject matter of the contract <br> • Domicile, residence, nationality, place of incorporation and place of business of the parties | **Torts:** <br> • In order to determine Leflar factors, courts first look to most significant relationship, based on: <br>   ○ Where the product was sold and acquired; <br>   ○ Where the injured party resided. <br> • *Ganey v. Kawasaki Motors Corp., U.S.A.*, 234 S.W.3d 838, 847 (Ark. 2006) <br><br> **Contracts:** <br> • Place of performance: the state from which plaintiff's payments were made and where the benefit to the plaintiff was to be received; <br> • Court also took into account where the product was solicited and where the offer to sell the product was received, i.e., in Arkansas, to an Arkansas resident, in noting that the Arkansas resident would justifiably expect Arkansas law to apply. <br> • *Crisler v. Unum Ins. Co. of Am.*, 233 S.W.3d 658, 661 (Ark. 2006) |

---

[5] Arkansas is the transferor jurisdiction for four economic loss class action cases: *Horn v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00553 (formerly 4:10-cv-00090) (E.D. Ark.), *Rainwater v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-00554 (4:10-cv-00116) (E.D. Ark.), *Adkison v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-00556 (formerly 6:10-cv-06013) (W.D. Ark.), and *Lentz v. Toyota Industries, N.A., Inc., et al.*, No. 8:10-cv-00555 (formerly 4:10-cv-00149) (E.D. Ark.).

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| CO[6] | **Torts & Contracts:**<br>Restatement (Second) of Conflicts of Law. *In re AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507 (Colo. 2007); *see also* Brief at Part III.B.3.b. | See Restatement factors enumerated above, pp. 2-3. | **Torts:**<br>• The injury occurred where the product was purchased and used and where plaintiff resided.  Because this place of injury was not fortuitous, the restatement requires the court to give strong weight to the place of injury. *Elving v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207, 1211 (D. Colo. 2010).<br>• Even assuming for the sake of analysis that the location of a company's headquarters was the location of the product's design, manufacture and testing, this factor was outweighed by the place of the injury. *Elving*, 696 F. Supp. 2d at 1212, 1215.<br>• Application of the laws of the defendant's headquarters state "although convenient for the purposes of pursuing a class action, would defeat reasonable expectations of [the product's] purchasers under the laws of the states where they reside. *Elving*, 696 F. Supp. 2d at 1213.<br><br>**Contracts:**<br>• Colorado has a strong policy interest in validating agreements and protecting the parties' expectations. *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369 (Colo. 1979).<br>• The most significant relationship is with the state where the insurance contract was negotiated and entered into and where Plaintiff did business. *Berry & Murphy, P.C. v. Carolina Cas. Ins., Co.*, 586 F.3d 803, 808 (10th Cir. 2009). |

[6] Colorado is the transferor jurisdiction for three economic loss class action cases: *Harris v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-00722 (formerly 1:10-cv-00460) (D. Colo.), *Noble v. Toyota Motor North America, Inc.*, No. 8:10-cv-00723 (formerly 1:10-cv-00915) (D. Colo.) and *Scharrel v. Toyota Motor North America, Inc.*, No. 8:10-cv-00557 (formerly 1:10-cv-00227) (D. Colo.). *Scharrel* has since been voluntarily dismissed *without prejudice*.

- 6 -

LEGAL02/32548290v1

000049

## CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| CT[7] | **Torts:**<br>• *Lex loci delicti*, except that if this analysis would "produce an arbitrary or irrational result," courts apply the Restatement (Second) of Conflicts of Law. *Macomber v. Travelers Property & Cas. Corp*, 894 A.2d 240, 256-57 (Conn. 2006).<br><br>**Contracts:**<br>• Restatement (Second) of Conflicts of Law. *Reichhold Chemicals, Inc. v. Hartford Acc. and Indem. Co*, 703 A.2d 1132 (Conn. 1997); *see also* Brief at Part III.B.3.b. | **Torts:**<br>• Primary inquiry: place where the injury occurred<br>• Alternate inquiry: See Restatement factors enumerated above, pp. 2-3<br><br>**Contracts:**<br>• See Restatement factors enumerated above, pp. 2-3. | **Torts & Contracts:**<br>• Where the alleged injury occurred in New York, even though defendants were residents of Connecticut, the court applied New York law because the law of the place of injury did not produce an arbitrary or irrational result. *Weber v. U.S. Sterling Sec., Inc*, 924 A.2d 816, 827 (Conn. 2007)<br>• Where the place of injury and the conduct causing the injury were unclear and minimally probative, the court examined the Restatement factors. Because plaintiffs were Connecticut residents, defendants were based in Connecticut and New York, and the communications with plaintiffs at issue in this unfair trade act litigation were in Connecticut, the center of the parties' relationship was Connecticut and Connecticut law applied. *McLoughlin v. People's United Bank, Inc*, No. 08-cv-944, 2009 WL 2843269, 6 (D. Conn. Aug. 31, 2009)<br><br>**Contracts:**<br>• Connecticut adopts the Restatement § 188 presumption that applies the law of the state in which the bulk of the contracting transactions took place, unless another state has an overriding policy-based interest in the application of its law. *Macomber v.* 894 A.2d at 257; *Reichhold Chems*, 703 A.2d at 1138. |
| DC[8] | **Torts & Contracts:**<br>• Modified governmental interest analysis. | **Torts & Contracts:**<br>• Determine which state's policy would be better advanced by applying the state's law to the facts of the case, taking into consideration Restatement (Second) factors:<br>  ○ Place of injury | **Torts:**<br>• Because Maryland has the primary responsibility for ensuring safety within its borders, it has the superior interest in determining liability for negligent acts regarding public safety, particularly where actors are Maryland residents, and even though one defendant was the District of Columbia, and the other defendant was employed by the District of Columbia. *District of Columbia v. Coleman*, 667 A.2d 811, 817-18 (D.C. 1995). |

---

[7] Connecticut is the transferor jurisdiction for one economic loss class action case: *Patel v. Toyota Motor North America, Inc*, No. 8:10-cv-00558 (formerly 3:10-cv-00210) (D. Conn.).

[8] District of Columbia is the transferor jurisdiction for one economic loss class action case: *Miller v. Toyota Motor North America, Inc*, No. 8:10-cv-00724 (formerly 1:10-cv-00657) (D.D.C.). *Miller* has since been voluntarily dismissed without prejudice. Given the dismissal of *Miller*, there are no cases currently pending in this MDL that were transferred from D.C. Therefore, Toyota does not include D.C. as one of the forty-one transferor jurisdictions. Nevertheless, for the Court's convenience, D.C.'s choice-of-law analysis is included herein.

LEGAL02/32548290v1

000050

## CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | | o Place of conduct causing injury<br>o Domicile, residence, nationality, place of incorporation and place of business of the parties<br>o Place of center of relationship | **Contracts:**<br>• Because the state in which the contract was performed has the most interests in protecting the rights of the plaintiffs in its state, the court applied the law of the state in which the contract was breached. *Hyman v. First Union Corp.*, 982 F. Supp. 8, 11 (D.D.C. 1997). |
| FL[9] | **Torts:**<br>• Restatement (Second) of Conflict of Laws. *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980); *see also* Brief at Part III.B.3.b.<br><br>**Contracts:**<br>• *Lex loci contractus. State Farm Mut. Auto Ins. Co. v. Roach*, 945 So.2d 1160, 1163 (Fla. 2006); *see also* Brief at Part III.B.3.a. | **Torts:**<br>• See Restatement factors enumerated above, pp. 2-3.<br><br>**Contracts:**<br>• Place of execution of contract | **Torts:**<br>• The place of the injury usually has the most significant relationship, but where it has little significance to the cause of action, the court applied the laws of Virginia, where the product was delivered and sold to a Virginia resident, over Florida, where the injury manifested itself. Defendant was headquartered in Indiana, where it also manufactured and designed the product in Indiana, but the court did not find those contacts significant. *Chapman v. DePuy Orthopedics, Inc.*, No. 09-cv-1835, 2011 WL 149329, at *2 (M.D. Fla. Jan 18, 2011).<br><br>**Contracts:**<br>• Parties enter into a contract with the expectation that the law of their state will govern that contract. The only exception to this bright-line rule is to apply Florida law to protect permanent Florida residents from an application contrary to Florida public policy. *State Farm*, 945 So. 2d at 1162, 1164, 1169. |

---

[9] Florida is the transferor jurisdiction for fourteen economic loss class action cases: *Gellman v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-00465 (formerly 1:10-cv-20006) (S.D. Fla.), *Lynch v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00464 (formerly 8:10-cv-00326) (M.D. Fla.), *Heilbrunn v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00564 (formerly 9:10-cv-80208) (S.D. Fl.), *Heidenreich v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00561 (formerly 4:10-cv-00035) (N.D. Fla.), *Rivas-Vigil v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00563 (formerly 0:10-cv-60183) (S.D. Fla.), *Cipriani v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00559 (formerly 8:10-cv-00427) (M.D. Fla.), *Ramos v. Toyota Motor Sales U.S.A., Inc*, No. 8:10-cv-00726 (formerly 1:10-cv-20630) (S.D. Fla.), *Cohen-Goldberger v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00727 (formerly 1:10-cv-20648) (S.D. Fla.), *Stff v. v. Toyota Motor North America, Inc. et al.*, No. 8:10-cv-00725 (formerly 0:10-cv-60379) (S.D. Fla), *Helmick v. Toyota Motor Sales, U.S.A. Inc., et al.*, No. 8:10-cv-00728 (formerly 1:10-cv-20960) (S.D. Fla.), *Vincent v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-01363 (formerly 1:10-cv-22785) (S.D. Fla.), *Ryan v. v. Morse Operations, Inc., et al.*, No. 8:10-cv-01365 (formerly 9:10-cv-80929) (S.D. Fla.), *Kline v. Toyota Motor Corporation, et al.*, No. 8:10-cv-01364 (formerly 9:10-cv-80912) (S.D. Fla.), and *Johnson v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00562 (formerly 5:10-cv-00026) (N.D. Fla.). *Johnson* has since been voluntarily dismissed without prejudice.

- 8 -

## CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| GA[10] | **Torts:**<br>• *Lex loci delicti. See Lowe v. Ford Motor Co.,* No. 4:10-CV-125 (CDL), 2011 WL 830166, at *3 n.2 (M.D. Ga. Mar. 3, 2011); *see also Terrill v. Electrolux Home Prods., Inc.,* 2010 WL 4386711, at *3 (S.D. Ga. 2010); *see also* Brief at Part III.B.3.a.<br><br>**Contracts:**<br>• *Lex loci contractus,* with a place of performance exception. *See Gen. Tel. Co. of the S.E. v. Trimm,* 252 Ga. 95, 96, 311 S.E.2d 460, 461 (1984); *see also Terrill,* 2010 WL 4386711, at *3; *see also* Brief at Part III.B.3.a. | **Torts:**<br>• Place of injury<br>• *Exception:* if no statute applies, then Georgia common law will be applied if due process permits.<br><br>**Contracts:**<br>• Place of contracting<br>• *Exception:* if the contract is to be performed in a place other than where it is made, the court will apply the law of the state where the contract is performed.<br>• *Exception:* if no statute applies, then Georgia common law will be applied if due process permits. | **Torts:**<br>• "Georgia's choice of law rules apply the doctrine of *lex loci delicti,* the traditional rule that 'a tort action is governed by the substantive law of the state where the tort was committed.' Here, the accident and resulting injuries occurred in Alabama and therefore, under general *lex loci delicti* principles, Alabama substantive law would apply to Plaintiffs' [product liability] claims." *Lowe,* 2011 WL 830166, at *3 n.2 (internal citations omitted).<br>• The court recognized the exception to *lex loci delicti,* in which Georgia applies its own common law rather than foreign case law but found it unnecessary to apply the exception because both Alabama and Georgia recognized negligent failure to warn claims against a seller of allegedly dangerous products. *Id.*<br>• Where plaintiffs filed a nationwide class action against manufacturer of front-load washing machines, alleging breach of express and implied warranty, violation of the Magnuson-Moss Act, unjust enrichment, and several consumer protection act claims, the court applied *lex loci delicti* (law of the state where the injury occurred) to the tort claims. *Terrill,* 2010 WL 4386711, at *3.<br>• The court recognized the exception in Georgia where courts apply the common law as developed in Georgia rather than foreign case law, but noted the exception only applies where no statute is involved. According to the court, "[t]he Georgia Uniform Deceptive Trade Practices Act is obviously statutory, so the law of each Plaintiff's home state . . . applies to their consumer protection claims." *Id.* at *3.<br><br>**Contracts:**<br>• Where the last act essential to form the employment contract occurred in Georgia, where the employee mailed the contract, Georgia's adherence to *lex loci contractus* required the application of Georgia law. *Gen. Tel. Co. of the S.E. v. Trimm,* 706 F.2d 1117, 1118-20 (11th Cir. 1983); *Gen. Tel. Co.,* 252 Ga. at 96. |

[10] Georgia is the transferor jurisdiction for four economic loss class action cases: *Stoller v. Toyota Motor Corporation, et al.,* No. 8:10-cv-00565 (formerly 4:10-cv-00024) (M.D. Ga.), *Laird v. Toyota Motor Corporation, et al.,* No. 8:10-cv-00566 (3:10-cv-00022) (S.D. Ga.), *Schlegel v. Toyota Motor Sales, U.S.A., Inc.,* No. 8:10-cv-00729 (formerly 1:10-cv-00694) (N.D. Ga.), and *Drake v. Toyota Motor Sales, U.S.A., Inc., et al.,* No. 8:10-cv-00730 (formerly 1:10-cv-01231) (N.D. Ga.).

- 9 -

LEGAL02/32548290v1

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | | | • In the class-action context, in *Terrill*, the court likewise applied the law where each consumer purchased front-load washing machines to the consumers breach of express and implied warranty claims. *Terrill*, 2010 WL 4386711, at *3.<br><br>• The exception where Georgia courts apply Georgia common law did not apply: "Because breach of express and implied warranty claims are governed by statute, Georgia law does not apply to all of the named-Plaintiffs' express and implied warranty claims . . . so the law of each Plaintiff's home state . . . applies." *Terrill*, 2010 WL 4386711, at *3. |
| HI[11] | **Torts & Contracts:**<br><br>• Combined modern approach. *Mikelson v. United Services Auto. Ass'n*, 111 P.3d 601, 607 (Haw. 2005); *Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co.*, 183 P.3d 734, 742 (Haw. 2007); *see also* Brief at Part III.B.3.c.(3). | **Torts & Contracts:**<br><br>• Flexible approach, looking to state with the most significant relationship and placing primary interest on deciding which state has the strongest interest in seeing its laws applied. | **Torts:**<br><br>• Where a product was manufactured in California by a California corporation and sold in California, but later shipped to Hawaii, where it injured an Indiana soldier stationed in Hawaii, Hawaii law applied because of Hawaii's stronger interest in "protecting those within its borders . . . from defective products imported into the state." *Jenkins v. Whittaker Corp.*, 785 F.2d 720, 725 (9th Cir. 1986).<br><br>**Contracts:**<br><br>• Hawaii has the most significant interest because of its strong state policy in protecting injured persons within its state, even if those injured persons are not full-time residents of Hawaii. *Mikelson*, 111 P.3d at 609.<br><br>• A life insurance policy should be interpreted according to Hawaiian law, because the policyholder and beneficiaries were all in Hawaii. Hawaii had the most significant relationship, even though the policyholder had originally obtained the policy in California, and this would be the case even if the policy contained a choice-of-law clause. The court did not even mention, let alone consider, where the insurer was located or headquartered. *Prudential Ins. Co. of Am. v. Norva*, No. Civ. 07-616, 2009 WL 1025875 (D. Haw. Apr. 15, 2009) |

---

[11] Hawaii is the transferor jurisdiction for one economic loss case: *Funasaki v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00731 (formerly 1:10-cv-00111) (D. Haw.).

- 10 -

LEGAL02/32548290v1

000053

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| IA[12] | **Torts & Contracts:**<br>• Restatement (Second) of Conflicts of Law. *Duchardt v. Midland Nat. Life Ins. Co.,* 265 F.R.D. 436, 447 (S.D. Iowa 2009); *see also* Brief at Part III.B.3.b. | See Restatement factors enumerated above, pp. 2-3. | **Torts:**<br>• Where the purchaser received product information in Nebraska, purchased the product, and used it there, Nebraska was the place of injury and the place of the conduct leading to the injury. Nebraska was also the center of the parties' relationship and the state with the most significant contacts, even though defendant was headquartered in Iowa. *Harlan Feeders v. Grand Labs, Inc.* 881 F. Supp. 1400, 1409-10 (N.D. Iowa 1995).<br>• Even though plaintiff's state imposed fewer penalties on defendant than defendant's state would have, plaintiffs' state's interests were still stronger for the choice-of-law analysis because of the weight of its contacts. *Harlan Feeders,* 881 F. Supp. at 1410.<br><br>**Contracts:**<br>• In a breach of contract claim involving policies issued in 47 states to domiciliaries of those states, the policyholders' states laws would apply. The fact that defendant's headquarters were in Iowa and that the contract referenced an Iowa address could not outweigh the policyholders' more significant contacts. *Duchardt,* 265 F.R.D. at 447-48.<br>• Where the purchaser received product information in Nebraska, purchased the product, and used it there, Nebraska was the place of contracting, the place of negotiation, the place of performance, and the locale of the subject matter of the contract, and was the state with the most significant contacts, even through defendant was headquartered in Iowa. *Harlan Feeders,* 881 F. Supp. at 1412.<br>• Although defendant could have expected the state of its headquarters to apply to it, plaintiff could have also expected the state of contracting, delivery and use to apply to it. *Harlan Feeders,* 881 F. Supp. at 1412-13. |

[12] Iowa is the transferor jurisdiction for two economic loss class action cases: *Carlson v. Toyota Motor Corporation, et al.,* No. 8:10-cv-00733 (formerly 4:10-cv-00083) (S.D. Iowa), and *Beard v. Toyota Motor Corporation, et al.,* No. 8:10-cv-00732 (formerly 3:10-cv-00033) (S.D. Iowa).

- 11 -

000054

## CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| ID[13] | **Torts & Contracts:**<br><br>• Most significant relationship test, using Restatement (Second) of Conflict of Laws. *Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82 (Idaho 1995); *Sword v. Sweet*, 92 P.3d 492, 496 (Idaho 2004); *see also* Brief at Part III.B.3.b. | See Restatement factors enumerated above, pp. 2-3. | **Torts:**<br><br>• According to the Restatement, the court should apply the law of the place of injury, unless there is another state with a more significant relationship. *Johnson v. Pischke*, 700 P.2d 19, 24 (Idaho 1985).<br><br>• The state where defendant was headquartered and designed the product did not have a superior interest to the state of the injury, as the defendant was responsible for its product's safety in any place where it would be used. *Johnson*, 700 P.2d at 24.<br><br>**Contracts:**<br><br>• A contract negotiated and executed in Idaho between Idaho residents would be governed by Idaho law, particularly because Idaho has an interest in upholding the validity of its contracts. *Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82 (Idaho 1995).<br><br>• The law of the location where the agreement was negotiated and formed, where where parties were domiciled, and where much of the subject matter was located, would govern. *Sword v. Sweet*, 92 P.3d 492, 496 (Idaho 2004). |
| IL[14] | **Torts:**<br><br>• Restatement (Second) of Conflicts of Law. *Ingersoll v. Klein*, 46 Ill.2d 42 (Ill. 1970); *see also* Brief at Part III.B.3.b.<br><br>**Contracts:**<br><br>• Restatement (Second) of Conflicts of Law. *Purcell &* | See Restatement factors enumerated above, pp. 2-3.<br><br>**Illinois' gloss on Restatement test:**<br><br>• Under Illinois' most significant contacts test, "the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and the parties." *Vulcan Golf, LLC v. Google, Inc.*, 254 F.R.D. 521, 532 | **Torts:**<br><br>• Illinois courts emphasize the presumptive rules embodied in the Restatement (Second): they choose an applicable law based on these rules, and then test the choice against the policy principles. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 166 (Ill. 2007). Where the state of injury is the state where plaintiffs reside, that state has an extremely strong interest in seeing its laws applied. *Townsend*, 227 Ill. 2d at 168.<br><br>• The center of the parties' relationship for a case involving alleged defective design of a tractor was the state where the plaintiff |

---

[13] Idaho is the transferor jurisdiction for one economic loss case: *Gustin v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00734 (formerly 1:10-cv-00114) (D. Idaho).

[14] Illinois is the transferor jurisdiction for seven economic loss class action cases: *Ochs v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00567 (formerly 1:10-cv-00918) (N.D. Ill.), *Field v. Toyota Motor North America, Inc.*, No. 8:10-cv-00735 (formerly 1:10-cv-01351) (S.D. Ill.), *Shansky v. Toyota Motor Sales, U.S.A. Inc.*, No. 8:10-cv-00736 (formerly 1:10-cv-01379) (N.D. Ill.), *Toledo v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00737 (formerly 1:10-cv-01599) (N.D. Ill.), *Walls v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00740 (formerly 3:10-cv-00215) (S.D. Ill.), *Diaz v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00738 (formerly 1:10-cv-01931) (N.D. Ill.), *Rifken v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00739 (formerly 1:10-cv-02507) (N.D. Ill.).

LEGAL02/32548290v1

000055

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | *Wardrope Chartered v. Hertz Corp.*, 175 Ill. App.3d 1069 (Ill. Ct. App. 1988); *see also* Brief at Part III.B.3.b. | (N.D. Ill. 2008). | purchased the tractor from defendant's local store. *Townsend* 227 Ill.2d at 169 (Ill. 2007).<br><br>• In a case alleging violations of consumer protection statutes, the court is to look to Restatement (Second) § 148 for misrepresentations. According to § 148, plaintiff's domicile is more important than defendant's domicile, and the financial loss takes place where the plaintiff lives. If any two contacts, apart from defendants' place of business, are located in a state, that state's law should apply. Therefore, when a plaintiff purchases goods in the plaintiff's home state based on representations received in plaintiff's home state, the law of plaintiff's home state will govern. . *Barbara's Sales, Inc. v. Intel Corp*, 227 Ill.2d 45, 66-69 (2007).<br><br>• Even if a marketing plan was developed in the states where the defendants had their principal places of business, the plan was actually carried out nationally and plaintiffs were injured when they purchased the product: thus, the law of all 47 states involved would likely have to be applied. *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483 (S.D. Ill. 1999).<br><br>**Contracts:**<br><br>• A contract for the lease of a car is governed by the state where the plaintiff lived, where the car was delivered, used, maintained, registered, and titled, and where the lease was negotiated and signed. These contacts were more significant than the fact that defendant was in another state, payments were sent to it there, and the contract language stated the contract was "accepted" in the defendant's state. *Purcell*, 175 Ill. App. 3d at 1079-80. |

000056

## CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| IN[15] | **Torts:**<br>• *Lex loci delicti* modified: if the place of injury does not bear a significant connection to the legal action, consider other factors. *See Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073-74 (Ind. 1987); *see also* Brief at Part III.B.3.a.<br><br>**Contracts:**<br>• Most intimate contacts test. *Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230 (Ind. Ct. App. 1997); *see also* Brief at Part III.B.3.b. | **Torts:**<br>• Place of the injury<br>• If court finds that the place of injury is not significant, then court looks at factors such as: (i) the place where the conduct causing the injury occurred; (ii) the parties' residences or place of business; and (iii) the place where the relationship is centered, according to their relative importance to the issues being litigated. *Hubbard*, 515 N.E.2d at 1073-74.<br><br>**Contracts:**<br>• Court will consider "all acts of the parties touching the transaction in relation to the several states involved and will apply as the law governing the transaction the law of that state with which the facts are in most intimate contact." *Schaffert v. Jackson Nat'l Life Ins. Co.*, 687 N.E.2d 230 (Ind. Ct. App. 1997). | **Torts:**<br>• Court applied the law of the place of injury for fraud and misrepresentation, i.e., where the loss occurred. *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983).<br>• Financial loss was suffered in the places where the vehicles and tires were purchased at excessive prices or resold at depressed prices, and this consumer-based location of injury was far more significant than sellers' headquarters. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016-18 (7th Cir. 2002) (class action).<br><br>**Contracts:**<br>• Considered Restatement (Second) § 188 factors (but not § 6 policy considerations), and applied Indiana law because negotiations began in Indiana, the job offer was accepted in Indiana, and plaintiffs lived in Indiana at the time that the offer was accepted. *Eby*, 455 N.E.2d at 626.<br>• Considered Restatement (Second) § 188 factors (but not § 6 policy considerations), and applied Indiana law even though plaintiff was headquartered in a different state and defendant was headquartered in a third state, because the product was shipped to plaintiff's Indiana location, used there, and injury occurred there. *Dohm & Nelke v. Wilson Foods Corp*, 531 N.E.2d 512, 513-14 (Ind. App. 1988) |
| KS[16] | **Torts:**<br>• *Lex loci delicti*. *See Dragon v. Vanguard Indus., Inc.*, 277 Kan. 776, 784-85, 89 P.3d 908, 914-15 (2004); *see also Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 610-11, 627-28 (D. Kan. 2008); *see also* Brief at Part | **Torts:**<br>• Place of injury<br><br>**Contracts:**<br>• Place of contracting | **Torts & Contracts:**<br>• In a nationwide class action, consumer plaintiffs alleged both tort and contract claims, including consumer protection and warranty claims against manufacturer of homes containing defective polyisobutylene pipe, and sought economic loss damages based on the purchases of their homes. *See Dragon*, 89 P.3d at 914-16.<br>• The court stated that "Kansas courts have traditionally applied the rule of *lex loci contractus*," which "[i]n most instances . . . means |

---

[15] Indiana is the transferor jurisdiction for one economic loss class action case: *Enderle v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00568 (formerly 1:10-cv-00142) (S.D. Ind.).

[16] Kansas is the transferor jurisdiction for three economic loss class action cases: *Firgon v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00570 (formerly 2:10-cv-02075) (D. Kan.), *Shechter v. Toyota Motor Engineering & Manufacturing North America, Inc., et al.*, No. 8:10-cv-00741 (formerly 2:10-cv-02144) (D. Kan.), and *Fanning v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00742 (formerly 6:10-cv-01090) (D. Kan.).

- 14 -

000057

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | III.B.3.a.<br><br>**Contracts:**<br><br>• *Lex loci contractus*, with a limited place of performance exception. *See Dragon*, 277 Kan. at, 784, 89 P.3d at 914-15 (citing *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 209-13, 4 P.3d 1149 (2000)); *see also* Brief at Part III.B.3.a. | | courts apply the substantive law of the state where the contract was made, although in some instances the courts look to the place of performance." *Id.* at 914.<br><br>• Fort tort claims, the court likewise stated that "Kansas courts have traditionally applied the rule of *lex loci delicti*," which requires "courts [to] apply the substantive law of the state where the wrong occurs, meaning the place where the injury was sustained." *Id.* (citing *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731 (1985)).<br><br>• The court noted that the application of a *lex loci* rule to a nationwide consumer class could mean that the laws of numerous states, where each plaintiff resides, would need to be applied; however, because the trial court had failed to even consider the lex loci rules, the court remanded the case for a full analysis. *Id.* at 914-17.<br><br>• Notably, on remand, the court denied class certification, though on subsequent appeal, the case was again remanded for failure to conduct a full analysis. *See Dragon v. Vanguard Indus., Inc.*, 28 Kan. 349, 360, 144 P.3d 1279 (2006).<br><br>• In a similar nationwide class action alleging consumer fraud, negligence, unjust enrichment, and punitive damages against an automobile service company, the court reviewed Kansas law, confirmed that Kansas applied *lex loci delicti* for torts and *lex loci contractus* for contracts, and therefore held that "Kansas choice-of-law rules would likely dictate that the laws of each state where prospective class members took their vehicles for service would govern the tort claims of such class members." *Thompson*, 250 F.R.D. at 610-11, 627-28, 630 (denying motion for class certification). |
| KY[17] | **Torts:**<br>• "Any significant contacts" if Kentucky has *any* | **Torts:**<br>• "Any significant factor." | **Torts:**<br>• Where Plaintiff was a Kentucky resident employed by a Kentucky corporation, injured by projects he worked on in Indiana, Kentucky |

[17] Kentucky is the transferor jurisdiction for six economic loss class action cases: *Poynter v. Toyota Motor North America, Inc.*, No. 8:10-cv-00571 (formerly 2:10-cv-00021) (E.D. Ky.), *Viviano v. Toyota Motor Engineering & Manufacturing North America, Inc., et al.*, No. 8:10-cv-00653 (formerly 2:10-cv-00024) (E.D. Ky.), *Leaverton v. Toyota Motor Engineering & Manufacturing North America, Inc., et al.*, No. 8:10-cv-00573 (formerly 2:10-cv-00032) (E.D. Ky.), *Miller v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00572 (formerly 2:10-cv-00031) (E.D. Ky.), *Maryn v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00574 (formerly 2:10-cv-00046) (E.D. Ky.) and *Jorge v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00743 (formerly 2:10-cv-00060) (E.D. Ky.).

- 15 -

000058

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | significant contacts with the subject matter of the suit, the court will apply Kentucky law. *Saleba v. Schrand*, 300 S.W.3d 177 (Ky. 2009); *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky.1972); *see also* Brief at Part III.B.3.c.(1).<br><br>**Contracts:**<br>• § 188 of the Restatement (Second) of Conflict of Laws. *Weingartner Lumber & Supply Co., Inc. v. Kadant Composites, LLC.* No. Civ. 08-181, 2010 WL 996473, *3 (E.D. Ky. 2010); *Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618, 620 (Ky. Ct. App.1996); *see also* Brief at Part III.B.3.b. | **Contracts:**<br>• See Restatement factors enumerated above, pp. 2-3. | law had sufficient significant conducts to justify the application of its law. *Brewster v. Colgate-Palmolive Co.*, 279 S.W.3d 142, 145 (Ky. 2009).<br>• In nationwide class action involving consumer fraud and warranty claims arising out of purchase of allegedly overpriced aluminum bottles, court declined to apply Kentucky choice-of-law test because certain plaintiffs who purchased the bottles outside of Kentucky lacked any significant contacts. *See In re Sigg Switz. (USA), Inc. Aluminum Bottles Mktg. & Sales Practices Litig.*, No. 10-MD-2137, 2011 WL 64289, at *1, *7 (W.D. Ky. Jan. 7, 2011).<br><br>**Contracts:**<br>• Where a Kentucky plaintiff purchased a product and sold it on to its customers in Kentucky, and suffered a loss based on the product supplied by the manufacturer, who was based in Massachusetts and distributed the product nationwide, Kentucky had the most significant relationship. *Weingartner Lumber & Supply Co., Inc. v. Kadant Composites, LLC*, No. 08-181-DLB, 2010 WL 996473, at *3 (E.D. Ky. Mar. 16, 2010). |
| LA[18] | **Torts & Contracts:**<br>• Comparative impairment: *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360 (E.D. La. | • Set forth in Louisiana Civil Code article 3515: "[A]n issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were | • Where a Michigan automaker was sued by plaintiffs in a nationwide class action, the court held that the laws of all 51 jurisdictions should apply, "whether by virtue of being the place where plaintiffs are domiciled or the place where plaintiffs purchased their Bronco IIs." It analyzed and rejected the claim that plaintiffs would prefer to have |

[18] Louisiana is the transferor jurisdiction for seven economic loss class action cases and six economic loss warranty cases. The seven class action cases are as follows: *Mailho v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00467 (formerly 2:10-cv-00279) (E.D. La.), *Weimer v. Toyota Motor North America, Inc., et al.*, No. 10-cv-00466 (formerly 2:10-cv-00219) (E.D. La.), *Donahue v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00579 (formerly 3:10-cv-00108) (M.D. La.), *Burke v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00577 (formerly 2:10-cv-00649) (E.D. La.), *Farrelly v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00576 (formerly 2:10-cv-00647) (E.D. La.), *Jones v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00578 (formerly 2:10-cv-00687) (E.D. La.) and *Rockforte v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00580 (3:10-cv-00174) (M.D. La.). The six warranty cases are as follows: *Johnson v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00575 (formerly 2:10-cv-00622) (E.D. La.), *Gaspard v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00581 (formerly 1:10-cv-00179) (W.D. La.), *Bouidin v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00747 (formerly 1:10-cv-00421) (W.D. La.), *Brock v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00448 (formerly 2:10-cv-00281) (E.D. La.), *Frederickson v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00745 (formerly 2:10-cv-00892) (E.D. La.) and *LaRocca's Auto Sales, Inc. v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00746 (formerly 2:10-cv-00893) (E.D. La.).

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|-------|----------------------|------------------------|----------------------------------------------------------------------|
| | 1997); *see also* Brief at Part III.B.3.c.(3). | not applied to that issue. That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." | their claims analyzed under the law of a consumer-friendly state like Michigan: "there might be important policy reasons behind a state's adoption of more restrictive consumer-oriented laws, and that application of Michigan law might actually impair these states' policies. It is simply incorrect to assume that the overriding interest in all consumer-oriented cases is protection of the consumer." *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 370-371 (E.D. La. 1997). |
| MA[19] | **Mixed modern approach:**<br>• *Travenol Labs., Inc. v. Zotal, Ltd.*, 394 Mass. 95, 98-100 (Mass. 1985) *Hartley v. R.E. Leveille Woodworking, Inc.*, No. 981993, 1999 WL 1335105, *2 (Mass. Super. Ct. Nov. 22, 1999); *see also* Brief at Part III.B.3.c.(3). | **Torts & Contracts:**<br>• Most significant relationship, determined by using a combination of Restatement (Second) factors enumerated above, pp. 2-3, and Leflar policy considerations. The most significant factor is the reasonable expectation of the parties. | **Torts:**<br>• The most significant factor is the reasonable expectation of the parties, and since the plaintiff resided in, was hired in, worked for the defendant in, and was injured in New York, the parties were under the mutual expectation that New York law applied. In addition, New York has an interest in compensating its residents for injuries. These factors trumped corporate and individual defendants' Massachusetts headquarters and domicile. *Hartley*, 1999 WL 1335105 at *2.<br><br>**Contracts:**<br>• Where plaintiff was a Massachusetts corporation and defendant was an Israeli corporation, and the goods at issue were delivered in Massachusetts, the court applied Massachusetts law, furthering certainty, predictability and uniformity and upholding the parties' expectations. *Travenol Labs., Inc.*, 394 Mass. at 98-100.<br>• A contract negotiated and signed in Texas between a plaintiff who was a Texas resident and defendant who was a Massachusetts resident with significant ties to Texas should be governed by Texas law. *Perkins v. Ryals*, No. 71399, 2007 WL 2705733 (Mass. Super. Sept. 6, 2007); |

---

[19] Massachusetts is the transferor jurisdiction for two economic loss class action cases and one economic loss warranty case: *Shah v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00582 (formerly 1:10-cv-10263) (D. Mass.), *Ferrara v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00750 (formerly 1:10-cv-10381) (D. Mass.) and *Roberge v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-01769 (formerly 1:10-cv-11158) (D. Mass.) (warranty case).

- 17 -

LEGAL02/32548290v1

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| MD[20] | **Torts & Contracts:**<br><br>• *Lex loci. White v. King*, 244 Md. 763, 767 (1966). *Kramer v. Bally's Park Place, Inc.*, 311 Md.387, 390 (1988); *see also* Brief at Part III.B.3.a. | **Torts:**<br><br>• Place where last act required to complete the tort took place, *except* where the last act to complete the tort takes place in one state, and the actual injury occurs in a separate state, then the law of the place of the actual injury will apply. *See Estate of White v. R.J. Reynolds Tobacco Co.*, 109 F.Supp.2d 424, 427 (D. Md. 2000).<br><br>**Contracts:**<br><br>• Place where contract was made, *unless* the application of a foreign jurisdiction's law would be contrary to strong public policy of Maryland. *Kramer v. Bally's Park Place, Inc.*, 311 Md.387, 390 (1988). | **Torts:**<br><br>• Where the plaintiff had been smoking his entire life in Maryland but was diagnosed with cancer in Pennsylvania, the court noted that the place of the wrong was in Maryland. *Estate of White*, 109 F. Supp. 2d at 427.<br><br>• The tobacco company's principal place of business was not a consideration. *See id.*<br><br>**Contracts:**<br><br>• Where the gambling debt was incurred in New Jersey and sought to be enforced in Maryland, Maryland applied *lex loci contractus* and enforced the debt under New Jersey law. *Kramer*, 311 Md. at 390, 396-98.<br><br>• Although the court assumed the gambling debt would not be enforceable under Maryland law, the court determined that enforcing the debt was not contrary to strong public policy of Maryland. *Id.* at 396-98. |
| MI[21] | **Torts:**<br><br>• *Lex fori*: Michigan law applies absent a rational reason-such as another state's interest-to apply other law." *Daimler-Chrysler Services North America, LLC v. Summit Nat., Inc.*, 289 F. App'x. 916, 921, 2008 WL 3889747, at *4 (6th Cir. 2008); *see also* Brief at Part III.B.3.c.(1).<br><br>**Contracts:** | **Torts:**<br><br>• Michigan law will apply, except that if a foreign state has an interest in having its law applied, the court will then weigh the contacts between the states using the Restatement (Second) factors. *In re OnStar Contract Litig.*, 2010 WL 3516691, at *11 (E.D. Mich. Aug. 25, 2010).<br><br>**Contracts:**<br><br>• See Restatement factors enumerated above, pp. 2-3. | **Torts:**<br><br>• Where plaintiffs purchase their vehicles in states other than Michigan from automakers not headquartered in Michigan, Michigan does not have an interest in applying its own law. *In re OnStar*, 2010 WL 3516691, at *12.<br><br>• The state where injury occurred was where the plaintiffs purchased their vehicles in reliance on misrepresentations. This state of the injury, which was where plaintiffs live, heard representation about their vehicles' products, purchased their vehicles, and used their vehicles. *In re OnStar*, 2010 WL 3516691, at *12.<br><br>• The states where plaintiffs live have a strong interest in applying their consumer protection laws to protect plaintiffs. *In re OnStar*, 2010 WL 3516691, at *12. |

---

[20] Maryland is the transferor jurisdiction for two economic loss class action cases: *Schantz v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00751 (formerly 8:10-cv-01075) (D. Md.) and *Scott v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00654 (formerly 8:10-cv-00450) (D. Md.).

