# EXHIBITS FF

# REDACTED DECLARATION OF HAJIME KITAMURA

| | |
|---|---|
| CARI K. DAWSON (GA SBN 213490)<br>Email: cari.dawson@alston.com<br>**ALSTON + BIRD LLP**<br>1201 West Peachtree Street<br>Atlanta, GA 30309<br>Telephone: (404) 881-7766<br>Facsimile: (404) 253-8567 | VINCENT GALVIN, JR. (CA SBN 104448)<br>Email: vincent.galvinjr@bowmanandbrooke.com<br>**BOWMAN AND BROOKE**<br>1741 Technology Drive, Suite 200<br>San Jose, CA 95110<br>Telephone: (408) 279-5393<br>Facsimile: (408) 279-5845 |
| LISA GILFORD (CA SBN 171641)<br>Email: lisa.gilford@alston.com<br>**ALSTON + BIRD LLP**<br>333 South Hope Street, 16th Floor<br>Los Angeles, CA 90071<br>Telephone: (213) 576-1000<br>Facsimile: (213) 576-1100 | JOEL SMITH (SC SBN 5266)<br>Email: joel.smith@bowmanandbrooke.com<br>**BOWMAN AND BROOKE**<br>1441 Main Street, Suite 1200<br>Columbia, SC 29201<br>Telephone: (803) 726-7420<br>Facsimile: (803) 726-7421 |
| *Lead Defense Counsel for Economic Loss Cases* | *Lead Defense Counsel for Personal Injury/Wrongful Death Cases* |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL ECONOMIC LOSS CASES | Case No.: 8:10ML2151 JVS (FMOx)<br><br>REDACTED (PREVIOUSLY FILED UNDER SEAL) DECLARATION OF HAJIME KITAMURA IN SUPPORT OF (1) TOYOTA'S RESPONSE TO CERTAIN ECONOMIC LOSS PLAINTIFFS' MOTION FOR THE APPLICATION OF CALIFORNIA LAW AND (2) TOYOTA'S CROSS-MOTION FOR CHOICE-OF-LAW DETERMINATION AS TO ALL ECONOMIC LOSS CASES AND PLAINTIFFS BEFORE THIS COURT<br><br>Date: May 16, 2011<br>Time: 3:00 p.m.<br>Location: Court Room 10C<br>Judicial Officer: Hon. James V. Selna |

1

REDACTED (PREVIOUSLY FILED UNDER SEAL) DECL OF HAJIME KITAMURA IN SUPPORT OF (1) TOYOTA'S RESPONSE TO CERTAIN ECONOMIC LOSS PLAINTIFFS' MOTION FOR THE APPLICATION OF CALIFORNIA LAW AND (2) TOYOTA'S CROSS-MOTION FOR CHOICE-OF-LAW DETERMINATION

LEGAL02/32564775v1

# DECLARATION OF HAJIME KITAMURA

I, Hajime Kitamura, declare and state as follows:

1. I started working at Toyota Motor Sales Co., Ltd. in 1981. Approximately one year later, Toyota Motor Sales Co., Ltd. and Toyota Motor Co., Ltd. merged into Toyota Motor Corporation ("TMC"), and I have been employed by TMC since that time. I have held various positions at TMC throughout my extensive tenure and have worked in a number of different departments and divisions, including the Service Department and the Customer Relations Department/Division.

2. From 1981, when I started working, to the present, I have worked in service- or quality-related departments of TMC. For the first five or six years, I worked on domestic (*i.e.*, Japanese) service-related matters. I was responsible for drafting instruction manuals for the repair and rebuilding of automatic transmission systems. In about February 1987, I transferred to the Customer Relations Department, where I was responsible for coordinating with dealerships to respond to customer complaints. Starting in January 1996, I was assigned to the Quality Division, where I was responsible for quality assurance for the Land Cruiser, RAV-4, and Ipsum.

3. Starting in 2001, I was promoted to Group Manager of the Quality Division, and was responsible for information-gathering and problem solving for the Camry, Lexus ES, the MR2, and certain front-wheel-drive vehicles. In 2004, I became a Department General Manager, responsible for oversight of information-gathering and problem solving for all passenger cars. A corporate reorganization occurred in January 2005, and the Customer Quality Engineering Division spun off from the Quality Division.

