1   Monica R. Kelly (Illinois Bar ID 6225920)
2   *monicakelly@ribbecklaw.com*
    *mervinmateo@ribbecklaw.com*
3   RIBBECK LAW CHARTERED
    505 N. Lake Shore Drive, Suite 102
4   Chicago, IL 60611
    Telephone: (312) 822-9999
5
6   *Lead Counsel for Foreign Economic
    Loss  Plaintiffs*
7
8
9
10              **UNITED STATES DISTRICT COURT**
11             **CENTRAL DISTRICT OF CALIFORNIA**
12                  **SOUTHERN DIVISION**
13

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:10ML2151 JVS (FMOx) **FOREIGN ECONOMIC LOSS PLAINTIFFS' OFFER OF PROOF IN RESPONSE TO COURT'S ORDER GRANTING MOTIONS TO DISMISS** |
| This Document Relates To: **FOREIGN ECONOMIC LOSS PLAINTIFFS** | |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ......................................................................................... 1

II.  OFFER OF PROOF ...................................................................................... 4

A.   Foreign Plaintiffs Will Resolve the Current
     Joinder Pleading Defendants in Their FELSAC ...................................... 4

B.   Foreign Plaintiffs Will Tie the Actions of the U.S.
     Toyota Defendants and TMC to the Claims of
     Foreign Plaintiffs Who Reside in Various Countries ............................. 16

C.   In Light of the Foregoing, Foreign Plaintiffs Plan
     to Re-Plead Their Claims Against TEMA .............................................. 18

III. CONCLUSION ........................................................................................... 21

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

**FEDERAL CASES**

*Anglo California National Bank of San Francisco v. Lazard,*
106 F.2d 693 (9th Cir. 1939) ...................................................... 4

*Dernick v. Bralorne Res. Ltd.,*
639 F.2d 196 (5th cir. 1981) ...................................................... 11

*McHenry v. Renne,*
84 F.3d 1172 (9th Cir. 1996) ...................................................... 4

*Nevijel v. North Coast Life Insurance Co.,*
651 F.2d 671 (9th Cir. 1981) ...................................................... 4

**STATE CASES**

*Heinrich v. Goodyear Tire and Rubber Co.,*
532 F.Supp. 1348, 1359 (D.Md. 1982) ...................................................... 12

*Polanco v. H.B. Fuller Company,*
941 F. Supp. 1512 (D. Minn. 1996) ...................................................... 13,14

I.     INTRODUCTION

Pursuant to this Court's directive, [1]  the Foreign Economic Loss Plaintiffs provide this "Offer of Proof" respectfully responding to the issues raised by this Court in its Order Granting Defendants' Motions to Dismiss the Amended Consolidated Foreign Plaintiffs' Complaint ("ACFPC") on April 8, 2011.

As the Court is aware, this action arises out of Foreign Plaintiffs' purchase of certain vehicles designed, marketed and sold by Defendant Toyota Motor Corporation ("TMC").  These vehicles will be specifically identified in the anticipated Foreign Economic Loss Plaintiffs' Second Amended Complaint (hereinafter referred to as the "FELPSAC") (to be filed on June 7, 2011 pursuant to the leave to re-plead granted by this Court in its April 8, 2011 Order) and consist of only Toyota-brand vehicles[2] (hereinafter "**Toyota Subject Vehicles**").[3]

---

[1] "[W]ithin 20 days of the entry of this Order, Plaintiffs shall file an offer of proof as to the following issues:
• How Plaintiffs would resolve the current joinder pleading defects;
• How Plaintiffs would tie the actions of the U.S. Toyota Defendants and TMC to any manufacturing claim in the various countries where the vehicles were manufactured; and
• How, in light of the foregoing requirement regarding manufacturing claim(s), Plaintiffs plan to replead claims against TEMA."
April 8, 2011 Order [Dkt. No. 1237] at 65.

[2] Toyota Subject Vehicles include only Toyota brand vehicles, such as the Camry, Corolla, RAV4, Tacoma, Auris, Altis and Yaris models purchased (or leased) by certain Foreign Plaintiffs.  The FELPSAC likely will exclude Lexus and Scion brand vehicles.

