UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation<br><br>This document relates to:<br><br>All Plaintiffs' Economic Loss Cases. | Case No. 8:10ML 02151 JVS (FMOx)<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR APPLICATION OF CALIFORNIA LAW |

    Presently before the Court is the Motion for the Application of California Law filed by a number of domestic economic loss Plaintiffs.  (Docket Nos. 810, 841 (sealed versions), 845-2 (public redacted version).)  Defendants have filed an Opposition to the Motion, and Plaintiffs have filed a Reply.  (Docket Nos. 1248-4 (Opp'n, public redacted version), 1354 (Reply, public redacted version).)  As set forth below, the Court denies the Motion.[1]

---

    [1]The Court deals with the Plaintiffs' "Administrative Motion" to Strike certain documents provided to the Court at the conclusion of the May 16, 2011 hearing in a separate Order issued on this date.  (Docket No. 1425.)

This action arises out of Plaintiffs' purchase of vehicles designed, manufactured, distributed, marketed, and sold by Defendants Toyota Motor Corporation dba Toyota Motor North America, Inc. ("TMC"), and its subsidiary, Toyota Motor Sales, U.S.A., Inc. ("TMS") (collectively, "Toyota" or "the Toyota Defendants").  Putative classes of domestic Plaintiffs seek damages for diminution in the market value of their vehicles in light of defects in those vehicles that have led to incidents of sudden, unintended acceleration ("SUA").

The term "Plaintiffs" or "Moving Plaintiffs," as used in this Order, generally refers to a subset of the domestic consumer Plaintiffs, as well as all the non-consumer Plaintiffs.  Two categories of consumer Plaintiffs are Moving Plaintiffs. The first category consists of those Plaintiffs who (a) reside in California, and (b) purchased or leased their vehicles in California. The second category consists of those Plaintiffs who (a) reside in a state other than California, and (b) purchased or leased their vehicles in a state other than California.[2]  The non-consumer Plaintiffs are businesses that operate in California, Missouri, Nevada, New Jersey, and Ohio. (¶¶ 74, 75, 85, 76, 71.)  All these Plaintiffs, regardless of their state of residence, filed their actions in California federal court.  (See Motion at 3 n.2.)  This is a pivotal fact in deciding the present Motion.

After extensive briefing, the Court expressly provided the opportunity for a subset of Plaintiffs to move for rulings regarding choice-of-law issues.  (See Docket No. 601.)  When, in conjunction with its Opposition to the present Motion,

---

[2] See ¶¶ 34-35, 39, 52, 59, 62, 64-65 (Plaintiffs falling into first category); ¶¶ 36-38, 40-51, 53-58, 60-61, 63, 66-69 (Plaintiffs falling into second category).

the Toyota Defendants filed their "Cross-Motion for Choice-of-Law Determination as to All Economic Loss Cases and Plaintiffs," the Court struck the Cross Motion. (Docket No. 1213.)  The Court therefore only considers Certain Economic Loss Plaintiffs' Motion for the Application of California Law.  (Docket No. 810).  The Court's inquiry is therefore limited to a determination of whether the Moving Plaintiffs may assert their claims under California law on behalf of a nationwide class.

The parties have developed an extensive factual record concerning Toyota's activities in California and throughout the United States.  The record provides a factual basis to take up Toyota's Due Process challenge and the application of a particular choice-of-law rule, here principally California's "governmental interest" approach.  However, the focus of this Order is whether the Court may adopt California's choice-of-law rule, not the application of that rule.  Accordingly, the Court has resisted the temptation to summarize those factual showings.

I.    Determining the Applicability of California's Choice-of-Law Rule.

The choice-of-law analysis requires a two-step inquiry.  First, the Court must determine whether California law may be applied to the Toyota Defendants consistent with constitutional Due Process.  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821-22 (1985); Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1187 (9th Cir. 2001).  For present purposes, the Court assumes that the Moving Plaintiffs can carry their burden to show that the factual record here satisfies the requirements of Due Process.  See Wash. Mut. Bank v. Superior Court, 24 Cal. 4th

906, 921 (2001).

Second, the Court must identify the applicable choice-of-law rule, and then determine whether the application of that rule permits selection of California law on a nationwide basis.

