CARI K. DAWSON (GA SBN 213490)
Email: cari.dawson@alston.com
**ALSTON + BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7766
Facsimile:  (404) 253-8567

LISA GILFORD (CA SBN 171641)
Email: lisa.gilford@alston.com
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile:  (213) 576-1100

*Lead Defense Counsel for Economic Loss Cases*

THEODORE J. BOUTROUS JR.(CA SBN 132099)
Email: Tboutrous@gibsondunn.com
THEANE EVANGELIS KAPUR (CA SBN 243570)
Email: Tkapur@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile:  (213) 229-7520

*Appellate Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>**ALL ECONOMIC LOSS CASES** | Case No.:  8:10ML2151 JVS (FMOx)<br><br>**REQUEST FOR CERTIFICATION FOR DIRECT INTERLOCUTORY APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT** |

# TABLE OF CONTENTS

Page (s)

I.   INTRODUCTION ..................................................................... 1

II.  RELEVANT BACKGROUND ................................................... 2

III. ARGUMENT ......................................................................... 3

  A.   The Court's Order Presents a Controlling Question of Law. ..................... 3

  B.   There Are Substantial Grounds for Disagreement Concerning the
       Court's Order. ........................................................................... 5

       1.   Article III Standing ........................................................... 6

       2.   Standing Under California Law ......................................... 12

  C.   An Immediate Appeal Will Advance the Ultimate Termination of
       This Litigation. .......................................................................... 15

IV.  CONCLUSION ....................................................................... 16

REQUEST FOR CERTIFICATION FOR DIRECT INTERLOCUTORY APPEAL TO THE UNITED STATES COURT
OF APPEALS FOR THE NINTH CIRCUIT

# TABLE OF AUTHORITIES

Page (s)

## CASES

*Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, __ Cal. Rptr. 3d __, 2011 WL 1888199, at *4 (May 19, 2011) ................................................................ 13

*Asis Internet Servs. v. Active Response Group,* No. C07 6211 TEH, 2008 WL 4279695, at *3 (N.D. Cal. Sept. 16, 2008) .................................................... 5

*Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007) ...................... 5

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) ...................................... 7

*Bond v. United States*, ___ S. Ct. ____, 2011 WL 2369334, at *4 (2011) .................. 12

*Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999) ............................ 8

*Chapman v. Pier 1 Imports, Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ................ 4

*Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788, 233 P.3d 1066, 1086–87 (2010) ...................................................................................................... 4

*Cole v. Gen. Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) ............................... 6

*Contreras v. Toyota Motor Sales USA, Inc.*, No. C 09-06024 JSW, 2010 WL 2528844 (N.D. Cal. June 18, 2010) ........................................................... 10

*Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) ..................... 5, 12

*DaimlerChrylser Corp. v. Inman*, 252 S.W.3d 299 (Tex. 2008) ..................... 9

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346, 126 S.Ct. 1854, 1863-64, 164 L.Ed.2d 589 (2006) ......................................................................... 12

*Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) .............................................................................. 10

*Edmunson v. Procter & Gamble*, No. 10-CV-2256-IEG, 2011 WL 1897625, at *4 (S.D. Cal. May 17, 2011) ............................................................... 13

*Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) ........................... 4

*Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1080 (9th Cir. 2008) .......................... 4

*In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982) ...................... 3

*In re Cement*, 673 F.2d at 1026 ................................................................ 3, 15

*In re Cement*, 673 F.2d at 1027 ................................................................ 15

*In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. M:06-cv-01781-SBA, 2007 WL 1302496, at *2 (N.D. Cal. May 2, 2007) ........................................ 5

*In re Coleman*, 560 F.3d 1000, 1003, 1005 (9th Cir. 2009) ................................. 4

*In re Korean Air Lines Co., Ltd., Antitrust Litigation*, __ F.3d __, 2011 WL 1458794, at *10 (9th Cir. 2011) ......................................................... 15

*In re Toys "R" Us-Delaware, Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.,* 2010 WL 5071073, at *16 n.38 (C.D. Cal. Aug. 17, 2010) ............ 15

*In re WTC Disaster Site*, 414 F.3d 352, 362 (2d Cir. 2005) ............................... 4

*In re Zicam Cold Remedy Marketing*, No. 09–md–2096–PHX–FJM, 2010 WL 3834019, at *2 (D. Ariz. Sept. 27, 2010) ............................................... 16

*Krangel v. Crown*, 791 F. Supp. 1436, 1449 (S.D. Cal. 1992) ........................... 4

*Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) .......................... 4

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317, 246 P.3d 877, 881 (2011) ............................................................................ 12

*Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 999–1000 (9th Cir. 2001) ...................... 4

*Lucas v. Bell Trans.*, No. 2:08-cv-01792-RCJ-RJJ, 2009 WL 3336112, at *4 (D. Nev. Oct. 14, 2009) ......................................................... 5

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) ........................................................... 4

*Maqaleh v. Gates*, 605 F.3d 84, 88 (D.C. Cir. 2010) .................................... 3

*Northstar Fin. Advisors Inc. v. Schwab Invs.*, No. C 08-4119 SI, 2009 WL 1126854, at *1 (N.D. Cal. Apr. 27, 2009) ....................................... 15

iii

*Nuclear Eng'r Co. v. Scott,* 660 F.2d 241, 245 (7th Cir. 1981) ................................... 4

*O'Neil v. Simplicity, Inc.,* 553 F. Supp. 2d 1110, 1115, 1118 (D. Minn. 2008) ............. 9

*O'Neil v. Simplicity, Inc.,* 574 F.3d 301 (8th Cir. 2009) ......................................... 9

*Rivera v. Wyeth-Ayerst Labs.,* 283 F.3d 315 (5th Cir. 2002) ................................... 7

*Umatilla Waterquality Protective Ass'n, Inc., v. Smith Frozen Foods, Inc.,*
    962 F. Supp. 1312, 1323 (D. Or. 1997) ...................................................... 6

*Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1078-80 (E.D.
    Cal. 2010) ................................................................................ 12

*W. Tenn. Chptr. Of Assoc. Builders & Contractors., Inc. v. City of Memphis,*
    138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000) .......................................... 15

*Whitson v. Bumbo,* No. C07-05597 MHP, 2009 WL 1515597 (N.D. Cal. Apr.
    16, 2009) ................................................................................... 8

## STATUTES

28 U.S.C. § 1292(b) .................................................................. 1, 3, 5, 6, 15, 16

Cal. Bus. & Prof. Code § 17200 ........................................................... 2

Cal. Bus. & Prof. Code § 17204 ....................................................... 4, 12

Cal. Bus. & Prof. Code § 17500 ........................................................... 2

Cal. Code Civ. Proc. § 1750 .............................................................. 2

## OTHER AUTHORITIES

Federal Practice & Procedure § 3:212 (L. ed., West 2010) ............................... 5

REQUEST FOR CERTIFICATION FOR DIRECT INTERLOCUTORY APPEAL TO THE UNITED STATES COURT
OF APPEALS FOR THE NINTH CIRCUIT

## I.   INTRODUCTION

Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota") respectfully request that the Court certify for interlocutory appeal two questions regarding a controlling issue of law on which there is a substantial ground for difference of opinion, the resolution of which will materially advance termination of this case.

Plaintiffs are owners of certain types of Toyota vehicles that allegedly have experienced sudden unintended acceleration.  They claim that this alleged defect—whether or not it actually has manifested itself—has diminished the value of their vehicles, causing a kind of economic loss.  The Court has recognized that there are substantial grounds for a difference of opinion on the controlling question whether Plaintiffs who have not experienced the alleged defect—and who have not experienced an actual, realized economic loss as a direct result of the claimed defect—allege an injury sufficient to invoke this Court's jurisdiction, or to state a claim under California law.  (Tr. of April 29, 2011 Hearing at 33–34 (noting that there are "countervailing points to be made on each side" of this "significant" issue).)  The Court also recognized that resolution of this issue will materially advance the ultimate termination of this case:

> I believe that these [rulings on Article III and California statutory standing] are appropriate . . . to take to the Ninth Circuit on an interlocutory appeal. Upon application, I am prepared to certify all of those standing issues. It seems to me that we would all benefit in having a definitive answer to those . . . before we go to trial.

*Id.*

Accordingly, Toyota moves pursuant to 28 U.S.C. § 1292(b) for an order certifying the following issues for immediate interlocutory appeal:

> (i)      (a) Whether each plaintiff must allege that he or she has experienced a manifestation of the product's alleged defect in order to allege that he or she suffered an injury in fact sufficient to confer Article III standing; and, in the alternative, (b) if a manifestation of the alleged

Gibson, Dunn &
Crutcher LLP

1

defect is not required, whether each plaintiff must allege that he or she incurred an actual, realized monetary loss as a direct result of the alleged defect in order to allege an economic injury sufficient to confer Article III standing;

(ii)      Whether those plaintiffs in (i)(a) and (i)(b) above have pleaded the injury required to confer standing under the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200); California's False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500); and California's Consumers Legal Remedies Act ("CLRA") (Cal. Code Civ. Proc. § 1750).

## II.   RELEVANT BACKGROUND

This multi-district litigation ("MDL") was formed by transferring hundreds of Toyota-related economic loss class actions and putative class actions filed elsewhere in the United States to this Court. Each transferred case involves the allegation that certain Toyota vehicles suffer from an inherent defect that causes sudden unintended acceleration ("SUA"). (Second Amended Master Consolidated Complaint, the "SAMCC" ¶ 137.) The basis of each claim is that the various plaintiffs and putative class members suffered damage as a result of the alleged SUA phenomenon, whether or not their vehicles ever manifested this alleged defect or Plaintiffs actually suffered a realized monetary loss.

In order to manage pre-trial proceedings more easily, the Court directed Plaintiffs to file a consolidated complaint, their First Amended Master Consolidated Complaint (the "AMCC"). After it was filed, Toyota moved to dismiss, arguing in part that numerous named Plaintiffs (and the countless numbers of purported class members they seek to represent) failed to satisfy Article III's standing requirement and the standing requirements under California law,[1] because Plaintiffs have not suffered an injury. Ultimately, the Court granted in part Toyota's motion on standing grounds, "dismiss[ing] without prejudice all the claims of those Plaintiffs who failed to allege

---

[1]   In light of the Court's choice-of-law ruling (Docket No. 1478), whether Plaintiffs also have failed to satisfy the standing requirements of other states' laws is not ripe for adjudication.

REQUEST FOR CERTIFICATION FOR DIRECT INTERLOCUTORY APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

facts establishing standing." (MTD Order 1 at 102.) However, the Court rejected Toyota's manifestation of defect theory, concluding that "experiencing an SUA defect is not required for standing." (MTD Order 1 at 13.) The Court held that "as long as plaintiffs allege a legally cognizable loss under the 'benefit of the bargain' or some other legal theory, they have standing." (MTD Order 1 at 20.)

Plaintiffs attempted to cure the defects identified in MTD Order 1 by filing a Second Amended Master Consolidated Complaint. The SAMCC pleaded the same claims as in the AMCC but added general language for those previously dismissed Plaintiffs, to the effect that they "would not have purchased" their vehicles and "would not have paid as much" for them. (*See, e.g.*, SAMCC ¶ 42.) The Court then entered MTD Order 2, holding that "Plaintiffs sufficiently allege an injury in fact to satisfy Article III standing," because "Plaintiffs bargained for safe, defect free vehicles, but instead received unsafe, defective vehicles." (MTD Order 2 at 27.) But the Court also recognized that there are substantial grounds for a difference of opinion on this point and indicated that it was inclined to certify the Article III and state-law standing issues for appeal to the Ninth Circuit, because their resolution will materially advance ultimate termination of the case. (Tr. of April 29, 2011 Hearing at 33–34.)

## III.   ARGUMENT

Certification under Section 1292(b) is appropriate where (i) an order involves a controlling question of law; (ii) there is substantial ground for difference of opinion; and (iii) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982). All three requirements are met here.

### A.   The Court's Order Presents a Controlling Question of Law.

Under Section 1292(b), a question is "controlling" where it could "materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. Courts routinely find jurisdiction issues "controlling" for purposes of certification under Section 1292(b). *See, e.g.*, *Maqaleh v. Gates*, 605 F.3d 84, 88 (D.C. Cir. 2010)

("[W]hether the court had jurisdiction presented a controlling question of law"); *In re WTC Disaster Site*, 414 F.3d 352, 362 (2d Cir. 2005) (district court's "ruling as to the scope of federal jurisdiction . . . involves a controlling question of law." (internal quotation marks omitted)); *Nuclear Eng'r Co. v. Scott,* 660 F.2d 241, 245 (7th Cir. 1981) (questions of diversity and federal question jurisdiction are controlling under Section 1292(b)); *Krangel v. Crown*, 791 F. Supp. 1436, 1449 (S.D. Cal. 1992) (finding a controlling question where the "issue involv[ed] the extent of federal subject matter jurisdiction").    The Ninth Circuit also has held that a question of law is controlling when "it could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter." *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996); *see In re Coleman*, 560 F.3d 1000, 1003, 1005 (9th Cir. 2009) (reviewing Article III ripeness question under Section 1292(b)); *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 999–1000 (9th Cir. 2001) (same, Article III standing question); *see also Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1080 (9th Cir. 2008) (same, order compelling arbitration).

The standing questions at issue here—both under Article III and state law—undoubtedly involve controlling questions of law.    Constitutional standing is, after all, "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).    And a plaintiff is under a continual obligation to "satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman v. Pier 1 Imports, Inc.*, 631 F.3d 939, 946 (9th Cir. 2011); *see Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) ("Federal courts are always under an independent obligation to examine their own jurisdiction.") (internal citation omitted)).    Standing under California's UCL, FAL, and CLRA is just as necessary.    Cal. Bus. & Prof. Code § 17204; *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 788, 233 P.3d 1066, 1086–87 (2010).

Permitting an interlocutory appeal of these threshold questions—which affect

*nearly half* of the named Plaintiffs and undoubtedly the vast majority of the unnamed Plaintiffs—will settle once and for all whether many Plaintiffs have a right to invoke this Court's power and to command its time and resources *before* they are wasted.[2]

**B.      There Are Substantial Grounds for Disagreement Concerning the Court's Order.**

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Id.* (quoting 3 Wright & Miller, Federal Practice & Procedure § 3:212 (L. ed., West 2010)).

Courts in this Circuit also find a "substantial ground for difference of opinion" when two district courts have come to contrary conclusions on an issue. *E.g., Lucas v. Bell Trans.*, No. 2:08-cv-01792-RCJ-RJJ, 2009 WL 3336112, at *4 (D. Nev. Oct. 14, 2009) ("The kind of 'substantial grounds for difference of opinion' Plaintiffs must show is a difference of opinion between the district courts of this Circuit and/or the appellate courts of the state where this Court sits."); *Asis Internet Servs. v. Active Response Group,* No. C07 6211 TEH, 2008 WL 4279695, at *3 (N.D. Cal. Sept. 16, 2008) (finding a substantial ground for difference of opinion where there is a difference of opinion among district courts); *In re Cintas Corp. Overtime Pay Arbitration Litig.*, No. M:06-cv-01781-SBA, 2007 WL 1302496, at *2 (N.D. Cal. May 2, 2007) ("A substantial ground for dispute exists where a court's challenged decision conflicts with the decisions of several other courts or where there is no controlling

---

[2]     Of the 76 named Plaintiffs in the SAMCC, only 44 allege they have experienced the SUA phenomenon.  Further, only 25 of 76 allege a realized loss.  Yet at the very least, named plaintiffs must establish standing.  *See Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc).

REQUEST FOR CERTIFICATION FOR DIRECT INTERLOCUTORY APPEAL TO THE UNITED STATES COURT
OF APPEALS FOR THE NINTH CIRCUIT

precedent in the jurisdiction.") (internal citation omitted)); *Umatilla Waterquality Protective Ass'n, Inc., v. Smith Frozen Foods, Inc.*, 962 F. Supp. 1312, 1323 (D. Or. 1997) (certifying a question under § 1292(b) where there was a "split of authority . . . among the district courts within the Ninth Circuit").

### 1. *Article III Standing*

Plaintiffs here do not allege that they have experienced SUA and suffered some kind of physical injury (personal injury or property damage). They do not allege that they have experienced SUA and suffered some kind of emotional harm. Nor do they all allege that they have even experienced SUA. Instead, they allege that some individuals (including some but not all of the Named Plaintiffs) have experienced SUA (or might in the future) in certain Toyota vehicles and that this has caused all of the Named Plaintiffs and putative class members, as purchasers or lessees of Toyota vehicles, economic loss. The Court has concluded that this allegation is sufficient for purposes of Article III standing and has rejected Toyota's arguments that (1) manifestation of a product's defect is required and (2) an actual, realized monetary loss as a direct result of the alleged defect is necessary to establish standing for an economic loss claim.

As the Court recognized, there are substantial grounds for disagreement concerning its rejection of Toyota's first argument. (*See* MTD Order 1 at 13, 20 (noting the Court's disagreement with cases supporting the proposition that "standing cannot be established absent a manifested defect"); *see also* Tr. of April 29, 2011 Hearing at 33 (noting that there are "countervailing points to be made on each side" of the standing issue).) In reaching its decision, the Court principally relied on the Fifth Circuit's decision in *Cole v. Gen. Motors Corp.*, 484 F.3d 717 (5th Cir. 2007), which concluded that purchasers of vehicles found to have defective air bag sensors had suffered an economic loss, even though the plaintiffs' vehicles had not manifested the defect. The court held that "it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered." *Id.* at 723. It

6

1  concluded that the plaintiffs had suffered economic harm because the plaintiffs alleged

2  that each vehicle had a specific, identified defect and the defendant unreasonably

3  delayed in addressing the defect, neither of which is the case here. *Id.* at 722–23.

4      The Fifth Circuit, however, is itself internally conflicted. In *Rivera v. Wyeth-*

5  *Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002), the court considered whether purchasers of

6  a drug that was later withdrawn from the market due to its propensity to cause liver

7  damage had standing even though no plaintiff had suffered physical or emotional harm

8  from the drug. It concluded that the plaintiffs had not identified the source of their

9  alleged economic injury and that, at best, the only source of injury was suffered by

10 non-party patients who had actually suffered liver damage. *Id.* at 319–21. It noted that

11 courts must "explicitly distinguish[ ] valid, contract law suits" from "'no-injury

12 products liability law suit[s],'" for which there is no standing. *Id.* at 320.

13     Moreover, contrary authority from the Ninth Circuit, as well as the Eighth

14 Circuit and the Texas Supreme Court, supports the conclusion that this case is

15 precisely one of those "no-injury products liability lawsuits" where plaintiffs lack

16 standing. In *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), plaintiffs alleged

17 that their iPods were defective because they risked causing hearing loss and could have

18 been designed more safely. *Id.* at 958. Like Plaintiffs here, they did not allege that

19 this defect had manifested itself in their cases. *Id.* at 960. Rather, they tried to plead

20 around the absence of injury by claiming that "the iPod's inherent risk of hearing loss

21 has reduced the value of their iPods and deprived them of the full benefit of their

22 bargain." *Id.* at 961.

23     The Ninth Circuit held that an "alleged economic harm center[ing] on [a] claim

24 that the [product] has a defect . . . which caused [the product] to be worth less than

25 what [plaintiffs] paid for [it]" does not constitute an injury in fact. *Id.* at 961. That is,

26 "the alleged loss in value does not constitute a distinct and palpable injury that is actual

27 or imminent because it rests on a hypothetical risk of [injury] to other consumers." *Id.*

28

(noting that no defect had been identified, but only a possible risky method of use).[3] And although the *Birdsong* court based its holding on California standing law, thereby avoiding the need to decide a constitutional question, it noted that "the plaintiffs would lack an Article III injury in fact for the same reasons." *Id.* at 960 n.4.

District courts within the Ninth Circuit nevertheless remain split on these points; indeed, the decision in the instant case is contrary to *Birdsong*. By contrast, the District Court for the Northern District of California rejected a no-injury product liability suit for lack of standing. Specifically, in *Whitson v. Bumbo*, No. C07-05597 MHP, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009), a putative class action plaintiff asserted various claims stemming from her purchase of a baby seat that was later subject to a recall after there were 28 reports of seats falling off of tables, out of roughly one million units sold. *Id.* at *2. The court held that the plaintiff—who had not experienced the defect since her seat had never tipped over—did not to have standing to represent the class. *Id.* at *6.

The Eighth Circuit's decision in *Briehl v. Gen. Motors Corp.*, 172 F.3d 623 (8th Cir. 1999), also conflicts with this Court's decision. There, the plaintiffs alleged that they suffered an economic harm because their vehicles, which had been recalled over a brake malfunction, had diminished resale value. *Id.* at 628–29. Yet plaintiffs had not experienced a brake malfunction and had not sold a vehicle at the supposedly diminished value. *Id.* Nor did the plaintiffs attempt to quantify their damages; instead, they simply claimed that their loss was the "difference between a vehicle with the [brake] system that they expected and the system that is actually installed in each of their vehicles[,]" a theory and allegation the Eighth Circuit labeled "conclusory" and thus insufficient to confer standing. *Id.* at 629.

---

[3] The Ninth Circuit explained that "plaintiffs' benefit of the bargain theory fare[d] no better," because they did receive the benefit of their bargain. *Birdsong*, 590 F.3d at 961. The same is true of Plaintiffs here, whose bargain expressly limited them to repair of any identified defect. (Dkt. 332, Ex. B, Warranty Manuals, at 24–25, 106–07, 179–81.)

Similarly, in *O'Neil*, purchasers of defective cribs attempted to bring suit alleging unfair trade practices and other claims despite having never personally experienced a manifestation of the defect, and despite having declined to avail themselves of a replacement program offered by the defendant. *O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110, 1115, 1118 (D. Minn. 2008) ("It is simply not enough for a plaintiff to allege that a product defect suffered by others renders his or her use of that same product unsafe; the plaintiff must instead allege an *actual manifestation* of the defect *that results in some injury*"), *aff'd sub nom. O'Neil v. Simplicity, Inc.*, 574 F.3d 301 (8th Cir. 2009). The Court rejected a "benefit of the bargain" theory of injury, because the allegedly defective function—a drop-side to let a toddler enter and exit the crib—had performed without incident since purchase. *Id.* at 1118.

The Texas Supreme Court's decision in *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299 (Tex. 2008), involved facts similar to those here. There, plaintiffs alleged that their seat belt buckles were defective because it was possible to unbuckle them inadvertently. *Id.* at 306–07 (rejecting standing where an alleged defect presents an "extremely remote" chance of injury). The court held that the plaintiffs lacked standing to sue in Texas courts (which apply functionally the same standing principles as federal courts), because the plaintiffs had not explained what the defect was, how it was in fact a defect, or how it caused any concrete *(i.e.*, something beyond the conjectural or "hypothetical") injury to them. *Id.* at 307. The Court explained that "the rights of ten million vehicle owners and lessees across the United States should not be adjudicated in an action brought by three plaintiffs who cannot show more than the merest possibility of injury to themselves." *Id.* And to hold that the plaintiffs had standing under those circumstances would "drain virtually all meaning from the requirements that a plaintiff must be personally aggrieved and that his injury must be concrete and actual or imminent." *Id.* (internal quotation marks omitted).

As a result of the deep conflict among the courts on this issue, Toyota is subjected to different standards in cases bringing the same claims in courts within the

9

Ninth Circuit.  In a recent case from the Northern District of California, *Contreras v. Toyota Motor Sales U.S.A., Inc.*, No. C 09-06024 JSW, 2010 WL 2528844 (N.D. Cal. June 18, 2010), the court dismissed a class action against Toyota for lack of standing because the class representatives failed to allege an injury in fact.  *Id.* at *4–6.  The *Contreras* plaintiffs pursued a class action against Toyota alleging that brake issues would arise when their vehicles were driven "under certain driving conditions in low temperatures."  *Id.* at *1.  But they failed to allege that their vehicles had malfunctioned as a result of any defect or that they incurred any out-of-pocket expenses; they merely alleged that they had "been injured . . . because had they known of the alleged defect, they would not have purchased or would have paid less for [their vehicles]."  *Id.* at *2.  Plaintiffs also contended that their vehicles were "worth substantially less than they would have been without the alleged defect."  *Id.*  Directly contrary to this Court's decision, the *Contreras* court rejected the plaintiffs' standing argument, holding that they "fail[ed] to allege any actual injury" and "failed to allege facts sufficient to show that they have suffered 'injury in fact.'"  *Id.* at *6.

There are also substantial grounds for a difference of opinion regarding the Court's holding that Plaintiffs have "established an economic loss" sufficient to confer Article III standing on grounds that "[v]irtually every Plaintiff alleges that he or she would probably not have purchased or leased his or her Toyota vehicle had the defect been known at the time of purchase [and] certainly would not have paid as much for it."  (MTD Order 2 at 17; *see also id.* at 27 (holding that an alleged "overpayment for the defective, unsafe vehicle constitutes an economic-loss injury that is sufficient to confer standing").)  Indeed, taken to its logical conclusion, Plaintiffs' claim is that anyone and everyone who owns something must be injured because they suffer an economic loss anytime a manufacturer issues some kind of recall or service alert—or some third party criticizes the product.

The Supreme Court's decision in *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), is relevant to this inquiry.  There,

10

the Court considered whether any cause of action existed based on allegations that the defendant had misstated the viability and profitability of an upcoming drug, which allegedly led to injury in the form of an "artificially inflated" stock price at the time of purchase. *Id.* at 336. Specifically, the Court evaluated whether the plaintiffs had adequately pleaded a causal relationship between the defendant's wrongful conduct (a misrepresentation to the market) and the alleged injury (purchase of a security at an inflated price), as required by applicable securities laws. *Id.* at 342–43. In so doing, the Court considered whether the lower price at which the plaintiffs had sold their shares could ever exclude the impact of "changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Id.* The Court held that it could not, because it is impossible to sort through the "tangle of factors affecting price" and tease out a direct causal link between the defendant's actions and a reduced price. *Id.* And even if the misstatement were in some way related to a decline in price, that would still be insufficient in any event. "To touch upon a loss is not to *cause* a loss, and it is the latter that the law requires." *Id.* (internal citation omitted). Thus, translated into the language of standing, *Dura* addressed whether the plaintiffs had alleged an actual injury that was "fairly traceable" to the defendant's actions. *Lujan*, 504 U.S. at 560.

If, as *Dura* teaches, Plaintiffs cannot establish an economic loss by alleging merely that they paid too much for their vehicles (and that is their theory of economic loss), then they have failed to plead the injury required by Article III. As in the securities context, Plaintiffs are claiming an economic loss based on allegedly incorrect market impressions about the safety of certain Toyota brands. This issue appears to be one of first impression, and the relationship between the Supreme Court's jurisprudence on economic loss in the securities context and economic loss in the products liability context —and the effect (if any) that relationship has on whether Plaintiffs have adequately alleged a "concrete and particularized" and "actual or

imminent, not 'conjectural' or 'hypothetical,'" injury that is "fairly traceable" to Toyota's actions, *Lujan*, 504 U.S. at 560—is obviously "novel and difficult." *Couch*, 611 F.3d at 633; *see Bond v. United States*, ___ S. Ct. ____, 2011 WL 2369334, at *4 (2011) (standing requires some "concrete injury" caused by the harm complained of); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346, 126 S.Ct. 1854, 1863–64, 164 L.Ed.2d 589 (2006) (plaintiff cannot rely on speculative inferences to connect the injury to the defendant's actions in order to establish standing).

### 2. Standing Under California Law

Plaintiffs' claims under the UCL, FAL, and CLRA contain their own standing requirements as a matter of California substantive law. They provide a private right of action only if Plaintiffs have "suffered injury in fact *and* [have] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). Therefore, Article III standing aside, Plaintiffs must establish standing as a matter of California law in order to recover.[4]

The California Supreme Court recently held that "plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317, 246 P.3d 877, 881 (2011); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1078–80 (E.D. Cal. 2010) (holding that plaintiffs sufficiently alleged injury under the UCL, FAL, and CLRA by asserting that the product they received was worth less than what they paid for it owing to defendants' misleading labels).

Despite Plaintiffs' extensive reliance on California's liberal notion of statutory standing, there are important differences between their claim and the claim in *Kwikset*.

---

[4] Of course, "a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury." *Lee*, 260 F.3d at 1001–02.

As the Court has noted, "[i]n *Kwikset*, the plaintiffs essentially argued that they were duped into buying a different type of lock: they thought they bought a lock made in the U.S.A. (Lock X), but instead bought a lock that was not completely made in the U.S.A. (Lock Y)." (MTD Order 2 at 23 n.11.)  That is, in a *Kwikset* injury, "the overpayment injury does not depend on how the product functions because 'labels' and 'brands' have independent economic value." (*Id.*)  Here, as the Court recognized, there is no allegation that Plaintiffs "were duped into buying a different 'type' of vehicle (*i.e.*, they do not allege that they thought they bought a Toyota vehicle (Car X), but instead bought a non-Toyota vehicle (Car Y)), but rather that they were duped into buying a 'defective' vehicle (*i.e.*, they thought they bought a safe Toyota vehicle (Car X), but instead bought a defective Toyota vehicle (Car X'))." (*Id.*)   And the Court acknowledged that "[w]hen the economic loss is predicated solely on how a product functions, and the product has not malfunctioned, something more is required than simply alleging an overpayment for a 'defective' product." (*Id.*)  Nonetheless, the Court concluded that Plaintiffs had stated a claim under UCL, FAL, and CLRA despite the fact that market forces have not injured those Plaintiffs who have not yet attempted to sell their vehicles. *See Dura*, 544 U.S. at 342–46.

Courts have adhered to this critical distinction even post-*Kwikset*, putting them at odds with this Court's ruling. *See Edmunson v. Procter & Gamble*, No. 10-CV-2256-IEG, 2011 WL 1897625, at *4 (S.D. Cal. May 17, 2011) (holding that there is no standing when injury complained of amounts to subjective consumer disagreement with how a product functions and is marketed); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, __ Cal. Rptr. 3d __, 2011 WL 1888199, at *4 (May 19, 2011) (citing *Kwikset*, holding that plaintiffs had failed to show any actual "lost money or property" associated with defendant's undisclosed practice of collecting and recording personal information, even if consumer had subjective disagreement with defendant's practice or its nondisclosure of practice).  In *Edmunson*, the plaintiffs brought UCL and CLRA claims based on the defendant's marketing of a new brand of razor as

13

"superior" to an older brand of the same razor, alleging that the new brand was not materially different from the older one. *Edmunson*, 2011 WL 1897625 at *3–4. Relying on *Kwikset*, the Court dismissed the UCL and CLRA claims, finding that even if the plaintiff's decision was motivated by the representation that the new brand was better, any such perception (and the associated perceived reduction in value) was wholly subjective and thus unactionable. *Id.* at *4.

Likewise, in *Archer*, the plaintiffs brought a UCL claim alleging that the defendant rental company's practice of obtaining a customer's personal identifying information such as name, home address and ZIP code, caused them injury in the form of invaded privacy rights. *Archer*, 2011 WL 1888199, at *2–4.  Reviewing *Kwikset*, the Court dismissed the UCL claim after finding that the plaintiffs, while claiming the practice invaded their right to privacy, did not show how the practice "translates into a loss of money or property." *Id.* at *4.

It is doubtful whether Plaintiffs could ever claim an economic injury based on an alleged design defect because the possibility of such a defect was already built into the purchase price of their vehicles.  In fact, the possibility of a defect and the remedy for any that might exist is the subject of an *explicit* bargain between Plaintiffs and Toyota, and one well known to the marketplace.  In exchange for a specified warranty against possible defects—something which necessarily contemplates the possibility of defects—Plaintiffs agreed to limit their remedy to the defect's repair.  (Dkt. 332, Ex. B, Warranty Manuals, at 24–25, 106–07, 179–81.)  Plaintiffs did not bargain for, Toyota did not promise—and the market did not price their purchase—on the assumption of defect-free vehicles.  Rather, the purchase price was premised on a vehicle which might manifest a defect and, if it did, Toyota promised to repair the vehicle under its warranty.  By contrast, in *Kwikset* the market did not price—and the plaintiffs did not even bargain for—what the defendant sold, because the defendant lied about an objectively verifiable fact, *i.e.*, where the product was made.

**C.   An Immediate Appeal Will Advance the Ultimate Termination of This Litigation.**

The third requirement for certification under Section 1292(b) is met where resolution of the legal question on appeal "may appreciably shorten the time, effort, or expense of conducting a lawsuit." *In re Cement*, 673 F.2d at 1027. "Interlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens." *W. Tenn. Chptr. Of Assoc. Builders & Contractors., Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000); *see In re Cement*, 673 F.2d at 1026 (certification under § 1292(b) is particularly appropriate where "allowing an interlocutory appeal would avoid protracted and expensive litigation").

If the Ninth Circuit holds that Plaintiffs (or a substantial number of Plaintiffs) lack standing, the remaining "issues will be significantly narrowed, thus shaping the scope of discovery and motion practice." *Northstar Fin. Advisors Inc. v. Schwab Invs.*, No. C 08-4119 SI, 2009 WL 1126854, at *1 (N.D. Cal. Apr. 27, 2009); *see also In re Toys "R" Us-Delaware, Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL 5071073, at *16 n.38 (C.D. Cal. Aug. 17, 2010) (appellate resolution would "materially advance the outcome of the litigation as it would define the scope of the . . . actions prior to trial, as well as the potential extent of defendant's liability"). This Court's ruling that Plaintiffs who never experienced a SUA malfunction or realized an actual monetary loss have standing will require Toyota to defend, individually and—if Plaintiffs have their way—on a class-wide basis, against claims that are significantly distinct from the claims of Plaintiffs who actually alleged that they experienced such a malfunction.

Because the uncertainty regarding standing is germane to every economic loss case in this MDL, resolution of this issue also could substantially decrease the number of claims pending, dramatically changing the dynamics of the litigation and promoting more expedient adjudication. *See In re Korean Air Lines Co., Ltd., Antitrust*

*Litigation*, __ F.3d __, 2011 WL 1458794, at *10 (9th Cir. 2011) (MDL process promotes "just and efficient" resolution of cases of common origin pending in different districts); *In re Zicam Cold Remedy Marketing*, No. 09–md–2096–PHX–FJM, 2010 WL 3834019, at *2 (D. Ariz. Sept. 27, 2010) (noting that MDL serves "to conserve the resources of the parties, their counsel and the judiciary") (internal citation omitted). Moreover, a ruling from the Court of Appeals would have a definitive impact on the class certification inquiry, including possible subclasses. Plaintiffs will likely seek to certify a class that includes millions of members, many of whom may very well lack standing. Therefore, it would significantly advance the resolution of the case if these standing questions were resolved at the outset. For this reason, certification for appeal has the potential to significantly reduce the time, burden, and expense of litigating this case.

## IV.   CONCLUSION

For the foregoing reasons, Toyota respectfully requests that the Court certify the questions presented for interlocutory appeal under 28 U.S.C. § 1292(b).

REQUEST FOR CERTIFICATION FOR DIRECT INTERLOCUTORY APPEAL TO THE UNITED STATES COURT
OF APPEALS FOR THE NINTH CIRCUIT

Dated:  June 27, 2011

Respectfully submitted,

By:  _____/s/_____
                   Lisa Gilford

CARI K. DAWSON (GA SBN 213490)
Email:  cari.dawson@alston.com
**ALSTON + BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone:  (404) 881-7766
Facsimile:  (404) 253-8567

LISA GILFORD (CA SBN 171641)
Email:  lisa.gilford@alston.com
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:  (213) 576-1000
Facsimile:  (213) 576-1100

*Lead Defense Counsel for Economic Loss Cases*

THEODORE J. BOUTROUS JR.(CA SBN 132099)
Email:  Tboutrous@gibsondunn.com
THEANE EVANGELIS KAPUR (CA SBN 243570)
Email:  Tkapur@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  (213) 229-7000

*Appellate Counsel*

REQUEST FOR CERTIFICATION FOR DIRECT INTERLOCUTORY APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT