Steve W. Berman (*pro hac vice*)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL
    SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 268-9320
Facsimile: (206) 623-0594

Mark P. Robinson, Jr., Bar No. 054426
*mrobinson@rcrlaw.net*
ROBINSON, CALCAGNIE &
    ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Marc M. Seltzer, Bar No. 054534
*mseltzer@susmangodfrey.com*
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3102
Facsimile: (310) 789-3006

Elizabeth J. Cabraser, Bar No. 083151
*ecabraser@lchb.com*
LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Frank M. Pitre, Bar No. 100077
*fpitre@cpmlegal.com*
COTCHETT, PITRE &
    MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION | No. 8:10ML2151 JVS (FMOx) |
| | PLAINTIFFS' PROPOSAL RE THE CONTENT, FORMAT AND TIMING OF THE TECHNICAL TUTORIAL |
| This Document Relates To: | Date: September 12, 2011 |
| ALL CASES | Time: 3:00 p.m. |
| | Ctrm: 10C |
| | Judge: Hon. James V. Selna |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   ARGUMENT ........................................................................................... 2

    A.    A Tutorial Would Be Premature at this Time ........................................ 2

        1.    Courts ordinarily conduct tutorials when the parties are on an equal factual footing .......................................... 3

        2.    Courts hold tutorials to aid in substantive motions or trial ............ 5

    B.    Neutral Tutorial That Will Prepare The Court for Expert Testimony and Other Technical Presentations in This Case is the Appropriate Type Tutorial – not Toyota's Effort to Litigate Core Issues ..................... 7

        1.    Whenever conducted, the tutorial should be an informal, objective, and non-adversarial proceeding ......................... 7

    C.    Toyota Proposes an Adversarial Proceeding Akin to a Court Trial or Evidentiary Hearing .......................................................................... 10

        1.    "Scientific and technical literature" on unintended acceleration does not exist in the manner Toyota suggests and is not an appropriate topic for the tutorial ........................... 11

        2.    Toyota's other topics similarly do not belong in a science tutorial ............................................................................... 13

        3.    A recent trial demonstrates the dangers of allowing an automobile-manufacturer defendant to present a premature and one-sided explanation of the causes of sudden unintended acceleration ...................................... 15

III.  CONCLUSION ...................................................................................... 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*California v. M & P Invs.*,
 213 F. Supp. 2d 1208 (E.D. Cal. 2002) ................................................................ 6

*Computer Cache Coherency Corp. v. Via Techs., Inc.*,
 2007 U.S. Dist. LEXIS 81121 (N.D. Cal. Oct. 22, 2007) ................................... 6

*Philips Elecs. N. Am. Corp. v. Contec Corp.*,
 177 Fed. Appx. 981 (Fed. Cir. 2006) .................................................................. 6

*Sun Microsystems v. Microsoft Corp.*,
 21 F. Supp. 2d 1109 (N.D. Cal. 1998) ................................................................. 6

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
 2005 U.S. Dist. LEXIS 19043 (N.D. Ill. May 5, 2005) ..................................... 6

*Web.com, Inc. v. The Go Daddy Group, Inc.*,
 2008 U.S. Dist. LEXIS 108622 (D. Ariz. June 25, 2008) .................................. 6

### OTHER AUTHORITIES

Federal Judicial Center's *Reference Manual on Scientific Evidence, Second*
 (Federal Judicial Center 2005) ..................................................................... 9, 10

*Manual for Complex Litigation, Fourth* (2004) § 23.32 ......................................... 9

    

# I.   INTRODUCTION

In this complex case raising highly technical subject matters and concepts, a technical tutorial can provide an objective, non-adversarial explanation of the core technology.  But, to be effective, the *content*, *format*, and *timing* of a tutorial is important.  The purpose of a tutorial is to educate the Court, while avoiding controverted matters.  Inherent to this, of course, is that both parties have a fair opportunity to understand that technology before being tasked with presenting a tutorial.  Toyota has delayed and is attempting to narrow production of the core documents that would allow Plaintiffs fuller understanding of Toyota's technologies.  Based upon discussions with Toyota's counsel, it appears that Toyota seeks to broaden the tutorial's scope far beyond uncontroverted matters about core technologies into hotly disputed issues about which Plaintiffs have – as yet – obtained no or at best partial discovery and which involved disputed core issues that will never be the appropriate subject of a non-adversarial tutorial.

A tutorial is also premature because tutorials best serve courts when connected to substantive motions and thereby aid the court's determination of a specific motion.  A tutorial requires investment of time and efforts by the court and parties.  To maximize that investment and avoid the inevitable fading of a tutorial's benefits over time, any tutorial here should be tied to a specific motion.

As for the tutorial's content, we believe that the Court rightfully requested a tutorial to provide the necessary background on the advanced vehicle systems at issue in this case.  The sole focus should be on Toyota's ETCS, the pedal sensors, and brake-override systems, along with background on related components and software, and, finally, a basic glossary of terms.

- 1 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Toyota's proposal fundamentally misconstrues the purpose and scope of an appropriate tutorial.  Rather than focusing on the technical components of its ETCS in an informal and objective format, Toyota proposes to include – indeed, focus on – a small number of controversial, manufacturer-driven (and therefore potentially biased) "studies" of the causes of UA mostly relating neither to Toyota's vehicles nor electronic throttle systems.  In addition, Toyota wants to engage in a biased and disputed discussion of the so-called history of UA involving GM, Audi and other auto manufacturers, and NHTSA's pattern of siding with the auto industry in connection with such litigation and investigations.  Finally, Toyota wants to argue that UA is really a fiction – made up by the press, consumer organizations and drivers who were really just confused and stepped on the wrong pedal.

Toyota would then turn to other topics that it believes have been inaccurately characterized in Plaintiffs' complaints, despite this Court's express warning against using the tutorial for such purposes.  Under Toyota's proposal, the Court and jurists presiding over related litigation will not receive the technical background necessary to understand, and ultimately resolve, the substantive issues that will arise down the road.  Instead, they would receive an adversarial presentation and argument of hotly-contested evidentiary issues, including a number of issues that promise to arise during *Daubert* briefing and hearings.  The Court should reject such an approach.

## II.    ARGUMENT

### A.    A Tutorial Would Be Premature at this Time

Pursuant to Order No. 14, the technical tutorial has been set for December 10, 2011.  However, at the time that Plaintiffs proposed and the Court ordered that the tutorial proceed on December 10, 2011, it was envisioned that Toyota would have

- 2 -

completed its Phase II document production by September 21, 2011, thereby giving Plaintiffs and their experts nearly two months to review the documents *before* the tutorial.  However, the Phase II document production has subsequently been ordered to be complete by late-January 2012 – well *after* the tutorial.

Postponing a tutorial until discovery is further advanced and the parties have filed substantive motions, the core documents have been produced, and the source code review has commenced – would better serve the Court and parties for several reasons.

**1.    Courts ordinarily conduct tutorials when the parties are on an equal factual footing**

As the Court has recognized, the parties should be on equal factual footing to prepare their tutorial presentations.  The Court has explained that Plaintiffs should have a fair opportunity to explore the relevant systems before any tutorial.  Ex. 12 (11/09/10 Tr. at 58:5-12, 58:21-59:1 (making clear that the Court seeks "both sides' informed view about what the technology is …")).[1]  *See also* Ex. 13 (6/23/10 Tr. at 85:20-86:4).  This requires that Plaintiffs receive responses to their discovery requests served many months ago.

But this has not happened.  The Court originally ordered the parties to complete Phase II discovery by September 21, 2011.  Order No. 14 (Dkt. No. 1493), at 3:19-20.

---

[1] All references to "Ex. __" are to the exhibits attached to the concurrently filed Declaration of Steve W. Berman ("Berman Decl.").

- 3 -

Toyota has stalled production of Phase II documents and improperly narrowed the scope of its document searches, as Plaintiffs have already detailed to the Court.[2]

Toyota seeks advantage from its dawdling by nonetheless pressing for an immediate tutorial, and indeed disparages Plaintiffs for requesting discovery at all:

> "We need the documents!" in order to present the Court
> with the background of the basic technical issues is an
> argument whose time has run out.  Indeed, in light of your
> multiple complaints alleging in detail defects and
> wrongdoing by Toyota, it is hard to see how you could
> have made that argument in the first place.  [Ex. 1 (Smith
> 8/12/11 Letter at 3).[3]]

By seeking an immediate tutorial on multiple disputed topics while withholding and delaying discovery, Toyota would prejudice Plaintiffs by denying them the necessary discovery to address those topics and sufficient time to review and analyze the documents that have been produced to date.

Indeed, even as to the core tutorial topics – ETCS, brake-override systems, and related topics – Plaintiffs have received some, but not all the relevant documentation, despite long-standing discovery requests.[4]  The source code review has not even

---

[2] *See* Plaintiffs' Memorandum re Phase II and Phase III Discovery (Dkt. No. 1600), at 1-7; *see also* Plaintiffs' Memorandum in Support of Plaintiffs' Proposed Phase III Discovery Plan and Scheduling Order (Dkt. No. 1454), at 2-3, 5-7.

[3] Toyota seems to think that the fact Plaintiffs were able to plead their claims with thorough and comprehensive allegations necessarily implies Plaintiffs could not possibly need more information – a curious and incorrect interpretation of our litigation system.

[4] Plaintiffs also served key discovery requests on these issues in their Eighth Request for Production.  Toyota's written responses to this discovery is due in

- 4 -

started yet.  The same is true for the third topic Toyota proposes for the tutorial – the

regulatory history and technical aspects of the sticky-pedal and floor-mat recalls.  It is

only fair that Plaintiffs obtain adequate discovery on these issues before they or the

Court are forced to accept Toyota's explanations as part of a "neutral" tutorial.

In short, the Court has already indicated that Plaintiffs should have access to

the necessary discovery before the tutorial takes place.  While the Court was focused

then on a proposed tutorial earlier this year, the basic premise that the Court will

need both sides' informed views remains true.

### 2.    Courts hold tutorials to aid in substantive motions or trial

An early tutorial is premature for another reason.  Courts typically hold

pretrial tutorials in connection with pending substantive motions, such as for

summary judgment or preliminary injunction.  The Court appears to agree with this

accepted practice.  Toyota asserted during a hearing addressing the propriety of

holding a technical tutorial that certain factual disputes could be resolved by

"provid[ing] the Court the … basic understanding of these technologies."  Ex. 12

(11/09/10 Tr. at 58:2-4).  But the Court deemed this an inappropriate subject for a

tutorial at this stage of the litigation:

> *Court*:  [B]efore we get into any detailed technical
>
> discussions *in the context of a motion*, it would be highly
>
> desirable for the Court to have the benefit of both sides'
>
> informed view about what the technology is[.]  [*Id*. at
>
> 58:21-24 (emphasis added).]

---

November 2011.  In its written response to Plaintiffs' Ninth Request for Production,
Toyota refused to produce a single additional document.

Other courts similarly employ tutorials to aid in resolving substantive motions.[5]

And this is as it should be – judicial economy demands it.  A technical tutorial requires investment of time and effort by the Court and parties.  Such investment, to be effective, should connect to a particular dispute.  Whether the looming decision involves trial, class certification, summary judgment or evaluating an expert under *Daubert*, the decision provides context and focus to a tutorial's lessons.  Otherwise, by the time a court is later asked to employ its technical learning, memories may have faded, possibly necessitating a refresher course.

Here, of course, there is no such pending motion and the parties likely will not be filing summary-judgment motions (if any) for 12 months.  *See* Order No. 14 (Dkt. No. 1493), at 3:1 (setting September 17, 2012, as deadline for summary-judgment motions).  The deadline for *Daubert* motions to exclude expert testimony is one week earlier.  *Id.* at 3:7-8.  To the extent a technical tutorial will aid the Court in resolving any such motions, the most appropriate time is when those motions are briefed and pending before the Court.

_____

[5] *See, e.g.*, *Philips Elecs. N. Am. Corp. v. Contec Corp.*, 177 Fed. Appx. 981, 984 (Fed. Cir. 2006) (referring to technology tutorial and summary-judgment hearing before district court held on same day); *Web.com, Inc. v. The Go Daddy Group, Inc.*, 2008 U.S. Dist. LEXIS 108622, at *2-3 (D. Ariz. June 25, 2008) (setting technology tutorial and summary-judgment hearing scheduled on same day in patent case); *Computer Cache Coherency Corp. v. Via Techs., Inc.*, 2007 U.S. Dist. LEXIS 81121, at *2 (N.D. Cal. Oct. 22, 2007) (same); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 2005 U.S. Dist. LEXIS 19043, at *1-2 (N.D. Ill. May 5, 2005) (referring to tutorial relating to preliminary-injunction motion); *California v. M & P Invs.*, 213 F. Supp. 2d 1208 (E.D. Cal. 2002) (holding a tutorial "regarding the technical issues involved in the motion for preliminary injunction"); *Sun Microsystems v. Microsoft Corp.*, 21 F. Supp. 2d 1109, 1118 (N.D. Cal. 1998) (conducting technology tutorial in reference to pending motion to enjoin).  *See also* Berman Decl., ¶ 4, Ex. 3 (attaching motion for "neutral tutorial" in the *AWP* litigation to aid in class certification hearing).

- 6 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In its recent letters to Plaintiffs' counsel, Toyota failed to identify any need for an early tutorial or to tie the tutorial to case management in anyway.  Toyota instead alluded vaguely to the Court's need for a tutorial "to manage the complex issues in this case" as well as any future anticipated *Daubert* motions.[6]  Toyota continued that certain matters are "critical to the Court's complete understanding of the issues in this case" and somehow could "guide the Court in deciding discovery and evidentiary issues Toyota will raise …."  *Id.  See also id.* at 3 ("it is also important for the Court to know …").  In other words, Toyota could not name any pending or imminent substantive motion for which a technical tutorial might benefit the Court.  While Plaintiffs embrace enthusiastically any Court initiative to augment its facility in the technical issues of this litigation, a tutorial will better aid the Court when linked to a pending substantive dispute.  A tutorial is devalued as an aid for the Court without a pending motion.  A tutorial in this case should thus await such motions, currently scheduled for filing in September 2012.

**B.    Neutral Tutorial That Will Prepare The Court for Expert Testimony and Other Technical Presentations in This Case is the Appropriate Type Tutorial – not Toyota's Effort to Litigate Core Issues**

   **1.    Whenever conducted, the tutorial should be an informal, objective, and non-adversarial proceeding**

The Court has repeatedly explained that the purpose of the tutorial is to provide *objective* information to the Court and judicial staff, and avoid disputed issues.  The tutorial should take a "global level" approach that simply explains "how the system works."  Ex. 14 (2/25/11 Tr. at 62:16-25).  The purpose is to educate the

_____

   [6] Ex. 1 (Smith 8/12/11 Letter at 2).

- 7 -

Court "on the technology, which by and large *shouldn't be that controversial*."

Ex. 15 (7/18/11 Tr. at 46:21-25) (emphasis added).

The Court has also stressed that this tutorial is not a forum for adversarial proceedings.  Ex. 15 (7/18/11 Tr. at 46:18-19).  Toyota urged the Court to broaden the scope of any tutorial to include disputed issues that the Court may be called upon the resolve in the future:

> SMITH:  …. [I]n first quarter of this year, Your Honor is likely to be called upon to make some decisions on issues like the protection of Toyota's software, the reliability of EDR tools, Notice of problems to Toyota…. The Court needs to have this technical information as an underpinning necessary to consider these issues.

Ex. 12 (11/09/10 Tr. at 53:1-24).

The Court rejected this approach in favor of a short course on the "basic technology" underlying the litigation:

> COURT:  Let me suggest … what my concept of a tutorial is.  It is not to address potential misstatements.  It's to discuss the basic technology.  It's a Saturday for 4 hours.
>
> It's an opportunity to educate me and my clerks.

*Id*. at 57.  The Court continued, "a tutorial is not designed to refute every misstatement or inaccuracy in the operative pleading.  Rather, it's intended to give the Court and my clerks an overview of the relevant technology so that we can understand it."  *Id*. at 57:4-9.  It is not an opportunity for the parties to present "radically different views as to what the technology is and how it works."  Ex. 15

- 8 -

1     (7/18/11 Tr. at 46:21-25).  The Court has consistently asserted this view.  *See* Ex. 13

2     (6/23/10 Tr. at 82:23-83:2 ("The purpose of the effort being to educate me and my

3     clerks on the relevant technology or subject matter involved.  That's what I

4     contemplate.  It's not an opportunity to argue the merits of the case but, rather, to

5     literally educate me and my clerks.")); Ex. 16 (5/13/10 Tr. at 62:6-8 ("My concept of

6     a tutorial is just that.  It's to educate me and my clerks on the technology.  It's not an

7     opportunity for advocacy.")).

8          The recommendations of the *Manual for Complex Litigation, Fourth* (Federal

9     Judicial Center 2004) ("*MCL 4th*" or "*Manual*") are consistent with the Court's

10    views.  The *MCL 4th* speaks broadly about assessing the need "for the court to be

11    *educated* at the outset about the science or technology involved, particularly where

12    the expert evidence will involve science and technology that use language foreign to

13    the uninitiated."  *MCL 4th* § 23.32 at 497-98 (emphasis added).  The *MCL 4th*

14    provides further detail in its discussion on science tutorials in patent litigation.[7]  The

15    goal is to provide an "objective overview" that provides a "general explanation of the

16    substance and terminology of the science or technology."  *MCL 4th* § 33.23 at 615.

17    The focus should be on "the fundamentals – the vocabulary and general intellectual

18    framework of the subject matter."  *Id*.  The *MCL 4th*'s suggestions mirror those of

19    the Federal Judicial Center's *Reference Manual on Scientific Evidence, Second*

20    (Federal Judicial Center 2005), which suggests that "the object of this exercise

21    should be educational, not argument."  *Id*. at 166.  As the *Reference Manual* notes:

---

[7] As the Court has often noted, this tutorial should take the approach of a science tutorial before a *Markman* hearing in a patent dispute.  *See*, *e.g.*, Ex. 14 (2/25/11 Tr. at 63:20-64:4).

- 9 -

"by infusing the conference with a spirit of inquiry, the court can set the tone for the litigation, encouraging clarity, candor, and civility." *Id*. at 167.

Another court similarly cautioned against using a tutorial to advance adversarial positions: "This is not a time when you advocate how I should decide particular definitions and so forth, but it is a time when you explain basically what these basic concepts are…. And this is very informal – we are on the record, but we don't take – we don't put people under oath." *Anticancer, Inc. v. Xegogen Corp.*, No. 05-CV-04480B (S.D. Cal.), 6/13/06 Tr. at 22:3-25 (Ex. 17).

It is clear Toyota proposes to use the tutorial to advocate. For example, Mr. Smith states in his letter (Ex. 1) explaining why the tutorial should involve NHTSA's analysis of complaint data that because NHTSA came to the "opposite conclusion" as to the existence of a defect it is thus important for the Court to know how complaint data "is used by NHTSA."[8] Again the nature of NHTSA's database is not technical and the real purpose of Toyota's proposal is to use the tutorial to debate the conclusions to be drawn from the complaint database – this is a debate for trial, not a tutorial.

**C.     Toyota Proposes an Adversarial Proceeding Akin to a Court Trial or Evidentiary Hearing**

Rather than providing an informal, objective, uncontroversial, and non-adversarial presentation, Toyota wants to use the tutorial as a forum to advance its partisan interpretation of non-Toyota UA events and prior Toyota recalls, as one would attempt at an evidentiary hearing or trial. Specifically, Toyota proposes to address (1) the history of sudden unintended acceleration litigation and

---

[8] Ex. 1 (Smith 8/12/11 Letter).

- 10 -

investigations, including examples of prior litigation against other auto manufacturers, and papers written by NHTSA; (2) a description of the evolution of ETCS in Toyota vehicles (including brake-override systems); (3) the regulatory history and technical aspects of the sticky pedal and floor mat recalls; and (4) a description of the NHTSA VOQ database, including "what that data is, how it is collected and how it is used by NHTSA."[9]  Of these topics, only the second is consistent with the purpose of a tutorial as outlined above and by the Court at various hearings.  Yet, Toyota's proposal is light on the details of even this topic.

> **1.**   **"Scientific and technical literature" on unintended acceleration does not exist in the manner Toyota suggests and is not an appropriate topic for the tutorial**

In its proposal, Toyota greatly emphasized its first proposed category, *i.e.*, "the scientific and technical literature" related to the causes of UA.  *See* Ex. 1 (Smith 8/12/11 Letter).  Likening this auto litigation to a pharmaceutical case, Toyota posits that the potential causes of the challenged phenomena (UA versus the side effect of the drug), can be explored in a tutorial as much as the technical background of the product (ETCS versus the pharmacology of the drug).

Toyota's highly abstract comparison fails upon the slightest scrutiny.  Apart from being "products" cases, pharmaceutical litigation has too little in common with automobile litigation – let alone auto litigation based on defects in highly technical electronic systems and parts – to be of a useful guide.  Crucially, the underlying body of science in a pharmaceutical case, such as the *Vioxx* litigation, is drastically different than in this case.  Any given human medical condition is likely to have

---

[9] Ex. 1 (Smith 8/12/11 Letter).

been studied intensively and for decades, and largely by independent, non-partisan entities (in addition to manufacturer studies, which dominate the "science" here). That is certainly true of the cardiovascular events caused by Vioxx, Bextra and Celebrex, and other pharmaceuticals litigated in mass tort proceedings. From this wealth of unbiased studies emerge an established, *uncontroversial* body of science to present at a tutorial, in addition to the basic mechanics of the drug.

There is no basis for comparing the type of randomized clinical studies in a case like *Vioxx* to the non-scientific and industry-oriented publication by NHTSA that Toyota seeks to rely upon. There is no similar well of *scientific* information for *this* case to present as an uncontroversial primer on the current scientific thinking on the causes of UA in ETCS-equipped vehicles, let alone Toyota's system in particular. Indeed, there is no "scientific" literature on the cause of UA in even a more general sense, as Plaintiffs' invitation to Toyota to disclose any such literature revealed.[10] As discussed *infra* at 15-16, profit-oriented and liability-adverse manufacturers designed and implemented many of these studies, immediately injecting a strong source of bias. Unlike in cases involving medical issues, the number of studies is small, and almost none of them are focused on Toyota vehicles.

The "science" Toyota seeks to introduce now are NHTSA's conclusions that UA is caused by driver error, or pedals and mat issues. NHTSA's conclusions are

---

[10] Plaintiffs asked Mr. Smith to identify the scientific literature he refers to, he has not refused. Berman Decl., ¶ 3. To the extent Smith refers to NHTSA studies involving Toyota and other vehicles, the reliability and science behind NHTSA's conclusions are subject to vigorous dispute. *See* Berman Decl., ¶¶ 7-14.

- 12 -

1   hotly contested and are among the ultimate issues in the case – they are not the

2   neutral topics of a proper tutorial.[11]

3          In this case, with Toyota's reliance on highly limited, hotly-contested, and

4   manufacturer-driven "studies," expert analysis will be critical.  No party will be able

5   to discuss the studies without it, and the Court cannot fairly rely upon them without

6   the parties' expert analysis and interpretation.  And, because the parties sharply

7   disagree as to the meaning and import of these "studies" Toyota seeks to discuss at

8   an already busy hearing, a tutorial organized as Toyota proposes will detract from

9   the important goal of educating the Court and judicial staff about the technological

10  systems relevant to this litigation.  Instead, it will quickly devolve into an adversarial

11  proceeding wherein both sides advance a disputed interpretation of this "science."[12]

12         Including the disputed topics Toyota proposes will thus only distract from the

13  basic discussion that needs to take place, and thereby drastically limit the tutorial's

14  utility.  As the Court well knows, the parties will have every opportunity to present

15  their litigation positions in connection with their dueling *Daubert* motions.  This

16  tutorial should serve an entirely different purpose – specifically, to educate the Court

17  on the systems and terminology of the ETCS, pedal sensors, and brake-override

18  systems.

22         **2.     Toyota's other topics similarly do not belong in a science tutorial**

23         Toyota's other proposed topics suffer from a more fundamental problem –

24  they are not even scientific or technical in nature.  For example, Toyota proposes to

_____

[11] *See* Berman Decl., ¶¶ 7-14 outlining the disputed and unreliable nature of this
"science."

[12] Berman Decl., ¶¶ 7-14.

- 13 -

discuss the "regulatory history" of the floor mat and sticky pedal recalls, but it has not explained why the "regulatory history" of these recalls should be discussed at a *science* tutorial.[13]  Similarly, Toyota wants to use the science tutorial to discuss NHTSA's Vehicle Owners Questionnaires ("VOQs") – which, as the name suggests, are questionnaires completed by vehicle owners reporting problems to NHTSA. Toyota has stated that it wants to show that any allegation or inference in Plaintiffs' complaints relating to the VOQs as evidence relating to problems with Toyota's ETCS is inaccurate.

Toyota openly admits it wants to raise these issues at the tutorial for reasons the Court has already rejected.  Whereas the Court explicitly warned that "a tutorial is not designed to refute every misstatement or inaccuracy in the operative pleading," (Ex. 12 (11/09/10 Tr. at 57:4-9)), *see supra* at 8, Toyota wants to discuss the VOQ precisely because it believes that the "operative Complaint relies so heavily" on it (an inaccurate assessment) and that the data shows something different than what the complaint alleges.  Ex. 1 at 3.  Toyota wants to discuss the recalls because of Plaintiffs' interpretation of the recalls in their complaints.  *Id.* at 2.  The tutorial is not some catch-all, open forum to discuss whatever topic a party believes the Court should better understand – that is a recipe for a contested, argumentative and ultimately useless proto-evidentiary hearing.  The content and format of Toyota's

---

[13] Toyota also wants to address the "technical measures taken by Toyota" and the recalls' "technical history."  To the extent Toyota wants to present the Court with timeline of the recalls, this is not complex enough for a tutorial.  To the extent Toyota wishes to describe the how, why and when of the recalls, these subjects will be disputed.  *See* Berman Decl., ¶¶ 15-23.

- 14 -

1  proposal more closely resembles a closing argument to the jury than a science

2  tutorial.

3      **3.**    **A recent trial demonstrates the dangers of allowing an automobile-manufacturer defendant to present a premature and one-sided explanation of the causes of sudden unintended acceleration**

5      A recent UA case against Ford Motor Company, *Stimson v. Ford Motor*

6  *Company* (Florida Circuit Court, 5th Judicial District), highlights the importance of

7  maintaining a neutral, non-adversarial tutorial.  The Ford UA litigation has been

8  proceeding for years, and the allegations and defenses in that litigation are similar to

9  those involved in the Toyota case.  In *Stimson*, the Court recently issued a 51-page

10  order that set aside a defense jury verdict due to Ford's highly biased and deceptive

11  presentation of UA defects in its vehicles.  *See* Ex. 5.

12      *Stimson* concerned an October 28, 2003 crash of a 1991 Ford Aerostar due to

13  an alleged UA incident that left Peggy Stimpson permanently paralyzed.  *The court*

14  *criticized Ford for defrauding the Court and NHTSA by claiming that it knew of no*

15  *other cause of SUA other than* driver error, while systematically concealing (and

16  even destroying) testing, field reports, engineering reports, engineering and expert

17  analysis, and patents – developed over the course of years – showing that

18  electromagnetic interference was a frequent root cause of SUA in Ford vehicles.[14]

19      *Stimson* dramatically highlights the risk of premature and adversarial tutorials

20  introducing NHTSA's reports in these cutting-edge cases.  The reality is that Toyota

---

[14] The Court also discussed and ultimately dismissed as unreliable and unpersuasive the much-relied-upon conclusions of *An Examination of Sudden Acceleration* (1989), known within NHTSA as "The Silver Book" (Ex. 9).  The Silver Book in turn was relied upon by NHTSA in ruling in Toyota's favor on various defect petitions.  Berman Decl., ¶¶ 7-10.

- 15 -

retains an extraordinary degree of control over the evidence in this litigation – it is intimately familiar with the implicated systems, including their design and testing, the principal and often only recipient of field reports regarding UA and related electronic defects, and the owner of proprietary hardware and software that may be able to identify any errant behavior by the vehicles or their systems.  Its fellow manufacturers exercise comparable levels of control over evidence of defects in their vehicles, and by extension, over studies of their vehicles.

As the *Stimpson* case demonstrates, reliance on NHTSA studies that may have been tampered with by manufacturers is dangerous and unfair as Plaintiffs were not parties to these prior studies.[15]

The Court should not accept that NHTSA studies and recall histories provide uncontroverted "scientific" evidence in this case meriting attention in a tutorial.  The tutorial is not and need not serve as a dry run for trial.  The Court should instead restrict the tutorial to complex, technical – but uncontroversial – matters that undergird the disputed issues and hold the tutorial only after full and fair discovery has been completed.

### III.   CONCLUSION

For all these reasons, Plaintiffs request that the Court issue an order setting an agenda for the tutorial that is consistent with Plaintiffs' proposal, outlined above.

---

[15] Plaintiffs intend to show that NHTSA's prior studies of Toyota are also flawed. *See* Berman Decl., ¶¶ 11-14.

- 16 -

1   Dated:  September 6, 2011          Respectfully submitted,

2                                      By:   /s/ Mark P. Robinson, Jr.

3
                                       Mark P. Robinson, Jr.
4                                      mrobinson@rcrlaw.net
5                                      ROBINSON, CALCAGNIE & ROBINSON
                                       620 Newport Center Drive, 7th Floor
6                                      Newport Beach, CA  92660
7                                      Telephone:  (949) 720-1288
                                       Facsimile:  (949) 720-1292
8

9
10  Dated: September 6, 2011           By:   /s/ Elizabeth J. Cabraser
                                             Elizabeth J. Cabraser
11
12                                     Elizabeth J. Cabraser, Bar No. 083151
                                       ecabraser@lchb.com
13                                     LIEFF CABRASER HEIMANN &
14                                       BERNSTEIN, LLP
                                       275 Battery Street, 29th Floor
15                                     San Francisco, CA  94111-3339
16                                     Telephone:  (415) 956-1000
                                       Facsimile:   (415) 956-1008
17

18
    Dated:  September 6, 2011          By:   /s/ Steve W. Berman
19                                           Steve W. Berman

20
                                       Steve W. Berman (pro hac vice)
21                                     steve@hbsslaw.com
22                                     HAGENS BERMAN SOBOL SHAPIRO LLP
                                       1918 Eighth Avenue, Suite 3300
23                                     Seattle, WA 98101
24                                     Telephone:  (206) 268-9320
                                       Facsimile:   (206) 623-0594
25

26

27

28

- 17 -

010172-25 471392 V1                                   Case No.: 8:10ML2151 JVS (FMOx)

1   Dated:  September 6, 2011          By:  __/s/ Frank M. Pitre_____
2                                              Frank M. Pitre

3                                        Frank M. Pitre, Bar No. 100077
4                                        fpitre@cpmlegal.com
                                         COTCHETT, PITRE & MCCARTHY
5                                        840 Malcolm Road, Suite 200
                                         Burlingame, CA 94010
6                                        Telephone:  (650) 697-6000
7                                        Facsimile:  (650) 697-0577

8

9   Dated:  September 6, 2011          By:  __/s/Marc M. Seltzer_____
10                                             Marc M. Seltzer

11                                       Marc M. Seltzer, Bar No. 054534
                                         mseltzer@susmangodfrey.com
12                                       SUSMAN GODFREY L.L.P.
13                                       1901 Avenue of the Stars, Suite 950
                                         Los Angeles, CA  90067-6029
14                                       Telephone:  (310) 789-3102
15                                       Facsimile:   (310) 789-3006

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PROOF OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on September 6, 2011.

 /s/ Steve W. Berman
Steve W. Berman

010172-25  471392 V1                                                          Case No.: 8:10ML2151 JVS (FMOx)