Steve W. Berman (*pro hac vice*)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL
  SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 268-9320
Facsimile:   (206) 623-0594

Marc M. Seltzer, Bar No. 054534
*mseltzer@susmangodfrey.com*
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3102
Facsimile:   (310) 789-3006

Frank M. Pitre, Bar No. 100077
*fpitre@cpmlegal.com*
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

*Interim Lead Counsel for the Economic Loss
Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:10ML2151 JVS (FMOx) |
| | ECONOMIC LOSS PLAINTIFFS' SUBMISSION REGARDING CLASS CERTIFICATION SCHEDULE |
| This Document Relates To: | |
| ALL CASES | |

ECONOMIC LOSS PLAINTIFFS' SUBMISSION REGARDING CLASS
CERTIFICATION SCHEDULE

010172-25  470298 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................ 1

II.     ARGUMENT ...................................................................................... 1

        A.      Plaintiffs' Plan Resolves "Bellwether" Class Certification
                by the End of 2012 and Provides a Fulsome Framework
                for Evaluating Additional Classes ............................................ 1

                1.      Plaintiffs' plan proposes a bellwether trial for either
                        a single class or limited classes. .................................... 1

                2.      Proceeding to trial with a limited "bellwether" class
                        or classes is the most efficient means of determining
                        economic loss class issues. ............................................ 4

        B.      The Court Should Reject Toyota's Quest for a Scorched-Earth
                Discovery Schedule that Will Unduly Delay Trial of the
                Economic Loss Class Claims ..................................................... 7

                1.      Toyota's proposed schedule puts the economic loss cases
                        on the "back burner." ..................................................... 7

                2.      Cogent limits on Toyota's discovery of Plaintiffs are needed. ....... 9

III.    CONCLUSION ................................................................................. 15

010172-25  470298 V1

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

CASES

4

*Baldwin & Flynn v. National Safety Assocs.*,
149 F.R.D. 598 (N.D. Cal. 1993) ....................................................... 12

5

6

*Enterprise Wall Paper Mfg. Co. v. Bodman*,
85 F.R.D. 325 (S.D.N.Y. 1980) .......................................................... 12

7

8

*Fischer v. Wolfinbarger*,
55 F.R.D. 129 (W.D. Ky. 1971) .......................................................... 11

9

10

*In re Pharmaceutical Indus. Average Wholesale Price Litig.*,
252 F.R.D. 83 (D. Mass. 2009) ............................................................ 6

11

12

*In re Pharmaceutical Indus. Average Wholesale Price Litig.*,
491 F. Supp. 2d 20 (D. Mass. 2007) ............................................. 5, 6, 7

13

14

*In re Cardizem CD Antitrust Litig.*,
200 F.R.D. 326 (E.D. Mich. 2001) ....................................................... 5

15

16

*In re Chinese Manufactured Drywall Prods. Liab. Litig.*,
2010 U.S. Dist. LEXIS 36401 (E.D. La. Mar. 15, 2010) ..................... 5

17

18

*In re Prempro Prods. Liab. Litig.*,
2010 U.S. Dist. LEXIS 135152 (E.D. Ark. Dec. 6, 2010) ................... 5

19

*In re Vioxx Prods. Liab. Litig.*,
2011 U.S. Dist. LEXIS 92706 (E.D. La. Aug. 9, 2011) ....................... 5

20

21

*Kamm v. California City Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) .............................................................. 11

22

23

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
2008 U.S. Dist. LEXIS 118563 (C.D. Cal. June 30, 2008) ................ 11

24

25

*Robertson v. National Basketball Ass'n*,
67 F.R.D. 691 (S.D.N.Y. 1975) .......................................................... 11

26

*Wainwright v. Kraftco Corp.*,
54 F.R.D. 532 (N.D. Ga. 1972) .......................................................... 11

27

28

- ii -

1

2

*Waste Mgmt. Holdings v. Mowbray*,
     208 F.3d 288 (1st Cir. 2000) ................................................................. 4

3

**OTHER AUTHORITIES**

4

MANUAL FOR COMPLEX LITIG. FOURTH § 20.132 ..................................... 12

5

MANUAL FOR COMPLEX LITIG. FOURTH § 21.14 ....................................... 5

6

MANUAL FOR COMPLEX LITIG. FOURTH § 22.93 ....................................... 5

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

010172-25  470298 V1

# I.     INTRODUCTION

In advance of the September 12, 2011 scheduling hearing, and in association with the Joint Statement Re:  Status of Class Discovery Plan and Schedule Meet and Confer Discussions, the Economic Loss Plaintiffs ("Plaintiffs") respectfully submit what they believe is a cogent plan for efficiently preparing the economic loss class actions for the second "bellwether" trial.  Plaintiffs' proposed plan provides for streamlined yet ample discovery, resolves bellwether class certification in 2012, accommodates a May 2013 trial date, and is consistent with the Court's case management orders, including Order Nos. 14-16.

In contrast, Toyota's proposal puts the economic loss class actions on the "back burner," contrary to the Court's guidance expressed at the June 10, 2011 hearing, Order Nos. 14-16 and the Court's Order re Clarifying Effect of Order No. 14, 15 and 16.  Toyota urges scorched-earth discovery, including the deposition of hundreds of Plaintiffs in the underlying class actions that will endure through 2013, and even refuses to propose a trial date.  Toyota thus does not present a serious plan for resolving the economic loss class actions.  There is no end in sight under Toyota's proposed schedule, and the Court should reject it and adopt Plaintiffs' plan.

# II.     ARGUMENT

**A.     Plaintiffs' Plan Resolves "Bellwether" Class Certification by the End of 2012 and Provides a Fulsome Framework for Evaluating Additional Classes**

   **1.     Plaintiffs' plan proposes a bellwether trial for either a single class or limited classes.**

The Court has clearly signaled that discovery and class certification proceedings in the economic loss class actions should proceed expeditiously.  *See,*

- 1 -

*e.g.,* June 10, 2011 Hearing Tr. at 28 ("I'm not going to put the economic class actions on the back burner.  I am looking at page four of your handout proposing a November 2013 class certification hearing.  We will have the class certification hearing long before that depending on what type of class the plaintiffs seek to certify."); Order re Clarifying Effect of Order no. 14, 15 and 16 (Dkt. No. 1724) (reaffirming that the timetables in Order Nos. 14-16 apply to the economic loss class actions).  Plaintiffs agree and propose a class certification schedule that arms the Court with the information necessary to decide the first class certification motion in little over a year from now.  Plaintiffs propose the following deadlines:

- Oct. 1, 2011      Plaintiffs identify the scope of the class(es) and the proposed class representatives
- May 1, 2012      Deadline for Toyota to take depositions of proposed class representatives
- June 18, 2012      Plaintiffs file class certification motion
- August 5, 2012      Defendants' file opposition thereto
- Sept. 15, 2012      Plaintiffs file reply brief in support of motion
- Oct. 30, 2012      Hearing on class certification

On October 1, 2011, Plaintiffs propose to identify (i) the scope of the class or classes that will be the subject of the class certification motion (the "bellwether class(es)") and (ii) the proposed class representatives for the bellwether class(es).[1] The proposed class definition(s) will not be immutable, as ongoing discovery may reveal the need to fine-tune the definition and/or add subclasses.  Therefore, Plaintiffs

---

[1] Plaintiffs will identify the proposed class or classes by reference to paragraphs in the SAMCC where the applicable class is defined, or by October 1, 2011, file a proposed amended complaint which identifies the class or classes for which certification will be sought.

- 2 -

reserve the right to amend the definition(s) disclosed on October 1 to conform to facts adduced during the course of discovery.  If Plaintiffs seek to amend the class definition(s) after February 1, 2012, the Court can consider adjusting the timing of expert disclosures and other class certification deadlines as necessary.

With the scope of the initial classes defined on October 1, 2011, the parties will be in a better position to focus their discovery efforts.  Under Plaintiffs' proposal, Toyota will have until May 1, 2012, to depose the proferred class representatives. This will provide Toyota with more than ample time to review these Plaintiffs' document productions and prepare for depositions.

So that the parties are able to meet these deadlines, Plaintiffs also propose a cogent discovery plan related to class certification issues.  As a first step, the parties should meet and identify any specific discovery needed for class certification that needs sequencing on dates earlier than provided for in Order Nos. 14 and 15, with any disputes as to the timing of such discovery resolved by the Special Masters. Otherwise, Plaintiffs propose that dates in Order No. 14 relating to trial, motions *in limine*, motions for summary judgment and *Daubert* motions remain unchanged for the second bellwether trial.  For the Courts convenience, some of the more salient dates from Order No. 14 are as follows:

- June 18, 2012          Initial expert disclosures
- July 16, 2012          Rebuttal/supplemental expert disclosures
- August 20, 2012     Close of expert discovery
- Sept. 7, 2012          Close of fact discovery
- Sept. 10, 2012        Rule 702 motions
- Sept. 17, 2012        Motions for summary judgment

- 3 -

010172-25  470298 V1

- Oct. 1, 2012       Rule 702 oppositions

- Oct. 8, 2012       Rule 702 replies
                     Summary judgment oppositions

- Oct. 22, 2012      *Daubert* hearing
                     Summary judgment replies

- Nov. 2, 2012       Summary judgment hearing

Plaintiffs propose that the trial of the claims of the bellwether class(es) commence on May 21, 2013.  After the Court holds the trial of the bellwether class claims, Plaintiffs will propose a schedule that applies to the remaining cases and classes.  Within 30 days after trial, Plaintiffs suggest that the parties submit proposals for certification of the balance of the proposed classes.

In sum, the foregoing proposal comports with the Court's desire to move the economic loss class cases forward in an efficient manner, and it resolves an economic loss class bellwether trial within two years.

### 2.   Proceeding to trial with a limited "bellwether" class or classes is the most efficient means of determining economic loss class issues.

Proceeding incrementaly with a bellwether class or classes is the most efficient means of determining the economic loss class issues in this complex litigation.  In undertaking its rigorous analysis of the Rule 23 factors, courts "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Waste Mgmt. Holdings v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000).  In other words, the Court undertakes "an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or ***are susceptible of common proof*** equally applicable to all class members."

- 4 -

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 334 (E.D. Mich. 2001) (emphasis added) (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997)).

By certifying a bellwether class or classes and then holding a trial of claims limited to that class or classes, the Court will be in a far superior position to evaluate the merits of certifying additional classes (or not) later.  Instead of merely predicting "how specific issues will play out in order to determine whether common or individual issues predominate," the Court – having actually tried the bellwether class claims – will have seen *exactly* how those issues played out.  Consequently, the Court will be much better equipped to decide whether common issues will predominate for additional and/or broader classes and whether trial of those additional claims as class claims is superior to other methods of adjudication.  *Cf.* MANUAL FOR COMPLEX LITIG. FOURTH ("MANUAL"), § 20.132 at 310, § 22.93 at 690-92 (encouraging courts to utilize bellwether trials in both MDL actions and mass torts).[2]

This is how the court proceeded in *In re Pharmaceutical Indus. Average Wholesale Price Litig.* ("*In re AWP*") previously cited to the Court.  Faced with an exceedingly complex case involving fraudulent drug pricing claims under 50 state laws against over 12 defendants on behalf of proposed national classes of consumers and insurance companies, Judge Patti B. Saris of the District of Massachusetts broke the case into two "tracks" based on the number of defendants and then proceeded to

---

[2] Bellwether trials are frequently utilized in complex product liability actions. *See*, *e.g.*, *In re Vioxx Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 92706 (E.D. La. Aug. 9, 2011); *In re Prempro Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 135152 (E.D. Ark. Dec. 6, 2010); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 36401 (E.D. La. Mar. 15, 2010).

- 5 -

try a "Track 1" bellwether case limited to a certified class of Massachusetts consumers and insurers claiming under Massachusetts law.  *See In re AWP*, 491 F. Supp. 2d 20 (D. Mass. 2007); Declaration of Steve W. Berman in Support of Economic Loss Plaintiffs' Submission Regarding Class Certification Schedule ("Berman Decl."), ¶¶ 2-5.  In later certifying a consumer class under the unfair and deceptive trade practices acts of 30 states, the Court observed that the bellwether trial gave the court "the opportunity to understand the complex factual and legal disputes in this difficult area of drug pricing."  *In re AWP*, 252 F.R.D. 83, 87 (D. Mass. 2009).  The court found that "[t]he bellwether trial, together with the seven years of presiding over this multi-district litigation, permits the Court to take a searching look at the critical fact disputes, to make fact-findings for purposes of class certification and to make grounded predictions as to how the key contested issues will play out."  *Id.* at 92. Indeed, the court frequently cited evidence from the trial throughout its second certification opinion.  *See*, *e.g.*, *id*. at 89-90 (citing expert testimony from bellwether trial); 90 (citing trial findings against defendant AstraZeneca); 91 (citing trial findings against defendant BMS); 97, 100, 203 (citing trial findings relating to plaintiffs' knowledge); 103 (observing that the bellwether trial demonstrated that damages could be reasonably calculated on a class-wide basis).

Thus, as *In re AWP* demonstrates, a bellwether trial will provide the Court with a superior understanding of the issues as applied to Rule 23 and, therefore, better prepare the Court to determine whether to certify additional classes down the road. For example, the bellwether trial here will arm the Court with detailed knowledge into the causes of unintended acceleration ("UA") events in the subject Toyota vehicles and how the common proof of UA events affects all class members (or not); will

- 6 -

provide a platform for the Court to evaluate experts and make *Daubert* findings before evaluating additional class certification requests; and will determine whether Plaintiffs are able to reasonably demonstrate class-wide damages.  All of these inquiries will dramatically impact whether it is appropriate under Rule 23 for the Court to certify additional classes.  In the words of the *AWP* court, the bellwether trial will "permit the Court to take a searching look at the critical fact disputes, to make fact-findings for purposes of class certification and to make grounded predictions as to how the key contested issues will play out."  *Id.* at 92.

## B. The Court Should Reject Toyota's Quest for a Scorched-Earth Discovery Schedule that Will Unduly Delay Trial of the Economic Loss Class Claims

### 1. Toyota's proposed schedule puts the economic loss cases on the "back burner."

Toyota's proposal pushes the class certification decision into 2013.  Toyota urges a January 15, 2013 hearing date and then a pause in the litigation after the Court issues its class certification decision.  This proposal will needlessly prolong this litigation.  The proposal contravenes the Court's directive that initial class certification be resolved "long before" the Fall of 2013; is very similar to the original schedule Toyota proposed and the Court rejected; forecloses the logical prospect that the second bellwether trial in May 2013 should be on behalf of an economic class or classes; and guarantees that the first economic loss trial will not occur until late in 2014 or beyond.  Indeed, Toyota does not even propose a trial date for the first economic loss class action, and instead proposes further delay by urging the Court to issue a further scheduling order after ruling on dispositive motions.  Thus, under Toyota's proposal, the parties would not even know the trial date until mid-March 2014.

- 7 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Toyota's proposal puts the economic loss class actions not just on the "back burner," but off the stove completely, which is exactly what the Court said it would not do.  Nor should it.  The economic loss class actions are an important part of the landscape of the MDL litigation against Toyota, and the first economic loss class trial should proceed after the first personal injury/wrongful death trial concludes.  Results of the personal injury/wrongful death trial may not necessarily assist the Court and the parties with framing issues in the economic loss cases.  In contrast, the results of the first economic loss trial could have profound implications for the remaining economic loss cases, including class certification.  Accordingly, trial of the first economic class case should not await the outcome of two or more personal injury/wrongful death trials and should instead commence soon after the first bellwether trial concludes.

For this reason, the Court should reject not only Toyota's delayed class certification schedule, but also its proposed schedule for expert discovery and dispositive briefing.  Toyota's proposal does not begin expert discovery until June 2013 – a little less than a year from now – and does not call for the resolution of dispositive motions until March 2014.  Again, these deadlines are inconsistent with the Court's command that the economic loss cases not be put on the back burner.

There are other fundamental defects in Toyota's scheduling proposal.  In contrast to the flexible approach that Plaintiffs' proffer with respect to identifying the bellwether class definition(s) on October 1 with the prospect for future amendments thereto, which merely recognizes the realities of complex class litigation, Toyota seeks to box in Plaintiffs and prohibit any further amendments to the class definition(s) proposed on October 1.  This position ignores the fact that discovery conducted beyond October 1 may very well impact the scope of the proposed class or

- 8 -

1    classes; that is the very nature of discovery.  The Court should reject Toyota's failure
2    to recognize this reality.

3        With regard to the class certification briefing schedule, Toyota would provide
4    Plaintiffs with only 30 days to file reply papers in support of class certification.  But
5    given the pivotal importance of that motion, Plaintiffs will need the full five weeks set
6    forth in Plaintiffs' proposal.
7

8        Nor should page limitations be set now, as Toyota proposes.  Without knowing
9    the scope of the class or classes that will ultimately be proposed, and without the
10   benefit of the substantial discovery that will occur in the next 10 months before
11   Plaintiffs file their motion, it is premature to establish specific page limits.  To be
12   sure, Plaintiffs agree that reasonable limitations are necessary, but the specifics limits
13   should be considered shortly before the motion is filed.
14

15       Toyota's "plan" is fraught with delay and other problems.  Indeed, it is not a
16   serious plan for the efficient resolution of the economic loss class claims.  The Court
17   should reject Toyota's plan and its call for incessant delay.
18

        **2.    Cogent limits on Toyota's discovery of Plaintiffs are needed.**
19
20       Toyota contends it should be permitted to take nearly unfettered discovery of
21   ***any and all*** named Plaintiffs in the economic loss cases at ***any*** time prior to the due
22   date for Toyota's class certification opposition.  Under Toyota's plan, discovery will
23   not be limited to the 50 Plaintiffs named in the SAMCC as of September 1, 2011, but
24   will also include all of the Plaintiffs named in the approximately 200 underlying
25   economic class actions within the MDL as well.  Toyota's proposed discovery plan
26   undercuts the efficiency commanded by the Court's Order Nos. 14-16, as the
27

28

010172-25  470298 V1

1   onslaught of harassing discovery that Toyota demands – much of it that may prove to

2   be unneeded – will profoundly delay the progress of this litigation.

3         The sheer scope of Toyota's proposed discovery of the plaintiffs is nothing

4   short of stunning.  It contemplates:

5

6        • Depositions of over 250 named Plaintiffs.

7        • Requests for production served on over 250 named Plaintiffs.

8        • Up to 100 requests for admission served on each of the more than 250

9          named Plaintiffs, *for a total of over 25,000 requests for admission*.

10       • Up to 100 interrogatories served on each of the 50 Plaintiffs named in the

11         SAMCC, *for a total of over 5,000 interrogatories*.

12

13       • Inspections of the vehicles of over 250 named Plaintiffs.

14        Proceeding in this blunderbuss fashion is not an efficient mechanism for

15  preparing for the class certification proceedings.  One can just hear the billing

16  machine churning:  the foregoing tasks will consume at least 100 hours of attorney

17  time per named Plaintiff on both the defense and plaintiff side, or 25,000 hours.  And

18  much of that will be wasteful, as Toyota's plan will likely result in a plethora of

19  uneeded discovery.  This is because it is not clear which, if any, other Plaintiffs will

20  ultimately serve as proposed class representatives.  But it is doubtful that anywhere

21  near 250 class representatives will ever be offered as a class representative.  If and

22  until the Plaintiffs are identified as class representatives, the other Plaintiffs should be

23  treated as akin to absent class members and protected from intrusive discovery.

24

25        Courts have rather uniformly held that absent class members are not amenable

26  to discovery as a matter of course.

27

28

- 10 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Not surprisingly, then, courts have recognized that "[t]he use of discovery devices against nonrepresentative class members raises the troublesome conflict between 'the competing interests of the absent class members in remaining passive and the defendant in having the ability to ascertain necessary information for its defense.'"  *Robertson v. National Basketball Ass'n*, 67 F.R.D. 691, 699 (S.D.N.Y. 1975) (citing Comment, *Making the Class Determination in Rule 23(b)(3) Class Actions*, 42 FORDHAM L. REV. 791, 811 (1974)).  Courts have recognized that the very nature of Rule 23 affords absent class members some protections from the burdensome aspects of the litigation.  *See*, *e.g.*, *Wainwright v. Kraftco Corp.*, 54 F.R.D. 532, 534 (N.D. Ga. 1972) ("The usefulness of Rule 23 would end if class members could be subjected to Rule 33 and forced to spend time, and perhaps engage legal counsel, to answer detailed interrogatories."); *Fischer v. Wolfinbarger*, 55 F.R.D. 129, 132 (W.D. Ky. 1971) ("The class action . . . is designed to provide a fair and efficient procedure for handling claims . . . where it is fair to conclude that the representative parties will fairly and adequately protect the interests of the class. It is not intended that members of the class should be treated as if they were parties plaintiff subject to the normal discovery procedures, because if that were permitted, then the reason for the rule would fail.").

As a result of these concerns, discovery of putative class members is generally not permitted without leave of court.  *See Kamm v. California City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975).  And leave is only granted if the defendant can "show that discovery is both necessary and for a purpose other than taking undue advantage of class members."  *Negrete v. Allianz Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 118563, at *9-10 (C.D. Cal. June 30, 2008).  "The burden is heavy to justify

- 11 -

asking questions by interrogatories, even heavier to justify depositions." *Baldwin & Flynn v. National Safety Assocs.*, 149 F.R.D. 598, 600 (N.D. Cal. 1993); *see also* MANUAL, § 21.14 at 374 (the discovery into absent class members ordinarily requires a demonstration of need); *Enterprise Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980) (courts should not permit parties to obtain discovery from absent class members unless they are able to make a "strong showing" of the reasons why the discovery is absolutely necessary).

Toyota will not be able to meet its heavy burden of demonstrating that it needs such wide-ranging discovery into over 250 Plaintiffs, most of whom will ultimately be absent class members.  Toyota has already taken the depositions of 10 named Plaintiffs and will have the opportunity to depose and serve extensive written discovery requests on any Plaintiffs designated on October 1st as proposed class representatives.  Moreover, pursuant to an agreed protocol, Toyota has been provided "Fact Sheets" for 80 Plaintiffs.  The Fact Sheets provided detailed, written answers to up to 62 questions plus subparts, covering the following general topics:  personal information; previous legal involvements; vehicle identification and other information; maintenance history; UA incident information; medical history; damages claims; and communications with regulatory organizations.  *See*, *e.g.*, Berman Decl., Ex. A.  For each general topic, Toyota was provided, *inter alia*, the following information:

- *Personal Information*:  name, address, marital status, educational background, and military service.

- *Previous Legal Matters*:  felony and misdemeanor convictions (if any), involvment in other lawsuits, including class actions, and related information.

- 12 -

- *Vehicle Information*:  brand, model year and trim level; vehicle VIN; mileage; license plate information; date and place of vehicle acquisition; purchase or lease information; description of how vehicle has been used; and warranty information.

- *Maintenance History*:  description of all vehicle maintenance, including what was done, when and who serviced the vehicle.

- *Incident Information*:  **all** details surrounding UA events and any collisions, including law enforcement and emergency responders, the nature of any injuries and property damage, identification of all known witnesses, relevant insurance coverage, where vehicle was repaired, and identification of all evidence regarding the UA events.

- *Medical History*:  information about prescription or non-prescription drug use and any medical conditions.

- *Damages Claims*:  identification of all damages, losses or expenses of any nature by category and amount; whether vehicle is in continued use; attempts to sell the vehicle; claims of value diminishment; and identification of all witnesses with knowledge of the damage claims.

- *Other Communications*:  identification of any communications made to any regulatory or government officials including NHTSA and any internet blog posts or videos related to the vehicle, the UA event or any of the allegations in the case.

All of the responses in the Fact Sheets were provided under penalty of perjury pursuant to 28 U.S.C. § 1746, and all non-privileged documents identified in the answers were provided to Toyota.

These Fact Sheets thus provided Toyota with a very specific profile of 80 Plaintiffs.  And that information adds to what is undoubtedly an extensive knowledge base that Toyota already has compiled regarding all Plaintiffs' specific vehicles given that Toyota manufactured and sold the vehicles, knows all of the vehicle identification numbers and surely has gathered relevant sales and service information from every Toyota dealer that ever touched a Plaintiff vehicle.

- 13 -

010172-25  470298 V1

1   Thus, Toyota will have a significant body of discovery into the class

2   representatives to draw from in preparing its opposition to class certification and its

3   pretrial motions.  It simply does not need over 250 Plaintiff depositions and vehicle

4   inspections, 25,000 request for admission responses, and 5,000 interrogatory

5   responses.  If the Court ultimately decides not to certify a class, or the class claims do

6   not succeed at trial, the avalanche of Plaintiff-specific discovery that Toyota seeks

7   will have been a waste of the parties' resources and resulted in needless delay.  For

8   these reasons, Plaintiffs submit that any additional discovery of other Plaintiffs not

9   named on October 1 as class representatives for the bellwether class(es) be deferred

10  until after the first bellwether economic loss class trial is concluded and Plaintiffs

11  identify additional class(es) sought to be certified and representatives for those

12  classes.

13      Lastly, class representative depositions should not run concurrently with the

14  class certification briefing schedule, as Toyota proposes.  The parties will be

15  intensively focused on preparing their briefing and readying argument for the Court.

16  Given the complexity of this case, class certification discovery should not overlap

17  with these preparations and thereby serve as an unnecessary distraction that could

18  detract from the quality of the briefing.  Instead, class certification discovery should

19  close upon the filing of Plaintiffs' motion on June 18, 2012.  With the class

20  representatives for the bellwether class(es) designated on October 1, 2011, Toyota will

21  have more than adequate time to take their depositions in the ensuing seven month

22  period leading up to Plaintiffs' proposed deposition deadline of May 1, 2012.

- 14 -

1

## III.   CONCLUSION

2

For the foregoing reasons, Plaintiffs respectfully request the Court to adopt

3

this proposal for scheduling in the economic loss class actions.

4

5

6

Dated:  September 6, 2011

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By:   /s/ Steve W. Berman
       Steve W. Berman (WA SBN 12536)
**HAGENS BERMAN SOBOL
  SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone:  (206) 268-9320
Facsimile:   (206) 623-0594
Email:  steve@hbsslaw.com

By:   /s/ Marc M. Seltzer
      Marc M. Seltzer (CA SBN 054534)
**SUSMAN GODFREY L.L.P.**
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone:  (310) 789-3102
Facsimile:   (310) 789-3006
Email:  mseltzer@susmangodfrey.com

By:   /s/ Frank M. Pitre
      Frank M. Pitre (CA SBN 100077)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577
Email:  fpitre@cpmlegal.com

*Co-Lead Counsel for
Economic Loss Plaintiffs*

- 15 -

1

## **PROOF OF SERVICE**

2

3

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on September 6, 2011.

4

5

/s/ Steve W. Berman

6

Steve W. Berman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

010172-25  470298 V1