1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation<br><br>This document relates to:<br><br><u>Victor Levey, et al. v. Toyota Motor Sales, U.S.A., Inc., et al.</u><br>SACV 11-00464 JVS (FMOx)<br><br><u>Cornelia Neely, et al. v. Toyota Motor Sales, U.S.A., Inc., et al.</u><br>SACV 11-00761 JVS (FMOx) | Case No.<br><br><u>**8:10ML 02151 JVS (FMOx)**</u> ***<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS |

These individual actions, member cases of the multi-district litigation ("MDL") referenced above, arise out of auto collisions involving Plaintiffs, the drivers and passengers two different models of Lexus vehicles.  Presently before the Court are Motions to Dismiss claims asserted in the First Amended Complaints ("FAC") filed in the individual actions.  The Motions to Dismiss were filed by all defendants (which are the same in both individual actions and which are referred to

1

herein collectively as "Toyota" or "the Toyota Defendants").  The Motion to Dismiss in the <u>Levey</u> case seeks dismissal of all claims based on timeliness. (Docket No. 13.)[1]  In the <u>Neely</u> case, Toyota moves to dismiss two claims, contending that Plaintiffs' fraudulent concealment claim is precluded by Ohio statutory law regarding products liability claims, and that Plaintiffs' statutory manufacturing defect claim is deficiently pleaded.  (Docket No. 21.)[2]  In each case, timely Opposition and Reply briefs were filed.  (<u>Levey</u> Docket Nos. 18, 19; <u>Neely</u> Docket Nos. 23, 27.)  As set forth below, the Court grants in part and denies in part the present Motions to Dismiss, rejecting Toyota's timeliness challenge, dismissing the fraudulent concealment claim with prejudice, and finding that the manufacturing defect claim is sufficiently pleaded.

I.      <u>Factual Allegations and Claims Asserted</u>

The Plaintiffs assert near-identical claims based on similar facts.

A.      <u>Neely</u>

Plaintiffs were traveling in a 2008 Lexus ES 350 on April 26, 2010, when the vehicle suddenly accelerated and, in an incident of what is referred to in this

---

[1]  Unless otherwise noted, the references to the docket throughout this Order are to the individual case number.  Where it is unclear from the context, the Court references the individual case name or number.

[2]  In the <u>Levey</u> case, should the Court reject Toyota's contention that all claims are untimely, Toyota moves to dismiss identical claims on the same grounds.

litigation as sudden, unintended acceleration ("SUA"), failed to slow or stop when Plaintiff Neely applied the brake.  (FAC ¶¶ 19-20.)  The Lexus reached speeds in excess of 70 miles per hour, struck two other vehicles, sending one airborne, and finally stopped when it struck a tree.  (FAC ¶ 20.)  Plaintiffs both suffered internal injuries, including a liver laceration, a collapsed lung, broken bones, and bruising; each Plaintiff requires ongoing medical treatment.  (FAC ¶ 21.)

Plaintiffs allege that Toyota failed to inform them of the tendency of its vehicles to suddenly accelerate while instead making representations regarding the safety and reliability of its vehicles.  (See, e.g., FAC ¶¶ 63, 135, 137.)  Plaintiffs further allege that Toyota created a "smoke screen" of safety recalls involving floor mats and sticky pedals while failing to acknowledge or disclose other potential causes of SUA.  (See e.g., FAC ¶¶ 4, 63.)

B.   Levey

On January 15, 2008, as decedent Delores Levey drove her 2007 Lexus GS, it suddenly and unexpectedly accelerated as it traveled uphill, striking bushes and mailboxes before crashing into a tree, killing Delores Levey.  (FAC ¶¶ 19-20.)

Like the FAC in the Neely case, the FAC in the Levey case alleges that Toyota failed to inform them of the tendency of its vehicles to suddenly accelerate while instead making representations regarding the safety and reliability of its vehicles.  (See, e.g., FAC ¶¶ 64, 129, 131.)  Further, as in Neely, the Levey Plaintiffs allege that Toyota created a "smoke screen" of safety recalls involving

floor mats and sticky pedals while failing to acknowledge or disclose other potential causes of SUA.  (See e.g., FAC ¶¶ 4, 64.)

### C.     Claims Asserted in Both Actions

Against this background, and pursuant to Ohio law, Plaintiffs assert the following claims:  In their first through fourth causes of action, pursuant to Ohio Products Liability Act ("OPLA"), Ohio Rev. Code §§ 2307.71 et seq., (1) a claim based on a defect in the manufacture or construction of the Lexus under § 2307.74; (2) a claim based on defective design pursuant to § 2307.75; (3) a claim based on the failure to warn and instruct adequately pursuant to § 2307.76; and (4) the failure to conform to Toyota's representations, brought pursuant to § 2307.77.  In their fifth cause of action, Plaintiffs assert a claim for fraudulent concealment. Finally, Plaintiffs' sixth cause of action, which appears to the Court to be more akin to a prayer for relief than a separate claim, Plaintiffs assert a claim for punitive damages.

II.     Standard for Dismissal Pursuant to Rule 12(b)(6) and Rule 9(b) Pleading with Particularity Requirement

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

In resolving a Rule 12(b)(6) motion under Twombly , the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.   Nor must the Court "accept as true a legal conclusion couched as a factual allegation." Id. at 1949-50 (quoting Twombly, 550 U.S. at 555).  Instead, the Court examines the relevant allegations for their "factual content" and the reasonable inferences that flow therefrom.  Id. at 1949.  Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 1950. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

Additionally, under Federal Rule of Civil Procedure 9(b), a plaintiff must plead each of the elements of a fraud claim with particularity, i.e., a plaintiff "must set forth more than the neutral facts necessary to identify the transaction." Cooper v. Pickett, F.3d 616, 625 (9th Cir. 1997) (emphasis in original).  In other words, fraud claims must be accompanied by the "who, what, when, where, and how" of the fraudulent conduct charged.  Vess v. Ciba-Geigy Corp., USA , 317 F.3d 1097, 1106 (9th Cir. 2003).  A pleading is sufficient under Rule 9(b) if it identifies the

circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.  <u>Moore v. Kayport Package Express, Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989).  While statements of the time, place, and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient.  <u>Id.</u>

III.  <u>Statute of Limitations</u>

Toyota contends that the <u>Levey</u> action is barred by the relevant limitations period.  Plaintiffs contend that because the alleged defects were concealed from them until some time in the spring of 2010, their claims are timely.

In analyzing state-law claims, the Court must apply controlling Ohio Supreme Court precedent as it finds it; where such precedent is lacking, the Court must consider rulings of other Ohio courts and must attempt to ascertain how the Ohio Supreme Court would decide the issue.  <u>See</u> <u>Commissioner v. Estate of Bosch</u>, 387 U.S. 456, 465 (1967) ("If there is no decision by [the state supreme] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State"); <u>Guebara v. Allstate Ins. Co.</u>, 237 F.3d 987, 993 (9th Cir. 2001) ("Our task is to surmise how the state supreme court would decide the issue."); <u>Wyler Summit Partnership v. Turner Broadcasting System, Inc.</u>, 135 F.3d 658, 663 n.10 (9th Cir.1998) ("In the absence of controlling [state] Supreme Court precedent, we are Erie-bound to apply the law as we believe that court would do so under the circumstances.").

The statute of limitations as to all claims asserted pursuant to the OPLA is two years.  Ohio Rev. Code § 2305.10(A).  Because the date of the filing of the Levey action, January 20, 2011, is more than two years after the date of the fatal crash, January 15, 2008, it appears at first glance that those claims are barred by the statute of limitations.  However, in Ohio and elsewhere, the harsh edges of limitations periods are ameliorated by an exception to the timeliness requirement known as "the discovery rule."  Consideration of the applicability of the Ohio discovery rule is a context-specific undertaking.  Browning v. Burt, 66 Ohio St. 3d 544, 559 (1993) ("By its very nature, the discovery rule (concept) must be specially tailored to the particular context in which it is to be applied.")

Toyota contends that the rule is inapplicable because it applies only in cases involving latent injuries, which are not at issue here.  Although Toyota's position is not wholly without support, the Court concludes the proposed narrow construction of Ohio's discovery rule is at odds with Ohio Supreme Court case law on the issue. As explained below, the Ohio Supreme Court impliedly rejected this construction by fixing as the accrual date of an intentional tort claim for personal injury the date plaintiff discovered information regarding the cause of his illness rather than the earlier date of the plaintiff's definitive diagnosis.

The Ohio Supreme Court has elaborated on the state's discovery rule:

> Generally, a cause of action accrues and the statute
> of limitations begins to run at the time the wrongful act

was committed. . . . However, the discovery rule is an exception to this general rule and provides that a cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant. . . . [T]he discovery rule entails a two-pronged test – i.e., discovery not just that one has been injured but also that the injury was caused by the conduct of the defendant – and that a statute of limitations does not begin to run until both prongs have been satisfied. . . . <u>Since the rule's adoption, the court has reiterated that discovery of an injury alone is insufficient to start the statute of limitations running if at that time there is no indication of wrongful conduct of the defendant.</u>

<u>Norgard v. Brush Wellman, Inc.</u>, 95 Ohio St. 3d 165, 167 (2002) (internal quotation marks and citations omitted) (paragraph structure altered) (emphasis added); <u>accord</u> <u>Doe v. Archdiocese of Cincinnati</u>, 109 Ohio St. 3d 491, 497 (2006); <u>Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.</u>, 128 Ohio St. 3d 529, 532-33 (2011).

        In <u>Norgard</u>, the court applied the discovery rule to save the plaintiff's claims for injuries based on exposure during the early 1980s to the chemical beryllium.

8

1   Norgard, 95 Ohio St. 3d at 169.  Absent application of the discovery rule, the

2   plaintiff's claims would have been time-barred over a decade before.  Id.

3   Significantly, the court found the event that gave rise to the cause of action

4   occurred in 1995, and it was not the mere discovery of the illness;[3] rather, the court

5   found the cause of action arose when the plaintiff, alerted to beryllium lawsuits

6   against his former employer, learned from counsel that his former employer

7   withheld information from him about the causes of beryllium-related diseases and

8   acceptable levels of beryllium exposure.  Id. at 166, 169.  In identifying this date,

9   the court rejected the position of the dissenting justices that the claim arose upon

10  his 1992 diagnosis of chronic beryllium disease, coupled with the seeming

11  likelihood that he contracted the disease through occupational exposure.  See id. at

12  170 (dissenting opinion).

13

14      Toyota's position that the discovery rule applies only to cases involving

15  latent injuries is untenable in light of Norgard.  There is no question that, by 1992,

16  plaintiff's illness — chronic beryllium disease — was known to him and was thus,

17  by definition, no longer latent.  See id. at 165-66.  Yet the majority opinion

18  disregarded the date of this clearly known injury and found that his claim arose

19  only after he learned that his former employer withheld information from him,

20  which was three years after he knew of his illness.  Id. at 168-69.  The court

21  reasoned that plaintiff's intentional tort claim did not arise before that time because

22  the plaintiff "had no reason to know or the means to discover that his disease was

23

24      [3] Plaintiff initially became ill in the first months of his employment in 1981.
    Id. at 165.  He received a diagnosis of chronic beryllium disease in 1992.  Id.

25                                          9

caused by the intentional conduct of the [defendant]." <u>Id.</u> at 169.

The present allegations regarding discovery of withheld information are analogous. Here, the decedent's fatal injuries were clear at the time of the collision. Plaintiffs understood there was a connection between her injuries and death and her Lexus vehicle: Decedent was driving it at the time of her death. However, from Plaintiffs' allegations, there was no indication that Plaintiffs knew, or could have known, of the alleged defects in that vehicle. Plaintiffs allege this is so because that information was withheld by Toyota.

Thus, as in <u>Norgard</u>, what is missing from Plaintiffs' allegations is any "indication of wrongful conduct" of Toyota prior to early 2010. <u>Norgard</u>, 95 Ohio St. 3d at 167. Indeed, there is no suggestion that Plaintiffs had any knowledge that the collision was anything other than a tragic accident, and Plaintiffs here allege they had no knowledge of the alleged defects at issue here. (FAC ¶¶ 116-17.) There is little doubt that if the Decedent's family in this case made unadorned allegations, within two years of the collision (but before reports of SUA became public in February, 2010) that the collision was due to a defect in her vehicle that caused it to accelerate out of control, such claims would have been dismissed as speculations of a grieving family, unsupported by good-faith factual allegations.[4]

---

[4] Moreover, the Decedent did not survive the collision; therefore, she could not report what occurred in the seconds leading up to the collision. (Cf. <u>Neely</u> FAC ¶ 20 (driver who survived alleges Lexus failed to slow or stop despite application of brake).)

Plaintiffs here, like the Norgard plaintiff, allege that relevant information was withheld from them.  Thus, the Court concludes that application of Norgard — state Supreme Court precedent — precludes rejection of the discovery rule at this time.

Additionally, it is important to note that, as alluded to in Norgard, and as expressly stated in case law applying Norgard, questions of fact often lurk in the discovery rule analysis.  Id. at 169 (analyzing the evidence relating to the application of the discovery rule using a summary judgment standard, "construing the evidence and all reasonable inference therefrom" in favor of the plaintiff as the nonmoving party below); see also Laipply v. Bates, 166 Ohio App. 3d 132, 138 (2006) (noting that questions of reasonableness relating to the accrual of a cause of action is a factual determination); Dalesandro v. Ohio Dep't of Transportation, No. 10AP-241, 2010 WL 5238609, at *5 (Ohio Ct. App. Dec. 16, 2010) (same); Kay v. City of Cleveland, No. 81009, 2003 WL 125280, at *5 (Ohio Ct. App. Jan. 16, 2003) (finding that the trial court erred in granting summary judgment in light of issues of fact regarding a plaintiff's exercise of due diligence in investigating a potential claim).

Given the current procedural posture, the Court's analysis here is based Plaintiffs' factual allegations only.  The Court assumes the truth of the factual allegations regarding Plaintiffs' lack of knowledge and the truth of the factual allegations regarding the alleged defect(s) in Toyota vehicles.  Here, Plaintiffs allege acts by Toyota, continuing through spring 2010, that were specifically

designed and intended to, and that in fact did, prevent Plaintiffs from discovering the possibility that such collisions were the results of SUA.  (FAC ¶¶ 116-17.) These factual allegations, if proven, could support application of the discovery rule in a manner that supports a finding that Plaintiffs' claims are timely.

As noted previously, Toyota's argument that the discovery rule applies only in cases involving latent injury is not wholly without support.  Specifically, Toyota argues: "In the context of product liability claims, Ohio's discovery rule is applicable only to situations in which the claimed injury was latent, and is not applicable in situations in which the defect at issue is claimed to be latent."  (Reply (Docket No. 19) at 2-3.)  Because this position finds some support in cases cited by Toyota, but is nevertheless rejected by this Court, further discussion is warranted.

It is true that, as early as 1983, the Ohio Supreme Court articulated Ohio's discovery rule as delaying the accrual of a cause of action to the earlier of when a plaintiff discovers or when he should have discovered his injury:

> When an injury does not manifest itself
> immediately, the cause of action arises upon the date on
> which the plaintiff is informed by competent medical
> authority that he has been injured, or upon the date on
> which, by the exercise of reasonable diligence, he should
> have become aware that he had been injured, whichever
> date occurs first.

1    O'Stricker v. Jim Walter Corp., 4 Ohio St. 3d 84, 90 (1983).  Mostly, but not

2    exclusively, before Norgard was decided, the above-quoted language in O'Stricker

3    was cited repeatedly for the proposition that the discovery rule applies only in

4    cases in which injury is latent.  See, e.g., Flynn v. Board of Trustees of Green

5    Township, No. C-060178, 2006 WL 3690300, at *1 (Ohio Ct. App. Dec. 15, 2006)

6    ("The Ohio Supreme Court has limited the discovery rule to latent injuries.");

7    Gleason v. Ohio Army Natl. Guard, 142 Ohio App. 3d 697, 701 (2001) (citing

8    O'Stricker for proposition that "[g]enerally, a cause of action exists and the statute

9    of limitations begins to run from the time the wrongful act is committed"); Biro v.

10   Hartman Funeral Home, 107 Ohio App. 3d 508 (1995) (citing O'Stricker for the

11   proposition that "[t]he discovery rule concerns the situation when an injury is

12   incurred, but not discovered until later"); Roe v. Lopez, No. WD-89-4, 1989 WL

13   83894, at *2 (Ohio Ct. App. July 28, 1989) ("It is also clear in O'Stricker, . . . that

14   neither of the prongs [of the discovery rule] is relevant unless" there is "an injury

15   [that] does not manifest itself immediately.")

16

17        O'Stricker, however, did not definitively resolve whether or to what extent

18   the discovery rule applies where there is an unknown cause of plaintiff's known

19   injury.  Rather, there, once it was ascertained that plaintiff suffered from a disease

20   that arises out of exposure to asbestos, the "wrongful conduct" of certain

21   defendants (a number of producers and distributors of asbestos), was apparent.

22   Thus, it was unnecessary to discuss the causation component of the discovery rule

23   in O'Stricker.  Accordingly, the Court does not read O'Stricker as providing an

24   answer regarding whether the discovery rule applies in cases involving an

25

13

1   unknown cause of injury.  That question was, however, resolved definitively in

2   <u>Norgard</u>, in which the Ohio Supreme Court expressly stated that "discovery of an

3   injury alone is insufficient to start the statute of limitations running if at that time

4   there is no indication of wrongful conduct of the defendant."[5]  <u>Norgard</u>, 95 Ohio

5   St. 3d at 167.

6

7           Nor does the post-<u>O'Stricker</u> Ohio Supreme Court case, <u>Browning v. Burt</u>,

8   66 Ohio St. 3d 544, 558-59 (1993), definitively hold that the discovery rule applies

9   only in cases of latent injury, as suggested by Toyota. Toyota quotes only a portion

10  of the holding of <u>Browning</u> to support this point:

11

12              <u>Browning v. Burt</u> expressly states Ohio's discovery rule

13              is applicable only "[w]hen an injury does not manifest

14              itself immediately." <u>Browning</u>, 66 Ohio St. 3d at 558-59.

15

16  (Reply at 5.)  The full quotation in <u>Browning</u> is a recitation of ¶ 2 of the <u>O'Stricker</u>

17  _____

18          [5]  Although some courts have characterized <u>Norgard</u> as broadening or
19  expanding the discovery rule, the <u>Norgard</u> court itself did not believe that its
    holding was inconsistent with <u>O'Stricker</u>.  <u>Compare, e.g., Nilavar v. Mercy Health
20  Systems-Western Ohio</u>, 495 F. Supp. 2d 816, 823 n.7 (S.D. Ohio 2006) (rejecting
    an argument based on <u>Biro</u> and stating that in <u>Norgard</u>, "the Ohio Supreme Court
21  broadened the discovery rule") <u>with</u> <u>Norgard</u>, 95 Ohio St. 3d at 167 (noting that
22  <u>O'Stricker</u> required both discovery of the injury and "that the injury was 'caused
    by the conduct of the defendant'").  Indeed, <u>Norgard</u> notes that "[s]ince the
23  [discovery] rule's adoption, the court has reiterated that discovery of an injury
    alone is insufficient to start the statute of limitations running if at that time there is
24  no indication of wrongful conduct of the defendant."  <u>Id.</u>

25                                      14

syllabus, which, as noted above, merely describes the discovery rule in cases of latent injury.  This language clearly does not expressly or impliedly limit the discovery rule to only those cases involving latent injury:

> "2. When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.10."

Browning, 66 Ohio.St. 3d at 558-59 (quoting O'Stricker, 4 Ohio St. 3d at 84).  To the contrary, Browning supports the Court's conclusion here.  In Browning, the court applied the discovery rule to save the negligent credentialing claims of patients subjected to experimental surgery when publicity arose regarding several patients suffering as a result of two surgeons' experiments, noting that the publicity was the first indication that the patients had that the hospital may have been negligent in granting or continuing privileges to those surgeons.  Id. at 560-61; cf. Norgard at 168 (characterizing Browning as a "case where we drew a distinction between discovery of an injury and discovery of wrongful conduct").

Post-Norgard cases upon which Toyota relies are unpersuasive.  For instance, Toyota relies on Braxton v. Peerless Premier Appliance Co., No. 81855, 2003 WL 21291061, at *2 (Ohio Ct. App. June 5, 2003), which indeed states that

1  because "the injury manifested itself immediately[, t]he discovery rule is . . .

2  therefore inapplicable." Id.  This statement, however, is directly contrary to

3  Norgard, which plainly states that "discovery of an injury alone is insufficient to

4  start the statute of limitations running if at that time there is no indication of

5  wrongful conduct of the defendant."[6]  Norgard, 95 Ohio St. 3d at 167.

6  Nevertheless, a full reading of Braxton reveals its conclusion is likely consistent

7  with Norgard.  In Braxton, the plaintiff was injured when his new stove exploded;

8  his injuries were immediately apparent.  Braxton, 2003 WL 21291061, at *2.  He

9  also learned within a month of the explosion that stove was defective.  Id. at *1.

10  Thus, based on this notice, the court held that application of the discovery rule

11  would be improper under Norgard.  In this regard, Braxton is distinguishable from

12  the present case.  Generally speaking, new stoves do not, absent a defect or

13  improper installation, cause explosions.  Conversely, motor vehicles are frequently

14  involved in collisions, even fatal collisions, in the absence of any defect.

15  Moreover, although the evidence established notice of a defect in Braxton, the

16  present case is at the pleadings stage, and Plaintiffs not only allege lack of such

17  notice, they also allege actions taken by Toyota to cover up any evidence of a

18  defect.

19

20      Toyota's reliance on Baxley v. Harley-Davidson Motor Co., Inc., 172 Ohio

21  App. 3d 517 (2007), is similarly unpersuasive.  Baxley involved a plaintiff who

22

23      [6] Although Norgard was, at the time, the most recently decided Ohio
   Supreme Court case on the subject, the Braxton court did not cite to or discuss
24  Norgard.

25              16

1   was injured while riding a motorcycle; when the plaintiff took the motorcycle to

2   the dealer for service, he was informed no evidence of a malfunction was found.

3   <u>Id.</u> at 519.  More than two years later, after receiving a recall notice that the bike

4   was prone to "quit-while-riding" incidents due to a possible electrical shortage, the

5   plaintiff filed suit, but the trial court dismissed his claims as untimely, rejecting his

6   argument that the discovery rule saved his claim.  <u>Id.</u> at 519-20.  The Court of

7   Appeals affirmed the dismissal, reasoning that the cause of action accrued when

8   the plaintiff had knowledge of his injuries, and noting that "the discovery rule

9   generally applies in cases of latent injury and not in cases of possible latent

10  defects."  <u>Id.</u> at 520.  Although this is the most factually similar case to the present

11  one, the Court finds <u>Baxley</u> unpersuasive.  <u>Baxley</u>'s rationale is premised upon the

12  Ohio appellate decision of <u>Braxton</u>, which the Court finds unpersuasive as set forth

13  above. The <u>Baxley</u> court also relied on the Ohio Supreme Court case of <u>Flowers v.</u>

14  <u>Walker</u>, 63 Ohio St. 3d 546, 549-50 (1992), which the Court finds distinguishable

15  as set forth below.

16

17         Specifically, while certain dicta in <u>Flowers</u> is supportive of Toyota's

18  position, when read in conjunction with the sentences that immediately follow,

19  <u>Flowers</u> actually supports the Court's decision.  <u>Flowers</u> involved a surgical

20  malpractice case.  <u>Id.</u> at 550.  The court, in discussing when a cause of action

21  accrues, noted the analogy of a plaintiff who experiences a tire blowout, noting that

22  the limitations period would begin to run from the date of the injury, not from the

23  date the plaintiff learned the tire was defective or learned the identity of the

24  manufacturer or seller of the tire.  <u>Id.</u>  However, the following full quotation

25                                            17

1   provides a context that is immediately apparent to anyone possessing even a

2   cursory familiarity with the present litigation:

3

4           In an automobile accident resulting from a blowout, for

5           example, additional time is not given to (1) discover

6           whether the tire was defective or (2) learn the identity of

7           the manufacturer and sellers of the tire.  <u>Fraudulent</u>

8           <u>concealment of either the negligence or the tortfeasor is,</u>

9           <u>of course, another matter.  This case does not involve</u>

10          <u>fraudulent concealment.</u>

11

12  <u>Id.</u> (emphasis added).  Toyota's quotation of the <u>Flowers</u> case, in its both its

13  moving and reply briefs, omits the final two sentences, and thus does not

14  accurately capture its holding.  (Motion at 7; Reply at 4.)  Unlike <u>Flowers</u> and,

15  presumably, unlike <u>Baxley</u>, the present case alleges fraudulent concealment.  Thus,

16  both <u>Flowers</u> and <u>Baxley</u> are unpersuasive on this point.

17

18          Toyota's attempt to dismiss Plaintiffs' authority regarding the discovery rule

19  as being limited to the particular claim asserted in each case is likewise

20  unpersuasive.  (<u>See</u> Reply at 5 (arguing certain cases upon which Plaintiffs rely are

21  "limited to wrongful death claims arising from a murder" and "limited to employer

22  intentional tort cases").)  Clearly, as noted earlier, the discovery rule must be

23  considered in the context of the claim challenged as untimely.  <u>See</u> <u>Browning</u>, 66

24  Ohio. St. 3d at 559.  However, it is also clear that Ohio courts do not interpret this

25

18

1   requirement as the rigid, claim-by-claim approach advocated by Toyota.  See, e.g.,

2   Flagstar Bank, 128 Ohio St. 3d at 532 ("The discovery rule was first applied in

3   Ohio in a case involving medical malpractice. . . . Since then, it has been employed

4   in a number of areas of the law.") (citation omitted); Reed v. Vickery, No. 2:09-cv-

5   91, 2009 WL 3276648, at *3 (S.D. Ohio, Oct. 9, 2009) (referring to the "general

6   applicability of the discovery rule to R.C. 2305.10").  Indeed, in Norgard, the court

7   traced the development of the discovery rule in a variety of contexts, including the

8   negligent credentialing claims at issue in Browning, sexual assault claims

9   involving repressed childhood memories, and wrongful death involving murder

10  (and the attendant difficulty in identifying the responsible party), before

11  concluding that "[t]he reasoning of these cases applies with equal force" to

12  Norgard's case involving delayed discovery of withheld information.  Norgard, 95

13  Ohio St. 3d at 167-69.  Admittedly, Norgard's central holding is stated in its full

14  context, related to employer intentional torts:

15

16              Accordingly, we hold that a cause of action based

17          upon an employer intentional tort accrues when the

18          employee discovers, or by the exercise of reasonable

19          diligence should have discovered, the workplace injury

20          and the wrongful conduct of the employer.

21

22  Id. at 169.  By necessity, courts decide issues based on the facts and claims

23  presented to them.  However, Norgard's discussion regarding the discovery rule in

24  a variety of contexts, as well as Flagstar Bank's observation that the discovery rule

25

19

1  "has been employed in a number of areas of the law," strongly suggests that courts

2  applying Ohio's discovery rule should not read it as narrow and as claim-specific

3  as Toyota advocates.  See Norgard, 95 Ohio St.3d at 168-69 (linking accrual of a

4  claim with knowledge of facts necessary to support individual elements of that

5  claim).

6

7      In other cases of this MDL, based on essentially the same factual allegations

8  regarding Toyota's conduct, this Court has held that California's discovery rule

9  saved otherwise time-barred claims.  In re Toyota Motor Corp. Unintended

10  Acceleration Marketing, Sales Practices, Products Liability Litigation, No. 10-

11  2151, 2010 WL 6419562, at *3 (C.D. Cal. Dec. 9, 2010).  California's discovery

12  rule is substantially similar to Ohio's discovery rule.  Compare id. (California's

13  "discovery rule delays the commencement of the running of the statute until the

14  plaintiff "is aware of her injury and its negligent cause") with Norgard, 95 Ohio St.

15  3d at 167 ("discovery of injury" coupled with "indication of wrongful conduct of

16  the defendant" triggers the running of the limitations period).  Indeed, the Court

17  found the discovery rule saved otherwise time-barred claims of surviving Plaintiffs

18  who, in the absence of other SUA events, simply would not have been believed or

19  who would have been highly likely to second-guess their own perceptions that

20  vehicles would function in a manner so contradictory to their normal, expected

21  operation.  Id. at *4 (noting that a plaintiff's unawareness of other incidents of

22  SUA "may have second-guessed her perception" and discussing how a

23  hypothetical driver reporting an incident of SUA to friends and family would likely

24  "receive an emphatic reaction that he must have inadvertently pushed the

25

1  accelerator or done something else to cause the acceleration").  This rationale

2  applies with greater force where the key witnesses to the alleged SUA event died in

3  an ensuing collision.

4

5          Thus, the Court concludes that, at least as a matter of pleading with the

6  benefit of the application of Ohio's discovery rule, Plaintiffs' claims are timely.

7  The Motion to Dismiss on timeliness grounds is denied.

8

9  IV.     Preclusive Effect of the Ohio Products Liability Act ("OPLA")

10

11          As noted previously, Plaintiffs in both cases bring a number of claims

12  pursuant to the OPLA.  A question presented by the present Motions is whether

13  Plaintiffs' fraudulent concealment claim can be asserted in light of the intended

14  preclusive effect of the OPLA.

15

16          Unquestionably, the OPLA has some preclusive effect on common-law

17  causes of action for products liability.  Specifically, the Ohio Legislature, in 2004,

18  amended the Ohio Revised Code to expressly so declare: "Sections 2307.71 to

19  2307.80 of the Revised Code are intended to abrogate all common law product

20  liability claims or causes of action."  Ohio Rev. Code § 2307.71(A) (added by

21  Ohio S.B. 80, eff. Apr. 7, 2005) (emphasis added).

22

23          The question, then, is whether Plaintiffs' fraudulent concealment claim is a

24  "common law product liability claim or cause of action."  Id.  A separate statutory

25

section provides a definition of a "product liability claim".  Specifically, a "product liability claim" is in relevant part defined as

> a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from . . . (b) [a]ny warning or instruction, or lack of warning or instruction, associated with that product; or (c) [a]ny failure of that product to conform to any relevant representation or warranty.

Ohio Rev. Code § 2307.71(13).  However, because this provision defines a "product liability claim" as a claim asserted pursuant to statute, it falls short of providing a precise definition of what constitutes a "common law product liability claim." Ohio Rev. Code s 2307.71(B) (emphasis added).  Nevertheless, given the expressed intention to preclude "all common law claims" for products liability, and given the statutory definition noted above, the Court concludes that § 2307.71(B) abrogates all claims for products liability that are based on common law (rather than on statutory law) that would otherwise fall into the definition quoted.  Upon examination, it is clear to the Court that Ohio law precludes the fraud claim asserted here.

1     Here, the Plaintiffs in the <u>Neely</u> case allege that Toyota failed to inform

2  them of the defects in the Lexus ES 350, and that Toyota made representations

3  regarding the safety and reliability regarding its vehicles when in fact its vehicles

4  were "dangerously defective" in that they had the propensity to uncontrollably

5  accelerate.  (<u>See, e.g.</u>, FAC ¶¶ 63, 135, 137.)  Indeed, Plaintiffs allege that as SUA

6  incidents were reported, Toyota created a "smoke screen" of safety recalls

7  involving floor mats and sticky pedals while failing to acknowledge or disclose

8  other potential causes of SUA.  (<u>See e.g.</u>, FAC ¶¶ 4, 63.)  The alleged defects are

9  described throughout the FAC as "the absence of a brake override system,"

10  "electronic-related" defects to the vehicles' "electronic throttle control systems,"

11  and "mechanical-related computer/software/hardware errors."  (<u>See, e.g.</u>, FAC

12  ¶¶ 4, 7.)  As a result of Plaintiffs' use of the Lexus, Plaintiffs suffered physical

13  injuries, and they seek damages to compensate them for their physical injuries and

14  emotional distress.  (FAC ¶¶ 21, 128-34 ).

15

16     The Plaintiffs in the <u>Levey</u> case make similar allegations regarding the

17  failure to disclose and the statements regarding safety and reliability, as well as the

18  "smoke screen" allegations and description of the alleged defects.  (<u>See, e.g.</u>, FAC

19  ¶¶ 3-4, 64, 129, 131.)  Plaintiffs seek damages for damages for the decedent's

20  wrongful death.  (FAC ¶¶ 127-28.)

21

22     These allegations underlie common law claims that fall within the definition

23  of the products liability claim and thus, within the preclusive scope of the OPLA.

24  Under Ohio law, as elsewhere, fraud is a common law claim.  <u>See</u>

25

<u>Riverview Health Institute LLC v. Medical Mutual of Ohio</u>, 601 F.3d 505, 517 (6th Cir. 2010) (describing a claim for fraud under Ohio law as a common law claim and finding it precluded by Ohio's Prompt Pay Act); <u>see also</u> <u>Neely</u> FAC ¶¶ 134-42 (failing to set forth a statutory basis for fraud claim); <u>Levey</u> FAC ¶¶ 128-36 (same).  As framed, Plaintiffs' fraud claims seek damages from a manufacturer and supplier based on death, physical injury, and emotional distress, based on the failure to warn regarding SUA and the failure of the vehicle to conform with Toyota's representations regarding safety and reliability.  These are the type of common law products liability claim intended to be abrogated by § 2307.71(B).  That is not to say the claims must not be asserted; to the contrary, re-cast as OPLA claims, the fraud claims asserted here are actionable (and pleaded) under the OPLA, Ohio Rev. Code § 2307.76 (failure to warn) and § 2307.77 (failure to conform to representations).

No authority cited by Plaintiffs counsels or compels a contrary conclusion.  However, one case relied upon by Plaintiffs warrants further discussion.  Plaintiffs rely on <u>Stratford v. SmithKline Beecham Corp.</u>, No. 2:07-CV-639, 2008 WL 2491965 (S.D. Ohio June 17, 2008), which notes that "claims of active misrepresentation are not necessarily abrogated by the OPLA because they may implicate the more general duty not to deceive, rather than the duty to warn."  <u>Id.</u> at *8.  Like Plaintiffs here, the plaintiffs in <u>Stratford</u> alleged fraud claims both on material omissions and affirmative misrepresentations.  <u>Stratford</u> is of no assistance to Plaintiffs here to the extent their fraud claim is based on the failure to disclose material facts; to the contrary, <u>Stratford</u> itself dismissed the material

omission fraud claim as precluded by the OPLA.  <u>See id.</u> (relying on the failure-to-warn provision of the OPLA set forth in Ohio Rev. Code § 2307.77).  Likewise, <u>Stratford</u> is of no assistance to Plaintiffs to the extent their fraud claim is based on affirmative misrepresentations.  In stating that "claims of active misrepresentation are not necessarily abrogated by the OPLA," <u>Stratford</u>, although a post-2004 case, nevertheless relied on authority that predated the effective date of § 2307.71(B), which made clear the preclusive effect of the OPLA.  <u>See Stratford</u>, 2008 WL 2491965 at *8 (citing cases).

The Motions to Dismiss in both cases are granted as to Plaintiffs' fifth claim for relief for fraudulent concealment.  Because these are common law claims that are precluded as a matter of law by the OPLA, they are dismissed with prejudice.

V.     <u>Manufacturing Defect Claim</u>

Toyota also moves to dismiss the OPLA manufacturing defect claim as deficiently pleaded.  Specifically, Toyota contends that Plaintiffs' allegations as to a <u>manufacturing</u> defect (as contrasted with a <u>design</u> defect) are conclusory, <u>i.e.</u>, that they lack the "factual content" required by <u>Twombly/Iqbal</u>.  (<u>See</u> Motion at 6; <u>compare</u> FAC ¶ 22 (allegations regarding the <u>design</u> defect of a lack of a brake override) <u>with</u> FAC ¶¶ 121-22 (allegations regarding an nonspecific "defect[] in . . . manufacture and construction).)  Certainly, Plaintiffs' legal theory in this case regarding design defect is supported by more specific factual allegations than is their legal theory regarding manufacturing defect; however, it cannot be said that

1    Plaintiffs' manufacturing defect is deficiently pleaded.

2

3            The Court assumes, as it must given the current procedural posture, that

4    Plaintiffs' factual allegations are true.  Thus, the Court assumes that when Plaintiff

5    Neely drove her Lexus to the grocery store, the car accelerated out of control,

6    reached speeds in excess of 70 miles per hour and, quite unexpectedly and

7    seemingly inexplicably, would not heed her command, communicated by her

8    application of the brake pedal, to stop.  (See Neely FAC ¶ 20.)  The Court makes

9    similar assumptions based on the allegations in the Levey case.  (See Levey FAC

10   ¶ 19.)  The *sine qua non* of Plaintiffs' defect claims, and indeed, more broadly, the

11   defect claims throughout this MDL, is that Toyota vehicles are prone to incidents

12   of sudden, unintended acceleration, just as was allegedly experienced in the present

13   individual cases.

14

15           In applying the Rule 12(b)(6) standard in light of Twombly/Iqbal, the Court

16   must ascertain if two of the most basic pleading requirements are present: First, is

17   there factual content to a plaintiff's allegations that supports the potential for

18   recovery under an identifiable legal theory?  Second, do those allegations set forth

19   a plausible claim?  Because Toyota has not challenged the plausibility of Plaintiffs'

20   claims, the Court's discussion here is limited to whether there is sufficient factual

21   support to support the manufacturing defect claim.

22

23           Toyota's position would require Plaintiffs to allege as a fact a specific,

24   identifiable manufacturing defect, from the outset of the litigation, to support its

25

manufacturing defect claim.  This position requires too much.  Although Plaintiffs
have specifically identified what they believe to a be a specific design defect – the
lack of a brake override, their specificity in pleading this alleged design defect does
not impose upon them an obligation to plead their manufacturing defect with
parallel specificity.  Plaintiffs have made allegations with the necessary factual
content in each case – that the Lexus uncontrollably accelerated and would not stop
– that support the legal theory that the car had a design defect, a manufacturing
defect, or both.[7]  Whether Plaintiffs ultimately prove the facts necessary to support
this claim, of course, is to be resolved another day.

The Motion to Dismiss the manufacturing defect claim is denied.

VI.   Conclusion

As set forth herein, the Court grants in part and denies in part the Motions to
Dismiss.  Plaintiffs' fifth cause of action for fraudulent concealment is dismissed

---

[7] In each case, Plaintiffs here have pleaded both.  The Federal Rules of Civil
Procedure permit pleading in the alternative.  See Fed. R. Civ. P. 8(d)(2).

with prejudice in each of the individual cases.  The remainder of the Motions to Dismiss are denied.

**IT IS SO ORDERED.**

DATED:  September 28, 2011

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE

28