CARI K. DAWSON (GA SBN 213490)
LISA GILFORD (CA SBN 171641)
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: cari.dawson@alston.com
Email: lisa.gilford@alston.com

DOUGLAS R. YOUNG
(CA SBN 73248)
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email: dyoung@fbm.com

THOMAS J. NOLAN (CA SBN 66992)
STEPHEN C. ROBINSON
(NY SBN 2150647)
**SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP**
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: thomas.nolan@skadden.com
Email: stephen.robinson@skadden.com

*Co-Lead Defense Counsel for
Economic Loss Cases*

VINCENT GALVIN, JR.
(CA SBN 104448)
JOEL SMITH (SC SBN 5266)
**BOWMAN AND BROOKE**
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845
Email:
   vincent.galvinjr@bowmanandbrooke.com
Email: joel.smith@bowmanandbrooke.com

*Lead Defense Counsel for Personal
Injury/Wrongful Death Cases*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL ECONOMIC LOSS CASES | Case No.: 8:10ML2151 JVS (FMOx)<br><br>**TOYOTA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date:        February 27, 2012<br>Time:        1:30 p.m.<br>Location:    Court Room 10C<br>Judicial Officer:  Hon. James V. Selna |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND......................................................................... 2

III.  GOVERNING LEGAL STANDARD............................................................ 3

IV.   ARGUMENT AND CITATIONS OF AUTHORITY ..................................... 5

      A.    This Court Should Refer Plaintiffs To Arbitration Pending Identification Of Any Non-Arbitrable Claims ...........................................5

      B.    In The Alternative, This Court Should Enforce The Arbitration Agreements And Compel Plaintiffs To Arbitrate Their Claims Against TMC And TMS .............................................................................7

            1.   Plaintiffs' Claims Fall Within The Scope Of The Arbitration Agreements.................................................................8

            2.   This Court Should Compel Arbitration Under The Doctrine Of Equitable Estoppel ............................................8

                  a.   *Equity requires the enforcement of the arbitration agreements at issue* ..............................................8

                  b.   *Automobile manufacturers have routinely invoked equitable estoppel to compel arbitration under purchase agreements signed by dealers and consumers*.........................................................11

                  c.   *Plaintiffs' claims all "make reference to" and "presume the existence of" the purchase agreements*.........12

                  d.   *Cases declining to apply equitable estoppel are readily distinguishable*.........................................14

            3.   The Federal Arbitration Act Requires The Arbitration Agreements to Be Enforced .........................................16

                  a.   *State law of unconscionability has a limited role under the FAA post-*Concepcion...........................17

                  b.   *Both substantive and procedural unconscionability are required to invalidate an arbitration clause* .................17

i

c.    *The arbitration agreements at issue are not procedurally unconscionable under state law* ....................18

d.    *The arbitration agreements at issue are not substantively unconscionable under state law* ....................20

C.    Toyota Has Not Waived Its Right To Compel Arbitration .....................23

1.    There Can Be No Waiver As To Absent Putative Class Members ................................................................................23

2.    Toyota Had No Knowledge Of An Existing Right To Compel Arbitration ...............................................................24

3.    Toyota Has Not Acted Inconsistently With A Known Existing Right To Compel Arbitration............................................25

4.    Plaintiffs Have Not Been Prejudiced ...............................................25

V.    CONCLUSION....................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Agnew v. Honda Motor Co., Ltd.,*
  No. CV 08-01433 DFH, 2009 WL 1813783 (S.D. Ind. May 20, 2009) .........11, 12

*Allied-Bruce Terminix Cos. v. Dobson,*
  513 U.S. 265 (1995).................................................................................................4

*Am. Bankers Ins. Grp., Inc. v. Long,*
  453 F.3d 623 (4th Cir. 2006)..............................................................................8, 9

*Amisil Holdings Ltd. v. Clarium Capital Mgmt.,*
  622 F.Supp.2d 825 (N.D. Cal. 2007)..................................................................2, 9

*Anderson v. Pitney Bowes, Inc.,*
  No. C 04-4808 SBA, 2005 WL 1048700 (N.D. Cal. May 4, 2005) .......................5, 6

*AT&T Mobility LLC v. Concepcion,*
  131 S.Ct. 1740 (2011).............................. 1, 2, 5, 16, 17, 19, 21, 22, 24, 25

*AT&T Techs., Inc. v. Commc'n Workers of Am.,*
  475 U.S. 643 (1986).................................................................................................5

*Boyd v. Homes of Legend, Inc.,*
  981 F.Supp. 1423 (M.D. Ala. 1997) .................................................................15, 16

*Carcich v. Rederi A/B Nordie,*
  389 F.2d 692 (2nd Cir. 1968).................................................................................25

*Chastain v. Union Security Life Insurance Co.,*
  502 F.Supp.2d 1072 (C.D. Cal. 2007) ...............................................................14, 15

*Choctaw Generation L.P. v. Am. Home Assurance Co.,*
  271 F.3d 403 (2d Cir. 2001)...................................................................................10

*Chrysler Fin. Corp. v. Murphy,*
  No. 97-JEO-2391, 1998 WL 34023394 (N.D. Ala. Aug. 5, 1998).........................16

*Comer v. Micor,*
  436 F.3d 1098 (9th Cir. 2006)............................................................................8, 14

TOYOTA'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION

*Cruz v. Cingular Wireless, LLC,*
    648 F.3d 1205 (11th Cir. 2011) ..................................................................17

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985) ...................................................................................4

*Estrella v. Freedom Fin.,*
    No. C 09-031565 SI, 2011 WL 2633643 (N.D. Cal. July 5, 2011) ................4, 17

*First Options of Chi., Inc. v. Kaplan,*
    514 U.S. 938 (1995) ................................................................................5, 6

*Fisher v. A.G. Becker Paribas, Inc.,*
    791 F.2d 691 (9th Cir. 1986) ..................................................................23, 25

*Ford Motor Co. v. Ables,*
    207 Fed.App'x 443 (5th Cir. 2006) .............................................................11

*Goodwin v. Ford Motor Credit Co.,*
    970 F.Supp. 1007 (M.D. Ala. 1997) .............................................................11

*Green Tree Fin. Corp. v. Bazzle,*
    539 U.S. 444 (2003) ................................................................................5, 6

*Grigson v. Creative Artists Agency L.L.C.,*
    210 F.3d 524 (5th Cir. 2000) .....................................................................10

*Hall Street Assoc., LLC v. Mattel, Inc.,*
    552 U.S. 576 (2008) ................................................................................4, 5

*Hansen v. KPMG, LLP,*
    No. CV 04-10525, 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005) .........................9

*Hawkins v. KPMG LLP,*
    423 F.Supp.2d 1038 (N.D. Cal. 2006) ...........................................................9

*Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.,*
    659 F.2d 836 (7th Cir. 1981) .....................................................................10

*In re California Title Ins. Antitrust Litig.,*
    No. CIV 08-1341-JSW, 2011 WL 2566449 (C.D. Cal. June 27, 2011) ..................24

*In re DIRECTV Early Cancellation Fee Mktg. & Sales Practices Litig.,*
    No. 09-2093, 2011 WL 4090774 (C.D. Cal. Sept. 6, 2011) ................................22

iv

*In re: TFT-LCD Antitrust Litig.,*
  No. 07-1827 SI, 2011 WL 1753784 (N.D. Cal. May 9, 2011) ................................23

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.,*
  863 F.2d 315 (4th Cir. 1988) ........................................................................10

*Madgrigal v. AT&T Wireless Servs., Inc.,*
  No. 1:109-cv-0033-OWW-MJS, 2010 WL 5343299 (E.D. Cal. Dec. 20, 2010) ......7

*McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,*
  741 F.2d 342 (11th Cir. 1984)..................................................................15, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983)........................................................................................4

*MS Dealer Service Corp. v. Franklin,*
  177 F.3d 942 (11th Cir. 1999).................................................................9, 10

*Mundi v. Union Sec. Life Ins. Co.,*
  555 F.3d 1042 (9th Cir. 2009) ......................................................................4

*Mundi v. Union Sec. Life Ins. Co.,*
  No. CV-F-06-1493 OWW/TAG, 2007 WL 1574871 (E.D. Cal. May 30, 2007)......9

*O'Dean v. Tropicana Cruises Int'l, Inc.,*
  No. 98 CIV. 4543(JSR), 1999 WL 335381 (S.D.N.Y. May 25, 1999) ..................19

*Preston v. Ferrer,*
  552 U.S. 346 (2008)....................................................................................3

*Quevedo v. Macy's Inc.,*
  No. CV 09-1522, 2011 WL 3135052 (C.D. Cal. June 16, 2011) ..........................24

*Robinson v. Isaacs,*
  No. 11CV1021, 2011 WL 4862420 (S.D. Cal. Oct. 12, 2011).................. 10, 13, 16

*Saleh v. Titan Corp.,*
  353 F.Supp.2d 1087 (S.D. Cal. 2004)..............................................................24

*Scherk v. Alberto-Culver Co.,*
  417 U.S. 506 (1974)....................................................................................4

*Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co.,*
  572 F.2d 1328 (9th Cir. 1978)......................................................................23

v

*United Broth. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.,*
  94 F.3d 1308 (9th Cir. 1996) ............................................................6

*Villegas v. US Bankcorp,*
  No. C 10-1762 RS, 2011 WL 2679610 (N.D. Cal. June 20, 2011) ........................24

*Wash. Mut. Fin. Grp., LLC v. Bailey,*
  364 F.3d 260 (5th Cir. 2004) ..........................................................9

**STATE CASES**

*Am. Builders Ass'n v. William Au-Young,*
  226 Cal.App.3d 170 (1990) .............................................................7

*Aremendariz v. Found. Health Pyschcare Servs., Inc.,*
  24 Cal.4th 83 (2000) .................................................................17

*Brower v. Gateway 2000,*
  246 A.D.2d 246 (N.Y.A.D. 1998) ....................................................18, 19

*Crippen v. Cent. Valley RV Outlet, Inc.,*
  124 Cal.App.4th 1159 (2004) .........................................................19

*Discover Bank v. Superior Court,*
  36 Cal.4th 148 (2005) .................................................................1

*Fonte v. AT&T Wireless Servs., Inc.,*
  903 So.2d 1019 (Fla. Dist. Ct. App. 2005) .........................................18, 19

*Gatton v. T-Mobile USA, Inc.,*
  152 Cal.App.4th 571 (2007) ..........................................................18

*Gillman v. Chase Manhattan Bank*
  73 N.Y.2d 1 (1988) ..............................................................17, 18, 20

*Gutierrez v. Autowest, Inc.,*
  114 Cal.App.4th 77 (2003) ...........................................................22

*Kohl v. Bay Colony Club Condo., Inc.,*
  398 So.2d 865 (Fla. Dist. Ct. App. 1981) ............................................18

*Little v. Auto Stiegler, Inc.,*
  29 Cal.4th 1064 (2003) ..............................................................21

TOYOTA'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION

*Manning v. Interfuture Trading, Inc.*,
    578 So.2d 842 (Fla. Dist. Ct. App. 1991) ................................................18

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal.App.4th 1042 (2001) ....................................................................18

*Murphy v. Courtesy Ford, L.L.C.*,
    944 So.2d 1131 (Fla. Dist. Ct. App. 2006) ............................................18

*Nissan Motor Acceptance Corp. v. Ross*,
    703 So.2d 324 (Ala. 1997) ......................................................................16

*Patterson v. ITT Consumer Fin. Corp.*,
    14 Cal.App.4th 1659 (1993) ....................................................................19

*Powertel, Inc. v. Bexley*,
    743 So.2d 570 (Fla. Dist. Ct. App. 1999) ....................................17, 18, 20

*Roman v. Superior Ct.*,
    172 Cal.App.4th 1462 (2009) ..................................................................20

*Saika v. Gold*,
    49 Cal.App.4th 1074 (1996) ....................................................................21

*Sanchez v. Valencia Holding Co., LLC*,
    132 Cal.Rptr.3d 517 (Cal. Ct. App. 2011) ................. 19, 20, 21, 22, 23

*Simar Holding Corp. v. GSC*,
    87 A.D.3d 688 (N.Y. App. Div. 2011) ....................................................18

*Tsadilas v. Providian Nat'l Bank*,
    13 A.D.3d 190 (N.Y. App. Div. 2004) ....................................................19

*Voicestream Wireless Corp. v. U.S. Comnc'n, Inc.*,
    912 So.2d 34 (Fla. Dist. Ct. App. 2005) ................................................19

**FEDERAL STATUTES**

9 U.S.C.A. § 2 ..............................................................................................4
9 U.S.C.A.  § 3 ..............................................................................................5

**STATE STATUTES**

California Uniform Commercial Code § 2314 ............................................13
California Uniform Commercial Code § 9609 ............................................23

# I.    **INTRODUCTION**

Tens of millions of consumers in the United States have purchased a Toyota, Lexus, or Scion vehicle at issue in this litigation.   A small subset of those consumers filed lawsuits against Toyota Motor Corporation ("TMC") and Toyota Motor Sales U.S.A., Inc. ("TMS") (collectively "Toyota"), which have been consolidated into multi-district litigation before this Court ("MDL").  Many of those consumers, when they bought their particular vehicle, signed a purchase agreement, lease, or retail installment contract ("Purchase Agreement") in which they agreed to arbitrate any disputes that arise out of or relate to the purchase of their vehicle.  In light of this Court's recent decision to initiate proceedings in connection with a proposed bellwether class action trial to be held in 2013, it is now appropriate to refer to arbitration all of the proposed class representatives for the bellwether case that have executed a Purchase Agreement that contains an arbitration provision.

At the outset of this litigation, Toyota reasonably believed it could not invoke these arbitration agreements because:  (1) plaintiffs asserted that California law alone should apply to a nationwide class of consumers; and (2) courts in California and in this Circuit frequently held arbitration agreements to be unconscionable and unenforceable when they contained provisions through which consumers waived their right to participate in class litigation or class arbitration.  *E.g.*, *Discover Bank v. Superior Court*, 36 Cal.4th 148, 162-63 (2005).

Now that this Court has scheduled the proposed bellwether class action litigation and trial, two significant things have changed:  (1) on June 8, 2011, this Court denied plaintiffs' request to apply California law exclusively to a nationwide class of consumers [Dkt. 1478]; and (2) on April 27, 2011, not long before this Court finally ruled on the choice of law dispute in this MDL, the United States Supreme Court decided *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011), which overturned established California and Ninth Circuit law by holding that arbitration agreements containing class action waivers are enforceable.

1  *Concepcion,* 131 S.Ct. at 1750.  The import of the Supreme Court's decision is

2  clear:  Plaintiffs who signed arbitration provisions must now submit their claims to

3  arbitration on an individual basis in accordance with the plain terms of their

4  written Purchase Agreements.

5      Although Toyota is not a signatory to the Purchase Agreements that contain

6  these arbitration provisions, Toyota is entitled under established law to compel

7  arbitration under the doctrine of equitable estoppel because plaintiffs' claims against

8  Toyota "make reference to" and "presume the existence of" the Purchase Agreements

9  that contain the arbitration provisions.  *E.g., Amisil Holdings Ltd. v. Clarium Capital*

10  *Mgmt.,* 622 F.Supp.2d 825, 840 (N.D. Cal. 2007).  Indeed, Plaintiffs repeatedly

11  contend that they failed to receive the "benefit of the bargain" in purchasing their

12  vehicles, which is essentially a form of breach of contract claim.  *E.g.,* Second

13  Amended Master Consolidated Complaint ("SAMCC") [Dkt. 580], at ¶¶ 461, 2142.

14  Accordingly, Toyota is moving to compel arbitration on an individual basis with

15  those representatives for the proposed bellwether class that signed a Purchase

16  Agreement that contains an arbitration clause.

17  **II.    FACTUAL BACKGROUND**

18      Like the vast majority of individual new car consumers in the United States, the

19  class representatives identified in the SAMCC purchased their respective vehicles

20  from a local dealership.  In each case, the class representatives signed a Purchase

21  Agreement at the dealership, many of which contain arbitration agreements requiring

22  them to arbitrate any disputes that arise out of or relate to their purchase of a vehicle.

23      Plaintiffs' Bellwether Class Identification [Dkt. 1797] identifies three

24  alternative consumer classes for each of three states:  California, New York, and

25  Florida.  In doing so, Plaintiffs identified 25 proposed class representatives.  [Dkt.

26  1797].  An amended class action complaint filed by Carol Danziger adds two new

27  plaintiffs to the mix.  *Danziger* Am. Compl. ¶¶ 34-41. Altogether, there are 27 named

28  plaintiffs in the SAMCC and Danziger complaints that might serve as class

1   representatives for the putative bellwether class.

2        Among the proposed class representatives for the bellwether case, 22 out of 27

3   signed a Purchase Agreement that contains an arbitration clause,[1] and Toyota is

4   moving to compel arbitration against 21 of them ("Plaintiffs").[2]  Each of the Plaintiffs

5   signed a Purchase Agreement containing an arbitration clause.[3]  Declaration of Cari

6   Dawson ("Dawson Decl."), Ex. A.  For example, Plaintiff Rocco Doino signed a

7   Purchase Agreement that contains the following agreement:

8   "AGREEMENT TO ARBITRATE ANY CLAIMS AND TO WAIVE THE RIGHT TO CLASS ACTIONS, READ THE FOLLOWING PROVISION CAREFULLY,
    LIMITS YOUR RIGHTS, INCLUDING YOUR RIGHT TO BRING AN ACTION IN COURT, HAVE A JURY TRAIL OR MAINTAIN A CLASS ACTION."
    The parties to this agreement agree to arbitrate any claim, dispute or controversy, including all statutory claims and any state or federal claims that may arise out or relating
9   to the purchase or lease identified in the Motor Vehicle Retail Order and the financing thereof.  By agreeing to arbitration, the parties understand and agree that they are
    waiving their rights to maintain other available resolution processes such as a court action or administrative proceedings to settle their dispute.  Used Car Lemon Law and
    Truth-in-Lending claims are examples of the various types of claims subject to arbitration under this agreement.  The parties also agree to waive any right to pursue any such
10  claims including statutory state or federal claims as a class action.  There are no limitations on the type of claims that must be arbitrated, except for New Car Lemon Law
    and Magnuson-Moss Warranty Act claims which are excluded from arbitration under this agreement.  The arbitration shall be conducted in accordance with the Rules of the
11  American Arbitration Association before a single arbitrator.  The costs included in the arbitration process shall be shared as provided by the Association's rules.  The
    Arbitration shall take place in New York at the address of the dealership listed on the Retail Order form.  The decision of the arbitrator shall be binding upon the parties.
    Any further relief sought by either party will be subject to the decision of the arbitrator.  THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, INCLUDING
12  YOUR RIGHT TO MAINTAIN A COURT ACTION AND HAVE A JURY TRIAL.  PLEASE READ IT CAREFULLY PRIOR TO SIGNING.

    Accepted by:  ___*Signed*_____      ___*Signed*_____
13              Dealer or Authorized Representative        Date          Customer                              Date

14  Dawson Decl., Ex. N.  Like Mr. Doino's agreement, all of the arbitration clauses

15  cover a broad scope of claims, including all of the claims asserted in the SAMCC.

16  Other aspects of each provision are discussed herein as necessary to the analysis.

17  **III.   GOVERNING LEGAL STANDARD**

18        The Federal Arbitration Act ("FAA") "declare[s] a national policy favoring

19  arbitration." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (emphasis added).  In doing

20  so, the FAA expresses Congress' intent to reverse "centuries of judicial hostility to

21

22  [1]  One of the California representatives, John Moscicki, signed an arbitration clause
23  stating that the right to arbitration is waived if either party files an appearance in court
    before filing an arbitration demand.  Dawson Decl., Ex. Z.  In light of this specific
24  provision, Toyota is not moving to compel arbitration with Mr. Moscicki.
    [2]  This Court has ordered the parties to focus on the bellwether class action trial, but
25  Toyota does not waive and hereby reserves the right to compel arbitration
    against other named Plaintiffs in the SAMCC and other underlying complaints.
26  [3]  For clarity, Toyota is moving to compel arbitration against the following proposed
    class representatives: Kathleen Atwater, Dale Baldisserri, Charmayne Bennett, Joseph
27  Hauter, Dr. Aly Mahmoud, Lucinda Mahmoud, Peggie Perkin, Janette Seymour, Tully
    Seymour, Linda Tang, Carol Danziger, Ziva Goldstein, Tom Gudmundson, Linda
28  Savoy, Elizabeth Van Zyl, Rocco Doino, Bridie Doino, John Laidlaw, Mary Laidlaw,
    Ada Morales, and Charles Henry.

3

1  arbitration agreements" and to place them "upon the same footing as other contracts."

2  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510-11 (1974) (quoting H.R. Rep. No.

3  68-96, at 1, 2 (1st Sess. 1924)). Thus, the FAA requires courts to "rigorously enforce

4  agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221

5  (1985). Indeed, "the [FAA] leaves no place for the exercise of discretion by a district

6  court, but instead mandates that district courts *shall* direct the parties to proceed to

7  arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218.

8      The FAA applies to any written arbitration agreement contained in a contract

9  "evidencing a transaction involving commerce." 9 U.S.C.A. § 2. The Supreme

10  Court has expansively construed the phrase "involving commerce," interpreting it as

11  extending the FAA's reach to the full limit of Congress' Commerce Clause power.

12  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995). Accordingly,

13  there is no question that the FAA applies to the arbitration agreements at issue here.

14  Indeed, 17 out of 21 agreements explicitly provide that claims will be resolved in

15  accordance with the FAA.[4] Chart of Arbitration Provisions, Dawson Decl., Ex. A;

16  Purchase Agreements, Dawson Decl., Exs. C-CC.

17      This strong federal policy favoring arbitration for dispute resolution

18  "requires a liberal reading of arbitration agreements." *Moses  H. Cone Mem'l*

19  *Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n.27 (1983). "[A]ny doubts

20  concerning the scope of arbitrable issues should be resolved in favor of arbitration."

21  *Id.* at 24-25; *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th

22  Cir. 2009)). Accordingly, "[f]ederal courts are required to rigorously enforce an

23  agreement to arbitrate," *Estrella v. Freedom Fin.*, No. C 09-031565 SI, 2011

24  WL 2633643, *3 (N.D. Cal. July 5, 2011) (citing *Hall Street Assoc., LLC v.*

25

26

27

28

---

[4] For the convenience of the Court, Toyota has attached a chart outlining core aspects of the arbitration provisions for each of the Plaintiffs. *See* "Chart of Arbitration Provisions," Dawson Decl., Ex. A.

1    *Mattel, Inc.,* 552 U.S. 576, 581 (2008)), and must do so "according to [the

2    agreement's] terms." *Concepcion,* 131 S.Ct. at 1748.

3        Finally, the FAA provides that a court must stay judicial proceedings, pending

4    the outcome of the arbitration itself.  9 U.S.C.A. § 3.  In light of these principles, this

5    Court should compel Plaintiffs to arbitrate their claims against Toyota and stay this

6    action as to those Plaintiffs pending the outcome of such arbitrations. *See id.*

7    **IV.   ARGUMENT AND CITATIONS OF AUTHORITY**

8        **A.   This Court Should Refer Plaintiffs To Arbitration Pending
Identification Of Any Non-Arbitrable Claims**

9        Pursuant to the plain and unambiguous language of all 21 of the Purchase

10   Agreements, this Court should refer Plaintiffs to arbitration pending the identification

11   by the arbitrators of any non-arbitrable claims.  As evidenced by the arbitration

12   agreements, the Plaintiffs here agreed that the <u>threshold issue</u> of arbitrability would be

13   decided by an arbitrator selected pursuant to the agreement—not by this Court.  Chart

14   of Arbitration Provisions, Dawson Decl., Ex. A.  Under established law, based on the

15   unambiguous terms of the arbitration agreements alone, this Court should therefore

16   refer Plaintiffs' claims to arbitration for a determination regarding arbitrability.

17       In certain circumstances, courts assume that the parties to a contract intend

18   for a court to decide such threshold matters as "whether the parties have a valid

19   arbitration agreement at all or whether a concededly binding arbitration clause applies

20   to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444,

21   452 (2003).  However, that assumption is rebutted where, as here, "the parties clearly

22   and unmistakably provide otherwise" and agree to let the arbitrator decide such

23   issues. *AT&T Techs., Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 649 (1986);

24   *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 943 (1995); *Anderson v. Pitney*

25   *Bowes, Inc.,* No. C 04-4808 SBA, 2005 WL 1048700, *2 (N.D. Cal. May 4, 2005)

26   ("[I]f the parties 'clearly and unmistakably' empowered an arbitrator to determine

27   arbitrability, the [c]ourt must compel arbitration of the gateway issues as well.").

28

1    Accordingly, "the question 'who has the primary power to decide

2    arbitrability' turns upon what the parties agreed about that matter." *First Options of*

3    *Chi., Inc.,* 514 U.S. at 943; *Anderson,* 2005 WL 1048700 at *2 ("Parties are

4    free . . . to contract around th[e] default rule [that courts decide the question of

5    arbitrability] by assigning the determination of arbitrability to an arbitrator."

6    (internal citations omitted)).   Where the parties have agreed to vest the arbitrator

7    with authority to decide such threshold issues, "the courts will be divested of their

8    authority and an arbitrator will decide in the first instance whether a dispute is

9    arbitrable." *United Broth. of Carpenters & Joiners of Am., Local No. 1780*

10   *v. Desert Palace, Inc.,* 94 F.3d 1308, 1310 (9th Cir. 1996).

11   Here, the arbitration agreements between Plaintiffs and the dealerships provide

12   that disputes over the issues of arbitrability, including the interpretation and scope of

13   the arbitration provision, would be submitted to final and binding arbitration.  Chart of

14   Arbitration Provisions, Dawson Decl., Ex. A; *see, e.g.*, Laidlaw Purchase Agreement,

15   Dawson Decl., Ex. O ("You agree that any claims arising from or relating to this

16   Lease or related agreements or relationships, including the validity, enforceability,

17   arbitrability or scope of this Provision, at your or our election, are subject to

18   arbitration." (emphasis added)).  Therefore, the majority of the arbitration agreements

19   explicitly require the arbitrator to decide the gateway issue of arbitrability.

20   For the balance of the provisions, established law states that the agreements are

21   sufficient to confer jurisdiction on the arbitrator over questions of arbitrability.   In

22   fact, in *Green Tree*, the Supreme Court held that a broadly worded arbitration clause

23   providing that the parties agreed to arbitrate "[a]ll disputes, claims, or controversies

24   arising from or relating to this contract or the relationships which result from this

25   contract" reflected a "clear and unmistakable" agreement by the parties that an

26   arbitrator should decide questions of arbitrability.  *Green Tree*, 539 U.S. at 451-452.

27   Here, all 21 of the arbitration agreements include similar language and are therefore

28

1    broad enough to confer jurisdiction on the arbitrator over these threshold issues.  Chart

2    of Arbitration Provisions, Dawson Decl., Ex. A.

3         Finally, the Supreme Court has held that "where there has been delegation of

4    gateway authority to the arbitrator, federal courts may not address a challenge to the

5    validity of the arbitration agreement unless the challenge is specific to the delegation

6    provision itself."   *Madgrigal v. AT&T Wireless Servs., Inc.*, No. 1:109-cv-0033-

7    OWW-MJS, 2010 WL 5343299, *4 (E.D. Cal. Dec. 20, 2010) (emphasis added).

8    Therefore, even if Plaintiffs assert that the right to arbitration has been waived or that

9    the arbitration agreements are unconscionable under state law, those issues must be

10   decided by the arbitrator because they do not challenge the validity of the referral

11   provision itself.  In fact, many of the Purchase Agreements explicitly state that the

12   arbitrator is to decide questions regarding the "validity" and "enforceability" of the

13   arbitration clause.  Chart of Arbitration Provisions, Dawson Decl., Ex. A.  Moreover,

14   while courts have held that the courts must decide whether a non-signatory can be

15   forced to arbitrate under an agreement that it did not sign, *e.g.*, *Am. Builders Ass'n v.*

16   *William Au-Young*, 226 Cal.App.3d 170, 179 (1990), that law is inapplicable here

17   because Toyota is attempting to compel Plaintiffs, who were signatories, to arbitrate

18   pursuant to the terms of their Purchase Agreements.

19        In sum, the plain terms of the Purchase Agreements dictate that an arbitrator

20   should decide the arbitrability of Plaintiffs' claims.  However, even if the Court were

21   to decide this gateway issue, relevant legal authority overwhelmingly supports the

22   conclusion that Toyota can enforce the arbitration agreements.

23   **B.      In The Alternative, This Court Should Enforce The
             Arbitration Agreements And Compel Plaintiffs To
24           Arbitrate Their Claims Against TMC And TMS**

25        Each of the Plaintiffs agreed to an enforceable arbitration agreement that

26   unquestionably covers the claims asserted against Toyota.  Although Toyota is not a

27   signatory to those contracts, the doctrine of equitable estoppel prevents Plaintiffs from

28

relying upon their purchase to sue Toyota while simultaneously denying the applicability of the arbitration agreement they signed in connection with that purchase.

### 1. Plaintiffs' Claims Fall Within The Scope Of The Arbitration Agreements

The arbitration provisions in Plaintiffs' Purchase Agreements are broad. Chart of Arbitration Provisions, Dawson Decl. at Ex. A (and associated Purchase Agreements). Quite simply, there can be no real dispute as to whether the Plaintiffs' claims "fall within the scope" of their arbitration provisions, thus satisfying the first step of the arbitrability inquiry. Contractual claims for breach of warranty, as well as common law and statutory claims for consumer fraud, are all covered.

For example, Joseph Hauter, a proposed California class representative, signed a Purchase Agreement agreeing to arbitrate "[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . which arises out of or relates to your . . . purchase or condition of this vehicle . . . ." Dawson Decl., Ex. R (emphasis added). Indeed, each of the 21 Plaintiffs at issue here signed a broad arbitration agreement that covers claims asserted in contract or tort related to the purchase of their Toyota, Lexus, or Scion vehicle(s). Chart of Arbitration Provisions, Dawson Decl., Ex. A; Purchase Agreements, Dawson Decl., Exs. C, E, F, G, H, I, J, L, M, N, O, P, R, S, V, W, X, Y, AA, BB, and CC (all containing similar language).

Given the scope of the arbitration provisions at issue, every single one of the claims asserted by the named class representatives for the proposed bellwether class plainly falls within the scope of arbitration provisions identified in the relevant Purchase Agreements. Chart of Arbitration Provisions, Dawson Decl., Ex. A.

### 2. This Court Should Compel Arbitration Under The Doctrine Of Equitable Estoppel

#### a. *Equity requires the enforcement of the arbitration agreements at issue*

"The legal principle [underlying the theory of equitable estoppel] rests on a simple proposition: it is unfair for a party to rely on a contract when it works to his advantage, and repudiate it when it works to its disadvantage." *Am. Bankers Ins.*

*Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006).   In other words, equitable

estoppel "precludes a party from claiming the benefits of a contract [in suing a third

party] while simultaneously attempting to avoid the burdens that the contract

imposes."  *Comer v. Micor*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Wash. Mut.*

*Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)).

District courts in the Ninth Circuit have recognized that equitable estoppel

applies to permit a non-signatory to compel arbitration in two distinct circumstances,

the first of which applies here:

> First, equitable estoppel applies when the signatory to a
> written agreement containing an arbitration clause must rely on the
> terms of the written agreement in asserting its claims against the
> nonsignatory. When each of a signatory's claims against a
> nonsignatory makes reference to or presumes the existence of the
> written agreement, the signatory's claims arise out of and relate
> directly to the written agreement, and arbitration is appropriate.

*Amisil Holdings,* 622 F.Supp.2d at 840 (emphasis added) (concluding that a non-

signatory may compel arbitration of a signatory's claims under estoppel principles

because the signatory's claims were related to an agreement with an arbitration

provision in a way that either refers to or presumes the existence of the agreement)

(citing *Hawkins v. KPMG LLP,* 423 F.Supp.2d 1038, 1050 (N.D. Cal. 2006)).

Indeed, numerous federal cases in California have recognized that the doctrine

of equitable estoppel allows non-signatories to compel arbitration.  *E.g., Mundi v.*

*Union Sec. Life Ins. Co.,* No. CV-F-06-1493 OWW/TAG, 2007 WL 1574871, *3

(E.D. Cal. May 30, 2007) ("When each of a signatory's claims against a non-signatory

'makes reference to' or 'presumes the existence of' the written agreement, the

signatory's claims arise out of and relate directly to the written agreement, and

arbitration is appropriate." (quoting *MS Dealer Service Corp. v. Franklin*, 177 F.3d

942, 947 (11th Cir. 1999) (emphasis added)));  *see also Amisil Holdings,* 622 F.Supp.

2d at 840;  *Hawkins,* 423 F.Supp.2d at 1050.  In fact, this Court has held that "[t]here

is no good reason to believe the Ninth Circuit would not recognize equitable estoppel

as a theory for a non-signatory to compel arbitration in an appropriate case."  *Hansen*

*v. KPMG, LLP*, No. CV 04-10525, 2005 WL 6051705, *3 (C.D. Cal. Mar. 29, 2005).

9

1    In addition, courts in the Second, Fourth, Fifth, Seventh, and Eleventh Circuits

2 have all recognized that equitable estoppel allows a non-signatory to compel

3 arbitration of a signatory's claims. *See, e.g., Choctaw Generation L.P. v. Am.*

4 *Home Assurance Co.,* 271 F.3d 403, 406-407 (2d Cir. 2001); *J.J. Ryan & Sons,*

5 *Inc. v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315, 320-21 (4th Cir. 1988); *Grigson*

6 *v. Creative Artists Agency L.L.C.,* 210 F.3d 524, 528 (5th Cir. 2000); *Hughes*

7 *Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.,* 659 F.2d 836, 839-41 (7th

8 Cir. 1981); *MS Dealer,* 177 F.3d at 947-48.

9    Notably, the broad standards outlined above for applying equitable estoppel

10 were confirmed in a ruling from the Southern District of California <u>less than two</u>

11 <u>months ago</u>. *Robinson v. Isaacs*, No. 11CV1021, 2011 WL 4862420 (S.D. Cal.

12 Oct. 12, 2011). In *Robinson*, the plaintiff sought financial planning advice from a

13 financial planner that worked for two wealth management firms. *Id.* at *1. After an

14 initial meeting, the plaintiff invested over one million dollars pursuant to the

15 recommendations of his financial planner, and he signed contracts with the financial

16 planner and one of his two wealth management firms that contained arbitration

17 clauses. *Id.* When the investments went poorly, the plaintiff sued the advisor and

18 both firms for negligence and breach of fiduciary duty, and all three defendants moved

19 to compel arbitration. *Id.*

20    As a threshold issue, the Southern District of California had to determine

21 whether the non-signatory wealth management firm could compel the plaintiff to

22 arbitrate under principles of equitable estoppel. *Id.* at *2. Finding it irrelevant that the

23 plaintiff made "<u>no reference to any of the contracts</u> containing arbitration provisions

24 in his complaint," the court focused on the fact that the claims for negligence and

25 breach of fiduciary duty against the wealth management firm were "based on" the

26 underlying "business relationship" reflected in the contracts that contained the

27 arbitration clauses, even though the non-signatory defendant was not a party to those

28

contracts. *Id.* at *3 (emphasis added). Based on this analysis, the court ruled that "Nexus can compel arbitration despite not being a signatory to the contract." *Id.*

Here, Plaintiffs' claims are all based on alleged duties of Toyota that arose in connection with Plaintiffs' purchases of a Toyota, Lexus, or Scion vehicle. Plaintiffs assert that they were unlawfully <u>induced</u> to sign the contracts at issue, and they seek damages based on the allegedly <u>inflated price</u> reflected in their Purchase Agreements. Moreover, Plaintiffs have sued Toyota for breach of the implied warranty of merchantability, a warranty that is implied by law in the Plaintiffs' Purchase Agreements. In arguing that they overpaid for their vehicles, Plaintiffs assert that they did not receive the "benefit of the bargain" reflected in their Purchase Agreement. *E.g.*, SAMCC, at ¶¶ 461, 2142. Whatever the theory, Plaintiffs' claims all "make reference to" and "presume the existence of" the Purchase Agreements that contain the arbitration provisions. Plaintiffs are therefore estopped from denying the applicability of those arbitration agreements to their claims against Toyota.

> b.   *Automobile manufacturers have routinely invoked equitable estoppel to compel arbitration under purchase agreements signed by dealers and consumers*

Federal courts addressing this precise question have held that a non-signatory automobile manufacturer, such as Toyota, is entitled to enforce the arbitration clause in a purchase agreement under principles of equitable estoppel. *Agnew v. Honda Motor Co., Ltd,* No. CV 08-01433 DFH, 2009 WL 1813783, *5 (S.D. Ind. May 20, 2009); *Ford Motor Co. v. Ables,* 207 Fed. App'x 443, 448 (5th Cir. 2006); *Goodwin v. Ford Motor Credit Co.,* 970 F.Supp. 1007, 1018 (M.D. Ala. 1997). In fact, every federal court to address equitable estoppel in the context of consumer claims against an automobile manufacturer has ordered arbitration. *See id.*

In *Agnew,* the plaintiff purported to represent a putative class of Honda vehicle owners, which were advertised and marketed as being "XM Ready." *Agnew,* 2009 WL 1813783, at *1. The plaintiff sued Honda, XM Satellite Radio, and the plaintiff's car dealer, Penske, alleging breach of express and implied

1   warranties, violation of a state deceptive consumer sales statute, unjust enrichment,

2   fraud, and constructive fraud, in that defendants misrepresented to the class that the

3   vehicles were "XM Ready," when in fact, additional equipment, labor, and expenses

4   were required for the XM radio to operate. *Id.*

5       The purchase agreement between the plaintiff and Penske included a very

6   broad arbitration clause, but Honda and XM were not parties to the purchase

7   agreement. *Id.* Soon after defendants removed the case to federal court, the

8   plaintiff voluntarily dismissed her claims against Penske. *Id.* at *2. Honda,

9   however, moved to compel arbitration and argued that plaintiff was estopped from

10  denying arbitration of her claims against Honda and XM. *Id.*

11      After Honda moved to compel arbitration, the plaintiff argued that Honda was

12  not "a party to the contract containing the arbitration clause." *Id.* The court rejected

13  this argument under the principles of equitable estoppel, holding that "any relevant

14  duties that [Honda] had towards [the plaintiff] <u>arose under</u> her contract with [the

15  dealership]." *Id.* at *4. The court also noted that "[t]he claims for breach of express

16  and implied warranties necessarily assume that the warranties were provided as part

17  of the [dealership's] sale to [the plaintiff]." *Id.* In doing so, the court found it

18  irrelevant that the counterparty to the purchase agreement, Penske, was not a party to

19  the lawsuit. *Id.* at *5. In sum, on facts virtually identical to this case, the Court had

20  little difficulty finding that arbitration was required.

21          c.   *Plaintiffs' claims all "make reference to" and*
             *"presume the existence of" the purchase agreements*

22      The Plaintiffs' claims here all arise out of the fact that every proposed

23  bellwether class representative purchased a Toyota vehicle – or more precisely,

24  executed a Purchase Agreement. Indeed, Plaintiffs' "benefit of the bargain" theory is

25  premised on the very assertion that they did not obtain what was promised in their

26  Purchase Agreements. Simply put, the execution of those agreements is the <u>essential</u>

27  act that gives rise to the claims asserted by the proposed bellwether class.

28

1       While Plaintiffs' claims do not literally recite language from the Purchase

2   Agreements as the basis for liability, there is a clear nexus between Plaintiffs' claims

3   and the Purchase Agreements themselves. *See Robinson*, 2011 WL 4862420 at *3

4   (holding that equitable estoppel applied and finding that it was <u>irrelevant</u> that the

5   plaintiff made "no reference to any of the contracts containing arbitration provisions

6   in his complaint"). For example, Plaintiffs have sued Toyota for breach of the implied

7   warranty of merchantability. *E.g.*, SAMCC at ¶¶ 486, 489, 910-916, 2159-65

8   (alleging that Toyota breached the implied warranty of merchantability). Under the

9   Uniform Commercial Code, a "warranty that the goods shall be merchantable is

10  <u>implied in a contract for their sale</u> if the seller is a merchant with respect to goods of

11  that kind." *E.g.*, Cal. Com. Code § 2314 (emphasis added). Therefore, the warranties

12  arise from and exist only by virtue of the execution of the Purchase Agreements.

13      In addition to warranty claims, Plaintiffs have sued Toyota on a myriad of

14  theories alleging consumer fraud. For example, Plaintiffs have alleged that Toyota

15  failed to disclose material information related to sudden unintended acceleration.

16  *E.g.*, SAMCC at ¶ 459, 889, 2130 (alleging failures to disclose material information

17  regarding alleged safety defects under California, Florida, and New York law).

18  Plaintiffs also alleged that Toyota made a series of false, misleading, deceptive, and/or

19  incomplete representations to consumers about the safety of their vehicles. *E.g.*,

20  SAMCC at ¶ 459 (alleging that Toyota made "misrepresentations and omissions

21  regarding the safety and reliability of their vehicles"). Finally, Plaintiffs have alleged

22  that Toyota engaged in deceptive trade practices. *E.g.*, SAMCC at ¶¶ 441-42, 888-95,

23  2128-36 (alleging fraudulent and unfair business practices in violation of state law).

24      In each of the consumer fraud claims, Plaintiffs contend that the omission of

25  material information, the fraudulent misrepresentation, and or the deceptive trade

26  practice at issue <u>induced</u> them to purchase their vehicles and to do so at an <u>inflated</u>

27  <u>price</u> that did not account for the alleged defects. *E.g.*, SAMCC at ¶ (alleging under

28  California law that, had Plaintiffs known of the fraud alleged, "they would not have

13

1   purchased or leased their Defective Vehicles and/or paid as much for them"); ¶ 936

2   (alleging under Florida law that Toyota "actively concealed and/or suppressed these

3   material facts, in whole or in part, with the intent to induce Plaintiffs and the Class to

4   purchase Defective Vehicles at a higher price for the vehicles, which did not match

5   the vehicles' true value"); ¶ 2184 (alleging under New York law that, as a result of the

6   fraud alleged, "Toyota charged a higher price for their vehicles than the vehicles' true

7   value and Toyota obtained monies which rightfully belong to Plaintiffs").

8         Regardless of the specific legal theory, each of Plaintiffs' consumer fraud

9   claims stems from their execution of a Purchase Agreement under allegedly false

10  pretenses.  Again, the Purchase Agreements signed by Plaintiffs—which contain the

11  arbitration agreements at issue—embody the very transactions in which they contend

12  they were defrauded by Toyota.   Therefore, Plaintiffs consumer fraud claims all

13  "make reference to" and "presume the existence of" the Purchase Agreements.   In

14  sum, it would be difficult to overstate the importance of the Purchase Agreements to

15  each and every one of Plaintiffs' claims in the SAMCC.  Quite simply, without the

16  execution of the Purchase Agreements, there are no claims, there are no damages, and

17  there is no case.  Under established law, the proposed bellwether class representatives

18  cannot base the entirety of the SAMCC on the fact that they purchased Toyota

19  automobiles and "simultaneously . . . avoid the burdens that [the] contract[s]

20  impose[]."  *E.g.*, *Comer*, 436 F.3d at 1101.

21                d.    *Cases declining to apply equitable estoppel are
                        readily distinguishable*

22        In the few California district court cases that have declined to apply equitable

23  estoppel, the courts have not applied a different standard.  Instead, they simply held,

24  under the particular facts of each case, that the claims at issue did not "make reference

25  to" or "presume the existence of" the contract containing the arbitration clause.

26        For example, in *Chastain v. Union Security Life Insurance Co.,* a consumer

27  sued an insurance company for refusing to pay his credit card payments pursuant to a

28  disability insurance contract, and the insurance company moved to compel arbitration

1    pursuant to an arbitration provision in the credit card agreement—to which it was not
2    a party—that the plaintiff had previously signed with a separate credit card company.
3    *502 F.Supp.2d 1072, 1073-75 (C.D. Cal. 2007).* Although the Court denied the
4    application of equitable estoppel under the intertwined claims theory, it did so because
5    the "duties" that were allegedly breached by the insurance company arose under a
6    separate third-party contract and did not "rely" on the underlying credit card
7    agreement. *Id.*, at 1079. Here, Plaintiffs claims against Toyota are substantially based
8    on duties that arise in tort or by statute in connection with the Purchase Agreements,
9    not under an independently executed contract with a third-party that was a <u>stranger</u> to
10   the underlying transaction. Therefore, *Chastain* is inapposite.

11        Because California decisions favor the application of equitable estoppel on the
12   facts of this case, Plaintiffs will likely point to isolated cases in other jurisdictions that
13   have applied an erroneous standard under the equitable estoppel doctrine or have
14   misconstrued it altogether. For instance, in *Boyd v. Homes of Legend, Inc.*, a case
15   where equitable estoppel was not applied, the Court held that equitable estoppel could
16   <u>only</u> be applied under the first test if "the duties and responsibilities alleged to have
17   been breached by the nonsignatory [had] arisen under and [had] been <u>assigned to the</u>
18   <u>nonsignatory</u> by the contract containing the arbitration provision." 981 F.Supp. 1423,
19   1432-33 (M.D. Ala. 1997) (emphasis added).

20        In doing so, the Court in *Boyd* relied on *McBro Planning & Dev. Co. v.*
21   *Triangle Elec. Constr. Co.*, 741 F.2d 342, 344 (11th Cir. 1984)—a supposedly
22   "paradigmatic example" of an appropriate equitable estoppel case—in which equitable
23   estoppel was applied where a contractor sued a management company for breach of
24   duties imposed by a contract between the contractor and a hospital, the performance of
25   which had been <u>assigned</u> to the management company. *Boyd*, 981 F.Supp. at 1432
26   (citing *McBro*, 741 F.2d at 344). As the *Boyd* Court observed, the "assignment of
27   duties . . . was the basis for the lawsuit" in *McBro*, and therefore the "claim at issue
28   could not be adjudicated without interpreting and possibly enforcing the terms of the

1  [underlying] contract." *Id.* Based on *McBro*, the *Boyd* Court held that equitable

2  estoppel would <u>only</u> apply when a lawsuit against a non-signatory is based on the

3  terms of a contract containing an arbitration provision which had been <u>assigned</u> to the

4  non-signatory. *Id.* at 1432-33. That is not and cannot be the law in the Ninth Circuit.

5      Indeed, *Boyd's* formulation of equitable estoppel renders the entire doctrine

6  pointless. When a contract is formally assigned to a third party, the assignee is

7  contractually entitled to enforce the terms of that contract—including an arbitration

8  clause—as if the assignee was the original party thereto. *Chrysler Fin. Corp. v.*

9  *Murphy*, No. 97-JEO-2391, 1998 WL 34023394, *3 (N.D. Ala. Aug. 5, 1998) ("It is

10  well-settled that '[a] valid assignment gives the assignee the same rights, benefits, and

11  remedies that the assignor possesses'. . . . includ[ing] entitlement to compel arbitration

12  pursuant to the [assigned contract]." (quoting *Nissan Motor Acceptance Corp. v. Ross,*

13  703 So.2d 324, 325 (Ala. 1997))). There is no need or basis for the assignee to resort

14  to equity in seeking arbitration when a claim is filed against it for non-performance.

15  For the equitable estoppel doctrine to mean anything, it must apply in a context where

16  a contractual right to arbitration does not already exist. Moreover, if *Boyd* were the

17  law in the Ninth Circuit, every case discussed above would have been decided on

18  different (albeit erroneous) grounds. *See, e.g., Robinson*, 2011 WL 4862420.

19      Finally, *Boyd* is also distinguishable because there is no indication that the

20  plaintiff sought to rescind the contract or to effectively alter the monetary terms of the

21  purchase agreement as Plaintiffs seek here. *Boyd*, 981 F.Supp. 1423. *Boyd* is

22  therefore deeply flawed and inapposite, and it should not be applied by this Court.

23          3.    <u>The Federal Arbitration Act Requires The Arbitration
                  Agreements to Be Enforced</u>

24      This Court must compel arbitration unless each Plaintiff proves that their

25  agreement is unenforceable pursuant to a contract defense that applies generally to all

26  contracts. *Concepcion*, 131 S.Ct. at 1745-1746.

27

28

1    a.    *State law of unconscionability has a limited role
under the FAA post-*Concepcion

2    The Supreme Court in *Concepcion* instructed that "[the FAA's] saving clause

3    permits agreements to arbitrate to be invalidated by 'generally applicable contract

4    defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply

5    only to arbitration or that derive their meaning from the fact that an agreement to

6    arbitrate is at issue." *Id.* at 1746 (citing 9 U.S.C. § 2).    The Supreme Court

7    specifically held that states are barred from imposing their own arbitration-specific

8    rules with respect to agreements governed by the FAA. *Id.*  The Supreme Court cited

9    Congress' purpose in enacting the FAA -- to respond to the "widespread judicial

10    hostility to arbitration agreements" and to codify the "liberal federal policy favoring

11    arbitration" -- to support its holding. *Id.* at 1745.  Accordingly, there is no question

12    that *Concepcion* has severely curtailed state law unconscionability doctrines to the

13    extent that they are applied to avoid arbitration. *See e.g.*, *Cruz v. Cingular Wireless,*

14    *LLC*, 648 F.3d 1205 (11th Cir. 2011) (recognizing *Concepcion*'s broad impact on state

15    unconscionability analysis); *Estrella*, 2011 WL 2633643 (same).

16    b.    *Both substantive and procedural unconscionability
are required to invalidate an arbitration clause*

17    In California, Florida, and New York, a finding of unconscionability requires a

18    determination of both procedural <u>and</u> substantive unconscionability, the former

19    focusing on "oppression" or "surprise" due to unequal bargaining power, and the latter

20    on "overly harsh" or "one-sided" results. *Aremendariz v. Found. Health Pyschcare*

21    *Servs., Inc.*, 24 Cal.4th 83, 114 (2000); *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574

22    (Fla. Dist. Ct. App. 1999) ("To support a determination of unconscionability...the

23    court must find that the contract is both procedurally unconscionable and

24    substantively unconscionable."); *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10

25    (1988) (holding that a determination of unconscionability requires a "showing of an

26    absence of meaningful choice on the part of one of the parties together with contract

27    terms which are unreasonably favorable to the other party." (internal quotation marks

28    omitted)).  Where there is only a minimal showing of procedural unconscionability,

17

1  Plaintiffs must make a strong showing of substantive unconscionability to render an

2  arbitration clause unconscionable. *Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th

3  571, 585 (2007); *Fonte v. AT&T Wireless Servs., Inc.*, 903 So.2d 1019, 1025 (Fla.

4  Dist. Ct. App. 2005); *Simar Holding Corp. v. GSC*, 87 A.D.3d 688, 690 (N.Y. App.

5  Div. 2011). Neither is present here.

6             c.    *The arbitration agreements at issue are not*
*procedurally unconscionable under state law*

7       Under applicable law, procedural unconscionability has two components—

8  oppression and surprise. "Oppression arises from an inequality of bargaining power

9  that results in no real negotiation and an absence of meaningful choice . . . . Surprise

10  is defined as the extent to which the supposedly agreed-upon terms of the bargain are

11  hidden in the prolix printed form drafted by the party seeking to enforce the disputed

12  terms." *Gatton*, 152 Cal.App.4th at 581; *Gillman*, 73 N.Y.2d at 10-11 ("The

13  procedural element of unconscionability requires an examination of the contract

14  formation process and the alleged lack of meaningful choice."); *Kohl v. Bay Colony*

15  *Club Condo., Inc.*, 398 So.2d 865 (Fla. Dist. Ct. App. 1981); *Powertel*, 743 So.2d at

16  574 (The procedural component "relates to the manner in which the contract was

17  entered and it involves consideration of such issues as the relative bargaining power of

18  the parties and their ability to know and understand the disputed contact terms.").

19       First, there is no legitimate basis for the Plaintiffs to suggest they were

20  surprised. A party cannot avoid the terms of a contract by claiming surprise on the

21  ground that he or she failed to read it before signing. *Marin Storage & Trucking, Inc.*

22  *v. Benco Contracting & Eng'g, Inc.*, 89 Cal.App.4th 1042, 1049 (2001); *Manning v.*

23  *Interfuture Trading, Inc.*, 578 So.2d 842, 845 (Fla. Dist. Ct. App. 1991); *Brower v.*

24  *Gateway 2000*, 246 A.D.2d 246, 253 (N.Y.A.D. 1998). Nor is there a requirement to

25  specifically bring an arbitration agreement to the attention of a customer. *Gatton*, 152

26  Cal.App.4th at 581-582; *Murphy v. Courtesy Ford, L.L.C.*, 944 So.2d 1131, 1135 (Fla.

27  Dist. Ct. App. 2006); *Gillman*, 73 N.Y.2d at 11. Further, the fact that arbitration is a

28  common means of dispute resolution considered within the "reasonable expectations"

1   of an average customer also weighs against any claims of surprise. *Patterson v. ITT*

2   *Consumer Fin. Corp.*, 14 Cal.App.4th 1659, 1665 (1993); *O'Dean v. Tropicana*

3   *Cruises Int'l, Inc.*, No. 98 CIV. 4543(JSR), 1999 WL 335381, *3 (S.D.N.Y. May 25,

4   1999).

5       Likewise, the arbitration agreements here were not "oppressive." As an initial

6   matter, the mere fact that an arbitration agreement appears in a contract of adhesion

7   does not make it oppressive. *See Concepcion*, 131 S. Ct. at 1750 (stating that the

8   "times in which consumer contracts were anything other than adhesive are long past");

9   *Brower*, 246 A.D.2d at 252 (same); *Voicestream Wireless Corp. v. U.S. Comnc'n,*

10  *Inc.*, 912 So.2d 34, 40 (Fla. Dist. Ct. App. 2005) ("[T]he presence of an adhesion

11  contract alone does not require a finding of procedural unconscionability."). This is

12  especially true here because the sale of a vehicle is not a situation where a weaker

13  party is made an offer and told to "take it or leave it." *Crippen v. Cent. Valley RV*

14  *Outlet, Inc.*, 124 Cal.App.4th 1159 (2004); *Fonte*, 903 So.2d at 1025 (holding under

15  Florida law that unilateral bargaining power alone does not implicate procedural

16  unconscionability when there are market alternatives); *Tsadilas v. Providian Nat'l*

17  *Bank*, 13 A.D.3d 190, 191 (N.Y. App. Div. 2004) (holding under New York law that

18  arbitration agreements are enforceable despite an inequality in bargaining power,

19  especially where plaintiff had the opportunity to enter into a similar commercial

20  transaction elsewhere).

21      Here, the arbitration agreements at issue are clearly delineated in the Purchase

22  Agreements and related documents. Purchase Agreements, Dawson Decl., Exs. C, E,

23  F, G, H, I, J, L, M, N, O, P, R, S, V, W, X, Y, AA, BB, and CC. The arbitration

24  provisions are generally included in the main installment sales contracts or leases

25  signed by the Plaintiffs, and there is no doubt that the Plaintiffs could have purchased

26  vehicles from another dealership. *See Sanchez v. Valencia Holding Co., LLC*, 132

27  Cal.Rptr. 3d 517, 528 (Cal. Ct. App. 2011) (holding that the existence of market

28  alternatives was irrelevant in that case because "there is no evidence Sanchez could

1    have purchased a Mercedes–Benz from a dealer who <u>did not mandate arbitration</u>."

2    (emphasis added)).  For example, Plaintiff Epps bought a Toyota from a dealership

3    that did <u>not</u> require arbitration in its purchase agreements.  Epps Purchase Agreement,

4    Dawson Decl., Ex. D.  Therefore, it is beyond dispute that market alternatives existed

5    to avoid arbitration, and the Purchase Agreements for the Plaintiffs are not

6    procedurally unconscionable.

7    d.    *The arbitration agreements at issue are not
    substantively unconscionable under state law*

8    The arbitration agreements signed by the Plaintiffs are also not substantively

9    unconscionable.  Substantive unconscionability addresses the fairness of the terms and

10   evaluates whether the terms are "overly harsh" or so one-sided as to "shock the

11   conscience."    *Roman v. Superior Ct.*, 172 Cal.App.4th 1462, 1469-1470 (2009);

12   *Powertel*, 743 So.2d  at 574 (The substantive component "focuses on the agreement

13   itself" and requires a showing that "the terms of the contract are unreasonable and

14   unfair"); *Gillman*, 73 N.Y.2d at 12 ("The question [of substantive unconscionability]

15   entails an analysis of the substance of the bargain to determine whether the terms were

16   unreasonably favorable to the party against whom unconscionability is urged.").  No

17   such conclusion can be reached here.  In arguing to the contrary, Plaintiffs may raise

18   the recent decision in *Sanchez*, but any such reliance would be misplaced.

19   In *Sanchez*, the plaintiff filed a class action against a car dealership operated by

20   defendant, Valencia Holding Co., LLC ("Valencia"), alleging violations of several

21   California laws, including the UCL, CLRA, Song-Beverly Act and a statute covering

22   new tires.  Valencia, in response, filed a motion to compel arbitration pursuant to an

23   arbitration provision in the Sale Contract.  *Sanchez*, 132 Cal.Rptr. at 523.  On appeal,

24   the Court concluded that the arbitration provision as a whole was unconscionable

25   under California law, focusing on four provisions in the arbitration agreement that it

26   found to be substantively unconscionable:  (1) an option for either party to appeal an

27   award exceeding $100,000; (2) an option for either party to appeal an award that

28   includes injunctive relief; (3) a requirement that the appealing party advance the fees

20

1    and costs for the appeal; and (4) a provision exempting self-help/repossession

2    remedies from arbitration. *Id.* at 529-36.

3        As an initial matter, even if this Court accepts the conclusion in *Sanchez* on its

4    face (which it should not given the strong admonition of the Supreme Court in

5    *Concepcion* against just such anti-arbitration biases), *Sanchez* does not establish that

6    the arbitration agreements at issue here are unconscionable.[5]  As outlined above,

7    Toyota is seeking to compel arbitration against a total of 21 Plaintiffs in the bellwether

8    case.  And, of those 21 Plaintiffs, 7 of them signed arbitration provisions that do not

9    contain <u>any</u> of the offending language identified in *Sanchez*.  Chart Identifying

10   *Sanchez* Provisions in Arbitration Agreements ("Arbitration Terms Chart"), attached

11   to the Declaration of Cari Dawson as Ex. B.  The holding in *Sanchez* is therefore

12   inapplicable to at least these 7 Plaintiffs, as well as any non-California Plaintiffs.

13       In addition, 7 more Plaintiffs signed arbitration agreements that contained <u>only</u>

14   the provision exempting self-help/repossession remedies from arbitration.  Arbitration

15   Terms Chart, Dawson Decl., Ex. B.  By itself, this provision alone cannot justify a

16   complete refusal to enforce these 7 arbitration agreements post-*Concepcion*, especially

17   since—as discussed below—the dealerships are already entitled, under black letter

18   law, to exercise self-help remedies <u>without resort to judicial process</u>.

19       Finally, even with respect to the 7 Plaintiffs that signed arbitration agreements

20   that contained all four of the terms at issue in *Sanchez*, this Court should still compel

21   arbitration because the analysis in *Sanchez* is flawed and should be rejected.

22       <u>First</u>, the *Sanchez* court's conclusion that the right to appeal arbitration awards

23   exceeding $100,000 would unduly benefit the dealership misses the mark.  *Id.* at 529-

24   32.  The appeal provision applies mutually to both parties and is inherently balanced.

25   In fact, the Court glosses over the fact that either party can also appeal an award of $0,

26   which is decidedly beneficial to the consumer.  In doing so, the Court cites two cases

27

28   ---
     [5] Notably, *Sanchez* is a single California case, and it has no binding effect in Florida
     or New York, neither of which have a case reaching a similar result.

1    that contained appeal provisions containing a substantial monetary threshold, but

2    which did not allow for an appeal of an award of $0.  *Id.* (citing *Little v. Auto Stiegler,*

3    *Inc.*, 29 Cal.4th 1064, 1073 (2003); *Saika v. Gold*, 49 Cal.App.4th 1074, 1079–1080

4    (1996)).  Therefore, the Court's analysis was incomplete and manifestly flawed.

5         <u>Second</u>, the provision that allowed for the appeal of an award including

6    injunctive relief is also bilateral and balanced.  The *Sanchez* court provided no basis

7    for its conclusion that the provision unduly burdens the buyer because the buyer is

8    more likely to seek an injunction than the dealership.  This is simply not true.  By way

9    of example, the dealership may initiate a replevin action, which is injunctive in nature,

10   to effectuate its right to repossess a vehicle it has sold to a buyer.  In any event, the

11   fact that one party is more likely to bring forth a claim under a provision does not

12   make it substantively unconscionable.  *In re DIRECTV Early Cancellation Fee Mktg.*

13   *& Sales Practices Litig.*, No. 09-2093, 2011 WL 4090774, *1 (C.D. Cal. Sept. 6,

14   2011) (finding that an arbitration clause that allows exemption of claims under the

15   Communications Act of 1934, the Digital Millennium Copyright Act, the Electronic

16   Communications Privacy Act or any other statement of law governing theft of service

17   -- claims more likely to be brought by DIRECTV than plaintiff -- was not

18   unconscionable because both parties theoretically had the right to bring claims).

19        <u>Third</u>, the *Sanchez* court's reliance on *Gutierrez v. Autowest, Inc.*, 114

20   Cal.App.4th 77 (2003), a case decided before *Concepcion*, to invalidate the provision

21   that requires an appealing party to advance fees and costs is misplaced.  *Sanchez* cites

22   *Gutierrez* for the proposition that "[u]nder the CLRA, a consumer does not have to

23   pay arbitration costs or arbitrator fees (arbitral expenses) that he or she cannot afford

24   or that are prohibitively high."  *Sanchez*, 132 Cal.Rptr. at 533.  While *Gutierrez* may

25   have previously upheld the CLRA's prohibition on the posting of costs and fees on a

26   consumer, *Concepcion* instructs, in no uncertain terms, that any state law on

27   arbitration that conflicts with the FAA must be displaced.  *Concepcion*, 131 S. Ct. at

28   1746 (citing 9 U.S.C. § 2).  Accordingly, *Gutierrez* has been overruled on this point

1  and is no longer applicable.  Moreover, although the court held that a defendant is
2  more likely to utilize the appeal provision, it utterly failed to explain its related
3  holding that the requirement for the appealing party to advance costs for such appeals
4  is also more beneficial to the defendant. *See Sanchez*, 132 Cal.Rptr. at 533-35.

5  Finally, there is nothing improper with a provision which exempts self-help
6  remedies from arbitration.  A secured party's right to self-help remedies, including but
7  not limited to vehicle repossession, is governed by statute and exists independent of
8  any legal proceedings.  *E.g.*, Cal. Com. Code § 9609 (A secured party has the right
9  upon default to "[t]ake possession of the collateral . . . [w]ithout judicial process, if it
10  proceeds without breach of the peace" (emphasis added)).  Accordingly, because self-
11  help remedies do not require resort to judicial process in the first instance, an
12  arbitration provision that explicitly exempts self-help remedies from arbitration
13  provides a dealership with no additional rights.  Instead, the provision simply seeks to
14  avoid an unnecessary argument that self-help rights are subject to arbitration.
15  Therefore, the exclusion of self-help remedies from arbitration is not oppressive.

16  **C.    Toyota Has Not Waived Its Right To Compel Arbitration**

17  Waiver of a contractual right to arbitration under the FAA is not favored.
18  *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir.
19  1978).  Given the federal policy favoring arbitration, Plaintiffs bear a heavy burden in
20  arguing that Toyota waived the right to arbitrate.  *Fisher v. A.G. Becker Paribas, Inc.*,
21  791 F.2d 691, 694 (9th Cir. 1986).  In order to establish waiver, Plaintiffs must
22  demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts
23  inconsistent with that existing right; and (3) prejudice to the party opposing arbitration
24  resulting from such inconsistent acts." *Id.*  Plaintiffs cannot meet this burden here.

25  1.    There Can Be No Waiver As To Absent Putative Class
             Members

26  As an initial matter, it is beyond dispute that Toyota did not waive its right to
27  arbitrate with seven of the Plaintiffs at issue because they only became parties to this
28  litigation on or after September 20, 2011 and, prior to that point, they were at most

23

1   unnamed putative class members.[6]   It is well established in this Circuit and elsewhere

2   that a defendant cannot compel arbitration with a putative class member before a class

3   is certified because they are not parties to the litigation.   *E.g., In re: TFT-LCD*

4   *Antitrust Litig.*, No. 07-1827 SI, 2011 WL 1753784, *4 (N.D. Cal. May 9, 2011) ("It

5   does not appear to the Court that defendants could have moved to compel arbitration

6   against [unnamed class members] prior to the certification of a class in this case

7   because, as defendants point out, 'putative class members are not parties to an action

8   prior to class certification.'" (quoting *Saleh v. Titan Corp.*, 353 F.Supp.2d 1087, 1091

9   (S.D. Cal. 2004))).   Therefore, under established law, Toyota cannot possibly have

10   waived its right to arbitrate against the seven newly-identified Plaintiffs.

11               2.      <u>Toyota Had No Knowledge Of An Existing Right To Compel Arbitration</u>

12          Toyota did not have an existing right to compel arbitration before the Supreme

13   Court issued its decision in *Concepcion*, and any attempt to compel arbitration would

14   have been futile.   In light of this fact, courts in this Circuit that have analyzed waiver

15   under this exact situation, post-*Concepcion*, have consistently found that the right to

16   compel arbitration had not been waived.   *See, e.g., Quevedo v. Macy's Inc.*, No. CV

17   09-1522, 2011 WL 3135052 (C.D. Cal. June 16, 2011) (no waiver of arbitration rights

18   for failing to move for arbitration for over two years after suit was filed); *Villegas v.*

19   *US Bankcorp*, No. C 10-1762 RS, 2011 WL 2679610 (N.D. Cal. June 20, 2011) (no

20   waiver of arbitration for failing to move for arbitration until 13 months after suit was

21   filed); *In re California Title Ins. Antitrust Litig.*, No. CIV 08-1341-JSW, 2011 WL

22   2566449 (C.D. Cal. June 27, 2011) (no waiver found).   Thus, because Toyota had no

23   right to compel Plaintiffs to arbitrate prior to *Concepcion*, Toyota has not waived its

24   right to compel arbitration of Plaintiffs' claims.

25

26

---

27   [6]   Seven Plaintiffs that signed arbitration agreements became parties to this litigation
on or after September 20, 2011:  Carol Danziger, Ziva Goldstein, Tom Gudmondson,

28   Linda Savoy, Ada Morales, Charmayne Bennett, and Charles Henry.   Bellwether
Class Identification [Dkt. 1797] at 12-13, and Ex. B; *Danziger* Am. Compl. ¶¶ 34-41.

### 3.   Toyota Has Not Acted Inconsistently With A Known Existing Right To Compel Arbitration

At the outset of this litigation, Plaintiffs pursued their claims against Toyota exclusively under California law.  Toyota reasonably did not believe it had a right to compel arbitration under California law prior to *Concepcion*.  Therefore, prior to *Concepcion*, there could not have been any acts by Toyota inconsistent with a known right to arbitrate.  Even then, Toyota did not know what law would be applied to this motion until the Court issued its Choice of Law Order on June 8, 2011 [Dkt. 1478].[7] Given this procedural background, it is entirely appropriate and consistent with this Court's scheduling orders for Toyota to file a motion to compel arbitration at this point in the litigation.

### 4.   Plaintiffs Have Not Been Prejudiced

Finally, Plaintiffs have not been prejudiced as a result of any allegedly inconsistent acts by Toyota.  As the Ninth Circuit has explained, prejudice is not demonstrated simply because parties have "expended time, money, and effort on responding to pretrial motions and in preparing for trial and conducted extensive discovery of the arbitrable claims." *Fisher*, 791 F.2d at 697; *see also Carcich v. Rederi A/B Nordie*, 389 F.2d 692 (2nd Cir. 1968).  Nor is prejudice established by the possibility that there may be some duplication from parallel proceedings. *Fisher*, 791 F.2d. at 698. Here, to the extent any merits discovery has been completed, that work was still necessary because Toyota's motion will not force all named plaintiffs to arbitrate.  In sum, there has been absolutely no prejudice to Plaintiffs, and Plaintiffs therefore cannot establish waiver.

## V.   **CONCLUSION**

Based on the foregoing points and authorities, Toyota respectfully requests that this Court GRANT Toyota's motion to compel arbitration.

---

[7]   In fact, it was not until an October 11, 2011 scheduling hearing that this Court announced it would be unlikely to apply California law to consumers from other states in the proposed bellwether class [Dkt. 1848 at 35:22-36:5].

1    Dated:  November 30, 2011

2                                        By:  _____/s/_____
                                                        Cari K. Dawson

3

4    CARI K. DAWSON
     LISA GILFORD
     **ALSTON + BIRD LLP**
5    333 South Hope Street, 16th Floor
     Los Angeles, CA 90071
     Telephone:  (213) 576-1000
6    Facsimile:   (213) 576-1100
     Email:  cari.dawson@alston.com
7    Email:  lisa.gilford@alston.com

8    DOUGLAS R. YOUNG
     **FARELLA BRAUN + MARTEL LLP**
9    235 Montgomery Street, 30th Floor
     San Francisco, CA 94104
10   Telephone:  (415) 954-4400
     Facsimile:   (415) 954-4480
11   Email:  dyoung@fbm.com

12   THOMAS J. NOLAN
     STEPHEN C. ROBINSON
13   **SKADDEN, ARPS, SLATE,
       MEAGHER & FLOM LLP**
14   300 South Grand Avenue
     Los Angeles, CA 90071-3144
15   Telephone:  (213) 687-5000
     Facsimile:   (213) 687-5600
16   Email:  thomas.nolan@skadden.com
     Email:  stephen.robinson@skadden.com
17

18   ***Co-Lead Defense Counsel for Economic Loss Cases***

19   VINCENT GALVIN, JR.
     JOEL SMITH
20   **BOWMAN AND BROOKE**
     1741 Technology Drive, Suite 200
21   San Jose, CA 95110
     Telephone:  (408) 279-5393
22   Facsimile:   (408) 279-5845
     Email:
23     vincent.galvinjr@bowmanandbrooke.com
     Email:  joel.smith@bowmanandbrooke.com
24

25   ***Lead Defense Counsel for Personal Injury/Wrongful Death Cases***

26

27

28

TOYOTA'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION