Steve W. Berman (admitted *pro hac vice*)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 268-9320
Facsimile:   (206) 623-0594

Marc M. Seltzer (CA SBN 054534)
*mseltzer@susmangodfrey.com*
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3102
Facsimile:   (310) 789-3006

*Co-Lead Counsel for Consumer Economic Loss Plaintiffs*

Frank M. Pitre (CA SBN 100077)
*fpitre@cpmlegal.com*
COTCHETT, PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577

*Lead Counsel for Non-Consumer Economic Loss Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.  8:10ML2151 JVS (FMOx) |
| | **PLAINTIFFS' OPPOSITION TO TOYOTA'S MOTION TO COMPEL ARBITRATION** |
| This Document Relates To: | Hearing Date:  February 27, 2012 |
| ALL ECONOMIC LOSS CASES | Time: 1:30 p.m. Location:  Courtroom 10C Judge:  Hon. James V. Selna |

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...................................................................... 1

II.   ARGUMENT ........................................................................... 2

    A.    Because Toyota Is Not A Signatory To The Arbitration Agreements, The Threshold Issue Of Arbitrability Is To Be Determined By This Court .............................................................................. 2

    B.    Toyota Cannot Compel Arbitration Because It Is Not A Signatory To The Arbitration Agreements ................................................... 3

    C.    Equitable Estoppel Does Not Provide Grounds For Toyota To Enforce The Arbitration Agreements ................................................... 4

        1.    Equitable estoppel does not apply because Plaintiffs' claims are not "intertwined" with the purchase agreements. ...................... 5

        2.    Toyota's authorities are inapposite. ................................... 8

        3.    The implied warranty claim is not intertwined with the purchase agreements for the additional reason that the dealers disclaim such warranties in the purchase agreements. ........................... 10

    D.    Even If It Had The Right To Compel Arbitration Under The Agreements, Toyota Waived It By Waiting Almost Two Years To Assert It ........................................................................... 11

        1.    Toyota unequivocally had knowledge of its alleged right to compel arbitration. ....................................................... 11

        2.    Toyota's actions are inconsistent with any alleged right to arbitrate. .................................................................. 13

        3.    Plaintiffs would be prejudiced if Toyota were permitted to arbitrate. .................................................................. 17

            a.    Plaintiffs would be prejudiced by Toyota's forum shopping. ......................................................... 17

            b.    Plaintiffs would be prejudiced with respect to strategy considerations and their investment of time and resources in litigation. ....................................... 19

            c.    Plaintiffs would be prejudiced by Toyota having obtained discovery to which it would not be entitled in arbitration. ...................................................... 20

    E.    The Agreements Are Unconscionable And Therefore Unenforceable .... 20

1          1.    The arbitration provisions are procedurally unconscionable. ....... 21

2          2.    The arbitration provisions are substantively unconscionable........ 22

3    III.    CONCLUSION .................................................................................... 26

010172-25  497752 V1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agnew v. Honda Motor Co.*,
    2009 U.S. Dist. LEXIS 53914 (S.D. Ind. May 20, 2009) ................................. 8

*American Builders Ass'n v. Au-Yang*,
    226 Cal. App. 3d 170 (1990) ............................................................... 2

*AT&T Mobility LLC v. Concepcion*,
    __ U.S. __, 131 S. Ct. 1740 (2011) ........................................... *passim*

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
    622 F.3d 996 (9th Cir. 2010) ....................................................... 21, 22

*Britton v. Co-op Banking Group*,
    4 F.3d 742 (9th Cir. 1993) ................................................................. 3

*Carcich v. Rederi A/B Nordie*,
    389 F.2d 692 (2d Cir. 1968) ............................................................. 19

*Choctaw Generation L.P. v. Am. Home Assur. Co.*,
    271 F.3d 403 (2d Cir. 2001) ............................................................... 5

*Comedy Club v. Improv West Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) ............................................................. 3

*Cotchett, Pitre & McCarthy v. Universal Paragon Corp.*,
    187 Cal. App. 4th 1405 (2010) ......................................................... 20

*Dalie v. Pulte Home Corp.*,
    636 F. Supp. 2d 1025 (E.D. Cal. 2009) ............................................. 12

*Davidson v. PDS Tech. Servs.*,
    2010 U.S. Dist. LEXIS 123178 (M.D. Fla. Nov. 8, 2010) ................. 16

*Discover Bank v. Super. Ct.*,
    36 Cal. 4th 148 (2005) .............................................................. 11, 12

*Eagle Traffic Control v. James Julian, Inc.*,
    945 F. Supp. 834 (E.D. Pa. 1996) .................................................... 16

- iii -

*Fisher v. A.G. Becker Paribas Incorporation*,
   791 F.2d 691 (9th Cir. 1986) .......................................................................... 16

*Flores v. Transamerica HomeFirst, Inc.*,
   93 Cal. App. 4th 846 (2001) ...................................................................... 21, 22

*Ford Motor Co. v. Ables*,
   207 Fed. Appx. 443 (5th Cir. 2006) ............................................................... 9

*Gatton v. T-Mobile USA, Inc.*,
   152 Cal. App. 4th 571 (2007) ....................................................................... 21

*Gentry v. Super. Ct.*,
   42 Cal. 4th 443 (2007) ............................................................................ 16, 17

*Gonsalves v. Infosys Techs., Ltd.*,
   2010 U.S. Dist. LEXIS 79683 (N.D. Cal. Aug. 5, 2010) ................................ 17

*Goodwin v. Ford Motor Credit Co.*,
   970 F. Supp. 1007 (M.D. Ala. 1997) .............................................................. 9

*Gray Holdco, Inc. v. Cassady*,
   654 F.3d 444 (3d Cir. Aug. 17, 2011) ............................................................ 16

*Gutierrez v. Autowest, Inc.*,
   114 Cal. App. 4th 77 (2003) ......................................................................... 22

*Hawkins v. KPMG LLP*,
   423 F. Supp. 2d 1038 (N.D. Cal. 2006) ......................................................... 4

*Hoffman Constr. Co. v. Active Erectors & Installers, Inc.*,
   969 F.2d 796 (9th Cir. 1992) ........................................................................ 11

*Hughes Masonry Co., Inc. v. Greater Clark Cty. School Build. Corp.*,
   659 F.2d 836 (7th Cir. 1981) ............................................................... 8, 9, 10

*In re Apple & AT&TM Antitrust Litig.*,
   2011 U.S. Dist. LEXIS 138539 (N.D. Cal. Dec. 1, 2011) ..................... 9, 10, 19

*In re Cal. Title Ins. Antitrust Litig.*,
   2011 U.S. Dist. LEXIS 71621 (N.D. Cal. June 27, 2011) ......................... 16, 17

*In re DIRECTV Early Cancellation Fee Mktg. & Sales Practices Litig.*,
   2011 U.S. Dist. LEXIS 102027 (C.D. Cal. Sept. 6, 2011) ......................... 22, 24

- iv -

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*,
  2011 U.S. Dist. LEXIS 143490 (C.D. Cal. Dec. 13, 2011).........................*passim*

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) .................................................................. 21

*Kolev v. Euromotors West/The Auto Gallery*,
  658 F.3d 1024 (9th Cir. 2011) ..................................................................... 4

*L & W Innovations, LLC v. Linli Constr., Inc.*,
  2009 U.S. Dist. LEXIS 68519 (D. Colo. Aug. 5, 2009).................................... 16

*Laborers Health & Welfare Trust Fund v. Kaufman & Broad, Inc.*,
  707 F.2d 412 (9th Cir. 1983) ...................................................................... 19

*Lawson v. Life of the South Ins. Co.*,
  648 F.3d 1166 (11th Cir. 2011) .................................................................... 7

*Martinez v. Welk Group, Inc.*,
  2012 U.S. Dist. LEXIS 3893 (S.D. Cal. Jan. 12, 2012) .............................. 18, 19

*McMillin Dev. Inc. v. Home Buyers Warranty*,
  68 Cal. App. 4th 896 (1998) .................................................................. 17, 19

*MS Dealer Serv. Corp. v. Franklin*,
  177 F.3d 942 (11th Cir. 1999) ..................................................................... 5

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) ...............................................................*passim*

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) .................................................................... 21

*Pardee Constr. Co. v. Super. Ct.*,
  100 Cal. App. 4th 1081 (2002) ................................................................... 23

*Pokorny v. Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010) ..................................................................... 25

*Quevedo v. Macy's, Inc.*,
  2011 U.S. Dist. LEXIS 83046 (C.D. Cal. June 16, 2011)........................... 16, 17

*Roberts v. El Cajon Motors, Inc.*,
  200 Cal. App. 4th 832 (2011) ................................................................ 15, 16

*S & H Contractors, Inc. v. A.J. Taft Coal Co.*,
   906 F.2d 1507 (11th Cir. 1990) ........................................................................ 16

*Saika v. Gold*,
   49 Cal. App. 4th 1074 (1996) ......................................................................... 24

*Sanchez v. Valencia Holding Co., LLC*,
   201 Cal. App. 4th 74 (2011) ........................................................ 22, 23, 24, 25

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974) ........................................................................................ 19

*Smith v. AmeriCredit Fin. Servs., Inc.*,
   2009 U.S. Dist. LEXIS 115767 (S.D. Cal. Dec. 11, 2009) ............................ 12

*Strickland v. Chase Bank USA, N.A.*,
   2009 U.S. Dist. LEXIS 127879 (N.D. Ga. Dec. 31, 2009) ............................ 16

*Villegas v. U.S. Bankcorp*,
   2011 U.S. Dist. LEXIS 65032 (N.D. Cal. July 20, 2011) ............................. 16

*Zamora v. Lehman*,
   186 Cal. App. 4th 1 (2010) .................................................................. 13, 18, 19

010172-25  497752 V1

# I.   INTRODUCTION

Toyota cannot compel arbitration of Plaintiffs' claims for multiple reasons. First, Toyota is not a signatory to the arbitration agreements, which Plaintiffs entered into with their dealerships.  *See* Section II.B.  And equitable estoppel does not provide grounds for Toyota to enforce these arbitration agreements, because Plaintiffs' claims do not rely on the dealers' purchase agreements but on the misrepresentations and omission contained in Toyota's unfair warranty practices and nationwide advertising campaign.  *See* Section II.C.

Second, even if Toyota had the right to compel arbitration, Toyota waived it by instead choosing to litigate Plaintiffs' claims.  Although Toyota knew they had the right to file a motion to compel arbitration, *see* Section II.D.1, Toyota waited until two years after commencement of the litigation, seven months after *Concepcion* was decided, and six months after Toyota's substantive challenges to the SAMCC had been denied – all the while engaging in vigorous litigation of, and discovery into, Plaintiffs' claims.  This is inconsistent with any alleged right to arbitrate.  *See* Section II.D.2.  Moreover, Plaintiffs would be prejudiced if Toyota were permitted to arbitrate their claims.  Toyota's blatant forum shopping could result in less favorable resolution of their claims, given this Court's refusal to dismiss them.  And Plaintiffs would be prejudiced by their wasted investment of time and resources in two years of litigation, particularly with respect to discovery specific to the Plaintiffs, to which Toyota would not be entitled in arbitration.  *See* Section II.D.3.

010172-25  497752 V1

Third, even if Toyota had a right to compel arbitration that it had not waived, the agreements are procedurally and substantively unconscionable and therefore unenforceable. *See* Section II.E.[1]

## II.   ARGUMENT

### A.   Because Toyota Is Not A Signatory To The Arbitration Agreements, The Threshold Issue Of Arbitrability Is To Be Determined By This Court

Toyota contends that the threshold issue of arbitrability should be determined by an arbitrator, rather than this Court, because a majority of the purchase agreements expressly provide that an arbitrator decides arbitrability.  Br. at 5-7. Toyota is wrong, because those provisions ***only apply to signatories***,[2] and Toyota is not a signatory to any of the agreements.  Therefore, as Judge Carney has found in very similar circumstances, "the threshold issue of whether Toyota, as a nonsignatory, may compel Plaintiffs to submit to arbitration under the Purchase Agreements must be decided by this Court."[3]  Indeed, "an arbitrator has no power to determine the rights and obligations of one who is not a party to the arbitration agreement," so the "question of whether a nonsignatory is a party to an arbitration agreement is one for the trial court in the first instance."[4]

---

[1] Toyota's motion does not apply to all Plaintiffs.  As Toyota admits, Br. at 3, five of the 27 Plaintiffs for the bellwether case did not sign arbitration agreements. Toyota also admits that arbitration vis-à-vis Plaintiff Moscicki has been waived given his agreement's provision for waiver after a court appearance has been filed.

[2] *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 143490, at *24 n.5 (C.D. Cal. Dec. 13, 2011) (emphasis added) (hereafter "*Toyota Hybrid Brake Litigation*").

[3] *Id.* at *24-25 n.5 (citing *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993); *Comedy Club v. Improv West Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009)).  In contrast, Toyota's authorities (Br. at 5-6) do not apply to nonsignatories.

[4] *American Builders Ass'n v. Au-Yang*, 226 Cal. App. 3d 170, 179 (1990).

1

2

### B.      Toyota Cannot Compel Arbitration Because It Is Not A Signatory To The Arbitration Agreements

3

4       Alternatively, Toyota demands that this Court compel Plaintiffs to arbitrate

5   their claims.  But the right to compel arbitration arises from contract, and the express

6   terms of agreements, which use words such as "you," "we" and "us," explicitly grant

7   the right to compel arbitration only to the signatories.[5]  Toyota is not a signatory and

8   cannot invoke the right because it is not a party to the agreements,[6]

9       In evaluating very similar agreements providing for arbitration at "your or our

10   election" in the *Toyota Hybrid Brake Litigation*, the Court concluded that the "plain

11   language of the provision is clear that the signatories – the [] Plaintiffs and the

12   Toyota dealerships – may invoke their right to arbitrate any claims arising under the

13   Purchase Agreements," but not nonsignatory third parties, such as Toyota.[7]  The

14   same conclusion is compelled here.

15       Further, Toyota's warranty booklets, included with each vehicle purchased,

16   expressly provide that arbitration with Toyota is not binding on consumers and that

17   consumers may pursue other legal remedies.  The warranty information booklet spell

18   out the terms of its warranty and provide for arbitration through the National Center

19   for Dispute Settlement.[8]  To initiate arbitration, consumers are asked to complete the

20   claim form in the Owner's Warranty Rights Notification booklet.  The Owner's

21

22   Warranty Rights Notification booklet states that the arbitration is binding on Toyota,

23

24       [5] *See, e.g.,* Dawson Decl. at Exs. F & I (defining "we" and "us" as the dealer and dealer's agents and assigns); *see also* Berman Decl., ¶ 3.

25

26       [6] *See Britton*, 4 F.3d at 744; *see also Comedy Club, Inc.*, 553 F.3d at 1287 ("The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement….").

27       [7] 2011 U.S. Dist. LEXIS 143490, at *26.

28       [8] *See, e.g.*, Berman Decl., Ex. 1 at 2-5.

1    but not on the consumer.[9]  And it expressly reserves each customer's right to pursue

2    any other legal remedies available to the customer.[10]

3           Toyota's current position that plaintiffs are subject to binding arbitration,

4    based on independent dealer agreements to which Toyota is not a party, is

5    inconsistent with Toyota's own agreement with its customers.  Toyota expressly

6    agreed in its warranty booklets that its customers are not bound to arbitration but

7    "may pursue any other legal remedies available" to them.  Toyota cannot avoid its

8    own agreement by seeking to rely on a separate agreement to which it is not a

9    party.[11]

10

11   **C.    Equitable Estoppel Does Not Provide Grounds For Toyota To Enforce The Arbitration Agreements**

12

13          Toyota alternatively argues that equitable estoppel applies to compel

14   arbitration (Br. at 9).  Equitable circumstances may favor arbitration where there are

15   allegations of "substantially interdependent and concerted misconduct by both the

16

17

18

19   _____

20          [9] *Id.* at 5 ("NCDS's decision is binding on Toyota but not on you.").

21          [10] *Id.* ("If you are dissatisfied with the arbitrator's decision or Toyota's
     compliance, you may pursue any other [] legal remedies available to you, including
22   small claims court.").

23          [11] Additionally, the arbitration provisions in Plaintiffs' Purchase Agreements
     explicitly do not apply to Plaintiffs' claims under Magnuson-Moss Warranty Act,
24   *see, e.g.*, Dawson Decl., Ex. N. ("Magnuson-Moss Warranty Act claims . . . are
     excluded from arbitration under this agreement").  They are also not enforceable in
25   relation to Plaintiffs' other warranty claims.  In *Kolev v. Euromotors West/The Auto
     Gallery*, 658 F.3d 1024, 1031 (9th Cir. 2011), the Ninth Circuit reversed the district
26   court's grant of a motion to compel arbitration and enforcement of the mandatory
     arbitration clause in Porsche's warranty, holding that "written warranty provisions
27   that mandate pre-dispute binding arbitration are invalid under the [Magnuson-Moss
     Warranty Act and the FTC's Rule 703.5(j), 16 C.F.R. § 703.5(j), promulgated under
28   the Act]."

                                      - 4 -

010172-25  497752 V1

nonsignatory and one or more of the signatories to the contract."[12]  This is not the case here.

### 1. Equitable estoppel does not apply because Plaintiffs' claims are not "intertwined" with the purchase agreements.

Toyota contends that equitable estoppel applies because "Plaintiffs' claims all 'make reference to' and 'presume the existence of' the Purchase Agreements that contain the arbitration provisions" (Br. at 11), even though Plaintiffs do not rely on the terms of the written agreement in asserting their claims.  But, as Judge Carney found in the *Toyota Hybrid Brake Litigation*, "Toyota … misses the essential element of the test articulated by the Ninth Circuit and other courts of appeal," which "is whether the plaintiffs' claims are '*intertwined*' with the contractual obligations contained in the underlying agreement."[13]

Here, Plaintiffs' consumer fraud and express warranty claims for misrepresentations and omissions in Toyota's nationwide warranty practices and advertising campaign (and not in the dealers' purchase agreements) are not intertwined with the obligations in the purchase agreements, just as they were not in the *Toyota Hybrid Brake Litigation*.[14]   As Judge Carney elucidated:

---

[12] *Hawkins v. KPMG LLP*, 423 F. Supp. 2d 1038, 1050 (N.D. Cal. 2006); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1047 (9th Cir. 2009) (holding that equitable estoppel did not apply because "there were no allegations of collusion or misconduct" between the nonsignatory and signatory).

[13] 2011 U.S. Dist. LEXIS 143490, at *27, 29 (emphasis added) (quoting *Mundi*, 555 F.3d at 1046); *see also Hawkins*, 423 F. Supp. 2d at 1050; *Choctaw Generation L.P. v. Am. Home Assur. Co.*, 271 F.3d 403, 406 (2d Cir. 2001); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948 (11th Cir. 1999).

[14] Toyota's assertion that Plaintiffs' claims are "premised on the very assertion that they did not obtain what was promised in their Purchase Agreements" from the dealers, *see* Br. at 12, makes no sense given Plaintiffs' detailed allegations of *Toyota's* misrepresentations and omissions in association with its warranties and its nationally orchestrated advertising campaign.  *See, e.g.*, SAMCC ¶¶ 138-164.

- 5 -

1
2
3
4
5
6
7
8
9
10
11
12

Toyota here mistakenly equates the mere purchase of the vehicles and the mere fact that Plaintiffs executed a purchase agreement with the interrelatedness between Plaintiffs' claims and the obligations in the Purchase Agreements. The extent of the obligations in the Purchase Agreements concern Plaintiffs' financing and insurance obligations. The Purchase Agreements also include provisions regarding the parties' right to rescission and the Toyota dealerships' disclaimer of warranties, which state that "the Seller will make no warranties, express or implied, on the vehicles, and there will be no implied warranties of merchantability or of fitness for a particular purpose." . . . Plaintiffs do not seek to enforce or challenge these terms in the Purchase Agreements or any duty owed by the Toyota dealerships. The operative document at issue is not the Purchase Agreements, but Toyota's marketing materials containing the purported false representations regarding the safety of its braking system. Simply put, Plaintiffs' claims do not rely on the content of the Purchase Agreements for their success. . . .

13
14
15
16
17
18
19
20
21
22
23

[]Plaintiffs' claims are premised on allegations that Toyota's braking system is defective, resulting in numerous vehicle accidents and unreasonable safety risk; that Toyota knew about these brake defects; that Toyota had a duty to disclose the existence of this defect but failed to [disclose] this information; that Plaintiffs would not have purchased their vehicles had they known about the defect; that Toyota promulgat[ed] misleading statements and made false representations regarding the safety of its braking system in their marketing materials; and that Toyota affirmatively took steps to conceal the braking defect and prevent Plaintiffs from discovering the existence of the defect. . . . Based on these allegations, Plaintiffs . . . class claims against Toyota . . , are independent of any term or condition stated in the Purchase Agreements. And the resolution of Plaintiffs' claims does not require the examination of any provision in the Purchase Agreements.[15]

24
25
26
27

Plaintiffs' CLRA, UCL and warranty claims here are very similar to those in the *Toyota Hybrid Brake Litigation*: they are premised on allegations that vehicles are defective (SAMCC ¶¶ 5, 350-67), resulting in numerous vehicle accidents and

28

[15] 2011 U.S. Dist. LEXIS 143490, at *30-32.

1   unreasonable safety risk (SAMCC ¶¶ 8, 15, 305 – (the Death Chart)); that Toyota

2   knew about the defects (SAMCC ¶¶ 9, 296-302); that Toyota had a duty to disclose

3   the existence of the defects but failed to (SAMCC ¶¶ 422-25); that Plaintiffs would

4   not have purchased their vehicles had they known about the defects (SAMCC ¶¶ 34-

5   132); that Toyota promulgated misleading statements and made false representations

6   regarding the safety of its vehicles in marketing materials (SAMCC ¶¶ 138-64); and

7   that Toyota affirmatively took steps to conceal the defects and prevent Plaintiffs

8   from discovering the existence of the defects (SAMCC ¶¶ 190-91, 207-08, 214-16,

9   296-302, 329-48).  None of these claims are predicated on – let alone "intertwined"

10  with – the Purchase Agreements which are not even mentioned in the complaint.

11          *Mundi* also trumps estoppel here.  In *Mundi*, the plaintiff's husband entered

12  into a loan agreement with Wells Fargo containing an arbitration clause.  He also

13  entered into an agreement with Union Security Life Ins. Co. for credit life insurance

14  to cover the balance owed on his loan if he were to die before paying off the loan.

15  The insurance agreement did not include an arbitration clause.  After her husband

16  died, the plaintiff sued Union Security for failing to pay the outstanding loan amount

17  to Wells Fargo.  Union sought to compel arbitration, arguing that the insurance

18  agreement arose from and was related to the loan agreement.[16]  The Ninth Circuit

19  upheld the district court's denial of Union's motion because "Mundi's claim that

20  [Union] breached the insurance policy is not intertwined with the contract providing

---

[16] *Mundi*, 555 F.3d at 1044.

for arbitration" and "resolution of her claim does not require the examination of any provisions of the EquityLine Agreement."[17]   And so it is here.

### 2.   Toyota's authorities are inapposite.

Toyota's authorities do not apply.  Br. at 11.  In *Agnew v. Honda Motor Co.*, the plaintiff alleged wrongdoings uniformly against all defendants, including against the signatory car dealer (even though the plaintiff later dismissed the dealer). Applying the Seventh Circuit's rule that equitable estoppel arises if the plaintiff's claims "rely on the terms of her purchase agreement with the dealership,"[18] the court found that the complaint did not differentiate among the defendants.[19]  But here, Plaintiffs do not allege that the signatory dealers breached any duties, and Plaintiffs do not seek to enforce or challenge the terms in the Purchase Agreements.  And to the extent that *Agnew* takes the nearly limitless view that the mere purchase of an auto relates to the dealer agreement for purposes of applying equitable estoppel,[20] it is inconsistent with the Ninth Circuit's guidelines in *Mundi*.[21]

---

[17] *Id*. at 1047; *see also Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166 (11th Cir. 2011) (credit life insurer could not compel arbitration under finance agreement containing arbitration clause between consumer and dealership because the credit insurer's legal obligations existed under the insurance policy and not the finance agreement, even though the credit life insurance agreement made reference to and presumed the existence of the finance agreement).

[18] 2009 U.S. Dist. LEXIS 53914, at *12 (S.D. Ind. May 20, 2009).

[19] *Id.*

[20] *See id.* at *13 ("Agnew's purchase of the auto was essential to all of the other claims.").

[21] The decision is also inconsistent with the Seventh Circuit case it relied on, *Hughes Masonry Co., Inc. v. Greater Clark Cty. School Build. Corp.*, 659 F.2d 836 (7th Cir. 1981).  In *Hughes*, the court did not simply hold that anything relating to a construction design and management agreement would be subject to its arbitration clause under principles of equitable estoppel.  Instead, the court made a specific finding that the agreement at issue expressly set forth various duties that the non-signatory (James Associates) was to perform, and the signatory (Hughes) sought to

- 8 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Toyota's reliance on *Goodwin v. Ford Motor Credit Co*. also does not help it. In *Goodwin*, the installment sales contracts between the plaintiffs and the Ford dealerships expressly contemplated assignment and delegation of the dealers' rights and obligations to the defendant nonsignatory credit corporation immediately upon execution, and the contracts specifically provided that any claims relating to the financing of the vehicle would be settled by arbitration.  The court thus found that, "since the very claims the [plaintiffs] raise against FMCC arise from duties bound up with the terms and conditions of the installment sales contracts they executed with the dealers, they are equitably estopped from failing to arbitrate those claims with FMCC."[22]  Not so here, where the Purchase Agreements with the dealers are not immediately assignable to Toyota.

*Ford Motor Co. v. Ables*, also cited by Toyota, does not apply.  The Fifth Circuit's test for applying equitable estoppel focused on whether the allegations are of "substantially interdependent and concerted misconduct by the nonsignatory and the signatory."  The court found that Plaintiffs' allegations of conspiracy between Ford (the nonsignatory) and the dealership (the signatory, and also a named defendant in the case) satisfied the test, and even the plaintiffs apparently admitted that the claims were interdependent.[23]  Unlike in *Ables*, Plaintiffs here do not allege a conspiracy between Toyota and its dealers and do not name the dealers as defendants.

---

hold that non-signatory liable for failing to perform those very obligations.  *Id*. at 839.  This was not the case in *Agnew*, and is not the case here where the obligations of Toyota are not at all spelled out in the Purchase Agreement.

[22] 970 F. Supp. 1007, 1017 (M.D. Ala. 1997).

[23] 207 Fed. Appx. 443, 448 (5th Cir. 2006).

Nor does the recently decided *In re Apple & AT&TM Antitrust Litig*. help Toyota.[24]  Nonsignatory Apple sought to compel arbitration against consumer plaintiffs based on an arbitration agreement with signatory ATTM.  The court held that the plaintiffs were equitably estopped from preventing Apple from compelling arbitration because the plaintiffs themselves contended that their antitrust and related claims against ATTM and Apple arose from the ATTM service contracts which locked in iPhone purchasers to using ATTM after the expiration of the initial two-year service period.[25]  The court concluded:  "Having agreed to arbitrate any claim growing out of their respective contractual relationships with ATTM, and having made a claim arising from that contractual relationship against both ATTM and Apple in which they allege that both Defendants jointly subverted rights under the contract, Plaintiffs are now estopped from refusing to arbitrate" against nonsignatory Apple.[26]  Here, on the other hand, Plaintiffs are not so estopped because, "[s]imply put, Plaintiffs' claims do not rely on the content of the Purchase Agreements for their success."[27]

### 3.     The implied warranty claim is not intertwined with the purchase agreements for the additional reason that the dealers disclaim such warranties in the purchase agreements.

In the *Toyota Hybrid Brake Litigation*, Judge Carney considered whether the claim for breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act was "somehow entangled with the Purchase Agreements" and

---

[24] 2011 U.S. Dist. LEXIS 138539 (N.D. Cal. Dec. 1, 2011).  *Apple* post-dates Toyota's motion, but Toyota may cite it on reply.

[25] *Id*. at *26-27.

[26] *Id*. at *27-28.

[27] 2011 U.S. Dist. LEXIS 143490, at *30.

- 10 -

concluded that it was not[28] because the breach of implied warranty claim was asserted against Toyota, not against the dealerships that sold the car.[29]   Moreover, the dealers' warranty disclaimers in that case, as here, ***disavow*** dealer warranties.[30]   The breach of implied warranty claim thus did not rely on the terms in the Purchase Agreements.[31]   There is no basis in equity for permitting nonsignatory Toyota to compel arbitration of the warranty claims.[32]

**D.   Even If It Had The Right To Compel Arbitration Under The Agreements, Toyota Waived It By Waiting Almost Two Years To Assert It**

To prove waiver, a party must demonstrate:  "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."[33]   All three factors are satisfied here.

**1.   Toyota unequivocally had knowledge of its alleged right to compel arbitration.**

Toyota claims that it could not have previously moved to compel arbitration because Plaintiffs were asserting nationwide application of California law and California law purportedly did not permit arbitration in this case until the United

---

[28] *Id*. at *32.

[29] *Id*.; *see also* SAMCC ¶ 489.

[30] 2011 U.S. Dist. LEXIS 143490, at *32-33; *see also* Berman Decl., ¶ 4.

[31] 2011 U.S. Dist. LEXIS 143490, at *33.  Toyota's citation to *Agnew* (Br. at 11-12) is inapposite for the additional reason that the court found "claims for breach of express and implied warranties necessarily assume that the warranties were provided as part of the [dealer's] sale" to the plaintiff.  2009 U.S. Dist. LEXIS 53914, at *12.

[32] *Mundi*, 555 F.3d at 1045 (explaining that the purpose of equitable estoppel is to "preclude[] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes").

[33] *Hoffman Constr. Co. v. Active Erectors & Installers, Inc*., 969 F.2d 796, 798 (9th Cir. 1992).

States Supreme Court decision in *Concepcion*[34] overturned the California Supreme Court decision in *Discover Bank*.[35]  This is nonsense.  Toyota has steadfastly contended since the very beginning of these cases that California law did not apply to a nationwide class.  For example, over 16 months ago Toyota filed motions to dismiss the Economic Loss Master Consolidated Complaint, arguing that California law did not apply to the nationwide class.  Dkt. No. 329.  Plaintiffs' ensuing SAMCC, filed more than a year ago on January 10, 2011, pled claims under the laws of *all* of the states (*see* Dkt. No. 580).  Toyota moved to dismiss that complaint on February 14, 2011 (Dkt. No. 734) but did not seek to compel arbitration.  Toyota again sought to preclude the application of California law nationwide on April 1, 2011 (*see* Dkt. No. 1196), and the Court ultimately agreed in its Order Denying Plaintiffs' Motion for Application of California Law (Dkt. No. 1478), issued over seven months ago on June 8, 2011.  Thus, Plaintiffs' quest to apply California law nationwide in no way precluded Toyota from bringing a motion to compel arbitration.  It has always been Toyota's position that the law of the many states applies.

There is another reason to disregard Toyota's futility contention.  As Judge Carney explained, *Discover Bank* held that class arbitration waivers in contracts of adhesion involving disputes over *small* amounts of money were unconscionable.  In contrast to these small sums of money, damages arising from the purchase of vehicles – often one of the most expensive products a consumer will buy – present a

---

[34] *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740 (2011).

[35] *Discover Bank v. Super. Ct.*, 36 Cal. 4th 148, 154 (2005).

different proposition.[36]  In any event, Toyota did "not have a right to reset the clock for arbitration based on changing subsequent law, as no party has a right to unfairly play a game of 'wait and see' and not assert its legal rights until and unless the law becomes more favorable to its position."[37]

### 2.   Toyota's actions are inconsistent with any alleged right to arbitrate.

Waiting almost two years to bring a motion to compel arbitration is wholly inconsistent with Toyota's alleged right to arbitrate.[38]  Though Plaintiffs began filing their class action lawsuits against Toyota on December 22, 2009, Toyota did not provide any indication of its intention to compel arbitration of Plaintiffs' claims until Toyota filed its motion in November 2011.  Instead, Toyota chose to litigate Plaintiffs' claims and has done so vigorously through unrelenting motion practice and substantial discovery.

On September 13, 2010, Toyota moved to dismiss Plaintiffs' first consolidated complaint (Dkt. No. 329), which the parties fully briefed and the Court denied in part on November 30, 2010 (Dkt. No. 510).  Toyota moved to strike allegations from the SAMCC on September 14, 2010 (Dkt. No. 332), and submitted briefing on choice of

---

[36] *Toyota Hybrid Brake Litig.*, 2011 U.S. Dist. LEXIS 143490, at *37-38 n.7. The *Discover Bank* Court did "not hold that all class action waivers are necessarily unconscionable" and instead limited its holding to cases that "predictably involve small amounts of damages."  36 Cal. 4th at 154, 162; *see also Dalie v. Pulte Home Corp.*, 636 F. Supp. 2d 1025, 1029 (E.D. Cal. 2009) ($1000 fee amount represented the "outer limit" of what would be considered "small"); *Smith v. AmeriCredit Fin. Servs., Inc.*, 2009 U.S. Dist. LEXIS 115767, at *18-19 (S.D. Cal. Dec. 11, 2009) (no court regards more than $5,000 to be within the *Discover Bank* standard for "small" damages).

[37] *Toyota Hybrid Brake Litig.*, 2011 U.S. Dist. LEXIS 143490, at *37.

[38] *See Zamora v. Lehman*, 186 Cal. App. 4th 1, 17-18 (2010) (collecting cases where arbitration waived when motion brought four to ten months after commencement of suit).

- 13 -

1  law issues (Dkt. Nos. 436 and 1196).  Toyota moved to dismiss the SAMCC on

2  February 14, 2011 (Dkt. No. 734), which the parties fully briefed and the Court again

3  denied in part on May 13, 2011 (Dkt. No. 1414).  Toyota then filed its answer in

4  June 2011 (Dkt. No. 1573) and again did not move to compel arbitration.

5

6          Throughout this time period, Toyota engaged in regular meet and confer

7  sessions regarding discovery issues and litigation scheduling, participated in frequent

8  status conferences with the Court, and consumed the time and resources of the

9  Special Masters.  As examples, Toyota filed various briefs related to scheduling and

10  discovery matters (*e.g.*, Dkt. Nos. 179, 200, 310, 316-17, 319, 439, 519-20, 595-96),

11  the protective order and preservation matters (*e.g.*, Dkt. Nos. 199, 205), and

12  coordination of state and federal discovery (Dkt. No. 290).

13

14          Discovery efforts have been massive and, indeed, Phase I of discovery is

15  complete.  Toyota has produced over 8.5 million document images, Plaintiffs have

16  reviewed a substantial portion of these, and their review continues.  Toyota issued

17  document requests and interrogatories to Plaintiffs and subpoenaed Plaintiffs'

18  insurance companies, finance companies, dealerships and news agencies.

19  Depositions of 28 Toyota "persons with the most knowledge" have been completed.

20  And Toyota has taken the depositions of 10 class representatives.[39]

21

22          Moreover, Toyota's active litigation of the case continued for ***seven months***

23  after the *Concepcion* decision was issued on April 27, 2011.  On June 27, 2011,

24  Toyota filed its request for certification for direct interlocutory appeal of the Court's

25  denial of its motion to dismiss (Dkt. No. 1568), which the parties fully briefed and

26  the Court granted on July 19, 2011 (Dkt. No. 1622).  On July 13, 2011, Toyota filed

27

28  ───────────────
      [39] Berman Decl., ¶ 6.

                                        - 14 -

010172-25 497752 V1

1   a brief in support of its proposed schedule for Phase 3 discovery (Dkt. No. 1599).

2   On July 15, 2011, Toyota opposed Plaintiffs' motion for certification for direct

3   interlocutory appeal of the Court's choice-of-law ruling (Dkt. No. 1606).  Toyota

4   petitioned for permission to appeal on July 29, 2011, which the parties fully briefed

5   and was granted on November 15, 2011.  On August 30, 2011, the Court entered

6   Order No. 16 concerning Phase 3 Discovery (Dkt. No. 1724).  The parties also met

7   and conferred and submitted briefs on issues with respect to class certification

8   discovery and scheduling and bellwether class representatives on September 6 (Dkt.

9   Nos. 1735-38), September 20 (Dkt. No. 1797), September 30 (Dkt. No. 1814) and

10  October 5, 2011 (Dkt. Nos. 1820-21).  The Court held status conferences to address

11  these issues on September 12 (Dkt. No. 1796) and October 11, 2011 (Dkt. No. 1864),

12  and issued an order regarding the class discovery plan and schedule on November 9,

13  2011 (Dkt. No. 1955).  Toyota moved to compel fact sheet responses from Plaintiffs

14  on October 6, 2011 (Dkt. No. 1823), and Toyota made filings relating to the

15  Technical Tutorial, which was conducted in December.

16         Toyota made the affirmative choice to litigate this case, and all actions that

17  Toyota took were consistent with that choice until on November 18, 2011 – two

18  years after the litigation began, seven months after *Concepcion*, and six months after

19  Toyota's substantive challenges to the SAMCC had been denied – Toyota's counsel

20  contacted Plaintiffs' counsel and, for the first time, announced its intention to file the

21  instant motion.  It is too late.  Toyota's active litigation of the class cases over a two

22  year period constitutes waiver of any alleged right to compel arbitration.

010172-25 497752 V1

- 15 -

1      Courts have found waiver in far less egregious circumstances.  For instance, in

2  *Roberts v. El Cajon Motors, Inc.*,[40] the defendant participated in discovery, litigated

3  the case and waited five months from commencement of the action to move for

4  arbitration.  Although the defendant argued that its activities occurred pre-

5  *Concepcion*, the court denied defendant's motion, finding that delay was not justified

6  and that the plaintiffs would be prejudiced by a late hour shift to arbitration.[41]

7

8      It is no surprise that Judge Carney found in the *Toyota Hybrid Brake*

9  *Litigation* that "Toyota has acted inconsistently with any right it might have had to

10  arbitrate Plaintiffs' claims" by having "vigorously litigated this action for nearly two

11  years, engaged in extensive discovery and meet and confer conferences with

12  Plaintiffs, filed motions with this Court, and negotiated and sought protective

13  orders."[42]  As has occurred here, the Court further found that Toyota continued to

14  litigate the action for six months after *Concepcion* was issued and gave no indication

15

16

17

18

19      [40] 200 Cal. App. 4th 832, 846 (2011).

20      [41] *Id*.  *See also Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 449-50 (3d Cir.
    Aug. 17, 2011) (waiver found based on party's decision to litigate a case for over **10
21  months**, including participation in extensive discovery, status conferences and
    motion practice); *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514
22  (11th Cir. 1990) (delay of **eight months** constituted waiver); *Davidson v. PDS Tech.
    Servs.*, 2010 U.S. Dist. LEXIS 123178, at *13 (M.D. Fla. Nov. 8, 2010) (finding
23  waiver when party moved **two years** after suit filed and after substantial litigation
    had occurred); *L & W Innovations, LLC v. Linli Constr., Inc.*, 2009 U.S. Dist. LEXIS
24  68519, at *10-13 (D. Colo. Aug. 5, 2009) (finding waiver because **a year** had passed
    with movant actively participating in litigation); *Eagle Traffic Control v. James
25  Julian, Inc.*, 945 F. Supp. 834, 835-36 (E.D. Pa. 1996) (waiver found by actively
    litigating action for **seven months**); *Strickland v. Chase Bank USA, N.A.*, 2009 U.S.
26  Dist. LEXIS 127879, at *15-16 (N.D. Ga. Dec. 31, 2009) (delay of **a year** constituted
    waiver).
27

28      [42] 2011 U.S. Dist. LEXIS 143490, at *38-39.

that it intended to assert any right to arbitrate.[43]  Thus, the record, as it does here, "abundantly" demonstrated that Toyota acted inconsistently with its intention to seek arbitration.[44]

### 3. Plaintiffs would be prejudiced if Toyota were permitted to arbitrate.

#### a. Plaintiffs would be prejudiced by Toyota's forum shopping.

*Gonsalves v. Infosys Techs., Ltd*. held that the dismissal of some of the plaintiffs' claims is "judicial litigation of the merits" and constitutes prejudice sufficient to waive the defendant's right to arbitration.  The court explained that defendants should not be permitted to forum shop by seeking a redetermination in arbitration of issues already decided by the court:  "The courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration."[45]

---

[43] *Id*. at 39.  Such facts distinguish this case from *Fisher v. A.G. Becker Paribas Incorporation*, 791 F.2d 691 (9th Cir. 1986), *see* Br. at 23, where the defendant did not continue to vigorously litigate the action after the intervening Supreme Court decision was issued.  *Toyota Hybrid Brake Litig.*, 2011 U.S. Dist. LEXIS 143490, at *42.  In Toyota's other authorities (Br. at 24, citing *Quevedo v. Macy's, Inc*., 2011 U.S. Dist. LEXIS 83046 (C.D. Cal.); *Villegas v. U.S. Bankcorp*, 2011 U.S. Dist. LEXIS 65032 (N.D. Cal.); and *In re Cal. Title Ins. Antitrust Litig.*, 2011 U.S. Dist. LEXIS 71621 (N.D. Cal.)), the defendants promptly moved to compel arbitration after *Concepcion* came down.  Moreover, there was no question in *Villegas* and *In re Cal. Title Ins*. that *Concepcion* would apply, and no question that *Gentry v. Super. Ct.*, 42 Cal. 4th 443 (2007), a California Supreme Court employment decision that expounded on *Discovery Bank*, would apply in *Quevedo*.  *Quevedo* was also stayed for nearly a year, 2011 U.S. Dist. LEXIS 83046, at *16, and discovery had only recently commenced in *In re Cal. Title Ins*., 2011 U.S. Dist. LEXIS 71621, at *14.

[44] 2011 U.S. Dist. LEXIS 143490, at *41.

[45] 2010 U.S. Dist. LEXIS 79683, at *14-15 n.3 (N.D. Cal. Aug. 5, 2010) (citing *Christensen*, 33 Cal. 3d at 784); *see also McMillin Dev. Inc. v. Home Buyers Warranty*, 68 Cal. App. 4th 896, 910 (1998); Dkt. No. 1414 (dismissing revocation of acceptance and unjust enrichment claims with prejudice).

1   Nor should this Court permit Toyota to seek a redetermination of its failed

2   motions to dismiss in arbitration.  "It is simply too late for Toyota now to tell

3   Plaintiffs that it is putting an end to litigation in federal court, switching to another

4   forum, and starting the case over again in arbitration after being unable to dismiss

5   Plaintiffs' claims in large part."[46]  "The purpose of the FAA, and arbitration in

6   general, is to promote quick, informal, and streamlined resolution of issues between

7   parties.  It is not to be used as a back-up plan for litigation strategies."[47]

8

9   Moreover, contrary to Toyota's argument (Br. at 23-24), because this Court's

10   orders on Toyota's motions to dismiss were with respect to the named plaintiffs and

11   all those similarly situated, the prejudice exists for all class members (including

12   recently added named plaintiffs).  Specifically, the Court's ruling that the plaintiffs

13   have alleged sufficient injury for Article III standing to pursue their claims applies to

14   all.  And even though Plaintiffs would not need to establish Article III standing in

15   arbitration, Toyota would undoubtedly press the argument again in arbitration.  Thus,

16   there is no question that Plaintiffs – whenever designated as proposed class

17   representatives – would be prejudiced by Toyota's forum shopping.[48]

18

19

20

21   [46] *Toyota Hybrid Brake Litig.,* 2011 U.S. Dist. LEXIS 143490, at *45.

22   [47] *Martinez v. Welk Group, Inc.*, 2012 U.S. Dist. LEXIS 3893, at *14 (S.D. Cal.
23   Jan. 12, 2012) (denying motion to compel arbitration based on waiver where
     defendant litigated for two years and had recently received adverse ruling from court).

24   [48] Citing to a single case finding waiver to be an "extremely close" issue where
25   defendants sought to enforce arbitration agreements only against unnamed class
     members, Toyota contends that it has not waived arbitration with respect to the newly
26   named class representatives here because it could not move against unnamed class
     members.  Br. at 24 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 U.S.
27   Dist. LEXIS 55033, at *28 (N.D. Cal. May 9, 2011)).  But the efficiencies of both
     class actions and the MDL mechanism would be severely undercut if defendants were
28   permitted to wait to compel arbitration of absent class member claims notwithstanding
     the existence of named plaintiffs subject to the same arbitration agreements.  Instead,

- 18 -

### b.   Plaintiffs would be prejudiced with respect to strategy considerations and their investment of time and resources in litigation.

Plaintiffs are also prejudiced because (i) Toyota has learned from Plaintiffs' litigation strategy,[49] (ii) Plaintiffs "undoubtedly would have utilized a different strategy had they known that the case would proceed to arbitration,"[50] (iii) Toyota had an extended opportunity to test its own strategies,[51] and (iv) for nearly two years, Plaintiffs expended substantial resources, time, and effort in litigating this action,[52] particularly in responding to discovery and engaging in discovery motion practice before the Special Masters even after *Concepcion* was decided.[53]   And, again, the

---

following certification, absent class members here would be subject to the Court's earlier arbitration rulings with respect to the named plaintiffs.

[49] *Zamora*, 186 Cal. App. 4th at 19.

[50] *Toyota Hybrid Brake Litig.*, 2011 U.S. Dist. LEXIS 143490, at *43-44 (citing *Plows v. Rockwell Collins, Inc.*, Case No. SACV 10-01936, 2011 U.S. Dist. LEXIS 88781, at *9 (C.D. Cal. Aug. 9, 2011)); *see also Martinez*, 2012 U.S. Dist. LEXIS 3893, at *11-12.

[51] *McMillin*, 68 Cal. App. 4th at 910.

[52] *Toyota Hybrid Brake Litig.*, 2011 U.S. Dist. LEXIS 143490, at *43-44; *see also Laborers Health & Welfare Trust Fund v. Kaufman & Broad, Inc.*, 707 F.2d 412, 417-18 (9th Cir. 1983); *McMillin*, 68 Cal. App. 4th at 910; *Zamora*, 186 Cal. App. 4th at 19.   Indeed, Toyota's assertion that the FAA favors arbitration and that policy considerations counsel for compelling arbitration, *see* Br. at 16-17, are irrelevant in this instance because "the Arbitration Act stresse[s] the need for avoiding the delay and expense of litigation," an objective that cannot be accomplished due to the extensive engagement in litigation in this case.   *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 512 (1974).   Toyota may rely on *In re Apple & AT&TM Antitrust Litig.* for the proposition that extra expense incurred as a result of litigation does not constitute prejudice.   But that case involved a mandatory arbitration clause so that a party filing suit in court would be a making a "deliberate choice of an improper forum, in contravention of its contract."   2011 U.S. Dist. LEXIS 138539, at *16 (N.D. Cal. Dec. 1, 2011).

[53] *See* Dkt. Nos. 1562, 1571, 1843, 1627 and 1960.   This distinguishes Toyota's reliance on *Carcich v. Rederi A/B Nordie* (*see* Br. at 25), in which the court found that the movant had not sought discovery with respect to either third-party dispute subject to arbitration. 389 F.2d 692, 696 (2d Cir. 1968).

- 19 -

1   prejudice arising with respect to strategy considerations affects all those in the class
2   as to whom Toyota may move to compel arbitration, including Plaintiffs regardless
3   of when they may have been designated as such.

### c.   Plaintiffs would be prejudiced by Toyota having obtained discovery to which it would not be entitled in arbitration.

6   Distinguishing Toyota's authority,[54] the *Toyota Hybrid Brake Litigation* Court
7   found that Plaintiffs had been prejudiced because Toyota had benefited from
8   plaintiff-specific discovery that it would not have been entitled to in arbitration.
9   Likewise here, Toyota has engaged in significant plaintiff-specific discovery prior to
10  filing its motion to compel arbitration.  Through two years of litigation, Toyota has
11  obtained detailed fact sheets and supporting documents supporting these fact sheets
12  (with supplementations) and responses to interrogatories from the Plaintiffs[55] –
13  discovery to which Toyota would not be entitled in arbitration.

### E.   The Agreements Are Unconscionable And Therefore Unenforceable

The FAA's savings clause preserves generally applicable contract defenses,
including the defense of unconscionability.[56]  As Toyota acknowledges (Br. at 17),
California, Florida, and New York generally require both procedural and substantive
unconscionability to render any agreement, including arbitration agreements,
unenforceable.  Procedural unconscionability examines both the process by which an
agreement is reached and the form of the agreement, while substantive

---

[54] *See* Br. at 25 (citing *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 697 (9th Cir. 1986)).

[55] *See* Berman Decl., ¶ 7.

[56] *Concepcion*, 131 S. Ct. at 1746, 1748.

010172-25 497752 V1

unconscionability refers to terms that unreasonably favor one party.[57]  Both apply here.

### 1.    The arbitration provisions are procedurally unconscionable.

"Procedural unconscionability involves oppression or surprise due to unequal bargaining power."[58]  Courts generally find adhesion contracts to be procedurally unconscionable.[59]  Surprise is not necessary if the court determines that the arbitration provision of an adhesive contract is oppressive.[60]  "When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present."[61] And procedural unconscionability is not defeated by the mere availability in the market place of substitute goods.[62]

The Toyota dealers "unquestionably had superior bargaining strength in that [they] presented [their] preprinted documents, cast in generic language, to plaintiffs for signature" and "Plaintiffs were never informed that … the arbitration provisions were negotiable."[63]  Having been imposed on Plaintiffs on a take-it-or-leave-it basis,

---

[57] *E.g., Cotchett, Pitre & McCarthy v. Universal Paragon Corp.*, 187 Cal. App. 4th 1405, 1419 (2010).

[58] *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010).

[59] *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (en banc) (citing *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853-854 (2001)); *see also Bridge Fund Capital Corp.*, 622 F.3d at 1004.

[60] *Nagrampa*, 469 F.3d at 1284.

[61] *Id.* at 1282; *see also Ingle v. Circuit City Stores, Inc.,* 328 F.3d 1165, 1170-71 (9th Cir. 2003).

[62] *Nagrampa*, 469 F.3d at 1283; *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 585 (2007).

[63] *Flores*, 93 Cal. App. 4th at 853-854.

- 21 -

the arbitration agreements were "contract[s] of adhesion and thereby procedurally unconscionable."[64]  Further, many of the arbitration provisions here are found at the very end of the Purchase Agreements on the backside or last page of a pre-printed, densely worded form that does not require signature specific to the arbitration provision.[65]  Thus, the agreements are designed to allow the consumer to complete the transaction without ever reading the arbitration provision.  Courts have found such placement supports a finding of procedural unconcsionability.[66]

### 2.   The arbitration provisions are substantively unconscionable.

Substantive unconscionability focuses on whether the terms of the agreement are "overly harsh or one-sided."[67]  Arbitration clauses are substantively unconscionable if they force one party to utilize arbitration, while preserving non-arbitration remedies the other party is likely to utilize.[68]

For example, in *Sanchez v. Valencia Holding Co., LLC*, issued after *Concepcion*, the court found a lack of real mutuality to be substantively unconscionable.[69]  A car dealership was sued for violations of the CLRA and the UCL based on misrepresentations made during the course of a used car purchase.  The *Sanchez* court found that four clauses within the arbitration agreement – which

---

[64] *Id*. at 854.

[65] *See* Dawson Decl., Ex. O at 82, Ex. P at 84, Ex. R at 92, Ex. S at 96, Ex. V at 113, Ex. W at 118, Ex. X at 122, Ex. Y at 124, Ex. AA at 130, Ex. BB at 135, Ex. CC at 138.

[66] *E.g.*, *Gutierrez v. Autowest, Inc.*, 114 Cal. App. 4th 77, 89 (2003).

[67] *Bridge Fund Capital Corp*., 622 F.3d at 1004.

[68] *E.g.*, *Flores*, 93 Cal. App. 4th at 854.  This distinguishes Toyota's citation to *In re DIRECTV Early Cancellation Fee Mktg. & Sales Practices Litig*., 2011 U.S. Dist. LEXIS 102027 (C.D. Cal. Sept. 6, 2011).  *See* Br. at 22.

[69] 201 Cal. App. 4th 74 (2011).

- 22 -

are nearly identical to ones here – were substantively unconscionable.[70]  First, the losing party may appeal to a panel of three arbitrators if the award exceeds $100,000.[71]  Second, appeal is permitted if the award includes injunctive relief.[72]  Third, the appealing party must pay, in advance, the filing fee and costs subject to a later fair apportionment of costs.[73]  Fourth, repossession is exempted from arbitration while a request for injunctive relief must be submitted to arbitration.[74]

Here, as in *Sanchez*, while the four arbitration clauses are written to appear mutual, they actually have the effect of unfairly benefitting the car dealer drafter at the expense of the consumer.[75]  First, a "buyer will rarely benefit from the clause permitting an appeal of an award exceeding $100,000 because the buyer, not the

---

[70] *Id.* at 93.

[71] *See* Dawson Decl., Ex. E at 32, Ex. F at 37, Ex. H at 48, Ex. L at 68, Ex. R at 92, Ex. S at 96, Ex. X at 122, Ex. Y at 124 and Ex. CC at 138.  Toyota contends that Plaintiffs Gudmundson and Henry are not subject to this provision because it selectively focuses on certain arbitration provisions.  *See* Ex. B at 14 nn.1 & 2.  With respect to Plaintiff Gudmundson, Toyota ignores stand-alone arbitration terms, *see* Ex. F at 37, in favor of other terms squashed within the agreement, *id.* at 38.  And Toyota disregards the arbitration terms in Plaintiff's Henry Retail Installment Sales Contract, *see* Ex. H at 48, in favor of those in the Retail Order Contract, *id.* at 43, even though it relies on the arbitration terms in the Retail Installment Sales Contract with respect to other plaintiffs.  *See, e.g.*, Ex. AA at 127, 130.

[72] *Sanchez*, 201 Cal. App. 4th at 93.

[73] *Id.*

[74] *See* Dawson Decl., Ex. C at 24, Ex. E at 32, Ex. F at 37, Ex. G at 41, Ex. H at 48, Ex. I at 54, Ex. L at 68, Ex. O at 82, Ex. P at 84, Ex. R at 92, Ex. S at 96, Ex. X at 122, Ex. Y at 124, Ex. AA at 130, Ex. BB at 135, and Ex. CC at 138.  Moreover, Ex. J at 55 contains a limitation on damages, which courts have found to be substantively unconscionable.  *See, e.g.*, *Pardee Constr. Co. v. Super. Ct.*, 100 Cal. App. 4th 1081, 1091 (2002).  In addition, the arbitration provisions do not indicate the availability of or criteria for determining eligibility for waivers of costs and fees.  *See, e.g.*, Ex. M at 69, Ex. N. at 75, Ex. V. at 113, and Ex. W at 118; *Sanchez*, 201 Cal. App. 4th at 99-100.  Thus, all 21 arbitration agreements contain substantively unconscionable aspects.

[75] *Id.* at 100.

dealer, is more likely to recover an award of that size and be satisfied with it."[76]  The seller is likely to recover an amount under the threshold because the buyer is simply obligated to pay the amount of the vehicle.  Toyota, conversely, is subject to "various consumer laws, the violation of which could result in substantial damages."[77]  And if the buyer prevails but believes the award is too low, the arbitration generally ends;[78] whereas, if the buyer prevails and recovers, the car dealer can start anew before a three-member panel.[79]  Thus, the arbitration clause is not mutual in effect.[80]

Second, allowing an appeal by either party if injunctive relief is awarded "unduly burdens the buyer because the buyer, not the car dealer, would be the party obtaining an injunction."[81]  So, "[b]y subjecting injunctive relief to an appeal process, only the car dealer is benefited, making the clause one sided."[82]  Toyota's only example of an injunction that might be sought by dealers is one for replevin (Br. at 22), but it does not explain why any dealer would not instead simply engage in the self-help remedy of repossession, which they reserved for themselves in the arbitration agreements (see below).

---

[76] *Id*. at 95.

[77] *Id*. at 96.

[78] Toyota does not explain its assertion that an ability to appeal "an award of $0 [] is decidedly beneficial to the consumer," *see* Br. at 21, a position rejected by *Sanchez*.  201 Cal. App. 4th at 96.

[79] *Id*.

[80] *Id*. at 96-98; *Saika v. Gold*, 49 Cal. App. 4th 1074, 1079-80 (1996).

[81] *Sanchez*, 201 Cal. App. 4th at 96.

[82] *Id*. at 97.  In addition, claims for injunctive relief under California's CLRA and UCL are not arbitrable.  *See In re DirectTV*, 2011 U.S. Dist. LEXIS 102027, at *36-38.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Third, the requirement that the appealing party pay the filing fee and costs of both parties in advance is unconscionable because it "puts an unduly harsh burden on [the] consumer" and "discourages buyers from pursuing an appeal."[83]  Moreover some of the agreements[84] provide for the award of attorney's fees to the prevailing party, which "unfairly exposes [Plaintiffs] to a greater financial risk in arbitrating claims than they would face if they were to litigate those same claims in federal court."[85]  These provisions are more favorable to the dealerships which generally have greater resources than individual consumers.

Fourth, by "expressly exempt[ing] self-help remedies including repossession, which is perhaps the most significant remedy from the car dealer's perspective," the car dealer "has attempted to maximize its advantage by avoiding arbitration of its own claims."[86]  The "buyer has no effective self-help remedies against a car dealer, and none of the buyer's remedies is exempt."[87]  The Sales Contract thus creates an unduly oppressive distinction in remedies by exempting repossession but not injunctive relief from arbitration.[88]

The arbitration agreements are permeated by unconscionability and therefore unenforceable.

---

[83] 201 Cal. App. 4th at 99-100.

[84] *See* Dawson Decl., Ex. C at 24, Ex. G. at 41, and Ex. I at 54.

[85] *Pokorny v. Quixtar, Inc*., 601 F.3d 987, 1004 (9th Cir. 2010).

[86] 201 Cal. App. 4th at 100-101.

[87] *Id*. at 100.

[88] *Id*. at 101.  Toyota inexplicably assumes that, absent the express exemption of self-help remedies from the arbitration agreements, those remedies would not be subject to arbitration.  *See* Br. at 23.

1

## III.   CONCLUSION

2

For the foregoing reasons, Plaintiffs respectfully request that the Court deny

3

Toyota's motion to compel arbitration.

4

5

Dated:  February 6, 2012                    Respectfully submitted.

6

7               By:   /s/ Steve W. Berman
                        Steve W. Berman (WA SBN 12536)
8               **HAGENS BERMAN SOBOL SHAPIRO LLP**
                1918 Eighth Avenue, Suite 3300
9               Seattle, WA 98101
                Telephone:  (206) 268-9320
10              Facsimile:   (206) 623-0594
                Email:  steve@hbsslaw.com
11

12              By:   /s/ Marc M. Seltzer
                        Marc M. Seltzer (CA SBN 054534)
13              **SUSMAN GODFREY L.L.P.**
                1901 Avenue of the Stars, Suite 950
14              Los Angeles, CA 90067
                Telephone:  (310) 789-3102
15              Facsimile:   (310) 789-3006
                Email:  mseltzer@susmangodfrey.com
16

17              By:   /s/ Frank M. Pitre
                        Frank M. Pitre (CA SBN 100077)
18              **COTCHETT, PITRE & MCCARTHY, LLP**
                840 Malcolm Road, Suite 200
19              Burlingame, CA 94010
                Telephone:  (650) 697-6000
20              Facsimile:   (650) 697-0577
                Email:  fpitre@cpmlegal.com
21

22              ***Co-Lead Counsel for***
                ***Economic Loss Plaintiffs***
23

24

25

26

27

28

- 26 -

1

## **<u>PROOF OF SERVICE</u>**

2

3

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on February 6, 2012.

4

5

6

/s/ Steve W. Berman

Steve W. Berman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

010172-25  497752 V1