CARI K. DAWSON (GA SBN 213490)
LISA GILFORD (CA SBN 171641)
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: cari.dawson@alston.com
Email: lisa.gilford@alston.com

DOUGLAS R. YOUNG
(CA SBN 73248)
C. BRANDON WISOFF
(CA SBN 121930)
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email: dyoung@fbm.com
Email: bwisoff@fbm.com

THOMAS J. NOLAN (CA SBN 66992)
STEPHEN C. ROBINSON
(NY SBN 2150647)
**SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP**
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: thomas.nolan@skadden.com
Email: stephen.robinson@skadden.com

*Co-Lead Defense Counsel for
Economic Loss Cases*

VINCENT GALVIN, JR.
(CA SBN 104448)
JOEL SMITH (SC SBN 5266)
**BOWMAN AND BROOKE**
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845
Email:
   vincent.galvinjr@bowmanandbrooke.com
Email: joel.smith@bowmanandbrooke.com

*Lead Defense Counsel for Personal
Injury/Wrongful Death Cases*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL ECONOMIC LOSS CASES | Case No.: 8:10ML2151 JVS (FMOx)<br><br>**TOYOTA'S RESPONSE TO PLAINTIFFS' POST-HEARING BRIEF AND IN SUPPORT OF TOYOTA'S MOTION TO COMPEL ARBITRATION**<br><br>Date:           February 27, 2012<br>Time:           1:30 p.m.<br>Location:      Court Room 10C<br>Judicial Officer:  Hon. James V. Selna |

On February 28, 2012, Plaintiffs filed a post-hearing brief in opposition to Toyota's Motion to Compel Arbitration. While Plaintiffs' filing is untimely, Toyota is happy to address Plaintiffs' arguments on their merits, and it does so here.

As discussed during the hearing on February 27, 2012, the question before this Court is whether there is a "sufficient relationship" between Toyota and the Plaintiffs to allow Toyota to invoke the <u>delegation provision</u> in Plaintiffs' arbitration agreements to compel arbitration on threshold questions of arbitrability, including equitable estoppel. *Contec Corporation v. Remote Solution Co., Ltd.*, 398 F.3d 205, 211 (2nd Cir. 2005). As this Court discussed during the hearing, this relationship requirement is one way in which Toyota can satisfy the § 4 requirement of an "aggrieved party" under the Federal Arbitration Act ("FAA"). Plaintiffs' recent submission does not really contend otherwise, noting only that *Contec* required the parties to have a "sufficient relationship" to each other before sending the threshold issue to arbitration. Pls' Post-Hrg Br. at 1. As outlined below, Toyota has demonstrated a "sufficient relationship" under *Contec* to compel arbitration.

In *Contec*, the contract at issue was a commercial contract between Remote Solution and Contec L.P. 398 F.3d at 208. However, Contec L.P. later became Contec Corporation and, when a dispute ensued, Remote Solution argued that it "cannot be compelled to arbitrate with a stranger to the 1999 Agreement because the contractual language is effective only between the contracting parties." *Id.* at 209. Moreover, Remote Solution challenged Contec's ability to enforce the agreement because the contract contained "both a prohibition on the assignment of rights under the Agreement and an exclusion of third party rights, and that, therefore, there is no contractual evidence of Remote Solution's intent to grant third parties the right to seek arbitration." *Id.* In other words, Contec Corporation was not a party to the agreement, and the underlying contract explicitly prohibited a third party like Contec from asserting rights under the agreement.

1
TOYOTA'S RESPONSE TO PLAINTIFFS' POST-HEARING BRIEF

Nevertheless, the Second Circuit held in *Contec* that there was a "sufficient relationship" between Remote Solution and Contec to allow Contec to invoke arbitration as to the threshold issue of equitable estoppel. *Id*. In doing so, the Court noted that there was a business relationship <u>in fact</u> between the companies, and it also emphasized that Remote Solution was the party that had signed the arbitration agreement. *Id*. Both considerations are applicable here.

In *Washington v. William Morris Endeavor Entertainment, LLC*, the Southern District of New York likewise applied this relationship test before holding that an arbitrator must decide the threshold issue of whether the individual defendants, who were non-signatories to an arbitration agreement, could invoke arbitration on a theory of equitable estoppel. No. 2:10-cv-9647, 2011 WL 3251504, at *8 (S.D.N.Y. July 20, 2011). In *Washington*, the Plaintiff was an individual former employee of a company called William Morris Endeavor Entertainment, LLC ("William Morris"), with whom he had signed an employment contract containing an arbitration clause. *Id*. at *1. Notably, the arbitration clause at issue was held to require arbitration of disputes regarding arbitrability. *Id*. at *8. In his lawsuit, Washington sued two individual defendants who were also employees of William Morris, and the individual defendants sought to compel arbitration on a theory of equitable estoppel. Ultimately, the Court in *Washington* held that an arbitrator must determine whether equitable estoppel applied. *Id*. at *8.

Before sending the matter to arbitration, however, the Court in *Washington* determined whether there was a "sufficient relationship" between the Plaintiff and the two individual defendants to allow the individual defendants to invoke arbitration even as to the threshold issue of equitable estoppel. In doing so, as this Court noted in its tentative, the *Washington* Court "looked to the scope of the disputes that the former employee agreed to arbitrate, which required arbitration against the 'Company,' which was, in turn, defined to include the Company's employees." Tentative Order at 15. Although the individual defendants were not identified by name, and although they

2
TOYOTA'S RESPONSE TO PLAINTIFFS' POST-HEARING BRIEF

were not parties to the employment contract, the *Washington* Court held that this language evidenced a "sufficient relationship" between the parties to require arbitration over threshold issues. *Id.* at *9.

In sum, the "sufficient relationship" test is not a rigid or formulaic test, but instead one designed to demonstrate that the non-signatory at issue has some element of standing to invoke a delegation clause requiring arbitration over issues of arbitrability. In *Contec*, the language of the contract explicitly rejected third party rights under the agreement, but the Court relied upon the fact that the two companies had a business relationship—*i.e.*, a relationship in fact. *Contec*, 398 F.3d at 209. In *Washington*, by contrast, the Court looked to the language of the agreement to evidence a contemplated connection between the plaintiff and the two individual defendants. *Washington*, 2011 WL 3251504, at *9. Here, both inquiries demonstrate that a "sufficient relationship" exists between the Plaintiffs and Toyota.

First, using the *Contec* analysis, Toyota has a relationship <u>in fact</u> with the Plaintiffs because it is both the manufacturer of and express and implied warrantor for the Toyota vehicles that Plaintiffs purchased. Second, as discussed during the hearing, the arbitration agreements at issue demonstrate a contemplated connection between Plaintiffs and Toyota. For example, Ziva Goldstein signed an agreement that contemplates arbitration of disputes regarding "any resulting transaction or <u>relationship</u> (including any such relationship with <u>third parties who do not sign this Contract</u>) . . . " Purchase Agreement, Declaration of Cari Dawson [Dkt. 2006-1] ("Dawson Decl."), Ex. E (emphasis added). As Plaintiffs concede, the same or similar language appears in 11 other agreements.[1] Pls' Post-Hrg Br. at 2.

Likewise, Mary and John Laidlaw signed an arbitration clause that goes even further by requiring arbitration of disputes with affiliates of Toyota Motor Credit

---

[1] For the convenience of the Court, Toyota submitted a demonstrative at the February 27, 2012 hearing behind Tab 5 that highlights language in each of the agreements referencing third parties like Toyota.

3
TOYOTA'S RESPONSE TO PLAINTIFFS' POST-HEARING BRIEF

Corporation and "any third party providing any product or service in connection with the Lease." *Id.*, Exs. O, P. Therefore, no less than 13 Plaintiffs signed arbitration agreements that reference "resulting relationships" with third parties like Toyota. Between the warrantor relationship and the language of these agreements, Toyota has easily demonstrated the existence of a "sufficient relationship" under *Contec* and its progeny to be an "aggrieved party" under Section 4 of the FAA. Moreover, it bears repeating that Toyota is attempting to invoke these delegation clauses against the <u>signatories</u>—a fact that was considered significant in the analysis by the Second Circuit. *Contec*, 398 F.3d at 210-11. Therefore, Toyota is entitled to invoke the delegation clauses in Plaintiffs' arbitration agreements that require arbitration over threshold questions of arbitrability.

In their Post-Hearing Brief, Plaintiffs argue that the language discussed in Mrs. Goldstein's agreement is not sufficient to evidence a relationship between Toyota and Plaintiffs under *Contec* because the arbitration provision essentially states that the claims asserted "must be *between* the dealer and the customer." Pls' Post-Hrg Br. at 2. However, in making this argument, Plaintiffs confuse the question of whether Toyota has a contractual right to compel arbitration under this agreement with the question of whether there is a "sufficient relationship" between the parties under *Contec*. If the arbitration agreement was not limited as Plaintiffs observe, then Toyota would argue that it has a contractual right to compel arbitration, and it would not need to rely upon equitable estoppel. More importantly, Plaintiffs conveniently ignore the facts of *Contec* and *Washington*. In *Contec*, third parties like Contec Corporation were explicitly <u>prohibited</u> from claiming rights under the agreement. In *Washington*, the individual defendants were not parties to the employment contract, so they could not compel arbitration. The question was not whether those parties had a contractual right to compel arbitration—they did not—but, instead, whether there was a "sufficient relationship" between the parties to send a threshold dispute over equitable estoppel to arbitration. In both cases, the answer was yes.

Here, Toyota's case is even stronger than in *Contec* or *Washington* because it has both a relationship in fact with Plaintiffs <u>and</u> the arbitration agreements at issue specifically reference "resulting relationships" with third parties that did not sign the contract—*e.g.*, Toyota. If there were any doubt, the arbitration clause signed by Mary and John Laidlaw is especially compelling. As noted above, their agreement requires arbitration of disputes with affiliates of Toyota Motor Credit Corporation and "any third party providing any product or service in connection with the Lease." Purchase Agreements, Dawson Decl., Exs. O, P. This language is even more explicit than Mrs. Goldstein's contract, and it does not contain any limitation to disputes between "you and us [*i.e.*, the dealership]." Although the agreement states that it can only be invoked at "your or our election," Plaintiffs again state the obvious. The question is not whether Toyota can "invoke" the agreement on its terms, but instead whether Toyota can require arbitration on a theory of equitable estoppel. And even that question is left for the arbitrator. Thus, the <u>only</u> question here is whether Plaintiffs and Toyota have a "sufficient relationship" to permit Toyota to invoke the <u>delegation clause</u> requiring arbitration over the disputed issues of waiver, equitable estoppel, and unconscionability.

By any measure, the facts here are more compelling than the facts at issue in *Contec* and *Washington*. In demonstrating a "sufficient relationship," Toyota is not required to prove more than it would be required to prove to apply equitable estoppel on the merits. Toyota has a relationship in fact with the Plaintiffs, and many of the Plaintiffs' arbitration agreements acknowledge "resulting relationships" with third parties like Toyota. Therefore, Toyota has a sufficient relationship with the Plaintiffs to be an aggrieved party under Section 4 of the FAA, and it respectfully requests that this Court GRANT its Motion to Compel Arbitration.

///

///

///

Dated: February 29, 2012

By: _____/s/_____
Cari K. Dawson

CARI K. DAWSON
LISA GILFORD
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: cari.dawson@alston.com
Email: lisa.gilford@alston.com

DOUGLAS R. YOUNG
C. BRANDON WISOFF
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email: dyoung@fbm.com
Email: bwisoff@fbm.com

THOMAS J. NOLAN
STEPHEN C. ROBINSON
**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: thomas.nolan@skadden.com
Email: stephen.robinson@skadden.com

*Co-Lead Defense Counsel for Economic Loss Cases*

VINCENT GALVIN, JR.
JOEL SMITH
**BOWMAN AND BROOKE**
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845
Email:
  vincent.galvinjr@bowmanandbrooke.com
Email: joel.smith@bowmanandbrooke.com

*Lead Defense Counsel for Personal Injury/Wrongful Death Cases*