ROBERT A. KRAUSE (*Pro Hac Vice*)
THE SPENCE LAW FIRM
15 South Jackson Street
Jackson, Wyoming 83001
Tel.: (307) 733-7290; Fax: (307) 733-5248
krause@spencelawyers.com

MARK P. ROBINSON, JR. (State Bar No. 054426)
KEVIN F. CALCAGNIE (State Bar No. 108994)
SCOT D. WILSON (State Bar No. 223367)
ROBINSON CALCAGNIE ROBINSON
       SHAPIRO DAVIS, INC.
19 Corporate Plaza Drive
Newport Beach, California  92660
Tel.: (949) 720-1288;Fax:  (949) 720-1292
mrobinson@rcrlaw.net
kcalcagnie@rcrlaw.net
swilson@rcrlaw.net

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | 8:10ML2151 JVS (FMOx) <br><br> MDL 2151 <br><br> Honorable James V. Selna |
| ************************************ <br> This document relates to: <br><br> SHIRLENE VAN ALFEN, et al. <br><br>          Plaintiffs, <br><br>      vs. <br><br> TOYOTA MOTOR SALES, U.S.A., INC., a California corporation, et al. <br><br>          Defendants. | ******************************** <br> Case No.  11-cv-08120 JVS (FMOx) <br><br> **PLAINTIFFS' RESPONSE TO TOYOTA'S OBJECTIONS TO REPLY ARGUMENTS AND DECLARATIONS, MOTION TO STRIKE, AND REQUESTS FOR LEAVE TO FILE A SUR-REPLY AND TO CONTINUE THE HEARING OF PLAINTIFFS' MOTION FOR SANCTIONS** <br><br><br> Date:          April 9, 2012 <br> Time:         3:00 p.m. <br> Courtroom:   10C <br> Judge:       Hon. James V. Selna |

**1**

_____

PLAINTIFFS' RESPONSE TO TOYOTA'S OBJECTIONS TO REPLY ARGUMENTS AND DECLARATIONS AND REQUESTS FOR LEAVE TO FILE A SUR-REPLY AND TO OF THE HEARING OF PLAINTIFFS' MOTION FOR SANCTIONS

# TABLE OF CONTENTS

Page

I.  THE LAW REGARDING "NEW" EVIDENCE AND "NEW" ARGUMENTS ................................................................................1

II. TOYOTA'S OBJECTIONS TO THE CARUSO, MAHON, MILLER AND CLARK DECLARATIONS SHOULD BE OVERRULED ............................................................................................2

    1.  The Caruso Declaration Was Submitted In Response To The Toyota Nunan And Shibata Declarations And Opposition Arguments ................................................................2

    2.  The Supplemental Mahon Declaration Directly Responds To Toyota's Attack Of Him And His Opinions In Its Opposition ............................................................12

    3.  The Clark Declaration Was Appropriately Submitted In Response To The Opposition Arguments And The Toyota Lane Declaration ....................................................13

    4.  The Declaration Of Trooper Miller Directly Responds To The Opposition Arguments And Minyon Declaration Regarding Consent ......................................................14

III. RESPONSE TO OBJECTIONS TO 10 ALLEGEDLY NEW ARGUMENTS ..............................................................................14

    1.  Argument Nos. 1, 2, 3, 5, 6, 7, And 9 Directly Respond To The Opposition's "No Control"/"NHTSA Touched It First" Arguments ................................................14

    2.  "Argument No. 4" Directly Responds To Toyota's Argument That Trooper Miller Said Plaintiffs Consented To The EDR Download ..........................................14

3.    **"Argument No. 8" Directly Responds To The Lane Declaration And Toyota's Argument That It Did Not Spoliate Any Evidence And That It Did Not Engage In Any Deceptive Practices** ..................................................15

4.    **"Argument No. 10" Directly Responds To Toyota's Argument And The Assertions In The Shibata And Nunan Declarations That It Is Impossible To Alter Or Destroy EDR Data Because It Is "Frozen"** ..................................15

IV.   **TOYOTA'S ALTERNATIVE REQUEST TO FILE A SUR-REPLY AND CONTINUE THE APRIL 9 HEARING SHOULD ALSO BE DENIED** ..................................................16

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Alvarez v. T-Mobile USA, Inc.*,
   2011 WL 6702424 (E.D. Cal. 2011)........................................................1

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)........................................................3

*Domingo ex rel. Domingo v. T.K.*,
   289 F.3d 600 (9th Cir. 2002) ........................................................3

*EEOC v. Creative Networks, LLC*,
   2008 WL 5225807 (D. Idaho 2008)........................................................1

*Elsayed Mukhtar v. Cal. State Univ., Hayward*,
   299 F.3d 1053 (9th Cir.2002) ........................................................3

*Johnson v. Northwest Airlines, Inc.*,
   2010 WL 5564629, (N.D. Cal. 2010) ........................................................1

*Kinjo v. Champion Shipping AS,*,
   2010 WL 3069343 n. 2 (E.D. Cal. 2010)........................................................1

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)........................................................3

*Leigh v. Salazar*,
   2011 WL 1399845*4, (D. Nev. 2011) ........................................................1

*Oster v. Lightbourne*,
   2012 WL 691833 n. 3 (N.D. Cal. 2012) ........................................................1

*Pestube Sys., Inc., v. Hometeam Pest Defense, LLC*,
   2007 WL 973964 (D. Ariz. 2007)........................................................1

*United States v. Taibi*,
   2012 WL 553143 (S.D. Cal. 2012) ........................................................1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Federal Rules**

Federal Rule of Evidence 702........................................................................3

PLAINTIFFS' RESPONSE TO TOYOTA'S OBJECTIONS TO REPLY ARGUMENTS AND DECLARATIONS AND REQUESTS
FOR LEAVE TO FILE A SUR-REPLY AND TO OF THE HEARING OF PLAINTIFFS' MOTION FOR SANCTIONS

# I.   THE LAW REGARDING "NEW" EVIDENCE AND "NEW" ARGUMENTS

Parties may make arguments and submit evidence in their reply which is being offered in direct response to arguments that have been raised for the first time in the opposition. *See Alvarez v. T-Mobile USA, Inc.*, 2011 WL 6702424, *1 (E.D. Cal. 2011); *see also Pestube Sys., Inc., v. Hometeam Pest Defense, LLC*, 2007 WL 973964, *5 (D. Ariz. 2007) ("Although these affidavits were not disclosed in Plaintiffs' opening Motion to the Court, it appears that the affidavits are not being offered as new evidence, but rather to controvert certain statements of fact by Defendant.").   "[A] moving party's evidence submitted in reply is properly considered when the evidence 'rebuts arguments first raised by the non-moving party in its opposition.'" *Alvarez*, 2011 WL 6702424, at *1 (quoting *EEOC v. Creative Networks, LLC*, 2008 WL 5225807, *2 (D. Idaho 2008).

Parties may submit new evidence in reply where the evidence directly responds to issues raised in the opposition papers.   *See*, *e.g.*, *Oster v. Lightbourne*, 2012 WL 691833, *10 n. 3 (N.D. Cal. 2012) ("The . . . declarations were submitted in support of Plaintiffs' reply brief.   Defendants objected to the submission of new evidence in connection with the reply, but both declarations respond to . . . issues that Defendants raised in their opposition."); *Johnson v. Northwest Airlines, Inc.*, 2010 WL 5564629, *5, (N.D. Cal. 2010) ("Although courts generally decline to hear arguments raised for the first time in a reply brief, [the opposing party] raised the [issue] in her opposition so [the movant] deserved an opportunity to reply."); *see also Leigh v. Salazar*, 2011 WL 1399845*4, (D. Nev. 2011)(denying motion to strike allegedly new arguments which were a direct response to defendants' arguments raised in their opposition).

Arguments or evidence which responds to discrete issues raised in the opposition is not "new" or improper.   *Kinjo v. Champion Shipping AS*, 2010 WL 3069343, *1 n. 2 (E.D. Cal. 2010) ("[T]he court finds the declarations respond to discrete issues raised by [the] opposition brief, and do not raise new facts or arguments.").   Courts may "properly consider this rebuttal evidence even though it was offered for the first time in Plaintiffs' reply brief." *United States v. Taibi*, 2012 WL 553143, *4 (S.D. Cal. 2012).   As set forth above, that is exactly what Plaintiffs have done here.   Thus, Toyota's objections should be overruled.

## II.   TOYOTA'S OBJECTIONS TO THE CARUSO, MAHON, MILLER AND CLARK DECLARATIONS SHOULD BE OVERRULED

Toyota objects and moves to strike the declaration of Chris Caruso, the supplemental declaration of Geoffrey L. Mahon, the declaration of Lonnie Clark, and the declaration of Trooper Jim Miller, urging that they are improper "new" evidence.   Toyota's objections should be overruled.

### 1.   The Caruso Declaration Was Submitted In Response To The Toyota Nunan And Shibata Declarations And Opposition Arguments

In its opposition, Toyota argued that it was impossible for any electronic data stored within the EDR to be altered or destroyed through the use of Toyota's EDR readout tool during the November 19, 2010 EDR download.   In support of this argument, Toyota submitted the declarations of Douglas Nunan and Motoki Shibata.   Mr. Nunan worked at Delphi with Mr. Caruso.   The Nunan declaration attacked the Mahon declaration.   The Caruso declaration directly responded to the statements, opinions and conclusions in the Nunan and Shibata declarations, including Toyota's arguments and their assertions that "[f]rozen data stored in the EDR cannot be changed by imaging the data from the EDR." Toyota Opp., at 6:9-10.   *See also* Shibata Decl., ¶¶ 8, 9, 15-16; Nunan Decl., ¶¶ 7-10, 17-18. Paragraph 2 of the Caruso declaration explained that it was being submitted in response to the Shibata and Nunan declarations (and the remainder goes on to do exactly that):

> I am submitting this declaration in response to the statements made in the declarations of Motoki Shibata and Douglas A. Nunan which were submitted by Toyota in its opposition to Plaintiffs' motion for sanctions. The primary points that I am responding to in this declaration are the assertions by Toyota (through Messrs. Shibata and Nunan) that: (1) Toyota could not have possibly altered or destroyed any data through the use of its Event Data Recorder ("EDR") Read Out Tool ("ROT") during the November 19, 2010 download and readout of the Van Alfen EDR; and (2) Toyota's inspection and downloading of the EDR while it was outside of the vehicle and outside of the presence of Plaintiffs' representatives was appropriate and consistent with established practices and procedures.   As set forth below, I disagree with both of these points.

Caruso Decl., ¶ 2.   *See also* Caruso Decl., ¶¶ 27-48 (addressing these points).

Toyota's motion to strike paragraphs 23 through 48 of the Caruso declaration is also misplaced.  Federal Rule of Evidence 702 governs the admission of expert testimony, a decision in which the Court has "broad latitude." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir.2002).  Under Rule 702, the party offering expert testimony must show it to be both *reliable* and *relevant*.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91 (1993).

Rule 702 permits expert testimony if "(1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. In addition, court must determine whether the expert testimony fits the facts of the case and will assist the trier of fact.  *Daubert*, 509 U.S. at 591-92. "In *Daubert*, the Supreme Court gave a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community." *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002).

Exhibit 1 and paragraphs 3 through 22 of the Caruso declaration set forth his background, knowledge, skill, experience, training, education, and identify some of the materials and information that he has reviewed as part of this litigation.  *See* Caruso Decl., ¶¶ 3-22.  Paragraph 21 specifically states that "[t]he statements and opinions in [his] declaration are made to a reasonable degree of scientific and engineering certainty and are based on [his] background, education, training, experience, as well as the information that [he] ha[s] learned in this case."  Caruso Decl., ¶ 21.  His declaration makes clear that he is qualified to testify regarding the subjects set forth in the remainder of his declaration.

Toyota attempts to chip away at particular paragraphs of the Caruso declaration on the grounds that his assertions and the subject matter that they relate to are not sufficiently reliable.  The Caruso declaration explains the factual basis and data that his testimony relies upon.  The declaration also explains the principles, methodology and basis for his testimony and how he has applied them to this case and in response to the Shibata and Nunan declarations.  Regarding that point, it is important to note that Mr. Caruso comes from the same background and former employer as Mr. Nunan and is offering testimony regarding the same subjects which are addressed in the Nunan and Shibata declarations.  Mr. Caruso and Mr. Nunan come from the same background and same methodologies.  Like Mr. Caruso, Messrs. Nunan and Shibata did not write the software for the EDR or the EDR readout tool.  As set forth below, Caruso has simply offered *different opinions on the same subjects* as Messrs. Nunan and Shibata:

| Summary of Nunan/Shibata's Opinions and Toyota's Arguments | Summary of Caruso's Opinions |
|---|---|
| Shibata is "familiar with" and "knowledgeable with regard to" the SRS airbag system in the *Van Alfen* vehicle and the EDR specifications.  Shibata Decl., ¶¶ 5, 6. | Mr. Shibata was apparently not involved in the design of Toyota's EDR.  Caruso Decl., ¶ 23 (citing Toyota documents).  This statement is based on Caruso's review of materials in this case. |
| The EDR evidence "devastates" Plaintiffs' case.  It is reliable and "makes crystal clear that the car did not accelerate . . . and the brakes were never pressed." Toyota Opp., at 1:5-8. "The EDR evidence completely disproves plaintiffs' sudden-acceleration allegations." Toyota Opp., at 2:13. | Toyota has told government agencies that its EDR is not accurate or reliable, and it appears that Mr. Shibata understands this and simply assumes how the EDR should work, but not how it actually functions.  Caruso Decl., ¶ 24 (citing Toyota documents). This statement is based on Caruso's review of materials in this case. |
| The EDR in the *Van Alfen* vehicle had an EDR which accurately records data upon deployment of the airbags. Shibata Decl., ¶¶ 7, 8. | The *Van Alfen* Camry had an 04EDR, and Mr. Shibata has acknowledged problems with the 04EDR.  Caruso Decl., ¶ 25. This statement is based on Caruso's review of materials in this case. |

4

| | |
|---|---|
| The EDR in the *Van Alfen* vehicle had a reliable EDR software and sensors. Shibata Decl., ¶¶ 7, 8. | Based on his analysis of the 2008 Toyota Camry vehicle systems, Toyota's software is substandard and not robust and there is no confidence that Toyota's EDR software or tool specifications match what is actually implemented. Caruso Decl., ¶ 26. This statement is based on Caruso's experience, background, knowledge and work in the industry and analysis in this case. |
| The data stored in the EDR is permanently "frozen" and cannot be deleted or altered during the imaging of the EDR. Shibata Decl., ¶¶ 8-9; Nunan Decl., ¶¶ 5-7.<br><br>"The spoliation accusation plaintiffs level against Toyota is utterly false [because]: (1) Pre-crash EDR data are frozen at the moment of airbag deployment; they cannot be altered or deleted. (2) Toyota's imaging (downloading) method is incapable of changing EDR data anyway." Toyota Opp., at 1:11-14.<br><br>"Plaintiffs wrongly assert: that Toyota's imaging destroyed or altered the EDR data, supposedly spoliating it. . . ." Toyota Opp., at 17-18. "Toyota's Inspection did Not Destroy or Alter EDR Data." Toyota Opp., at 5:12. "Toyota did not destroy or alter any data, and its actions did not interfere with plaintiffs' access to proof . . . Toyota's imaging of the EDR data did not change any data bearing on this crash. It is impossible to alter or delete EDR for an event that, as in this case, culminates in deployment of an airbag." Toyota Opp., at 12:12-15. | The EDR data is not frozen: "the data stored in the EDR can easily be lost or destroyed by the use of an EDR Read Out Tool. . . ." Caruso Decl., ¶ 27. This statement is based on Caruso's experience, background, knowledge and work in the industry and analysis in this case. |

5

| | |
|---|---|
| The data frozen in the EDR after airbag deployment cannot be changed or lost. Shibata Decl., ¶ 9; Nunan Decl., ¶¶ 6, 7, 17. *See also* Toyota Opp., at 7:26 ("[T]he EDR data, including service codes up to and at the moment of airbag deployment are frozen and cannot be altered."). Fault codes are permanently frozen and cannot be altered or lost. Shibata Decl., ¶ 14.<br><br>The person doing the EDR download "cannot – whether intentionally or accidentally – cannot change or delete the data recorded by the EDR." Toyota Opp., at 6:11-15 (citing Shibata Decl., ¶ 15; Nunan Decl., ¶ 7). "This is true whether the EDR is imaged while the SRS center sensor unit is removed from the vehicle or through the port in the vehicle." *Id*. (citing Shibata Decl., ¶ 9; Nunan Decl., ¶ 17).<br><br>There is no known software that is capable of altering EDR data. Shibata Decl., ¶ 15. *See also* Nunan Decl., ¶ 17. | Software programs and input signals exist that can change or overwrite EDR data during the download/readout process. Caruso Decl., ¶ 28. This statement is based on Caruso's experience, background, knowledge and work in the involving EDR analysis and analysis in this case. |
| Shibata is "familiar with" and "knowledgeable with regard to" the SRS airbag system in the *Van Alfen* vehicle and the EDR specifications. Shibata Decl., ¶¶ 5, 6.<br><br>Nunan "ha[s] become familiar" with the EDR in the Van Alfen vehicle. Nunan Decl., ¶ 5. | Shibata and Nunan, like Caruso, did not write the software or develop the EDR; thus, they are all at the mercy of the veracity of Toyota's claims regarding how they are supposed to work. Caruso Decl., ¶ 29. This statement is based on Caruso's review of materials in this case, as well as his experience, background, knowledge and work involving EDR analysis and work in this case. |

6

| | |
|---|---|
| Nunan is familiar with EDRs, including the EDR in the *Van Alfen* vehicle. Nunan Decl., ¶ 5.<br><br>There is no known software that is capable of altering EDR data. Shibata Decl., ¶ 15. *See also* Nunan Decl., ¶ 17. | Mr. Nunan knows from his work at Delco that software and tools exist that allow EDR data to be changed or cleared. Caruso Decl., ¶ 30. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| "The EDR data are consistent with other physical evidence." Toyota Opp., at 3:25. There is no indication of any failure in recording data from this crash. Nunan Decl., ¶¶ 8, 9. | There are anomalies in the *Van Alfen* EDR readout which indicate that the data has been corrupted, altered and is inaccurate. Caruso Decl., ¶ 31. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| There is no known software that is capable of altering EDR data. Shibata Decl., ¶ 15. *See also* Nunan Decl., ¶ 17. | Engineering tools exist that allow EDR data to be modified or overwritten without leaving a trace; such tools were used at Delco where Mr. Nunan used to work. Caruso Decl., ¶ 32. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| The data frozen in the EDR after airbag deployment cannot be changed or lost. Shibata Decl., ¶ 9; Nunan Decl., ¶¶ 6, 7, 17. *See also* Toyota Opp., at 7:26.<br><br>The person doing the EDR download "cannot – whether intentionally or accidentally – cannot change or delete the data recorded by the EDR." Toyota Opp., at 6:11-15 (citing Shibata Decl., ¶ 15; Nunan Decl., ¶ 7).<br><br>There is no known software that is capable of altering EDR data. Shibata Decl., ¶ 15. *See also* Nunan Decl., ¶ 17. | Toyota and NHTSA used passwords provided by Toyota on the prototype EDR readout tool. Caruso has personally been involved in other Toyota inspections where Toyota has input these "secret" EDR passwords which other manufacturers do not use and which are unnecessary if Toyota's EDR readout tool is "passive" as Toyota claims. Caruso Decl., ¶ 33. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |

7

| | |
|---|---|
| There is no way that the data shown on the report from the EDR readout could have been lost or changed. Nunan Decl., 9.<br><br>The person doing the EDR download "cannot – whether intentionally or accidentally – cannot change or delete the data recorded by the EDR." Toyota Opp., at 6:11-15 (citing Shibata Decl., ¶ 15; Nunan Decl., ¶ 7).<br><br>There is no known software that is capable of altering EDR data.  Shibata Decl., ¶ 15. *See also* Nunan Decl., ¶ 17. | It was technically feasible (and the opportunity existed) for spoliation, e.g., by NHTSA without even knowing it.  Caruso Decl., ¶ 34. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| The fact that Toyota and NHTSA's EDR readouts are the same is proof that there was no spoliation.  Nunan Decl., ¶¶ 10-11, 13. | The fact that Toyota and NHTSA's EDR readouts are the same is not proof that there was no spoliation.  Caruso Decl., ¶ 35. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| The data frozen in the EDR after airbag deployment cannot be changed or lost through the use of Toyota's EDR readout tool.  Shibata Decl., ¶ 9; Nunan Decl., ¶¶ 6, 7, 17. *See also* Toyota Opp., at 7:26. | Toyota used an out-dated prototype EDR readout tool on the Van Alfen vehicle that had known software bugs. Caruso Decl., ¶36. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| The data frozen in the EDR after airbag deployment cannot be changed or lost through the use of Toyota's EDR readout tool.  Shibata Decl., ¶ 9; Nunan Decl., ¶¶ 6, 7, 17. *See also* Toyota Opp., at 7:26. There is no known software that is capable of altering EDR data.  Shibata Decl., ¶ 15. *See also* Nunan Decl., ¶ 17. | Software bugs in the EDR readout tool that was used on the Van Alfen vehicle could change or lose data.  Caruso Decl., ¶ 37. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |

8

| | |
|---|---|
| The documents that state the use of Toyota's prototype EDR readout tool can result in the loss of data "have no bearing" on these issues. Toyota Opp., at 8:2-5. | Toyota has acknowledged that the use of its prototype EDR readout tool – the same one used on the Van Alfen vehicle – may alter data. Caruso Decl., ¶ 38 (citing documents). This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| EDR data cannot be changed "through the use of software or inputs from the Toyota Read Out Tool." Shibata Decl., ¶ 9.\n\nThere is no known software that is capable of altering EDR data. Shibata Decl., ¶ 15. *See also* Nunan Decl., ¶ 17. | It is also possible to change, corrupt, or lose data stored in the EDR with other electronic tools. Shibata carefully states that EDR data cannot be lost or changed through the use of Toyota's readout tool. Shibata makes no mention of Toyota's Techstream tool or other electronic tools – which were used on the Van Alfen vehicle by Toyota on November 19, 2010. Caruso Decl., ¶ 39. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| It does not matter that the EDR was downloaded while it was outside of the vehicle. Shibata Decl., ¶¶ 9, 15, 17. "Imaging the EDR data does not 'corrupt' or change data in the EDR." Shibata Decl., ¶ 16. | It is impossible to say that the use of Toyota's prototype readout tool and EDR download did not lose or change data. Rather, it is possible that EDR data could have been lost or destroyed and Plaintiffs have no way to know what has been destroyed or altered. Caruso Decl., ¶ 40. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |

9

| | |
|---|---|
| There was nothing wrong with downloading the EDR and applying power while the EDR was outside of the vehicle. Shibata Decl., ¶¶ 9, 15, 17. *See also* Nunan Decl., ¶¶ 16-18. | As Mr. Mahon, a recognized expert and distinguished engineer with substantial EDR experience, explained in his declaration, by downloading the EDR while it was outside of the vehicle, Toyota could have irretrievably corrupted the EDR data. Caruso Decl., ¶ 41. This statement is based on Caruso's experience, prior work with Mr. Mahon, background, knowledge and work involving EDR analysis and analysis in this case. |
| "Toyota did not violate any standard or practice by imaging the EDR while [it] was outside of the vehicle. . . ." Nunan Decl., ¶ 21. | There are industry standard procedures for downloading EDRs that were not followed here. Caruso Decl., ¶ 42; Exh. 2 to Caruso Decl. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| There was nothing wrong with downloading the EDR while it was outside of the vehicle. Shibata Decl., ¶ 9. *See also* Nunan Decl., ¶ 17. | EDR downloads outside of the vehicle are suspect and require strict compliance with specific steps and procedures – none of which were followed here. Caruso Decl., ¶ 43. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| Toyota did not do anything wrong in inspecting the vehicle or downloading the EDR on November 19, 2010. Toyota Opp., at 12:12-15. | Toyota should not have downloaded the EDR outside of the presence of Plaintiffs' experts or representatives. The Vehicle Inspection Protocol Order allows Plaintiffs to image the EDR first. Toyota's actions have deprived Plaintiffs of that in this case and prevent analysis of the vehicle and its EDR in its original, post-accident condition. Caruso Decl., ¶ 44. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis in this case. |

10

| | |
|---|---|
| Toyota "did not interfere with plaintiffs' access to proof. . . ." Toyota Opp., at 12:12-15. | Caruso would not have allowed Toyota or NHTSA to download the EDR in the manner that they did on November 19, 2010. Plaintiffs' experts would have insisted that the EDR be placed back in the vehicle and done the download directly from the DLC port to prevent the further risk of alteration of data/corruption associated with the power up outside the vehicle. Caruso Decl., ¶ 45. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| There was nothing wrong with downloading the EDR while it was outside of the vehicle – it could not change or lose the "frozen" data. Shibata Decl., ¶¶ 9, 15, 17. *See also* Nunan Decl., ¶¶ 16-18. | As explained by Mr. Mahon, downloading EDR data outside the vehicle environment may introduce additional data and faults, and can incorrectly overwrite the original faults that existed in the "frozen" data. Caruso Decl., ¶ 46. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
| "Toyota did not destroy or alter any data, and its actions did not interfere with plaintiffs' access to proof . . . Toyota's imaging of the EDR data did not change any data bearing on this crash." Toyota Opp., at 12:12-15. | Plaintiffs have been deprived of the opportunity to analyze the data in its original state. Caruso Decl., ¶ 47. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |

11

| There was nothing wrong with downloading the EDR while it was outside of the vehicle. Shibata Decl., ¶¶ 9, 15, 17. *See also* Nunan Decl., ¶¶ 16-18. | When the EDR was downloaded, power was applied to the EDR while it was outside of the vehicle – in doing so, Toyota violated industry standard procedures and protocols which were established to minimize the risk of corruption, deletion and alteration of data.   As a result of Toyota's actions, the EDR data in this case has been corrupted and Plaintiffs have been denied the opportunity to analyze and readout the EDR data in its original, untainted condition.  Caruso Decl., ¶ 48. This statement is based on Caruso's experience, background, knowledge and work involving EDR analysis and analysis in this case. |
|---|---|
| Toyota did not violate any industry standard by powering up or downloading the EDR while it was outside of the vehicle. Nunan Decl., ¶ 21. | |
| Toyota did not spoliate any evidence. Shibata Decl., ¶¶ 8-9; Nunan Decl., ¶¶ 5-7, 10, 11, 13, 17.   Toyota Opp., at 1:11-14,   3:17-18,   5:12,   12:12-15, 6:11:15. | |

The Caruso testimony is clearly relevant as it directly responds to the assertions by Toyota in the Shibata and Nunan declarations.  It is up to the Court to decide who is more credible.  Toyota's Daubert attack on Mr. Mahon is similarly misguided.  He has substantial experience and is a recognized expert regarding EDR issues.  *See* Caruso Decl., ¶ 41; *see also* Supp. Mahon Decl., ¶ 2; Exh. A to Mahon Decl.  He has designed EDR systems and was personally involved in the development and testing.  Mahon Supp. Decl., ¶ 5.  If the Court has any questions regarding the qualifications of Mr. Caruso or Mr. Mahon or the reliability of their opinions, Plaintiffs request an evidentiary hearing with live witness testimony from all parties' experts if it would assist the Court in ruling on this motion.

## 2.   The Supplemental Mahon Declaration Directly Responds To Toyota's Attack Of Him And His Opinions In Its Opposition

Toyota's opposition and the declarations of Messrs Nunan and Shibata attacked the declaration and opinions in the original Mahon declaration.  *See*, *e.g*., Nunan Decl., ¶¶ 17-21.  In his supplemental declaration, Mr. Mahon simply provided additional information regarding his background, qualifications, knowledge, and experience, and responded to Toyota's assertions that it was impossible for any data in the EDR to be lost or destroyed because it is "frozen."  *See* Supp. Mahon Decl., ¶¶ 3-9 (responding to this point).

12

**3.    The Clark Declaration Was Appropriately Submitted In Response To The Opposition Arguments And The Toyota Lane Declaration**

In its opposition, Toyota argued that it did nothing wrong and did not spoliate "any" evidence as part of the November 19, 2010 vehicle inspection or EDR download.  *See*, *e.g.*, Toyota Opp., at 12:12-12 ("Toyota did not destroy or alter any data, and its actions did not interfere with plaintiffs' access to proof."); *see also* Toyota Opp., at 14:25 ("Toyota did nothing wrong[.]").   Toyota also argued that it engaged in no deceptive practices of any kind.  *See* Toyota Opp., at 15:12-18:3.   As part of its opposition, Toyota submitted the declaration of Denver-based SMART team member Joe Lane who stated that he arrived at The Shop at "approximately 9:00 a.m." and "Mr. Perry began his inspection shortly after his arrival. . . ." Lane Decl., ¶¶ 7, 8.  Mr. Lane unequivocally stated in his declaration that:

"**After the other Toyota representatives arrived, they and I inspected the vehicle.  Our inspection was *non-destructive*.**"

Lane Decl., ¶ 9 (emphasis added).

After Plaintiffs' motion was filed, Plaintiffs' investigator spoke with Lonnie Clark, the owner of The Shop, who was present during the November 19, 2010 inspection and download.  Mr. Clark explained what he ultimately attested to in his February 28, 2012 declaration.   The date that the Clark declaration was signed is irrelevant: the substance of what is stated and what it responds to is what matters.  The Clark declaration was submitted in direct response to Toyota's arguments that: (1) it had no control nor any close enough relationship with NHTSA to advise them of the situation or tell them to stop; (2) no evidence was lost, destroyed or not preserved in its original condition as a result of Toyota's November 19, 2010 vehicle inspection and EDR download; and (3) Mr. Lane's assertion that his inspection of the vehicle was "non-destructive."  The Clark declaration refutes these points (and touches on Toyota's argument regarding deceptive practices) and was an appropriate response to Toyota's arguments and the declaration of Mr. Lane.

/ / /

/ / /

/ / /

13

4.      **The Declaration Of Trooper Miller Directly Responds To The Opposition Arguments And Minyon Declaration Regarding Consent**

After the motion was filed, Plaintiffs realized that Sergeant Nathan Croft had definitively testified regarding the consent issue, but Trooper Jim Miller had not done so in his deposition.  Accordingly, Plaintiffs' investigator called Trooper Miller who provided Plaintiffs with a declaration.   In its opposition, Toyota (recognizing that Sergeant Croft clearly testified in deposition that he never obtained any consent from the Plaintiffs to allow the vehicle's EDR to be downloaded) argued that Trooper Miller told someone that Plaintiffs have consented to the inspection.  *See* Toyota Opp., at 10:21-11:2; *see also* Minyon Decl., ¶ 5, 7 (***"Mr. Perry learned from Trooper Miller that the UHP had secured verbal consent from the vehicle owners to proceed with the inspection and download[.]"***) (emphasis added).   Putting aside the hearsay issue, the declaration of Trooper Miller squarely counters Toyota's argument that he told Mr. Perry or anyone else that the family consented to an inspection of the vehicle.

## III.     RESPONSE TO OBJECTIONS TO 10 ALLEGEDLY NEW ARGUMENTS

1.      **Argument Nos. 1, 2, 3, 5, 6, 7, And 9 Directly Respond To The Opposition's *"No Control"*/*"NHTSA Touched It First"* Arguments**

Toyota has also objected to ten (10) allegedly "new" arguments.  *See* Toyota Objs., at 7:4-8:13 (listing arguments Nos. 1 though 10).  However, at least seven (7) of these ten (10) arguments – specifically Toyota's Argument Nos. 1, 2, 3, 5, 6, 7, and 9 – were all made in direct response Toyota's assertions – raised for the first time in its opposition – that it had no control over NHTSA, the vehicle or the EDR-- i.e. "Toyota has no duty or ability to control NHTSA.  Toyota had no control over the vehicle or EDR." Toyota Opp., at 13:6-7.

In its opposition, Toyota claimed that it had no possession or control and tried to use NHTSA as its scapegoat.  Toyota submitted declarations from Barry Hare, Tony Minyon and Joe Lane in support of its "NHTSA did it first" argument.  Plaintiffs were entitled to reply to these arguments with arguments and evidence supporting their position.

/ / /

/ / /

14

_____
PLAINTIFFS' RESPONSE TO TOYOTA'S OBJECTIONS TO REPLY ARGUMENTS AND DECLARATIONS AND REQUESTS FOR LEAVE TO FILE A SUR-REPLY AND TO OF THE HEARING OF PLAINTIFFS' MOTION FOR SANCTIONS

2.   **"Argument No. 4" Directly Responds To Toyota's Argument That Trooper Miller Said Plaintiffs Consented To The EDR Download**

Identified by Toyota as Argument No. 4, Toyota objects to the reply argument that Trooper Miller never obtained the family's consent to have the EDR imaged and never told anyone that such permission had been given.  Toyota's Objs., at 7:13-14.  As set forth above, Toyota argued in its opposition (and stated in the Minyon declaration) that Trooper Miller said that Plaintiffs consented to the inspection and EDR download.  *See* Minyon Decl., ¶ 7 ("Mr. Perry learned from Trooper Miller that the UHP had secured verbal consent from the vehicle owners to proceed with the inspection and download[.]").  Plaintiffs' argument and the declaration from Trooper Miller directly refute Toyota's arguments and the Minyon declaration.

3.   **"Argument No. 8" Directly Responds To The Lane Declaration And Toyota's Argument That It Did Not Spoliate Any Evidence And That It Did Not Engage In Any Deceptive Practices**

Regarding Toyota's objection to "Argument No. 8," Toyota contends that it was improper for Plaintiffs to assert and submit evidence in their reply regarding Toyota's spoliation of *physical* evidence (i.e., altering the condition of the brakes on the right side of the vehicle and removal of a piece of plastic from the throttle body).  *See* Toyota's Objs., at 8:1-3.  However, in its opposition, Toyota argued that it did nothing wrong and did not spoliate *any* evidence in connection with the November 19, 2010 vehicle inspection and download.  *See, e.g.,* Toyota Opp., at 12:11, 23:7.  Toyota submitted the declaration of Joe Lane in support of this argument.  Mr. Lane unequivocally stated in his declaration that he inspected the vehicle and his inspection was **"non-destructive"** in all regards. Lane Decl., ¶ 9 (emphasis added). Plaintiffs were entitled to respond to the arguments in Toyota's opposition and Mr. Lane's claim.  This argument and the Clark declaration directly respond to Toyota's assertions and Mr. Lane's statement.  Plaintiffs were unaware of the spoliation of *physical* evidence until *after* the motion had already been filed.  Mr. Clark's declaration became relevant and was properly submitted in direct response to Toyota's arguments in its opposition and the declaration of Mr. Lane.

15

      **4.**    **"Argument No. 10" Directly Responds To Toyota's Argument And
The Assertions In The Shibata And Nunan Declarations That It Is
Impossible To Alter Or Destroy EDR Data Because It Is "Frozen"**

Finally, in connection with Toyota's "Argument No. 10," Toyota argues that
Plaintiffs should not have raised the argument or introduced evidence regarding the "secret
passwords" used as part of Toyota's EDR readout tool which could lose or change data.
*See* Toyota Objs., at 8:10-13.  However, for the first time in its opposition, Toyota argued –
and submitted declarations from Mr. Shibata and Nunan – that it was impossible for any
EDR data to be altered or destroyed because it is "frozen" and that "[t]he frozen data cannot
be changed. . . . The person using the tool cannot – whether intentionally or accidentally –
change or delete the data recorded by the EDR." Opp. 6:8-15.  *See also* Shibata Decl., ¶¶ 8,
9; Nunan Decl., ¶¶ 7-10.  Plaintiffs' reply and the declaration of Mr. Caruso directly
responded to these assertions and explained that spoliation can occur in many ways,
including through the use of secret passwords, software programs and input signals and
other engineering tools.

As set forth above, all of the evidence that Toyota objects is "new" and "improper"
has been submitted by Plaintiffs in direct response to the arguments and evidence which
Toyota has raised for the first time in its reply.  As shown below, Plaintiffs' submission of
these declarations and arguments in reply is appropriate under such circumstances.
Accordingly, Toyota's objections to these declarations and arguments should be overruled.

**IV.**    **TOYOTA'S ALTERNATIVE REQUEST TO FILE A SUR-REPLY AND
CONTINUE THE APRIL 9 HEARING SHOULD ALSO BE DENIED**

Toyota has also asked the Court for permission to file a sur-reply and to continue the
hearing of Plaintiffs' motion for sanctions.  Plaintiffs respectfully submit that both of
Toyota's requests should be denied.  Toyota's lengthy arguments in its "objections" are
tantamount to a sur-reply.  *See* Toyota's Objs., at 3:16-4:6. For example, Toyota "objects"
that:

/ / /

/ / /

16

1

2

3

4

5

"Toyota's opposition demonstrated in detail that (1) no EDR data concerning the accident could have been corrupted or destroyed, (2) the preservation order did not apply by its terms and would not have been violated even if it had applied, and (3) Toyota had no blanket policy requiring owner consent, it would not have the force of law had it existed, and Toyota had been told by NHTSA that plaintiffs consented."

6

Toyota Objs., at 3:16-23.

7

Based on the foregoing, Plaintiffs respectfully request that the motion remain set for

8

hearing on April 9, 2012 at 3:00 p.m.

9

10

Dated: April 2, 2012                    ROBINSON CALCAGNIE ROBINSON SHAPIRO
                                        DAVIS, INC.

11

12

                                        By:   */s/ Mark P. Robinson, Jr.*
                                              MARK P. ROBINSON, JR.
                                              *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28