Steve W. Berman (*pro hac vice*)
steve@hbsslaw.com
HAGENS BERMAN SOBOL
  SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 268-9320
Facsimile: (206) 623-0594

Mark P. Robinson, Jr., Bar No. 054426
mrobinson@rcrlaw.net
ROBINSON, CALCAGNIE &
  ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA 92660
Telephone: (949) 720-1288
Facsimile: (949) 720-1292

Marc M. Seltzer, Bar No. 054534
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3102
Facsimile: (310) 789-3006

Elizabeth J. Cabraser, Bar No. 083151
ecabraser@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Frank M. Pitre, Bar No. 100077
fpitre@cpmlegal.com
COTCHETT, PITRE &
  MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | No. 8:10ML2151 JVS (FMOx)<br><br>*Discovery Matter – Special Masters*<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEFING RE MOTION TO COMPEL PRODUCTION RE DATABASES<br><br>Discovery Cutoff: 01/15/2013<br>Pretrial Conference: 07/17/2013<br>Trial: 07/31/2013 |

Plaintiffs are seeking information from a limited number of databases that include thousands of reports and investigations of unintended acceleration. For instance, Toyota's CPS database contains warranty claims for vehicles which were involved in unintended acceleration events. Toyota's TQCN and TQ-NET databases contain hundreds of investigation reports (*e.g.*, Field Technical Reports) that document Toyota technicians' efforts to investigate defects, including defects in the parts listed in Exhibit C to Plaintiffs' proposed order that could cause or contribute to UA. Toyota's original searches of these databases did not capture a reasonable amount of these UA-related records. Toyota does not provide evidence to the contrary. Instead, Toyota criticizes Plaintiffs' proposed searches without making a counter proposal that would serve to capture more of the missed responsive records.

Toyota has failed to show that the additional limited searches proposed on its databases are not reasonably accessible because of undue burden or cost. *See* Fed. R. Civ. P. 26(b)(2)(B). Toyota next argues that Plaintiffs' searches based on Parts are out of proportion with their value in resolving issues in dispute. A central issue to be resolved is whether Toyota had or should have had knowledge that its cars became more vulnerable to UA after they switched to electronic throttle control. Toyota used these databases to track whether its vehicles were performing as designed in the field. The information in these databases relating to UA is critical to determining what Toyota should have known and when. An additional search based on a short list of parts, especially when Plaintiffs have shown that the original searches were insufficient, is not out of proportion with the value this information has to uncovering the facts in this case.

# I. PROPOSED SEARCHES ARE ALREADY A COMPROMISE

## A. Searches are imperfect.

Plaintiffs do not dispute that the task of identifying UA-related records in these databases is difficult. Toyota tries to lay the blame for this on Plaintiffs' broad definition of UA. Toyota, however, should have been tracking UA events and built ways to do so in these databases. Its failure to do so should not be projected on to Plaintiffs. Toyota is in a better position to identify which keywords and coding values would best capture information relating to the UA-related parts that Plaintiffs have identified. Toyota has access to the databases and could run tests and samples to determine whether the searches are sufficiently capturing the relevant information.[1] Plaintiffs, unlike Toyota, have been identifying strategies that might capture more relevant records. Even the searches proposed by Plaintiffs will likely not capture all the UA-related records in these data sources.

## B. Plaintiffs should not be forced to waive right to request additional data from these databases in the midst of discovery.

The number of records already produced in no way excuses Toyota from producing more relevant records. Toyota cites no authority that would preclude additional searches on these data sources. Instead, the Federal Rules would apply and if Plaintiffs served additional discovery requests that were overly burdensome because perhaps they duplicated work that had already been done with the searches proposed in this motion, then Toyota could raise that objection then. The discovery cutoff is not until January 15, 2013. Plaintiffs are in the middle of depositions of

---

[1] "The use of key words has been endorsed as a search method for reducing the need for human review of large volumes of ESI, to be followed by a cooperative and informed process which includes sampling and other quality assurance techniques." *Trusz v. UBS Realty Investors LLC*, 2010 U.S. Dist. LEXIS 92603, at *17 (D. Conn. Sept. 7, 2010) (internal quotations omitted).

- 2 -

Toyota witnesses. If one of those witnesses identifies a specific set of relevant information from these data sources that were not captured by the proposed searches, then Plaintiffs have a right to seek that discovery.

**C.     Plaintiffs have diligently pursued discovery.**

Plaintiffs requested this discovery in November 2010. Toyota said that it had produced responsive records. As discovery got underway, Plaintiffs realized that the original searches and productions missed responsive information. Plaintiffs initially raised this at a January 14, 2011 hearing and have since then steadily pursued these records through meet and confers and even a prior motion before the Special Masters to obtain a sample of 50 VINs from the CPS database. *See*, *e.g.*, Hasselman Decl. Exs. 3, 6, 8, 9, 10, and 12.

Plaintiffs met and conferred with Toyota attempting to convince Toyota to consider sampling in order to determine the scope of responsive information that might have been missed. These samples have shown that Toyota's CR original search was deficient by 40-50% percent and that the CPS original search did not capture any of the records in the 50 VIN sample provided by Plaintiffs despite those VINs being associated with vehicles that were the subject of UA reports.

Plaintiffs have spent the time and expenses to develop broader search strategies to capture a reasonable amount of the responsive information from these databases. Toyota, despite having greater access to those that use and search these databases, has not proposed any broader searches to retrieve this discovery.

- 3 -

## II. SEARCHES BASED ON UA-RELATED PARTS

### A. All records relating to the UA-related parts in Exhibit C should be produced.

In an attempt to receive a reasonable amount of the records associated with UA, Plaintiffs have provided a limited list of UA-related parts upon which to base a search. This list does not include all the parts that potentially cause or contribute to the increased incidence of UA in Toyotas. For instance, the parts list does not include the brake pedal assembly despite there likely being UA-related records that could only be found if you searched for those related to the brakes. As a compromise, Plaintiffs are offering to not pursue those records currently because they may contain too many false positive hits relating to non-UA-related brake defects.

Toyota has made no showing that searches based on any of the proposed parts would illicit an overly burdensome amount of false positives. "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Toyota has not shown undue burden or cost in running these additional searches from its databases. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 318-19 (S.D.N.Y. 2003) (describing the varying degrees of burden to obtain ESI from active data, nearline data, offline storage/archives, and back-up tapes). Active data hear is the easiest to search for and produce from.

### B. Toyota is in better position to translate the parts list into appropriate searches for each of its databases.

The searches of Toyota databases that contain warranty and vehicle investigation records based on a short list of parts will produce responsive records that have not yet been produced. Toyota does not offer any evidence that a parts-

- 4 -

010172-25 514023 V1

based search strategy would fail to capture UA-related records that were not captured in Toyota's original searches. Instead, Toyota argues that there would be a "host of problems" without part numbers but does not offer any alternative suggestions.

Toyota's CPS database contains a field that includes Part Descriptions. *See* Hasselman Decl. Ex. 25, Column AC "REPLACEMENTPART_DESC." Plaintiffs have limited their search to a short list of parts that are UA-related, but Toyota wants Plaintiffs in the midst of discovery to try to identify these parts by their various part numbers, which Toyota admits "could conceivably encompass 8,000-10,000 different parts numbers for each different part name on their list." Joint Stipulation, p. 36. If this is the case, then part numbers may not be a practical search strategy. Instead, Plaintiffs have proposed searching on the Part Description field for CPS and searching by various other fields in TQCN. Plaintiffs have asked Defendants to provide additional suggestions. Simply arguing that searching on parts is impossible in a vehicle manufacturers database is less than a good faith response to this discovery.

### III.   FOREIGN UA REPORTS ARE RELEVANT

UA-related information on vehicles outside of the U.S. is relevant and responsive to Plaintiffs' discovery requests. UA reports from other countries put Toyota on notice of potential quality and safety issues that could occur in the U.S. The dismissal of the foreign plaintiffs from this litigation in no way makes this discovery any less relevant.

### IV.   CONCLUSION

Plaintiffs respectfully ask the Special Masters to order Toyota to supplement its database productions pursuant to Plaintiffs' proposed order filed with the Joint Stipulation.

- 5 -

010172-25 514023 V1

1  Dated:  April 13, 2012.

Respectfully submitted,

By: */s/ Steve W. Berman*
      Steve W. Berman
Lisa M. Hasselman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email:  steve@hbsslaw.com
       lisa@hbsslaw.com

*Co-Lead Counsel for Economic Loss Plaintiffs*

By: */s/ Mark P. Robinson*
      Mark P. Robinson
ROBINSON, CALCAGNIE & ROBINSON
620 Newport Center Drive, 7th Floor
Newport Beach, CA  92660
Telephone:  (949) 720-1288
Facsimile:  (949) 720-1292
Email:  mrobinson@rcrlaw.net

*Co-Lead Plaintiffs' Counsel for Personal Injury/Wrongful Death Cases*

- 6 -

010172-25  514023 V1

## PROOF OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on April 13, 2012.

       /s/ Steve W. Berman
       Steve W. Berman

- 7 -

010172-25  514023 V1