CARI K. DAWSON (GA SBN 213490)
LISA GILFORD (CA SBN 171641)
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: cari.dawson@alston.com
Email: lisa.gilford@alston.com

DOUGLAS R. YOUNG
(CA SBN 73248)
C. BRANDON WISOFF
(CA SBN 121930)
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email: dyoung@fbm.com
Email: bwisoff@fbm.com

THOMAS J. NOLAN (CA SBN 66992)
STEPHEN C. ROBINSON
(NY SBN 2150647)
**SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP**
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: thomas.nolan@skadden.com
Email: stephen.robinson@skadden.com

*Co-Lead Defense Counsel for
Economic Loss Cases*

VINCENT GALVIN, JR.
(CA SBN 104448)
JOEL SMITH (SC SBN 5266)
**BOWMAN AND BROOKE**
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845
Email:
  vincent.galvinjr@bowmanandbrooke.com
Email: joel.smith@bowmanandbrooke.com

*Lead Defense Counsel for Personal
Injury/Wrongful Death Cases*

THEODORE J. BOUTROUS JR.
(CA SBN 132099)
THEANE EVANGELIS KAPUR
(CA SBN 243570)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
Email: Tboutrous@gibsondunn.com
Email: Tkapur@gibsondunn.com

*Defense Appellate Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL CASES | Case No.: 8:10ML2151 JVS (FMOx)<br><br>**TOYOTA DEFENDANTS' OBJECTION TO SPECIAL MASTERS' JUNE 12, 2012 RULING REGARDING PLAINTIFFS' MOTION FOR ORDER TO MODIFY DOCUMENT SUBPOENA ISSUED BY TOYOTA TO SEAN KANE AND RELEATED ENTITIES**<br><br>Judge:    James V. Selna |

## TABLE OF CONTENTS

**Page**

I. Introduction ..................................................................................................... 1

II. Argument ......................................................................................................... 5

    A. Kane Is Required To Respond To All 84 Document Requests And Produce A Privilege Log. ........................................................................ 5

    B. This Court Should Clarify That Certain Categories Of Documents Are Not Protected Work Product. ........................................................... 6

    C. Kane Should Not Be Provided The Same Work-Product Protections Provided To Exponent. ........................................................ 9

III. Conclusion ..................................................................................................... 10

i

TOYOTA DEFS.' OBJ. TO SPECIAL MASTERS' JUNE 12, 2012 RULING RE PLAINTIFFS' MOTION FOR ODR. TO MODIFY DOC. SUBPOENA ISSUED BY TOYOTA TO SEAN KANE AND RELEATED ENTITIES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bittaker v. Woodford,*
  331 F.3d 715 (9th Cir. 2003) .................................................................... 8

*Great Am. Assurance Co. v. Liberty Surplus Ins. Corp.,*
  669 F. Supp. 2d 1084 (N.D. Cal. 2009) .................................................... 8

*Griffith v. Davis,*
  161 F.R.D. 687 (C.D. Cal. 1995) .............................................................. 8

*In re Grand Jury Subpoena (Mark Torf/TorfEnvtl. Mgmt.),*
  357 F.3d 900 (9th Cir. 2004) ............................................................. 9, 10

*Matter of Yagman,*
  796 F.2d 1165 (9th Cir. 1996) .................................................................. 3

*Ramsey v. NYP Holdings, Inc.,*
  2002 WL 1402055 (S.D.N.Y. Jun. 27, 2002) ........................................... 8

*SEC v. Roberts,*
  254 F.R.D. 371 (N.D. Cal. 2008) .............................................................. 9

*United States v. Reyes,*
  239 F.R.D. 591 (N.D. Cal. 2006) .............................................................. 8

*WW Leasing Unlimited v. Torok Exploration, Inc.,*
  575 F.2d 1259 (9th Cir. 1978) .................................................................. 2

**Statutes**

Cal. Civ. Code § 47(d)(2)(A) ............................................................................ 2

**Rules**

Cal. R. Prof. Conduct 5-120(A) .................................................................. 2, 3

Fed. R. Civ. P. 26(b)(4)(D) ..................................................................... 4, 5, 6

Fed. R. Civ. P. 45(c)(2)(A) .......................................................................... 5, 6

Fed. R. Civ. P. 53(f) ........................................................................................ 5

In accordance with section IV(C) of the Court's Order No. 6: Appointing Special Masters (Pursuant to Stipulation) [Dkt. 278] and Fed. R. Civ. P. 53(f)(2), the Toyota Defendants hereby object to the Special Masters' ruling [Dkt. 2692-1] granting Plaintiffs' Motion for Order to Modify Document Subpoena Issued by Toyota to Sean Kane and Related Entities ("Plaintiffs' Motion") [Dkt. 2423].[1] Defendants respectfully request that the Court conduct a *de novo* review of the legal, factual and procedural issues presented to the Special Masters and enter an order granting Defendants relief in line with that requested in their response to the Motion at issue.

## I. Introduction

These putative consolidated class actions seek to recover alleged economic losses purportedly incurred as a result of an unidentified defect in Toyota vehicles that purportedly causes alleged sudden unintended acceleration ("SUA"). Because the putative class includes tens of millions of Toyota owners who have never experienced an alleged SUA incident and have neither sold, nor attempted to sell, their vehicles, Plaintiffs' economic loss allegations depend on a supposed decline in the "market value" of their vehicles since the public first became aware of SUA concerns. Thus, under Plaintiffs' theory of the case—which permeates their entire Complaint—their alleged "market effect" damages are exacerbated every time the negative publicity surrounding alleged SUA events is perpetuated. *See, e.g.*, TAMCC ¶¶ 609 (Alaska plaintiffs), 787 (Connecticut), 1453 (Maine), 1899 (Nevada), 2122 (New York) ("The value of their Toyota's has diminished now that the safety issues have come to light . . . ."); *id.* ¶ 59 ("[T]hat changed in mid-2009, when the propensity of Toyota vehicles to suddenly and uncontrollably accelerate . . . became known publicly."); *id.* ¶ 409 ("As more models and quality problems surface consumers are more likely to

---

[1] Section IV(f) of Order No. 6 requires the objecting party to provide a transcript of the proceedings before the Special Masters "if a court reporter was present." As set forth in the attached Declaration of Joel Smith in Support of Toyota Defendants' Objections to Special Masters' June 12, 2012 Ruling ("Smith Decl."), no court reporter was present for the relevant proceedings that took place on June 7, 2012.

incorporate this information on the Toyota brand as a whole thereby reducing consumer confidence in the brand.").

Further, Plaintiffs seek to impose liability on Toyota because the purported existence and number of alleged SUA reports after the recalls supposedly shows that the recalls did not fix the alleged problem, and that Toyota allegedly knew the alleged problem was not resolved. Indeed, the Complaint is replete with allegations of "[r]eports of SUA events occurring after . . . the recalls." TAMCC ¶ 316; *see also, e.g., id.* ¶¶ 311-17, 365-66 ("Toyota has received credible reports of SUA events on vehicles that were subject of both recalls . . . . Toyota has not disclosed that for the period after the recalls through January 2011 over 300 complaints of SUA have been filed with NHTSA. In many cases the vehicle had been 'repaired.'").[2]

Thus, to the extent Plaintiffs can stir up additional alleged SUA "reports" and publicize those reports, such publicity has the potential to significantly enhance Plaintiffs' theory of liability and damages. Of course, Plaintiffs' attorneys could not, consistent with their ethical and professional obligations, fabricate negative publicity about Toyota because—in light of Plaintiffs' theory of damages—such activities would "have a substantial likelihood of materially prejudicing" the proceedings by enhancing their damages calculation. Cal. R. Prof. Conduct 5-120(A); *see also* Cal. Civ. Code § 47(d)(2)(A). Nor could Plaintiffs invent and publicize "[r]eports of SUA events occurring after . . . the recalls" in order to bolster their theory of liability, by showing that the Toyota vehicles allegedly have not been repaired.[3]

---

[2] These allegations are not limited to the economic-loss Plaintiffs' Complaint. The personal injury plaintiffs similarly rely on alleged post-recall SUA reports to argue that the recall fix was ineffective and that Toyota knew it, and to request punitive damages. *See, e.g., Van Alfen* Complaint ¶ 5 ("[E]ven among vehicles that were recalled and repaired, drivers continue to report experiences of UA.); *id.* ¶ 192 ("[T]he post-recall incidents greatly undermine Toyota's public position . . . .").

[3] Nor can Plaintiffs obtain damages that they or their agents caused. A plaintiff has a duty to *mitigate* damages. *See WW Leasing Unlimited v. Torok Exploration, Inc.*, 575 F.2d 1259, 1261 (9th Cir. 1978) ("Settled legal principles require a wronged party to mitigate damages to the degree possible."). Thus, to the extent Plaintiffs allege that the publicity of alleged SUA events has damaged them, Toyota is entitled to show that Plaintiffs' agents are causing the very damages for which they seek to recover. *See*

Nonetheless, it appears that Plaintiffs' attorneys seek to accomplish these same ends by engaging litigation consultant Sean Kane and his consumer advocacy and research groups, Vehicle Safety Information Resource Center ("VSIRC") and Safety Research Strategies ("SRS").[4] Since being retained by Plaintiffs' counsel in June 2010, and even before that time while engaged in consulting work for other plaintiffs' attorneys suing Toyota, Kane and his advocacy firms have engaged in an extensive publicity campaign in which they have prepared and publicized so-called "reports" about the purported dangers of an electronics defect causing alleged SUA in Toyota vehicles. And, while in Plaintiffs' attorneys' employ, Kane has been instrumental in publicizing his version of SUA field events allegedly experienced by Toyota vehicle owners. Toyota has the right to conduct discovery of this activity as it relates to Toyota's affirmative defenses that there is no electronics defect in the vehicles comprising Plaintiffs' purported class, *see, e.g.*, [Dkt. 1573] at 96 ("Forty-Second Defense: Compliance with Warranty"); *id.* at 98 ("Fifty-Second Defense: Vehicle Safe and Substantially Free of Defects"), and as it bears on Plaintiffs' own failure to mitigate their claimed damages, *id.* at 95 ("Thirty-Ninth Defense: Mitigation of Damages"); this discovery also relates to the Other Incidents designated by Plaintiffs in the economic loss cases and in the *Van Alfen* bellwether case.

Indeed, even a quick perusal of Kane's website, www.safetyresearch.net, reveals the remarkable similarities between Kane's public advocacy campaign and Plaintiffs' litigation strategies. *See, e.g.*, "Nine Recalls, Ten Investigations and Toyota Unintended Acceleration Continues," Jan. 23, 2012, *available at* http://www.safetyresearch.net/2012/01/23/nine-recalls-ten-investigations-and-toyota-

---

*Matter of Yagman*, 796 F.2d 1165, 1185 (9th Cir. 1996) ("In assessing the damage done, the court should consider the extent to which it is self-inflicted . . . .").

[4] Plaintiffs' counsel cannot, consistent with their ethical and professional obligations, seek to accomplish through an agent what they cannot accomplish themselves. *See* Cal. R. Prof. Conduct 5-120, "Discussion" notes (stating that "[p]aragraph (A) is intended to apply to statements made by *or on behalf of*" an attorney (emphasis added)).

unintended-acceleration-continues/ and "Toyota Replicated Incidents," Feb. 8, 2011, *available at* http://www.safetyresearch.net/2011/02/08/toyota-replicated-incidents/ (describing and displaying "internal Toyota documents referenced in the Amended Master Economic Loss Consolidated Complaint filed October 27, 2010").

For that reason and others, Toyota issued Rule 45 document subpoenas to Kane and his advocacy firms seeking materials pertaining to the SUA-related publicity Kane has generated before and during his role as Plaintiffs' litigation consultant. Specifically, Toyota seeks to determine whether Kane's activities have contributed to Plaintiffs' claimed damages by enhancing the negative publicity regarding Toyota vehicles and to what extent this was done through inaccurate or incomplete accounts of claimed SUA field events. In response, Plaintiffs brought a motion categorically declaring that "[a]ll documents and tangible things responsive to [46 of the 84 subpoena] requests are privileged under Rule 26(b)(4)(D)." [Dkt. 2424] at 3-4. At Plaintiffs' request, the Special Masters incorrectly ruled "to exclude or limit all requests seeking documents protected from discovery by Fed. R. Civ. P. 26(b)(4)(D), as more particularly set forth in Plaintiffs' Memorandum of Points and Authorities." [Dkt. 2692-1] at 4. But the work-product privilege is not broad enough to protect *all* the documents at issue in those 46 requests. As this Court has recognized, "materials outside the scope of the consultant relationship are not protected from discovery." These materials include those materials that pre-date the consultant relationship. Also, as noted by the Court, "materials disclosed to or provided to third parties are likewise not protected from discovery." [Dkt. 2173] at 5.

Toyota recognizes that *some* of the documents encompassed within its requests may be protected work product. To the extent Kane wishes to assert work-product protection over any particular documents, however, he should be required to produce a privilege log. Fed. R. Civ. P. 45(c)(2)(A). Further, Toyota respectfully asks this Court to clarify that the following categories of documents are *not* protected by the work-product doctrine: (1) communications between Kane (or his related entities) and

any attorneys before Kane was retained to serve as a consultant in this litigation; (2) communications between Kane (or his related entities) and Plaintiffs' attorneys pertaining to Kane's public commentary and/or publicized "reports" about Toyota, including related communications with Toyota's customers about claimed SUA field events; and (3) communications with, documents disclosed to, and documents whose contents or subject matter have been discussed with the public. Thus, for the reasons set forth in its response to Plaintiffs' Motion [Dkt. 2516], and for the additional reasons set forth below, Toyota respectfully requests that the Court deny Plaintiffs' Motion and that it require Kane (and his related entities) to respond to all document requests set forth in the subpoenas, subject to the assertion of work product or other privilege on a document-by-document basis in the form of a privilege log.

## II. Argument

### A. Kane Is Required To Respond To All 84 Document Requests And Produce A Privilege Log.

Although Plaintiffs argued in their motion that "[a]ll documents and tangible things responsive to [46 of the 84 subpoena] requests are privileged under Rule 26(b)(4)(D)," [Dkt. 2424] at 3-4, this Court, on *de novo* review, *see* Fed. R. Civ. P. 53(f), should not construe the Special Masters' ruling to provide such sweeping protection. In fact, in their reply brief before the Special Masters, Plaintiffs explicitly disclaimed any such reading of their motion, explaining that the 46 requests they itemized were merely examples of requests that, in their view, would likely require the production of protected materials: "TMS misconstrues the plaintiffs' motion . . . . [P]laintiffs seek an Order modifying the Kane Subpoenas to exclude or limit *all* requests *to the extent they seek [work product]*." [Dkt. 2550] at 1 (emphasis added).

Further, Plaintiffs' reply brief explained that the relief they are seeking is exactly "the [same] relief previously ordered by the Court regarding the Pecht Subpoena." *Id.* (citing [Dkt. 2173]). In the Pecht Order, this Court declined to strike any requests in their entirety on work-product grounds, instead "modif[ying] *all*

requests to exclude documents protected from discovery by Fed. R. Civ. P. 26(b)(4)(D)." [Dkt. 2173] at 5. This Court further clarified that "materials outside the scope of the consultant relationship," including "materials that pre-date the consultant relationship" and "materials disclosed to or provided to third parties" are "not protected from discovery." *Id.* Plaintiffs say "the Kane Subpoenas should *likewise* be modified." [Dkt. 2550] at 2 (emphasis added); *see also id.* ("In considering substantially similar requests contained in the Pecht Subpoena, the Court held that they 'could easily encompass materials related to meetings with Plaintiffs' counsel' and modified them, like all other requests in that subpoena, to exclude any documents, communications, or other material protected from discovery by Fed. R. Civ. P. 26(b)(4)(D).").

With respect to the Kane subpoenas, there is no need for an order akin to the Pecht order because Toyota has already "agree[d] that the Kane Subpoenas are . . . subject to the provisions of Fed. R. Civ. P. 26(b)(4)(D)." [Dkt. 2516] at 1.] Thus, this Court should reverse the Special Masters' ruling and deny Plaintiffs' motion. At a minimum, Toyota respectfully asks this Court to clarify that Kane and his related entities are required to respond to all 84 document requests set forth in the subpoenas and, to the extent they seek to assert work-product protection over any particular documents, produce a privilege log. Fed. R. Civ. P. 45(c)(2)(A).

### B. This Court Should Clarify That Certain Categories Of Documents Are Not Protected Work Product.

Toyota also respectfully asks this Court to hold that three particular categories of Kane's documents are not protected work product: (1) communications between Kane (or his related entities) and any attorneys before Kane was retained to serve as a consultant in this litigation; (2) communications between Kane (or his related entities) and Plaintiffs' attorneys pertaining to Kane's public commentary and/or publicized "reports" about Toyota (including related communications with Toyota's customers); and (3) communications with, documents disclosed to, and documents whose contents

1  or subject matter have been discussed with the public.

2  First, Plaintiffs say that "Mr. Kane has been a consulting expert for certain plaintiffs in this litigation from June 9, 2010 through the present." [Dkt. 2424] at 1. Thus, any communications that took place <u>before</u> June 9, 2010, plainly are not protected work product, as this Court already explained in the Pecht Order. *See* [Dkt. 2173] at 5 ("materials that pre-date the consultant relationship" are "not protected from discovery").

Second, the work-product doctrine cannot be used to shield collaboration between Plaintiffs and Kane (and his related entities) in generating negative publicity about Toyota. Kane has repeatedly asserted that the reports and publications he and his related entities generate are "journalistic endeavors" that "are an entirely separate enterprise" from his consulting tasks, "bear[ing] no relation to the work that [he] perform[s] as an expert consultant." [Dkt. 2685] at ¶¶ 3-4; *see also* [Dkt. 2684] at 5 ("Mr. Kane, in connection with his various business entities, performs two separate and distinct tasks."); *id.* at 6 ("[T]here is no circumstance where Mr. Kane alleges that **both** [the journalist and work-product] privileges apply to **one** piece of information."). Toyota disputes that *any* of Kane's Toyota-related work constitutes protected "journalism."[5] Nevertheless, having argued that the journalist privilege—and *not* the work-product doctrine—protects his reports and public commentary about Toyota, Kane should not be entitled to assert work-product protection over communications with Plaintiffs' attorneys relating to those publications, which Kane admits had nothing to do with his consulting for them. Toyota has a right to conduct discovery related to public statements designed to create concern about the safety of its vehicles, especially where (as here) the negative publicity contributes to Plaintiffs' damages.

Third, to the extent the work-product doctrine ever protected Kane's

---

[5] *See* Toyota's Objection to the Special Masters' Ruling Regarding Kane's Motion, filed concurrently herewith, for a discussion of Kane's faulty assertion of the journalist privilege.

documents, Kane and his related entities waived that protection when they disclosed those documents or their contents to the public. It is black-letter law that waiver of work product "occurs when a party . . . shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); *Great Am. Assurance Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1092 (N.D. Cal. 2009) (same).[6] This Court has already so held. *See* [Dkt. 2173] at 5 ("materials disclosed to or provided to third parties" are "not protected from discovery"). Thus, any communications between Kane and the public (presentations and publications, for example), and any documents that Kane disclosed to the public, are unprotected even if they once constituted work product. In addition, this Court should hold that Kane and his related entities have waived any documents by discussing their *contents* or *subject matter* with the public. *See United States v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006) ("[T]he Court finds that [counsel] gave up their work-product privilege when they shared the *substance* of their work product with [their adversary]." (emphasis added)); *id.* at 604 ("It makes no difference whether a privilege-holder copies a written text, reads from a written text, or described a written text to an outside party. The purpose and effect is the same in all cases; the transmission of privileged information is what matters, not the medium through which it is conveyed."); *SEC v. Roberts*, 254 F.R.D. 371, 377 (N.D. Cal. 2008) (finding waiver of work-product privilege "to the extent that [counsel] orally disclosed . . . factual information contained in any of the written material").

---

[6] Although the Ninth Circuit quotation refers to waiver of documents protected by attorney-client privilege, that court clarified later in the same opinion that "it applies equally to the work product privilege." *Bittaker*, 331 F.3d at 722 n.6. *See also Griffith v. Davis*, 161 F.R.D. 687, 699 (C.D. Cal. 1995) ("[W]ork product protection is forfeited by disclosure in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material." (internal quotation marks omitted)); *Ramsey v. NYP Holdings, Inc.*, 2002 WL 1402055, at *11 (S.D.N.Y. Jun. 27, 2002) ("[D]isclosure to the public—whether in the form of books, articles, media interviews, press conferences, press releases or similar public pronouncements—is tantamount to disclosure to the [party's adversary].").

### C. Kane Should Not Be Provided The Same Work-Product Protections Provided To Exponent.

The Special Masters correctly held that documents of Toyota's consulting expert, Exponent, are protected by the work-product doctrine. By Kane's own admission, however, the reasons for protecting Exponent's work product do not apply to Kane's materials.

In moving to compel Exponent to produce its work product, Plaintiffs contended that the work-product doctrine did not apply because Exponent had two different purposes in investigating possible causes of claims of unintended acceleration: consulting for litigation, and understanding the possible causes of these claims for business purposes such as quality assurance. *See* [Dkt. 2334-2] at 3-9; [Dkt. 2549] at 5-11; [Dkt. 2650] at 3-7. Plaintiffs asserted that "if Exponent was acting in a dual capacity with respect to that work, working both as a provider of services to serve Toyota's business interests and as a litigation expert, only work done because of anticipated litigation can be protected from disclosure." [Dkt. 2334-2] at 9. Further, Plaintiffs argued that most of Exponent's work was, in fact, for business purposes. *Id.*

The Special Masters rejected Plaintiffs' argument because the litigation and non-litigation purposes of Exponent's work were inseparable. Under the dual-purpose doctrine, when an expert's "litigation purpose so permeate[s] any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole," the entirety of that expert's work is protected as work product. *In re Grand Jury Subpoena (Mark Torf/TorfEnvtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) ("*Torf*"). Exponent was investigating the potential causes of unintended acceleration both for litigation and for an investigation to be disclosed to Congress and the public. *See* [Dkt. 2514] at 10-14; [Dkt. 2653] at 4-8; [Dkt. 2515] at 6-8; [Dkt. 2649] at 2-5. The Special Masters therefore found that the dual-purpose doctrine applied. *See* [Dkt. 2692-1] at 3 (citing *Torf*, 357 F.3d at 907).

Kane, in contrast, argued before the Special Masters that his journalism work is "entirely separate" and "discrete" from his consulting-expert work. *See supra* p. 7. And Kane has already conceded that the work product doctrine does *not* apply to his supposed "journalistic endeavors." *Id.* Thus, the dual-purpose doctrine that protected Exponent's work product is inapplicable to Kane.

In addition, the scope of Kane's waiver of any work product protection is far broader than Exponent's. Plaintiffs claimed that Exponent waived its work product protection by disclosing information to Congress. See [Dkt. 2334-2] at 14; [Dkt. 2549] at 2, 11-15; [Dkt. 2650] at 2, 8-9. Under Federal Rule of Evidence 502(a), disclosure to Congress waives work product *only* as to information and documents *actually* disclosed (absent an exception the Special Masters found inapplicable). Thus, the Special Masters held that "Toyota's production and testimony to Congress did not waive [Exponent's] work-product protections, except to the materials *actually disclosed* to Congress." [Dkt. 2692-1] at 3. Kane's disclosures, in contrast, were made to the public, not to the federal government, making Rule 502(a)'s limitations inapplicable. Hence, Kane's waiver, unlike Exponent's, is not limited to matters actually disclosed, but extends to documents whose contents or subject matter have been discussed with the public. *See supra* p. 8.

### III. Conclusion

Defendants respectfully request that the Court reverse the Special Masters' ruling on Plaintiffs' Motion for Order to Modify Document Subpoena Issued by Toyota to Sean Kane and Related Entities, and order Kane and his related entities to respond to all 84 document requests and produce a privilege log.

Dated: June 25, 2012

By: /s/
 JOEL SMITH

CARI K. DAWSON
LISA GILFORD
**ALSTON + BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: cari.dawson@alston.com
Email: lisa.gilford@alston.com

DOUGLAS R. YOUNG
C. BRANDON WISOFF
**FARELLA BRAUN + MARTEL LLP**
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email: dyoung@fbm.com
Email: bwisoff@fbm.com

THOMAS J. NOLAN
STEPHEN C. ROBINSON
**SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP**
300 South Grand Avenue
Los Angeles, CA 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600
Email: thomas.nolan@skadden.com
Email: stephen.robinson@skadden.com

*Co-Lead Defense Counsel for Economic Loss Cases*

VINCENT GALVIN, JR.
JOEL SMITH
**BOWMAN AND BROOKE**
1741 Technology Drive, Suite 200
San Jose, CA 95110
Telephone: (408) 279-5393
Facsimile: (408) 279-5845
Email:
   vincent.galvinjr@bowmanandbrooke.com
Email: joel.smith@bowmanandbrooke.com

*Lead Defense Counsel for Personal Injury/Wrongful Death Cases*

THEODORE J. BOUTROUS JR.
THEANE EVANGELIS KAPUR
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  (213) 229-7000
Facsimile:   (213) 229-7520
Email:       Tboutrous@gibsondunn.com
Email:  Tkapur@gibsondunn.com

*Defense Appellate Counsel*