UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TOYOTA MOTOR CORP. UNINTENDED ACCELERATION MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ECONOMIC LOSS CASES. | No. 8:10ML2151 JVS (FMOx)<br><br>**ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

To more fully articulate the bases for its ruling, the Court issues this Order in addition to the concurrently filed Order Granting Preliminary Approval of Class Settlement, Provisionally Certifying Settlement Class, Directing Notice to the Class and Scheduling Fairness Hearing.[1]

Named Plaintiffs identified in the Third Amended Economic Loss Cases Master Consolidated Complaint, on behalf of themselves and others similarly situated (collectively, "Plaintiffs") apply by Ex Parte Application ("Application") for preliminary approval of a proposed class action settlement. (Docket No 3342.) Plaintiffs represent that their Application is unopposed.  For the following reasons, Plaintiffs' Application is granted, and the Court hereby provisionally certifies a national settlement class and grants preliminary approval of the proposed settlement.

I.    Background

This action arises out of Plaintiffs' purchase or lease of vehicles designed, manufactured, distributed, marketed and sold by Defendants Toyota Motor Corporation dba Toyota Motor North America, Inc. ("TMC"), and its subsidiary, Toyota Motor Sales, U.S.A., Inc. ("TMS") (collectively, "Toyota" or "Defendants").  At issue are various makes and models of Toyota, Lexus, and Scion vehicles ("Subject Vehicles") equipped with an Electronic Throttle Control System ("ETCS").  (Ex. 10.)[2]  Plaintiffs allege, and Defendants deny, that a defect

_____

[1]  The concurrently filed Order is the Plaintiffs' Proposed Order (Docket No. 3342-1 at 151-165), with the Court's minor edits.

or defects in the Subject Vehicles make them susceptible to incidents of sudden, unintended acceleration ("SUA"). A putative class of Plaintiffs seeks damages for diminution in the market value of their vehicles in light of alleged defects in those vehicles.

After extensive fact and expert discovery and substantial motions practice by the parties, the parties seek approval of a proposed Settlement Agreement on behalf of the class. On an expedited basis, the parties seek (and the Court herein grants) preliminary approval of the proposed settlement.

II.    <u>Class Certification for Purposes of Settlement</u>

Subject to exclusion of certain persons affiliated with or employed by Toyota, the parties' counsel, and the Court,[3] the parties request that the Court provisionally certify the following Settlement Class:

> [A]ll persons, entities or organizations who, at any time
> as of or before the entry of the Preliminary Approval
> Order, own or owned, purchase(d), lease(d) and/or

---

[2] All citations to exhibits refer to exhibits attached to the present Application. The Settlement Agreement is an unenumerated Exhibit to the present Application, and it is therefore referred to as the "Settlement Agreement." (<u>See</u> Docket No. 3342-1 at 1-56.)

[3] Also excluded are certain family members of such persons. (Settlement Agreement § I(13) (defining "class").)

1    insure(d) the residual value, as a Residual Value Insurer,

2    of all Subject Vehicles equipped or installed with an

3    ETCS (as listed in Exhibit 10) distributed for sale or

4    lease in any of the fifty States, the District of Columbia,

5    Puerto Rico and all other United States territories and/or

6    possessions.

7

8    (Settlement Agreement § I(13) (defining "class").)

9

10    The Court may certify a settlement class only if all four prerequisites of Rule

11    23(a) of the Federal Rule of Civil Procedure and the requirements of at least one

12    subsection of Rule 23(b) are met.

13

14    A.    Rule 23(a) Prerequisites[4]

15

16    The Rule 23(a) prerequisites are:

17

18    (1) the class is so numerous that joinder of all members is impracticable;

19    (2) there are questions of law or fact common to the class; (3) the claims

20    or defenses of the representative parties are typical of the claims or

21

22

23    [4]  Separately, the Court also finds that the class meets the ascertainability requirement developed in the case law.  Parkinson v. Hyundai Motor American, 258 F.R.D. 580, 594 (C.D. Cal. 2008); Evans v. IAC/Interactive Corp., 244 F.R.D. 568, 574 (C.D. Cal. 2007).

24

25

4

defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  If these prerequisites are satisfied, a class action may be maintained if the Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

> 1.    Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands examination of the specific facts of each case and imposes no absolute limitations.  General Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980).  Nevertheless, Plaintiffs must show some evidence of or reasonably estimate the number of class members.  Schwartz v. Upper Deck Co., 183 F.R.D. 672, 681 (S.D. Cal. 1999).  Here, the parties estimate that the settlement class is comprised of more than 16 million members.  (See, e.g., § II(A)(5).)[5]

On this record, the numerosity requirement is satisfied.

---

[5]  Otherwise undesignated paragraph citations are to the parties' proposed Settlement Agreement.

2.    <u>Commonality</u>

Rule 23(a)(2) requires questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2).  This requirement is permissively construed.  <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998).  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies . . . ."  <u>Id.</u>  Nevertheless, a common question "must be of such a nature that it is capable of classwide resolution — which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551 (2011).

Here, the commonality requirement is satisfied.  The class members' claims all arise from allegations regarding a common defect.  Moreover, the class members' claims derive from similar or identical warranties and are based on common advertisements and representations regarding their vehicles.

3.    <u>Typicality</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  <u>Hanlon</u>, 150 F.3d at 1020.  The danger against which this

1    requirement is meant to guard is whether "absent class members will suffer if their

2    representative is preoccupied with defenses unique to it." Ellis v. Costco

3    Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011). To meet the typicality

4    requirement, Plaintiffs must show that: (1) "other members have the same or

5    similar injury"; (2) "the action is based on conduct which is not unique to the

6    named plaintiffs"; and (3) "other class members have been injured by the same

7    course of conduct." Id.

8

9    Here, all the class members allege they have suffered the same injuries based

10   on a common course of Toyota's conduct. The Class Representatives' claims are

11   thus typical of the class.

12

13                4.    Fair and Adequate Representation

14

15   Rule 23(a)(4) requires that the representative party "fairly and adequately

16   protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is

17   grounded in constitutional due process concerns: 'absent class members must be

18   afforded adequate representation before entry of a judgment which binds them.'"

19   Evans, 244 F.R.D. at 578 (quoting Hanlon, 150 F.3d at 1020). Representation is

20   fair and adequate if (1) the named plaintiff and his counsel are able to prosecute the

21   action vigorously and (2) the named plaintiff does not have conflicting interests

22   with the unnamed class members. Lerwill v. Inflight Motion Pictures, Inc., 582

23   F.2d 507, 512 (9th Cir. 1978).

24

25

7

The Court is satisfied that the representation is fair and adequate.  On the present record, the Court can discern no conflict of interest between the Class Representatives and the class members.  Class counsel have litigated the present class action on behalf of the class with competence and zeal.

Accordingly, the Court must consider whether the proposed Settlement Class falls within one of the subsections of Rule 23(b).  Plaintiffs contend that the settlement class may be certified under (b)(3) of Rule 23.  As set forth below, the Court agrees.

B.    Rule 23(b)(3)

Certification is appropriate under Rule 23(b)(3) when the Court finds (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) focuses on the relationship between the common and individual issues.  Hanlon, 150 F.3d at 1022.

When considering class certification for settlement purposes only, the Court "need not inquire whether the case, if tried, would present intractable management problems" under Rule 23(b)(3)(D).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).

a.    <u>The Predominance Inquiry</u>

Relevant to the issue of predominance, Rule 23(b)(3) requires that "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. <u>Amchem</u>, 521 U.S. at 594. It "focuses on the relationship between the common and individual issues." <u>Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1162 (9th Cir. 2001). Stated otherwise, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." <u>Hanlon</u>, 150 F.3d at 1022. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." <u>Zinser v. Accufix Research Institute, Inc.</u>, 253 F.3d 1180, 1189 (9th Cir. 2001) (internal quotation marks and citation omitted).

The Court must rest its examination on the legal or factual questions of the individual class members. <u>Hanlon</u>, 150 F.3d at 1022. "To determine whether common issues predominate, this Court must first examine the substantive issues raised by Plaintiffs and second inquire into the proof relevant to each issue." <u>Jimenez v. Domino's Pizza, Inc.</u>, 238 F.R.D. 241, 251 (C.D. Cal. 2006).

1    "There is no definitive test for determining whether common issues

2    predominate, however, in general, predominance is met when there exists

3    generalized evidence which proves or disproves an [issue or] element on a

4    simultaneous, class-wide basis, since such proof obviates the need to examine each

5    class members' individual position."  Galvan v. KDI Distrib., Inc, SACV 08-0999

6    JVS (ANx), 2011 WL 5116585, at *8 (C.D. Cal. Oct. 25, 2011) (alteration in the

7    original) (internal quotation marks and citation omitted).

8

9         Here, the common issue that predominates is whether the Subject Vehicles

10   have a common defect or defects.  The same evidence is relevant to all class

11   members claims.  Another common issue that predominates involves Toyota's

12   representations regarding their vehicles, upon which many class claims are based.

13

14        The Court finds that the predominance requirement is met.

15

16              b.    The Superiority Requirement

17

18        Relevant to the issue of superiority, Rule 23(b)(3) requires that " the court

19   find[] . . . that a class action is superior to other available methods for fairly and

20   efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  This

21   requirement is broken down into non-exclusive factors that include:

22

23              "(A) the class members' interests in individually

24              controlling the prosecution or defense of separate actions;

25

1          (B) the extent and nature of any litigation concerning the

2          controversy already begun by or against class members;

3          (C) the desirability or undesirability of concentrating the

4          litigation of the claims in the particular forum; and (D)

5          the likely difficulties in managing a class action.

6

7    Fed. R. Civ. P. 23(b)(3)(A)-(D).

8

9          A class action is the superior method for managing litigation where common

10    issues will reduce litigation costs and promote greater efficiency, and where no

11    realistic alternative to class resolution exists.  Valentino v. Carter-Wallace, Inc., 97

12    F.3d 1227, 1234-35 (9th Cir. 1996).  This superiority inquiry requires a

13    comparative evaluation of alternative mechanisms of dispute resolution.  Hanlon,

14    150 F.3d at 1023.

15

16          Even where there is a common nucleus of fact regarding a defendant's

17    conduct, "[i]f each class member has to litigate numerous and substantial separate

18    issues to establish his or her right to recover individually, a class action is not

19    'superior.'"  Zinser, 253 F.3d at 1192.

20

21          A consideration of the four factors clearly establishes the class action as a

22    superior method of adjudication.  Given the extreme complexity of proof as to the

23    alleged defect, and given the relatively low value of recovery per Subject Vehicle

24    in this action, the first and third factors favor class adjudication.  There is little

25

incentive to generate the costly and time-consuming expert evidence needed to assert the claims at issue here in an individual action.

The second factor favors class adjudication because the litigation regarding the nationwide class claims have already been concentrated in the present multi-district litigation.

The fourth factor essentially may be expressed as whether class adjudication is superior to the alternative, which in this case would be individual suits by the class members against Toyota.  Class adjudication of this matter is clearly superior to the alternative consisting of millions of individual lawsuits.  On this issue, the Court echoes the observations made by the Court in In re Napster, Inc. Copyright Litig., C MDL-00-1369 MHP, 2005 WL 1287611, at *9 (N.D. Cal. June 1, 2005). There, the court noted the "logistical difficulties" in adjudicating class claims that numbered in the tens of thousands, but nevertheless correctly observed that "the case management problems that may arise upon certification of the class must be compared to the alternative method of adjudicating the parties' claims: that is, thousands of actions by individual class members." Id.  Here, the Court is faced with class adjudication of millions of claims, and finds wisdom in the words of the In re Napster court that when contrasted to the alternative, "a class action is clearly the most efficient and in all likelihood the most equitable method for resolving the parties' dispute." Id.

The Court finds that the Rule 23(b)(3) conditions have been satisfied for the purposes of provision class certification.  Accordingly, the Court provisionally certifies the Settlement Class.

III.    Preliminary Approval of Class Action Settlement

    A.    Settlement Terms

The proposed Settlement consists of cash payments for claims based on diminution of value due to the alleged defects, installation of a brake-override system ("BOS") for certain eligible vehicles[6] and cash payment in lieu of such installation to the remaining Subject Vehicles, establishment by Toyota of a Customer Support Program, and establishment by Toyota of an Automobile Safety Research and Education Fund.

More specifically, a Qualified Settlement Fund (the "Fund") will be established for payments to class members in the amount of $500 million.[7]

_____

    [6] This subset of the Subject Vehicles is referred to as "BOS-Eligible Vehicles."  (§ I(3) & Ex. 11 (list of BOS-Eligible Vehicles).)

    [7] The Settlement Agreement provides for allocation among the class members, for pro rata reductions in the event of a shortfall of funds, and for disposition of the remaining funds in the event of a surplus of funds. (§§ II(A)(2)(a)-(c) & (4)(a)-(c).)  Protocols for this allocation are set forth in the record.  (Ex. 16.)  Notably, allocation is expressed in percentage terms and varies among states based on the laws of those states.  (Id.)  Overall, at one end of the spectrum, receiving the largest cash payments, are class members in states that

(§§ II(A)(1), (2) & (4).)  This Fund first includes $250 million allocated to cash payments for diminished value for class members who took certain actions in a sixteen-month period of time, from September 1, 2009, to December 31, 2010. (§ II(A)(2).)  These actions include sale by class members of a Subject Vehicle, return of a leased Subject Vehicle before lease termination, possession of a Subject Vehicle that was declared a total loss, or payment as a residual value insurer on a leased Subject Vehicle due to lease termination before the lease termination date. (Id.)  Also included are class members who returned a leased Subject Vehicle before the lease termination date where that class member made a report to the National Highway Traffic and Safety Administration ("NHTSA") of alleged unintended acceleration. (Id.)  A plan for allocating these funds is to be made part of notice to the class.  (§ II(A)(2)(a).)  If the total calculated allocation will exhaust the Fund, payments to class members will be reduced pro rata. (§ II(A)(2)(b).)  If the Fund exceeds the total calculated allocation, the excess will be divided equally between satisfying costs of class administration and the Safety and Education Fund.  Once all the costs are satisfied, then any remaining excess will be paid to the Safety and Education Fund. (§ II(A)(2)(c).)

---

clearly do not require manifestation of a defect to support a defect claim.  (Id.)  At the other end of the spectrum are class members in states that clearly require defects to be manifested, who will receive the smallest cash payments  (Id.)  Class members in a state where the law is unclear as to this requirement will receive cash payments in between the two ends of the spectrum.  (Id.)

In the allocation provisions, the Settlement Agreement clearly recognizes the central significance of the manifestation issue and its impact on the viability of the claims of class members.  The issue of manifestation under the laws of two states, Florida and New York, is discussed at length in the Court's previous Order.  (See Docket No. 2496 at 8-30.)

Second, as part of the Settlement, approximately 2.7 million Subject Vehicles will have a BOS installed.[8]  Class members who own Subject Vehicles not eligible for BOS installation will receive a cash payment in lieu of such installation, and an additional $250 million contribution to the Fund will be made for this purpose.  (§ II(A)(4).)

Unlike many common-fund settlements, the face amount of $500 million is not illusory: The full amount will be paid in one fashion or another.

Third, Toyota will implement a Customer Support Program to effectively provide a form of extended warranty coverage for repairs and adjustments to certain components of the Subject Vehicles for a number of years.[9]  (§ II(A)(5).)

Finally, Toyota will contribute $30 million to fund automobile safety research and education related to issues in the litigation.  (§ II(A)(6).)  "The fund will be divided between university-based automobile/transportation research institutes and education/information programs for automobile drivers."  (Id.)

_____

   [8]  Toyota has previously offered installation of a brake-override system to another 3.2 million Subject Vehicles, and certain other Subject Vehicles already have a system that performs a similar function.  (§ II(A)(3).)

   [9] The mileage and term limitations of the Customer Support Program are more fully described in the Long Form Notice.  (Ex. 4 § C(8)(d).)  "The covered parts are the (i) engine control module; (ii) cruise control switch; (iii) accelerator pedal assembly; (iv) stop lamp switch; and (v) throttle body assembly."  (Id.)

1    B.    Fair, Reasonable and Adequate to the Class

2

3    Rule 23(e) requires the district court to determine whether a proposed

4    settlement is fundamentally "fair, adequate, and reasonable."  Fed. R. Civ. P.

5    23(e)(2).  Thus, the Court initially determines whether the proposed settlement

6    seems fair on its face and is worth submitting to the class members.

7

8    To determine whether a settlement agreement meets this standard, a district

9    court must "balance a number of factors[, including,] the strength of the plaintiffs'

10   case; the risk, expense, complexity, and likely duration of further litigation; the risk

11   of maintaining class action status throughout the trial; the amount offered in

12   settlement; the extent of discovery completed and the stage of the proceedings; the

13   experience and views of counsel; the presence of a governmental participant; and

14   the reaction of the class members to the proposed settlement."  Hanlon, 150 F.3d at

15   1026.

16

17   District courts must also be aware of the potential for negotiators and class

18   representatives to be influenced by their own self interests rather than the interests

19   of the class as a whole.  Staton v. Boeing Co., 327 F.3d 938, 960 (9th Cir. 2003).

20   Even so, the Court's role is "limited to the extent necessary to reach a reasoned

21   judgment that the agreement is not the product of fraud or overreaching by, or

22   collusion between, the negotiating parties, and that the settlement, taken as a

23   whole, is fair, reasonable and adequate to all concerned."  Officers for Justice v.

24

25

Civil Serv. Comm'n of City & County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982).

After reviewing the Settlement Agreement and supporting Exhibits, the Court finds that the terms compare favorably to the uncertainties associated with further litigation. See Nat'l Rural Telecomm. Coop. v. DirectTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004).  The Court has made significant legal rulings on, among other things, Plaintiffs' constitutional standing in the absence of sustaining a SUA event,[10] the viability of certain state-law theories of recovery in the absence of a manifestation, and numerous state common-law and statutory theories.  (E.g., Docket Nos. 1478, 1623 & 2496.)  Some of these rulings have been favorable to Plaintiffs, some have been favorable to Toyota.  Were the parties to proceed to a fully litigated result, virtually any outcome would face the risk of uncertainty upon appellate review of these rulings.

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Nat'l Rural Telecomm., 221 F.R.D. at 526 (internal quotation marks and citations omitted).  Thus, settlement will likely serve the interests of the class members better than litigation.

---

[10]  This issue is currently subject to review on the Court's certification of the question to the Ninth Circuit for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  (See Docket No. 1623.)

17

1    Accordingly, the Court concludes preliminarily that the proposed Settlement

2    is fair, reasonable, and adequate.

3

4    As part of the Motion for Final Approval of the settlement, Plaintiffs are

5    directed to submit a reasoned estimate of liability assuming that Plaintiffs prevailed

6    on all their claims.  The Court recognizes that any such estimate may contain

7    subjective, or even somewhat speculative, components, but nevertheless the Court

8    concludes that such a benchmark will assist the Court is making a final assessment

9    whether the Settlement is fair, reasonable and adequate.

10

11    C.    Adequate Notice

12

13    Adequate notice is critical to court approval of a class action settlement.

14    Hanlon, 150 F.3d at 1025; see Fed. R. Civ. P. 23(e)(1)(B).  For any class certified

15    under Rule 23(b)(3), the court must direct to class members the best notice that is

16    practicable under the circumstances, including individual notice to all members

17    who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). The

18    notice must clearly and concisely state in plain, easily understood language:

19

20    (i)    the nature of the action;

21

22    (ii)    the definition of the class certified;

23

24    (iii)    the class claims, issues, or defenses;

25

18

1      (iv)    that a class member may enter an appearance through an attorney if
2              the member so desires;

3

4      (v)     that the court will exclude from the class any member who requests
5              exclusion;

6

7      (vi)    the time and manner for requesting exclusion; and

8

9      (vii)   the binding effect of a class judgment on members under Rule
10             23(c)(3).

11

12  Id.

13

14      To be sure, providing adequate notice to a settlement class with more than
15  16 million members is a Herculean task.  Nevertheless, on the current record, the
16  Court concludes that the parties have presented a plan and allocated the resources
17  necessary to accomplish this task.

18

19      The parties propose multiple methods of providing notice.  First, aided by a
20  pre-existing database, the Settlement Administrator designated by the parties will
21  send by first class mail to each identified class member one of two Short Form
22  Notices.  (§ III(B), Exs. 12-13.)  Second, a Summary Settlement Notice will be
23  published in a number of newspapers, magazines, and/or other media.  (§ III(C),
24  Ex. 8.)  Anticipated paid media placements are extensive, and summarized in the

25

Kinsella Declaration.[11]  (Ex. 9 ¶ 16.)  Third, a Long Form Notice will be made available (via download of documents in .pdf format) from a website established by the Settlement Administrator to inform class members of the terms of the proposed settlement, their rights, and important deadlines.[12] (§§ III(D)-(E), Ex. 4.) The Long Form Notice provides information on the terms of the Settlement, the class members' opt-out rights and how to exercise them, the class members' rights to object to the proposed settlement and how to exercise them, the requests for incentive awards to named class representatives, and the requests for attorney fees and expenses. (§ II(E)(1), Ex. 4.)

        The Court has reviewed the parties' Proposed Notices and finds these notices clearly and concisely state the required information.  The Court concludes that the parties' proposal that includes multiple methods of providing class settlement notice is designed to and can be implemented in a manner to provide actual notice to the overwhelming majority of class members.  Mailed Short Form

---

[11]  Similar notifications appearing on internet banners are expected to reach over 313 million views over a five-week period.  (Kinsella Decl. ¶ 19.)

[12]  Claim Forms will also be made available in the same manner. (§ III(E)(2), Exs. 2-3.)  It is not entirely clear from the Settlement Agreement that Claims Forms will be provided by mail to class members upon request, but a close examination of the relevant documents suggest the parties so intend. The Settlement Agreement requires that the Long Form Notice be mailed to any class member who so requests in writing or by telephone.  (§ III(E)(3).)  The Long Form Notice, in turn, identifies Claim Forms as its Appendices B-C.  (Ex. 4 at 18.)
        Nevertheless, in the event provision of Claim Forms by mail upon written or telephone request is not what the parties intend, the Court orders that Claim Forms must be provided in this manner.

Notices, coupled with a widely published Summary Settlement Notice, and establishment of a website to further disseminate settlement information will reach millions of class members as well as can be reasonably expected in these circumstances.[13]

Therefore, the Court finds the notice plan is adequate and will direct notice be provided in accordance with the parties' Settlement Agreement and supporting Exhibits.

D.    Class Representative Incentive Awards

Plaintiffs will seek approval of incentive awards to Class Representatives, to be paid by Toyota.  (§ VII(E).)  Plaintiffs will seeks incentive awards of up to $100 per hour for each Class Representative's time, subject to a $2,000 minimum award. (Id.)

Such awards are typically made.  As the Ninth Circuit observed in Rodriguez v. West Publishing Corp., 563 F.3d 948 (9th Cir. 2009):

---

[13]  Notice need not actually reach every single class member; instead, the notice need only be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

1    [i]ncentive *awards* are fairly typical in class action cases. . .[,] are

2    discretionary, and are intended to compensate class representatives for

3    work done on behalf of the class, to make up for financial or

4    reputational risk undertaken in bringing the action, and, sometimes, to

5    recognize their willingness to act as a private attorney general.

7    Id. at 958-59 (emphasis in original) (citations omitted).

9    E.    Attorney Fees and Costs

11    The Court may also award reasonable attorney fees.  Here, the parties

12    negotiated the amount of attorney fees after agreeing to the other principal terms of

13    the proposed settlement.  (§ VII(A).)  Payment of $200 million in attorney fees will

14    be made with funds that are separate and apart from the Qualified Settlement Fund.

15    (Id.)  An additional payment will be made to Plaintiffs' counsel for expenses, up to

16    $27 million.  (Id.)

18    In the Ninth Circuit, "25% of the common fund as a benchmark award for

19    attorney fees." Hanlon, 150 F.3d at 1029.  Generally, this benchmark award is

20    "adjusted, or replaced by a lodestar calculation, when special circumstances

21    indicate that the percentage recovery would be either too small or too large in light

22    of the hours devoted to the case or other relevant factors." Six (6) Mexican

23    Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

Here, cash payments total $500 million.  Other elements of the proposed settlement, including BOS installation on BOS Eligible Vehicles (valued at $406 million), establishment of the Customer Support Program (valued at $200 million) and the Automobile Safety Research and Education Fund ($30 million) bring the value provided to the class members by the proposed settlement to over $1.1 billion.[14]  On this estimate, the amount of fees sought by Plaintiffs' counsel falls well within the 25% benchmark, and the Court preliminarily approves it.

As part of the Final Approval process, Plaintiffs' counsel shall submit a lodestar calculation for purposes of comparison and validation.

IV.    Scheduling

In consideration of the parties' proposal, the Court adopts the schedule set forth in the concurrently filed Order Granting Preliminary Approval of Class Settlement.

---

[14]  Indeed, if one added the value of the requested fees to the value of the Settlement to approximate the equivalent of a total common fund, a $200 million fee request would be on the order of 15 percent ($200 million / ($1.1 billion + $200 million) = 15.38 percent).  Accord, Arizona Citrus Growers, 904 F.2d at 1311 (upholding attorney fee award expressed as 25 percent of the total fund for settlement).

V.    Conclusion

        For the foregoing reasons, the Application is granted.  The Court hereby provisionally certifies the settlement class and grants preliminary approval of the proposed settlement.

        Further proceedings on this issue shall be conducted in accordance with this Order.

        **IT IS SO ORDERED.**


DATED: December 28, 2012

_____
JAMES V. SELNA
UNITED STATES DISTRICT JUDGE