1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    CENTRAL DISTRICT OF CALIFORNIA

8

9                                              Case No. 8:10ML 02151 JVS (FMOx)

10    IN RE: Toyota Motor Corp.
      Unintended Acceleration Marketing,
11    Sales Practices, and Products Liability      Order Regarding Motion for
      Litigation                                   Attorneys' Fees, Reimbursement of
12                                                 Expenses, and Compensation to
                                                   Named Plaintiffs
13    This document relates to:

14    All Economic Loss Cases.

15

16

17

18

19

20

21

22

23

24

25

Table of Contents

I.      Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Attorney Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        A.      Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        B.      Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
                1.      Results Achieved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
                2.      Risks and Complexity of Litigation . . . . . . . . . . . . . . . . . . 10
                3.      Skill of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                4.      Contingent Nature of the Fee . . . . . . . . . . . . . . . . . . . . . . 12
                5.      Awards in Similar Cases . . . . . . . . . . . . . . . . . . . . . . . . . . 13
                6.      Reaction of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                7.      Lodestar Cross-Check . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        C.      Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        D.      Allocation of Fee Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        E.      Conclusion as to Attorney Fees . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III.    Reimbursement Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        A.      Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        B.      Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        C.      Conclusion as to Reimbursement Costs . . . . . . . . . . . . . . . . . . . . 23

IV.     Compensation to Named Plaintiffs and Class Representatives . . . . . . . . . 24
        A.      Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        B.      Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
        C.      Conclusion as to Compensation to Named Plaintiffs and Class
                Representatives . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

V.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Presently before the Court is a Motion filed by the Economic Loss Plaintiffs ("Plaintiffs") seeking an award of attorney fees, reimbursement of expenses, and compensation to named plaintiffs and class representatives.  (Docket No. 3563.)  A number of objections to the proposed award of fees, costs, and compensation have been filed.[1]  Plaintiffs have filed a Reply brief in support of the Motion.  (Docket No. 3732.)  Pursuant to the Settlement Agreement, Toyota[2] does not oppose the Motion.

As set forth more fully below, the Court tentatively finds that the proposed award of fees, costs, and compensation is fair, reasonable, and adequate.  However, the Court cannot complete its analysis before granting final approval of the proposed settlement agreement.  Accordingly, and with the following discussion, the Court holds in abeyance the Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensation to Named Plaintiffs.

---

[1]  The objections pertaining to the proposed award of fees, costs, and compensation are discussed *infra*.  At the fairness hearing on June 14, 2013, none of the objectors who appeared addressed the Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Compensation to Named Plaintiffs.

[2]  The Settlement Agreement defines "Toyota" as "Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc." (Settlement Agreement § I(47).)  Throughout this Order, the Court uses the term as it is defined by the parties.

1

I.   Background

On December 28, 2012, on application from the Economic Loss Plaintiffs, this Court granted preliminary approval to a proposed settlement agreement.[3]  (See Docket Nos. 3344-45.)  After preliminary approval, the parties amended two terms of the proposed settlement agreement relating to the circumstances under which the funds might flow into each other.  (Docket No. 3424.)  Moreover, in their Reply, based on new information regarding the claim filing rates, Plaintiffs outlined changes to the plan of how to allocate the two cash settlement funds.  On the morning of the fairness hearing, the parties presented a further refinement on the allocation issue.  The terms of the settlement agreement, as amended, are summarized in a separate Tentative Order Regarding Proposed Class Action Settlement.

Under the Settlement Agreement,[4] Toyota has agreed to pay to Plaintiffs' class counsel ("class counsel"), separately from the settlement funds, "an award of Attorneys' Fees and Expenses in the Actions in the amount of $200 million in fees, plus up to an additional $27 million in expenses incurred prior to the Fairness

---

[3]  The proposed settlement agreement was reached with the assistance of Court-appointed Settlement Special Master Patrick A. Juneau.  (See Docket No. 2462.)

[4]  The Settlement Agreement is attached as an unenumerated Exhibit to Plaintiffs' Ex Parte Application for preliminary approval of the settlement.  (See Docket No. 3342-1 at 1-56.)  The Settlement Agreement is also available at the settlement website, www.toyotaelsettlement.com.

Hearing in the Actions." (Settlement Agreement § VII(A).)[5]  Class counsel may also "petition the Court for incentive awards of up to $100.00 per hour per Plaintiff and per Class Representative for their time in connection with the Actions, with a $2,000 minimum award," which Toyota has agreed to pay.  (Id. § VII(E).)  In this Order, the Court addresses only whether the proposed award of fees, costs, and compensation is fair, reasonable, and adequate.

II.    Attorney Fees

    A.    Legal Standard

A lawyer who recovers "a common fund for the benefit of persons other than himself or his client" is entitled to reasonable attorney fees from the fund as a whole.  Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980); Staton v. Boeing Co., 327 F.3d 938, 967 (9th Cir. 2003).  The Supreme Court has explained the rationale underlying the "common fund doctrine" as follows:

    [P]ersons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund,

---

[5]  Under the Settlement Agreement, if the Court awards an amount less than $227 million in fees and costs, Toyota would pay the remainder to the Automobile Safety and Education Program Fund. (Settlement Agreement § VII(B).)  However, for the reasons discussed herein, the Court is inclined to award the entire proposed amount.

thus spreading fees proportionately among those benefited by the suit.

Van Gemert, 444 U.S. at 478 (citation omitted).  Accordingly, "in common fund cases, a variant of the usual rule applies and the winning party pays his or her own attorneys' fees."  Staton, 327 F.3d at 967.

In a common fund case, the court has discretion to use either a percentage or lodestar method to determine attorney fees.[6]  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998).  The percentage method requires the court simply to determine what percentage of the fund would provide class counsel with a reasonable fee under all the circumstances.  Id.  The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees."  Id.  However, "[t]he benchmark percentage should be adjusted, or replaced with a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."  Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002) ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases.").  A "mechanical or formulaic application" of the percentage method is inappropriate "where it yields an unreasonable result."  In re Coordinated Pretrial Proceedings in Petroleum Prods.

---

[6] "Despite this discretion, use of the percentage method in common fund cases appears to be dominant."  In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007); see also In re Activision Sec. Litig., 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) (discussing advantages of percentage method).

Antitrust Litig., 109 F.3d 602, 607 (9th Cir. 1997) [hereinafter Petroleum Prods.];

In re Critical Path, Inc., Sec. Litig., No. C 01-00551 WHA, 2002 U.S. Dist. LEXIS

26399, at *24 (N.D. Cal. June 18, 2002).  Regardless of which method the court

uses, it must "explain[] its determination by written order or in open court."

Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000).

The Ninth Circuit encourages courts to use the lodestar method as a "cross-check" on the reasonableness of a fee award determined with the percentage method.  See Vizcaino, 290 F.3d at 1050; Petroleum Prods., 109 F.3d at 607 ("It is reasonable for the district court to compare the lodestar fee, or sum of lodestar fees, to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates."); Kakani v. Oracle Corp., No. C 06-06493 WHA, 2007 U.S. Dist. LEXIS 95496, at *6 (N.D. Cal. Dec. 21, 2007).  Indeed, this Court directed class counsel to "submit a lodestar calculation for purposes of comparison and validation."  (Docket No. 3344 at 23.)

To calculate the "lodestar," the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work.  McElwaine v. U.S. West, Inc., 176 F.3d 1167, 1173 (9th Cir. 1999).  The court may raise or lower the lodestar based on several factors:

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed

or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1007 n.7 (9th Cir. 2002). The court must be cautious, however, not to adjust the lodestar figure based on any of the foregoing factors that are subsumed in the original lodestar calculation. Morales v. City of San Rafael, 96 F.3d 359, 364 & n.9 (9th Cir. 1996). The Ninth Circuit has noted that multipliers range from 1.0-4.0 and a "bare majority" fall within the range of 1.5-3.0. Vizcaino, 290 F.3d at 1051 n.6; Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.").

B.    Discussion

Class counsel requests that the Court approve an award of attorney fees in the amount of $200 million. (Motion at 1.) According to Plaintiffs' experts, the total value of the Settlement Agreement exceeds $1.6 billion.[7] Therefore, the

_____

[7] In determining the total settlement value, Plaintiffs' experts appropriately have included the non-monetary benefits – Brake Override System ("BOS") installations and operation of the Customer Support Program ("CSP") – which can

requested fee award represents approximately 12.3 percent of the total settlement value.

Although 12.3 percent of the common fund falls well below the 25 percent benchmark, the Court must nonetheless consider whether this percentage should be adjusted based on all the circumstances.  <u>See</u> <u>Six (6) Mexican Workers</u>, 904 F.2d at 1311; <u>Vizcaino</u>, 290 F.3d at 1048.  The Court will first consider several factors approved by the Ninth Circuit for determining the reasonableness of a proposed fee award.  <u>See</u> <u>Vizcaino</u>, 290 F.3d at 1048-50.  After that, the Court will use the lodestar method as a "cross-check" on the reasonableness of the award.  <u>See</u> <u>id.</u> at 1050.

---

reasonably be valued.  <u>See</u> <u>Staton</u>, 327 F.3d at 973-74; <u>Hanlon</u>, 150 F.3d at 1029. Michael Bonne values the BOS installations, based on the average retail cost for such an installation, at approximately $400 million.  (<u>See</u> Bonne Declaration (Docket No. 3557) ¶ 10.)  Kirk Kleckner values operation of the CSP at approximately $477 million.  (Kleckner Decl. (Docket No. 3358) ¶ 11 & Ex. C.) Valuation of the CSP was derived based on the market price of similar extended service contracts offered in the industry.  (<u>Id.</u> at ¶¶ 8-10, Ex. C)  Finally, the $1.6 billion valuation includes $227 million in attorney fees and litigation costs, compensation to named plaintiffs and class representatives, and the costs of notice and administration.  <u>See</u> <u>Staton</u>, 327 F.3d at 974; <u>Johnston v. Comerica Mortg. Corp.</u>, 83 F.3d 241, 246 (8th Cir. 1996) (construing attorney fees as "an aspect of the class' recovery").

### 1. Results Achieved

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award." In re Heritage Bond Litig., No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *27 (C.D. Cal. June 10, 2005) (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)); Vizcaino, 290 F.3d at 1048 ("Exceptional results are a relevant circumstance.").

Here, the total value of the Settlement Agreement exceeds $1.6 billion, making this one of the largest automobile class action settlements – if not the largest – in history.[8] Plaintiffs' expert estimates total economic losses caused by the alleged diminished value to be $590 million.  (Manuel Decl. (Docket No. 3560) ¶ 35.)  Based on this estimate, the $250 million Alleged Diminished Value Fund recovery constitutes approximately 42 percent of total economic losses.[9] (Fitzpatrick Decl. (Docket No. 3564) ¶ 16.)  The $250 million contribution to the Cash-in-Lieu-of-BOS Fund represents approximately 25 percent of the aggregate, class-wide estimated average cost of a BOS installation, based on 9,020,154 eligible vehicles.[10]  (See Sherwood Decl. (Docket No. 3559) ¶ 9.)  And class

_____

[8]  At oral argument class counsel represented this settlement to be the largest automobile class action settlement.

[9]  This percentage-of-damages recovery is exceptional.  See, e.g., In re Cendant Corp. Litig., 264 F.3d 201, 241 & n.22 (3d Cir. 2001) (citing securities settlements between 1.6 and 14 percent of damages).

[10]  Subtracting 6,309,384 BOS-eligible vehicles and 1,325,314 hybrid vehicles from the 16,654,852 universe of current registrations yields 9,020,154 vehicles.  9,020,154 eligible vehicles multiplied by the $111.50 average BOS

members who submit eligible claims against the Cash-in-Lieu-of-BOS Fund may recover 100 percent of the estimated value of a BOS, depending on the jurisdiction in which they reside and the volume of claims.[11]  Considering only these monetary benefits, class counsel have achieved exceptional results for the class.

The non-monetary benefits for the class are also extremely valuable.  Over 3.5 million class members who currently own or lease a qualifying vehicle will be eligible to receive BOS.  In monetary terms, this benefit is valued at approximately $400 million.  (Bonne Decl. ¶ 10.)  Furthermore, the Customer Support Program will provide prospective coverage for repairs and adjustments needed to correct defects in materials or workmanship in five components related to the acceleration system.  Over 16.1 million class members may benefit from the Customer Support Program, which is valued at approximately $477 million.  (Kleckner Decl. ¶¶ 8-11 & Ex. C.)

As discussed in the following subsection, class counsel obtained these benefits for the class while facing tremendous risks.  By any measure, the results achieved by class counsel are exceptional.  This factor weighs strongly in favor of approving the entire proposed fee award.

---

installation cost yields $1,005,747,171.  The $250 million fund is approximately 25 percent of this number.  (Motion at 9 n.37.)

[11]  Toyota's $30 million contribution to the Automobile Safety and Education Research Fund also will benefit class members, as discussed in the Tentative Order Regarding Proposed Class Action Settlement.

2.    <u>Risks and Complexity of Litigation</u>

Another significant factor to be considered in determining attorney fees is the risk that counsel took of "not recovering at all, particularly [in] a case involving complicated legal issues." <u>In re Omnivision Techs.</u>, 559 F. Supp. 2d at 1046-47; <u>Vizcaino</u>, 290 F.3d at 1048; <u>In re Heritage Bond</u>, 2005 U.S. Dist. LEXIS 13627, at *44 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of costs, is a factor in determining counsel's proper fee award.").

There is no question that this litigation is complex.  With respect to risks, the Court first notes that neither NASA nor NHTSA were able to identify a defect in the electronic throttle control system in the vehicles they tested.  Accordingly, throughout the litigation, Toyota – represented by exceptionally skilled counsel – has argued that no defect exists.  On this basis alone, class counsel faced an extremely difficult path.  Nevertheless, they continued to pursue relief for the class, surviving a series of dispositive motions and eventually agreeing to settle for over $1.6 billion.

Class counsel faced several other major risks in this litigation.  Two interlocutory appeals are pending.  The first challenges this Court's holding that Plaintiffs have Article III standing to assert their claims notwithstanding not having experienced an actual alleged incident of SUA.  (<u>See</u> Docket No. 1623.)  The second challenges the Court's order denying Toyota's Motion to Compel Arbitration.  (Docket No. 2312.)  A ruling in favor of Toyota on either issue  would drastically alter the present case by extinguishing the claims of a majority of class

members.  Moreover, this Court ruled on the legal issue of whether it could order injunctive relief in the form of repairs or adjustments to the Subject Vehicles, or whether NHSTA's finding of the lack of defect could be held to preclude such an order.  (Docket No. 510 at 88-98.)  A higher court could disagree with the Court's ruling.

Furthermore, the Settlement Agreement was reached before the Court ruled on a number of motions to exclude Plaintiffs' expert testimony.  The uncertainty as to the admissibility of Plaintiffs' expert reports, on which their claims heavily rely, greatly contributes to the risks.  Finally, if this litigation were to proceed all the way to trial, the outcome would be uncertain and a lengthy appeal period likely would follow.

The Court has not detailed all of the risks faced by class counsel throughout this litigation.  It is clear, however, based only on the risks discussed herein, that this factor strongly supports the proposed fee award.

        3.    <u>Skill of Counsel</u>

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities."  <u>Knight v. Red Door Salons, Inc.</u>, No. 08-01520 SC, 2009 U.S. Dist. LEXIS 11149, at *16 (N.D. Cal. Feb. 2, 2009) (quoting <u>Edmonds v. United States</u>, 658 F. Supp. 1126, 1137 (D.S.C. 1987)).  "The single clearest factor reflecting the quality of class counsels' services to the class are the results obtained."  <u>In re Heritage Bond</u>, 2005 U.S. Dist. LEXIS

13627, at *39-40 (quoting <u>Cullen v. Whitman Med. Corp.</u>, 197 F.R.D. 136, 149 (E.D. Pa. 2000)).

Throughout this litigation, class counsel consistently has demonstrated extraordinary skill and effort. As discussed above, they faced numerous challenges. Class counsel also led a massive discovery effort, which was necessary to investigate and support their factually complex claims. The subject matter – defects in Toyota's electronic throttle control system for a myriad of vehicles over more than ten years – is daunting and has required particular expertise. Furthermore, this case involved difficult questions of law – state and federal, procedural and substantive. Finally, class counsel faced an exceptionally skilled adversary with substantial resources. <u>See</u> <u>In re Equity Funding Corp. Sec. Litig.</u>, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977). Accordingly, this factor weighs in favor of approving the entire proposed fee award.

### 4. Contingent Nature of the Fee

Attorneys are entitled to a larger fee award when their compensation is contingent in nature. <u>See</u> <u>Vizcaino</u>, 290 F.3d at 1048-50; <u>see also</u> <u>In re Omnivision Techs.</u>, 559 F. Supp. 2d at 1047. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for contingency cases." <u>In re Wash. Pub. Power Supply Sys. Sec. Litig.</u>, 19 F.3d 1291, 1299 (9th Cir. 1994). This ensures competent representation for plaintiffs who may not otherwise be able to afford it. <u>Id.</u>

Here, class counsel have expended at least 165,930 hours and spent over $27 million in litigation costs, all at the risk of receiving no compensation whatsoever.[12]  During the past three and a half years, class counsel dedicated an exorbitant amount of time, energy, and resources to discovery, motion practice, and other matters in this litigation.  The work performed by class counsel is summarized thoroughly in the Declaration of Steve Berman (Docket No. 3565) at pages 1 through 38.  Because of the demands of this litigation, class counsel have forgone the business opportunity to devote time to other cases.  See Vizcaino, 290 F.3d at 1050.  This factor supports the proposed fee award.

     5.    Awards in Similar Cases

As noted above, the Ninth Circuit has established 25 percent of the common fund as the benchmark for attorney fee awards.  Plaintiffs' expert has conducted an empirical study and found that, in 2006 and 2007, the most common fee percentages awarded by all federal courts were 25 percent, 30 percent, and 33 percent.  Nearly two-thirds of the awards were between 25 percent and 35 percent.  In the Ninth Circuit particularly, the most common percentages awarded were 25 percent, 30 percent, and 33 percent.  (Fitzpatrick Decl. ¶ 20.)  Furthermore, class counsel cites several cases in which the total settlement values were extraordinarily

---

[12]  According to Steve Berman, class counsel have invested more than $69,706,936 in lodestar and $30,606,117 in litigation costs.  (Berman Decl. (Docket No. 3565) ¶ 135.)  In a survey of 688 class action settlements by Plaintiffs' expert, in only one case did the class counsel advance more costs than class counsel have advanced here.  (Fitzpatrick Decl. ¶ 17.)

large and the fee awards were above 25 percent of the common fund.  E.g., In re TFT-LCD (Flat Panel) Antitrust Litig., MDL No. 1827, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) (awarding 28.5 percent of $27.5 million settlement fund); Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding 31.3 percent of $1.075 billion settlement fund); In re Vitamins Antitrust Litig., MDL No. 1285, 2001 WL 34312839 (D.D.C. July 16, 2001) (awarding 34 percent of $365 million settlement fund).  Therefore, the Court finds that fee awards in cases involving similar settlement values further support the proposed fee award.

### 6.    Reaction of the Class

The Court may also consider the reaction of the class to the proposed fee award.  In re Omnivision Techs., 559 F. Supp. 2d at 1048; In re Heritage Bond, 2005 U.S. Dist. LEXIS 13627, at *48 ("The presence or absence of objections from the class is also a factor in determining the proper fee award.").  Here, over 22.6 million short form notices were mailed to class members and only 77 objections to the Settlement Agreement were filed.  Of these 77 objections, only 20 relate to the proposed fee award.  The Court addresses the substance of the objections below.  This generally favorable reaction of the class weighs in favor of approving the proposed fee award.

7.    <u>Lodestar Cross-Check</u>

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." <u>Vizcaino</u>, 290 F.3d at 1050-51; <u>In re Omnivision Techs.</u>, 559 F. Supp. 2d at 1048. As noted above, the Ninth Circuit encourages courts to cross-check the reasonableness of a fee award determined using the percentage method with the lodestar method.

Here, a cross-check using the lodestar method confirms the reasonableness of the proposed fee award.  According to the Declaration of Steve Berman, class counsel's lodestar is $69,706,936[13] and their litigation costs are $30,606,117, for a total investment of $100,313,053.  (Berman Decl. ¶ 135.)  Dividing the lodestar into the $200 million proposed fee award yields a multiplier of 2.87.  This is within the range approved by courts within this Circuit.  Considering all the circumstances, and particularly the tremendous risks undertaken by class counsel, the Court finds that this multiplier is warranted.  Thus, the lodestar method confirms the reasonableness of the proposed fee award.

---

[13]  Class counsel have expended at least 165,930 hours in this case.  (<u>See generally</u> Berman Decl.; Motion at 2, Appendix A (Summary of Firms Lodestar and Costs).)  The hourly rates of class counsel range from $150 to $950.  Class counsel's experience, reputation, and skill, as well as the complexity of this case, justify these hourly rates.  <u>See</u> <u>Prison Legal News v. Schwarzenegger</u>, 608 F.3d 446, 455 (9th Cir. 2010).

C.    Objections

As noted above, only 20 of the 77 objections filed relate to the proposed fee award.[14]  A detailed chart of the objections reviewed and considered by the Court is attached to the Tentative Order Regarding Proposed Class Action Settlement as Attachment A.  The Court generally addresses the substance of the objections, without addressing each objection individually.[15]

All objectors to the proposed fee award contend that it is excessive.  As a preliminary matter, the Court notes that none of the objectors have provided an expert declaration or any other evidence undermining the Court's conclusions herein.  Some objectors arbitrarily propose an alternative percentage of the common fund that should be used to determine the fee award.  (Objection Nos. 9, 15, 48, 66, 67.)  The Court has considered all the circumstances of the case and performed a lodestar cross-check, and concluded that the proposed fee award, which represents only 12.3 percent of the total settlement value, is fair, reasonable, and adequate.  These unsupported objections do not convince the Court otherwise.

Some objectors contend that as a "mega-fund," the percentage awarded to class counsel should be significantly lower than the 25 percent benchmark.  (E.g.,

_____

[14]  Objection Nos. 5, 9, 15, 18, 19, 21, 22, 26, 36, 37, 46, 48, 53, 58, 64, 65, 66, 67, 73, 75.  (See Tentative Order Regarding Proposed Class Action Settlement, Attachment A.)

[15]  The Court cites objections herein using the numbers assigned to them in Attachment A to the Tentative Order Regarding Proposed Class Action Settlement.

Objection Nos. 5, 18, 64, 67.)  First, the Court notes that the proposed fee award is significantly lower than the benchmark.  Regardless, there is no rule in the Ninth Circuit that requires a court to decrease the percentage of a fee award as the size of the settlement increases.  Vizcaino, 290 F.3d at 1047 (rejecting the so-called "increase-decrease rule").  Instead, the Court must consider the size of the fund as "one relevant factor" in determining whether to adjust the percentage.  Id.; see also In re Wash. Pub. Power, 19 F.3d at 1297 (requiring the court to consider the size of the fund).  Here, the Court has considered the size of the fund and found that 12.3 percent of the total settlement value is a fair and reasonable fee award, particularly in light of the risks and complexity of this litigation.[16]  Accordingly, these objections lack merit.

Other objectors contend that the non-cash aspects of the Settlement Agreement should not be considered in determining its total value.  (Objection Nos. 5, 21, 46, 65, 66, 67.)  Because the non-cash benefits can reasonably be valued, as indicated by Plaintiffs' experts and discussed in footnote 7, *supra*, they should be considered.  Staton, 327 F.3d at 973-74; Hanlon, 150 F.3d at 1029.  BOS installations and the CSP have value.  BOS is a safety innovation that will automatically reduce engine power when the brake pedal and accelerator pedal are applied simultaneously under certain driving conditions.  CSP is essentially an extended service contract, under which owners of Subject Vehicles will benefit from extended coverage of certain components at issue in this litigation.

---

[16]  The Court also agrees with Plaintiffs' expert (Fitzpatrick Decl. ¶ 23), and other courts, e.g., Allapattah Servs., 454 F. Supp. 2d at 1213, which have found that decreasing a fee percentage based only on the size of the fund would provide a perverse disincentive to counsel to maximize recovery for the class.

Accordingly, these objections lack merit.

A couple of objectors contend that the lodestar multiplier is too high. (Objection Nos. 5, 67.) But as discussed above, considering all the circumstances of this litigation, particularly the risks, the multiplier – which falls within the range accepted by the Ninth Circuit – is appropriate. See Vizcaino, 290 F.3d at 1051-52 (providing table of commonly used multipliers). Other objectors request that the Court appoint an auditor or Special Master to audit the lodestar, or even request access to class counsel's billing records. (Objection No. 9, 15, 18.) The lodestar is supported by the Declaration of Steve Berman, lead co-counsel, and the Court has no reason to doubt its accuracy. Furthermore, the lodestar is used here only as a cross-check on the percentage method. In a case such as this, where class counsel have expended at least 165,930 hours, the Court may rely on summaries and declarations in lieu of detailed records. E.g., In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions, 148 F.3d 283, 332 n.107 (3d Cir. 1998). Accordingly, these objections lack merit.

Some objectors challenge the proposed contributions to the Automobile Safety Research and Education Fund. (Objection Nos. 36, 64.) Because the Court discusses this fund and objections to it in the Tentative Order Regarding Proposed Class Action Settlement, the Court does not discuss these objections here.

One objector contends that no attorney fees should be awarded because of collusion in agreeing to the proposed fee award. (Objection No. 65.) First, the Settlement Agreement, including the agreement as to fees and costs, was reached

after many months of arm's-length negotiations supervised by the Court-appointed Settlement Special Master, Patrick Juneau.  Second, as discussed above, the results of the settlement are excellent for the class.  Third, class counsel represents to the Court that the parties reached their agreement as to attorney fees and costs separately from the rest of the Settlement Agreement and subject to Court approval.  (See Berman Decl. ¶¶ 78-87.)  There is no evidence of collusion and, therefore, this objection lacks merit.

Finally, a few objectors contend that the notice did not adequately disclose the specific amount of attorney fees and costs that class counsel would request.  (Objection Nos. 15, 46.)  This is not true.  The notice stated: "Class Counsel will ask the Court for attorney fees not to exceed $200 million, plus up to an additional $27 million in costs and expenses."  It further stated:  "Class Counsel will ask for payments to each of the Plaintiffs and Class Representatives of $100 per hour, with a minimum of $2,000 award, for their time invested in connection with the Actions."  (Short Form Notice ¶ 14.)

To the extent the Court has not specifically addressed any of the objections that were filed, they lack merit.  The Court has reviewed and considered all of the objections.

D.    Allocation of Fee Award

The Court may grant a lump sum award to be divided among class counsel as they deem appropriate.  The Court need not "specify what share of the common fund award that each attorney [will] receive." Six (6) Mexican Workers, 904 F.2d at 1311; Hartless v. Clorox Co., 273 F.R.D. 630, 646 (S.D. Cal. 2011) ("[F]ederal courts routinely affirm the appropriateness of a single fee award to be allocated among counsel and have recognized that lead counsel are better suited than a trial court to decide the relative contributions of each firm and attorney."). But see In re Critical Path, 2002 U.S. Dist. LEXIS 26399, at *25 ("The Court believes that the better practice, for future cases, is to disclose the exact allocation proposed between the firms.").

If awarded, the attorney fees will be paid, collectively, to the 31 Plaintiffs' firms that worked on the litigation.  Class counsel propose that they allocate the fees among the eligible Plaintiffs' counsel in a manner that they believe, in good faith, reflects the contributions of counsel to the prosecution and settlement of the claims against Toyota.  The Court tentatively approves this plan, as class counsel are the most familiar with the amount of work actually contributed by each of the 31 firms.

E.    Conclusion as to Attorney Fees

For the foregoing reasons, the Court tentatively finds that the proposed award of fees, costs, and compensation is fair, reasonable, and adequate.  However, the Court cannot complete its analysis before final approval of the Settlement Agreement is granted.

III.    Reimbursement Costs

Class counsel requests an award of $27 million in litigation costs, a discount from the $30,606,117 in total costs incurred thus far.[17]  (Motion at 26.)

A.    Legal Standard

An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund.  See, e.g., In re Omnivision Techs., 559 F. Supp. 2d at 1048 (citing Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994)).  The award "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary."  In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (citing In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362,

---

[17]  Litigation costs are detailed in (1) the Declaration of Steve Berman ¶¶ 129-35, and accompanying exhibits; (2) the Declaration of Marc Seltzer (Docket No. 3563-7) ¶¶ 34-36, and accompanying exhibits; (3) the Declarations of Plaintiffs' Counsel accompanying Appendix A (Docket Nos. 3563-1 to 3563-7), and accompanying exhibits (collectively, the "Expense Reports").

1366 (N.D. Cal. 1996)).  "The taxation of costs lies within the trial court's

discretion."  In re Media Vision Tech., 913 F. Supp. at 1366 (citation omitted).

B.    Discussion

Specifically, class counsel seek reimbursement for Shared and Held Costs as

defined by the Court's Fee Order (Docket No. 483).  These include costs for, *inter*

*alia*, (1) fees paid to or incurred by experts; (2) computerized research and other

services; (3) court filing and service costs; (4) deposition and court reporter costs;

(5) costs associated with the document depository; (5) printing, copying, and

shipping costs; and (6) travel costs.  (See generally Expense Reports).  Pursuant to

the Settlement Agreement, Toyota does not object to this request.  (Settlement

Agreement § VII.)  The Court has received no specific objections to billed line-

items, although one objector requests that a Special Master review the costs.[18]

(E.g., Objection No. 9.)

The Court has reviewed the Expense Reports, whose detail belies any need

for the appointment of a Special Master.  The Court finds that the requested costs

were reasonable and necessary.  Courts may direct reimbursement for travel costs.

In re Immune Response, 497 F. Supp. 2d at 1177 (citation omitted).  Postage,

telephone, fax, and notice costs, and filing fees and photocopies, also are necessary

---

[18]  The Court finds that the class also was aware of the costs provision in the
Settlement Agreement.  The notice stated that class counsel will request "up to an
additional $27 million in costs and expenses," that Toyota will separately make
any such payment, and that any such payment "will not reduce the value of the
settlement benefits made available to Class Members."  (Short Form Notice ¶ 14.)

costs in complex class action litigation and are recoverable.  Id.  "[C]omputerized legal research 'is an essential tool of a modern efficient law office,'" and the complexity of this case justifies the costs of these services as well.  Id. (quoting Robinson v. Ariyoshi, 703 F. Supp. 1412, 1436 (D. Haw. 1989)).  Mediation costs and contributions to the litigation fund (assessment fees) also are reimbursable.  See id. (citing Lenahan v. Sears, Roebuck & Co., Civ. No. 02-0045, 2006 WL 2085282, at *22 (D.N.J. July 24, 2006) (approving mediation fees reimbursement in common fund case); In re Media Vision Tech., 913 F. Supp. at 1372 (approving assessment fee reimbursement).  In addition, given the complex factual nature of this case and the extensive disputes over liability, the "expert testimony submitted was 'crucial or indispensable' to the litigation at hand" and the ultimate settlement between the parties and therefore should be reimbursed.  Id. at 1366 (quoting United States v. City of Twin Falls, 806 F.2d 862, 864 (9th Cir. 1986)).

C.    Conclusion as to Reimbursement Costs

For the foregoing reasons, the Court tentatively finds that the proposed award of costs is fair, reasonable, and adequate.  However, the Court cannot complete its analysis before final approval of the Settlement Agreement is granted.

IV.    <u>Compensation to Named Plaintiffs and Class Representatives</u>

Plaintiffs and class counsel request that the Court approve the proposed incentive awards to named plaintiffs and class representatives, as provided for in § VII(E) of the Settlement Agreement and detailed in Appendix B (Docket No. 3563-8.)  Plaintiffs believe the awards are justified because of the work provided by these individuals, the burdens borne by them during the litigation, and their efforts on behalf of the class and the general public.  (Motion at 26-27.)  Pursuant to the Settlement Agreement, each individual is to be compensated at a rate of $100 per hour of work, with a minimum award of $2,000.  There are 87 separate proposed awards, totaling $395,270.[19]  (<u>See</u> Appendix B.)  Most compensation awards are for less than $5,000; only six are for $10,000 or more.  (<u>Id.</u>)

Toyota does not object to this request.  The Court has received no objections to any particular incentive award.  The objections more generally are: (1) the notice did not properly disclose the specific amount of each award; (2) the amount of the awards creates a conflict of interest between named plaintiffs and class representatives vis-à-vis the class; and (3) awards are excessive.  (<u>E.g.</u>, Objection No. 46.)  As explained below, the Court finds that these objections lack merit and approves the requested awards.

---

[19]  Each named plaintiff and class representative has submitted a declaration substantiating his or her involvement.  (<u>See</u> Declarations of Class Representatives & Named Plaintiffs ("Incentive Award Declarations"), Docket Nos. 3563-9 to 3563-14.)

A.  <u>Legal Standard</u>

Incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." <u>Rodriguez v. W. Publ'g Corp.</u>, 563 F.3d 948, 958-59 (9th Cir. 2009).  Such payments must be "scrutinize[d] carefully . . . so that they do not undermine the adequacy of the class representatives." <u>Radcliffe v. Experian Info. Solutions, Inc.</u>, — F.3d —, 2013 WL 1831760, at *3 (9th Cir. 2013) (citing <u>Staton</u>, 327 F.3d at 977); <u>Rodriguez</u>, 563 F.3d at 959 ("An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class." (citing <u>Hanlon</u>, 150 F.3d at 1020)).  In evaluating an incentive award, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." <u>Staton</u>, 327 F.3d at 977 (quoting <u>Cook v. Niedert</u>, 142 F.3d 1004, 1016 (7th Cir. 1998)).

B.  <u>Discussion</u>

First, the notice clearly explained that "Class Counsel will ask for payments to each of the Plaintiffs and Class Representatives of $100 per hour, with a minimum of $2,000 award, for their time invested in connection with the Actions." (Short Form Notice ¶ 14.)  The Incentive Award Declarations were filed on April

23, 2013 (before the objection deadline), and detailed the specific amount requested.  Thus, the class was not prejudiced by the lack of specific information in the notice.

Second, there is no evidence or reason to infer that the awards – none of which are excessive – created any conflict of interest between named plaintiffs and class representatives vis-à-vis the class.  In Staton, a settlement would have awarded 29 class representatives up to $50,000 each, with an average award of $30,000 and a total award of $890,000.  327 F.3d at 976-77.  The award was not limited to the amount of hours a class representative worked on the matter.  See id. The Ninth Circuit concluded that the payments undermined the adequacy of the settlement.  Id. at 977-78.  There was insufficient evidence that the class representatives had the strongest claims and were not just people who retained counsel before settlement, and many receiving incentive awards were not essential to the litigation.  Id. at 977.  These issues and the fact that the awards were much larger than the payments to individual class members "eliminate[d] a critical check on the fairness of the settlement for the class as a whole" and created a danger that the representatives were "more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large."  Id.

In Rodriguez, 563 F.3d at 957, retainer agreements required class counsel to request incentive awards that increased on a sliding scale as the class's monetary recovery increased.  The court found that the agreements gave the named plaintiffs no incentive to settle for less than the maximum contemplated relief, and no

incentive to go to trial even if trial was best for the class.  Id. at 959.

Most recently, in Radcliffe, the Ninth Circuit reversed a final approval where the settlement explicitly conditioned the incentive awards on the representatives' support for the settlement and the payments were in a fixed amount ($5000) that significantly exceeded what absent class members could expect to recover (from $26 to $750).  2013 WL 1831760, at *5.  These shortcomings "fatally alter[ed] the calculus for the class representatives, pushing them to be 'more concerned with maximizing [their own gain] than with judging the adequacy of the settlement as it applies to class members at large.'"  Id. (quoting Staton, 327 F.3d at 977).

The Court has reviewed each Incentive Award Declaration and finds that the specific concerns in Staton, Rodriguez, and Radcliffe are not present here.  No one disputes that the individuals effectively and honestly fulfilled their obligations and contributed to the Settlement Agreement.  This litigation involved extensive risks, and each individual spent a significant amount of time reviewing the complaint, conferring with counsel, reviewing communications, responding to document requests and interrogatories, attending depositions, and discussing the proposed settlement, among other things.  (See generally Incentive Payment Declarations.) Those seeking greater awards substantiate their greater involvement, such as attending depositions or having their vehicles inspected.  (E.g., Incentive Award Declaration of Dale Baldisseri, Appendix B, Ex. 2.)  The largest awards are sought by an automotive sales dealership, a rental car business, and a residual value insurer and lease maturity vehicle liquidator.  (See Incentive Award Declaration of

Green Spot Motors Co., Appendix B, Ex. 18 (assisted experts to evaluate claims and damages); Incentive Award Declaration of Deluxe Holdings, Inc., Appendix B, Ex. 19 (made fleets available for inspection and assisted experts); Incentive Award Declaration of Auto Lenders Liquidation Center, Inc., Appendix B, Ex. 20 (investigated unintended acceleration in company's subject vehicles).)  It should not be surprising that efforts of these commercial entities were more extensive than those of consumers.

Furthermore, there is no evidence that named plaintiffs and class representatives entered into pre-settlement retainer agreements with their counsel such that their actions and decisions on behalf of the class were skewed in favor of settlement rather than continued litigation.  There is no evidence that the incentive awards are conditioned on support for the Settlement or that any individual was threatened with no award if she opposed the Settlement.  (See Berman Decl. ¶ 136.)  Even though named plaintiffs and class representatives will receive monetary awards greater than other members of the class, that is not in itself unreasonable, and the total value of the award here – $395,270 – is minuscule compared to the overall value of the Settlement.  In addition, the amount of any award over $2,000 is conditioned expressly on the time each individual has expended.  There is no other differential treatment.  Thus, there are no skewed incentives like in Staton, where 29 people were to receive $890,000 in incentive awards.

The requested incentive awards also are typical if not lower than those in comparable litigation.  See, e.g., In re U.S. Bancorp Litig., 291 F.3d 1035, 1038

(8th Cir. 2002) (approving $2,000 incentive awards to five named plaintiffs out of a class potentially numbering more than 4 million in a settlement of $3 million); In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig., 280 F.R.D. 364, 383 (N.D. Ill. 2011) (awarding $25,000 in the aggregate for five class representatives and noting that "an empirical study of incentive awards to class action plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80"); In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., 553 F. Supp. 2d 442, 489-90 (E.D. Pa. 2008) (granting over thirty named plaintiffs $10,000 each in incentive award following $6.4 billion settlement agreement); Ingram v. Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving service awards of $300,000 to named plaintiffs for the services provided to the class by responding to discovery, participating in the mediation process, and taking the risk of stepping forward on behalf of the class, where each class member's recovery would average approximately $38,000). The Court therefore finds that the use of a per-hour approach to the award has not created excessive awards for any individual.

In short, nothing indicates that the proposed incentive payments "removed a critical check on the fairness of the class-action settlement, which rests on the unbiased judgment of class representatives similarly situated to absent class members." Radcliffe, 2012 WL 1831760, at *5. The Court finds no structural deficiencies in the global compromise as a result of these payments. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 627 (1997) ("The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate

1    representation.")

2

3          C.      <u>Conclusion as to Compensation to Named Plaintiffs and Class</u>

4                 <u>Representatives</u>

5

6          For the foregoing reasons, the Court tentatively finds that the proposed

7    award of compensation is fair, reasonable, and adequate.  However, the Court

8    cannot complete its analysis before final approval of the Settlement Agreement is

9    granted.

10

11   V.      <u>Conclusion</u>

12

13         For the foregoing reasons, the Court tentatively finds that the proposed

14   award of fees, costs, and compensation is fair, reasonable, and adequate.  The

15   Court will complete its analysis upon granting final approval of the Settlement

16   Agreement.  Accordingly, the Court holds in abeyance the Motion for an Award of

17   Attorneys' Fees, Reimbursement of Expenses, and Compensation to Named

18   Plaintiffs.

19

20         **IT IS SO ORDERED.**

21

22   DATED:     June 17, 2013

23                     _____

24                     JAMES V. SELNA
                  UNITED STATES DISTRICT JUDGE

25