[21] Michigan is the transferor jurisdiction for two economic loss class action cases: *Baumkel v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00583 (formerly 2:10-cv-10525) (E.D. Mich.) and *Hernandez v. Hino Motors Manufacturing U.S.A., Inc., et al.*, No. 8:10-cv-00584 (formerly 2:10-cv-10835) (E.D. Mich.).

- 18 -

000061

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | • Restatement (Second) of Conflicts of Law; *see also* Brief at Part III.B.3.b. | | • The "predictability" factor is used in **contracts** cases rather than tort cases, and is meant to uphold the expectations that the parties had when they entered into the contract. A contract where plaintiffs are residents of a state and the subject matter is located within the same state suggests that the reasonable expectations of the parties favor plaintiffs' state. *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 470 (Minn. 1994). |
| MN[22] | **Torts & Contracts:** <br><br> • "Leflar" factors . *In re Sigg Switz. (USA), Inc. Aluminum Bottles Mktg. & Sales Practices Litig.*, No. 10-MD-2137, 2011 WL 64289, at *5 (W.D. Ky. Jan. 7, 2011); *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000); *see also* Brief at Part III.B.3.c.(2). | Five factors: <br><br> • Predictability of results; <br><br> • Maintenance of interstate and international order; <br><br> • Simplification of the judicial task; <br><br> • Advancement of the forum's governmental interest; and <br><br> • Application of the better rule of law." <br><br> *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000). | • The "maintenance of order" factor is generally satisfied as long as the states at issue have sufficient contacts with and interest in the dispute. *Myers v. Gov't Employees Ins. Co.*, 302 Minn. 359, 365 (Minn. 1975). This factor weighs against forum shopping, which Minnesota does not have an interest in encouraging. *Jepson*, 513 N.W.2d at 471-72. <br><br> • The "simplification" factor primarily deals with clarity of conflict - where conflict is clear and recovery was allowed in one state but not the other, this factor favors neither forum. *Nodak*, 604 N.W.2d at 95. <br><br> • For **torts**: where all other factors balance out, the "advancement" factor favors the state where the accident (or significant acts giving rise to lawsuit occurred) occurred. *Nodak*, 604 N.W.2d at 96. For contracts: while Minnesota has an interest in compensating victims, it has a stronger interest in giving plaintiffs "the benefit of the contracts they enter into, nothing less and nothing more," leading to the application of plaintiff's state's law. *Jepson*, 513 N.W.2d at 472. <br><br> • Minnesota courts do not place emphasis on the "application of the better rule of law" factor. *Nodak*, 604 N.W.2d at 96. <br><br> • Where plaintiffs in nationwide class action case alleged excessive |

[22] Minnesota is the transferor jurisdiction for seven economic loss class action cases and one economic loss warranty case: *Karjala v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00752 (formerly 0:10-cv-00766) (D. Minn.), *Weyer v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00753 (formerly 0:10-cv-00801) (D. Minn.), *Wedul v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00754 (formerly 0:10-cv-00943) (D. Minn.), *Bell v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00755 (formerly 0:10-cv-00944) (D. Minn.), *Oliver v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00586 (formerly 0:10-cv-00942) (D. Minn.), *Hauck v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00757 (formerly 0:10-cv-01924) (D. Minn.), *Johnston v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00585 (formerly 0:10-cv-00759) (D. Minn.) and *Ruf v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-00756 (formerly 0:10-cv-01694) (D. Minn.) (warranty case). *Johnston* has since been voluntarily dismissed without prejudice.

LEGAL02/32548290v1

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | | | alleged excessive purchase prices for aluminum water bottles, the court held that the "Leflar" factors required the application of the law of plaintiffs' residences, where plaintiffs "bought . . . used . . . and probably acquired the knowledge that led to the purchase." *In re Sigg Switz.*, 2011 WL 64289, at *5-6. |
| MO[23] | **Torts & Contracts:** Most significant relationship test, using the Restatement (Second) of Conflicts of Law. *True v. ConAgra Foods, Inc.*, No. 07-00770-CV-W-DW, 2011 WL 176037, at *8 (W.D. Mo. Jan. 4, 2011); *see also Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008); *see also* Brief at Part III.B.3.b. | See Restatement factors enumerated above, pp. 2-3. | **Torts & Contracts:** • In nationwide class-action against manufacturer of allegedly contaminated and recalled pot pies, consumer class plaintiffs alleged tort and contract claims, including strict liability, negligence, breach of implied warranty, negligence per se, and unjust enrichment, and sought damages based on their purchase of the pot pies. *True*, 2011 WL 176037, at *1-2. • The court stated that "[i]n tort and contract actions, Missouri applies the most significant relationship test." *Id.* at *8. • The court made clear that "[t]he most significant relationship test carries 'a presumption that the state with the most significant relationship is the state where the injury occurred.'" *Id.* (quoting *Wolfley v. Solectron USA, Inc.*, 541 F.3d 819, 823 (8th Cir. 2008)). • Although the defendant was headquartered in Omaha, Nebraska, the court held that plaintiffs had not offered sufficient support to defeat the presumption, and therefore "the law of the state where each member resides [and presumably purchased the pot pies] would be applicable." *Id.* |

[23] Missouri is the transferor jurisdiction for five economic loss class action cases: *Hulsen v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00588 (formerly 4:10-cv-00103) (W.D. Mo.), *O'Leary v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-00759 (formerly 10-cv-00350) (E.D. Mo.), *Ridenour v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00760 (formerly 4:10-cv-00365) (E.D. Mo.), *Zhang v. Toyota Motor Engineering & Manufacturing North America, Inc., et al.* No. 8:10-cv-00761 (formerly 4:10-cv-00238) (W.D. Mo.) and *Jerry Baker Auto Sales, LLC.. v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00587 (formerly 2:10-cv-04025) (W.D. Mo.).

- 20 -

## CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| MS[24] | **Contracts & Torts:**<br>• Restatement (Second) of Conflicts of Law. . . *Boardman v. United Servs. Auto. Assoc.*, 470 So. 2d 1024, 1032 (Miss. 1985); *see also* Brief at Part III.B.3.b. | Mississippi refers to the test as its "center of gravity" test, but uses Restatement factors enumerated above, pp. 2-3. | **Torts:**<br>• There is a presumptive application of the law of the place of the injury in tort cases. If the plaintiff is a resident of the state of injury, that state's law controls. This presumption is overcome in narrow instances where the location of injury bears little relation to the parties' contacts, e.g., where plaintiff's business was based in the same state as the defendant and the airplane at issue, and their relationship was centered there as well. *McDaniel v. Ritter*, 556 So. 2d 303, 310-11. (Miss. 1989).<br><br>**Contracts:**<br>• The center of gravity was the state where plaintiffs resided and entered into the insurance contracts, and where the vehicles that were the subject-matter of the contracts were located. The defendant issued its policies from Texas, but this was not regarded as a significant contact. *Boardman v. United Servs. Auto. Assoc.*, 470 So. 2d 1024, 1032 (Miss. 1985). |
| MT[25] | **Torts & Contracts:**<br>• Restatement (Second) of Conflicts of Law . *Phillips v. General Motors Corp.*, 298 Mont. 438, 445, 995 P.2d 1002, 1007 (Mont. 2000); *see also* Brief at Part III.B.3.b. | • See Restatement factors enumerated above, pp. 2-3. | **Torts:**<br>• In an automotive product liability case, the state of plaintiffs' residence had the most significant contacts, because it had a direct interest in preventing defective products from causing injury to its residents as well as punishing defendant manufacturers. Although the automaker was headquartered in, designed, and manufactured the vehicle in another state, it still did business in plaintiffs' state. Finally, although plaintiffs had purchased their vehicle in a different state, the state of their residence at the time of the injury was most important. *Phillips*, 298 Mont. at 446.<br><br>**Contracts:**<br>• Where a contract was negotiated across plaintiff's state (Montana) and defendant's state (California), but performed in plaintiff's state and the subject matter of the contract was in plaintiff's state, |

[24] Mississippi is the transferor jurisdiction for two economic loss class action cases: *Simmons v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00589 (formerly 3:10-cv-00009) (N.D. Miss.) and *Mitchell v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00591 (formerly 3:10-cv-00104) (S.D. Miss.).
[25] Montana is the transferor jurisdiction for one economic loss class action case: *Quintana v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00762 (formerly 1:10-cv-00020) (D. Mont.).

- 21 -

000064

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | | | Restatement (Second) § 188 provided that Montana law applied, and that Montana's strong public policies in protecting Montana residents from having to litigate outside of Montana invalidated the California choice-of-law clause. *Keystone, Inc. v. Triad Sys. Corp.*, 292 Mont. 229, 232-34. (Mont. 1998). |
| NC[26] | **Torts:** • North Carolina applies the *lex loci* rule and applies the law of the state where the injury occurred. *Boudreau v. Baughman*, 322 N.C. 331, 335-36 (1988); *see also* Brief at Part III.B.3.a.  **Contracts:** • Generally NC applies the law of the state where the contract was made. *Exception:* if the contract is performed in a place other than where it is made, the court will apply the law of the place of performance to litigation questions regarding performance. *Bernick v. Jurden*, 306 N.C. 435, 442 (1982). | **Torts:** • Place where injury occurred.  **Contracts:** • Place where contract was made. • *Exception:* if the contract is performed in a place other than where it is made, the court will apply the law of the place of performance to litigation questions regarding performance.  **UCC/Breach of Warranty** • Will apply North Carolina law if the transaction bears an appropriate relation to North Carolina, analyzing: ○ Place of sale; ○ Distribution of product; ○ Delivery of product; ○ Use of product; ○ Place of injury; and ○ State of manufacture. | **UCC/Breach of Warranty** • Law of the state where the injury or damage resulting from the breach of warranty has an "appropriate relation to the state" despite product being manufactured and purchased elsewhere. *Bernick*, 306 N.C. at 443. • In a UCC breach of warranty litigation claiming negligent design, the state of sale, use and delivery of the product (as well as the place of injury), will apply over the state of manufacture. *Boudreau*, 322 N.C. at 335-36. |

[26] North Carolina is the transferor jurisdiction for one economic loss class action case and one economic loss warranty case: *Hines-Muhammad v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00763 (formerly 3:10-cv-00135) (W.D.N.C.) and *Grier v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-00764 (formerly 3:10-cv-00176) (W.D.N.C.) (warranty case). *Hines-Muhammad* has since been voluntarily dismissed *without* prejudice.

- 22 -

000065

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | **UCC/Breach of Warranty** NC applies a special analysis under its state UCC laws which apply to warranty claims. In this context, the court uses an interest analysis, but not the Second Restatement, to determine whether the transaction bears an appropriate relation to the state. *Boudreau v. Baughman*, 322 N.C. at 335-36; *see also* Brief at Part III.B.3.c.(3). | | |
| ND[27] | **Torts:** • Most significant relationship test. *Issendorf v. Olson*, 194 N.W.2d 750, 754-56 (N.D. 1972); *see also* Brief at Part III.B.3.b. **Contracts:** • Mixed modern. *Apollo Sprinkler Co., Inc. v. Fire Sprinkler Supplies & Design Inc.*, 382 N.W.2d 386, 389 (N.D. 1986); *see also* Brief at Part III.B.3.c.(2). | **Torts:** • See Restatement factors enumerated above, pp. 2-3. **Contracts:** • Uses contracts factors similar to Restatement (Second) § 188, but instead of using Restatement (Second) policy considerations, uses Leflar's choice-of-law considerations *Apollo Sprinkler*, 382 N.W.2d at 390. | **Torts:** • Court noted that the state in which plaintiff resided had an interest because his loss of income and medical bills affected his state's economy. *Issendorf*, 194 N.W.2d at 755. **Contracts:** • An insurance contract between a Minnesota insured and Minnesota insurer, negotiated and entered into in Minnesota, should be governed by Minnesota law. *Apollo Sprinkler Co.*, 382 N.W.2d at 390-91. |

---

[27] North Dakota is the transferor jurisdiction for one economic loss class action case: *Fraase v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00765 (formerly 3:10-cv-00016) (D. N.D.).

- 23 -

## CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| NE[28] | **Torts:**<br>• Most significant relationship test, using the Restatement (Second) of Conflict of Laws. *Inacom Corp. v. Sears, Roebuck and Co.*, 254 F.3d 683, 687 (8th Cir. 2001); *Erickson v. U-Haul Int'l*, 767 N.W.2d 765, 773 (Neb. 2009); *see also* Brief at Part III.B.3.b.<br><br>**Contracts:**<br>• Most significant relationship test, using the Restatement (Second) of Conflict of Laws. *Tim O'Neil Chevrolet, Inc. v. Pinkerton's, Inc.*, No. 8:00CV41, 2002 WL 205676, at *2 (D. Neb. Feb. 11, 2002); *see also* Brief at Part III.B.3.b. | • See Restatement factors enumerated above, pp. 2-3. | **Torts:**<br>• "[T]he law of the site of the injury is usually applied to determine liability, except where another state has a more significant relationship on a particular issue." *Erickson*, 767 N.W.2d at 773.<br>• Place of injury for a fraud claim is the state where the plaintiff received and relied upon alleged fraud, e.g., where the plaintiff's place of business is located. *Inacom Corp*, 254 F.3d at 688<br>• "Applying these provisions, we conclude that Nebraska law has the most significant relationship to the fraud tort at issue. Sears maintains its business headquarters in Chicago, Illinois, but most of the conduct comprising and resulting from the fraudulent concealment tort occurred in Omaha, Nebraska. Inacom *received* Sears's representations concerning the contract at its headquarters in Omaha, Nebraska. Inacom *relied upon* Sears's representations in Omaha, Nebraska. Inacom attempted to comply with the deficient DOD contract from its headquarters in Omaha, Nebraska. Inacom *suffered its injuries* in Omaha, Nebraska. In essence, the balance of the factors listed in the Restatement (Second) of Conflict of Laws overwhelmingly favor applying Nebraska law." *Id.* (emphasis added).<br><br>**Contracts:**<br>• "Usually, when dealing with contract claims, the most compelling factor under § 6 is the protection of ... justified expectations." *Johnson v. U.S. Fid. & Guar. Co.*, 696 N.W.2d 431, 442 (Neb. 2005).<br>• In a breach of contract action, where the agreement was entered into in Iowa, the subject matter of the contract was located in Iowa, the loss, if any, occurred in Iowa, and the plaintiff was located in Iowa, the court held that under Nebraska's most significant relationship test, Iowa law applied. *Tim O'Neil Chevrolet*, 2002 WL 205676, at *2.<br>• That the defendant's principal place of business was located in Nebraska did not outweigh the connection that the plaintiff had in Iowa. *Id.* |

[28] Nebraska is the transferor jurisdiction for one economic loss class action case: *Bonacci v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00766 (formerly 8:10-cv-00149) (D. Neb.).

LEGAL02/32548290v1

000067

## CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| NJ[29] | **Torts & Contracts:**<br>• Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132 (N.J. 2008); *Clark v. Prudential Ins. Co. of Am.*, No. Civ. 08-6197, 2009 WL 2959801 (D.N.J. Sept. 15, 2009); *see also* Brief at Part III.B.3.b. | See Restatement factors enumerated above, pp. 2-3. | **Torts:**<br>• The court will apply Restatement (Second) § 148's presumption for claims sounding in fraud or misrepresentation: the state where the plaintiff acted in reliance on the misrepresentation has the predominant relationship to the parties and litigation. *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 221 (3d Cir. 2009).<br>• Even assuming that the alleged fraud originated in defendants' headquarters states, the laws of the plaintiffs' home states applied: under § 148, plaintiffs' domicile is more important than the defendants', and under § 6, the interests of plaintiffs' states in protecting their citizens are stronger than the interests of defendants' states in regulating resident corporations. *Clark*, 2009 WL 2959801 at \*9, \*14.<br>• Under New Jersey's Second Restatement test, there is a "strong presumption" that the law where a plaintiff acts in reliance on a defendant's misrepresentation will apply. *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 462-63 (D.N.J. 2009).<br><br>**Contracts:**<br>• Under Restatement (Second) § 188, the state of plaintiffs' residence has the most significant contacts because the place of contracting is where plaintiffs executed their contract, the place of performance is where plaintiffs resided, and the preferred result for the policy goals of certainty and predictability is the plaintiffs' states' laws, which plaintiffs could have justifiably expected to apply to their contracts. *Clark*, 2009 WL 2959801 at \*9, \*14. |

[29] New Jersey is the transferor jurisdiction for eight economic loss class action cases: *Gonzalez v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00592 (formerly 3:10-cv-00595) (D.N.J.), *Colabardino v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00593 (formerly 3:10-cv-00672) (D.N.J.), *Guokas v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00595 (formerly 3:10-cv-00778) (D.N.J.), *Abken v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00594 (formerly 3:10-cv-00763) (D.N.J.), *Coslop, IV v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00767 (formerly 3:10-cv-01623) (D.N.J.), *Gordon v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00596 (formerly 3:10-cv-00914) (D.N.J.), *Tiboni v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-00768 (formerly 3:10-cv-01786) (D.N.J.) and *Darcy v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00769 (formerly 3:10-cv-02032) (D.N.J.).

LEGAL02/32548290v1

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| NM[30] | **Torts:**<br>• *Lex loci delicti. Terrazas v. Garland & Lomand, Inc.*, 142 P.3d 374, 377 (N.M. Ct. App. 2006); *see also* Brief at Part III.B.3.a.<br><br>**Contracts:**<br>• *Lex loci contractus. Eichel v. Goode, Inc.*, 680 P.2d 627, 631 (N.M. Ct. App. 1984).<br>• *Exception* for multi-state contract class actions, where courts may use Restatement (Second) factors. *Porcell v. Lincoln Wood Prods., Inc.*, 713 F. Supp. 2d 1305 (D.N.M. 2010); *see also* Brief at Part III.B.3.b. | **Torts:**<br>• Place of injury<br><br>**Contracts:**<br>• Place of contracting<br>• *Exception:* for multi-state contract class actions, see Restatement factors enumerated above, pp. 2-3. | **Torts:**<br>• Place of injury is the location of the last act necessary to complete the injury. *Terrazas v. Garland & Lomand, Inc.*, 142 P.3d 374, 377 (N.M. Ct. App. 2006).<br>• In a case alleging unfair competition and violation of the NM Unfair practices act, the court applied the law of the state where advertisements were made and received and where lost sales resulted. *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1226 (D.N.M. 2010).<br><br>**Contracts:**<br>• Place where the contract is made is the place where the last act necessary for its formation is done. *Eichel v. Goode, Inc.*, 680 P.2d 24 at 631. |
| NV[31] | **Torts:**<br>• Restatement (Second) of Conflicts of Law. *General Motors Corp. v. Eight Jud. Dist.*, 122 Nev. 466, 473-74 (2006); *see also* Brief at Part III.B.3.b.<br><br>**Contracts:**<br>• "Substantial relationship" test. *William v. United* | **Torts:**<br>See Restatement factors enumerated above, pp. 2-3.<br><br>**Contracts:** factors showing the expectations of the parties at the time of contracting, including:<br>• Place of contracting.<br>• Place of negotiation of the contract.<br>• Place of performance.<br>• Location of the subject matter of the | **Torts:**<br>• In a personal injury case against GM, where the accident took place in Nevada, Nevada had more significant interests than Michigan, where the vehicle was manufactured and GM was headquartered. However, the plaintiffs' claim against the dealership that sold him the car was governed by Arizona law, because the vehicle was sold in Arizona. *Gen. Motors Corp.*, 122 Nev. at 117-18.<br><br>**Contracts:**<br>• California law governed the parties' contract because plaintiff renewed his insurance policy while in California, maintained a |

[30] New Mexico is the transferor jurisdiction for two economic loss class action cases: *Griffin v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00770 (formerly 1:10-cv-00323) (D. N.M.) and *Nelson v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00597 (formerly 1:10-cv-00161) (D.N.M.). *Nelson* has since been voluntarily dismissed without prejudice.

[31] Nevada is the transferor jurisdiction for one economic loss class action case: *Matsis v. Toyota Motor Corporation, et al.*, No. 8:10-cv-01380 (formerly 2:10-cv-01076) (D. Nev.)

- 26 -

LEGAL02/32548290v1

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | *Services Auto Ass'n*, 109 Nev. 333, 334-35 (Nev. 1993); *see also* Brief at Part III.B.3.b. | contract. <br>• Parties' domiciles. | California residence, paid California rates, and drove most often on California roads. At the time of the policy renewal, the parties expected California to be the place where plaintiff would primarily drive. (The court never mentioned or considered the defendant insurer's location.) *Williams*, 109 Nev. at 335. |
| NY[32] | **Torts:** <br>• Flexible interests analysis. *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 72 (N.Y. 1993) <br><br>**Contracts:** <br>• Center of gravity, aka grouping of contacts. *915 Broadway Assocs. LLC v. Paul, Hastings, Janofsky & Walker, LLP*, 2010 WL 1980726, *5 (N.Y. May 12, 2010); *see also* Brief at Part III.B.3.b. | **Torts:** <br>• Applies the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation. <br><br>**Contracts:** <br>• Applies the law of the state with the most significant relationship to the transaction and parties, weighing factors such as the Restatement factors enumerated above, pp. 2-3. | **Torts:** <br>• For laws that regulate primary conduct, such as standards of care, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. For example, Missouri law would have the effect of shielding defendants from some liability, Missouri's law should apply to a machine originally sold in New York and later sold and used in Missouri, where it injured plaintiff. In addition, the injured person and primary defendant reasonably expected Missouri law to apply. *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66 (N.Y. 1993). <br>• If the law at issue is focused on allocating losses after the tort, rather than on regulating conduct, then the court will look to the plaintiffs' domicile, where the loss is felt, in order to ensure that the victim is compensated. *Shaw v. Carolina Coach*, No. 2009-10926, 2011 WL 746894, at *4 (N.Y. App. Div. 2d Dep't, Mar. 1, 2001). |

[32] New York is the transferor jurisdiction for twelve economic loss class action cases and one economic loss warranty case: *Phaneuf v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00599 (formerly 2:10-cv-00487) (E.D.N.Y.), *Davis v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00601 (formerly 1:10-cv-00900) (S.D.N.Y.), *Iglesias v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00602 (formerly 1:10-cv-01014) (S.D.N.Y.), *Fogarty v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00598 (formerly 1:10-cv-00542) (E.D.N.Y.), *Haustein v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00600 (formerly 5:10-cv-00178) (N.D.N.Y.), *Tran v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-01001 (formerly 1:10-cv-01816) (S.D.N.Y.), *Sander v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00603 (formerly 1:10-cv-01111) (S.D.N.Y.), *DuBois v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-01312 (formerly 1:10-cv-00779) (E.D.N.Y.), *Gally v. Toyota Motor Corporation d/b/a Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00655 (formerly 1:10-cv-00854) (E.D.N.Y.), *Baughner v. Toyota Motor Engineering & Manufacturing North America, Inc., et al.*, No. 8:10-cv-00801 (formerly 2:10-cv-01361) (E.D.N.Y.), *Roxenberg v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00772 (formerly 2:10-cv-01272) (E.D.N.Y.), *Yastrab v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00771 (formerly 1:10-cv-01334) (E.D.N.Y.) and *Schott v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:11-cv-00104 (formerly 1:10-cv-09188) (S.D.N.Y.) (warranty case). *Yastrab* has since been voluntarily dismissed without prejudice.

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | | | **Contracts:** • The traditional factors of place of contracting and performance should be given 'heavy weight' in a grouping of contacts analysis." A release drafted, signed, and negotiated in New Jersey is subject to New Jersey law. *915 Broadway Assocs., LLC*, 2010 WL 1980726 at *5 • Applying Second Restatement factors, an insurance policy issued in Virginia to a person representing he was a Virginia resident and would garage his vehicle in Virginia would be governed under Virginia law. *Eagle Ins. Co. v. Singletary*, 279 A.D.2d 56 (N.Y. App. Div. 2000). |
| OH[33] | **Torts & Contracts:** • Most significant relationship test, using the Restatement (Second) of Conflict of Laws. *Power-Tek Solutions Servs., LLC v. Techlink, Inc.*, 403 F.3d 353 (6th Cir. 2005); *see also* Brief at Part III.B.3.b. | • See Restatement factors enumerated above, pp. 2-3. | **Torts:** • Presumption that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. *Friedman v. Intervet Inc.*, No. 09-CV-294, 2010 WL 2817257 (N.D. Ohio July 16, 2010); *Burns v. Prudential Sec., Inc.*, 857 N.E.2d 621, 645-47 (Ohio Ct. App. 2006). • In a products liability action, where the place of injury is also where the plaintiff lives and purchased the product, that state's law should be applied rather than the law of the state in which defendant is headquartered. *Friedman v. Intervet Inc.*, 2010 WL 2817257 at **8-9. **Contracts:** |

[33] Ohio is the transferor jurisdiction for nine economic loss class action cases and four economic loss warranty cases. The nine class action cases are as follows: *Menssen v. Toyota Motor Sales, U.S.A., Inc., et al.* No. 8:10-cv-00606 (formerly 1:10-cv-00260) (N.D. Ohio), *Cox v. Beechmont Toyota, Inc., et al.*, No. 8:10-cv-00609 (formerly 2:10-cv-00181) (S.D. Ohio), *Lee v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00607 (formerly 3:10-cv-00280) (N.D. Ohio), *Grunkemeyer v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00608 (formerly 1:10-cv-00128) (S.D. Ohio), *Shumaker v. Toyota Motor Engineering & Manufacturing North America, Inc., et al.*, No. 8:10-cv-00611 (formerly 3:10-cv-00061) (S.D. Ohio), *Glardon v. Toyota Motor Engineering & Manufacturing North America, Inc., et al.*, No. 8:10-cv-00656 (formerly 2:10-cv-00179) (S.D. Ohio), *Kunce v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-00774 (formerly 1:10-cv-00165) (S.D. Ohio), *Immerman v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00773 (formerly 1:10-cv-00650) (N.D. Ohio), *G&M Motors, Inc. v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-01373 (formerly 1:10-cv-01339) (N.D. Ohio). The four warranty cases are as follows: *O'Rourke v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-01544 (formerly 3:10-cv-00124) (S.D. Ohio), *Harbor v. Toyota Motor Sales, U.S.A., Inc., et al.*, No. 8:10-cv-00775 (formerly 3:10-cv-00144) (S.D. Ohio), *Meeks v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-01374 (formerly 1:10-cv-01372) (formerly 1:10-cv-01251) (N.D. Ohio).

- 28 -

LEGAL02/32548290v1

000071

## CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | | | • Where a contract deals with a specific physical thing, the location of that thing is a key factor, and it can often be assumed that the parties, to the extent they thought about the contract, would expect the law of the state where the thing is located to apply. *Power-Tek*, 403 F.3d at 357. |
| OK[34] | **Torts:** <br> • Most significant relationship test, using the Restatement (Second) of Conflict of Laws. *Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974); *see also* Brief at Part III.B.3.b. <br><br> **Contracts:** <br> • *Lex loci contractus. Telex Corp. v. Hamilton*, 576 P.2d 767, 768 (Okla. 1978); *see also* Brief at Part III.B.3.a. | **Torts:** <br> • See Restatement factors enumerated above, pp. 2-3. <br><br> **Contracts:** <br> • Place where contract was made. | **Torts:** <br> • In a products case alleging defective automotive design, the place of the alleged conduct causing the injury "offers little to the choice-of-law analysis." Court applied the law of the state where the injury occurred and the vehicle at issue was rented. *Graves v. Mazda Motor Corp.*, 598 F. Supp. 2d 1216, 1218-19 (W.D. Okla. 2009). |

[34] Oklahoma is the transferor jurisdiction for one economic loss class action case: *Lee v. Toyota Motor Sales, U.S.A.,Inc., et al.*, No. 8:10-cv-00612 (formerly 5:10-cv-00117) (W.D. Okla.).

LEGAL02/32548290v1

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| OR[35] | **Torts:**<br>• For actions filed on or after January 1, 2010, choice-of-law for Tort claims in Oregon is governed by statute, ORS 31.850 et seq.<br>• For actions filed before January 1, 2010, Oregon courts employ a modified form of the "most significant relationship" test from the Restatement (Second) of Conflict of Laws. *Bylsma v. Burger King Corp.*, No. CV-10-403, 2010 WL 4702296, *3 (D. Or. Sept.3, 2010); *see also* Brief at Part III.B.3.c.(3).<br><br>**Contracts:**<br>• For actions filed on or after January 1, 2002, choice-of-law for Contract claims in Oregon is governed by statute, ORS 81.130 et seq. *See, e.g., Lewis v. Fedex Ground Package System, Inc.*, et al., 2008 WL 4144389 (Or. Cir. 2008); *see also* Brief at Part III.B.3.c.(3). | **Torts (2010 Claims):**<br>• If the injured person and the person whose conduct caused the injury were domiciled in the same state, the law of that state governs. ORS 31.875(2)(a)<br>• If the injured person and the person whose conduct caused the injury were domiciled in different states,<br>  ○ And if both the injurious conduct and the resulting injury occurred in the same state, the law of that state governs if either the injured person or the person whose conduct caused the injury was domiciled in that state. ORS 31.875(3)(a)<br>  ○ And if both the injurious conduct and the resulting injury occurred in a state other than the state in which either the injured person or the person whose conduct cause the injury were domiciled, the law of the state of conduct and injury governs. ORS 31.875(3)(b)<br>  ○ And if the injurious conduct occurred in one state and the resulting injury in another state, the law of the state of conduct governs. ORS 31.875(3)(c)<br>    ▪ BUT the law of the state of injury governs if the occurrence of the injury in that state was foreseeable and the injured person formally requests the application of that state's law. ORS 31.875(3)(c)(A) | **Torts (2010 Claims):**<br>• Given the infancy of Oregon's choice-of-law statute, analogous cases interpreting and applying the statute remain unavailable. Nevertheless, it is clear that under the statute, the law of the place of plaintiffs' injuries must apply. First, this result is required under ORS 31.875(3)(b) in that the vast majority of putative class members will have purchased their vehicles from local dealers, relying solely on the dealers' representations. Further, even if the allegedly injurious conduct occurred in multiple states, the "most appropriate" law considering ORS 31.878 is the jurisdiction where plaintiffs' purchased their vehicles. Not only will this state have the most relevant contacts, but no foreign state's policies are strong enough to outweigh the interests of a particular plaintiff's home state. Indeed, this result is confirmed not only by the decisions of Oregon courts prior to the passage of the choice-of-law statute, but also by the results of every other transferor jurisdiction.<br><br>**Torts (Pre-2010 Claims):**<br>• In a product liability and negligence case, the law of the place of injury and conduct causing injury was also the center of the parties' relationship, and that state's law applied, rather than the law where the defendant was incorporated. *Bylsma*, 2010 WL 4702296, at *3. |

---

[35] Oregon is the transferor jurisdiction for three economic loss class action cases: *Vanagas v. Toyota Motor Sales, U.S.A., Inc.* No. 8:10-cv-00613 (formerly 3:10-cv-00293) (D. Or.), *McCoy v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-00614 (formerly 3:10-cv-00294) (D. Or.), and *Fahey v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00615 (formerly 3:10-cv-00297) (D. Or.).

LEGAL02/32548290v1

000073

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | | • If none of the specific sections of the Act apply, the "most appropriate" law will apply, based on (1) the states that have relevant contacts, (2) the relevant policies of these states, and (3) the strengths and weaknesses of these policies. ORS 31.878. <br><br> • Oregon law applies to product liability civil actions if: <br>    o The injured person was domiciled in Oregon and the injury occurred in Oregon. ORS 31.872(1)(a) <br>    o The injured person was domiciled in Oregon or the injury occurred in Oregon and the product was manufactured in Oregon or was delivered when new for use or consumption in Oregon. ORS 31.872(1)(b). <br><br> **Torts (Pre-2010 Claims):** <br> • Place of injury <br> • Place of conduct causing injury <br> • Domicile, residence, nationality, place of incorporation and place of business of the parties <br> • Place of center of relationship <br> • Subject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied. <br><br> **Contract:** <br> • The rights and duties of the parties with regard to an issue in a contract are governed by the law, in light of the multistate elements of the contract, that is the most appropriate for a resolution of | |

000074

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | | that issue.<br>• Most appropriate law is determined by:<br>  o Identifying states that have a relevant connection with the transaction or parties, such as<br>    ▪ Place of negotiation<br>    ▪ Making<br>    ▪ Performance or subject matter of contract<br>    ▪ Domicile, habitual residence or pertinent place of business of a party<br>  o Identifying policies underlying any apparently conflicting laws of state that are relevant to the issue<br>• Evaluating relative strength and pertinence of these policies in meeting the needs and giving effect to the policies of the interstate and international systems and facilitating the planning of transactions, protecting a party from undue imposition by another party, giving effect to justified expectations of the parties concerning which state's law applies to the issue and minimizing adverse effects on strong legal policies of other states. | |

LEGAL02/32548290v1

000075

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| PA[36] | **Torts & Contracts:**<br><br>• Combined modern approach incorporating elements of both the Restatement (Second) and an interest analysis. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220 (3d Cir. 2007); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206 (E.D. Pa. 2000). | **Torts & Contracts:**<br><br>• Before performing an analysis of Restatement factors, Pennsylvania courts not only determine whether a conflict exists between two or more states' laws, but also determine if "both jurisdictions' interests would be impaired by the application of the other's laws." *Hammersmith*, 480 F.3d at 230.<br><br>• If both jurisdictions' interests would be impaired, then the courts analyze Restatement (Second) factors (enumerated above, pp. 2-3), and apply them to an additional interests analysis. | **Torts & Contracts:**<br><br>• In a forty-one state class action alleging violation of consumer fraud statutes arising out of misrepresentations as to fuel economy of boat engines, the court determined:<br>   ○ There were conflicts between the states' consumer fraud statutes, and applying the law of any one consumer fraud statute would impair the governmental interests of any of the other forty states.<br>   ○ Restatement tort factors were applied as follows:<br>     ▪ Plaintiffs' action in reliance on representations took place where the boat was purchased.<br>     ▪ The misrepresentation was likely received by the plaintiffs when they purchased their boats.<br>     ▪ It is possible that the boat dealer or retailer misrepresented the fuel consumption information at the time and place of purchase.<br>   ○ Restatement contract factors were applied as follows:<br>     ▪ The place of contracting and negotiation were the states in which plaintiffs purchased their boats<br>     ▪ The place of performance is where the boat was delivered to plaintiffs or picked up by them.<br>     ▪ The location of the subject matter of the contract is the states where the boats are kept.<br>   ○ The court determined that consumers' states' interests in protecting the purchasers was paramount. The interests of the states in which (1) the boats were purchased, (2) the plaintiffs resided, and/or (3) the boats were kept, all trumped the interests of the state in which the defendant was located, designed and manufactured the engine, handled warranty claims, and allegedly originated misrepresentations.<br><br>*Lyon v. Caterpillar, Inc.*, 194 F.R.D. at 212-18. |

[36] Pennsylvania is the transferor jurisdiction for three economic loss class action cases and two economic loss warranty cases: *Gamble v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00617 (formerly 5:10-cv-00521) (E.D. Pa.), *Greisiger v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00619 (5:10-cv-00554) (E.D. Pa.), *Kirkpatrick v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00776 (formerly 2:10-cv-00994) (E.D. Pa.), *Gedra v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00777 (formerly 2:10-cv-00407) (W.D. Pa.) (warranty case), and *Markowitz v. Toyota Motor Sales, U.S.A., Inc.*, No. 8:10-cv-01545 (formerly 2:10-cv-00644) (W.D. Pa.) (warranty case).

- 33 -

LEGAL02/32548290v1

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| Puerto Rico[37] | **Torts & Contracts:**<br>• "Dominant" or "significant" contacts test. *A.M. Capen's Co., Inc. v. Am. Trading & Prod. Corp.,* 74 F.3d 317, 320 (1st Cir. 1996); *In re San Juan Dupont Plaza Hotel Fire Litigation,* 745 F. Supp. 79 (D. Puerto Rico 1990); *see also* Brief at Part III.B.3.b. | **Torts & Contracts:**<br>• Uses contacts similar to those used in the Restatement (Second) (enumerated above, pp. 2-3). | **Torts:**<br>• Puerto Rico law applied where the injuries were felt in Puerto Rico, and even any acts that took place elsewhere had an impact in Puerto Rico. The parties were both local and non-domiciled, so residence was not used as a factor. Puerto Rico also had a dominant interest in compensating victims. *In re San Juan Dupont Plaza Hotel Fire Litigation,* 745 F. Supp. at 85.<br>**Contracts:**<br>• Although defendant was headquartered in Missouri and plaintiff was headquartered in New Jersey, and although the contract was negotiated in Missouri and the continental U.S., the plaintiff had the right to sell products in Puerto Rico, and the termination of that right affected Puerto Rico, so Puerto Rico, which was the state of injury, had the dominant interest. Puerto Rico had the policy interest in protecting rights of those in its territory, so its laws should apply. *A.M. Capen's,* 74 F.3d at 320, 322. |
| RI[38] | **Torts:**<br>• "Interest-weighing" approach. *See Taylor v. Mass. Flora Realty, Inc.,* 840 A.2d 1126, 1128 (R.I. 2004).<br>**Contracts:**<br>• *Lex loci contractus. See DeCesare v. Lincoln Benefit Life Co.,* 852 A.2d 474, 483-84 (R.I. 2004). | **Torts:**<br>• Uses torts factors and presumptions similar to those used in the Restatement (Second) of Conflicts of Law (enumerated above, pp. 2-3).<br>**Contracts:**<br>• Place where contract was made. | **Torts:**<br>• "Under the interest-weighing approach, this Court will determine which state 'bears the most significant relationship to the event and the parties.'" *Taylor,* 840 A.2d at 1128 (citation omitted).<br>• As to tort cases, "the most important factor is the location where the injury occurred." *Id.*<br>• As such, where the plaintiff's slip-and-fall injury occurred in Massachusetts, Massachusetts negligence law applied. *Id.* at 1129.<br>**Contracts:**<br>• "In the absence of a contractual stipulation about which law controls, |

---

[37] Puerto Rico is the transferor jurisdiction for three economic loss class action cases: *Crespo-Bithorn v. Toyota Motor North America, Inc., et al.,* No. 8:10-cv-00620 (formerly 3:10-cv-01083) (D.P.R.), *Gallardo-Browning v. Toyota Motor North America, Inc., et al.,* No. 8:10-cv-01903 (formerly 3:10-cv-01390) (D.P.R.), and *Rivera v. Toyota Motor North America, Inc., et al.,* No. 8:10-cv-01920 (formerly 3:10-cv-02053) (D.P.R.).

[38] Rhode Island is the transferor jurisdiction for one economic loss case: *Corrigan v. Toyota Motor Sales, U.S.A., Inc., et al.,* No. 8:10-cv-00778 (formerly 1:10-cv-00138) (D.R.I.). *Corrigan* has since been voluntarily dismissed *without* prejudice. Given the dismissal of *Corrigan,* there are no cases currently pending in this MDL that were transferred from Rhode Island. Therefore, Toyota does not include Rhode Island as one of the forty-one transferor jurisdictions. Nevertheless, for the Court's convenience, Rhode Island's choice-of-law analysis is included herein.

000077

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| | | | Rhode Island's conflict-of-laws doctrine provides that the law of the state where the contract was executed governs." *See DeCesare*, 852 A.2d at 483-84. |
| | | | • In nationwide class action case, where defendant sold annuities that specifically provided that they were deemed completed upon defendant's approval, and defendant approved all annuities in Nebraska, Nebraska law applied because it was where the last act essential to the execution of the contract took place. *Id.* |
| SC[39] | **Torts:**<br>• *Lex loci delicti. Kirkland v. Sam's East, Inc.*, 411 F. Supp. 2d 639, 641 (D.S.C. 2005); *Lister v. NationsBank of Delaware, N.A.*, 329 S.C. 133, 143, 494 S.E.2d 449, 455 (S.C. App. 1997); *see also* Brief at Part III.B.3.a.<br><br>**Contracts:**<br>• *Lex loci contractus. Lister v. NationsBank of Delaware, N.A.*, 329 S.C. 133, 144, 494 S.E.2d 449, 455 (S.C. App. 1997); *see also* Brief at Part III.B.3.a. | **Torts:**<br>• Place of injury.<br><br>**Contracts:**<br>• Place where the contract was made. | **Torts:**<br>• Place of injury, in a case alleging injury resulted from alleged tire design defect, is the state where the vehicle accident occurred. *Kirkland v. Sam's E., Inc.*, 411 F. Supp. 2d 639 (D.S.C. 2005)<br>• Place of injury, in a case alleging financial loss arising from misrepresentation, was where plaintiffs resided when they suffered the financial loss. *Lister v. NationsBank of Del., N.A.*, 329 S.C. 133, 143-44 (S.Ct. App. 1997)<br><br>**Contracts:**<br>• Place of contracting was the state where the contract forming the basis of the action was executed, where that contract was performed, and where the money was wrongfully misappropriated. *Lister*, 329 S.C. at 145. |

[39] South Carolina is the transferor jurisdiction for two economic loss class action cases: *Wooten v. Toyota Motor North America, Inc., et al.*, No. 8:10-cv-00621 (formerly 3:10-cv-00229) (D.S.C.), and *Roberts v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00622 (formerly 7:10-cv-00281) (D.S.C.).

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| TN[40] | **Torts:** <br> • Most significant relationship test, using the Restatement (Second) of Conflict of Laws. *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992); *see also* Brief at Part III.B.3.b. <br><br> **Contracts:** <br> • *Lex loci contractus*. *Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F. Supp. 2d 900, 905 (M.D. Tenn. 2002); *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999); *see also* Brief at Part III.B.3.a. <br> • *Exception*: if the parties expect the contract to be performed in a place other than where it is made, the court will sometimes apply the law of the place of performance, particularly to litigation's questions regarding performance. *Gov't Employees Ins. Co. v. Bloodworth*, 2007 WL 1966022, *26 (Tenn. Ct. App. 2007). | **Torts:** <br> • See Restatement factors enumerated above, pp. 2-3. <br><br> **Contracts:** <br> • Place where the contract is made. <br> • *Exception*: if the contract is expected to be performed in a place other than where it is made, the court will sometimes apply the law of the place of performance. | **Torts:** <br> • The law of the state of injury governs unless some other state has a more significant relationship. *Hataway v. McKinley*, 830 S.W.2d at 59. <br><br> **Contracts:** <br> • Place where the contract was made was where the offer was accepted, where the payment was tendered from, and where the product was delivered to and kept. *Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F. Supp. 2d 900, 905 (M.D. Tenn. 2002). |

[40] Tennessee is the transferor jurisdiction for three economic loss class action cases and one economic loss warranty cases: *Hargrove v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00779 (formerly 3:10-cv-00101) (E.D. Tenn.), *Pera, Jr. v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00782 (formerly 2:10-cv-02153) (W.D. Tenn.), *Atnip v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00781 (formerly 3:10-cv-00387) (M.D. Tenn.), and *Young v. Toyota Motor Corporation, et al.*, No. 8:10-cv-01095 (formerly 3:10-cv-00450) (M.D. Tenn.) (warranty case).

- 36 -

**CHOICE-OF-LAW RULES OF TRANSFEROR COURTS**

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| TX[41] | **Torts & Contracts:**<br>• Most significant relationship test, using the Restatement (Second) of Conflict of Laws. *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Assoc.,* No. 09-40997, 2010 WL 4013531 (5th Cir. Oct. 14, 2010); *Spence v. Glock,* 227 F.3d 308 (5th Cir. 2000); *see also* Brief at Part III.B.3.b. | See Restatement factors enumerated above, pp. 2-3. | **Torts:**<br>• For a case claiming economic losses arising out of an alleged design defect in a product, the place of injury is the place of purchase; and the place of conduct causing the injury is the place the product was designed and the parts manufactured, rather than the place the defendant was headquartered. *Spence,* 227 F.3d at 312.<br>• In a case alleging financial injury, the place of injury is the place plaintiffs reside. *Casa Orlando Apartments,* 2010 WL 4013531, at *3.<br><br>**Contracts:**<br>• In a case claiming economic losses arising out of an alleged design defect in a product, the place of contracting is the place of purchase; and the place of performance and the location of subject matter is where the product is used. *Spence,* 227 F.3d at 314 n. 9.<br>• Court found that plaintiffs who created trusts at branch offices and had no direct contact with the headquarters office manifested no intent to create a trust in the forum of defendant's headquarters. *Casa Orlando Apartments,* 2010 WL 4013531, at *3.<br>• Despite the factor that misconduct occurred at defendant's headquarters, defendant knowledge that it was conducting business with plaintiffs in many states and plaintiffs knowledge that defendant operated out of regional offices weighed against choosing the forum where defendant was headquartered. *Id.*<br><br>**Unjust enrichment:**<br>• The place where the parties' relationship is centered was each plaintiffs' state, given plaintiffs' interaction with local offices, including making payments to offices. *Casa Orlando Apartments,* 2010 WL 4013531, at *4. |

[41] Texas is the transferor jurisdiction for four economic loss class action cases: *Pena v. Toyota Motor Corporation, et al.* No. 8:10-cv-00625 (formerly 2:10-cv-00037) (S.D. Tex.), *Whiddon v. Toyota Motor Corporation, et al.,* No. 8:10-cv-00623 (formerly 1:10-cv-00080) (E.D. Tex.), *Brandt v. Toyota Motor Corporation, et al.,* No. 8:10-cv-00784 (formerly 3:10-cv-00788) (N.D. Tex.), and *Grewal v. Toyota Motor Sales, U.S.A., Inc., et al.,* No. 8:10-cv-00783 (formerly 5:10-cv-00042) (E.D. Tex.). *Grewal* has since been voluntarily dismissed without prejudice.

- 37 -

LEGAL02/32548290v1

000080

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| VA[42] | **Torts:**<br>• *Lex loci delicti. Dreher v. Budget Rent-A-Car System, Inc.,* 634 S.E.2d 324, 327 (Va. 2006); *Estate of Sa'adoon v. Prince,* 660 F. Supp. 2d 723, 725 (E.D. Va. 2009); *see also* Brief at Part III.B.3.a.<br><br>**Contracts:**<br>• *Lex loci contractus. Dreher,* 634 S.E.2d at 327; *Vollmar v. CSX Transportation,* 705 F. Supp. 1154, 1166 (E.D. Va. 1989); *see also* Brief at Part III.B.3.a. | **Torts:**<br>• Place of injury.<br><br>**Contracts:**<br>• Place where the contract is made. | **Torts:**<br>• The place of injury is the place where the last event necessary to create liability occurred. *Estate of Sa'adoon,* 660 F. Supp. 2d at 725.<br><br>**Contracts:**<br>• The place of making is the place where the last act giving rise to the contract is completed. *Vollmar v. CSX Transportation,* 705 F. Supp. at 1166. |
| WA[43] | **Torts & Contracts:**<br>• Most significant relationship test. *Rice v. Dow Chem. Co.,* 875 P.2d 1213 (Wash. 1994); *see also* Brief at Part III.B.3.b. | See Restatement factors enumerated above, pp. 2-3.<br><br>*Exception:* courts first examine contacts, and only if contacts are evenly balanced do courts evaluate state interests and public policy factors. *Schmahl v. Macy's Dep't Stores,* No. CV-09-68, 2010 WL 3061526 (E.D. Wash. July 30 2010). | **Torts:**<br>• In a products liability case, the state where the product was used and plaintiff exposed to harm was also the center of the relationship between the parties; the court applied that state's law. *Rice v. Dow Chem. Co.,* 875 P.2d 1213 (Wash. 1994). |

---

[42] Virginia is the transferor jurisdiction for one economic loss warranty case: *Goodwin v. Toyota Motor Sales, U.S.A.,Inc.,* No. 8:10-cv-01136 (formerly 1:10-cv-00514) (E.D. Va.).

[43] Washington is the transferor jurisdiction for three economic loss class action cases: *Wojeck v. Toyota Motor North America, Inc., et al.,* No. 8:10-cv-00786 (formerly 2:10-cv-00542) (W.D. Wash.), *Sea v. Toyota Motor Corporation, et al.,* No. 8:10-cv-00787 (formerly 3:10-cv-05176) (W.D. Wash.), and *Weller v. Toyota Motor Sales, U.S.A.,Inc.,* No. 8:10-cv-000785 (formerly 2:10-cv-00426) (W.D. Wash.).

LEGAL02/32548290v1

000081

# CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| WV[44] | **Torts:**<br>• *Lex loci delicti. State of West Virginia ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772, 780 (W. Va. 2004); *see also* Brief at Part III.B.3.a.<br><br>**Contracts:**<br>• Nominally, lex loci; however, courts consider Restatement (Second) factors for complex contract cases and tort claims dependent on underlying breach of contract claims. *M&S Partners v. Scottsdale Ins. Co.*, 277 F. App'x 286, 289-91 (4th Cir. 2008); *Arch Specialty Ins. Co., No. CV 08-0285, 2009 WL 5214916 (S.D.W. Va. Dec. 28, 2009); see also* Brief at Part III.B.3.b.. | **Torts:**<br>• Place of injury<br><br>**Contracts:**<br>• Place where contract is made and performed<br><br>• *Exception:* for complex contract cases and tort claims dependent on underlying breach of contract claims, courts frequently apply restatement factors (see above, pp. 2-3) | **Torts:**<br>• In a mass tort class action with chemical exposure alleged in six states, the court used *lex loci delicti* and applied the law of the states where alleged exposure to injury occurred. *State of W. Va. ex rel. Chemtall Inc. v. Madden*, 607 S.E.2d 772, 780 (W. Va. 2004).<br><br>**Contracts:**<br>• In a case involving complex bad faith breach of contract claims where the punitive damages claims were regarded as tort claims, the court used Restatement (Second) factors to apply the law of the state in which:<br><br>  o plaintiff was located;<br>  o plaintiff felt the effects of the misconduct; and<br>  o the contracts were made and the goods delivered<br><br>over the law of the state of defendant's place of business, where the conduct causing the injury presumably occurred. *Arch Specialty Ins. Co. v. Go-Mart, Inc.*, No. CV 08-0285, 2009 WL 5214916 (S.D.W. Va. Dec. 28, 2009). |

[44] West Virginia is the transferor jurisdiction for two economic loss class action cases: *Graves v. Toyota Motor Manufacturing, West Virginia, Inc., et al.*, No. 8:10-cv-00469 (formerly 2:09-cv-01247) (S.D.W. Va.), and *Dadisman v. Toyota Motor Corporation, et al.*, No. 8:10-cv-00788 (formerly 2:10-cv-00399) (S.D.W. Va.).

- 39 -

LEGAL02/32548290v1

## CHOICE-OF-LAW RULES OF TRANSFEROR COURTS

| STATE | CONFLICT OF LAWS RULE | CHOICE-OF-LAW CONTACTS | INTERPRETATION AND FACT-SPECIFIC APPLICATION OF CONFLICT OF LAWS RULE |
|---|---|---|---|
| WY[45] | **Torts:**<br>• *Lex loci delicti. Jack v. Enterprise Rent-A-Car Co. of L.A.*, 899 P.2d 891, 894 (Wyo. 1995).<br><br>**Contracts:**<br>• *Lex loci contractus*, or the law of the jurisdiction where the contract was made. *Studebaker Bros. Co. of Utah v. Mau*, 13 Wyo. 358, 80 P. 151 (Wyo. 1905); *see also BHP Petroleum (Ams.), Inc. v. Texaco Exploration & Prod., Inc.*, 1 P.3d 1253 (Wyo. 2000) (clarifying that despite previous citations to the factors of the Restatement (Second) of Conflict of Laws, Wyoming has not adopted the test and instead has cited the factors only as examples of factors to be considered in determining where the cause of action arose). | **Torts:**<br>• Place of injury<br><br>**Contracts:**<br>• Place of contracting | **Torts:**<br>• "It is thoroughly established as a general rule that the lex loci delicti, or the law of the place where the tort or wrong has been committed, is the law that governs and is to be applied with respect to the substantive phases of torts or the actions therefor . . . ." *Jack*, 899 P.2d at 894 (citing *Ball v. Ball*, 269 P.2d 302, 304 (Wyo. 1954)).<br>• Where the accident occurred in Wyoming, Wyoming law applied. *Id.* at 895.<br>• The court also noted that the plaintiffs resided in Wyoming, that the negligent operation of the vehicle occurred in Wyoming, and that the damages were sustained in Wyoming. *Id.*<br>• It was not important to the court that the defendant rental agency's principal place of business was located in California, or that the defendant could be held liable for negligent entrustment under California law, but not Wyoming law. *See id.* at 894.<br><br>**Contracts:**<br>• In answering the question of "which law shall govern, the law of the state where the contract was made or the law of the state where it sought to be enforced," the court agreed that "the validity and effect of contracts relating to personal property are to be determined by the laws of the state or country where they are made. . . ." *Studebaker Bros.*, 80 P. at 154.<br>• The court therefore applied Utah law to a conditional contract of sale because the contract was made in Salt Lake City, Utah. *Id.* at 152, 154. |

---

[45] Wyoming is the transferor jurisdiction for one economic loss class action case: *Gureski v. Toyota Motor North America, Inc., et al.* No. 8:10-cv-00626 (formerly 1:10-cv-00031) (D. Wyo.). *Gureski* has since been voluntarily dismissed *without* prejudice. Given the dismissal of *Gureski*, there are no cases currently pending in this MDL that were transferred from Wyoming. Therefore, Toyota has not included Wyoming as one of the forty-one transferor jurisdictions. Nevertheless, for the Court's convenience, Wyoming's choice-of-law analysis is included herein.

- 40 -

LEGAL02/32548290v1

000083

# EXHIBIT C

# ALLEGATIONS VERSUS EVIDENCE:

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| Deponent: Barker, Lucy | | |
|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| "The Barkers saw advertisements for Toyota vehicles on television, in magazines, on billboards, in brochures at the dealership, and display ads while driving past the dealership during the 10 years before they purchased their Toyota Corolla on March 3, 2010. Although they do not recall the specifics of the many Toyota advertisements they saw before they purchased their Corolla, they do recall that safety and reliability were a consistent theme across the advertisements they saw. Those representations about safety and/or reliability influenced their decision to purchase their Corolla. Had those advertisements or any other materials disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, they would not have purchased their Corolla. If they had purchased it, they certainly would not have paid as much for it." SAMCC, at ¶ 36. | "We saw advertisements for Toyota vehicles on television, in magazines, on billboards, in brochures at the dealership, and posters while driving past the dealership during the 10 years before we purchased our Toyota Corolla on March 3, 2010. Although we do not recall the specifics of the many Toyota advertisements we saw before we purchased our Corolla, we do recall that safety and reliability were a consistent theme across the advertisements we saw. Those representations about safety and/or reliability influenced our decision to purchase our Corolla. Had those advertisements disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, we would not have purchased our Corolla. We certainly would not have paid as much for it." Barker FSR, at ¶ 59.

Joel and Lucy Barker saw and heard television, magazine, billboard and brochure advertisements in Washington and Montana.
Barker Stip, at No. 2 | **Q.** Did you see any television ads for the 2010 Corolla before you bought one?
**A.** No. I didn't even know what it looked like.
*Depo., 120:6-8*

**Q.** Do you recall any Toyota ad saying anything about safety?
**A.** It was a safe car. This gentleman that would do all this advertising would always talk about – some of the time – sometimes I would hear him say what a safe, reliable car it was.
**Q.** Did he mention any safety features?
**A.** Yeah, I heard him – yes, but I don't know what they are. But I remember him saying, talking about safety features. He would bring it up, and I probably wouldn't listen to it. Or I didn't listen to it.
**Q.** As you sit here today, can you think of any safety feature you recall from any Toyota ad?
**A.** No, I didn't pay any attention to it.
*Depo., 124:24-125:12*

**Q.** – do you know for a fact who created the Toyota ads that you saw on TV?
**A.** I would think Tri-Cities of Toyota, the ones I saw on TV. | Contrary to the Barkers' complaint allegations and fact sheet responses, Lucy Barker testified at deposition that she **never relied on any advertising** before purchasing the subject 2010 Corolla. In fact, Barker testified to the contrary: that the TV ads she saw were "local" ads by the local dealership, and, moreover, she did not rely on any advertising and only relied on the verbal representations of the independent Toyota dealer in Washington. |

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | **Deponent: Barker, Lucy** | |
|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | [...] | |
| | | Q. (BY MR. BENOFF:) Why do you think Tri-Cities of Toyota made those ads? | |
| | | MS. COX: Objection. Misstates testimony. | |
| | | A. THE WITNESS: Because he was, this gentleman I'm talking about, was right outside the dealership. | |
| | | Q. (BY MR. BENOFF:) So you could see the Tri-Cities of Toyota in the background? | |
| | | A. Yes. | |
| | | Q. And you knew what that dealership looked like, 'cause it's right here in your area? | |
| | | A. Yes. And I go there. | |
| | | Q. Okay. And that's where you got your car serviced, correct? | |
| | | A. Yes. | |
| | | Q. So you were able to recognize the building in the background as your local dealership? | |
| | | A. Yes. | |
| | | *Depo., 125:22-126:22* | |
| | | Q. When you bought your 2010 Corolla, were you relying on commercials you'd seen for other types of Toyota cars? | |
| | | A. No. | |

- 2 -

LEGAL02/32545402v1

000085

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Barker, Lucy | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | *Depo., 127 :21-24* | |
| | | **Q. Before purchasing your 2010 Corolla, did you see any magazine ads for that car?** <br> **A. No.** <br> *Depo., 128:5-7* | |
| | | **Q. Prior to purchasing your 2010 Corolla, did you see any billboard ads for that car?** <br> **A. No.** <br> *Depo., 131:4-6* | |
| | | **Q. Did you see any brochures for the 2010 Corolla before you bought that car?** <br> **A. No, never did.** <br> *Depo., 133:1-3* | |
| | | **Q. Did Tri-Cities of Toyota ever show you a brochure for the 2010 Corolla?** <br> **A. They didn't show us any brochures. We just went out into the lot.** <br> *Depo., 133:4-7* | |
| | | **Q. Would it be fair to say you've never seen a brochure for the 2010 Corolla?** <br> **A. That's fair to say, yes.** <br> *Depo., 133:8-10* | |

- 3 -

000086

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Bosse, Wanda | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| "For years prior to purchasing their Toyotas on July 16, 2002, and August 26, 2008, the Bosses reviewed information about Toyota in brochures at the dealership, on the window stickers, these brochures, window stickers, warranty information, news reports, or any other materials disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, the Bosses would not have purchased their 2002 Camry and 2009 Corolla, or would not have paid as much for them, and suffered depreciation in value due to the existence of the defects." SAMCC, at ¶ 90. | "We saw advertisements for Toyota vehicles on television, in newspapers, in magazines, in brochures at the dealership, on the Internet, and in the mail, during the years before we purchased our Toyota Camry, Avalon and Corolla on July 16, 2002, November 28, 2005 and August 26, 2008, respectively. Although we do not recall the specifics of the many Toyota advertisements we saw before we purchased our Toyota vehicles, we do recall that safety and reliability were a consistent theme across the advertisements we saw. Those representations about safety and reliability influenced our decision to purchase our Toyota vehicles. Had those advertisements disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, we would not have purchased our Toyota vehicles. We certainly would not have paid as much for them.

When we purchased our Toyotas on July 16, 2002, November 28, 2005 and August 26, 2008, we viewed the sticker information affixed to the window of our Camry, Avalon and Corolla. Had the | Q. I want to talk a little bit about cars that you have owned and the Toyotas that you own now. From the information that's been provided to us, I understand that you all have owned at least four Toyotas; is that correct?
A. Ten.
*Depo., 30:18-23*

Q. Since 1980, have you or your husband owned a car that is not a Toyota?
A. No, we haven't.
*Depo., 34:7-9*

Q. And the first Toyota that you and your husband bought in 1980, who was the principal driver of that car?
A. Myself.
*Depo., 40:15-18*

Q. Can you recall any specific information about the safety of Toyota cars that you had in 1980 when you all decided to purchase a Toyota Corolla?
A. The salesman would stress the safety of the cars. I mean, that was – the safety and reliability, that was the big thing. That was what they would all stress.
*Depo., 52:17-24* | The Bosses have owned ten (10) Toyota vehicles – 8 of which they owned prior to the Subject Vehicles. In fact, Wanda Bosse testified at deposition that she and her husband had a longstanding relationship with their local, independent Toyota dealer in Kentucky. This relationship was so close that the dealer used Mr. Bosse in the dealer's advertising approximately 8 years ago. The Bosses prior Toyota ownership and close relationship with their local dealer severely undercuts their allegations regarding the influence of "national" advertising on their decision to purchase the Subject Vehicles. |

- 4 -

## ALLEGATIONS VERSUS EVIDENCE:

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Bosse, Wanda | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | stickers disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, we would not have purchased our Camry, Avalon and Corolla. We certainly would not have paid as much for them. | Q. Did Dry Ridge have any kind of a program with the police department that they offered a particular deal that that was the reason you went to Dry Ridge instead of to Kerry Toyota? **A. They used my husband as a -- in their ad at one time.** Q. When you say they, do you mean Dry Ridge Toyota -- A. Uh-huh. Q. -- used your husband in an ad? A. Right. Q. Tell me about that. **A. Well, we had purchased so many Toyotas, they had put his picture in the paper, like police chief of Covington, you know, drives a Toyota.** Q. When was that? **A. That was -- I'd say it was probably about eight years ago.** Q. So maybe in 2003? A. Yes. *Depo., 63:2-23* | |
| | When we purchased our Toyotas on July 16, 2002, November 28, 2005 and August 26, 2008, we reviewed warranty information regarding our Camry, Avalon and Corolla. Had they disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, we would not have purchased our Camry, Avalon and Corolla. We certainly would not have paid as much for them. | | |
| | During the years before we purchased our Toyotas on July 16, 2002, November 28, 2005 and August 26, 2008, we viewed the news regularly in the newspaper and on television. Had we seen in the news that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, we would not have purchased our Camry, Avalon | Q. So for around a year, there was an ad in a newspaper that had a picture of your husband, and it was an ad for Dry Ridge Toyota; is that right? A. Yes. *Depo., 65:1-5* | |

- 5 -

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

## Deponent: Bosse, Wanda

| SAMCC Allegations | Fact Sheet & Stipulation Responses | Contradictory Deposition Testimony | SUMMARY OF THE EVIDENCE |
|---|---|---|---|
| | and Corolla. We certainly would not have paid as much for them." Bosse SFSR, at ¶ 59. | | |
| | Albert and Wanda Bosse saw and heard television, magazine, newspaper, internet, news article, and brochure advertisement in Kentucky, Maryland and Virginia. Bosse Stip., at No. 2. | | |

- 6 -

000089

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Farrugia, Alexander | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| "Plaintiff Alexander Farrugia is a resident and citizen of New York. He owns a 2008 Toyota Highlander. He saw advertisements for Toyota vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Highlander in November 2007. Although he does not recall the specifics of the many Toyota advertisements he saw before he purchased his Highlander, reliability were a consistent theme across the advertisements he saw. Those representations about safety and reliability influenced his decision to purchase his Highlander. Had those advertisements or any other materials disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, he would not have purchased his Highlander. He certainly would not have paid as much for it." SAMCC, at ¶ 45. | "I saw advertisements for Toyota vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before I purchased my 2008 Toyota Highlander in November 2007. Although I do not recall the specifics of the many Toyota advertisements I saw before I purchased my 2008 Toyota Highlander, I do recall that safety and reliability were a consistent theme across the advertisements I saw. Those representations about safety and reliability influenced my decision to purchase my 2008 Toyota Highlander. Had those advertisements disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have purchased my 2008 Toyota Highlander. I certainly would not have paid as much for it." Farrugia FSR, at ¶ 59. Alexander Farrugia saw and heard television, magazine, newspaper, billboard, internet, radio, news article, and brochure advertisements in New York. Farrugia Stip., at No. 2. | Q. Before you -- before you sold the Mitsubishi, did you buy any other vehicle? [...] A. [...] In 1990, or '91, I had purchased a Toyota Camry. *Depo., 69:1-8* Q. Okay. '95 you bought the family vehicle, a Previa, correct? A. Yes. *Depo., 75:1-3* Q. And when you were shopping -- so you went back to the same dealer that you bought the Camry from? A. After I decided I wanted the Previa. Q. So you independently -- did you kind of do the same thing that you had done with the Camry with the Previa, as far as like comparing different models? A. Uh-huh. Q. Or different makes and models in the same class? A. Yes. Q. Going to some dealerships? | Mr. Farrugia testified that he has purchased or leased more than 10 vehicles – including two Toyota vehicles – prior to the subject Highlander. With each vehicle purchase, Mr. Farrugia undertook the same process: independently researching and comparing various models through online resources, such as Consumer Reports, as well as visiting dealerships and having conversations with dealers regarding safety and reliability. Mr. Farrugia acknowledged that he relied on the representations made to him by a Long Island, New York dealer in purchasing the subject Highlander. Contrary to allegations that he relied upon "national" advertising, Mr. Farrugia testified that he was entirely unable to |

- 7 -

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

## Deponent: Farrugia, Alexander

| SAMCC Allegations | Fact Sheet & Stipulation Responses | Contradictory Deposition Testimony | SUMMARY OF THE EVIDENCE |
|---|---|---|---|
| | | A. Uh-huh.<br>Q. Did you look at the Consumer Reports again?<br>A. Yes.<br>Q. And you settled on a Previa?<br>A. That's correct.<br>*Depo., 76:4-23*<br><br>Q. Okay. So you purchased the Previa in '95. How long did you own the Previa?<br>A. I still have it.<br>Q. You still have that.<br>A. Yeah.<br>Q. How many miles are on the Previa?<br>A. About ninety-eight.<br>Q. 98,000. Have you had any mechanical problems with the Previa? Any major mechanical problems?<br>A. No.<br>*Depo., 78:10-22*<br><br>Q. Other than Internet research and visiting the dealerships, and looking at materials including this brochure that you obtained from either the dealership or as I recall your prior testimony, perhaps ordered it online, | differentiate between "national" advertising and local advertising. |

- 8 -

LEGAL02/32545402v1

000091

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

**Deponent: Farrugia, Alexander**

| SAMCC Allegations | Fact Sheet & Stipulation Responses | Contradictory Deposition Testimony | SUMMARY OF THE EVIDENCE |
|---|---|---|---|
| | | other than those actions, is there anything else that you did in connection with purchasing the Highlander in deciding what vehicle to purchase? A. Consumer Reports magazine was another one. *Depo., 181:16-182:1* | |
| | | Q. [. . .] With respect to Consumer Reports, do you recall any safety discussion in those -- in the Consumer Reports that you looked at regarding the Toyota Highlander? Do you recall whether it discussed safety of the 2000 -- A. I'm sure it did. I'm pretty sure it did, which brochures, I don't know. *Depo., 200:20-201:1* | |
| | | Q. What conversations do you recall, if any, with anyone at **Westbury Toyota including Joseph relating to safety features on the Highlander prior to purchase?** A. They pointed out some of the safety features in the vehicle like the snow button that I told you about, something about the transmission which I didn't recall or had any | |

- 9 -

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Farrugia, Alexander | |
|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** |
| | | questions about to begin with. What I referred to as the down street button. Which is going downhills. What else? I think the GPS system. I think I remember it was Joe that said it's a great safety feature if you're not looking exactly -- if you get lost, it's a safety feature where you don't have to look around for an address and it more or less gets you to the location. The braking system. He pointed out the airbags where they were. *Depo., 190:15-191:7* |
| | | **Q. Mr. Farrugia, is it fair to say based on what we have testified earlier that you had many discussions with salespeople at Toyota dealerships in Long Island prior to purchasing the Toyota Highlander?** A. Yes. **Q. And you relied upon the things that they said in deciding to purchase the Highlander?** **A. That is correct.** *Depo., 206:25-207:8* |
| | | **Q. Is it fair to say there is not a single advertisement that you recall** |

LEGAL02/32545402v1

000093

**SUMMARY OF THE EVIDENCE**

# ALLEGATIONS VERSUS EVIDENCE:

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Farrugia, Alexander | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | specifically that you relied upon in purchasing the Highlander? A. Yes, there is none. *Depo., 228:5-9*  Q. With respect to the advertisements that you saw regarding the Highlander, prior to purchasing the Highlander or regarding Toyota vehicles in general prior to purchasing the Toyota, is it fair to say that you cannot confirm whether the advertisements were local or paid for by dealerships? A. No, I can't recall. *Depo., 227:18-25* | |

- 11 -

000094

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| Deponent: Fisher, Carole | | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| "Ms. Fisher saw advertisements for Toyota vehicles on television for several months before she purchased her Prius on June 6, 2009. Although she does not recall the specifics of the many Toyota advertisements she saw before she purchased her Prius, she does recall that safety and reliability were consistent themes across the advertisements she saw. Those representations about safety and reliability influenced her decision to purchase her Prius. Had those advertisements or any other materials disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, she would not have purchased her Prius. She certainly would not have paid as much for it." SAMCC, at ¶ 46. | "I predominantly saw advertisements promoting Toyota-made vehicles on television for months and months before I purchased by 2010 Toyota Prius on June 6, 2009. Although I do not recall the specifics of those televised advertisements, I do recall that safety and reliability was a consistent theme advertised by Toyota as an incentive to consumers. Those representations about safety and reliability significantly influenced my decision to purchase my Prius. Had those advertisements disclosed that Toyota-made vehicles could accelerate suddenly and dangerously out of control and lacked a proper fail-safe mechanism to overcome this defect, I would not have purchased my Prius, and I certainly would not have paid as much for it. For years I had driven a luxury BMW, and reluctantly, decided to switch to Toyota last year based largely on these advertised characteristics. It was a very hard decision for me to make and I regret it now based on the defects discovered with Toyota-made vehicles." Fisher FSR, at ¶ 59.

Carole Fisher saw and heard television, magazine and internet advertisements in Nevada. Fisher Stip., at No. 2. | Q. Do you have any idea whether those ads were run nationally or whether they were local?
A. Oh, I wouldn't understand their marketing strategies, no.
Q. So the answer is no?
A. No. The answer is no.
*Depo., 27:10-15*

Q. When you went in to the dealership, what made you feel confident and comfortable at the dealership?
A. The salesman, the promotional materials.
Q. What about the salesman made you feel confident and comfortable?
A. He seemed to have a good grasp of the car. He also had been a BMW owner and he had made the switch. He talked about the reliability of the vehicle. He had just purchased this particular car, was waiting for it to come in.
Q. Anything else?
A. I remember talking about safety and quality and, you know, value, as I mentioned.
*Depo., 47:25-48:13* | Similar to Mr. Farrugia, Carole Fisher testified at deposition that she cannot differentiate between "national" and "local" advertising. |

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Kamphaus, Connie | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| "Mrs. Kamphaus saw advertisements misrepresenting the safety of Toyota vehicles on television in magazines and on billboards for years before she leased her Toyotas on June 22, 2008 and February 19, 2010. Based on these misrepresentations as to the safety of Toyota vehicles, Mrs. Kamphaus leased her 2009 Camry and 2010 Camry. She also reviewed the window stickers on the vehicles and their warranty information. Had these advertisements, window stickers, warranty information or any other materials disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, she would not have leased her 2009 Camry and 2010 Camry and/or paid as much for them." SAMCC, at ¶ 54. | "My husband and/or I saw advertisements for Toyota vehicles on television, during the years before I leased my Toyota 2009 and 2010 Camrys on June 22, 2008 and February 19, 2010. Although I do not recall the specifics of the many Toyota advertisements I saw before I leased by 2009 and 2010 Camrys, I do recall that safety and reliability were a consistent theme across the advertisements I saw. Those representations about safety and reliability influenced my decision to lease my 2009 and 2010 Camrys. Had those advertisements disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have leased my 2009 and 2010 Camrys. I certainly would not have paid as much for them. When I leased my Toyotas on June 22, 2008 and February 19, 2010, my husband and/or I viewed the sticker information affixed to the window of my 2009 and 2010 Camrys. Had the sticker disclosed that Toyota vehicles could accelerate suddenly and | Q. Why did you go from the Accords to the Camry? A. Well, my husband really liked the look of the Camry, and so we looked at the Internet to see how they were rated in crash and safety, and they were highly rated. So he says well, why don't we go and get a Camry instead of a Honda this time, and that's what we did. It was a 2009. *Depo., 52:24-53:7* Q. Why did he want a Camry? A. He liked the way they looked. That was mostly his reason. His reason was he liked the way they looked. My reason was for the safety. And he agreed. I mean, he went out on the website, and we looked at the safety of the Camrys. *Depo., 68:3-9* Q. Before going to the Toyota dealership – well, strike that. You said you looked in the newspaper for sales. Did you go lease your 2009 Camry on a weekend? A. Yes. Q. And that day, did you look in the newspaper that morning for sales? A. Yes. Q. And did you go to that particular Toyota dealership because they were | Ms. Kamphaus testified that the main reason they leased the 2009 Camry was because her husband liked "the way [it] looked." In further testimony, Ms. Kamphaus acknowledged that she and her husband had a prior relationship with their local Toyota dealer in that it's the only dealership from which they had ever purchased or leased a Toyota vehicle. Moreover, Ms. Kamphaus testified that the purchase of the 2009 subject Camry was precipitated by the dealer's sale and in the local newspaper. Ms. Kamphaus' testimony contradicts the "national advertising" allegations relied upon by Plaintiffs. |

LEGAL02/32545402v1

000096

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Kamphaus, Connie | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have leased my 2009 and 2010 Camrys. I certainly would not have paid as much for them.<br><br>During the years before I leased my Toyotas on June 22, 2008 and February 19, 2010, my husband and/or I viewed the news regularly on television. Had I seen in the news that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have leased my 2009 and 2010 Camrys. I certainly would not have paid as much for them." Kamphaus SFSR, at ¶ 59.<br><br>Connie Kamphaus saw and heard television, newspaper and brochure advertisements in Ohio and Florida. Kamphaus Stip., at No. 2. | having a sale?<br>A. Yes.<br>*Depo., 68:23-69:10*<br><br>Q. Had you ever been to that Toyota dealership before?<br>A. That is probably the only dealership that we had ever gone to since we moved in Fairfield. We bought most of our cars from Performance Honda or Performance Toyota.<br><br>Q. Prior to -- well, strike that. Did you lease the 2009 Toyota on that same day that you went to Performance Toyota?<br>A. Yes.<br>*Depo., 69:24-70:8*<br><br>Q. Did you look at any ads in the paper or anything about 2010 Camrys?<br>A. No.<br>Q. Did you ask anyone other than people at the dealership about 2010 Camrys?<br>A. No. I thought they would be honest with me.<br>Q. When you say they, do you mean the people at the dealership?<br>A. The people at the dealership would be honest.<br>*Depo., 126:9-19* | |

# ALLEGATIONS VERSUS EVIDENCE:
## The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| Deponent: Mann, Patrick | | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| "Mr. Mann saw advertisements for Toyota vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before he purchased his Prius on May 22, 2009. Although he does not recall the specifics of the many Toyota advertisements he saw before he purchased his Prius, he does recall that safety and reliability were consistent themes across the advertisements he saw. Those representations about safety and reliability influenced his decision to purchase his Prius. Had those advertisements or any other materials disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, he would not have purchased his Prius, or he certainly would not have paid as much for it, and suffered depreciation in value due to the existence of the defects." SAMCC, at ¶ 111. | "I can say, however, that I saw advertisements for Toyota vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before I purchased my Toyota Prius on May 22, 2009. Although I do not recall the specifics of the many Toyota advertisements I saw before I purchased my Prius, I do recall that safety and reliability were consistent themes across the advertisements I saw. Those representations about safety and reliability influenced my decision to purchase my Prius. Had those advertisements disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have purchased my Prius. I certainly would not have paid as much for it." Mann FSR, at ¶ 59.<br><br>Patrick Mann saw and heard advertisements, magazine and newspaper advertisements in Missouri. Mann Stip., at No. 2. | Q. So was your primary focus at the time of purchasing the 2005 Prius to buy a hybrid vehicle?<br>A. That was the main feature I was looking for in a vehicle, but, I mean, it was also my first purchase of a vehicle - you know, a new vehicle that I was -- that I intended to keep and I wanted to buy a reliable vehicle as well.<br>Q. Okay. And what was it about the hybrid feature that was attractive to you?<br>A. The hybrid feature for me was a way to save gas money -- well, not gas money, but to be more fuel efficient and to do my part as far as, you know, cutting down on use of fossil fuels and, you know, foreign oil. You know, I just got back from a war in Iraq that I kind of put those -- you know, I related those two things together, so ...<br>*Depo., 18:17-19: 9*<br><br>Q. Okay. What about safety issues, did you do any research on safety issues concerning the 2009 Prius before you purchased it?<br>A. I -- I didn't do any -- any further research after determining that the -- there was virtually no changes between the 2005 model and the 2009 model.<br>Q. What research did you do to determine | Mr. Mann testified at deposition that his decision to purchase the subject 2009 Prius was primarily motivated by his previous ownership of and satisfaction with his 2005 Prius (which he sold, for financial reasons, following his divorce), and his desire to own another hybrid.  Contrary to the factual allegations, Mr. Mann testified that he did not research "safety" in connection with purchasing the subject 2009 Prius, and that his research primarily related to reading comments of Prius owners on Internet message boards and discussions with the dealers at the local dealership. |

- 15 -

**ALLEGATIONS VERSUS EVIDENCE:**
The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Mann, Patrick | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | that there were no -- in your words, virtually no changes between the 2005 Prius and the 2009 Prius?<br><br>A. I looked at various, you know, Internet message boards concerning, you know, ownership of the two vehicles, I looked at the redesign, you know. I don't know where they come from, but, you know, you see -- you know, these are the differences between this model and that model and I couldn't tell there was a difference between the two vehicles.<br>*Depo., 50:22-51:15*<br><br>Q. Okay. Do you recall talking to anyone at the dealership about the reliability of the car?<br><br>A. I don't -- I don't recall specifics regarding reliability, but I remember him saying, you know, you're going to love this car, you know that, you've had Toyotas, and this and that. You know, the -- the -- the sale, the reassurance was based on reputation as opposed to any one feature.<br><br>Q. Do you recall him making reassurances to you about reputation?<br><br>A. I recall him saying, you know, this is a great car, you're going to love it, but you already know that already, you've had this car before.<br>*Depo., 72:21-73:9* | |

- 16 -

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| Deponent: Mann, Patrick | | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | **Q. (By Mr. Wisoff)** Do you believe that any newspaper ads you saw would have been dealer ads as opposed to what you call national Toyota advertising ads? MS. COX: Objection, lack of foundation, calls for speculation. A. I would think that the majority of newspaper ads that I saw were of a local nature, but I --I mean, I couldn't possibly discount that a national company wouldn't have an ad in a --you know, the Kansas City market is a relatively large market, so ... *Depo., 125:5-16* | |

- 17 -

000100

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| Deponent: Oliver, Alyson | | |
|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| "Ms. Oliver saw advertisements for Toyota vehicles on the television and internet, including on Toyota's website, during the approximately two to four months during which she researched various vehicles before she purchased her Prius in 2007. Although she does not recall the specifics of many of the Toyota advertisements she saw before she purchased her 2007 Toyota Prius, she does recall that Toyota promoted its vehicles as safe and reliable. Those representations about safety and reliability influenced her decision to purchase her Prius. Had those materials disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, she would not have purchased her Prius, or she certainly would not have paid as much for it, and suffered depreciation in value due to the existence of the defects." SAMCC, at ¶ 116. | "I saw advertisements for Toyota vehicles on television, in magazines, in brochures at the dealership, and on the Internet, during the years before I purchased my 2007 Toyota Prius on October 17, 2009. Although I do not recall the specifics of the many Toyota advertisements I saw before I purchased my 2007 Toyota Prius, I do recall that safety and reliability were a consistent theme across the advertisements I saw. Those representations about safety and reliability influenced my decision to purchase my 2007 Toyota Prius. Had those advertisements disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have purchased my 2007 Toyota Prius. I certainly would not have paid as much for it.<br><br>When I purchased my Toyota on October 17, 2009, I viewed the sticker information affixed to the window of my 2007 Toyota Prius. Had the sticker disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have purchased my 2007 Toyota Prius. I certainly would not have paid as much for it. | Q. Okay. Taking you back to the time that you first started thinking about a new car related to the Prius purchase, can you tell me when that was, how far in advance of purchasing the Prius did you start<br><br>A. It was a few months. I mean, it was, you know, two, three, four months.<br>Q. And what was the main driver of your decision to get a different car?<br>A. The main driver of that decision was<br><br>definitely fuel economy.<br>Q. Okay. Was there anything else?<br>A. There were other considerations, but that was the main consideration.<br>Q. Okay. What were the other considerations?<br>A. I didn't particularly care to drive an SUV.<br>*Depo., 58:3-18*<br><br>Q. Did you see any other ads for automakers that touted safety and reliability?<br>A. I may have. I was -- you know, at that point the fuel efficiency was a big consideration, so that's the direction where my attention was focused.<br>*Depo., 64:6-10* | Alyson Oliver's testimony that fuel efficiency was the "main driver" in her decision to purchase the subject Prius vehicle undercuts her allegations concerning her reliance of "national advertising" about safety and reliability. |

000101

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Oliver, Alyson | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | When I purchased my Toyota on October 17, 2009, I reviewed warranty information regarding my 2007 Toyota Prius. Had it disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have purchased my 2007 Toyota Prius. I certainly would not have paid as much for it. | | |
| | During the years before I purchased my Toyota on October 17, 2009, I viewed the news regularly on television, in magazines, on the Internet, and/or other reports. Had I seen in the news that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have purchased my 2007 Toyota Prius. I certainly would not have paid as much for it."  Oliver FSR, at ¶ 59. | | |
| | Alyson Oliver saw and heard television, magazine, billboard, internet and brochure advertisements in Michigan.  Oliver Stip., at No. 2. | | |

- 19 -

000102

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| Deponent: Pedigo, Karen | | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| "Ms. Pedigo saw advertisements for Toyota vehicles on television and in magazines for several years before she obtained her Toyota Camry in 2005. Although she does not recall the specifics of the many Toyota advertisements she saw before she purchased her Camry, she does recall that safety and reliability were consistent themes across the advertisements she saw. Those representations about safety and reliability influenced her decision to purchase her Camry. Had those advertisements or any other materials disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, she would not have selected a Camry, or she certainly would not have paid as much for it, and suffered depreciation in value due to the existence of the defects." SAMCC, at ¶ 117. | "I saw advertisements for Toyota vehicles on television and in magazines for several years before I obtained my Toyota Camry in 2005 and my Prius in 2010. Although I do not recall the specifics of the many Toyota advertisements I saw before I purchased my Toyota vehicles, I do recall that safety and reliability were consistent themes across the advertisements I saw. Those representations about safety and reliability influenced my decision to purchase my Toyota vehicles. Had those advertisements or any other materials disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have selected a Toyota vehicles. I certainly would not have paid as much for it." Pedigo SFSR, at ¶ 59.

Karen Pedigo saw and heard television and magazine advertisements in Illinois and while traveling to other states, such as Indiana. Pedigo Stip., at No. 2. | **Q. So, did your parents just offer to buy you a car, or did they offer to buy you a specific, like a Toyota car? How was that offer made?**
**A.** It was an open offer. But they had had a history of buying Toyotas, and so, that was their -- but I had choices. Yeah, I had choices.
*Depo., 57:15-20*

**Q. Okay. Your parents, with respect to their car buying history, you mentioned that they had a history of buying Toyotas. Were they driving a Toyota at the time of the purchase of the Camry in 2005?**
**A. Yes.**
**Q. Do you know what kind, what model Toyota they were driving?**
**A.** My mom has a Lexus, and my dad had -- he had a Camry. I think it was an '02.
**Q.** Do you recall the year of your mom's Lexus?
**A.** I don't.
**Q. Could you give me an estimate as to the number of Toyota cars your parents have owned that you recall?**
**A.** I would -- seven is a reasonable guess.
**Q.** Okay. And are they currently driving | Karen Pedigo's testimony reveals that her family's ownership of Toyota vehicles influenced her decision to select the subject Camry -- her parents have a long history of Toyota ownership (seven in total). Moreover, Ms. Pedigo acknowledged that the subject Camry was a gift from her parents who purchased the Camry from the local dealership from whom they had previously purchased most of their current vehicle -- a Toyota Prius -- is not "defective" (and thus, presumably, not a "subject vehicle"), Ms. Pedigo subsequently purchased her Prius because her sister has one. Ms. Pedigo unequivocally

Ms. Pedigo testified that her |

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Pedigo, Karen | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | Toyota cars?<br>A. My father now has a Nissan. And my mother still has her Lexus.<br>*Depo., 58:6-59:1* | testified that she was not influenced by advertising when she decided to get the Prius. |
| | | Q. So, of the roughly seven prior Toyotas that your parents have owned and other than the Lexus, would the other ones typically you think have been Planet Toyota?<br>A. Well, there used to be another dealership in Chicago Heights, and I don't know if it's still there. But Planet Toyota is part of an auto mall, and I remember it being built. I know they bought their other Toyotas from another dealership. And I don't know if it's open or not. But it's all been either Orland, Matteson or Chicago Heights, I believe.<br>Q. Okay. And you say you don't recall if you visited another Toyota dealership relating to the Camry, your Camry?<br>A. I am reasonably certain I did not. There's nothing else that's close by, that is convenient.<br>Q. Orland is not close –<br>A. Yeah, Orland is close, but I did not go to Orland. I know that.<br>*Depo., 61:8-62:3*<br><br>Q. Okay. You mentioned consulting Consumer Reports. What issues or | |

- 21 -

000104

# ALLEGATIONS VERSUS EVIDENCE:

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Pedigo, Karen | | |
|---|---|---|---|
| SAMCC Allegations | Fact Sheet & Stipulation Responses | Contradictory Deposition Testimony | SUMMARY OF THE EVIDENCE |
| | | research were you looking for in the Consumer Reports relating to the Camry purchase?<br>A. It's really a lot of safety, the reliability, the quality of the car.<br>*Depo., 64:3-8*<br><br>Q. [. . .] You're claiming that the Toyota Camry was defective, correct?<br>A. Yes.<br>**Q. Are you claiming that the Prius was also a defective vehicle?**<br>A. No.<br>*Depo., 53:8-16*<br><br>**Q. Okay. What led you to be interested in the Prius?**<br>A. My sister has a Prius. The Priuses that were being recalled at that time were the newer ones. They were the '09s and '10s. So, I knew it wasn't part of a recall. Consumer Reports had rated the Prius as one of the top three used cars for 2005. And the one that they had had at Planet Toyota was, like, on a — on an auto sales version of clearance. So, it was a little lower even, 'cuz I didn't want to pay that much. And because I was again financially in a position where I was not prepared to buy a new car, I tried to rationalize a hybrid by saying, well, if I drive this car for so | |

LEGAL02/32545402v1

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Pedigo, Karen | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | many years, the money I save in gas will make up for the fact that I'm buying a new car when I do not want to be buying a new car. Q. What research into the Prius' safety or reliability did you undertake? A. Well, again, because it had been around since 2005, there were records of it in the Consumer Reports. So, at that point, you know, I'm not really considering advertisements, right, even though there were Prius ads on television. You know, I really went with because it had a track record, it had been on the road for a while, and what went into it being one of the Consumer Reports top used cars, you know, very high rating. *Depo. 181:21-183:5* | |

- 23 -

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| Deponent: Whelan, Georgeann | | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| "Ms. Whelan is generally aware that Toyota has a reputation for reliability and safety from reading publications such as *Consumer Reports*. She also reviewed the advertising booklet from the dealer before purchasing her Avalon, which made representations about safety and reliability, including, "The Avalon not only takes care of all your indulgences, but your safety as well....So you can truly enjoy your ride from the standpoint of luxury and safety.... A standard of luxury exceeded only by a standard of safety.' She reviewed the window sticker of the vehicle prior to her purchase, and reviews news reports regularly. Had these advertisements or any other materials disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, she would not have purchased her Toyota Avalon, or would not have paid as much for it, and suffered depreciation in value due to the existence of the defects." SAMCC, at ¶ 130. | "I saw advertisements for Toyota vehicles on television, in magazines, on billboards, in brochures at the dealership, and I also read articles on the Internet during the two years before I purchased my Toyota Avalon Limited on 4/11/05. Although I do not recall the specifics of the many Toyota advertisements I saw before I purchased my Avalon, I do recall that safety and/or reliability were a consistent theme across the advertisements I saw. Those representations about safety and reliability influenced my decision to purchase my Avalon. Had those advertisements disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have purchased my Avalon. I certainly would not have paid as much for it." Whelan SFSR, at ¶ 59.

Georgeann Whelan saw and heard television, magazine, internet and brochure advertisements in Maryland. Whelan Stip., at No. 2. | **Q. Did you find that the '95 Avalon was safe? Did you find what you were looking for?**
A. The '95 Avalon, I was very pleased with that car.
*Depo., 54:20-23*

Q. Did you have major – any major mechanical problems with the Avalon, the '95 Avalon?
A. No, I did not.
*Depo., 55:4-6*

**Q. Because you had owned an Avalon, is that part of the reason you went back to an Avalon?**
A. That is part of the reason, yes.
*Depo., 60:5-7*

Q. Did you consider any other -- in purchasing the 2005 Avalon, did you consider any other makes or models of vehicles?
**A. Not seriously. [....] The sales consultant who handled the ordering was a client of mine, and I had mentioned to him that I was considering a new Avalon when the new body change came out. He had been riding with me in my 1995 Avalon, and he was saying, Ann, the 2005s are** | Georgeann Whelan's testimony evidences that the two factors that influenced her decision to purchase the subject 2005 Avalon were: (1) her prior ownership and satisfaction with her 1995 Avalon and desire to buy a newer version and (2) her prior business relationship with the Carmax salesman from whom she ultimately purchased the subject Avalon. |

- 24 -

000107

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Whelan, Georgeann | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | going to be gorgeous. He said, let me know. [...] I just said, Tom, call me and let me know.<br>Q. Is it Tom Greenen or something?<br>A. Tom Greenen.<br>Q. And how was he a client?<br>A. When my husband and I were building our home, Tom was a finisher and he was an artisan, did a lot of molding for us, a lot of extra trim work, the hardwood flooring. That's how I got to know him. Many years later, when he was looking to purchase a home, he found me and said, Ann, I would like you to handle my transaction. And then he was riding in my '95 Avalon, said, I'm working now at Carmax, the Avalon. He said, Ann, the new models are coming out and they're going to be very pretty. That's all I remember.<br>*Depo., 60:8-61:19* | |

- 25 -

# ALLEGATIONS VERSUS EVIDENCE:

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| Deponent: Young, Carole | | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| "Ms. Young saw advertisements for Toyota vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before she purchased her 2009 Toyota Corolla LE on November 4, 2008. Although she does not recall the specifics of the many Toyota advertisements she saw before she purchased her Corolla, she does recall that safety and reliability were a consistent theme across the advertisements she saw. Those representations about safety and reliability influenced her decision to purchase her 2009 Toyota Corolla, and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, she would not have purchased her Corolla. She certainly would not have paid as much for it." SAMCC, at ¶ 69. | "I saw advertisements for Toyota vehicles on television, in magazines, on billboards, in brochures at the dealership, and on the Internet during the years before I purchased my 2009 Toyota Corolla, Luxury Edition on November 4, 2008. Although I do not recall the specifics of the many Toyota advertisements I saw before I purchased my 2009 Toyota Corolla, Luxury Edition, I do recall that safety and reliability were a consistent theme across the advertisements I saw. Those representations about safety and reliability influenced my decision to purchase my 2009 Toyota Corolla, Luxury Edition. Had those advertisements disclosed that Toyota vehicles could accelerate suddenly and dangerously out of the driver's control and lacked a fail-safe mechanism to overcome this, I would not have purchased my 2009 Toyota Corolla, Luxury Edition. I certainly would not have paid as much for it." Young SFSR, at ¶ 59.<br><br>Carole Young saw and heard television, magazine, billboard, internet and brochure advertisements in Ohio. Young Stip., at No. 2. | Q. Did you visit any kind of website like a Consumer Reports, Kelly Blue Book, websites of those who often report about cars and safety and price, things of that nature?<br>A. Yes.<br>Q. Which ones did you visit, which websites?<br>A. Consumer Reports.<br>Q. Consumer Reports, okay. What did you read on the Consumer Reports website?<br>A. Toyota Corolla had a good report.<br>Q. Do you recall anything it said about it, the Corolla, that made it a good report?<br>A. Safety, low maintenance on earlier models. They did not have any information on the '09 model.<br>*Depo, 32:2-16*<br><br>**Q. Okay. What was the -- I guess the basis or the reason for the Toyota interest? I mean, why was it that you were interested in the Toyota?**<br>**A. My daughter and son-in-law have a '98 Corolla.**<br>*Depo, 34:9-13*<br><br>Q. Okay. Did you talk to them about their experiences with their own | Contrary to her allegations and fact sheet responses, Carole Young testified at deposition that she cannot recall any advertising upon which she relied – except that she saw a local Ohio dealership's billboards. In other words, Young can only recall, even in the most general sense, relying on local advertising – no "national" advertising by TMS. Instead, Young admittedly relied primarily on family members' experiences and endorsements of Toyota, and other third-parties' representations (e.g. Consumer Reports, sources on the internet). |

- 26 -

# ALLEGATIONS VERSUS EVIDENCE:

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Young, Carole | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | Corolla?<br>A. Yes.<br>Q. How long -- approximately how long had they owned a Corolla at the time when you were looking for a new car?<br>A. Approximately six years.<br>Q. Okay. And what did they say to you regarding their experiences with their Corolla?<br>A. It was a low-maintenance vehicle --<br>Q. Uh-huh.<br>A. -- good gas mileage, and it was safe.<br>*Depo., 35:21-36:7*<br><br>Q. And how did you decide to visit that particular dealership, Thayer?<br>A. Thayer, and especially one particular salesman, was recommended to me by my cousin.<br>Q. And what's your cousin's name?<br>A. Marie Samson.<br>Q. I think I saw Sam Samson in a document in the --<br>A. That's her husband.  His first name is actually Luther, but everybody calls him Sam.<br>Q. So do Marie and Sam Samson own a Toyota vehicle?<br>A. Yes.<br>Q. What do they have?<br>A. They have a minivan. | |

- 27 -

000110

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Young, Carole | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | Q. Okay. And did they recommend Thayer to you because that's the dealership they purchased their minivan from? | |
| | | A. Yes. | |
| | | *Depo., 40:1-21* | |
| | | Q. Did you receive any recommendations from any coworkers about cars that you should consider buying when you were in this process? | |
| | | A. I have another coworker who has a Toyota. | |
| | | Q. Okay. And what's her name? | |
| | | A. Cheryl. | |
| | | Q. Okay. | |
| | | A. Still. | |
| | | [...] | |
| | | Q. Okay. What do you recall Ms. Still saying to you about either Toyota cars or her RAV4 that she had owned before the Solaris? | |
| | | A. She liked Toyota. | |
| | | Q. Did she say why? | |
| | | A. Low maintenance, safety, she felt confident. | |
| | | *Depo., 41:18-42:6; 43:11-17* | |
| | | Q. Okay. Did you -- I mean, you purchased the LE edition. Did you consider purchasing one of the other Corolla editions? | |

- 28 -

LEGAL02/32545402v1

**ALLEGATIONS VERSUS EVIDENCE:**

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| | Deponent: Young, Carole | | |
|---|---|---|---|
| **SAMCC Allegations** | **Fact Sheet & Stipulation Responses** | **Contradictory Deposition Testimony** | **SUMMARY OF THE EVIDENCE** |
| | | A. I do not recall.<br>Q. Okay. Did you refer to any sources to determine what purchase price you wanted to pay for the car?<br>A. My determinating factor was what I could personally afford.<br>*Depo., 58:21-25*<br><br>Q. Okay. Is there anything in a magazine ad, People or another magazine ad, that you may have seen that you think impacted your decision to purchase the Corolla?<br>A. No.<br>*Depo., 89:8-12*<br><br>Q. And I'll ask that same question backing up to the television ads. Was there any TV ad about Toyota that you have seen that you think may have impacted your decision to purchase the Corolla?<br>A. I cannot recall any specifics.<br>*Depo., 89:13-17*<br><br>Q. Okay. And then if you look down to part D there, Billboards, there is a "yes" answer. Are those -- would that be pertaining to billboards that you may have seen around town here in Ohio?<br>A. Correct.<br>Q. And do you recall if those are | |

- 29 -

# ALLEGATIONS VERSUS EVIDENCE:

The Evidence Does Not Support Plaintiffs' Choice of Law ("National Advertising") Allegations

| Deponent: Young, Carole | | | |
|---|---|---|---|
| SAMCC Allegations | Fact Sheet & Stipulation Responses | Contradictory Deposition Testimony | SUMMARY OF THE EVIDENCE |
| | | billboards relating to specific dealerships, dealership advertising? A. I believe so. Q. Okay. Do you recall any billboards that were related to Toyota vehicles that you did not think were specific to a local dealership? MR. PITRE: Objection. Calls for speculation. A. THE WITNESS: Not that I recall. *Depo., 89:18-90:9* Q. So I guess my question to you is what did you rely on when you purchased your Corolla vehicle with respect to information about the car? MR. PITRE: Objection. Asked and answered. Overbroad. A. THE WITNESS: I relied on the Consumer Reports; the driving experiences of my daughter and son-in-law, as well as my cousin and her husband; and what I read on the Internet on the Toyota website. *Depo., 91:18-92:3* | |

- 30 -

000113

# EXHIBIT D

# Manifestation of Defect State Law Variations Chart

Plaintiffs assert consumer fraud and warranty claims alleging that they have suffered an economic loss as a result of purchasing or leasing a Toyota vehicle that has diminished in value due to an alleged defect that was not disclosed at the time of purchase or lease. In bringing these claims, Plaintiffs seek to represent a class of Toyota owners and lessees from across the country that includes those who continue to drive their vehicles and have never experienced any malfunction with their particular vehicle. Under the laws of many states, the consumer fraud and warranty claims of such individuals would be dismissed for lack of sufficient damages to support their claims. This is a key outcome determinative difference in the various states' laws.

| State | Case Law |
|---|---|
| AL | **Manifestation of Defect Required** |
| | "Farsian's fear that his valve could fail in the future is not, without more, a legal injury sufficient to support his claim." *Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996) (court held that whether couched in terms of fraud law or product liability law, plaintiff had no claim under Alabama law because the heart valve had not malfunctioned and was instead working properly). |
| | The Alabama Supreme Court held that car owners could not recover for fraudulent suppression based solely on the theory that their vehicles could potentially malfunction in the future, given the lack of any claims indicating manifest injury. *Ford Motor Co. v. Rice*, 726 So. 2d 626, 630-31 (Ala. 1998). |
| | "Alabama has long required a manifest, present injury before a plaintiff may recover in tort." *S. Bakeries, Inc. v. Knipp*, 852 So. 2d 712, 716-17 (Ala. 2002) (Plaintiffs brought claims (1) negligent or wanton failure to warn; (2) fraudulent suppression; (3) negligent, reckless, or intentional representation; and (4) negligent or wanton failure to train employees based on allegation that they were more than likely going to develop asbestos-related cancer from an oven they were told was asbestos free. Alabama Supreme Court granted defendant's summary judgment motion on the basis that plaintiffs had not suffered any legally cognizable present injury). |
| AK | **No Case Law on the Issue** |
| AZ | **No Case Law on the Issue** |
| | *But see, Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 752 P.2d 28 (Ariz. Ct. App. 1987) (there can be no claim for damages for fear of contracting asbestos-related diseases in the future without manifestation of bodily injury). |
| AR | **Manifestation of Defect Required** |
| | Plaintiff could not maintain a common-law fraud claim against the manufacturer based on dangerous design defect that caused the SUV to roll over under normal operations where the only injury was a diminution in value and there was no allegation that the vehicle had actually malfunctioned or that a defect had manifested itself. *Wallis v. Ford Motor Co.*, 362 Ark. 317, 208 S.W.3d 153, 155 (Ark. 2005) |

LEGAL02/32545407v1

- 1 -

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
| | (the court stated that "[o]ur application of the benefit-of-the-bargain damages in common-law fraud cases has nonetheless been limited to instances where the actual product received by the purchaser manifests that it is different from that which was promised."). Further, the plaintiff could not maintain a cause of action under the Arkansas Deceptive Trade Practices Act (ADTPA) Ark. Code Ann. §§ 4-88-101 *et seq.* because the only injury complained of was a diminution in value of the vehicle. *Wallis*, 208 S.W.3d at 161. "[A]ctual damage or injury is sustained when the product has actually malfunctioned or the defect has manifested itself. Where the only alleged injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA [or in common-law fraud]." *Id.* |
| | The court denied Plaintiffs motion to certify a class and granted defendants' motion for summary judgment where Plaintiff's brought claims under the ADTPA, strict liability tort and breach of implied warranties because Plaintiff did not establish that the product had ever malfunctioned. *Roberts v. Sunbeam Prods.*, No. 405C000183JMM, 2005 WL 3447609 (E.D. Ark. Dec. 14, 2005). "[T]he undisputed fact that she has not suffered an injury based upon defendants' product either malfunctioning or containing a defect, plaintiff cannot establish a Deceptive Trade Practices Act claim. This same reasoning would apply to plaintiff's strict liability and breach of implied warranty claims." *Id.* at *1. |
| CA | **Law Inconsistent on Issue/Substantial Certainty to Fail Generally Required** |
| | "If plaintiffs prove their foundations contain an inherent defect which is substantially certain to result in malfunction during the useful life of the product they have established a breach of Kaufman's express and implied warranties." *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 923, 107 Cal. Rptr. 2d 761, 773 (2001) (a plaintiff may recover for breach of implied warranty where he or she can prove that the product at issue is "substantially certain" to fail during its useful life). |
| | "'[P]roof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product.'" *Cartwright v. Viking Indus., Inc.*, No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887, at *10 (E.D. Cal. Sept. 14, 2009) (quoting *Hicks*, 89 Cal. App. 4th at 918). |
| | *Hewlett-Packard Co. v. Superior Court*, 167 Cal. App. 4th 87, 95-96, 83 Cal. Rptr. 3d 836, 842 (2008) (stating that an actual malfunction of the computer notebook screens would not be necessary to establish that they are defective, if it could be established that they were substantially certain to fail prematurely). The court upheld the trial court's decision to certify the class. *Id.* at 843. |
| | *Trew v. Volvo Cars of N. Am., LLC*, No. CIV-S-051379DFLPAN, 2006 WL 306904 (E.D. Cal. Feb. 8, 2006) (court denied defendant's motion to dismiss Trew's claims for (1) violation of the UCL; (2) unjust enrichment; (3) fraud; and (4) violation of the CLRA, holding that plaintiff had sufficiently stated a claim under the UCL, CLRA, for fraudulent concealment and unjust enrichment by alleging that every electronic throttle model in cars is defective and will fail – even though plaintiff's had not yet failed – and that she would not have bought the car had she known of the ETM defect) (citing *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005) (based |

- 2 -

**Manifestation of Defect State Law Variations Chart**

| State | Case Law |
|---|---|
|  | on testimony offered by the plaintiffs that all, or nearly all, of the class members' manifolds would fail, the court found that the plaintiffs had raised sufficient evidence of an injury under the CLRA to deny defendant's motion for summary judgment)). |
|  | Where General Motors made specific written representations amounting to an express warranty, whether the defect manifested itself did not matter, because the representation constituted a warranty upon which the plaintiffs were entitled to rely. *Anthony v. Gen. Motors Corp.*, 33 Cal. App. 3d 699, 707, 109 Cal. Rptr. 254, 259 (1973) (the court held it was unnecessary to produce individualized evidence that any plaintiff or class member had suffered wheel failure or personal injury or property damage as a result of wheel failure). |
|  | *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) (reversing denial of class certification and stating that the court has previously held that "proof of the manifestation of a defect is not a prerequisite to class certification."). The Ninth Circuit held that the district court erred when it required plaintiffs to show that a majority of proposed class member's vehicles manifested the results of the defect. *Id.* at 1174. |
|  | **But See:** |
|  | "Because the vast majority of the Samurais sold to the putative class "did what they were supposed to do for as long as they were supposed to do it," *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982), we conclude that these vehicles remained fit for their ordinary purpose. This being so, their owners are not entitled to assert a breach of implied warranty action against Suzuki, and it was, therefore, error to conclude, as did the trial court, that an ascertainable class existed, and that plaintiffs' implied warranty claims should be certified for class treatment. To hold otherwise would, in effect, contemplate indemnity for a potential injury that never, in fact, materialized. And, compensation would have to be paid for a product "defect" that was never made manifest, in a product that for the life of any warranty actually performed as Suzuki guaranteed it would." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1298, 44 Cal. Rptr. 2d 526, 531 (1995) (reversing class certification grant and holding that plaintiffs failed to state a claim for breach of implied warranty under California law because the defect never manifested). |
|  | "A plaintiff's claims are actionable under California law only if the plaintiff alleges that an actual manifestation of a defect results in an injury. Plaintiff's claim of fear of future injury, premised on the risk that his pacemaker may malfunction in the future, is not a legally cognizable injury under California law." *Cohen v. Guidant Corp.*, No. CV-05-8070-R, 2011 WL 637472, at *2 (C.D. Cal. Feb. 15, 2011) (citing *Khan v. Shiley, Inc.*, 217 Cal. App. 3d 848, 857, 266 Cal. Rptr. 106, 112 (1990)). |
|  | Homeowners who had experienced no leaks in their plumbing systems could not recover in negligence action against manufacturer of polybutylene (PB) resin used to make allegedly defective pipes; homeowners were required to show appreciable present harm, not merely threat of future harm, to satisfy damage element of negligence action. *Zamora v. Shell Oil Co.*, 55 Cal. App. 4th 204, 63 Cal. |

- 3 -

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
| | Rptr. 2d 762 (1997) (holding that, in the absence of a product malfunction, a plaintiff cannot establish that a defendant breached any duty owed) *disagreed with on other grounds by Goodman v. Lozano*, 47 Cal. 4th 1327, 104 Cal. Rptr. 3d 219 (2010). |
| | "No matter which theory is utilized, however, where a plaintiff alleges a product is defective, proof that the product has malfunctioned is essential to establish liability for an injury *caused by the defect*." *Khan*, 217 Cal. App. 3d 848, 855 (1990). "A cause of action does not presently exist under any theory premised on the *risk the valve may* malfunction in the future. This includes negligence, i.e., failure to warn, and breach of warranty. Allegations of fraud, however, are in a class by themselves. " *Id.* at 857 |
| | In California, when a vehicle drives normally and no defect is manifested during the warranty period, plaintiffs cannot state a claim for breach of express warranty. *See e.g., Hewlett-Packard Co.*, 167 Cal. App. 4th 87 (concluding that the failure of a component part after the expiration of the express warranty period does not support a claim for relief under an express warranty claim) (citing *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006)), but also holding that an actual malfunction of the computer notebook screens would not be necessary to establish that they are defective, if it could be established that they were substantially certain to fail prematurely. |
| | Where consumer did not allege some physical manifestation, or failure of the drug to work as intended, the court dismissed the consumer's claims against the manufacturer for breach of warranty, fraud and unjust enrichment. *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 WL 1082026 (N.D. Cal. Apr. 22, 2009). "A plaintiff must allege an actual *manifestation* of a defect *that results in some injury or rational fear of future injury* in order to state cognizable claims." *Id.* at *4. |
| | "In the absence of manifest defect and injury, a plaintiff does not state a claim for causes of action related to products liability." *Whitson v. Bumbo*, No. C 07-05597 MHP, 2009 WL 1515597, at *5 (N.D. Cal. Apr. 16, 2009) (court held that because Whitson did not allege an injury for her claims under California's Unfair Competition Law, Consumer Legal Remedies Act and breach of implied warranty claim, she therefore lacks standing). |
| CO | No Case Law on the Issue |
| CT | No Case Law on the Issue |
| DC | **Manifestation of Defect Required** |
| | The D.C. District Court has previously dismissed the claims of those plaintiffs whose vehicles never experienced a manifestation of the defect. The court stated that "a contrary rule would, in effect, contemplate indemnity for a potential injury that never, in fact, materialized; compensation would have to be paid for a product "defect" that was never made manifest, in a product that for the life of any warranty actually performed as the warrantor guaranteed it would. The Court will therefore dismiss the claims of all plaintiffs whose |

- 4 -

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
| | X-cars never experienced the phenomenon of "premature rear wheel lock-up" (and will, of course, not entertain any class claims in which an allegation of actual product failure is absent)." *Barbarin v. Gen. Motors Corp.*, No. 84-0888 (TPJ), 1993 U.S. Dist. LEXIS 20980 (D.D.C. Sept. 22, 1993) (dismissing Plaintiffs' Magnusson-Moss warranty Act claims). |
| | The Court has held that patients who were prescribed a drug for pain, but personally suffered no ill effects, cannot sue for money damages under D.C.'s Consumer Protection Statute (CPPA), D.C. Code §§ 28-3901 *et seq.* (applied to claims that pre-date the Oct. 19, 2000 amendment to the CPPA). *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003) (note the court held that the plaintiffs lacked standing where they failed to allege a particularized injury-in-fact). "Although the plaintiffs allege a "benefit of the bargain" theory of injury, Opp. at 7, they do not allege that OxyContin failed to provide them effective pain relief or that they suffered any adverse consequences from their use of OxyContin." *Id.* at 176. "Without alleging that a product failed to perform as advertised, a plaintiff has received the benefit of his bargain and has no basis to recover purchase costs." *Id.* |
| | **But see:** |
| | The Court has held that the plaintiffs could state an implied warranty claim even though their heart valves had not yet manifested the defect. But rather than rejecting the manifestation requirement outright, the court just found that heart valves are more like foundations in *Hicks*, as opposed to tires in *Feinstein*, because there was plenty of time left where the valves could manifest the defect outside of their useful lives. *Quality Air Servs., LLC v. Milwaukee Valve Co.*, 671 F. Supp. 2d 36, 43-45 (D.D.C. 2009). The court also held that the plaintiff may be able to show that the valves did not conform to the alleged express warranties even though the valves were still functioning. *Id.* at 46. |
| DE | **Manifestation of Defect Required** |
| | A manifestation of a defect is required to prove damages in negligence and fraud claims in Delaware. *Dalton v. Ford Motor Co.*, No. 00C-09-155WCC, 2002 WL 338081, at *5-*6 (Del. Super. Ct. Feb. 28, 2002) (the court dismissed plaintiffs' negligence and fraud claims based on the fact that plaintiffs' vehicles had been operating without any indication of a defect and continue to properly operate, thus they have not suffered any damages). Plaintiffs claim that they have suffered the diminution in value of their vehicles should they ever attempt to re-sell them in the future. *Id.* at *5. The court held that these alleged damages were too speculative. *Id.* |
| FL | **No Case Law on the Issue But No Class Certification Where There Is a Mixture of Plaintiffs With and Without a Manifested Defect** |
| | "The district court properly dismissed the implied warranty claim because plaintiffs did not allege privity between themselves and Ford. Ford limited the implied warranty to the period of the express warranty ... and plaintiffs failed to allege that a defect manifested itself or a breach occurred within that period." *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434-35 (11th Cir. 2009) (applying federal law); *see* |

- 5 -

**Manifestation of Defect State Law Variations Chart**

| State | Case Law |
|---|---|
| | *also Breakstone v. Caterpillar, Inc.*, No. 09-23324-CIV, 2010 WL 2164440, at *6 (S.D. Fla. May 26, 2010) (applying Florida and federal class certification principles to reject class certification where some plaintiffs' vehicles have "manifested a deficiency" while others have "performed satisfactorily" and only have speculative damages). |
| | Plaintiffs brought a class action against an automobile manufacturer seeking to recover under the Magnuson Moss Warranty Improvement Act, the Florida Deceptive and Unfair Trade Practices Act and for breach of warranty. *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133 (Fla. Dist. Ct. App. 2008). The court held that there were readily apparent reasons why the case could not proceed as a class action. *Id.* at 1139. "One rests upon the fact that the class representative in this case seeks compensation not only for class members whose brakes have manifested a deficiency, but also for those whose brakes have performed satisfactorily." *Id.* (citing a string of cases including *Briehl v. Gen. Motors Corp*, 172 F.3d 623, 628 (8th Cir. 1999); *Ford Motor Co. v. Rice*, 726 So. 2d 626, 627 (Ala. 1998); *Barbarin v. Gen. Motors Corp.*, No. 84-0888, 1993 WL 765821 (D.D.C. Sept. 22, 1993)). |
| GA | No Case Law on the Issue |
| HI | No case Law on the Issue |
| ID | No Case Law on the Issue |
| IL | **Manifestation of Defect Not Likely Required** |
| | "As a general rule, the Illinois Appellate Court has allowed product defect claims in the absence of product malfunction only when the damages claim stems from the diminished value of the defective product." *Haenisch v. Gen. Motors Corp. (In re Gen. Motors Type III Door Latch Litig.)*, No. 98 C 5835, 2001 WL 103434, at *2-*3 (N.D. Ill. Jan. 31, 2001) (rejecting plaintiffs' consumer fraud claim for lack of allegations regarding loss of resale value); *see also Schiffner v. Motorola, Inc.*, 297 Ill. App. 3d 1099, 697 N.E.2d 868, 874-75 (1998) (holding that plaintiffs can assert damages claims based on alleged diminished value of a product). This rule was also applied to consumer fraud claims. *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 675 N.E.2d 584 (1996) (reinstating consumer fraud claim where only damages alleged were diminution of value due to the vulnerability of the increased risk of Suzuki vehicles rolling over); *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 762 N.E.2d 1, 10 (2001). |
| | But see *Yu v. Int'l Bus. Machs. Corp.*, 314 Ill. App. 3d 892, 732 N.E.2d 1173, 1177 (2000) (holding that mere speculation that software the defendant sold the plaintiff might not work did not amount to an injury for the purposes of consumer fraud, deceptive trade practices, breach of express and implied warranty, and negligence claims). |
| IN | **Manifestation of Defect Required** |
| | *In re Bridgestone/Firestone, Inc.*, one of the seminal cases requiring manifestation of a defect stemmed from a case filed in a federal court in Indiana. 288 F.3d 1012, 1017 (7th Cir. 2002). This decision is supported by Indiana precedent. *See Kantner v. Merck & Co.*, |

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
|  | No. 49D060411PL002185, 2007 WL 3092779 (Ind. Super. Ct. Apr. 18, 2007) (citing *In re Bridgestone/Firestone* and rejecting plaintiff's claim under the Indiana Deceptive Consumer Sales Act because plaintiff did not suffer actual out-of-pocket-expenses); *see also McCormick Piano & Organ Co. v. Geiger*, 412 N.E.2d 842, 853 (Ind. Ct. App. 1980) (holding that plaintiffs suffered no actual damages, as is required to state a deceptive practices claim, because they did not incur out-of-pocket expenses). |
| IA | **No Case Law on the Issue** |
| KS | **No Case Law on the Issue** |
| KY | **Manifestation of Defect Likely Required** |
|  | Several tort cases are instructive of how Kentucky courts would view this issue for other claims. *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 192 (Ky. 1994) (holding, in the tort context, that "[n]o cause of action accrues until the potentially harmful exposure actually 'causes injury that produces loss or damage'"); *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849, 855-56 (Ky. 2002) (interpreting *Capital Holding* to extend beyond personal injury cases to tort cases where no physical injury is alleged). |
|  | However, in a recent decision, the Western District of Kentucky held that *Wood* was inapposite in the warranty context because *Wood* involved "speculative physical injuries" as opposed to "potential economic injuries." *In re Sigg Switzerland (USA), Inc. Aluminum Bottles Mfg. and Sales Practice Litig.*, No. 10-MD-2137, 2011 WL 159940, at *3 (W.D. Ky. Jan. 12, 2011). Nevertheless, the court held that plaintiffs' implied warranty claims should be dismissed because the bottle served its necessary purpose of holding liquid for drinking without endangering anyone's health. *Id.* at *4-*5. |
| LA | **Manifestation of Defect Not Likely Required** |
|  | *Stroderd v. Yamaha Motor Corp., U.S.A.*, No. Civ. A. 04-3040, 2005 WL 2037419, at *3 (E.D. La. Aug. 4, 2005) (holding that plaintiffs' could bring Louisiana redhibition claim even if defect does not manifest itself because "Plaintiffs need only allege that they would have purchased the motorcycles but for a lesser price"). *But cf. Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099-1100 (5th Cir. 1991) (upholding summary judgment because plaintiff did not provide sufficient evidence to find that heart valves were defective under Louisiana law); *White v. Gen. Motors Corp.*, 718 So. 2d 480, 505 (La. Ct. App. 1998) (recognizing that whether "the malfunction of a product is … a prerequisite for breach of warranty" was a substantial legal obstacle to prevailing on the merits, which was a factor weighing in favor of approving class settlement). |
| ME | **Manifestation of Defect Required for Negligence, Failure to Warn, and Breach of Warranty Claims** |
|  | "For purposes of establishing fraud, it matters not that the receptacles are still functioning, arguably as intended. Unlike other theories, |

- 7 -

LEGAL02/32545407v1

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
| | i.e. negligence, failure to warn, and breach of warranty, in which the product must malfunction before a cause of action lies, in a fraud claim Plaintiff's injury is sustained at the time he makes the purchase in reliance on Defendant's purposeful misrepresentations, and the measure of his damages is the benefit of the bargain he made, i.e. the difference between the value of the product actually purchased and the value of the product as represented." *Everest v. Leviton Mfg. Co.*, No. CV-04-612, 2006 WL 381832, at *2 (Me. Super. Ct. Jan. 13, 2006) (internal citations omitted). |
| MD | **Manifestation of Defect Not Required**<br><br>In *Lloyd v. General Motors Corp.*, the Maryland Supreme Court held that plaintiffs stated a claim against a car manufacturer where they presented evidence that a significant number of others had been harmed as a result of the product defect. 397 Md. 108, 916 A.2d 257 (2007). In so holding, the court distinguished *Briehl* and other no-manifestation cases because the plaintiffs in those cases only alleged "speculative" injuries. 916 A.2d at 292. Similarly, the court distinguished *American Suzuki* and cases stating that economic losses were insufficient to state a claim for automobile defects. *Id.* at 292-93. The court stated that, in those cases, "the parties did not argue, and the court never addressed whether the harm alleged, in those cases, was sufficiently grave, or whether the likelihood of injury so great, to reach the threshold of the economic loss exception." *Id.* at 293. |
| MA | **Manifestation of Defect Not Required for Consumer Protection or Implied Warranty Claims**<br><br>*Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 888 N.E.2d 879, 882 (2008) ("We do not consider the lack of accident-related injury or manifested defect a bar to recovery under G.L. c. 93A, § 9, in this case."); *see also Holtzman v. Gen. Motors Corp.*, No. 02-1368, 2002 WL 34538155 (Mass. Super. Ct. July 2, 2002) (rejecting *Briehl* when holding that plaintiffs can claim economic damages for implied warranty claims where tire jacks were prone to failure and stating that "Massachusetts cases allowing recovery of purely economic damages for breach of warranty are legion."). |
| MI | **Manifestation of Defect Not Likely Required for Express and Implied Warranty Claims**<br><br>*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1099-1101 (S.D. Ind. 2001) (holding that manifestation of vehicle defect is not required under Tennessee or Michigan law for recovery under express and implied warranty theories). This case, however, has never been cited by a Michigan (or Tennessee) court. |
| MN | **Manifestation of Defect Required**<br><br>*O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110 (D. Minn. 2008); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009). These cases dismissed plaintiffs' claims under Magnuson-Moss, breach of implied and express warranty, unjust enrichment, and three different Minnesota consumer protection statutes for failure to adequately allege damages. "It is well established that purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own." |

- 8 -

000121

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
| | *O'Neil*, 574 F.3d at 503; *see also Cannon Techs., Inc. v. Sensus Metering Sys., Inc.*, 734 F. Supp. 2d 753, 763 (D. Minn. 2010) (recognizing that the rule in *O'Neil* is consistent with the UCC because the contrary interpretation of the UCC would mean that "[a] plaintiff could always claim that a defect manifesting itself after the express-warranty period was endemic to the product on the date it was purchased, and hence the produce was "defective" when bought. Such a rule is non-sensical."). |
| | In *Carey v. Select Comfort Corp.*, a Minnesota state court held that plaintiffs could not bring a variety of claims, including warranty claims, because they had not alleged actual damages. No. 27CV 04-01545 1, 2006 WL 871619, at *2-*4, *5-*6 (Minn. Dist. Ct. Jan. 30, 2006). The court stated that "the allegations, 'I paid an inflated price' or 'I would not have acted in the same way if I had known the truth' are insufficient without actual economic loss." *Id.* at *3. |
| MS | **Manifestation of Defect Required** |
| | In *Jarman v. United Industries Corp.*, 98 F. Supp. 2d 757, 768 (S.D. Miss. 2000), the Southern District of Mississippi dismissed plaintiff's claims for common law fraud, negligent misrepresentation, unjust enrichment, breach of warranty, RICO, and civil conspiracy claims for failure to allege damages. The court noted that "[m]ere suspicion of a lost bargain . . . will not support an award of damages." *Id.* (citing *Briehl*, 172 F.3d at 628); *see also Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 171-74 (S.D. Miss. 1996) (holding that, under Mississippi law, purchasers of vehicles who have not suffered personal injury and have not been involved in an accident and seek only economic damages cannot recover under negligence or strict liability theories). |
| MO | **Manifestation of Defect Required** |
| | In *Spuhl v. Shiley, Inc.*, the court held that a product malfunction was required to state a claim for negligent failure to warn. 795 S.W.2d 573, 579-80 (Mo. Ct. App. 1990). This decision was based on the fact that, in Missouri, all strict liability claims require a product malfunction. *Id.* While this is not directly on point, it is consistent with how the federal court cases cited directly below interpreted Missouri law in the implied warranty context. |
| | In *re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997) ("Plaintiffs' claims for breach of the implied warranty of merchantability fail to state a claim upon which relief can be granted. Loss of resale value is not a proper basis for a breach of implied warranty claim . . . [t]he implied warranty of merchantability can only be breached 'when the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation.'"); *see also In re Bisphenol (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 910-13 (W.D. Mo. 2009) (recognizing *Briehl* as a potential defect case as opposed to where an individual purchases a BPA product and later finds out the product does have BPA). |
| | On appeal, *In re General Motors Corp.* was upheld in the seminal no manifestation case of *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999): "In this case, the Plaintiffs have not alleged that their ABS brakes have malfunctioned or failed. In fact, the Plaintiffs |

- 9 -

000122

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
|  | affirmatively state that their purported class excludes any claim for personal injury or property damage caused by brake failure. The Plaintiffs' ABS brakes have functioned satisfactorily and at no time have the brakes exhibited a defect. Under each of the theories the Plaintiffs invoke in the Original Complaint, damages constitutes an essential element of the cause of action. *Weaver*, 172 F.R.D. at 99-100 (claims for breach of warranty, fraud, and violation of state consumer protection statute dismissed for failure to plead damages); *Martin*, 914 F. Supp. at 1455 (same); *Carlson v. General Motors Corporation*, 883 F.2d 287, 296 (4th Cir. 1989), cert. denied, 495 U.S. 910, 109 L. Ed. 2d 299, 110 S. Ct. 1936 (1990) (claim for breach of implied warranty of merchantability dismissed for failure to plead damages). Where, as in this case, a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies. Since the Plaintiffs have failed to allege any manifest defect and their vehicles perform in a satisfactory manner, the District Court was correct when it dismissed the Plaintiffs' Original Complaint."

An Oklahoma court applying Missouri law recognized the requirement of manifestation of the defect, but the court viewed the pleadings so liberally so as to find allegations of actual manifestations that were not actually made. *See In re Gen. Motors Corp.*, No. MDL 04-16002005 WL 1924329, at *2 (W.D. Okla. Aug. 8, 2005) ("GM ignores the plaintiffs' allegations, liberally construed, that the 'defect had actually manifested itself in their vehicles,' ... It is true the amended complaint does not clearly and explicitly allege that the plaintiffs' engines suffered from excessive piston-to-bore clearance or that their engines were damaged, used excessive oil or had sustained any of the other specific consequences alleged to stem from the "piston slap" defect. However, under the liberal pleading standard of Fed.R.Civ.P. 8(a), the court broadly interprets the plaintiffs' complaint as making such allegations."). |
| MT | No Case Law on the Issue |
| NE | No Case Law on the Issue |
| NV | No Case Law on the Issue |
| NH | **Manifestation of Defect Required**

"Because the alleged unsafe condition has not manifested itself in terms of an actual malfunction in plaintiff's seat causing her injury or damage as a result, none of [plaintiff's] causes of action can arise." *Nichols v. Gen. Motors Corp.*, No. 99-C-566, 1999 WL 33292839, at *3 (N.H. Super. Ct. Dec. 13, 1999). "The requirement of a manifestation of the defective condition applies to causes of action for defective and unsafe products in Negligence, Strict Liability, Breach of Implied Warranty of Merchantability, Fraud, Negligent Misrepresentation and Concealment, and violation of the Consumer Protection Act." *Id.* (citing among others *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999); *Ford Motor Co. v. Rice*, 726 So. 2d 626 (Ala. 1998)). |
| NJ | **Manifestation of Defect Required for All But Express Warranty**

Statutory Issues |

- 10 -

000123

**Manifestation of Defect State Law Variations Chart**

| State | Case Law |
|---|---|
| | Under New Jersey Law, the New Jersey Product Liability Act subsumes in defect-centered breach of warranty (except express warranty), consumer fraud, and unjust enrichment claims. *Crouch v. Johnson & Johnson Consumer Co.*, No. 09-CV-2905, 2010 WL 1530152, at *6-*7 (D.N.J. Apr. 15, 2010). This Act does not allow for purely economic injury. *Id.* (dismissing claims because Plaintiffs only alleged purely economic harm). But in *In re Ford Motor Co. E-350 Van Products Liability Litigation*, the district court refused to dismiss an implied warranty claim where plaintiffs claimed benefit of the bargain damages, increased insurance costs, and a loss in the full use in the van's functionality. No. 03-4558, 2008 WL 4126264, at *15-*16 (D.N.J. Sept. 2, 2008) (refusing to dismiss plaintiffs claims, including an express warranty claim based on benefit-of-the-bargain damages). |
| | Nuanced Law on Benefit-of-the-Bargain Damages |
| | In *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 872 A.2d 783, 793 (2005), the court granted summary judgment in favor of defendant manufacturer because plaintiff had not tried to sell the vehicle or otherwise proof loss of value. However, the court specifically did not address whether benefit-of-the bargain damages are sufficient to satisfy "ascertainable loss" to support a consumer fraud claim. *Id.* at 795 n.8. |
| | In *Yost v. General Motors Corp.*, 651 F. Supp. 656 (D.N.J. 1986), the court dismissed on the pleadings a putative class action under New Jersey law for breach of warranty and fraud seeking lost value of allegedly defective vehicles because plaintiffs failed to allege that they suffered damages through resale or other evidence of devaluation. The court stated: "All he is able to allege is that the potential leak is 'likely' to cause damage and 'may' create potential safety hazards." *Id.* at 657. |
| | In *Walus v. Pfizer, Inc.*, the court dismissed plaintiffs' negligence, strict liability, failure to warn, fraud, misrepresentation, and negligent and intentional infliction of emotional distress claim against manufacturer of a prosthetic heart valve that was "working normally" but might fail in the future because "New Jersey courts have never allowed recovery based on a product that is and has been working normally." 812 F. Supp. 41, 42 (D.N.J. 1993). |
| | *Strzakowlski v. General Motors Corp.* distinguished *Yost* and held that, while plaintiff does not have damages for defects not yet manifested, it can get past the pleadings stage by alleging diminution of value. No. Civ.A. 04-4740, 2005 WL 2001912, at *8 (D.N.J. Aug. 16, 2005). Thus, the court refused to dismiss the class's warranty and consumer fraud claims because plaintiffs' sufficiently pled benefit-of-the-bargain damages. |
| NM | No Case Law on the Issue |
| NY | **Manifestation of Defect Required** |
| | In *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9 (App. Div. 2002), the court dismissed plaintiffs' negligence, strict liability, breach |

- 11 -

LEGAL02/32545407v1

000124

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
| | of implied warranty of merchantability, negligent concealment and misrepresentation, fraud, unfair or deceptive business practices, and civil conspiracy claims for failure to adequately allege damages. The court, after citing *Briehl*, summarized the holding as the following: "In sum, plaintiffs have not been involved in any accidents and have not suffered any personal injuries or property damage. Moreover, plaintiffs do not allege that any seat has failed, been retrofitted or repaired, nor have plaintiffs attempted to sell, or sold an automobile at a financial loss because of the alleged defect. We find, therefore, that the motion court properly dismissed the first through sixth causes of action as the result of plaintiffs' failure to plead any actual injury, and properly dismissed the seventh cause of action for civil conspiracy since no independent cause of action exists for such a claim." *Id.* at 17; *see also Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *3 (S.D.N.Y. May 22, 1996) ("Purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own."). <br><br> *Frank* is supported by federal court interpretations of New York law. *See Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99 (S.D.N.Y. 1997) (dismissing warranty claim based on defective integrated child safety seats brought under New York law where plaintiff had experienced no problem with the child seat in his vehicle and stating that "[i]t is well established that "purchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own."); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982) ("The majority of the tires sold to putative class members, by doing what they were supposed to do for as long as they were supposed to do it, clearly lived up to that 'minimum level of quality' which is all U.C.C. s 2-314(2)(c) requires. Thus no claim for breach of an implied warranty is maintainable in respect of such tires. Plaintiffs' bald assertion that a common defect which never manifests itself 'ipso facto caused economic loss' and breach of implied warranty is simply not the law."). |
| NC | **Manifestation of Defect Required for Breach of Implied Warranty of Merchantability** <br><br> In *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623-24 (M.D.N.C. 2006), the court held that the plaintiff failed to allege that his vehicle was not "merchantable" as is required to state a claim for breach of the implied warranty of merchantability because he had not alleged that the defect complained of had actually manifested. The court states that "Plaintiff makes no allegation that the allegedly defective ball joints caused him to suffer mechanical problems, lose control of his vehicle, or have an accident. Plaintiff does not allege that his Durango was ever rendered inoperable by the defective ball joints." *Id.* Accordingly, the court reduced the putative class of owners to those who experienced actual injury, such as the sale of the vehicle at a reduced price or replacements costs, because future possible economic loss could not constitute an injury under North Carolina law. |
| ND | **Manifestation of Defect Required** <br><br> In *Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556 (N.D. 2002) a car owner, as class representative, failed to state claims for negligence, fraud, deceit, or any cognizable tort against manufacturer, based on lack of park-brake interlock; owner alleged no injury by any class member, and expressly disclaimed an intention to recover for personal injury or property damage. The court held that |

- 12 -

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
| OH | plaintiffs' claims of injury was simply too speculative to constitute a legally cognizable tort injury.  In so holding, the Court stated that "[Plaintiff] has not alleged that his vehicle has actually manifested the alleged defect causing injury or damage. ... It is not a manifestation of a defect resulting in damage or injury."  *Id.* at 564-65.<br><br>**Manifestation of Defect Required**<br><br>*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, No. 1:02CV00013, 2005 U.S. Dist. LEXIS 45312, at *31-*34 (N.D. Ohio Feb. 22, 2005) (holding that for allegations in contract, express warranty, implied warranty, and tort, of steel peel failures there must be evidence of present injury, even if the product in question contains a latent defect that has manifested in other, identical products.)<br><br>In *Hoffer v. Cooper Wiring Devices, Inc.*, No. 1:06CV763, 2007 WL 1725317, at *5-6 (N.D. Ohio June 13, 2007), plaintiff's claims for negligence – defective design and failure to warn – were inadequate because plaintiff failed to allege a present injury and merely asserted possible future injuries due to receptacles which Plaintiff alleged could damage the wiring in homes.  The court stated, "Ohio courts have found that, 'where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs.'"  (citing *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio. St. 2d 376, 379, 433 N.E.2d 147 (1982)) *see also Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 807 (N.D. Ohio 2002) (in product liability case involving a strict liability claim regarding the diet drug dexfenfluramine hydrochloride, the court found that "Ohio law does not permit recovery for the 'mere possibility' that a plaintiff may develop a condition")<br><br>**Manifestation of Defect Required** |
| OK | *Harrison v. Leviton Mfg. Co.*, No. 05-CV-0491-CVE-FHM, 2006 WL 2990524, at *6 -*7 (N.D. Okla. Oct. 19, 2006) (holding that plaintiff's breach of warranty, strict liability, and negligence claims for allegedly defective receptacles were barred because is was not apparent that plaintiff suffered a manifestation of the alleged defect or that the push-in receptacles in his home were actually defective).<br><br>**Manifestation of Defect Required for Negligence Claim**<br><br>In an action by cigarette smoker against tobacco companies, smoker's allegation that her accumulated exposure to cigarette smoke required her to undergo periodic medical monitoring was insufficient to give rise to a negligence claim under Oregon law; smoker failed to allege any injury to her person or property. *Lowe v. Philip Morris USA, Inc.*, 344 Or. 403, 183 P.3d 181 (2008).  In this case, the court stated, "Oregon law has long recognized that the fact that a defendant's negligence poses a threat of future physical harm is not sufficient, standing alone, to constitute an actionable injury." 183 P. 3d at 184.  Thus, the court held that the plaintiff's cause of action did not accrue until the plaintiff suffered an "actual loss." *Id.* |
| OR | |
| PA | **Manifestation of Defect Required** |

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
| | *Zwiercan v. Gen. Motors Corp.*, No. 3235, 2002 WL 1472335 (Pa. Ct. Com. Pl. May 22, 2002). Granting GM's motion for summary judgment with regard to the Plaintiff's implied warranty of merchantability claims as to front seat design because there was no manifestation of defect. *Id.* at *4. The court said, "Pennsylvania is hardly alone in requiring a manifestation of a defect before a breach of warranty claim can be permitted. As such, the fact that no defect in the Plaintiff's Vehicle has manifested itself precludes the Plaintiff from proceeding on her breach of warranty claim." *Id.*<br><br>*Angus v. Shiley, Inc.*, 989 F.2d 142, 147-48 (3d Cir. 1993) (Pennsylvania law). The court affirmed the lower court's denial of plaintiff's motion to remand and granted the manufacturer's motion for summary judgment on grounds that the plaintiff could not recover under any products liability claims for alleged mental distress based on the risk that a heart valve could fracture because there was no allegation that the valve was defective nor any direct compensable physical injury. *Id.* |
| RI | No Case Law on the Issue |
| SC | **Manifestation of Defect Required**<br><br>*Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989). In this case, the plaintiffs alleged that GM products equipped with diesel engines were inherently defective and subject to frequent breakdowns. *Id.* The court held that under South Carolina law, there is no recovery for breach of implied warranties where a vehicle had never manifested the alleged defect. *Id.* The court stated, "The difficulty is that, so far as these plaintiffs are concerned, GM's diesel-equipped cars have served the traditionally recognized "purpose" for which automobiles are used. Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a 'safe condition' and 'substantially free of defects.' ... Thus, 'where a car can provide safe, reliable transportation[,] it is generally considered merchantable.'" *Id.* Thus, the court affirmed the trial court's dismissal of those plaintiffs who alleged damages attributable only to lost resale value. *Id.*<br><br>*Wilson v. Style Crest Prods., Inc.*, 367 S.C. 653, 627 S.E.2d 733, 735-37 (S.C. 2006). In *Wilson*, the plaintiffs alleged a breach of express warranty, breaches of the implied warranty of workmanlike service and merchantability, and fraudulent concealment on the grounds that they did not receive the benefit of the bargain when they purchased an allegedly defective anchor that did not adequately secure their mobile homes. *Id.* The plaintiffs conceded that they did not suffer any personal injuries or physical damage to their homes. *Id.* The South Carolina Supreme Court found that the plaintiffs had received the benefit of the bargain because their products functioned properly. *Id.* Thus, the court held that when a product never manifests a defect, it is merchantable, and therefore there can be no claim for breach of warranty. *Id.* Additionally, the court held that diminution in value alone is not enough to succeed on a common law fraud claim. *Id.* Thus, without an injury or a defect, there has been no diminution in value to support the plaintiffs' fraudulent concealment claim. *Id.* Therefore, the court affirmed the circuit court's grant of summary judgment for the defendant. *Id.* |
| SD | No Case Law on the Issue |

- 14 -

000127

# Manifestation of Defect State Law Variations Chart

| State | Case Law |
|---|---|
| TN | **Manifestation of Defect Not Likely Required** |
| | *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1099-1101 (S.D. Ind. 2001). In this case, the court held that manifestation of vehicle defect is not required under Tennessee or Michigan law for recovery under express and implied warranty theories. *Id.* This case, however, has never been cited by a Michigan or Tennessee court, although it has been cited by other jurisdictions. |
| TX | **Manifestation of Defect Required** |
| | *In re Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792, 805 (E.D. La. 1998) (dismissing warranty claim based on defective air bags brought under Texas law where plaintiffs never alleged that the air bags functioned improperly) |
| | *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 -321 (5th Cir. 2002). ("The confusion arises from the plaintiffs' attempt to recast their product liability claim in the language of contract law. The wrongs they allege-failure to warn and sale of a defective product-are products liability claims. *Id.* at 455 n.4. Yet, the damages they assert-benefit of the bargain, out of pocket expenditures-are contract law damages. The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury. Such artful pleading, however, is not enough to create an injury in fact."). |
| | *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 854-55 (Tex. App. 2005). The court held that plaintiffs' alleging economic loss damages from a product that had not yet manifested did not have standing to bring a claim for breach of the implied warranty of merchantability. *Id.* Specifically, the court held that "[t]o cause redressable injuries in the breach of the implied warranty of merchantability context, a 'defect' must either have manifested during the product's normal use or such manifestation must be inevitable when the defective feature of the product is used." *Id.* at 855. |
| | *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1455 (S.D. Tex. 1996). In this case, vehicle owners brought action against Ford for breach of implied and express warranty, fraud, negligent misrepresentation, and violation of state consumer protection law based on alleged inadequacy of in-vehicle warning that passengers use lap belt, which was manual component of two-point restraint system. *Id.* The court held that none of the plaintiffs' claims were viable absent showing of injury or causation. *Id.* The court stated, "Plaintiffs cannot succeed on any of their claims without demonstrating that they have in fact been injured. Plaintiffs, in response to Ford's Motion for Summary Judgment, have failed to produce any evidence of injury. They merely advance two arguments as to why summary judgment is, nonetheless, inappropriate." Thus, the court granted Ford's motion for summary judgment and dismissed all of the plaintiffs' claims with prejudice. *Id.* at 1457. |
| UT | **Manifestation of Defect Required** |

- 15 -

**Manifestation of Defect State Law Variations Chart**

| State | Case Law |
|---|---|
| | *Winzler v. Toyota Motor Sales USA, Inc.*, No. 1:10-cv-00003-TC, 2010 WL 3064364, at *3 (D. Utah Aug. 3, 2010). The court held that a vehicle owner could not maintain a products liability action against Toyota based on the allegation that the model she owned had an engine defect causing the car to stall unexpectedly. *Id.* Here, the vehicle owner asserted claims for defective design, defective manufacture, failure to warn, negligence, breach of implied warranty of merchantability, and breach of express warranty. *Id.* However, the vehicle owner did not claim that she suffered any problems with the engine in her car or sustained any damages as a result of the alleged defect. *Id.* Rather, she only faced the possibility that the engine in the car she had purchased might be defective because some similar vehicles had defective engines. *Id.* The court held that the vehicle owner's claims must fail because she has not sustained any damage, just an alleged threat of future harm. *Id.* Thus, because the vehicle owner had not alleged that her vehicle had manifested any defect, the court granted Toyota's motion to dismiss on all counts. *Id.* |
| VT | No Case Law on the Issue |
| VA | No Case Law on the Issue |
| WA | No Case Law on the Issue |
| WV | No Case Law on the Issue |
| WI | **Manifestation of Defect Required** |
| | *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, 677 N.W.2d 233, 240-41 (Wis. 2004). In this case, the plaintiffs sought damages for diminution in value of allegedly defective motorcycles. *Id.* The Wisconsin Supreme Court held that plaintiffs had not adequately pled damages for a fraud claim when they alleged that the motorcycles had a propensity to manifest a defect that diminished the value of the motorcycles. *Id.* Though the court only dismissed the plaintiffs' fraud claim, the court cited cases that dismissed warranty claims for the same reasons. *Id.* Therefore, the court dismissed the class action suit because potential diminution of value was too speculative to constitute an actual injury. *Id.* |
| WY | No Case Law on the Issue |

LEGAL02/32545407v1

# EXHIBIT E

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **ALABAMA** Deceptive Trade Practices Act Ala. Code § 8-19-1 et seq. | Private right of action. Ala. Code § 8-19-10. Ex Parte Exxon Corp., 725 So. 2d 930, 933 (Ala. 1998); Billions v. White & Stafford Furniture Co., 528 So. 2d 878, 880 (Ala. Civ. App. 1988). Class actions prohibited unless by attorney general. Ala. Code § 8-19-10(f); Ex Parte Exxon Corp., 725 So. 2d 930, 933 (Ala. 1998); So. 2d 930, 933 (Ala. 1998); Chomirova Am. Corp. v. Corker, 779 So. 2d 1175 (Ala. 2000). | 1 year from discovery, but no later than 4 years – unless the contract or warrant is for more than 3 years then no more than 1 year from the date of expiration or more than 1 year after discovery Ala. Code § 8-19-14. | "Monetary damage" required. Ala. code § 8-19-10(a)(1). Billions v. White & Stafford Furniture Co., 528 So. 2d 878, 880 (Ala. Civ. App. 1988). | Misconduct must cause "monetary damage." Ala. Code § 8-19-10(a). Billions v. White & Stafford Furniture Co., 528 So. 2d 878, 880 (Ala. Civ. App. 1988). Reliance not controlling inquiry. F.T.C. v. Tashman, 318 F.3d 1273, 1277 (11th Cir. 2003); McGregor v. Chierico, 206 F.3d 1378, 1388 (11th Cir. 2000). | "A representation is deceptive if it contains a material claim or omission that is reasonably likely to mislead consumers acting reasonably under the circumstances to their detriment. A representation or omission is material if it is of the kind usually relied upon by a reasonably prudent person." F.T.C. v. Accent Mktg., Inc., 2002 WL 31257708 (S.D. Ala. July 1, 2002) (internal citations omitted). | Defense to action if defendant "did not knowingly" commit violation of the act. Ala. Code § 8-19-13; Strickland v. Kafko Mfg., Inc., 512 So. 2d 714, 717 (Ala. 1987); Sam v. Beard, 685 So. 2d 742, 744 (Ala. Ct. App. 1996). | Greater of actual damages or $100; up to three times actual damages in discretion of court; no prejudgment interest unless recovery based in contract; punitive damages available; attorney's fees mandatory. Ala. Code § 8-19-10(a)(1), (2); Orbin Exterminating Co., Inc. v. Jeter, 835 So. 2d 25, 43 (Ala. 2001); Ala. Code § 8-8-10. | Prefiling demand required. Ala. Code § 8-19-10(e); Deerman v. Fed. Home Loan Mortg. Corp., 955 F. Supp. 1393 (N.D. Ala. 1997). Must waive any other cause of action arising out of transaction to bring action under the act. Ala. Code § 8-19-11(b). |
| **ALASKA** Unfair Trade Practices and Consumer Protection Act Alaska Stat. § 45.50.471 et seq. | Private right of action permitted. Alaska Stat. § 45.50.531(e); Alaska Stat. § 45.50.531(e). Class actions arguably allowed. Neesev. Lithia Chrysler Jeep of Anchorage, Inc., 210 P.3d 1213 (Alaska 2009); Weiner v. Continental Car & Truck, LLC, 237 P.3d 610 (Alaska 2010). | 2 years from discovery. Alaska Stat. § 45.50.531(f). | Actual deception not required, but "ascertainable loss of money or property" is required for a private right of action. Alaska Stat. §§ 45.50.471(b)(12), 45.50.531(a). Garrison v. Dixon, 19 P.3d 1229, 1235 n.22 (Alaska 2001). | Right of action requires "ascertainable loss" incurred "as a result of" violation. Alaska Stat. § 45.50.531(a). "Actual injury as a result of the deception is not required. All that is required is a showing that the acts and practices were capable of being interpreted that way." State v. O'Neill Investigations Inc., 609 P.2d 520, 535 (Alaska 1980) (internal citations omitted); Odom v. Fairbanks Mem'l Hosp., 999 P.2d 123, 131 (Alaska 2000). | Prohibits concealment of a "material" fact. Alaska Stat. § 45.50.471(b)(12). | "Intent to deceive need not be proved." State v. O'Neill Investigations Inc., 609 P.2d 520, 535 (Alaska 1980); Odom v. Fairbanks Mem'l Hosp., 999 P.2d 123, 132 (Alaska 2000). | Greater of three times actual damages or $500; prejudgment interest not exempted; discretionary punitive damages allowed; attorney's fees allowed; injunctive relief available. Alaska Stat. §§ 45.50.531(a), 45.50.535; Alaska Stat. § 09.30.070. Treble damages available for willful violations. State v. O'Neill Investigations Inc., 609 P.2d 520, 524 (Alaska 1980). | Written notice prior to action for injunction required. Alaska Stat. § 45.50.535. 50% of punitive damages goes to the State. Alaska Stat. § 45.50.531(i). |

LEGAL02/22545409v1

000130

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of action Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **ARIZONA** Consumer Fraud Act Ariz. Rev. Stat. Ann. § 44-1521 et seq. | **Private right of action and class actions permitted.** Selinger v. Freeway Mobile Home Sales, Inc., 521 P.2d 1119, 1122 (Ariz. 1974); Haisch v. Allstate Ins. Co., 5 P.3d 940, 944 (Ariz. Ct. App. 2000). | 1 year from discovery. Ariz. Rev. Stat. Ann. § 12-541(5). Murry v. W. Am. Mortg. Co., 604 P.2d 651, 654 (Ariz. Ct. App. 1979); Alaface v. Nat'l Inv. Co., 892 P.2d 1375, 1381 (Ariz. Ct. App. 1994). | **Actual damage or injury required.** Holeman v. Neils, 803 F. Supp. 237, 242 (D. Ariz. 1992); Nataros v. Fine Arts Gallery of Scottsdale, Inc., 612 P.2d 500, 504 (Ariz. Ct. App. 1980). | **Reliance required, but it need not be reasonable; proximate causation of injury also required.** Kuehn v. Stanley, 91 P.3d 346, 351 (Ariz. Ct. App. 2004); Holeman v. Neils, 803 F. Supp. 237, 242 (D. Ariz. 1992); Dunlap v. Jimmy GMC of Tucson, Inc., 666 P.2d 83, 87 (Ariz. Ct. App. 1983); Peery v. Hansen, 585 P.2d 574, 578 (Ariz. Ct. App. 1978); Winkler v. DTE, Inc., 205 F.R.D. 235, 242 (D. Ariz. 2001). | **Prohibits use or employment of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation or concealment of a "material" fact..** Ariz. Rev. Stat. Ann. § 44-1522(A). | **Wrongful concealment must be with "intent that others rely."** Ariz. Rev. Stat. Ann. § 44-1522(A). **Specific intent not required; intent to do the act is sufficient.** Flagstaff Med. Ctr., Inc. v. Sullivan, 773 F. Supp. 1325, 1361-62 (D. Ariz. 1991), aff'd in part, rev'd in part by 962 F.2d 879 (9th Cir. 1992); State v. Goodyear Tire & Rubber Co., 626 P.2d 1115, 1118 (Ariz. Ct. App. 1981); Cearley v. Wieser, 727 P.2d 346, 348 (Ariz. Ct. App. 1986); Alaface v. Nat'l Inv. Co., 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994). | **Permits compensatory damages.** Holeman v. Neils, 803 F. Supp. 237, 242 (D. Ariz. 1992); Nataros v. Fine Arts Gallery of Scottsdale, Inc., 612 P.2d 500, 504 (Ariz. Ct. App. 1980). **No statutory damages in private action.** Peery v. Hansen, 585 P.2d 574, 578 (Ariz. Ct. App. 1978). **Punitive damages if violation is wanton, reckless, or involves "spite or ill will."** Holeman v. Neils, 803 F. Supp. 237, 242-43 (D. Ariz. 1992); Howell v. Midway Holdings, Inc., 362 F. Supp. 2d 1158, 1165 (D. Ariz. 2005); Linthicum v. Nationwide Life Ins. Co., 723 P.2d 675, 680 (Ariz. 1986). **Attorney's fees if fraud claim "arises out of contract" and in discretion of court.** Ariz. Rev. Stat. Ann. § 12-341.01(A) (2011); Bennett v. Appleton Horse Club, 35 P.3d 426, 432 (Ariz. Ct. App. 2001). | None found. |

-2-

000131

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| ARKANSAS  Deceptive Trade Practices Act  Ark. Code Ann. §§ 4-88-101 et seq., 4-88-201 et. seq. | Private right of action for "any person" actually injured.  Ark. Code Ann. § 4-88-113(f).  Class actions permitted.  Lenders Title Co. v. Chandler, 186 S.W.3d 695 (Ark. 2004).  Private right of action for "enhanced penalties" only for "elder" and "disabled" persons.  Ark. Code Ann. § 4-88-204. | 5 years from violation.  Ark. Code Ann. § 4-88-115. | "Actual damage or injury" required.  Ark. Code Ann. § 4-88-113(f).  Ark. Code Ann. § 4-88-204. | Right of action requires "actual damage or injury" incurred "as a result of" a violation of the act.  Ark. Code Ann. § 4-88-113(f). | Prohibits "act, use, or employment by any person of any deception, fraud, or false pretense" or concealment of a "material" fact.  Ark. Code Ann. § 4-88-108(2). | Prohibits "knowingly" making false representations of "benefits" of product.  Ark. Code Ann. § 4-88-107(a)(1).  Prohibits "act, use, or employment by any person of any deception, fraud, or false pretense" or concealment with "intent that others reply."  Ark. Code Ann. § 4-88-108(2). | Allows only compensatory damages and reasonable attorney's fees.  Ark. Code Ann. § 4-88-113(f).  Allows punitive damages for elderly and disabled persons.  Ark. Code Ann. § 4-88-204. | None found. |

- 3 -

LEGAL02\32545409v1

000132

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA**<br><br>*Consumers Legal Remedies Act*<br><br>Cal. Civ. Code § 1750 *et seq.* | Private right of action and class action permitted.<br><br>Cal. Civ. Code §§ 1780, 1781.<br><br>Private right of action *limited* to consumers who purchased product for "personal, family or household purposes."<br><br>Cal. Civ. Code § 1761(d). | 3 years from date of improper practice.<br><br>Cal. Civ. Code § 1783. | "Any damage" required.<br><br>Cal. Civ. Code § 1780(a). | Causation required as damages must be "as result of" the unlawful practice.<br><br>Cal. Civ. Code § 1780(a).<br><br>Reliance required where claim is based on fraudulent conduct.<br><br>*Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798 (2008).<br><br>Only permits a classwide inference of causation and reliance where a single, material misrepresentation was directly made to *each* class member.<br><br>*Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616 (S.D. Cal. 2007); *Caro v. Proctor & Gamble Co.*, 18 Cal. App. 4th 644, 668-69 (1993). | Materiality required.<br><br>*Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 667 (1993).<br><br>Duty to disclose required for omission based claim.<br><br>*Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006); *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1276 (2006). | No scienter requirement.<br><br>Cal. Civ. Code § 1770(a).<br><br>Violation must be intentional for damages.<br><br>Cal. Civ. Code § 1784. | Greater of actual damages or $1,000 in a class action; injunctive relief permitted; prejudgment interest allowed; punitive damages allowed.<br><br>Cal. Civ. Code § 1780(a).<br><br>Attorney's fees available.<br><br>Cal. Civ. Code § 1780(e). | Requires presuit notice and opportunity to cure.<br><br>Cal. Civ. Code § 1782. |

- 4 -

LEGAL02/32545409v1

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **CALIFORNIA** *Unfair Competition Law* Cal. Bus. & Prof. Code § 17200 *et seq.* | Private right of action permitted for those injured as a result of defendant's conduct. Class certification required for private claims. Cal. Bus. & Prof. Code §§ 17203, 17204. *Arias v. Super. Ct.*, 46 Cal. 4th 969, 975 (2009); *Californians for Disability Rights v. Mervyn's, LLC.*, 39 Cal. 4th 223, 227, 233 n.4 (2006). | 4 years from accrual of action. Cal. Bus. & Prof. Code § 17208. 3 years for false advertising claims. Cal. Bus. & Prof. Code § 17500 (False Advertising Act); Cal. Civ. Proc. Code §§ 338(a)(b). | Actual injury required. Cal. Bus. & Prof. Code §§ 17203 & 17204. | Plaintiffs must establish causation and actual reliance in accordance with principles of ordinary fraud actions. *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (holding that private plaintiffs must demonstrate "actual reliance ... in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions"). Only permits a classwide inference of causation where single, material misrepresentation was directly made to *each* class member. For a fraud prong claim under the UCL based on an alleged misrepresentation in a long-term advertising campaign, the misrepresentation must have been material. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (2009); *Vasquez v. Superior Court*, 4 Cal. 3d 800, 814 (1971); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 624-26 (S.D. Cal. 2007); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668-69 (1993). | Materiality required. *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 667 (1993). Duty to disclose required for omission based claim. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544 (2007); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 839 (2006). | Plaintiff must establish actual reliance to proceed under the UCL. No scienter requirement for UCL action (although intent is required for Cal. Bus. & Prof. Code § 17500 action; effect on consumer is judged under reasonable person standard). *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009); *State Farm Fire & Cas. Co. v. Super. Ct.*, 45 Cal. App. 4th 1093, 1105 (1996), *abrogated in part by Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163 (1999). Compare Cal. Bus. & Prof. Code § 17500 ("It is unlawful for any person ... with intent directly or indirectly to dispose of real or personal property or to perform services ... or to induce the public in this state to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state ... in any advertising device ... or in any other manner or means whatever ... any statement, concerning that real or personal property or those services ... which is untrue or misleading, *and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading ...*"). | Damages not permitted, only equitable relief, including restitution. No attorney's fees, unless available through contract or other statute. Cal. Bus. & Prof. Code § 17203; *Korea Supply v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003). | Allows claim to be based on "unfair" conduct, but California courts have not reached a consensus on the standard of "unfairness" to be used in consumer actions. See generally, *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1265-74 (2006) (applying seven definitions of "unfairness" to affirm dismissal of UCL claim and "urging" Legislature and Supreme Court to clarify correct formulation governing consumer cases). |

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **COLORADO** Consumer Protection Act Colo. Rev. Stat. Ann. § 6-1-101 et seq. | Private right of action and class action permitted. Colo. Rev. Stat. Ann. § 6-1-113; Coors v. Sec. Life of Denver Ins. Co., 112 P.3d 59, 63-64 (Colo. 2005); Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 146-47 (Colo. 2003). | 3 years from longer of violation or discovery, plus 1 year if defendant caused delay. Colo. Rev. Stat. Ann. § 6-1-115; Robinson v. Lynmar Racquet Club, Inc., 851 P.2d 274, 281 (Colo. Ct. App. 1993). | Requires "injury in fact." Hall v. Walter, 969 P.2d 224, 235 (Colo. 1998). Colo. Rev. Stat. Ann. § 6-1-113(1)(a). | "False representation must either induce a party to act, refrain from acting, or have the capacity or tendency to attract consumers." Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 147-48 (Colo. 2003). Requires "that the challenged practice caused the plaintiff's injury." Hall v. Walter, 969 P.2d 224, 235 (Colo. 1998). Colo. Rev. Stat. Ann. § 6-1-113(1)(a). | Prohibits concealment of "material information concerning goods" if such failure to disclose "was intended to induce the consumer to enter into a transaction." Colo. Rev. Stat. Ann. § 6-1-105(u). | Certain violations, including falsely representing "benefits" of a product, must be made "[k]nowingly." Colo. Rev. Stat. Ann. § 6-1-105(l)(e), (g), (u). | In a class action, only actual damages are permitted. Colo. Rev. Stat. Ann. § 6-1-113(2)(e). In an individual action, there is a statutory minimum of $500; prejudgment interest allowed; punitive damages allowed up to three times actual damages. Colo. Rev. Stat. Ann. § 6-1-113(1)(a); Lexton-Ancira Real Estate Fund, 1972 v. Heller, 826 P.2d 819 (Colo. 1992). Reasonable attorney's fees allowed. Colo. Rev. Stat. Ann. § 6-1-113(2), (3). | Plaintiffs must demonstrate alleged deceptive practice "significantly impacts the public as actual or potential consumers." Hall v. Walter, 969 P.2d 224, 235 (Colo. 1998). If claims are "groundless" or otherwise improper, plaintiff is liable for defendant's fees and costs. Colo. Rev. Stat. Ann. § 6-1-113(3). |
| **CONNECTICUT** Unfair Trade Practices Act Conn. Gen. Stat. Ann. § 42-110a et seq. | Private right of action, but class permitted only on behalf of Connecticut Residents or individuals injured in Connecticut. Conn. Gen. Stat. Ann. § 42-110g(b). | 3 years "after the occurrence of a violation." Conn. Gen. Stat. Ann. § 42-110g(f). | Requires "ascertainable loss of money" for private right of action. Conn. Gen. Stat. Ann. § 42-110g(a). | Reliance not required. Izzarelli v. R.J. Reynolds Tobacco Co., 117 F. Supp. 2d 167, 176 (D. Conn. 2000); Solomon v. WMV Assocs., Inc., 1994 WL 597390, at *6 (Conn. Super. Ct. Oct. 20, 1994). | Materiality apparently not required because misrepresentation need not be part of the basis of the bargain. Izzarelli v. R.J. Reynolds Tobacco Co., 117 F. Supp. 2d 167, 176 (D. Conn. 2000). | Not required. Calandro v. Allstate Ins. Co., 778 A.2d 212, 221 (Conn. App. Ct. 2001); Menta v. Kmart, 727 A.2d 1207, 1214 (Conn. App. Ct. 2000); Cheshire Mortg. Serv., Inc. v. Montes, 612 A.2d 1130, 1144 (Conn. 1992). | Permits actual and injunctive relief; punitive damages and attorney's fees within discretion of court. Conn. Gen. Stat. Ann. § 42-110g(a), (d). Punitive damages dependent on proof of "reckless indifference to the rights of others or an intentional or wanton violation of those rights." Gargano. v. Heyman, 525 A.2d 1343, 1347 (1987). | No jury trial right. Assoc. Invest. Co., v. Williams Assocs., 645 A.2d 505 (Conn. 1994). |

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **DELAWARE** Consumer Fraud Act Del. Code Ann. tit. 6, § 2511 et seq. | Private right of action and class action permitted to "any victim of a 'violation' of Subchapter II. Del. Code Ann. tit. 6, § 2525; *Young v. Joyce*, 351 A.2d 857 (Del. 1975); *Spark v. MBNA Corp.*, 157 F. Supp. 2d 330 (D. Del. 2001), *aff'd*, 48 Fed. App'x 385 (3d Cir. 2002). | 3 years from discovery. Del. Code Ann. tit. 10, § 8106 (any action for damages); *Pender v. DaimlerChrysler Corp.*, 2004 WL 2191030 (Del. Super. Ct. July 30, 2004); *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 650 (Del. Super. Ct. 1985). | Neither deception nor injury are required elements under the act. Del. Code Ann. tit. 6, § 2513(a). However, monetary recovery is based on damages. *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983). | Reliance not required. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *S. & R. Assocs. v. Shell Oil Co.*, 725 A.2d 431, 440 (Del. Super. Ct. 1998); *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 657 (Del. Super. Ct. 1985). | Prohibits concealment of a "material" fact. Del. Code Ann. tit. 6, § 2513(a); *Brandywine Volkswagen, Ltd. v. State*, 312 A.2d 632, 634 (Del. 1973). | Neither intent to make a deceptive or untrue statement nor intent to induce reliance required, but concealment claims require "intent that others rely" on concealment. Del. Code Ann. tit. 6, § 2513(a); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *Brandywine Volkswagen, Ltd. v. State*, 312 A.2d 632, 634 (Del. 1973); *Pack & Process, Inc. v. Celotex Corp.*, 503 A.2d 646, 657 (Del. Super. Ct. 1985). | Actual damages allowed; punitive damages allowed only in cases where compensatory damages are available and where the fraud was gross, oppressive, and aggravated or involves a breach of a trust or confidence. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983). Del. Code Ann. tit. 6, § 2583. Injunctive relief permitted. Del. Code Ann. tit. 6, § 2523. | None found. |

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **DISTRICT OF COLUMBIA**<br><br>*Consumer Protection Procedures Act*<br><br>D.C. Code § 28-3901 *et seq.* | Private right of action and class actions allowed.<br><br>D.C. Code Ann. § 28-3905(k)(1). | 3 years.<br><br>D.C. Code Ann. § 12-301(8). | No actual deception or damage required. (A merchant may violate the act "whether or not any consumer is in fact misled, deceived or damaged thereby.")<br><br>D.C. Code Ann. § 28-3904.<br><br>The district courts have standing requirements identical to those in Article III, requiring plaintiffs to suffer actual injury.<br><br>*Friends of Tilden Park, Inc. v. Dist. of Columbia*, 806 A.2d 1201, 1206-07 (D.C. 2002). | A merchant may violate the act "whether or not any consumer is in fact misled, deceived or damaged thereby."<br><br>D.C. Code Ann. § 28-3904. | Misrepresentation must be material and have tendency to mislead.<br><br>D.C. Code Ann. § 28-3904(e). | Undecided. | Once a consumer shows damages, the consumer may receive treble damages or $1,500 per violation, whichever is greater: attorney's fees; punitive damages in cases of outrageous or egregious wrongdoing proven "by clear and convincing evidence"; and an injunction.<br><br>D.C. Code Ann. § 28-3905(k)(1).<br><br>*District Cablevision Ltd. P'ship v. Bassin*, 828 A.2d 714, 725-26, 728 (D.C. 2003). | None found. |

- 8 -

000137

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **FLORIDA**<br><br>*Deceptive and Unfair Trade Practices Act*<br><br>Fla. Stat. Ann. § 501.201 *et seq.* | Private right of action for anyone "aggrieved by a violation of [the act]" or anyone "who has suffered a loss as a result of a violation of [the act]" and class actions permitted.<br><br>Fla. Stat. Ann. § 501.211.<br><br>*Barnhill v. Fla. Microsoft Anti-Trust Litig.*, 905 So. 2d 195 (Fla. Ct. App. 2005); *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003); *Martinez v. Rick Case Cars, Inc.*, 278 F. Supp. 2d 1371, 1373 (S.D. Fla. 2003). | 4 years.<br><br>Fla. Stat. Ann. § 95.11(3)(f). | Right of action granted "[w]ithout regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation."<br><br>Fla. Stat. Ann. § 501.211.<br><br>But, to recover damages, must show a "loss as a result" of violation.<br><br>Fla. Stat. Ann. § 501.211(2). | Reliance and causation not required.<br><br>*Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-74 (Fla. Ct. App. 2000); *Latman v. Costa Cruise Lines N.V.*, 758 So. 2d 699, 703 (Fla. Dist. Ct. App. 2000). | Not required.<br><br>*Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-74 (Fla. Ct. App. 2000). | Not required; must show that only conduct is "likely to mislead" reasonable consumers.<br><br>*Davis v. Powertel, Inc.*, 776 So. 2d 971, 973-74 (Fla. Ct. App. 2000); *W.S. Badcock Corp. v. Myers*, 696 So. 2d 776, 779 (Fla. Dist. Ct. App. 1996). | Actual damages plus attorney's fees and costs; equitable relief available.<br><br>Fla. Stat. Ann. § 501.211<br><br>Any party who is proved to have brought a frivolous, legally or factually meritless claim or claim for the purpose of harassment may be required "to post a bond in the amount which the court finds reasonable to indemnify the defendant for any damages incurred, including reasonable attorney's fees."<br><br>Fla. Stat. Ann. § 501-211(3). | None found. |

- 9 -

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **GEORGIA**<br><br>*Uniform Deceptive Trade Practices Act ("UDTPA")*<br><br>Ga. Code Ann. § 10-1-370 *et seq.*<br><br>*Fair Business Practices Act ("FBPA")*<br><br>Ga. Code Ann. § 10-1-399. | Private right of action for injunctive relief only under UDTPA.<br><br>Ga. Code Ann. § 10-1-373.<br><br>Private right of action, but no class action under FBPA.<br><br>Ga. Code Ann. § 10-1-399. | 4 years from discovery under UDTPA.<br><br>Ga. Code Ann. § 9-3-31.<br><br>*Kason Indus., Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199 (11th Cir. 1997).<br><br>2 years from discovery under FBPA.<br><br>Ga. Code Ann. § 10-1-401(a). | Must establish "likely to be damaged."<br><br>Ga. Code Ann. § 10-1-373; *Kason Indus., Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199 (11th Cir. 1997).<br><br>FBPA requires "injury or damages."<br><br>Ga. Code Ann. § 10-1-399; *Regency Nissan, Inc. v. Taylor,* 391 S.E.2d 467, 470 (Ga. Ct. App. 1990). | Reliance not required under UDTPA.<br><br>Ga. Code Ann. § 10-1-372(b).<br><br>Reliance and causation required under FBPA.<br><br>Ga. Code Ann. § 10-1-399(a); *Baranco, Inc. v. Bradshaw,* 456 S.E.2d 592, 594 (Ga. Ct. App. 1995); *Zeeman v. Black,* 273 S.E.2d 910, 916 (Ga. Ct. App. 1980); *Regency Nissan, Inc. v. Taylor,* 391 S.E.2d 467, 470 (Ga. Ct. App. 1990). | **Material omissions required.**<br><br>*Regency Nissan, Inc. v. Taylor,* 391 S.E.2d 467, 470 (Ga. Ct. App. 1990) (FBPA).<br><br>Misrepresentation must cause a likelihood of confusion, but need not cause actual confusion.<br><br>*Looney v. M-Squared, Inc.,* 586 S.E.2d 44, 50-51 (Ga. Ct. App. 2003) (UDTPA). | Intent to deceive not required under UDTPA.<br><br>Ga. Code Ann. § 10-1-373.<br><br>Neither knowledge of deception nor intent to deceive required under FBPA.<br><br>*Regency Nissan, Inc. v. Taylor,* 391 S.E.2d 467, 470 (Ga. Ct. App. 1990); *Henderson v. Gandy,* 608 S.E.2d 248, 252 (Ga. Ct. App. 2004). | No civil damages under UDTPA, including statutory damages; only injunctive relief available; attorney's fees also permitted.<br><br>Ga. Code Ann. § 10-1-373(a)(c); *Catrett v. Landmark Dodge, Inc.,* 560 S.E.2d 101 (Ga. Ct. App. 2002); *Moore-Davis Motors, Inc. v. Joyner,* 556 S.E.2d 137, 140 (2001).<br><br>FBPA permits recovery of actual damages, injunctive relief, and punitive damages if specific intent shown; no statutory damages or prejudgment interest.<br><br>Ga. Code Ann. § 10-1-399(a), (c); *Conseco Fin. Serv. Corp. v. Hill,* 556 S.E.2d 468, 473 (Ga. Ct. App. 2001).<br><br>Treble damages if an intentional violation is found.<br><br>*Conseco Fin. Serv. Corp. v. Hill,* 556 S.E.2d 468, 473 (Ga. Ct. App. 2001). | FBPA requires presuit demand letter.<br><br>Ga. Code Ann. § 10-1-399(b).<br><br>FBPA requires "administrator" to be served with complaint and provided an opportunity to be heard in case.<br><br>Ga. Code Ann. § 10-1-399(g).<br><br>FBPA limits "consumer[s]" to "natural person[s]" to those "consumer transactions" to those involving goods for "personal, family, or household" purposes.<br><br>Ga. Code Ann. § 10-1-392(a)(6), (10). |

- 10 -

000139

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **HAWAII** Unfair Practices Act Haw. Rev. Stat. § 480-1 et seq. | Private right of action and class action permitted. Haw. Rev. Stat. § 480-13. Leibert v. Fin. Factors, Ltd., 788 P.2d 833, 837-38 (Haw. 1990); Beerman v. Toro Mfg. Corp., 615 P.2d 749, 754 (Haw. Ct. App. 1980). Private right of action limited to "consumers" defined as a "natural person." Haw. Rev. Stat. §§ 480-1, 480-13. Hunt v. First Ins. Co. of Haw., 922 P.2d 976, 985-86 (Haw. Ct. App. 1996). | 4 years from discovery. Haw. Rev. Stat. § 480-24. Leibert v. Fin. Factors, Ltd., 788 P.2d 833, 837-38 (Haw. 1990). | Suit for damages requires "private damage." Sambor v. Omnia Credit Servs., Inc., 183 F. Supp. 2d 1234, 1244 (D. Haw. 2002); Davis v. Wholesale Motors, 949 P.2d 1026, 1038 (Haw. Ct. App. 1997) (elements for recovery under § 480-13(b)(1) are: (1) a violation of § 480-2; (2) injury to the consumer caused by such a violation; and (3) proof of the amount of damages). Haw. Rev. Stat. § 480-13. "Monetary damage" not required to obtain injunctive relief. Haw. Rev. Stat. § 481A-4. "Actual confusion or misunderstanding" not required. Haw. Rev. Stat § 481A-3(b). | In a suit for damages, violation must "cause" actual damage. Haw. Rev. Stat. § 480-13; Sambor v. Omnia Credit Servs., Inc., 183 F. Supp. 2d 1234, 1244 (D. Haw. 2002). | Material omissions required. Haw. Rev. Stat. § 480-2(b); Beerman v. Toro Mfg. Corp., 615 P.2d 749, 754 (Haw. Ct. App. 1980). | Intent not required for damages. Haw. Rev. Stat. § 480-2; Davis v. Wholesale Motors, 949 P.2d 1026 (Haw. Ct. App. 1997). No intent required for injunctive relief. Haw. Rev. Stat. § 481A-4. | A sum not less than $1,000 or three times actual damages, whichever is greater, unless plaintiff is an "elder" in which case it is the greater of $5,000 or three times damages; injunctive relief available; attorney's fees mandatory. Haw. Rev. Stat. § 480-13; Eastern Star, Inc. v. Union Bldg. Materials Corp., 712 P.2d 1148, 1151 (Haw. 1985); Cieri v. Leticia Query Realty, Inc., 905 P.2d 29 (Haw. 1995); Liebert v. Finance Factors, Ltd., 788 P.2d 833 (Haw. 1990). In class actions, only compensatory damages are awarded; $1,000 minimum does not apply. Haw. Rev. Stat. § 480-13(c)(1). | None found. |

000140

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **IDAHO**<br>Consumer Protection Act<br>Idaho Code § 48-601 et seq. | Private right of action and class action permitted.<br>Idaho Code § 48-608. | 2 years from discovery.<br>Idaho Code § 48-619. | Requires "ascertainable loss" for private right of action.<br>Idaho Code § 48-608;<br>In re Wiggins, 273 B.R. 839, 856-857 (Bankr. D. Idaho 2001); Yellowpine Water Users' Ass'n v. Imel, 670 P.2d 54, 56-57 (Idaho 1983); Jackson v. Wood, 859 P.2d 378, 380 (Idaho Ct. App. 1993). | Ascertainable loss incurred "as a result" of violation.<br>Idaho Code § 48-608.<br>Jackson v. Wood, 859 P.2d 378, 380 (Idaho Ct. App. 1993).<br>"Actual deception" not required; "tendency to deceive" is enough.<br>State ex rel. Kidwell v. Master Distribs., Inc., 615 P.2d 116, 122-23 (Idaho 1980). | Material omissions required.<br>State ex rel. Kidwell v. Master Distribs., Inc., 615 P.2d 116, 122-23 (Idaho 1980). | Knowledge of falsity required for affirmative representations.<br>Idaho Code § 48-603; State ex rel. Kidwell v. Master Distribs., Inc., 615 P.2d 116, 122-23 (Idaho 1980). | In individual action, greater of actual damages or $1,000 and punitive damages if "repeated" or "flagrant"; prejudgment interest and injunctive relief available.<br>Idaho Code § 48-608(1); In re Wiggins, 273 B.R. 839, 881-82 (Bankr. D. Idaho 2001); Mac Tools, Inc. v. Griffin, 126 Idaho 193, 196-98 (1994).<br>**Statutory minimum** damages of $1,000 must be entered if elements of statute are established.<br>Fenn v. Noah, 133 P.3d 1240, 1244-45 (Idaho 2006); White v. Mock, 104 P.3d 356, 364 (Idaho 2004).<br>Mandatory attorney's fees to prevailing plaintiff.<br>Idaho Code § 48-608(5).<br>**Class action damages** limited to "actual damages" or "a total for the class that may not exceed one thousand dollars ($1,000), whichever is the greater."<br>Idaho Code § 48-608(1).<br>Attorney's fees available.<br>Idaho Code § 48-608(5); Nalen v. Jenkins, 741 P.2d 366 (Idaho 1987); Israel v. Leachman, 72 P.3d 864 (Idaho 2003). | An action brought by an elderly or disabled person shall also recover from the offending party an enhanced penalty of fifteen thousand dollars ($15,000) or treble the actual damages, whichever is greater.<br>Idaho Code § 48-608(2). |

- 12 -

LEGAL02/32543809v1

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **ILLINOIS**<br><br>*Consumer Fraud and Deceptive Business Practice Act*<br><br>815 Ill. Comp. Stat. 505/1 *et seq.* | Private right of action and class action permitted. 815 Ill. Comp. Stat. 505/10a; *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 849-50 (Ill. 2005); *Suburban 1, Inc., v. GEI Mort., LLC*, 833 N.E.2d 18 (Ill Ct. App. 2005). | 3 years from discovery. 815 Ill. Comp. Stat. 505/10a(e).<br><br>*Walsh v. Barry-Harlow Corp.*, 649 N.E.2d 614, 616 (Ill. Ct. App. 1995); *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (quoting *Knox Coll. v. Celotex Corp.*, 88 Ill.2d 407, 415, 430 N.E.2d 976, 980 (1981)). | Actual deception and actual injury required. 815 Ill. Comp. Stat. 505/10a.<br><br>*Oliviera v. Amoco Oil Co.*, 201 Ill.2d 134, 155, 776 N.E.2d 151, 164 (2002); *Seigel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992).<br><br>*Progressive Corp.*, 348 Ill. App. 3d 575, 581, 809 N.E.2d 225, 231 (1st Dist. 2004); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 199, 835 N.E.2d 801, 860-61 (2005), *cert. denied*, 547 U.S. 1003 (2006). | Proximate causation required.<br><br>The deception must occur in the course of conduct involving trade and commerce and proximately cause the damage.<br><br>*Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 581, 809 N.W.2d 225, 231 (1st Dist. 2004); *Xydakis v. Target*, 333 F. Supp. 2d 686 (N.D. Ill. 2004). | Misrepresentations must be material.<br><br>815 Ill. Comp. Stat. 505/2; *Ryan v. Wersi Elec. GmbH & Co.*, 59 F.3d 52, 53-54 (7th Cir. 1995). | Intent to deceive is not required, but intent that consumer rely on the information is required.<br><br>*Griffin v. Universal Cas. Co.*, 274 Ill. App. 3d 1056, 1065, 654 N.E.2d 694, 700-01 (1st Dist. 1995); *Bunting v. Progressive Corp.*, 348 Ill. N.E.2d 225, 231 (1st Dist. 2004); *Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1335 (Ill. Ct. App. 1995); *Hoke v. Beck*, 587 N.E.2d 4, 8 (Ill. Ct. App. 1992). | Statutory and compensatory damages permitted.<br><br>815 Ill. Comp. Stat. 505/2S, 10a.<br><br>Statute does allow punitive damages under "other relief" provision. Grounds for that relief must be alleged fraud, malice, or gross negligence indicating wanton disregard for the rights of others.<br><br>815 Ill. Comp. Stat. 505/2AA; *Guess v. Brophy*, 164 Ill. App. 3d 75, 81, 517 N.E.2d 693, 697 (4th Dist. 1987).<br><br>Injunctive relief permitted.<br><br>815 Ill. Comp. Stat. 505/7.<br><br>Attorney's fees permitted.<br><br>815 Ill. Comp. Stat. 505/2S, 2w, 2AA, 10a. | Jury trial right does not exist.<br><br>*Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 753 (1994). |

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **INDIANA** Deceptive Consumer Sales Act Ind. Code Ann. § 24-5-0.5-1 et seq. | Private right of action and class action permitted. Ind. Code Ann. § 24-5-0.5-4; McKinney v. State, 693 N.E.2d 65 (Ind. 1998). | 2 years from occurrence of act. Ind. Code Ann. § 24-5-0.5(b). | "Actual damages" required. Ind. Code Ann. § 24-5-0.5-4(a). | Reliance and proximate causation required. Ind. Code Ann. § 24-5-0.5-4(a); Captain & Co. v. Stenberg, 505 N.E.2d 88, 98-99 (Ind. Ct. App. 1987). | Prohibits material omissions. Ind. Code Ann. § 24-5-0.5-3(a); Borghausen v. Microsoft Corp., 765 N.E.2d 592, 598 (Ind. Ct. App. 2002). | "Incurable" deceptive practices require "knowing violation" and "intent to mislead"; most "uncured" deceptive practices require defendant had "known[] or should reasonably have known." McKinney v. State, 693 N.E.2d 65, 68-69 (Ind. 1998). | Before 2005 amendment, recovery limited to "damages actually suffered." After 2005 amendment, damages "actually suffered" or $500, whichever is greater. Allows attorney's fees. Allows damages for a willful deceptive act of three times actual damages or $1,000, whichever is greater. Injunctive relief and discretionary attorney's fees available. Ind. Code Ann. § 24-5-0.5-4; P.L. 165-2005; Missi v. CCC Custom Kitchens, Inc., 731 N.E.2d 1037, 1041 (Ind. Ct. App. 2000). Prejudgment interest recoverable. Clark's Pork Farms v. Sand Livestock Sys., Inc., 563 N.E.2d 1292, 1301 (Ind. Ct. App. 1990). | Requires notice to defendant unless deceptive act is "incurable." Ind. Code Ann. § 24-5-0.5-5. Money recovered in a class action that cannot be returned to consumers within one year reverts back to defendant. Ind. Code Ann. § 24-5-0.5-4(b). |
| **IOWA** Consumer Fraud Act Iowa Code § 714.16. | No private right of action; attorney general only. Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 227-28 (Iowa 1998). | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **KANSAS**<br>*Consumer Protection Act*<br>Kan. Stat. Ann. § 50-623, *et seq.* | Private right of action and class action allowed.<br>Kan. Stat. Ann. § 50-634.<br>Class actions only allowed for certain claims.<br>Kan. Stat. Ann. § 50-634(b). | 3 years from date of violation.<br>Kan. Stat. Ann. § 60-512(2); *Alexander v. Certified Master Builders Corp.*, 1 P.3d 899, 905-08 (Kan. 2000); *Haag v. Dry Basement, Inc.*, 732 P.2d 392 (Kan Ct. App. 1987). | Only "aggrieved" consumer may file an individual private cause of action and receive damages; only one who suffers loss or injury, may recover damages in a class action.<br>Kan. Stat. Ann. § 50-634(b),(d); *Finstad v. Washburn Univ. of Topeka*, 845 P.2d 685, 691 (Kan. 1993); *Lowe v. Surpas Res. Corp.*, 253 F. Supp.2d 1209, 1229 n.16 (D. Kan. 2003). | "Causal connection" required.<br>Kan. Stat. Ann. §§ 50-626, 50-634(b), (d); *Finstad v. Washburn Univ. of Topeka*, 845 P.2d 685, 690-92 (Kan. 1993).<br>Reliance not required.<br>*Cole v. Hewlett-Packard Co.*, No. 90, 164, 2004 WL 376471, at *6 (Kan. Ct. App. Feb. 27, 2004). | Misrepresentation or omission must be of a "material fact."<br>Kan. Stat. Ann. § 50-626(b)(2)-(4). | Most deceptive acts or practices require willful or knowing (or have reason to know of) misrepresentation or omission.<br>Kan. Stat. Ann. § 50-626(a), (b)(2)-(4).<br>Party must use willfully violate Act, but must merely engage in the wilful use of a misrepresentation or an omission.<br>*Moore v. Bird Eng'g Co.*, 411 P.3d 755, 762-64 (Kan. 2000); *York v. InTrust Bank, N.A.*, 962 P.2d 405, 420-21 (Kan. 1998); *Haag v. Dry Basement, Inc.*, 732 P.2d 392 (Ct. App. 1987). | In individual action, plaintiff may recover equitable relief or the greater of damages or civil penalty of up to $10,000 for each violation.<br>Kan. Stat. Ann. §§ 50-634(b), 50-636(a).<br>Prejudgment interest allowed.<br>*Schmuelle v. C&C Auto Sales, Inc.*, 99 F. Supp. 2d 1294, 1298-99 (D. Kan. 2000).<br>Punitive damages may be awarded.<br>*York v. InTrust Bank, N.A.*, 962 P.2d 405, 429 (Kan. 1998); *Equitable Life Leasing Corp. v. Abbick*, 757 P.2d 304, 307-08 (Kan. 1988); *Kan. Stat. Ann § 50-636.*<br>Attorney's fees discretionary.<br>Kan. Stat. Ann. § 50-634(e); *Dodson v. U-Needa Self Storage*, 96 P.3d 667, 673-74(2004); *Wedlers v. Roach Cadillac, Inc.*, 637 P.2d 458, 464 (Kan. Ct. App. 1981).<br>Recovery in class actions limited to recovery of actual damages.<br>Kan. Stat. Ann § 50-636(d) | Consumers limited to individuals, husbands and wives, sole proprietors, or family partnerships.<br>Kan. Stat. Ann. § 50-624(b).<br>Jury trial allowed.<br>*Wagoner v. Seever Sys., Inc.*, 664 P.2d 813 (1983). |

- 15 -

LEGAL02/32545409v1

000144

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **KENTUCKY**<br>Consumer Protection Act<br>Ky. Rev. Stat. Ann §<br>367.110 et seq. | Private right of action allowed.<br><br>Ky. Rev. Stat. Ann. § 367.220(1).<br><br>Class action likely prohibited.<br><br>Arnold v. Microsoft Corp., No. 00-CA-00123, 2001 WL 193765, at *6 (Ky. Cir. Ct. July 21, 2000), aff'd, No. 2000-CA-002144-MR, 2001 WL 1835377 (Ky. Ct. App. Nov. 21, 2001). But see Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc., 24 F. Supp. 2d 755, 774 (W.D. Ky. 1998) (class action alleging among its claims, claims under the Consumer Protection Act, and dismissing such claims on other grounds). | 1 year after any action brought by attorney general terminated or within 2 years after violation of Act, whichever is later.<br><br>Ky. Rev. Stat. Ann. § 367.220(5).<br><br>Discovery rule does not apply.<br><br>Cook v. State Farm Mut. Auto. Ins. Co., No. 2002-CA-000801-MR, 2004 WL 2011375, at *3-4 (Ky. Ct. App. Sept. 10, 2004). | Must suffer "ascertainable loss of money or property, real or personal, as a result of" violation.<br><br>Ky. Rev. Stat. Ann. § 367.220(1).<br><br>Does not require proof of actual deception of some person.<br><br>Telcom Directories, Inc. v. Commonw. ex. rel. Cowan, 833 S.W.2d 848, 850 (Ky. Ct. App. 1991). | Proximate causation or causal relationship between act or practice and injury.<br><br>Ky. Rev. Stat. Ann. § 367.220(1); Ky. Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc., 24 F. Supp. 2d 755, 774 (W.D. Ky. 1998); Woods v. Walgreen Co., No. 3:01 CV-646-S, 2003 WL 1239364, at *3 (W.D. Ky. Mar. 17, 2003). | Material omissions.<br><br>Smith v. Gen. Motors Corp., 979 S.W.2d 127, 130-31 (Ky. Ct. App. 1998). | Must show defendant's actions are intentional or grossly negligent.<br><br>Sparks v. Re/Max Allstar Realty, Inc., 55 S.W.3d 343, 348 (Ky. Ct. App. 2000), review denied (Oct. 17, 2001); Capitol Cadillac Olds, Inc. v. Roberts, 813 S.W.2d 287, 291 (Ky. 1991). | Actual damages, discretionary punitive damages, equitable relief, reasonable attorney's fees, and costs allowed.<br><br>Ky. Rev. Stat. Ann. § 367.220(1), (3). | Limited to persons who purchase or lease goods or services for personal, family, or household purposes.<br><br>Ky. Rev. Stat. Ann § 367.220(1); Hart Enters., Inc. v. John Deere Indus. Equip. Co., 18 F. Supp. 2d 697, 702 (W.D. Ky. 1997), aff'd, 162 F.3d 1161 (6th Cir. 1998). |

- 16 -

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **LOUISIANA** *Unfair Trade Practices Act* La. Rev. Stat. Ann. § 51:1401 *et seq.* | Private right for individuals only; class actions prohibited. La. Rev. Stat. Ann. § 51:1409(A); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004). | 1 year "from the time of the transaction or act." La. Rev. Stat. Ann. § 51:1409(E); *Mayo v. Simmon*, 646 So. 2d 973, 976 (La. Ct. App. 1994) *reh'g denied* (Jan. 18, 1995). | "[A]scertainable loss of money or movable property" required. La. Rev. Stat. Ann. § 51:1409(A); *Landrum v. Bd. of Comm'rs of Orleans Levee Dist.*, 758 F. Supp. 387, 392 (E.D. La. 1991). | Loss must have occurred "as a result of the use or employment by another person of an unfair or deceptive method, act or practice." La. Rev. Stat. Ann. § 51:1409(A). | Material omissions. *Laurents v. La. Mobile Homes, Inc.*, 689 So. 2d 536, 541-42 (La. Ct. App. 1997). | Defendant must have acted "knowingly" for treble damages. La. Rev. Stat. Ann. § 51:1409(A). | Permits recovery of actual damages, attorney's fees, and treble damages for knowing violations, but only if the defendant is "put on notice by the director or attorney general." La. Rev. Stat. Ann. § 51:1409(A); *Laurents v. La. Mobile Homes, Inc.*, 689 So. 2d 536, 542-43 (La. Ct. App. 1997); Prejudgment interest available in all Louisiana tort actions. La. Rev. Stat. Ann. § 13:4203. No punitive damages beyond treble damages. La. Rev. Stat. Ann. § 51:1409(A). | "Consumer transaction" defined to require a "natural person" transacting "primarily...for personal, family, or household use." La. Rev. Stat. Ann. § 51:1402(3). |

- 17 -

000146

# VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **MAINE**<br>*Unfair Trade Practices Act*<br>Me. Rev. Stat. Ann. tit. 5 § 205-A et seq. | Private right of action and class actions allowed. Me. Rev. Stat. Ann. tit. 5, § 213. *Tungate v. MacLean-Stevens Studios, Inc.*, 695 A.2d 564 (Me. 1997). | 6 years from discovery. Me. Rev. Stat. Ann. tit 14, § 752; *Campbell v. Machias Sav. Bank*; 865 F. Supp. 26, 34 (D. Me. 1994); *State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 364 (Me. 1987). | Injury "must be substantial." *Tungate v. MacLean Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998); *Tierney v. Ford Motor Co.*, 436 A.2d 866, 873-74 (Me. 1981).<br>Recovery limited to persons who actually purchased defendant's goods or services. Me. Rev. Stat. Ann. tit. 5, § 213(1); *Hoglung ex rel. Johnson v. DaimlerChrysler Corp.*, 102 F. Supp. 2d 30, 30-32 (D. Me. 2000).<br>Injury must be "loss of money or property, real or personal." Me. Rev. Stat. Ann. tit. 5, § 213(1); *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797-98 (Me. 1998). | An injury under the Act "must be an injury that consumers themselves could not reasonably have avoided." *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998); *State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005). | Act or practice must have "the effect of deceiving the consumer, or inducing her to purchase something that she would not otherwise purchase." *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998); *Weinschenk*, 868 A.2d 200, 206 (Me. 2005). | Intent to deceive not required. *Auto Europe, LLC v. Conn. Indem. Co.*, 321 F.3d 60, 66-68 (1st Cir. 2003); *State v. Weinschenk*, 868 A.2d 200 (Me. 2005); *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 906 (Me. 1996); *Courtney v. Bassano*, 733 A.2d 973, 976 (Me. 1999). | Actual damages or restitution and equitable relief, including injunction as the court determines necessary and proper. Me. Rev. Stat. Ann. tit. 5, § 213(1).<br>Attorney's fees permitted. Me. Rev. State. Ann. tit. 5, § 213(2).<br>Prejudgment interest allowed.<br>*State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 366 (Me. 1987).<br>No punitive damages.<br>*Taylor v. Philip Morris, Inc.*, 2001 WL 1710710 (Me. Super. Ct. May 29, 2001). | Applies only to purchase of goods or services "primarily for personal, family or household purposes." Me. Rev. Stat. Ann. tit. 5, § 213(1).<br>Right to a jury trial. Me. Rev. Stat. Ann. tit. 5, § 213(1).<br>Must send presuit notice to defendants 30 days prior to filing. Me. Rev. Stat. Ann. tit. 5, § 213(1-A).<br>No claim if injury is "outweighed by any countervailing benefits to consumers or competition that the practice produces." *Tungate v. MacLean-Stevens Studios, Inc.*, 714 A.2d 792, 797 (Me. 1998). |

LEGAL02/32545409v1

000147

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **MARYLAND**<br>*Consumer Protection Act*<br>Md. Code Ann., Com.<br>Law § 13-101 *et seq.* | Private right of action and class actions allowed.<br>Md. Code Ann., Com.<br>Law § 13-408(a).<br>*Philip Morris Inc. v. Angeletti,* 752 A.2d 200, 234-36 (Md. 2000); *Morris v. Osmose Wood Preserving,* 667 A.2d 624, 634 (Md. 1995). | 3 years.<br>Md. Code Ann. Cts.<br>& Jud. Proc. § 5-101; *Greene Tree Home Owners Ass'n, Inc. v. Greene Tree Assocs.,* 749 A.2d 806, 820-21 (Md. 2000). | Private right of action may be brought to to recover for injury or loss sustained" as a result of prohibited practices<br>Md. Code Ann., Com.<br>Law § 13-408(a).<br>Private right of action "may be invoked only to compensate a consumer for actual injury or loss."<br>*Berg v. Byrd,* 720 A.2d 1283, 1286 (Md. Ct.<br>Spec. App. 1998); *Morris v. Osmose Wood Preserving,* 667 A.2d 624, 634 (Md. 1995).<br>Representation must have the "capacity, tendency, or effect of deceiving or misleading consumer."<br>Md. Code Ann., Com.<br>Law § 13-301(1). | Private right of action for damages requires injury or loss "as the result" of proscribed practice.<br>Md. Code Ann., Com. Law § 13-408(a).<br>Actual deception not necessary.<br>Md. Code Ann., Com. Law § 13-302. | Misrepresentation or omission must be of a "material fact."<br>Md. Code Ann., Com. Law § 13-301(3), (4), (9).<br>A deceptive practice must include a material misrepresentation involving information important to consumers, and therefore likely to affect their choice of product.<br>*Luskin's, Inc. v. Consumer Prot. Div.,* 726 A.2d 702, 713 (Md. 1999). | Scienter not required.<br>Md. Code Ann., Com.<br>Law § 13-301(1); *Consumer Prot. Div. v. Morgan,* 874 A.2d 919 (Md. 2005); *Golt v. Phillips,* 517 A.2d 328, 333 (Md. 1986). | For private right of action, compensatory damages; no punitive damages.<br>Md. Code Ann., Com. Law § 13-408(a); *Golt v. Phillips,* 517 A.2d 328, 333 (Md. 1986); *McGraw v. Loyola Ford, Inc.,* 723 A.2d 502, 510 (Md. Ct. Spec. App. 1999); *Hoffman v. Stamper,* 867 A.2d 276, 304 (Md. 2005).<br>Attorney's fees may also be recovered after other damages are awarded.<br>Md. Code Ann., Com. Law § 13-408(b).<br>Attorney's fees may also be where the court is satisfied that the action was brought in bad faith or is of a frivolous nature.<br>Md. Code Ann., Com. Law § 13-408(c). | The intent of the General Assembly is that, in construing the term "unfair or deceptive trade practices," the consideration and weight given to the interpretations of § 5(a)(1) of the Federal Trade Commission Act by the Federal Trade Commission and the federal courts.<br>Md. Code Ann., Com. Law § 13-105.<br>The Consumer Protection Act "applies only where the purchaser intends to use the goods for "personal, household, family, or agricultural purposes."<br>*Morris v. Osmose Wood Preserving,* 667 A.2d 624, 635 (Md. 1995). |

- 19 -

LEGAL02/32545480v1

000148

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **MASSACHUSETTS**<br>*Consumer Protection Act*<br>Mass. Gen. Laws ch. 93A, § 1 *et seq*. | **Private right of action and class actions allowed.**<br>Mass. Gen. Laws ch. 93A, § 9(1), (2); *Szymanski v. Boston Mut. Life Ins. Co.*, 778 N.E.2d 16, 19-20 (Mass. App. Ct. 2002). | **4 years from discovery.**<br>Mass. Gen. Laws ch. 260, § 5A (2006). | **Injury required.**<br>Mass. Gen. Laws ch. 93A, § 9 (1); *Hershenow v. Enter. Rent-a-Car Co. of Boston, Inc.*, 840 N.E.2d 526, 535, *aff'd*, *Roberts v. Enterprise Rent-A-Car Co. Of Boston, Inc.*, 840 N.E.2d 541 (Mass. 2006). | **Causation required between unfair acts and claimed loss.**<br>*Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 486-87 (Mass. 2004); *Fraser Eng'g Co. v. Desmond*, 524 N.E.2d 110, 113 (Mass. App. Ct. 1988); *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975).<br>Reliance not required.<br>*Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 103 (D. Mass. 1998). | **Deceptive if contains material omission.**<br>*Underwood v. Risman*, 605 N.E.2d 832, 835 (Mass. 1993); *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 487 (Mass. 2004). | **No intention to deceive need be shown; defendant need not know representation was false.**<br>*Swanson v. Bankers Life Co.*, 450 N.E.2d 577, 580 (Mass. 1983); *Fraser Eng'g Co. v. Desmond*, 524 N.E.2d 110, 113 (Mass. App. Ct. 1988); *Golber v. BayBank Valley Trust Co.*, 704 N.E.2d 1191, 1194 (Mass. App. Ct 1999); *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975). | **Greater of actual damages or $25 and double to treble damages for "willful or knowing" violations.**<br>Mass. Gen. Laws ch. 93A, § 9(3); *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 490 (Mass. 2004).<br>Prejudgment interest allowed.<br>*McEvoy Travel Bur., Inc. v. Norton Co.*, 563 N.E.2d 188 (Mass. 1990); *Patry v. Liberty Mobilhome Sales, Inc.*, 475 N.E.2d 392 (Mass. 1985).<br>Attorney's fees mandatory in class actions unless a reasonable settlement was rejected.<br>Mass. Gen. Laws ch. 93A, § 9(4).<br>Court shall award injunctive and other equitable relief as deemed necessary and appropriate.<br>Mass. Gen. Laws ch. 93A, § 9(3). | **Presuit demand required at least 30 days prior to filing action.**<br>Mass. Gen. Laws ch. 93A, § 9(3).<br>If reasonable settlement offer rejected by plaintiffs, court may limit recovery to settlement amount.<br>Mass. Gen. Laws ch. 93A, § 9(3), (4).<br>Jury trial allowed.<br>*Nei v. Wed Foods, Inc. v. Superior Nut Co., Inc.*, No. 05-4546E, 2010 WL 1178404 (Mass. Super. Feb. 18, 2010); *Travis v. McDonald*, 490 N.E.2d 1169, 1172 (Mass. 1986) (noting that while parties cannot insist on a jury trial, a judge may submit a 93A claim to a jury). |

- 20 -

LEGAL02/32545409v1

000149

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **MICHIGAN**<br>*Consumer Protection Act*<br>Mich. Comp. Laws Ann. § 445.901 *et seq.* | Private right of action and class actions allowed.<br><br>Mich. Comp. Laws Ann. § 445.911. | Later of 6 years after occurrence of act and 1 year after last payment.<br><br>Mich. Comp. Laws Ann. § 445.911(7). | Plaintiff must have "suffer[ed a] loss."<br><br>Mich. Comp. Laws Ann. § 445.911(2), (3).<br><br>The Act allows recovery for mental distress where those damages are the "legal and natural consequences of the wrongful act and might reasonably have been anticipated."<br><br>*Lozada v. Dale Baker Oldsmobile, Inc.*, 136 F. Supp. 2d 719, 728 (W.D. Mich. 2001). | Loss must be "as a result of a violation" of the Act.<br><br>Mich. Comp. Laws Ann. § 445.911(2), (3).<br><br>Misleading acts or practices must be the proximate cause of any damages.<br><br>*Zine v. Chrysler Corp.*, 600 N.W.2d 384, 399 (Mich. Ct. App. 1999).<br><br>Members of a class action "need not individually prove reliance on the alleged misrepresentations;" just show reasonable person would have relied.<br><br>*Dix v. Am. Bankers Life Assurance Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987). | Requires proof that a "reasonable person would have relied on the representations."<br><br>*Dix v. Am. Bankers Life Assurance Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987).<br><br>Actions under §455.903(1)(bb), (bb), and (cc) require omission or misrepresentation as to a material fact, which is a fact "that is important to the transaction or affects the consumer's decision to enter into the transaction."<br><br>Mich. Comp. Laws Ann. § 455.903(1)(s), (bb), (cc).<br><br>*Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999). | Plaintiff must show defendant's "intent to deceive through a pattern of misrepresentations."<br><br>*Dix v. Am. Bankers Life Assurance Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987). | In individual actions, the greater of actual damages or $250, and attorney's fees.<br><br>Mich. Comp. Laws Ann. § 445.911(2).<br><br>Class actions are limited to actual damages.<br><br>Mich. Comp. Laws Ann. § 445.911(3).<br><br>Injunctive and declaratory relief also available.<br><br>Mich. Comp. Laws Ann. § 445.911(1).<br><br>Person who suffers a loss under the Act may bring an action to recover reasonable attorney's fees.<br><br>*Smolen v. Dahlmann Apartments, Ltd.*, 186 Mich. App. 292 (1990).<br><br>Punitive damages allowed for persistent and knowing violations, not to exceed $25,000 in actions brought by the attorney general.<br><br>Mich. Comp. Laws Ann. § 445.905(1). | Must be "primarily for personal, family, or household purposes."<br><br>Mich. Comp. Laws Ann. § 445.902(g).<br><br>"[I]f an item is purchased primarily for business or commercial rather than personal purposes, [the Act] does not supply protection."<br><br>*Zine v. Chrysler Corp.*, 600 N.W.2d 384, 393 (Mich. Ct. App. 1999).<br><br>If a defendant shows that a violation was through a good-faith error, plaintiff's damages are limited to actual damages.<br><br>Mich. Comp. Laws Ann. § 445.911(6). |

## VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **MINNESOTA** *Prevention of Consumer Fraud Act* Minn. Stat. §§ 325F.68-.70. | Private right of action and class actions allowed. Minn. Stat. § 8.31(3a). *Dahl's v. Charles Schwab & Co.*, 545 N.W.2d 918, 920 (Minn. 1996). | 6 years. Minn. Stat. § 541.05(1)-(2). *Estate of Riedel v. Life Care Ret. Comps., Inc.*, 505 N.W.2d 78, 83 (Minn. Ct. App. 1993). | Civil remedy available to "any person injured." Minn. Stat. § 8.31(3a). Not limited to actual purchaser of products, "as long as the plaintiff alleges an injury" from conduct prohibited under the Act. *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 11 (Minn. 2001). Deception not necessary only "intent that others rely … whether or not any person has in fact been misled, deceived, or damaged thereby" Minn. Stat. §§ 325F.69(1)-325F.70; *LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 409 N.W.2d 536, 539 (Minn. Ct. App. 1987). Injunction available without showing actual damages. *LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 409 N.W.2d 536, 539 (Minn. Ct. App. 1987). | Injury must be "by a violation" of the Act. Minn. Stat. § 8.31(3a). There must be a "proper legal nexus between the complained-of acts and their alleged monetary losses." *LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 409 N.W.2d 536, 539 (Minn. Ct. App. 1987). Proof of reliance is required for damages, but not for injunctive relief. *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 553 (D. Minn. 1999); *Peskuhl v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332, 344-45 (D. Minn. 1999); *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 13 (Minn. 2001). Causation is a necessary element in an action to recover damages under Minn. Stat. § 8.31(3a). *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 13 (Minn. 2001). | Deception must be "material" to the "buying decisions" of plaintiffs. *Nordale, Inc. v. Samsco, Inc.*, 830 F. Supp. 1263, 1272 (D. Minn. 1993). | "[I]ntent that others rely … whether or not any person has in fact been misled, deceived, or damaged thereby" Minn. Stat. §§ 325F.69(1)-325F.70; *LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 409 N.W.2d 536, 539 (Minn. Ct. App. 1987). | Actual damages, "costs of investigation," reasonable attorney's fees, and injunctive relief. Minn. Stat. § 8.31(3a). Actual damages are to be measured by the "out-of-pocket" loss, or the difference between the actual value of the merchandise and the price paid for the merchandise "along with any special damages naturally and proximately caused by the fraud prior to its discovery, including expenses incurred in mitigating the damages." *B.F. Goodrich Co. v. Mesabi Tire Co.*, 430 N.W.2d 180, 182 (Minn. 1988); *Higgins v. Harold-Chevrolet-Geo, Inc.*, No. A04-596, 2004 WL 2660923 (Minn. Ct. App. Nov. 23, 2004). | Complained-of-misrepresentations "must allege that Defendants made fraudulent or misrepresentative statements in connection with sale of goods." *Group Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1069-70 (D. Minn. 1999). |

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **MISSISSIPPI** Consumer Protection Act Miss. Code Ann. § 75-24-1 et seq. | Private right of action allowed, but (1) only for persons leasing or purchasing goods or services primarily for personal use; and (2) only after exhausting administrative remedies. No class actions permitted. Miss. Code Ann. § 75-24-15. | 3 years. Miss. Code Ann. § 15-1-49. Clark v. Commercial Credit Corp., 357 F. Supp. 2d 962, 965 (S.D. Miss. 2005). | Plaintiff must have suffered "any ascertainable loss of money or property." Miss. Code Ann. § 75-24-15(1). Statements need not be literally false, but only must be capable of deceiving a reasonable person. Sw. Starving Artists Group, Inc. v. State ex rel. Summer, 364 So. 2d 1128, 1131 (Miss. 1978). | "Ascertainable loss" must be "a result of" unlawful acts. Miss. Code Ann. § 75-24-15-(1). | Omissions likely actionable. Miss. Code Ann. 75-24-5(c) (courts interpreting statute must be guided by interpretations of FTC Act by federal courts); FTC v. World Travel Vacation Brokers, Inc., 861 F.2d 1020, 1029 (7th Cir. 1988) (cause of action for omissions allowed). | Only some subsections require intent. Miss. Code Ann. § 75-24-5(i), (j). | Compensatory damages only. Miss. Code Ann. § 75-24-15(1). Court may award prevailing defendant attorney's fees and costs if plaintiffs' claims were frivolous or to harass. Miss. Code Ann. § 75-24-15(3). Civil penalty of $10,000 if violation was knowing or willful upon petition of the Attorney General. Miss. Code Ann. § 75-24-19. | Private right of action limited to purchases "primarily for personal, family or household purposes." Miss. Code Ann. § 75-24-15(1). Prior to bringing a claim, plaintiff must have made a reasonable attempt to resolve any claim through informal dispute program. Miss. Code Ann. § 75-24-15(2). No class actions. Miss. Code Ann. § 75-24-15(4). |
| **MISSOURI** Merchandising Practices Act Mo. Ann. Stat. § 407.010 et seq. | Private right of action and class actions allowed; limited to "merchandise primarily for personal, family or household purposes." Mo. Ann. Stat. § 407.025. | 5 years. Mo. Ann. Stat. § 516.120. | Plaintiffs must have suffered an "ascertainable loss of money or property." Mo. Ann. Stat. § 407.025(1). Reliance not required. State v. AreaCo. Inv. Co., 756 S.W.2d 633, 635-36 (Mo. App. 1988). | "Ascertainable loss" must be "a result of" unlawful acts. Mo. Ann. Stat. § 407.025(1). Injury must be "proximately caused by defendant's actions." Willard v. Bic Corp., 788 F. Supp. 1059, 1070 (W.D. Mo. 1991). | Omissions of material fact are prohibited. Mo. Ann. Stat. § 407.020(1). | No need to prove intent. E.g., State ex rel. Nixon v. Beer Nuts, 29 S.W.3d 828, 837 (Mo. Ct. App. 2000); State ex rel. Webster v. AreaCo. Inv. Co., 756 S.W.2d 633, 635 (Mo. Ct. App. 1988) ("It is the defendant's conduct, not his intent, which determines whether a violation has occurred."). | Actual damages and discretionary punitive damages and attorney's fees. Mo. Ann. Stat. § 407.025(1). | Consumers who purchase goods for their business do not have standing to sue under the Act. Sony v. Comp/USA, Inc., 174 F.3d 488, 450 (E.D. Mo. 1997). Specific class action requirements within the Act. Mo. Ann. Stat. § 407.025(3)-(4). |

- 23 -

000152

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **MONTANA** Unfair Trade Practices and Consumer Protection Act Mont. Code Ann. § 30-14-101 et seq. | Private right of action, but class actions not allowed. Mont. Code Ann. § 30-14-133(1). | 2 years. Mont. Code Ann. § 27-2-211; Osterman v. Sears, Roebuck & Co., 80 P.3d 435, 440 (Mont. 2003). | Plaintiff need only show an ascertainable loss of money or property. Mont. Code Ann. § 30-14-133(1). | Reliance probably not required. Durbin v. Ross, 916 P.2d 758, 762 (Mont. 1996) (listing reliance as element for fraud but not specifically for CPA violation). | Undecided. | No mention of any requirement that party must first prove malice, oppression or fraud. T&W Chevrolet v. Darvial, 641 P.2d 1368, 1371-72 (Mont. 1982). | Actual damages or $500, whichever is greater, recoverable by individual. Mont. Code Ann. § 30-14-133(1). Discretionary attorney's fees to prevailing plaintiff; discretionary attorney's fees to defendant if action frivolous. Mont. Code Ann. § 30-14-133(3); Tripp v. Jeld-Wen, Inc., 112 P.3d 1018, 1026 (Mont. 2005). Treble damages available, only remedial and not punitive in nature. Plath v. Schonrock, 64 P.3d 984, 989-90 (Mont. 2003). | None found. |

LEGAL02/32345409v1

## VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **NEBRASKA** <br> *Consumer Protection Act (CPA)* <br> Neb. Rev. Stat. § 59-1601 to 1623. <br> *Uniform Deceptive Trade Practices Act (DTPA)* <br> Neb. Rev. Stat. § 87-301 to 306. | Under the CPA, private right of action if deceptive act affects public interest. Neb. Rev. Stat. Ann. § 59-1609; § 59-1601(2); *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 141-42 (Neb. 2000) ("The act is not available to redress a private wrong where the public interest is not affected."). <br><br> Under the DTPA, private right of action for equitable relief. Neb. Rev. Stat. Ann. §§ 87-303(b); *Raishodnek v. Walgreen Co.*, 742 N.W.2d 243, 247-48 (Neb.App.2007). | Under the CPA, 4 years after the cause of action accrues. Neb. Rev. Stat. Ann. § 59-1612. <br><br> Under the DTPA, 4 years from the date of the purchase of goods. Neb. Rev. Stat. Ann. § 87-303.10; *Meyer Bros. Inc. v. Travelers Ins. Co.*, 250 Neb. 389, 390-91 (Neb. 1996). | Plaintiff must be injured in his business or property. Neb. Rev. Stat. § 59-1609. | A Claim may be brought by any person who is injured by a violation of the CFA. Neb. Rev. Stat. Ann. § 59-1609. *But see* Neb. Rev. Stat. Ann. § 87-303(a) (allowing injunctive relief for any person likely to be damaged by a deceptive trade practice of another.). <br><br> Knowledge of truth by plaintiff prior to acting may negate claim. <br><br> *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1016 (D. Neb. 1998). | Undecided. | No particular scienter requirement. Neb. Rev. Stat. Ann. § 59-1609; § 87-303(a). <br><br> Plaintiff must prove "the practice possessed the tendency or capacity to mislead, or created the likelihood of confusion." *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1014 (D. Neb. 1998). | Under the CPA, recovery of actual damages allowed. Neb. Rev. Stat. Ann. § 59-1609. <br><br> Court can increase the award of damages to an amount that bears to actual damages which are not susceptible of measurement, but not to exceed $1,000. Neb. Rev. Stat. Ann. § 59-1609. <br><br> Under the DTPA, recovery of actual damages not allowed. *Triple-T, Inc. v. Intervet, Inc.*, 338 F. Supp. 2d 1082, 1087 (D. Neb. 2004). | To be actionable under the CPA, "the unfair or deceptive act or practice must have an impact upon the public interest." *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 141-42 (Neb. 2000). <br><br> Impact on the public interest can be direct or indirect. *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 38 (Neb. 2004). |
| **NEVADA** <br> *Deceptive Trade Practices Act* <br> Nev. Rev. Stat. § 598.0903 *et seq.* | Only elderly or disabled have a private right of action under the Act. Nev. Rev. Stat. Ann. § 598.0977. | 4 years, accruing from the date facts constituting deceptive trade practice were discovered or should have been discovered. Nev. Rev. Stat. § 11.190(2)(d). | Claim limited to recovery of "any damages" sustained. Nev. Rev. Stat. § 41.600(3)(e). | A claim may be brought by or on behalf of "any person who is a victim of consumer fraud." Nev. Rev. Stat. § 41.600(1). | Deceptive trade practices include "failure] to disclose a material fact in connection with sale or lease of goods." Nev. Rev. Stat. § 598.0923(2). | Requires defendant "knowingly" make a false representation. Nev. Rev. Stat. § 598.0915; *Scaffidi v. United Nissan*, 425 F.Supp.2d 1172, 1184-85 (D. Nev. 2005) (no cause of action against a new dealer where no evidence of intentional deception). <br><br> Or "knowingly" fails to disclose a material fact. Nev. Rev. Stat. § 598.0923(2). | Only elderly or disabled may recover actual damages, punitive damages, and attorney's fees. Nev. Rev. Stat. § 598.0977. | None found. |

-25-

# VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **NEW HAMPSHIRE** *N.H. Consumer Protection Act ("CPA")* N.H. Rev. Stat. Ann. § 358-A:1 *et seq.* | Private right of action and class actions allowed. N.H. Rev. Stat. Ann. §§ 358-A:10, 358-A:10-a. | 3 years from date violation was known or reasonably should have been known, but evidence of conduct more than 3 years earlier may be introduced. N.H. Rev. Stat. § 358-A:3. | Act allows "any person injured" to bring a claim and to bring a class action "if the unlawful act or practice has caused similar injury to numerous other persons." N.H. Rev. Stat. Ann § 358-A:10-a. The Act "does not require a showing of actual damages for the claimant to be awarded the statutory minimum and attorney's fees." *Preferred Nat'l Ins. Co. v. Docusource, Inc.*, 829 A.2d 1068, 1075 (N.H. 2003.) | Plaintiffs must establish a "causal link" between the unlawful conduct and their injuries. *Mulligan v. Choice Mortgage Corp. USA*, 1998 WL 544431, at *11 (D.N.H. Aug. 11, 1998). | Material omissions may be actionable. *State v. Moran*, 861 A.2d 763, 766 (NH courts look to FTC Act for guidance); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988) (omissions are actionable under FTC Act). | No level of scienter required for normal damages; damages doubled or trebled for "willful or knowing violations." N.H. Rev. Stat. Ann. § 358-A:10. "'The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.'" *Barrows v. Boles*, 687 A.2d 979, 986-87 (N.H. 1996) (quoting *Lovings v. Forbes & Wallace, Inc.*, 396 N.E.2d 149, 151 (1979)). | In individual actions, greater of actual damages or $1,000 and attorney's fees; if the violation was "willful or knowing," court shall double or treble actual damages. N.H. Rev. Stat. Ann. § 358-A:10. Class action damages limited to actual damages, equitable relief, and discretionary attorney's fees. N.H. Rev. Stat. Ann. § 358-A:10-a. | Specific class action provision within the Act. N.H. Rev. Stat. Ann. 358-A:10-a. |

## VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **NEW JERSEY** *Consumer Fraud Act* N.J. Stat. Ann. § 56:8-19 *et seq.* | Private right of action and class actions allowed. N.J. Stat. Ann. § 56:8-19; *Weinberg v. Sprint Corp.,* 801 A.2d 281, 283-84 (N.J. 2002). | 6 years. N.J. Stat. Ann. § 2A:14-1; *Mirra v. Holland Am. Line,* 331 N.J. Super. 86, 90 (App. Div. 2000). | Plaintiff must show "ascertainable loss of moneys or property." N.J. Stat. Ann. § 56:8-19. Standing requires a plaintiff to plead a claim for damages that would survive a summary judgment motion. *Weinberg v. Sprint Corp,* 801 A.2d 281, 283 (N.J. 2002). | Any person who suffers ascertainable "loss of moneys or property "as a result of" unlawful acts may bring an action. N.J. Stat. Ann. § 56:8-19. This "causation provision" requires plaintiff "to prove that the unlawful consumer fraud caused his loss." *Cox v. Sears Roebuck & Co.,* 647 A.2d 454, 464 (N.J. 1994). "But for" test applies for proximate cause determination. *Fink v. Ricoh Corp.,* 839 A.2d 942, 976-77 (N.J. Super. 2003). Liability under the Act "does not require proof of reliance." *Dabush v. Mercedes Benz USA, Inc.,* 874 A.2d 1110, 1121 (N.J. Super. Ct. App. Div. 2005); *N.J. Citizen Action v. Schering-Plough Corp,* 842 A.2d 174, 178 (N.J. Super. Ct. App. Div. 2003). | Material omissions prohibited. N.J. Stat. Ann. § 56:8-2. | Defendant's intent is not an element; liability for misrepresentations requires no knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive. *Gennari v. Weichert Co. Realtors,* 691 A.2d 350, 365 (N.J. 1997); *Thiedemann v. Mercedes-Benz USA, Inc,* 872 A.2d 783, 791 (N.J. 2005). Liability for omissions requires knowledge and intent. *Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C.,* 655 F.Supp.2d 473, 504-05 (D.N.J. 2009); *Gennari v. Weichert Co. Realtors,* 691 A.2d 350, 365 (N.J. 1997). | Damages limited to party's "ascertainable loss of moneys or property." N.J. Stat. Ann. § 56:8-19. No punitive damages, but treble damage mandatory once plaintiff proves unlawful practice under Act and resulting ascertainable loss. N.J. Stat. Ann. § 56:8-19; *Cox v. Sears Roebuck & Co,* 647 A.2d 454, 465 (N.J. 1994). Attorney's fees mandatory if plaintiff proves unlawful practice defined by Act. N.J. Stat. Ann. § 56:8-19; *BJM Insulation & Constr. Inc. v. Evans,* 287 N.J. Super. 513, 517 (App. Div. 1996). | Plaintiff must mail a copy of the complaint to the attorney general within 10 days of filing. N.J. Stat. Ann. § 56:8-20. |

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **NEW MEXICO** *Unfair Trade Practices* N.M. Stat. Ann. § 57-12-1 *et seq.* | Private right of action and class actions allowed. N.M. Stat. Ann. § 57-12-10. | 4 years from discovery of violation. N.M. Stat. Ann. § 37-1-4; *Tiberi v. Cigna Corp.,* 89 F.3d 1423, 1430 (10th Cir. 1996). | No injury requirement for injunctive relief only. N.M. Stat. Ann. § 57-12-10(A). In a suit for damages, plaintiffs must have suffered a "loss of money or property." N.M. Stat. Ann. § 57-12-10(B). Only named plaintiffs may recover statutory damages of $100 without proving actual damages. N.M. Stat. Ann. § 57-12-10(E). | Any person who suffers a loss of money or property "as a result of" unlawful acts may bring an action. N.M. Stat. Ann. § 57-12-10(B). Plaintiff must show defendant's violation proximately caused plaintiff damages. *Uniform Jury Instructions* 13-1707 NMRA (instructing that plaintiffs "may recover damages proximately caused by the deceptions"); *Stevenson v. Louis Dreyfus Corp.,* 811 P.2d 1308, 1311 (N.M. 1991). | Material omissions are prohibited. N.M. Stat. Ann. § 57-12-2(D)(14). Material facts reasonably necessary to prevent any statements from being misleading must be disclosed. *Smoot v. Physician Life Ins. Co.,* 87 P.3d 545, 549 (N.M. Ct. App. 2003). | Need not be intentionally made, but defendant must know that representation is false or in exercise of reasonable diligence should have known that representation is false. N.M. Stat. Ann. § 57-12-2(D); *Taylor v. United Mgmt., Inc.,* 51 F.Supp.2d 1212, 1216 (D.N.M. 1999); *Stevenson v. Louis Dreyfus Corp.,* 811 P.2d 1308, 1311 (N.M. 1991). | Greater of actual damages or $100; discretionary treble damages if willful violation. N.M. Stat. Ann. § 57-12-10(B). Mandatory attorney's fees to successful plaintiff; attorney's fees and costs to defendant if suit was "groundless." N.M. Stat. Ann. § 57-12-10(C). Unnamed class members limited to actual damages. N.M. Stat. Ann. § 57-12-10(E). | Attorney's fees awarded to defendant where plaintiff's claims are groundless. N.M. Stat. Ann. § 57-12-10(C). "Good faith" defense available. *Hubbard v. Albuquerque Truck Ctr. Ltd.,* 958 P.2d 111, 118-19 (N.M. Ct. App. 1998). |

- 28 -

LEGAL02/32545409v1

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **NEW YORK** Consumer Protection from Deceptive Acts and Practices N.Y. Gen. Bus. Law §§ 349 to 350-f-1. | Private right of action and class actions allowed. N.Y. Gen. Bus Law § 349(h); Small v. Lorillard Tobacco Co., 679 N.Y.S.2d 593, 598-99 (App. Div. 1998), aff'd, 720 N.E.2d 892 (N.Y. 1999). | 3 years. Gaidon v. Guardian Life Ins. Co. of Am., 750 N.E.2d 1078, 1082 (N.Y. 2001). | Plaintiff must prove actual injury but "not necessarily pecuniary harm." Stutman v. Chem. Bank, 731 N.E.2d 608, 612 (N.Y. 2000). Plaintiff "must plead facts showing actual injury, not merely the alleged deceptive act." Bildstein v. MasterCard Int'l Inc., 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004). | Plaintiff must have suffered injury "as a result of the deceptive act," but "reliance is not an element" of the Act. Stutman v. Chem. Bank, 731 N.E.2d 608, 611-12 (N.Y. 2000); Pelman ex. rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005). | "Whether a representation or omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." Stutman v. Chem. Bank, 731 N.E.2d 608, 611-12 (N.Y. 2000). | Intent to defraud is not an element of a claim under the Act. Stutman v. Chem. Bank, 731 N.E.2d 608, 612 (N.Y. 2000). Discretionary treble damages for willful or knowing violations. N.Y. Gen. Bus. Law § 349(h). | Greater of actual damages or $50 in individual action; discretionary treble damages for willful or knowing violations; discretionary attorney's fees to prevailing party. N.Y. Gen. Bus. Law § 349(h); Teller v. Hayes, 213 A.D.2d 141, 147 (2d Dept. 1995); Karlin v. IVF Am., Inc., 93 N.Y.2d 282, 291 (1999) (characterizing discretionary treble damages as "punitive damages"). Class recovery limited to actual damages and injunctive relief. Super Glue Corp. v. Avis Rent A Car Sys., Inc., 517 N.Y.S.2d 764, 767 (App. Div. 1987). | The deception of a consumer must occur in New York. Goshen v. Mut. Life Ins. Co., 774 N.E.2d 1190, 1195-96 (N.Y. 2002). A "complete defense" exists if the act or practice is "subject to and complies with the rules and regulations of . . . the federal trade commission" or other governmental entity of the United States. N.Y. Gen. Bus. Law § 349(d). Plaintiff must show harm to public interest. U-Neek, Inc. v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 158, 176 (S.D.N.Y. 2001). |

- 29 -

000158

## VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **NORTH CAROLINA** *Monopolies, Trusts and Consumer Protection* N.C. Gen. Stat. § 75-1 et seq. | Private right of action and class actions allowed. N.C. Gen. Stat. § 75-16. *Dash v. FirstPlus Home Owner Loan Trust 1996-2,* 248 F.Supp.2d 489, 494-95 (M.D.N.C. 2003). | 4 years. N.C. Gen. Stat. § 75-16.2; *Dash v. FirstPlus Home Owner Loan Trust 1996-2,* F.Supp.2d 489, 500-01 (M.D.N.C. 2003). | **Actual injuries required.** *Wilson v. Blue Ridge Elec. Membership Corp,* 578 S.E.2d 692, 694 (N.C. Ct. App. 2003). | **Defendant's misrepresentations must have "proximately caused actual injury to plaintiff."** *Wilson v. Blue Ridge Elec. Membership Corp,* 578 S.E.2d 692, 694 (N.C. Ct. App. 2003). "Substantial factor" test applies in proximate cause determination. *Am. Rockwool, Inc., v. Owens-Corning Fiberglass Corp,* 640 F. Supp. 1411, 1444 (E.D.N.C. 1986). Unclear whether reliance is required. *Tucker v. Boulevard at Piper Glen, LLC,* 564 S.E.2d 248, 251 (2002) (stating that "actual reliance on the alleged misrepresentation" was required for proximate causation). *But see Cullen v. Valley Forge Life Ins., Inc.,* 589 S.E.2d 423, 431 (N.C. Ct. App. 2003) (indicating that proof of reliance may not be required). | **In determining whether a representation is deceptive, its effect on the average consumer is considered.** *Spartan Hearing, Inc. v. Pollard,* 400 S.E.2d 476, 482 (N.C. Ct. App. 1991). Material omissions prohibited. *S. Atl. Ltd. P'ship of Tenn. L.P. v. Riese,* 284 F.3d 518, 537-38 (4th Cir. 2002). | No particular scienter requirements. *Excel Staffing Serv., Inc. v. HP Reidsville, Inc.,* 616 S.E.2d 349, 355 (N.C. Ct. App. 2005). | Actual damages that were proximate result of prohibited conduct. N.C. Gen. Stat. § 75-16; *Ellis v. Northern Star Co.,* 388 S.E.2d 127, 131 (N.C. 1990). Mandatory treble damages. N.C. Gen. Stat. § 75-16; *Standing v. Midgett,* 850 F. Supp. 396, 402 (E.D.N.C. 1993). Discretionary attorney's fees upon a finding that defendant's conduct was wilful and defendant refused to negotiate settlement. N.C. Gen. Stat. § 75-16.1. | Prevailing defendant may receive attorney's fees and costs if court deems plaintiffs' suit frivolous. N.C. Gen. Stat. § 75-16. |

- 30 -

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **NORTH DAKOTA** *Consumer Fraud* N.D. Cent. Code § 51-15-01 *et seq.* | Private right of action and class actions allowed. N.D. Cent. Code § 51-15-09; *Hanson v. Acceleration Life Ins. Co.*, 1999 WL 3283345, at *7 (D.N.D. July 1, 1999). | 6 years. N.D. Cent. Code § 28-01-16(2). | Plaintiffs must have suffered a loss of money or property. *N.D. Fair Hous. Council, Inc. v. Haider*, No. CIV A1-98-077, 1999 WL 3283355, at *3 (D.N.D. Mar. 9, 1999). Requires actual injury. *Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556, 559 (N.D. 2002). | Reliance not required. N.D. Cent. Code § 51-15-02. | Material omissions actionable. *Hanson v. Acceleration Life Ins. Co.*, 1999 WL 3283345 (D.N.D. July 1, 1999). | Deceptive act must be made with the "intent that others rely" upon it. N.D. Cent. Code § 51-15-02. "Knowing" conduct may subject defendant to treble damages. N.D. Cent. Code § 51-15-09. | Actual damages; if conduct was "knowing" treble damages allowed; reasonable attorney's fees and costs are mandatory if violation found. N.D. Cent. Code § 51-15-09. | None found. |

- 31 -

LEGAL02/32454409v1

000160

## VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **OHIO**<br><br>*Ohio Consumer Sales Practices Act*<br><br>Ohio Rev. Code Ann. § 1345.01 *et seq.* | Private right of action and class actions allowed.<br><br>Ohio Rev. Code Ann. § 1345.09; *Parker v. I&F Insulation Co.*, 730 N.E.2d 972, 978-79 (Ohio 2000).<br><br>Must be a "consumer" — a person who engages in a consumer transaction with a supplier.<br><br>Ohio Rev. Code Ann. § 1345.01(D).<br><br>"Consumer transaction" means a sale of primarily personal, family, or household goods.<br><br>Ohio Rev. Code Ann. § 1345.01(A).<br><br>Class actions not allowed for claims based upon atty. gen. opinion or court decision and not express violation of Act.<br><br>Ohio Rev. Code Ann. § 1345.09(B). | 2 years from occurrence or 1 year after government enforcement action, whichever is later.<br><br>Ohio Rev. Code Ann. § 1345.10(C).<br><br>No discovery rule for suits seeking damages.<br><br>*Weaver v. Armando's Inc.*, 2003 Ohio App. Lexis 4273, at *16 (7th Dist. Sept. 3, 2003). | Plaintiff must have suffered some damages or engaged in a transaction to be rescinded.<br><br>Ohio Rev. Code Ann. § 1345.09(A).<br><br>Remedies of cancellation of contract and statutory damages do not require actual damages.<br><br>*New Phila., Inc. v. Sagrilla*, 2002 WL 1467771, at *5 (Ohio Ct. App. June 26, 2002). | Deceptive act or practice need only be "in connection with" a consumer transaction.<br><br>Ohio Rev. Code Ann. § 1345.02(A). | Material omissions may be actionable.<br><br>*See, e.g., Delahunt v. Cytodyne Techs.*, 241 F.Supp.2d 827, 834 (S.D. Ohio 2003). | "Intent to deceive is not an element required for a violation of the deceptive-practices portion of the act."<br><br>*Rose v. Zaring Homes, Inc.*, 702 N.E.2d 952, 956 (Ohio Ct. App. 1997). | In individual action, actual damages or rescission; statutory damages available.<br><br>Ohio Rev. Code Ann. § 1345.09(A), (B).<br><br>If the defendant has a pattern of violation, a consumer may recover treble damages.<br><br>Ohio Rev. Code Ann. § 1345.09(B); *Parker v. Stapleton Buick-GMC Truck, Inc.*, 2001 Ohio App. Lexis 2651, at *11-12 (Ohio Ct. App. June 15, 2001).<br><br>Discretionary attorney's fees to prevailing party if action brought in bad faith or act committed knowingly.<br><br>Ohio Rev. Code Ann. § 1345.09(F). | Transaction must involve goods/services for "primarily personal, family, or household" use.<br><br>Ohio Rev. Code Ann. § 1345.01(A).<br><br>Practices not expressly listed in the Act may become actionable upon a ruling by the state atty. gen. or decision by state court, but not class actions allowed for these claims.<br><br>Ohio Rev. Code Ann. § 1345.09(B).<br><br>Defense if defendant furnished similar merchandise of equal or greater value as a good faith substitute for a previous representation.<br><br>Ohio Rev. Code Ann. § 1345.02(B)(5). |

## VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **OKLAHOMA** *Consumer Protection Act* Okla. Stat. Ann. tit. 15, § 751 *et seq.* | Private right of action and class actions allowed. Okla. Stat. Ann. tit. 15, § 761.1(A)(B); *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000). | 3 years for damages claims, 1 year for penal claims. *Brashears v. Sight 'N Sound Appliance Ctrs.*, 981 P.2d 1270, 1273-79 Okla. 1999. | Deceptive trade practice is a misrepresentation or omission that "could reasonably be expected to deceive or mislead a person" to that person's detriment. Okla. Stat. Ann. tit. 15, § 752(13); *Patterson v. Beall*, 19 P.3d 839, 847 n.12 (Okla. 2000). | The challenged practice must have caused the plaintiff's injuries. Okla. Stat. Ann. tit. 15, §§ 753, 761.1(A); *Patterson v. Beall*, 19 P.3d 839, 846-47 (Okla. 2000) (consumer must have suffered an injury in fact caused by the challenged practice). | "Deceptive trade practice" includes "omission ... that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." Okla. Stat. Ann. tit. 15, § 752(13). Misrepresentation or omission must have "the capacity to deceive the consumer." *Patterson v. Beall*, 19 P.3d 839, 847 n.12 (Okla. 2000). | Whether knowledge is required depends on the particular provision alleged to have been violated. *Patterson v. Beall*, 19 P.3d 839, 847 n.12 (Okla. 2000). *See* Okla. Stat. Ann. tit. 15, § 752(13), (14) (not requiring knowledge); Okla. Stat. Ann. tit. 15, § 753(2)-(5); tit. 78, § 53(5) (requiring knowledge of a false representation). | Actual damages and reasonable attorney's fees; up to $10,000 in costs if the other party asserts a claim or defense in bad faith. Okla. Stat. Ann. tit. 15, § 761.1(A). For individual actions only, if unlawful acts "unconscionable" (consistent with circumstances specified by Act), discretionary award up to $2,000 per act. Okla. Stat. Ann. tit. 15, § 761.1(B). | Unlawful conduct need not implicate a public interest to be actionable. *Patterson v. Beall*, 19 P.3d 839, 847 (Okla. 2000). Court may award attorney's fees to non-prevailing party for bad faith or frivolous claims. Okla. Stat. Ann. tit. 15, § 761.1(A). |

- 33 -

LEGAL02/32545409v1

000162

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **OREGON**<br><br>*Unlawful Trade Practices Act ("UTPA")*<br><br>Or. Rev. Stat. § 646.605 *et seq.* | Private right of action and class actions allowed.<br><br>Or. Rev. Stat. § 646.638(1), (8); *Weigel v. Ron Tonkin Chevrolet Co.*, 690 P.2d 488, 492-93 (1984).<br><br>Applies to goods obtained primarily for personal, family, or household purposes.<br><br>Or. Rev. Stat. § 646.605(6)(a). | 1 year from discovery of deceptive practice.<br><br>Or. Rev. Stat. § 646.638(6). | Must suffer "ascertainable loss of money or property" to recover "actual damages."<br><br>Or. Rev. Stat. § 646.638(1).<br><br>Plaintiff is required to plead and prove some actual injury.<br><br>*Creditors Protective Ass'n v. Britt*, 648 P.2d 414, 416 (Or. Ct. App. 1982). | Ascertainable loss must be "as a result of willful use or employment" of unlawful "method, act or practice."<br><br>Or. Rev. Stat. § 646.638(1).<br><br>Plaintiff must have "relied in fact" on certain misrepresentations.<br><br>*Feitler v. Animation Celection, Inc.*, 13 P.3d 1044, 1050 (Or. Ct. App. 2000).<br><br>Reliance not necessary for omissions.<br><br>*Sanders v. Francis*, 561 P.2d 1003, 1006 (Or. 1977). | An unlawful trade practice embraces any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact.<br><br>Or. Rev. Stat. § 646.608(2). | While scienter is not required to establish violation of the UTPA, plaintiff must prove "willful use or employment" of unlawful practice in order to recover damages.<br><br>Or. Rev. Stat. § 646.638(1); *Randslanagh v. Action Pest Control, Inc.*, 650 P.2d 1006, 1009 (Or. Ct. App. 1982).<br><br>However, "willful violation" means only that the actor should have known the act was unlawful.<br><br>Or. Rev. Stat. § 646.605(10). | In individual actions, greater of actual damages or $200; reasonable attorney's fees may be awarded to prevailing party.<br><br>Or. Rev. Stat. § 646.638(1), (3).<br><br>Discretionary punitive damages are awardable only when jury finds deterrence is necessary and document is aggravated.<br><br>Or. Rev. Stat. § 646.638(1), (3); *Crooke v. Payless Drug Stores*, 592 P.2d 196, 199 (1979).<br><br>Attorney's fees are available in class actions.<br><br>Or. Rev. Stat. § 646.638(4).<br><br>Statutory damages may be recovered on behalf of class members only if "ascertainable loss" resulting from reckless or knowing acts.<br><br>Or. Rev. Stat. § 646.638(8)(a). | Upon commencement of action, plaintiff must mail copy of the complaint to state attorney general.<br><br>Or. Rev. Stat. § 646.638(2).<br><br>Trade practice must have sufficient nexus to Oregon to give rise to a claim.<br><br>*Julian-Ocampo v. Air Ambulance Network, Inc.*, 00-1262, 2001 U.S. Dist. Lexis 22173, at *7,*8 (D. Or. 2001). |

- 34 -

000163

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **PENNSYLVANIA**<br><br>*Unfair Competition, Acts or Practices*<br><br>73 Pa. Cons. Stat. § 201-1 *et seq.* | Private right of action and class actions allowed.<br><br>73 Pa. Cons. Stat. § 201-9.2; *Agliori v. Met. Life Ins. Co.*, 879 A.2d 315., 319 (2005). | 6 years.<br><br>*Drelles v. Mfrs. Life Ins. Co.*, 881 A.2d 822, 831 (2005). | Must suffer "ascertainable loss of money or property" to recover "actual damages."<br><br>73 Pa. Cons. Stat. § 201-9.2(a); *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001). | Plaintiff must show "justifiable reliance" for common-law fraud.<br><br>*Toy v. Metro. Life, Ins. Co.*, 863 A.2d 1, 11 (Pa. Super. 2004); *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 444 (Pa. 2001).<br><br>Causal connection between unlawful practices and damages required.<br><br>73 Pa. Cons. Stat. § 201-9.2(a). | Plaintiff must show materiality for common-law fraud-based deceptive acts and practices.<br><br>*Zwiercan v. General Motors Corp., 2003 WL 1848571, at *1-2 (Pa.Com.Pl.2003); Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. Ct. 2002).<br><br>Material omissions are actionable.<br><br>*Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. Ct. 2002); *Zwiercan v. General Motors Corp., 2003 WL 1848571, at *1-2 (Pa.Com.Pl., 2003).* | Plaintiff must show elements of common-law fraud, including knowledge of fraud or reckless disregard thereto.<br><br>*Debbs v. Chrysler Corp.*, 810 A.2d 137, 155 (Pa. Super. Ct. 2002). | Actual damages or $100, whichever is greater; discretionary treble damages and reasonable attorney's fees.<br><br>73 Pa. Cons. Stat. § 201-9.2(a).<br><br>Discretionary punitive damages are recoverable.<br><br>*Aronson v. Creditrust Corp.*, 7 F.Supp.2d 589, 594 (W.D. Pa. 1998).<br><br>Discretionary attorney's fees are recoverable.<br><br>*In re Bryant*, 111 B.R. 474, 480 (E.D. Pa. 1990) (unfair conduct breaching parties' contract justified attorney's fees). | Act restricted to those goods and services purchased or leased "primarily for personal, family or household purposes."<br><br>73 Pa. Cons. Stat. § 201-9.2(a).<br><br>No right to a jury trial.<br><br>*Grimer v. Erie Ins. Exch.*, No. 3053., 2000 WL 33711082, at *7 (Pa. Com. Pl. 2000). |
| **PUERTO RICO**<br><br>23 L.P.R.A. § 1014 *et seq.* | Private right of action does not appear to be permitted.<br><br>*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24 (1st Cir. 2000). | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

- 35 -

LEGAL02/32545409v1

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **RHODE ISLAND** *Unfair Trade Practices & Consumer Protection Act* **R.I. Gen. Laws § 6-13.1-1** *et seq.* | Private right of action and class actions allowed. R.I. Gen. Laws § 6-13.1-5.2(a), (b); *Park v. Ford Motor Co.*, 844 A.2d 687, 691-92 (R.I. 2004). Class certification governed by special rules. *Park v. Ford Motor Co.*, 2004 WL 2821312, at *2-3 (R.I. Super. Ct. Oct. 7, 2004). | 10 years. R.I. Gen. Laws § 9-1-13. | Must suffer "ascertainable loss of money or property" to recover "actual damages." R.I. Gen. Laws § 6-13.1-5.2(a). | Ascertainable loss must be "as a result of the use or employment ... of a method, act or practice declared unlawful." R.I. Gen. Laws § 6-13.1-5.2(a). | Covers material misrepresentations. *Graff v. Am. Online, Inc.*, 1998 WL 307001, at *5 (R.I. Super. Ct. May 27, 1998). | Undecided. | Actual damages or $200, whichever is greater; discretionary punitive damages and reasonable attorney's fees. R.I. Gen. Laws § 6-13.1-5.2(a), (d). *Park v. Ford Motor Co.*, 844 A.2d 687, 691-92 (R.I. 2004). Must show malice, bad faith, or intent to harm for punitive damages. *Roso-Simone of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386, 400 (D. R.I. 1998). | Limited to purchases or leases of goods or services for personal, family, or household purposes. R.I. Gen. Laws § 6-13.1-5.2(a). Business entities have no private right of action. *ERI Max Entm't, Inc. v. Streisand*, 690 A.2d 1351, 1354 (1997); *Scully Signal Co. v. Joyal*, 881 F. Supp. 727, 741, 745 (D.R.I. 1995). |

## VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **SOUTH CAROLINA** *Unfair Trade Practices Act* S.C. Code Ann. § 39-5-10, *et seq.* | Private right of action, but class actions not allowed. S.C. Code Ann. § 39-5-140(a). | 3 years after discovery of conduct. S.C. Code Ann. § 39-5-150; *Prestwick Golf Club, Inc. v. Prestwick Ltd. P'ship*, 503 S.E.2d 184, 188 (S.C. Ct. App. 1998). | Requires "ascertainable loss of money or property." S.C. Code Ann. § 39-5-140(a); *Omni Outdoor Adver., Inc. v. Columbia Outdoor Adver., Inc.*, 974 F.2d 502, 507 (4th Cir. 1992). | Ascertainable loss must be "as a result of the use or employment ... of an unfair or deceptive method, act or practice." S.C. Code Ann. § 39-5-140(a); *Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 363 S.E.2d 691, 692 (S.C. 1988) (requiring "capacity to deceive"). | Must be material misrepresentations of fact. *Wingard v. Exxon Co., USA*, 819 F. Supp. 497, 506 (D.S.C. 1992); *Clarkson v. Orkin Exterminating Co.*, 761 F.2d 189, 191 (4th Cir. 1985) (putting out misrepresentation). Omissions are actionable. *Johnson v. Collins Entm't Co., Inc.*, 564 S.E.2d 653, 666 (S.C. 2002) (describing omissions as an "inherent misrepresentation"). | Violation need not be knowing or wilful to recover actual damages; must be wilful for treble damages. *Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 363 S.E.2d 691, 692 (S.C. 1988) (noting that intent to deceive is not required); *Haley Nursery Co. v. Forrest*, 381 S.E.2d 906, 909 (S.C. 1989). | **Actual damages;** discretionary treble damages for willful or knowing violations. S.C. Code Ann. § 39-5-140(a) (2006); *Payne v. Holiday Towers, Inc.*, 321 S.E.2d 179 (S.C. Ct. App. 1984). Punitive damages are not permitted. *Tousley v. N. Am. Van Lines, Inc.*, 752 F.2d 96, 104-05 (4th Cir. 1985) (reversing lower court's award of punitive damages). Attorney's fees awarded to prevailing plaintiff, reasonability determined by six enumerated factors. *Rowel v. Whitaunt*, 600 S.E.2d 96, 99 (S.C. Ct. App. 2004). | An adverse effect on public interest must be proved by "specific facts." *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004); *Jeffries v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994). |

- 37 -

000166

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **SOUTH DAKOTA** *Deceptive Trade Practices and Consumer Protection Act* S.D. Codified Laws § 37-24-1 *et seq.* | Private right of action and class actions allowed. S.D. Codified Laws § 37-24-31; *Wyman v. Terry Schulte Chevrolet, Inc.*, 584 N.W.2d 103, 105 (S.D. 1998). | 4 years after occurrence or discovery of conduct. S.D. Codified Laws § 37-24-33. | Plaintiff must claim to be "adversely affected" by an unlawful act of practices and have "actual damages." S.D. Codified Laws § 37-24-31. | Requires "proof of an intentional misrepresentation or concealment of a fact on which plaintiff relied and that caused an injury to plaintiff." *Nw. Pub. Serv. v. Union Carbide Corp.*, 236 F. Supp. 2d 966, 973-74 (D.S.D. 2002). | Omissions of "material fact" constitute a deceptive act or practice. S.D. Codified Laws § 37-24-6(1). | A deceptive act/omission must be knowing and intentional. S.D. Codified Laws § 37-24-6(1). | Actual damages only; no punitive damages. S.D. Codified Laws § 37-24-31; *Wyman v. Terry Schulte Chevrolet, Inc.*, 584 N.W.2d 103, 107 (S.D. 1998). Actual damages synonymous with compensatory damages. *Wyman v. Terry Schulte Chevrolet, Inc.*, 584 N.W.2d 103, 107 (S.D. 1998). | None found. |
| **TENNESSEE** *Consumer Protection Act* Tenn. Code Ann. § 47-18-101 *et seq.* | Private right of action, but class actions not allowed. Tenn. Code Ann. § 47-18-109(a)(1); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 308-11 (Tenn. 2008). Plaintiff must have purchased goods for individual, personal, family, or household purpose. Tenn. Code Ann. § 47-18-103. | 1 year after discovery of deceptive act, but not more than 5 years after conduct. Tenn. Code Ann. § 47-18-110. | Requires "ascertainable loss of money or property." Tenn. Code Ann. § 47-18-109(a)(1). | Requires an "ascertainable loss ... as a result of the use or employment ... of an unfair or deceptive act or practice." Tenn. Code Ann. § 47-18-109(a)(1). No reliance requirement, but plaintiffs must show proximate cause of harm. *Harvey v. Ford Motor Credit Co.*, No. 03A01-9807-CV-00235, 1999 WL 486894, at *2 (Tenn. Ct. App. July 13, 1999) (proximate cause required). | Material omissions may be actionable. *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997). | Unfair or deceptive act "need not be willful or knowingly made to recover actual damages"; statute contemplates recovery for negligence. *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W. 249, 12-13 (Tenn. Ct. App. 1992). Willful and knowing acts required for trebled damages. *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12 (Tenn. Ct. App. 1992). | Actual damages and attorney's fees; discretionary treble damages for "willful and knowing" violation. Tenn. Code Ann. § 47-18-109(a)(1), (3); *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12 (Tenn. Ct. App. 1992). Punitive damages not available. *Paty v. Herb Adcox Chevrolet Co.*, 756 S.W.2d 697 (Tenn. Ct. App. 1988). | Damages can be limited to settlement offer. Tenn. Code Ann. § 18-109(a)(4). Defendants may recoup attorney's fees and costs from plaintiffs who bring frivolous action. Tenn. Code Ann. § 47-18-109(e)(2). |

-38-

000167

# VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **TEXAS** *Deceptive Trade Practices Act* Tex. Bus. & Com. Code § 17.41 et seq. | Private right of action and class actions allowed. Tex. Bus. & Com. Code § 17.50; *Mahoney v. Cupp*, 638 S.W.2d 257, 261 (Tex. App. 1982). | 2 years after occurrence or discovery by reasonable diligence. Tex. Bus. & Com. Code § 17.565; *McAdams v. Cap. Prods. Corp.*, 810 S.W.2d 290, 292-93 (Tex. App. 1991). | Must cause "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50(a). | Act or practice must be a "producing cause" of damages and "relied on by a consumer to the consumer's detriment." Tex. Bus. & Com. Code § 17.50(a). | The misrepresentation must be of a material fact. *Church & Dwight Co. v. Huey*, 961 S.W.2d 560, 567 (Tex. App. 1997). Failure to disclose information concerning goods and services known at the time of the transaction is prohibited. Tex. Bus. & Com. Code § 17.46(b)(24); *Willowbrook Foods v. Grinnell*, 147 S.W.3d 492, 506-07 (Tex. App. 2004). | Knowledge or intent is not an element unless required by a particular provision. *Smith v. Herco, Inc.*, 900 S.W.2d 852, 859 (Tex. App. 1995). To recover treble damages, defendant's actions must have been intentional. Tex. Bus. & Com. Code § 17.50(b). | Actual damages, mental anguish (if intentional); reasonable and necessary attorney's fees. Tex. Bus. & Com. Code § 17.50(b), (d); *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 860-61 (Tex. 1999). Punitive damages of not more than three times actual damages available for intentional acts. Tex. Bus. & Com. Code § 17.50(b); *Houston Livestock Show v. Hamrick*, 125 S.W.3d 555, 584 (Tex. App.). | Presuit notice letter by certified mail, including specific allegations and all damages sought, required at least 60 days before the complaint is filed. Tex. Bus. & Com. Code § 17.505. Defendants may recoup attorney's fees and costs from plaintiffs who bring a bad-faith or harassment action. Tex. Bus. & Com. Code § 17.50(c). |
| **UTAH** *Consumer Sales Practices Act* Utah Code Ann. § 13-11-1 et seq. | Private right of action allowed. Utah Code Ann. § 13-11-19 et seq. Act contains specific class action requirements. Utah Code Ann. § 13-11-20; Utah Code Ann. § 13-11-19(4). | 2 years. Utah Code Ann. § 13-11-19(8). | Requires that plaintiff suffer a "loss." Utah Code Ann. § 13-11-19(2). "Loss" should be construed more broadly than "damages." *Andreason v. Felsted*, 137 P.3d 1, 4 (Utah Ct. App. 2006). | Requires plaintiff suffer loss as a result of violations of the Act. Utah Code Ann. § 13-11-19(2). | Omissions are likely actionable. *See FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988). | Requires knowing or intentional deceptive act or practice. Utah Code Ann. § 13-11-4(2) (2006); *Ronson v. Conover*, 20 P.3d 876, 883 (Utah 2001). | In individual actions, greater of actual damages or $2,000; reasonable attorney's fees. Utah Code Ann. § 13-11-19(2), (5). In class actions, equitable relief ONLY unless specific actions of defendant previously declared unlawful by court or other authority. Utah Code Ann. § 13-11-19(4) (2006). | Bona fide error defense limits remedy to amount defendant was unjustly enriched. Utah Code Ann. § 13-11-19(4)(a). Good faith is an affirmative defense. Utah Code Ann. § 13-11-2(6); *Sampson v. Richens*, 770 P.2d 998, 1005 (Utah Ct. App. 1989). |

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **VERMONT**<br>*Consumer Fraud Act*<br>9 Vt. Stat. Ann. § 2451 *et seq.* | Private right of action and class actions allowed.<br>9 Vt. Stat. Ann. § 2461(b).<br>*Vermont Mobile Home Owners' Ass'n, Inc. v. Lapierre*, 94 F.Supp.2d 519 (D. Vt. 2000). | 6 years.<br>12 Vt. Stat. Ann. § 511. | Suit can be brought by "[a]ny consumer who contracts for goods or services in reliance upon false or fraudulent representations … or who sustains damages or injury as a result of any false or fraudulent representations."<br>9 Vt. Stat. Ann. § 2461(b). | Cause of action available to consumer who contracts for goods or services in reliance upon false or fraudulent representations or who sustains damages or injury as a result of such representations.<br>9 Vt. Stat. Ann. § 2461(b).<br>Actual reliance not required; a statement need only be capable of misleading the consumer.<br>*Jordan v. Nissan N. Am.*, 853 A.2d 40, 44 (Vt. 2004). | The misleading effects must be material measured by an objective standard, that is, likely to affect a reasonable consumer's conduct or decision with regard to a product.<br>*Carter v. Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998). | No intent or bad faith required.<br>*Winston v. Johnson & Dix Fuel*, 515 A.2d 371, 376 (Vt. 1986); *Poulin v. Ford Motor Co.*, 513 A.2d 1168, 1171 (Vt. 1986).<br>If defendant knows or should know that omission is important, materiality is presumed.<br>*Carter v. Gugliuzzi*, 716 A.2d 17, 23–24 (Vt. 1998). | Actual damages, reasonable attorney's fees, exemplary damages not to exceed three times actual damages.<br>9 Vt. Stat. Ann. § 2461(b);<br>*Gramatan Home Investor's Corp. v. Starling*, 470 A.2d 1157, 1161–62 (1983). | No derivative liability absent direct participation in the unfair or deceptive acts, direct aid to the actor, or a principal/agent relationship.<br>*State v. Stedman*, 547 A.2d 1333, 1335–36 (Vt. 1988). |

- 40 -

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **VIRGINIA**<br>*Consumer Protection Act*<br>Va. Code Ann. § 59.1-196 *et seq.* | Private right of action allowed, but class actions generally not allowed.<br>Va. Code Ann. § 59.1-204(A); *Almeter v. Va. Dep't of Taxation*, 2000 WL 1687389 at *1 n. 1 (Va.Cir.Ct. 2000). | 2 years.<br>Va. Code Ann. § 59.1-204.1(A).<br>Right of action runs from the date of injury and not from the date of discovery unless claim is solely equitable.<br>Va. Code Ann. § 8.01-230. | Actual loss required to initiate an action.<br>*Gavin v. Koons Buick Pontiac GMC Inc.*, 28 Fed.Appx. 220, 223 (4th Cir. Jan. 14, 2002); *Alston v. Crown Auto, Inc.*, 224 F.3d 332, 336 (4th Cir. 2000). | Requires "loss as the result of a violation" of the Act.<br>Va. Code Ann. § 59.1-204(A).<br>*Polk v. Crown Auto, Inc.*, 228 F.3d 541, 543 (4th Cir. 2000); *Alston v. Crown Auto, Inc.*, 224 F.3d 332, 336 (4th Cir. 2000).<br>Reliance element of fraud is necessary to state a claim.<br>*Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 188 (E.D. Va. 2005); *Weiss v. Cassidy Dev. Corp.*, 2003 WL 22519650, at *2 (Va. Cir. Ct. Aug. 18, 2003); *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717 (Va. 2001). | "Under Virginia law, a false misrepresentation must be of an existing fact, not a mere expression of an opinion."<br>*Graham v. RRR, LLC*, 202 F.Supp.2d 483, 491 (E.D. Va. 2002), *aff'd per curiam sub nom Graham v. Geneva Enters., Inc.*, 55 Fed. App'x. 135 (4th Cir. 2003); *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 718 (Va. 2001) | Intent requirement of fraud applies.<br>*Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 188 (E.D. Va. 2005); *Weiss v. Cassidy Dev. Corp.*, 2003 WL 22519650, at *2 (Va. Ct. Ct. Aug. 18, 2003).<br>Misrepresentation by omission of a material fact requires evidence of a "knowing and deliberate 'decision' to conceal the fact.<br>*Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 718 (Va. 2001). | Greater of actual damages or $500, reasonable attorney's fees, and costs; If the violation was willful, treble damages or $1,000.<br>Va. Code Ann. § 59.1-204(A)-(B). | If a defendant tenders a cure offer, it cannot be liable for attorney's fees or costs unless the cure offer.<br>Va. Code Ann. § 59.1-204(C).<br>Bona fide error or lack of control is a defense; attorney's fees can be awarded nonetheless.<br>Va. Code Ann. § 59.1-207.<br>Acceptance of cure offer forecloses further actions based on the same allegation of fact.<br>Va. Code Ann. § 59.1-204(A). |

- 41 -

LEGAL02/32545409v1

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **WASHINGTON** *Unfair Business Practices—Consumer Protection Act* Wash. Rev. Code Ann. § 19.86.010 *et seq.* | Private right of action and class actions available. Wash. Rev. Code Ann. § 19.86.090. *Smith v. Behr Process Corp.,* 54 P.3d 665, 675 (Wash. Ct. App. 2002). | 4 years. Wash. Rev. Code Ann. § 19.86.120. | Allows cause of action by "[a]ny person who is injured in his or her business or property by a violation" of the Act. Wash. Rev. Code Ann. § 19.86.090. *Nordstrom, Inc. v. Tampourlos,* 733 P.2d 208, 210-11 (1987) (plaintiff must show "injury"). *Girard v. Myers,* 694 P.2d 678, 685-86 (Wash. Ct. App. 1985). | A "causal link" must exist "between the unfair or deceptive act and the injury suffered." *Pickett v. Holland Am. Line-Westours, Inc.,* 35 P.3d 351, 360 (Wash. 2001). *Leingang v. Pierce County Med. Bureau, Inc.,* 930 P.2d 288, 296 (Wash. 1997). A plaintiff establishes causation by showing that he or she "relied upon a misrepresentation of fact." *Robinson v. Avis Rent-A-Car Sys. Inc.,* 22 P.3d 818, 823 (Wash. Ct. App. 2001). Other cases indicate that a plaintiff need not prove reliance to establish an unfair trade practice. *State v. A.N.W. Seed Corp.,* 802 P.2d 1353 (1991), *Washington v. Williams Chrysler Plymouth,* 553 P.2d 423 (Wash. 1976); *Testo v. Russ Dunmire Olds,* 554 P.2d 349 (Wash. Ct. App. 1976). | The "knowing failure to reveal something of material importance is 'deceptive' within the [Act]." *Robinson v. Avis Rent-A-Car Sys. Inc.,* 22 P.3d 818, 824 (Wash. Ct. App. 2001). *Griffin v. Centex Real Estate,* 969 P.2d 486 (Wash. App. Ct.1998) (failure to disclose known defect in goods constitutes an unfair trade practice). | Intent not required "if the action has the capacity to deceive a substantial portion of the purchasing public." *Hamer v. Quincy Farm Chems., Inc.,* 649 P.2d 828, 831 (Wash. 1982). | Actual damages, attorney's fees, discretionary treble damages not to exceed $25,000. Wash. Rev. Code Ann. § 19.86.090. | Defense if acts or practices complained of have an adverse effect on the public interest or are reasonable in relation to the development and preservation of business. Wash. Rev. Code Ann. § 19.86.920; *Leingang v. Pierce County Med. Bureau, Inc.,* 930 P.2d 288, 296 (Wash. 1997). |

- 42 -

VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| WEST VIRGINIA Consumer Credit and Protection Act W. Va. Code Ann. § 46A-1-101 et. seq. | Private right of action and class actions allowed. W. Va. Code Ann. § 46A-6-106(a). In re W. Va. Rezulin Litig., 585 S.E.2d 52, 74 (W. Va. 2003). | 2 years. W.Va. Code Ann. § 55-2-12. Statute of limitations begins to run when fraud discovered or should have been discovered by reasonable diligence. Brumbaugh v. Princeton Partners, 985 F.2d 157, 161-62 (4th Cir. 1993). | Plaintiff must suffer "ascertainable loss of money" in order to bring a claim. W. Va. Code Ann. § 46A-6-106(a). A consumer is not required to list a specific amount of actual damages. In re W. Va. Rezulin Litig., 585 S.E.2d 52, 75 (W.Va. 2003). | "Ascertainable loss" as a result of prohibited act. W. Va. Code Ann. § 46A-6-106(a). Deceptive acts prohibited "whether or not any person has in fact been misled, deceived or damaged thereby." W. Va. Code Ann. § 46A-6-102(7)(M). Reliance on affirmative misrepresentations must be proven in certain instances. White v. Wyeth, 705 S.E.2d 828, 837 (W.Va. 2010). | In false advertising claims, the offending misrepresentation must be a "material fact." W. Va. Code Ann. § 46A-6-102(7)(M). Prohibited omissions must be made with intent to deceive. W. Va. Code Ann. § 46A-6-102(7)(M). | In false advertising claims, the offending misrepresentation must be made "with intent that others rely upon" it. W. Va. Code Ann. § 46A-6-102(7)(M). | Greater of actual damages or $200. W.Va. Code Ann. § 46A-6-106(a). Punitive damages and attorney's fees are not allowed. Virden v. Altria Group, Inc., 304 F.Supp.2d 832, 850 (N.D. W.Va. 2004). | Act should not be construed "to prohibit acts or practices which are reasonable in relation to the development and preservation of business." W. Va. Code Ann. § 46A-6-101(2). Must notify defendant of alleged violation and provide 20 days for cure offer in certain instances. W. Va. Code Ann. § 46A-6-106(b). |

- 43 -

LEGAL02\32545609v1

000172

## VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **WISCONSIN**<br><br>*Deceptive Trade Practices Act*<br><br>Wis. Stat. Ann. § 100.18. | Private right of action and class actions allowed.<br><br>Wis. Stat. Ann. § 100.18(11)(b)(2).<br><br>*Tietsworth v. Harley-Davidson, Inc.*, 2003 WI App. 75, 661 N.W.2d 450 (Wis. Ct. App. 2003), *overruled on other grounds by* 2004 WI 133, 677 N.W.2d 233 (Wis. 2004). | 3 years.<br><br>Wis. Stat. Ann. § 100.18(11)(b)(3).<br><br>Discovery rule does not apply.<br><br>*Skrupky v. Elbert*, 526 N.W.2d 264, 273-74 (Wis. Ct. App. 1994); Wis. Stat. Ann. § 100.18(11)(b)(3). | A plaintiff must have suffered "pecuniary loss."<br><br>Wis. Stat. Ann. §§ 100.18(11)(b)(2).<br><br>*Rensch v. Roob*, 2000 WI App 76, 610 N.W.2d 168, 176 (Wis. Ct. App. 2000). | Pecuniary loss must be "because of a violation" of Section 100.18 in order to state a claim.<br><br>Wis. Stat. Ann. § 100.18(11)(b)(2).<br><br>Plaintiffs must "show a causal connection between the defendants' alleged conduct and any pecuniary loss suffered."<br><br>*Valente v. Sofamor, S.N.C.*, 48 F.Supp.2d 862, 874 (E.D. Wis. 1999).<br><br>Individual reliance required.<br><br>*Valente v. Sofamor*, 48 F. Supp. 2d 862, 874 (E.D. Wis. 1999); *State v. Sonnens*, 361 N.W.2d 728, 731 (Wis. Ct. App. 1984). | Representation must be untrue, deceptive or misleading. Puffery is not actionable.<br><br>*State v. Am. TV & Appliance of Madison, Inc.*, 430 N.W.2d 709, 712 (Wis. 1988).<br><br>Material omissions not actionable.<br><br>*Tietsworth v. Harley Davidson*, 677 N.W.2d 233, 245 (Wis. 1999) | Representation must be made with knowledge the representation was false.<br><br>*Tietsworth v. Harley Davidson*, 677 N.W.2d 233, 239 (Wis. 1999).<br><br>There is strict liability for misrepresentations.<br><br>*Shepard Invs. Int'l, Inc. v. Verizon Commc'ns, Inc.*, 373 F.Supp.2d 853, 872 (E.D. Wis. 2005).<br><br>"Plaintiffs must show that the defendants intentionally induced the public to purchase merchandise."<br><br>*Valente v. Sofamor, S.N.C.*, 48 F.Supp.2d 862, 874 (E.D. Wis. 1999). | Allows only actual damages, costs and reasonable attorney's fees.<br><br>Wis. Stat. Ann. § 100.18(11)(b)(2) (2006); *Sydney v. Badgerland Mobile Homes, Inc.*, 659 N.W.2d 887 (Wis. App. 2003).<br><br>Discretionary doubling of pecuniary damages. Wis. Stat. Ann. § 100.20(5).<br><br>Punitive damages are recoverable but plaintiffs cannot get duplicative recovery through Wis. Stat. Ann. § 100.20(5).<br><br>*Saey v. Gardner*, 541 N.W.2d 837 (Wis. App. Ct. 1995). | Discovery rule does not apply to toll the statute of limitations.<br><br>*Skrupky v. Elbert*, 526 N.W.2d 264, 273-74 (Wis. Ct. App. 1994).<br><br>Good faith may be an affirmative defense.<br><br>*Am. Fed. of State v. Brown County*, 432 N.W.2d 571 (Wis. 1988). |

**VARIATIONS IN STATE CONSUMER PROTECTION AND DECEPTIVE TRADE PRACTICE LAWS**

| Jurisdiction/ Legal Authority | Private Right of Action & Class Action Prohibition | Statute of Limitations & Discovery Rule | Actual Injury/ Deception | Reliance or Proximate Causation | Affirmative Acts/ Material Omissions | Scienter & Level of Culpability | Damages & Remedies | Other Defenses & Features |
|---|---|---|---|---|---|---|---|---|
| **WYOMING** *Consumer Protection* Wyo. Stat. Ann. § 40-12-101 *et seq.* | Private right of action and class actions allowed. Wyo. Stat. Ann. § 40-12-108. Cause of action only for "uncured unlawful deceptive trade practices." Wyo. Stat. Ann. § 40-12-108(a); § 40-12-109 (2006). An "uncured" practice is one that remains unresolved after the consumer provides statutory notice to the alleged violator. Wyo. Stat. Ann. § 40-12-102(a)(x). | Written notice of the alleged violation must be given to defendant within one year of discovery or two years of occurrence, whichever is first. Wyo. Stat. Ann. § 40-12-109. | Plaintiff may bring an action for "the damages he has actually suffered." Wyo. Stat. Ann. § 40-12-108(a). | Damages "actually suffered as a consumer as a result of such unlawful deceptive trade practice." Wyo. Stat. Ann. § 40-12-108(a). | Undecided. | Requires that defendant "knowingly ... engages in unfair or deceptive acts or practices." Wyo. Stat. Ann. § 40-12-105(a). | Allows only actual damages and reasonable attorney's fees; any monies recovered in a class action which cannot be restored to consumers within one year after final judgment shall be returned to the defendants. Wyo. Stat. Ann. § 40-12-108(b). May receive attorney's fees in class action only if actual damages found and awarded. Wyo. Stat. Ann. § 40-12-108(b). | Prefiling demand notice requesting cure required within the earlier of 1 year of discovery or 2 years following the consumer transaction. Wyo. Stat. Ann. §§ 12-109; 40-12-102(a)(x); 40-12-108(a). |

- 45 -

000174