4. At around that time, in approximately January of 2005, when TMC's Customer Quality Engineering Division ("CQE-J") was organized into its own division, I became a Department General Manager in CQE-J. In that role, I am responsible for oversight of information-gathering and problem-solving for domestic

2
DECL. OF HAJIME KITAMURA IN SUPPORT OF DEFS.' RESPONSE TO CERTAIN ECONOMIC LOSS PLAINTIFFS' MOTION FOR THE APPLICATION OF CALIFORNIA LAW

LEGAL02/32329285v1

cars, and communicating with the Japanese Ministry of Land, Infrastructure, Transport and Tourism ("MLIT"). I was also responsible for communicating with the National Highway Traffic Safety Administration ("NHTSA") until June, 2010.

5. Given my position as a Department General Manager and my long tenure with TMC, I am very knowledgeable regarding the overall responsibilities assigned to and the processes utilized by the departments within CQE-J, as well as the collaboration between CQE-J and other groups within TMC and other Toyota companies throughout the world regarding vehicle quality decisions. Specifically, I am very familiar with CQE-J's roles and function in collecting, investigating and responding to quality information received from the field regarding potential quality issues for Toyota, Lexus and Scion vehicles within the United States, CQE-J's management of the analysis into such quality issues, and the recall decision-making process.

6. Except where indicated to the contrary, I have personal knowledge of the following facts – either based on personal recollection or my review and analysis of business records kept in the ordinary course of business by myself or my staff during the time period in question – and would swear and testify thereto if called as a witness.

7. I was a corporate deponent under Rule 30(b)(6) during Phase I of the MDL litigation, and this declaration elaborates upon that testimony.

8. I reviewed this declaration with the assistance of a translator, Ms. Satoe Ohari, fluent in Japanese and English, so that I could confirm its accuracy in my native language before executing it. (The translator's declaration, stating that this declaration was translated accurately, adding and omitting nothing, is attached here to as Exhibit 1).

### General Responsibilities of CQE-J

9. As used in this declaration, I define "quality issue(s)" as the issues related to vehicle function and/or mandatory regulations. It does not refer to the

issues related only to merchantability, such as quality of painting, etc. Moreover, the quality issues to which I am referring in this declaration relate to the claims at issue in this litigation, which I understand concern the claims of unintended acceleration, including but not limited to claims based on the Electronic Throttle Control System ("ETCS"), in Toyota, Lexus, and Scion vehicles, and the time period from 1998 through March 2010.

10. CQE-J is one (1) of three (3) divisions within TMC's Quality Group (the other two divisions are the Quality Division and the Customer Relations Division). Generally, CQE-J is responsible for obtaining, investigating and responding to quality information received from the field about Toyota, Lexus and Scion vehicles, including the vehicles which are the subject of this litigation. Analysis of information received from the field about alleged unintended acceleration (including but not limited to claims based on the ETCS) is conducted primarily by CQE-J in collaboration with other groups within TMC in Japan (including but not limited to groups involved in design, service, and engineering functions). CQE-J is also responsible for determining the approach and establishing guidelines for investigation of quality issues related to alleged unintended acceleration. Further, CQE-J is primarily responsible, in collaboration with other groups within TMC in Japan, for the decision-making regarding necessary improvements with respect to vehicle quality issues for vehicles in the field, and has had that responsibility since 2005. From 1998-2004, the remainder of the time period relevant to this litigation, this role was fulfilled by departments within Quality Division before the reorganization described above. For simplicity, when I refer to "CQE-J" I mean to include the various portions of Quality Division that had such similar functions from 1998-2004. During the relevant time period, TMC was the ultimate decision-maker regarding whether and how to address quality issues regarding alleged unintended acceleration, including recall decisions

and decisions regarding any field fix or countermeasures for issues related to alleged unintended acceleration.

11. The field performance analysis conducted at TMC is not limited to the United States. However, for purposes of this litigation, which I understand involves claims arising out of vehicles sold in the United States, my declaration is focused upon TMC's role regarding the vehicle quality issues being litigated in the MDL during the period from 1998 through approximately March 2010, including but not limited to TMC's role in collecting and analyzing field performance data, problem solving and the recall decision-making process. In short, from 1998 through March 2010, TMC was the ultimate decision-maker for the recall decision-making process.

12. During the time period that I understand is relevant to this litigation, TMC received information about the performance of Toyota, Lexus and Scion vehicles from multiple sources, including but not limited to NHTSA, customer complaints, warranty information, Field Technical Reports ("FTRs"), Dealer Product Reports ("DPRs"), and Market Impact Summaries ("MIS's").



13. ███████████████████████████████████████████ Contrary to the statements made by Plaintiffs in their briefing related to choice of law, the decision-making regarding quality issues and what to disclose to NHTSA was done in Japan, not California.

### Information Submitted to NHTSA

14. Whenever NHTSA elects to investigate complaints regarding Toyota, Lexus or Scion vehicles, a liaison group within CQE-J in Japan is tasked with developing a response to any specific inquiries made by NHTSA through collaboration with other TMC departments in Japan. During the time period relevant to this litigation, the CQE-J liaison group would develop a response and transmit the response to the Washington, D.C. office of Toyota Motor North America, Inc. ("TMA-DC"), which in turn submitted the information to NHTSA. TMC was ultimately responsible for the investigation of NHTSA complaints and the substance of the response to NHTSA. This was not a California function.

15. Most of the information that must be submitted to NHTSA's Office of Defect Investigation (ODI) under the Early Warning Reporting (EWR) regulations involves incidents and events that occurred in the United States. Information about such incidents and events is received by various Toyota affiliates, regional offices, contractors, and independent distributors and independent dealers throughout the United States.

16. Toyota's EWR reporting is the result of the combined efforts of TMC and some of its local distributors in the United States (TMS for the continental United

6
DECL. OF HAJIME KITAMURA IN SUPPORT OF DEFS.' RESPONSE TO CERTAIN ECONOMIC LOSS PLAINTIFFS' MOTION FOR THE APPLICATION OF CALIFORNIA LAW

LEGAL02/32329285v1

States; TdPR for the Puerto Rico and the USVI; Servco Pacific for Hawaii, and the local distributors for the U.S. territories in the Pacific Ocean). The incidents and events giving rise to the reports occur throughout the United States (the continental United States, Puerto Rico, the USVI, Hawaii and the U.S. territories in the Pacific Ocean) and, with respect to reports of deaths, throughout the world. ███████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

17. If TMC receives EWR information from TMS, it evaluates those materials and merges them with the EWR materials that it received from other local distributors and those that TMC itself prepared to create a final version of the entire quarterly EWR submission. During the time period relevant to this litigation, CQE-J was responsible for and would send the final version of the submission to TMA-DC, who arranged for the formal submission to ODI.

### TMC's Role in Responding to Quality Issues

18. The development of a countermeasure for a quality issue at Toyota is a collaborative process. A countermeasure can include, among other things, an engineering change for factory production, a proposed field repair in a field action (including through, among other things, a customer satisfaction campaign, a service campaign or a vehicle recall), or both.

19. Responsibility for engineering changes deployed as countermeasures in factory production related to unintended acceleration (including but not limited to

7
DECL. OF HAJIME KITAMURA IN SUPPORT OF DEFS.' RESPONSE TO CERTAIN ECONOMIC LOSS PLAINTIFFS' MOTION FOR THE APPLICATION OF CALIFORNIA LAW

LEGAL02/32329285v1

those based on the ETCS) resides and, in the relevant time period, resided with a number of divisions/departments at TMC in Japan. Generally speaking, the relevant design divisions/departments are and, in the relevant period, were responsible for counter-measures for factory production. During the relevant period CQE-J had the responsibility to consider and decide whether a field action should be taken and what the particular field action should be.

20. 

21.

22.

8

DECL. OF HAJIME KITAMURA IN SUPPORT OF DEFS.' RESPONSE TO CERTAIN ECONOMIC LOSS PLAINTIFFS' MOTION FOR THE APPLICATION OF CALIFORNIA LAW

LEGAL02/32329285v1

23. As Department General Manager for CQE-J, I understand that CQE-J is responsible for drafting all notification documents that are sent to government authorities, including in the United States, related to a decision to recall Toyota, Lexus and Scion vehicles.

24. During the time period at issue in this litigation, CQE-J made decisions about what needed to be improved or corrected with respect to quality issues through collaboration with other TMC development, design, manufacturing and engineering departments.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of March, 2011, at Toyota City.

北村 肇

Hajime Kitamura

9
DECL. OF HAJIME KITAMURA IN SUPPORT OF DEFS.' RESPONSE TO CERTAIN ECONOMIC LOSS PLAINTIFFS' MOTION FOR THE APPLICATION OF CALIFORNIA LAW

LEGAL02/32329285v1

# Exhibit 1

## Declaration of Satoe Ohari

I, Satoe Ohari, declare as follows:

I am fluent in Japanese and English. I accurately translated the attached Declaration of Hajime Kitamura and read it to the declarant on March 28, 2011 in the United States, which was March 29 in Japan, adding nothing and omitting nothing thereto. The declarant indicated that he understood it and agreed with its contents before signing it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28th day of March, 2011, in _Torrance_.


_____
Satoe Ohari

**ORIGINAL DOCUMENT FILED UNDER SEAL [Exhibits 2 and 3]**