[3] Throughout this Offer of Proof, Foreign Plaintiffs make reference to a number of anticipated material changes in their forthcoming FELPSAC, which changes

Foreign Plaintiffs intend to pursue claims against Toyota a/k/a TMC for the harm caused to them by reason of their acquisitions of Toyota Subject Vehicles. While Toyota is a multi-national corporation, with business operations through subsidiaries in various countries throughout the world, including the United States, the company that caused the harm to the Foreign Plaintiffs is Toyota/TMC. There is no question Foreign Plaintiffs have rights against Toyota/TMC.

TMC's North American-based subsidiary, Toyota Motor North America, Inc. ("TMA"), is a holding company responsible for, *inter alia*, TMC's North American-based design and marketing operations.   These functions are conducted through  two (2) companies, both of whom have been sued by Foreign Plaintiffs: (1) Toyota Motor Engineering and Manufacturing North America, Inc. ("TEMA") and (2) Toyota Motor Sales, U.S.A., Inc. ("TMS").  As discussed more fully below (and as will be discussed in great detail in the anticipated FELPSAC), TEMA is principally responsible for implementing TMC's design decisions encapsulated in, "the Toyota Way", (including, *inter alia*, its defective design decisions concerning the electronic throttle control system ("ETCS" or "ETCS-i")) in the Subject Toyota Vehicles manufactured in North America (and then exported to other countries).   TMS, likewise, is principally responsible for implementing TMC's core marketing and sale message, "Made by TOYOTA", (including TMC's misrepresentations about the

respond directly to this Court's concerns raised in its April 8, 2011 Order.  For ease of reference by this Court, these changes are highlighted in **boldface** text.

purported safety of its Subject Toyota Vehicles) throughout North America.  As the FELPSAC will demonstrate, that message was disseminated and received throughout the world, including to the countries where Foreign Plaintiffs reside and purchased their Subject Toyota Vehicles.

To be clear, **Foreign Plaintiffs intend to pursue claims in their FELPSAC against TMC, TMA, TEMA and TMS only (collectively referred to herein as the "Toyota Defendants").**[4]  **Foreign Plaintiffs also intend to pursue claims against these Toyota Defendants only for  causes of action this Court did not dismiss with prejudice and which relate to Foreign Plaintiffs' theories of liability for design defect and improper marketing**[5]**: violations of RICO, 18 U.S.C. § 1962(c), consumer fraud (CLRA and UCL), fraudulent concealment, negligence, and design defect products liability.**[6]

---

[4]  To the extent Foreign Plaintiffs currently maintain any claims against **Defendant Toyota Motor Credit Corporation  ("TMCC")** in the wake of the Court's April 8, 2011 Order, such claims **will be dropped from the FELPSAC.**  *See* April 8, 2011 Order at 3,17, 64 (dismissing all claims against TMCC with prejudice).

[5]  *See* April 4, 2011 Hrg. Tr. at 11:23-12:1 (Ms. Gilford: "So by our analysis, that leaves Counts 1 through 3 and 10 through 12, 25 which arise under RICO, CLRA, UCL, fraudulent concealment, negligence, and a design defect products liability theory.")

[6]  To the extent Foreign Plaintiffs maintain **any claims for contract or warranty (relating to theories of manufacturing defect), or unjust enrichment**, in the wake of the Court's April 8, 2011 Order, such claims **will be dropped from the FELPSAC**.  *See* April 8, 2011 Order at 64-65 (dismissing claims).

Although the Court has granted leave to re-plead to Foreign Plaintiffs,[7] the Court also accepted the suggestion of Toyota at the April 4, 2011 hearing that certain issues should be subject to a preliminary offer of proof.  Without waiving any objections Foreign Plaintiffs may have to the procedural irregularity of providing such a preliminary "offer of proof" in advance of their submission of a formal pleading, but in the interest of assisting this Court in understanding Foreign Plaintiffs' amended claims (in the context of the overall MDL proceeding), Foreign Plaintiffs make this offer of proof to address the particular issues raised by the Court. These questions will be answered fully in the FELPSAC, and subsequent briefing thereon.

## II.    OFFER OF PROOF

### A. Foreign Plaintiffs Will Resolve the Current Joinder Pleading Defendants in Their FELPSAC.

The Court's concerns about joinder appear to center upon Toyota's claim of failure to join alleged indispensible parties as required by Rule 19.  April 8, 2010 Order at 17, *et. seq*.  Toyota's Motion to Dismiss claimed specifically that "the

---

[7] The Court's decision in this regard was consistent with prevailing case law that permits parties leave to re-plead in cases, as here, where such re-pleading will not be futile.  *See Nevijel v. North Coast Life Insurance Co.*, 651 F.2d 671 (9th Cir. 1981) (holding that a court should adopt less drastic alternatives, such as allowing leave to amend a complaint, as opposed to dismissal with prejudice); *see also, McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) (holding that plaintiffs should first be permitted to replead when it would not be considered futile by the court);  *Anglo California National Bank of San Francisco v. Lazard*, 106 F.2d 693 (9th Cir. 1939) (holding it was not error for district court to allow appellees leave to amend their complaint to conform to the proof).

complaint must be dismissed for failure to join necessary defendants who actually manufactured, distributed and sold the plaintiffs' vehicles…".  Dkt. No. 663-1 at 2. Toyota's argument then proceeds to urge that the Foreign Plaintiffs' complaint should be dismissed in its entirety and with prejudice because "Foreign Plaintiffs do not properly allege facts showing that each of their vehicles was manufactured in the U.S. by any U.S. Defendant.  *Id.* at 10 (citing VIN numbers for some, but not all, of Foreign Plaintiffs' vehicles); *see also*, April 8, 2011 Order at 20 (noting that "Toyota argues that the foreign entities who manufactured, distributed, advertised, repaired, sold and/or leased Plaintiffs' vehicles must be joined as necessary parties.")

In so arguing, Toyota misapprehends the nature of the Foreign Plaintiffs' complaint against it: **Foreign Plaintiffs allege Toyota is liable for design defect, not manufacturing defect**, as well as unfair and deceptive advertising about product safety and performance.  Respectfully, *where* any Subject Toyota Vehicle was assembled should be deemed irrelevant to such claims by Foreign Plaintiffs. Moreover, *by whom* such Subject Toyota Vehicles were manufactured also should be deemed irrelevant to such claims.

Foreign Plaintiffs allege, like their U.S.-based counterpart plaintiffs, that Toyota/TMC defectively designed their vehicles, and that the subsidiary manufacturers simply followed the defective design created by TMC.[8]  There is no

---

[8] Again, to the extent the Foreign Plaintiffs' prior pleading was deficient in this regard, the FELPSAC will cure any such deficiency.

question that TMC controls such design decisions, and therefore it should be held liable for such decisions.[9]  *See* Letter dated April 12, 2011 from Lisa M. Gilford at Ex. "D" hereto ("Gilford Letter"). ("The deposition testimony given in Phase 1 further indicates that the Domestic Toyota Entities…are not responsible for design, manufacturing or supply of the components involved in this case. Young Dep., 65:19-23 ("My understanding, accelerator pedals, TMC or Toyota Motor Corporation Japan, their design division, provides [the request for design and development proposal] and the standards.").

Toyota's myopic focus upon the situs of manufacture and the particular Toyota subsidiary that manufactured any particular vehicle model is misplaced; it is a red herring that should not distract this Court from the core issue concerning Foreign Plaintiffs' claims, **Foreign Plaintiffs' "proffer" makes clear that they do not intend to pursue any causes of actions for improper manufacture, distribution or repair.**  To underscore this point, Foreign Plaintiffs note that the "domestic" plaintiffs have sued no Toyota manufacturing entity whatsoever, despite the fact that several of the vehicle models included within their complaint were manufactured *outside of the United States*.  Attached hereto as Exhibit "A" is a

---

[9] For example, this Court has cited Field Technician Reports from 2006-2010 involving the Toyota Camry wherein technicians in Hong Kong "confirmed UA events" and complained directly to TMC, "strongly urg(ing) TMC to investigate since the problem was highly dangerous and the incidents were stacking up…". April 8, 2011 Order at 12-13.  This Court also has observed explicitly that the responsibility for design "falls to TMC, the parent corporation." *Id.* at 21.

printout from Toyota's website listing Toyota's worldwide manufacturing operations, consisting of "51 overseas manufacturing companies in 26 countries and regions."   U.S. plaintiffs have sued none of these entities, even though at least 5 Toyota vehicle models sold in the United States are actually manufactured outside the United States.  *See* Ex. "A" at 2 (listing Canada-based "Toyota Manufacturing Canada, Inc." ["TMMC"] as the manufacturer since 1988 of Corolla, Matrix, RX350 and RAV4 models) and listing Mexico-based "Toyota Motor Manufacturing de Baja California, S. de R.L. de C.V."  ("TMMBC") as the manufacturer since September 2004 of the Tacoma model trucks sold in North America).

In other words, Foreign Plaintiffs who reside in Mexico and bought Tacoma trucks – which were manufactured and sold in Mexico – would <u>not</u> be part of the case brought by "domestic" economic loss Plaintiffs.  Cf. April 8, 2011 Order at 21, m. 14 (noting that "[t]o the extent vehicles owned by putative members of the foreign class were manufactured in the United States…these Plaintiffs fall into the definition of the putative class set forth by the 'domestic' economic loss Plaintiffs. The same is true for Foreign Plaintiffs who reside in Canada and purchased Corolla, Matrix, RX 350 and RAV4 vehicles – which were manufactured and sold in Canada.[10]

---

[10] Foreign Plaintiffs' FELPSAC will seek to add in appropriate representatives from Canada who assert such Canadian claims.

- 7-

If the manufacturers of Subject Toyota Vehicles were truly "indispensible parties" to this lawsuit, one would expect this Court would have required the domestic plaintiffs to sue the domestic Toyota manufacturing subsidiaries, and other companies not affiliated with Toyota, like Subaru, Toyota's contract partner for the manufacture of Camry vehicles.  Camrys are at the heart of all plaintiffs complaints in this MDL, and yet domestic plaintiffs have not named Subaru.  Since 2007, TMC has contracted with Subaru for the manufacture of hundreds of thousands of allegedly defective Camry vehicles at a Subaru plant in Indiana owned by Subaru of Indiana Automotive, Inc. (SIA).  *See* Ex. "A" at 3.  If the manufacturer of a Toyota vehicle is truly an indispensible party, it is an indispensible party for all plaintiffs, and the Subaru-manufactured Camry plaintiffs should be dismissed (according to Toyota's logic).

Of course, Foreign Plaintiffs do not contend that the claims of any of these plaintiffs should be dismissed.  Instead, the point is, and will be in the context of their anticipated FELPSAC (which will continue to not name any manufacturing subsidiary of Toyota or any other company), whoever manufactured an allegedly defective Subject Toyota Vehicle did so pursuant to a design created and provided by TMC pursuant to "The Toyota Way."  *See Exhibit* "B"  (printout from Toyota's website describing Globalizing and Localizing Manufacturing).

"The Toyota Way" is manifested in Toyota's consistent moniker "Made by Toyota."  *See* Ex. "B" hereto.  While Toyota sought to globalize the production of its

vehicles over the years, TMC has always maintained control over design and quality assurance. As TMC's website touts, "[n]o matter where Toyota vehicles are made, they must have the same high level of quality" as any vehicle made in Japan. *Id*. TMC does not put the label "Made in the USA" or "Made in Japan" on its products; instead, it "opts for one label for all, 'Made by Toyota'". *Id*.

Globalization of "The Toyota Way" was further achieved by TMC "spread(ing) the 'Toyota Way' … by educating people." *Id*. TMC accomplished this by creating the Global Production Center (GPC) in 2003. The GPC is located in Toyota City, Japan. *Id*. The GPC establishes "best practices" to be implemented in the production of all Toyota vehicles worldwide. The GPC promulgates these "best practices" for all manufacturing entities. *See* "Role of the Global Production Center (GPC) fostering globally capable personnel" at Ex. "C" hereto. As the TMC website explains,

> [One] purpose of the GPC is teaching plant personnel how to prepare for the production of redesigned and different vehicle models. Traditionally, when production switched to a new model, a number of employees from Japan would be dispatched to overseas bases. *Now, members from all of the overseas affiliates gather at the GPC to refine the design drawings* and confirm feasibility of implementation.

*Id*. (Emphasis added)

The Subject Toyota Vehicle designs were created by TMC and provided by TMC to all fabricators, regardless of whether the manufacturers were owned by Toyota or not. TMC's counsel concedes as much. *See* Ex. "D" hereto (Letter dated

April 12, 2011 from Lisa M. Gilford) ("Gilford Letter").[11]   Importantly, Foreign Plaintiffs do not allege that any particular manufacturer was negligent in failing to follow the TMC design or GPC education about design for any Subject Toyota Vehicle; to the contrary, Foreign Plaintiffs allege (and will in the FELPSAC) that all relevant manufacturers simply followed The Toyota Way, and properly implemented the design specifications and training provided by TMC, either directly or by and through TMC's wholly-owned subsidiaries, such as TMA and/or TEMA.[12] Consequently, the manufacturer should be deemed irrelevant to Foreign Plaintiffs' theory of liability, instead of being deemed an "indispensible party", as Toyota contends.

In reviewing the record, and finding it "clear that the U.S. Toyota Defendants did not manufacture or distribute Plaintiffs' foreign vehicles", April 8, 2011 Order at 20-21, the Court found it "telling" that Foreign Plaintiffs had not "allege(d) that any of the named Toyota entities manufactured, distributed, and/or sold (or leased) their

---

[11] The Gilford Letter explains that TMC is responsible for the design of the Subject Toyota Vehicles, including, most importantly, the ETCS.  *Id.* at 3 ("Testimony provided by Fed.R.Civ.Proc. 30(b)(6) witnesses for the Toyota Defendants also indicates that the electronic throttle control system ('ETCS') and brake override systems *were developed in Japan by divisions of TMC*.")(Emphasis added)

[12] Foreign Plaintiffs are cognizant of this Court's many quotations from their prior pleading asserting, *inter alia*, claims against Toyota for the "manufacture, design, distribution, sale and lease of tens of millions of vehicles, or parts thereof," throughout the United States and the world.  April 8, 2011 Order at 19.  Any allegations about improper "manufacture, distribution, sale or lease" – to the extent they do not relate to the core claims of design defect and misrepresentations and/or deception in marketing and advertising – will not be included in the FELPSAC.

vehicles." *Id.* at 21. The Court found that "complete relief" could not be afforded in the absence of either naming the manufacturing subsidiary of Toyota, or alleging that the named Defendants were liable for the manufacture of the Subject Toyota Vehicles. *Id.* However, in so ruling, the Court appears to have been compelled by the Foreign Plaintiffs' allegations about manufacture, distribution, sale and repair, as they pertained to Foreign Plaintiffs' causes of action "implicating the manufacturer and designer". *Id.* (citing as examples Foreign Plaintiffs' claims based upon product liability for manufacturing defect and contract, both of which will be excised from the FELPSAC). Consequently, Foreign Plaintiffs respectfully submit that there is no proper record currently before this Court to adjudge the merits of the anticipated claims in the FELPSAC, in advance of such filing. Indeed, two further points should make this clear to the Court at this juncture.

First, in ruling that the vehicle manufacturers were "necessary parties" to Foreign Plaintiffs' causes of action, the Court observed that the determination of whether a party is "necessary" hinges on, among other things, "whether the conduct complained of was solely that of the parent company, TMC, and the other named Toyota entities." *Id.* at 20. The Court cited the case of *Dernick v. Bralorne Res. Ltd.*, 639 F.2d 196 (5th cir. 1981) as relevant precedent. Importantly, the *Dernick* case held that, where the parent company is the principal actor, the subsidiary company is <u>not</u> necessary and indispensable. 639 F.2d at 199. This decision stands for the proposition that the absence from this lawsuit of TMC's manufacturing

- 11-

subsidiary companies would not impair Foreign Plaintiffs' rights to obtain "complete relief" against TMC, given that Foreign Plaintiffs assert no claim for manufacturing defect.   Moreover, there has been no showing by TMC (or any other named defendant) that its right to contribution or indemnity would be diminished in any respect.  *See Heinrich v. Goodyear Tire and Rubber Co.*, 532 F.Supp. 1348, 1359 (D.Md. 1982).

Here, Foreign Plaintiffs allege (and will in their FELPSAC) that the unlawful conduct concerning the defective design of Subject Toyota Vehicles was solely that of TMC.  Foreign Plaintiffs contend that,  discovery will show that TMC provided its design specifications for certain North American manufactured vehicles through TEMA to its wholly owned subsidiary companies, like TMMC (in Canada) and TMMBC (in Mexico).  This was "The Toyota Way" throughout the relevant time period.   Consequently, the defect in the design of Subject Toyota Vehicles manufactured and sold in at least Canada and Mexico was caused by TMC.

If  discovery were to reveal later that any particular manufacturer was somehow complicit in TMC's unlawful conduct, such parties would simply become unnamed "joint tortfeasors" with TMC in TMC's unlawful conduct.  *Id.* at 1359, n. 21 (holding that "it is settled that [such parties are] not per se required under Rule 19", citing authorities); *see also*, April 8, 2011 Order at 22-23 ("the Court is mindful of the general rule that joint tortfeasors are permissive, rather than necessary, parties", *citing Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990)).  Because the

- 12-

manufacturers of the Foreign Plaintiffs' vehicles are not alleged (in the FELPSAC) to have been "active participants in the allegations that are critical to the disposition of the litigation," respectfully, this criterion should not be deemed to have been met. *Id.* at 23.

As the Court notes in the April 8, 2011 Order, the case of *Polanco v. H.B. Fuller Company*, 941 F. Supp. 1512 (D. Minn. 1996) is primarily a product liability action.   In *Polanco*, the plaintiff sued Fuller-U.S., the parent company, for the design of glue that allegedly directly caused the death of a young Guatemalan boy who was addicted to the adhesive.   However, the subsidiary, Fuller-Guatemala, physically manufactured and distributed the glue within Guatemala where the young boy lived.   The distinction is that, according to the former president of Fuller Guatemala, "Fuller-Guatemala purchased the rights to market adhesives and ***determined content of labeling***."   *Id* at 1522.   (Emphasis added).   The court in *Polanco* therein notes that, since the subsidiary is directly involved with the very core of the case, they may well wish to ascribe responsibility to the parent and should therefore be directly represented in the case. *Id.*   Furthermore, since the parent and the subsidiary will likely hold each other liable, that is, the subsidiary will blame the parent for the design, and the parent will blame the subsidiary for the content and manufacture of the glue, the subsidiary is a "necessary" party to the action. *Id.*

This is not the issue in the instant case:  TMC concedes it controls the design of its vehicles, and Foreign Plaintiffs allege that TMC controls decisions of safety. The subsidiary manufacturers and Subaru do not change TMC's design of the vehicles or "determine the content" of the manufacture of same.  TMC openly touts that the design of their vehicles is consistent throughout the world, that all of their vehicles have one label, "Made by TOYOTA," because they are manufactured from the very same design originated at TMC in accord with "the Toyota Way."  *See* Ex. "B" and  Ex. "D" at 3.   Again, Foreign Plaintiffs do not intend to pursue any causes of actions for improper manufacture, distribution or repair of Toyota vehicles.  This is a case about the defective design of certain vehicles, the very design controlled, admittedly, by TMC.

Furthermore, the Court in *Polanco* also notes that, "the subsidiary is not a necessary party where the facts to be proven 'against' the subsidiary are not the ultimate facts needed to make the plaintiff's case, but are merely ancillary proof of the case which lies against the parent."   *Id.* (*quoting, Gay v. AVCO Financial Services, Inc.*, 769 F. Supp. 51, 56 (D.P.R. 1991)).   The same is true in the instant case:  since TMC is ultimately responsible for, and directly controlled, the defective design of the vehicles owned by the Foreign Plaintiffs, the subsidiaries are not necessary parties, as the manufacture of the vehicles is not at issue in this case.

Therefore, the subsidiaries, or unnamed manufacturers, are not "actively involved" and are not "at the heart of" this case, and need not be joined as necessary parties to this action.

Second, since the Court's ruling, further information about the role of TMC's in the defective design of the Foreign Plaintiffs' vehicles has come to light, respectfully warranting this Court taking a "wait and see" approach to Foreign Plaintiffs' anticipated FELPSAC. On the day this Court's Order issued, TMC announced that it was "adjusting North American production due to parts availability following the March 11 Japan earthquake." *See* Article entitled, "Toyota Adjusting North American Production" at Ex. "E" hereto. A spokesman for TEMA is quoted as saying, "[t]he situation in Japan affects many automakers and many other industries. Extraordinary efforts are underway to help suppliers recover…. *We are slowing down to conserve parts* yet maintain production as much as possible." *Id.* (Emphasis added) This TMC press release has been followed by others (which will be incorporated into the FELPSAC) explaining that the slowdown in the manufacture of Toyota vehicles is occurring worldwide, demonstrating the impact TMC's manufacture of core parts, like the ETCS and brake override systems at issue in this case. *See* Gilford Letter at 3 (Ex. "D" hereto) (conceding that TMC is responsible for the design of the defective parts at issue). This simply underscores Foreign Plaintiffs' contention that TMC is the key defendant in this lawsuit, as the principal designer and supplier of core parts needed to construct Subject Toyota Vehicles.

This has been "The Toyota Way" throughout the relevant time period covered by this lawsuit.

For these reasons, it is respectfully submitted this Court should await the filing of the Foreign Plaintiffs' FELPSAC before proceeding to address any further the matter of joinder of purportedly necessary parties.

### B. Foreign Plaintiffs Will Tie the Actions of the U.S. Toyota Defendants and TMC to the Claims of Foreign Plaintiffs Who Reside in Various Countries.

At the outset, it is important to note that, as stated above, the **Foreign Plaintiffs do not claim liability against any Toyota Defendant for manufacturing defect**.[13]   Instead, Foreign Plaintiffs' claims are grounded in essentially two (2) theories of liability: (1) that subject Toyota vehicles were defectively designed by TMC, the parent corporation of all three (3) U.S.-based Defendants in this lawsuit, and (2) that TMC, by and through its subsidiaries in the U.S., misrepresented the safety of the subject Toyota vehicles and deceived Foreign Plaintiffs..   In other words, Foreign Plaintiffs maintain their lawsuit against TMC.  TMC is liable for both

---

[13] The Court's April 8, 2011 Order is replete with references to the importance of the subsidiary manufacturers of Subject Toyota Vehicles, based upon Foreign Plaintiffs somewhat boilerplate allegations of improper "design, manufacture, etc." Foreign Plaintiffs have noted this Court's express concerns about the accuracy of their references to the various parties in their pleading – *i.e.*, "all parties (and the Court) should continue to take care to be as precise and accurate as possible" – and intend to be very precise in their FELPSAC.  April 8, 2011 Order at 13-14, n.13.  In this vein, to the extent any claim for manufacturing defect may be gleaned from any of the allegations of the FELPSAC once filed, such claim is hereby (and will be later) expressly disavowed by the Foreign Plaintiffs.

design defect and consumer fraud.  At this juncture, Foreign Plaintiffs do not intend to pursue any other theories of liability against the parties they have sued.

TMC, as the ultimate parent corporation of multiple Toyota wholly-owned subsidiary companies (including TMA, TEMA, and TMS), designs and markets Toyota automobiles in North America (including Canada and Mexico, where certain Foreign Plaintiffs reside) and throughout the world (including all the other countries where the remaining Foreign Plaintiffs reside).

At all times material to this action, TMA has been a wholly-owned subsidiary of TMC.   TMA is the holding company for all of TMC's North American operations, covering sales, engineering, and manufacturing subsidiaries, and overseeing functions related to government and regulatory affairs, marketing and advertising, and corporate communications.   It is the Foreign Plaintiffs' belief that, TMA, in turn, has been a holding company responsible for Defendants TEMA and TMS.  TEMA is responsible for engineering, design, research and development, and manufacturing activities for TMC in Canada and Mexico, in addition to the United States.  In Canada, where certain Foreign Plaintiffs reside, TEMA operates the TMC subsidiary TMMC.  *See* Ex. "F" hereto. In Mexico, where certain Foreign Plaintiffs reside, TEMA operates TMMBC.  *Id.*

For the foregoing reasons, since Foreign Plaintiffs do not intend to assert any "manufacturing claim", they intend to focus their FELPSAC on the tie between TMC and the U.S. Toyota Defendants on their design defect and consumer fraud claims.

- 17-

### C. In Light of the Foregoing, Foreign Plaintiffs Plan to Re-Plead Their Claims Against TEMA.

Foreign Plaintiffs again reiterate that their claims do <u>not</u> concern any manufacturing defect, but rather the defective design of the vehicles by TMC and the misrepresentations consistently made by TMC and its subsidiaries regarding the safety of its vehicles.

TMC, as the ultimate parent corporation of multiple Toyota wholly-owned subsidiary companies (including TMA, TEMA, and TMS), designs and markets Toyota automobiles in North America (including Canada and Mexico, where certain Foreign Plaintiffs reside) and throughout the world (including all the other countries where the remaining Foreign Plaintiffs reside). Through TMA, which is the holding company of TEMA, TMC is responsible for the defective design of the vehicle parts used to manufacture the vehicles purchased by the Foreign Plaintiffs in the various countries in which they reside.

TEMA was and is a Kentucky corporation within the United States and a resident and corporate citizen of Kentucky. TEMA, with direct guidance from TMC via TMA, is responsible for engineering, design, and research and development activities for TMC in Canada and Mexico, in addition to the United States. As part of that responsibility, TEMA operates 13 parts and vehicle manufacturing plants across North America, with a 14th plant currently under construction in Mississippi. *See* Ex. "F" hereto. Specifically, TEMA operates Canadian Autoparts Toyota, Inc.,

which is located in Canada, and Toyota Motor Manufacturing de Baja California, S. de R.L. de C.V., which is located in Mexico, both countries in which certain Foreign Plaintiffs reside.  *Id.*

TMC designs and develops the defective components involved in this case, which are ultimately distributed globally to manufacture its vehicles.   In fact, in 2001, TMC defined its values and business methods vis a vis "The Toyota Way" in order to operate as a truly global company, and to ensure common corporate culture. "The Toyota Way," that is, universal corporate culture to ensure the same procedures throughout the world, including the countries in which the Foreign Plaintiffs reside, is the "backbone of all Toyota operations". *See* Ex. "B" hereto. To promote sharing of "The Toyota Way," the Toyota Institute was established in January 2002 as an internal human resources development organization. Since 2003, TMC's overseas affiliates in the United States, Europe, Asia, Africa, and Australia have established their own human resources training organizations modeled after the Toyota Institute to ensure global, common corporate culture.  *Id.*

TMC strives for consistent design of their vehicles and to ensure that their vehicles are manufactured the same way in each country per quality assurance, also per their current website.  Indeed, the electronic throttle control system ("ETCS") and brake override systems were designed and developed in Japan by divisions of TMC.  *See* Gilford Letter at 3 (Ex. "D" hereto). TMC in Japan is responsible for the design, development, engineering, and testing of the ETCS.  *Id.* Those very designs

- 19-

from TMC in Japan are directly brought to the United States (TEMA) and to all of TMC's subsidiaries to ensure that "The Toyota Way" is consistent universally.  TMC believed so much in consistent design and manufacture of its vehicles in each and every country that it created the Global Production Center ("GPC") in Japan to pull "The Toyota Way" through one center that would "spread the word" throughout the world, including all of the countries in which the Foreign Plaintiffs reside. *See* Ex. "B" hereto. The GPC was established to ensure consistent globalization and localization of TMC, including consistent design, development and production of its products, thereby also resulting in consistent defects.

The GPC, centered in Japan but carried through to TEMA and other TMC subsidiaries, is responsible for teaching plant personnel globally how to prepare for the production of redesigned and different vehicle models.    Traditionally, when production switched to the design of a new model of TMC vehicle, a number of employees from Japan would be dispatched to overseas bases, including those located in Canada and Mexico, in addition to the United States.  In fact, members from all of TMC's overseas affiliates gather at the GPC to refine the design drawings for vehicles and confirm feasibility of implementation.  To ensure that the design and manufacture of TMC's vehicles are consistent, and to provide quality assurance across the globe, new GPC offices were built in the United States, the United Kingdom, and Thailand in 2006. *See* Ex. "C" hereto.

TMC's vehicles are all designed and manufactured consistently throughout the world and the countries in which the Foreign Plaintiffs reside, as evidenced on TMC's website which states, "Toyota doesn't put a label on vehicles which say 'Made in The USA' or 'Made in Japan,' but instead opts for one label for all: 'Made by TOYOTA.'  This means that there is a need to spread Toyota's manufacturing philosophy – the 'Toyota Way' – to all of their overseas bases"  including the countries in which the Foreign Plaintiffs reside and which were affected by TMC's global advertising of the safety and reliability of their vehicles.  TMC educates and trains its employees within its regional GPCs in the United States, the United Kingdom and Thailand to carry out corresponding activities in the North American, European, and Asia-Pacific regions.

## III.   CONCLUSION

For the foregoing reasons, the Foreign Economic Loss Plaintiffs respectfully request that this Honorable Court accept this Offer of Proof as a foundation to allow the Foreign Plaintiffs to replead those claims and issues that have been dismissed without prejudice by this Court.

Foreign Plaintiffs' FELPSAC will not replead any manufacturing claims against TEMA.  It will replead claims of design defect against TEMA for all at least Canadian and Mexican Foreign Plaintiffs and at least these vehicles manufactured by TEMA subsidiaries outside the United States.

1

DATED:  April 28, 2011

2

RIBBECK LAW CHARTERED

3

By:_____/s/ Monica R. Kelly_____

4

5

Monica R. Kelly (Illinois Bar ID 6225920)
*monicakelly@ribbecklaw.com*
*mervinmateo@ribbecklaw.com*

6

RIBBECK LAW CHARTERED
505 N. Lake Shore Drive, Suite 102

7

Chicago, IL 60611
Telephone:  (312) 822-9999

8

9

*Lead Counsel for Foreign Economic Loss*

10

*Plaintiffs*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROOF OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on April 28, 2011.

/s/ Monica R. Kelly

Monica R. Kelly