A.     Governing Federal Principles.

Plaintiffs' claim for the application of California's choice-of-law rule is based on constitutional first principles which require the application of the forum state's rule.  As the Supreme Court analyzed the principle in <u>Klaxon v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, 496 (1941):

> The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side. . . . Any other ruling would do violence to the principle of uniformity within a state upon which the [<u>Erie Railroad v. Tompkins</u>] decision is based.

<u>Id.</u> (internal citation and footnote omitted).  <u>Accord</u> <u>Zinser</u>, 253 F.3d at 1187; <u>cf.</u> <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 639 (1964) (Section 1404 transferee  forum applies the law in the same manner as transferor court).

4

Here, the Moving Plaintiffs represent, and the Toyota Defendants have not disputed, that all the Moving Plaintiffs filed their actions in California.  (See Motion at 1 n.1.)  Thus, in the first instance, long-standing federal principles lead to the application of California's law which employs a "governmental interest" analysis test.  Wash. Mut., 24 Cal. 4th at 919-20.[3]

But other considerations, some unique to multidistrict litigation, convince the Court that a fuller analysis compels a different result.  There are three independent but related reasons why the Court should not undertake the analysis suggested by Plaintiffs.  First, Supreme Court authority strongly suggests that a plaintiff's strategic decisions should not be permitted to dictate the applicable substantive law.  Second, granting the relief sought by Plaintiffs here would undermine the purposes of the present MDL because it fails to take into account the requirement that the cases retain their separate and distinct identities in a manner that facilitates their statutorily mandated return to their home states for trial.  Finally, granting the relief sought here would elevate the status of the Master Consolidated Complaint beyond that of a mere procedural device and would instead have the impermissible effect of altering the parties' substantive rights.

_____

[3]"Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California. . . . If . . . the trial court finds the laws are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its own law applied to the case. . . . Only if the trial court determines that the laws are materially different and that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied."  Wash. Mut., 24 Cal.4th at 919-20 (emphasis in the original, citations omitted, paragraph structure altered).

B.    <u>Strategic Decisions Cannot Conclusively Dictate Substantive Law.</u>

Plaintiffs' strategy has been crafted–thoughtfully and candidly–to maximize the case for adopting California's choice-of-law rules. The Moving Parties are a subset of the larger group of putative class members who reside in more than fifty different jurisdictions. In the ordinary course, the Moving Plaintiffs would find support in the case law for the application of California's choice of law, and potentially California's substantive law, to a nationwide class.

However, albeit in a slightly different context,[4] the Supreme Court has recognized the danger of permitting a plaintiff to choose the controlling law by virtue of his choice of where to file. <u>See</u> <u>Shutts</u>, 472 U.S. at 820. In <u>Shutts</u>, the Court rejected the Kansas Supreme Court's reliance on the plaintiffs' failure to opt out of claims asserted under Kansas law as a basis for the application of Kansas law to all plaintiffs. <u>Id.</u> The Court rejected the theory that one plaintiff should be able to assert claims under a particular state's law simply by choosing to file in that state:

> Even if one could say that the plaintiffs "consented" to
> the application of Kansas law by not opting out,
> plaintiff's desire for forum law is rarely, if ever
> controlling. In most cases the plaintiff shows his obvious

[4]The Toyota Defendants raise this concern in connection with their argument that Due Process is not satisfied by nationwide application of California law. (See May 16, 2011 Tr. at 30, 18-19 [hereinafter "Tr."].) The Court believes that this portion of <u>Shutts</u> has implications beyond the Due Process discussions.

wish for forum law by filing there.  If a plaintiff could
choose the substantive rules to be applied to an action the
invitation to forum shopping would be irresistible.

Id. (internal alteration marks, quotation marks, and citation omitted).

In the present litigation, there is no single plaintiff such as the individuals in Shutts who filed in California in order to achieve the desired result of the application of California substantive law to his or her claims.  Instead, here, there are a multitude of Plaintiffs, having filed in many states but consolidated before the Court in this multidistrict litigation, from which counsel may choose those Plaintiffs who might best achieve the desired result–application of California substantive law–on behalf of all Plaintiffs.  Thus, based on a strategic choice regarding which Plaintiffs should be designated as "Moving Plaintiffs," counsel seek the same result that, in a more ordinary case, counsel might seek to obtain through strategic selection of the forum in which to file a complaint.  Although the present case varies in form from a more ordinary case, it does not vary in substance as to the intent or the effect.  Thus, the manner in which relief is sought here is exactly the type of  procedural engineering that the Supreme Court in Shutts cautioned should not be determinative of which state's substantive law to apply. Granting the relief sought by Plaintiffs here would ignore this principle.

C.     Multidistrict Litigation Must be Managed in Manner that Maintains Separate and Distinct Identities of Individual Cases.

On a more immediate level, Plaintiffs' requested relief runs afoul of considerations regarding the nature of these multidistrict proceedings.  While effectively consolidated for pretrial purposes, the cases retain separate and distinct identities in preparation for their eventual return to their home states.

The statute authorizing the present multidistrict proceedings provides, in relevant part:

> (a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. . . . Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated . . . .

> (b) . . . The judge . . . to whom such actions are assigned . . . may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings.

28 U.S.C. § 1407.

Thus, an MDL proceeding like the present one is merely a collection of individual cases, combined to achieve efficiencies in pretrial proceedings.  MDL courts cannot lose sight of the separate and distinct nature of those actions.  As the Ninth Circuit recently summarized in In re Korean Air Lines Co. Antitrust Litig., __ F.3d __, No. 08-056385, 2011 WL 1458794, at *10 (9th Cir. Apr. 18, 2011):

> Within the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over.

Neither should an MDL be managed in a manner that fails to take into account that the cases are destined to be returned to their transferee jurisdictions.  See 28 U.S.C. § 1407(a)-(b); Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 40 (1998) (characterizing § 1407(a) as "straightforward language imposing the Panel's responsibility to remand" upon the conclusion of pretrial proceedings); Korean Air Lines, 2011 WL 1458794, at *10.

Plaintiffs seek to use the status of Moving Plaintiffs as Plaintiffs who have filed in California to justify application of the substantive law of California to every single putative class member.  (See, e.g., Motion at 1 ("Certain Economic Loss Plaintiffs hereby respectfully request that the Court select California

substantive law to govern all claims against Defendants . . . , which plaintiffs assert on behalf of themselves and the nation-wide Classes they seek to represent.").)

At oral argument, Plaintiffs analogized the current procedural posture to a case that had been filed in the first instance just by the Moving Plaintiffs in California state court. (See Tr. at 8, 18-19.)  While insightful, this analogy carries Plaintiffs' position only so far.  A full consideration of this analogy actually illustrates why Plaintiffs' position contravenes sound MDL management principles and indeed, statutory dictates.

Accepting Plaintiffs' premise that the California comparative governmental interest analysis framework would be applied to determine the proper substantive law as to the Moving Plaintiffs' claims, and even accepting counsel's statement that "[t]here is no rule that says that one set of cases can't advance ahead of another set of cases," (Tr. at 11), the basic facts are different here.  Such hypothetical parallel state proceedings are just that: Separate, but parallel proceedings that are not ever coupled with, and thus, would not ever need to be separated from the hypothesized proceeding.   Stated differently, the state court analogy removes the non-Moving Plaintiffs from the radar screen.  The Court cannot do that.  Rather, this Court must consider the separate and distinct identities of the member cases to this MDL and, consistent with Korean Air Lines, should be prepared to follow the statutory mandate to remand them at the conclusion of the pretrial proceedings.  Cf. Korean Air Lines, 2011 WL 1458794, at *13 n.13 ("But considerations that animate the restrictions placed on a transferee court's exercise of jurisdiction over its MDL docket–including the principle that individual cases

remain separate actions despite being coordinated or consolidated for pretrial purposes–do not dissipate because a particular case was filed in the MDL's home district.").

Undeniably, an MDL court has substantial discretion with regard to "phasing, timing and coordination of . . . cases." Id. at *11.  Indeed, the power of an MDL court with respect to such issues "is at its peak." Id.  However, despite this broad discretion on issues that are at the peak of the Court's power, the Court does not have the power to override the application of substantive legal standards. Id. at * 10.  As one commentator put it, "[T]hat makes no sense."[5]

D.    Role of a Master Consolidated Complaint.

The role of the Master Consolidated Complaint also sheds light on the inquiry.  Neither the general authorization of the coordination and consolidation under the MDL statute nor the more specific use of consolidated complaints, as the Court has required here, is intended to alter the substantive rights of the parties. The use of a consolidated complaint has been described as "a procedural device

---

[5]"If choice of law is substantive (in the sense that it defines the parties' rights), then courts should not alter choice-of-law rules for complex cases.  The reasoning is straightforward. We start with claims that everyone concedes would otherwise be adjudicated under different laws.  We combine these claims, whether through transfer and consolidation or by certifying a class, on the ground that we can adjudicate the parties' rights more effectively and efficiently in one big proceeding. So far, so good. Then, having constructed this proceeding, we are told we must change the parties' rights to facilitate the consolidated adjudication.  And that makes no sense."  Larry Kramer, Choice of Law in Complex Litigation, 71 N.Y.U. L. Rev. 547, 572 (1996).

rather than a substantive pleading with the power to alter the choice of laws rules applicable to the plaintiffs' claims."  In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 56 (D.N.J. 2009).  The device does not alter choice-of-law rules:

> Just as transfers pursuant to [28 U.S.C. §§ ] 1404 and
> 1407 do not affect the applicable choice of law rules, so
> too the next step in the streamlining process–namely
> consolidation into one proceeding of two or more actions
> initially filed in different states–does not affect them.

In re Rezulin Prods. Liab. Litig., 390 F. Supp. 2d 319, 329 n.62 (S.D.N.Y. 2005); cf. In re Propulsid Products Liab. Litig., 208 F.R.D. 133, 141 (E.D. La. 2002). Other courts have expressly noted that a consolidated complaint should not be treated as an ordinary complaint.  See, e.g., In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig., 489 F. Supp. 2d 932, 936 (D. Minn. 2007) ("The transfer under [28 U.S.C.] § 1407, even after the filing of an amended complaint, is only a change in courtrooms.  Consolidation of a master complaint is merely a procedural device designed to promote judicial economy, and, as such, it does not affect the rights of the parties in separate suits."); In re Vioxx Prods. Liab. Litig., 239 F.R.D. 450, 454 (E.D. La. 2006); Propulsid, 208 F.R.D. at 141-42 ("In light of these concerns the master complaint should not be given the same effect as an ordinary complaint.  Instead, it should be considered as only an administrative device to aid efficiency and economy.").

When the Supreme Court interpreted § 1404 in Van Dusen, its rationale was

grounded on bedrock principles of  federalism that require a district court, when considering questions of state law, to apply the same state substantive law, including choice-of-law rules, as would be applied by a state court in the transferor forum.  <u>Van Dusen</u>, 376 U.S. at 637 (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938)).  <u>Erie</u>, in turn, has been described in subsequent Supreme Court case law as precluding "the accident of" a federal court's diversity jurisdiction producing "a substantially different result" in a case than would have occurred if filed "in a State court a block away" from the federal courthouse.  <u>Guaranty Trust Co. of New York v. York</u>, 326 U.S. 99, 109 (1945) (elaborating on <u>Erie</u> and quoted in <u>Van Dusen</u>, 376 U.S. at 638).  The Court agrees that Plaintiffs' "very thoroughly considered decision" to move on behalf of these particular Plaintiffs is contrary to that rule.  (Tr. at 11.)

Were the Court to grant the relief sought by the Moving Plaintiffs, the result would allow the <u>non</u>-moving Plaintiffs to avail themselves of California's comparative governmental interest analysis by piggybacking upon their brother and sister Plaintiffs who filed in California.  They do so in a manner designed to alter, and indeed expand the substantive rights of some Plaintiffs and to diminish the substantive rights of the Toyota Defendants, at times producing vastly different results as to the non-moving Plaintiffs who filed in other states.

Three examples prove the point.[6]

---

[6]In its Appendicies, Toyota has catalogued what it believes to be material differences in state laws.  (<u>See</u> Dawson Decl. Exs. D-J.)  While one may disagree with Toyota's analysis at the margins, and perhaps a good measure past the margins, the basic point is valid.

*Manifestation.*   Although in considering a Motion to Dismiss, this Court

declined to dismiss claims based on certain Plaintiffs' failure to allege a

manifestation of the alleged defect, it did so based on limited California case law

cited to the Court, and because the factual record was largely undefined at the

pleadings stage.  (<u>See</u> Docket No. 510 at 70-71.)  However, not all state substantive

law would so hold.  To the contrary, a number of states, including Alabama, North

Dakota, Ohio, Pennsylvania, and Wisconsin, would preclude or would highly

likely preclude some or all of the claims asserted by Plaintiffs whose products have

manifested no defect.  <u>See, e.g.</u>, <u>Pfizer, Inc. v. Farsian</u>, 682 So. 2d 405, 407 (Ala.

1996) ("Although the facts . . . indicate that the Bjork-Shiley heart valve has

experienced problems with strut failures, Farsian's concern that his heart valve,

which is presently functioning normally, could later malfunction is not an injury

recognized by Alabama law."); <u>Ziegelmann v. DaimlerChrysler Corp.</u>, 649 N.W.2d

556, 560 (N.D. 2002) ("Where, as in this case, a product performs satisfactorily

and never exhibits an alleged defect, no cause of action lies."); <u>Velotta v. Leo

Petronzio Landscaping, Inc.</u>, 69 Ohio St. 2d 376, 379 (1982) ("In a case such as

this, where the wrongful conduct complained of is not presently harmful, the cause

of action does not accrue until actual damage occurs."); <u>Angus v. Shiley Inc.</u>, 989

F.2d 142, 147 (3d Cir. 1993) (finding that the Pennsylvania Supreme Court would

find "no basis for relief" stated in the complaint where plaintiff's heart valve was

allegedly defected but had manifested no defect); <u>Tietsworth v. Harley-Davidson,

Inc.</u>,  270 Wis. 2d 146, 161 (2004) (holding that a diminution in value based on an

unmanifested defect was "inherently conjectural," precluding a fraud claim based

on the failure to allege damages).  Although it is entirely unclear precisely how

many vehicles purchased or leased by putative class members have manifested or

14

unmanifested defects, a substantial number of vehicles, perhaps numbering into the

millions, presumably have no manifested defects.  Thus, application of California

law to a nationwide class, at least in some instances, would drastically expand the

scope of relief available to Plaintiffs (to the detriment of Toyota), thus violating the

principle underlying Van Dusen and, more fundamentally, Erie.


*Implied Warranty of Merchantability.*  The claim for implied warranty of

merchantability (pursuant to UCC § 2-314) has survived Toyota's previous

challenges to the lack of privity of contract only because Plaintiffs have

sufficiently alleged third-party beneficiary status.  (Docket 510 at 66-69.)  A

number of states have laws that would not permit recovery under the facts alleged

here because they, like California, require privity of contract, but unlike California,

either have no established third-party beneficiary exception unrelated to personal

injury, have such an exception that is limited to particular individuals based on

their relationship with a product's purchaser, have expressly rejected a third-party

beneficiary exception, or have other requirements that would limit recovery.  See,

e.g., Flory v. Silvercrest Indus., Inc., 129 Ariz. 574, 579, 633 P.2d 383, 388 (1981)

(economic losses not recoverable for breach of implied warranty absent privity);

Puckett v. Oakfabco, Inc., 132 Idaho 816, 825 (1999) (limiting the third-party

beneficiary exception to statutorily defined third-party beneficiaries, such as

members of the purchaser's family or household); Compex Int. Co. v. Taylor, 209

S.W.3d 462, 465 (Ky. 2006) (similar); Ace Am. Ins. Co. v. Grand Banks Yachts,

Ltd., 587 F. Supp. 2d 697, 708 n.11 (D. Md. 2008); Leach v. Wiles, 58 Tenn. App.

286, 304 (1968) (declining to extend privity exception regarding family and

household members beyond those specifically identified); Lamont v. Winnebago

1  Indus., Inc., 569 F. Supp. 2d 806, 816 (E.D. Wis. 2008).  Thus, under this example,

2  application of California law to a nationwide class, at least in some instances,

3  would expand the scope of relief available to Plaintiffs who could not otherwise

4  avail themselves of a third-party beneficiary exception to the privity requirement.

5  This benefit to Plaintiffs would be a detriment to Toyota, which would, in turn,

6  violate the principles underlying Van Dusen and, more fundamentally, Erie.

7

8      *Statutes of Limitations.*  Statutes of limitation for consumer protection laws

9  vary among the states.  The California limitations periods are three to four years

10  for CLRA, UCL, and FAL claims.  Cal. Civ. Code § 1783 (CLRA limitations

11  period three years); Cal. Bus. & Prof. Code § 17208 (four years from accrual for

12  UCL claims); Yumul v. Smart Balance, Inc., 733 F. Supp. 2d 1134, 1140 (C.D.

13  Cal. 2010) (FAL claims subject to a three-year limitations period).  In comparison,

14  the limitations periods vary among the states.  Some are much less generous, only

15  one or two years.  See, e.g., Ala. Code § 8-19-14 (one year, subject to a discovery

16  rule); Alaska Stat. § 45.50.531(f) (two years from discovery); Ariz. Rev. Stat. Ann.

17  § 12-541(5) (one year from discovery for statutory violations); Ind. Code Ann.

18  § 24-5-0.5-5(b) (two years); La. Rev. Stat. Ann. § 51:1409(E) (one year); Mont.

19  Code Ann. § 27-2-211(1) (two years); Tenn. Code Ann. ¶ 47-18-110 (one year,

20  subject to discovery rule); Tex. Bus. & Com. Code Ann. § 17.565 (two years);

21  Utah Code Ann. § 13-11-19(8) (two years); Va. Code Ann. § 59.1-204.1(A) (two

22  years); W. Va. Code Ann. § 55-2-12 (two years); Wyo. Stat. Ann. § 40-12-109

23  (one or two years).  This final example further illustrates how application of

24  California law to a nationwide class would expand the scope of relief available to

25  Plaintiffs.  Application of California law would likely have the effect of reviving a

number of claims that would otherwise be time-barred.  Like the previous two examples, this benefit to Plaintiffs would be a detriment to Toyota and is inconsistent with Van Dusen and Erie.

While Plaintiffs are quick to point out that no Plaintiff has objected to application of California law in a manner that would expand their rights as a citizens of a foreign jurisdiction, Toyota has, and has a right to do so.

E.    Plaintiffs' Authorities Adopting a Nationwide, Single-State Choice of Law Are not Persuasive.

Although Plaintiffs cite a number of cases in which courts have certified nationwide classes of plaintiffs asserting claims under California law, none of those cases have done so under facts similar to those presented here, and they do not counsel or compel a contrary conclusion.

Plaintiffs point to a number of courts, including federal district courts, that have concluded, based on Diamond Multimedia Sys., Inc. v. Superior Court, 19 Cal. 4th 1036 (1999),[7] and its progeny, that nationwide California-law classes could be certified.  These courts reasoned that application of California's comparative governmental interest analysis leads to the conclusion that California's interest would be more greatly impaired than any other state's interests

_____

[7]Diamond Multimedia held that "California . . . has a clear and substantial interest in preventing fraudulent practices in this state which may have an effect both in California and throughout the country" and "a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices." 19 Cal. 4th at 1063-64.

where the actions underlying the claims, especially the consumer law claims,

emanate from California.  See, e.g., Wershba v. Apple Computer, Inc., 91 Cal.

App. 4th 224, 243-44 (2001); Chavez v. Blue Sky Natural Beverage Co., 268

F.R.D. 365, 378-79 (N.D. Cal. 2010); Parkinson v. Hyundai Motor Am., 258

F.R.D. 580, 597-98 (C.D. Cal. 2008) (citing Wershba); Mazza v. Am. Honda

Motor Co., 254 F.R.D. 610, 623 (C.D. Cal. 2008) (citing Wershba).  However, the

Court has concluded, for the reasons set forth above, that other considerations

preclude the analysis advocated by Plaintiffs.  In short, these cases simply assumed

that if constitutional Due Process concerns were met, California provided the

applicable choice-of-law rule without further inquiry.  Wershba, 91 Cal. App. 4th

at 241; Chavez, 268 F.R.D. at 379; Parkinson, 258 F.R.D. at 597; Mazza, 254

F.R.D. at 621.  The record here compels the Court to conduct that further inquiry.


     In In re Mercedes-Benz, 257 F.R.D. 46, the court faced a complicated task in

its choice-of-law decision, but the complexity is far greater here.  That MDL

consisted of only ten cases which had come from just six jurisdictions.  Id. at 55.

The analysis was further simplified because the court was faced with just two

claims and with just two choice-of-law regimes: the governmental interest

approach[8] and the most-significant-relationship test set forth in the Restatement

(Second) or Conflict of Laws.[9]  Id. at 57-69.  Moreover, while those two tests are

not identical, the New Jersey court was assisted by the facts that the two tests are

"substantially similar."  Id. (internal quotation marks omitted).  While rigorous

[8]New York and California.

[9]Illinois, Missouri, New Jersey, and Washington.

analysis was required, the court determined that New Jersey law could be applied to each of the claims in issue.  Id. at 63, 69.

The number of claims here, as well as the number of jurisdictions involved (and thus, the number of the potentially applicable choice-of-law regimes), is exponentially greater.  The Court does not have the benefit of just two somewhat harmonized approaches with which to analyze just two claims.  The Mercedes-Benz approach does not produce a single, appropriate state's law upon which all class claims could be predicated.

Nor does In re Vioxx Products Liability Litigation, 239 F.R.D. 450, provide the solution.  The parties agreed that New Jersey choice-of-law rules applied, id. at 455, and from there the court was able to conclude under New Jersey's governmental interest test[10] that substantive New Jersey law should be applied class wide.  Id. at 458.  This Court does not have the benefit of an agreed choice of law to initiate its analysis.

A case to which Plaintiffs give particular attention (Motion at 3 n.2; Tr. 12),

---

[10]The Mercedes-Benz court described New Jersey's choice-of-law rule as the "most significant relationship" or Restatement test; however, the Vioxx court described it as a "governmental interests" test.  Compare Mercedes-Benz, 257 F.R.D. at 57 with Vioxx, 239 F.R.D. at 455.  This contrast is illustrative of the many difficulties encountered by MDL courts considering choice-of-law issues presented to it, and is most likely explained by New Jersey's own case law, which has recognized the similarity of the two tests, and which has used both descriptions.  See P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 142-43 (2008) ("Although continuing to denominate our standard as a kind of governmental interest test, we now apply the Second Restatement's most significant relationship standard in tort cases.  Under that standard, the law of the state of the injury is applicable unless another state has a more significant relationship to the parties and issues.").

19

Propulsid, 208 F.R.D. at 142, supports the approach Plaintiffs advocate; namely, looking to the forum where the named plaintiff filed.  But the Court finds it unpersuasive because it did not fully consider the concerns articulated by the Court herein.  (Sections I.B-I.D.)  The court applied the choice-of-law analysis of one state in an MDL action, the same approach advocated by Plaintiffs.  In doing so, the court concluded that application of Indiana's choice-of-law analysis required application of the substantive law of the states in which the harm occurred.  Because the harm was in the nature of personal injury, and because the plaintiffs were from a number of states, the laws of the those states applied, thus precluding class certification for failure to satisfy the predominance requirement.  (Id. at 143-44. )  In effect, Indiana's *lex loci* rule mooted selection of the choice of law because the Indiana rule turns to the place of injury, which most likely was the place of each plaintiff's residence and injury, and the place where suit was likely filed.  See id. at 143.  The use of  Indiana's choice-of-law rule had the effect of applying the substantive law in every forum in which a plaintiff had filed.  Id.  Plaintiffs here contend that the approach taken by the Propulsid court was sound, that it ought to be applied here, but that it yields a different result here, i.e., application of California law to a nationwide class.

Propulsid is instructive, but supports the opposite result here when one looks to the practical effects in both cases.  Because the Propulsid court concluded that class certification was improper based on application of Indiana's choice-of-law rules, the court did not face the same concerns the Court does today.  Application of Propulsid here would override, not carry out, the law of each state where Plaintiffs filed.  Specifically, assuming the Court granted the relief sought

by the Plaintiffs, that relief would have the effect of permitting choice-of-law rules to alter the substantive rights of the parties and ignore the requirement that cases collected in this MDL retain their separate and distinct identities.

* * * * * * * * * * * * *

Just as the Court should not permit filing in the present forum by a singular plaintiff to dictate the choice of substantive law, the Court cannot permit the selection of the Moving Plaintiffs here to dictate the conclusion regarding which state's substantive law should apply, especially when such application both disregards the possibility of eventual return of the individual cases to their home states and requires the sacrifice of certain substantive rights of Toyota. Plaintiffs crafted their argument based on the unique, multidistrict nature of these proceedings, particularly in the selection of Plaintiffs on the present Motion. However, the very nature of these proceedings also precludes the relief sought.

II.    Conclusion

Plaintiffs' Motion for the Application of California Law is denied.

The Court has intentionally not pursued other paths which might lead to a definitive determination concerning what state or states' choice-of-law rules should ultimately be adopted. The present Motion was advanced as a precursor to a potential  motion for certification of a nationwide class based on California law. The Court believes that any further litigation of the choice-of-law issue should

likewise  proceed in light of a prospective motion for class certification under the laws of one or more states.  Looking to the trial phase in this Court, the Court undoubtedly has the ability to try the claims of putative class members who have filed in the Central District of  California.  Any other arrangement would require discussion and agreement among the parties.  See Lexecon, 523 U.S. at 40 (1998).


**IT IS SO ORDERED.**


Dated: June 8, 2011

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE