UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:  **[IN CHAMBERS] Order Regarding Motion for Summary Judgment [69, 6191], Sanctions [72, 6194]**

Before the Court are two motions: Defendant Toyota Motor Corporation's ("Toyota") motion for summary judgment, (Mot., Dkt. Nos. 69, 6191), and sanctions for spoliation of evidence, (Sanctions Mot., Dkt. Nos. 72, 6194). Plaintiff Patricia Scott ("Scott") filed an omnibus opposition. (Opp'n, Dkt. No. 79.) Toyota filed a reply to both motions. (Reply, Dkt. No. 81; Sanctions Reply, Dkt. No. 82.) The parties appeared for oral argument on September 5, 2025.

The Court requested for additional briefing on the motion for sanctions. Scott filed her declaration on September 16, 2025, (Declaration of Joseph A. Morris ("Morris Decl."), Dkt. No. 86) and Toyota responded on September 23, 2025, (Response, Dkt. No. 87).

For the following reasons, the Court makes the following rulings:
- **GRANTS** the motion for summary judgment (Dkt. Nos. 69, 6191) and
- **GRANTS** the motion for sanctions (Dkt. Nos. 72, 6194).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

## I. MOTION FOR SUMMARY JUDGMENT

### A. Background

The following facts are taken from Toyota's Statement of Genuine Disputes of Material Fact ("SGD"). (SGD, Dkt. No. 70.)

Scott purchased a new Prius ("Vehicle") on April 1, 2004. (Id. ¶ 6.) She regularly drove the Prius for 7 years, from April 1, 2004, to December 19, 2011. (Id. ¶ 7.) On December 19, 2011, Scott and her daughter-in-law were driving to the downtown Chicago court for a hearing regarding a landlord-tenant issue, but were running late due to traffic. (Id. ¶¶ 9–10.) When she drove into the parking garage at five to ten miles per hour, her car suddenly accelerated. (Id. ¶ 14.) The car accelerated to approximately 90 miles per hour, hit the cables, rebounded, and crashed into the cables a second time, at which point the engine died. (Id. ¶ 14; Dkt. No 69-1, Ex. 1 ("Scott Dep."), 119–120.)

Scott first went to court for her 9AM hearing, then returned to the parking garage at 10:30 AM, at which point they called the police. (SGD ¶ 17.) The police arrived and took pictures, but there are no photos of the Vehicle at its final resting spot after the incident. (Id. ¶ 18.) Elite Auto Body then towed the Vehicle and stored it from December 19, 2011 to January 30, 2013. (Id. ¶ 19.) While it was in storage, on December 26, 2011, Toyota's technician went to inspect the Vehicle, but did not find a manufacturing or design defect to result in an unintended acceleration. (Id. ¶ 20.) In January 2013, Scott subsequently moved the car to her garage. (Id. ¶¶ 19, 21.) She did not obtain a separate expert to inspect the vehicle. (Id. ¶ 25.) After she filed her complaint, and at her counsel's advisement, she sold her vehicle to a local scrap yard. (Id. ¶ 24.)

On December 13, 2013, Scott filed a complaint against Toyota in the Northern District of Illinois. (Dkt. No. 1.) She then filed her First Amended Complaint ("FAC") on April 30, 2014. (FAC, Dkt. No. 9.) Her FAC brings multiple causes of action, including personal injury, motor vehicle product liability, strict liability, negligence, conspiracy to conceal safety defects in the subject vehicle from Scott, fraud, misrepresentation, and racketeer influenced and corrupt organizations ("RICO"). (Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
|---|---|---|---|

| Title | Patricia Scott v. Toyota Motor Corporation et al |
|---|---|

¶ 12.)

On July 9, 2015, the Judicial Panel on Multi-district Litigation ordered that the case be transferred to Honorable James V. Selna in the Central District of California. (Dkt. No. 30.) The Court then entered an order establishing the intensive settlement process for all participants in the MDL. (Dkt. Nos. 4490, 4939, Case No. 8:10-ml-02151-JVS-FMO.) The parties have been in mediation since 2015, but in July 2024, the settlement special master informed the Court that the case could not be resolved by settlement. (Dkt. No. 53.) On July 7, 2025, Toyota filed this motion for summary judgment. (See Mot.)

  B. Legal Standard

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim. Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . ." (internal quotation marks omitted)).

Facts are "material" if they are necessary to the proof or defense of a claim and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine if a dispute about a material fact is "genuine," the trial court must not weigh the evidence and instead must draw all reasonable inferences in the nonmoving party's favor. Tolan v. Cotton, 572 U.S. 650, 655–59 (2014) (per curiam). The nonmoving party cannot manufacture a "genuine dispute" by relying on allegations in the pleadings. Anderson, 477 U.S. at 251; Oracle Am., Inc. v. Hewlett Packard Enter. Co., 971 F.3d 1042, 1049 (9th Cir. 2020).

A trial court may not resolve issues of credibility to determine whether a fact is "genuinely disputed." Tolan, 572 U.S. at 658–59. To do so is to improperly weigh the evidence. Id. A court may discount uncorroborated, self-serving testimony where "it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

states only conclusions and not facts." Nigro v. Sears, Roebuck & Co., 784 F.3d 495, 497–98 (9th Cir. 2015). However, a court may not discount "self-serving" testimony that includes contrary factual assertions and requires the observation of a witness's demeanor to assess credibility. See Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017). Furthermore, an undisputed fact may support several reasonable inferences, but a trial judge must resolve those differing inferences in favor of the nonmoving party. Hunt v. Cromartie, 526 U.S. 541 (1999). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.[1]

The moving party has the initial burden of establishing the absence of a material fact for trial. Id. at 256. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)][2] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. To defeat summary judgment, the nonmoving party who bears the burden at trial must present more than a "mere scintilla" of "affirmative evidence." Galen v. Cnty. of L.A., 477 F.3d 652, 658 (9th Cir. 2007) (citing Anderson, 477 U.S. at 248). Furthermore, the nonmoving party "must direct the court's attention to specific, triable facts. General references without pages or line numbers are not sufficiently specific." S. Cal. Gas Co. v. City of

---

[1] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." L.R. 56-4.

[2] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'" Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003) (internal citations omitted).[3] Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

    *B.    Discussion*

As a preliminary matter, Scott did not follow the Local Rules and file her separate Statement of Genuine Disputes, thereby burdening this Court to determine which material facts are, in fact, disputed. In her opposition, she did not dispute the factual background regarding the incident, but merely stated that "to a point the material facts are undisputed." (Opp'n at 2.) The Court may "consider a fact as undisputed for purposes of the motion when response or reply requirements are not satisfied." Fed. R. Civ. P. 56, subdivision (e)(2). Hence, the facts in Toyota's SGD are deemed undisputed. (SGD, Dkt. No. 70.)

    1.    <u>Product Liability Claim</u>

Scott's FAC brings multiple causes of action, including personal injury, motor vehicle product liability, strict liability, negligence, conspiracy to conceal safety defects in the subject vehicle from Scott, fraud, misrepresentation, and RICO. (FAC ¶ 12.) While the FAC fails to elaborate on all claims, it separately addresses only two specific causes of action: common law conspiracy and RICO. (<u>See</u> FAC, 5–8.) Both claims rest on Scott's claim that there is a manufacturing defect in her vehicle. (<u>Id.</u> ¶ 10.)

To succeed on a strict products liability claim for a manufacturing defect[4] under

---

[3] Each fact in both the Statement of Uncontroverted Facts and the Statement of Genuine Disputes "must be numbered and must be supported by pinpoint citations (including page and line numbers, if available) to evidence in the record." L.R. 56-1, 2. "The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced in the Statement of Uncontroverted Facts, the Statement of Genuine Disputes, and the Response to Statement of Genuine Disputes." L.R. 56-4.

[4] It is unclear from the FAC whether Scott is bringing a claim for manufacturing or design defect. The Court relies on the statement that "Toyota manufactured the defective subject vehicle." (FAC ¶ 10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

Illinois law,[5] a plaintiff must establish that (1) the injury complained of resulted from (2) a condition of the product, (3) that the condition was unreasonably dangerous, and (4) that it existed at the time the product left the manufacturer's control. Mikolajczyk v. Ford Motor Co., 231 Ill. 2d 516, 525 (2008); Sollami v. Eaton, 201 Ill.2d 1, 7 (2002).

Toyota argues that this case cannot survive summary judgment on two grounds: Scott failed to designate an expert to establish that the manufacturing defect caused the unintended acceleration and the Vehicle is unavailable, so there is no evidence that it was in the same condition at the time of the crash as when it left the manufacturer's control. (Mot. at 6–12.)

As to the first argument, Toyota contends that proving unintended acceleration requires specialized knowledge because it may result from "various factors beyond a layperson's knowledge, including a vehicle's brake system, throttle applications, and braking and acceleration performance." (Mot. at 9.) Toyota is correct that products liability actions often require specialized knowledge. See Baltus v. Weaver Div. of Kidde & Co., 199 Ill. App. 3d 821, 834 (1990); see also Pease v. Ace Hardware Home Center,147 Ill.App.3d 546, 101 (1986); Sutkowski v. Universal Marion Corp. 5 Ill.App.3d 313, 281 (1972). Since the FAC specifically alleges that either "sticky pedal" or "floor mat entrapment" caused the unintended acceleration, (FAC ¶ 7), the Court finds the case will likely require an expert opinion to resolve whether they are viable theories.

However, Scott responds that under Illinois law, plaintiffs need not bring an expert witness to establish a products liability claim. She argues that plaintiffs can "create an inference that a product was defective by . . . *circumstantial evidence* that: (1) there was no abnormal use of the product; (2) that there was no reasonable secondary cause of the injury; and (3) that the product failed to perform in the manner reasonably to be expected in light of its nature and intended function." (Opp'n at 3 (citing Doyle v. White Metal

---

[5]In an MDL, federal courts apply "the same substantive legal standards, if not always the same interpretation" as the transferor court. In re Korean Air Lines Co., Ltd., 642 F.3d 685, 699 n.12 (9th Cir. 2011) (collecting cases); see Piltch v. Ford Motor Co., 778 F.3d 628, 632 (7th Cir. 2015). This action was filed in the Northern District of Illinois (dkt. no. 1) and both parties agree that Illinois law applies to the product liability claim. (Mot. at 3; Opp'n at 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
|---|---|---|---|

| Title | Patricia Scott v. Toyota Motor Corporation et al | | |
|---|---|---|---|

Rolling & Stamping Corp., 249 Ill. App. 3d 370, 377 (1993) (emphasis added).)

Scott relies heavily on two Illinois cases, Tweedy v. Wright Ford Sales and Bensenberg v. FCA US LLC. (See Opp'n at 4–6.) In Tweedy, the plaintiff brought a strict liability action regarding a brake failure and the defendant argued that the plaintiff had offered no expert testimony concerning the specific defect in the automobile's brake system. 64 Ill. 2d 570, 572 (1976). The Illinois Supreme Court held that a plaintiff may make a prima facie showing that a "defect existed when it left the manufacturer's control [] by[] absence of abnormal use or reasonable secondary causes the product failed to perform in the manner reasonably to be expected in light of (its) nature and intended function." Id. at 574 (citations and quotations omitted).

In Brensenberg, which involved a defective airbag system in a Chrysler, the Seventh Circuit clarified that Tweedy applies to non-specific, rather than specific defect claims. 31 F.4th 529, 532 (7th Cir. 2022). It held that post Tweedy, "Illinois recognizes a claim for non-specific defect, which, in the appropriate case, relieves the plaintiff of the obligation to identify a particular defect in the product to make a prima facie case." Id. at 536 (collecting cases on no-specific defect claims). For such non-specific defect claims, it held that a plaintiff may provide circumstantial evidence that the product failed to perform as expected despite being used normally and no reasonable secondary causes of failure. Id.

Here, both the facts and the law are distinguishable. As to the law, both Tweedy and Bensenberg addressed cases where the plaintiff brought a non-specific defect. As Toyota argues and as Scott conceded during oral argument, that is not the case here. The FAC clearly sets forth two specific theories which could have resulted in the unintended acceleration of her vehicle: sticky pedal and floor mat entrapment. (FAC ¶ 7.)[6] Toyota

---

[6]Scott argued for the first time during oral argument that her FAC bootstrapped the facts in the Department of Justice's ("DOJ") letter of deferred prosecution, including the two safety issues that Toyota agreed not to deny. Indeed, the DOJ letter is attached to her FAC and it states that "Toyota admits and stipulates that the facts set forth in the Statement of Facts . . . and incorporated herein, are true and accurate." (FAC, Ex. 1, Dkt. No. 9-1.) However, she took no effort to allege or prove that the two defects apply to her to Prius. Toyota on the other hand does not dispute that these defects were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
|---|---|---|---|

| Title | Patricia Scott v. Toyota Motor Corporation et al | | |
|---|---|---|---|

presents evidence that neither can be the cause of the acceleration. As to the sticky pedal condition, Toyota found that it was a subject of its Safety Recall AOA, but the recall did not apply to 2004 Priuses. (SGD ¶ 27.) For the floor entrapment condition, Scott received service for the floor mat interference issue when the Vehicle was subject to recall 90L. (Id. ¶¶ 28–29.) Moreover, at the time of the accident, there were no floor mats inside the Vehicle to cause a floor mat entrapment issue. (Id. ¶ 30.) Scott does not dispute these facts.

Thus, if Scott is bringing a defect-specific products liability claim, Scott must show that the defect existed at the time the product left Toyota's control in 2004. However, she no longer has this Vehicle for the parties to examine, and provides no other evidence to satisfy this element. On the other hand, Toyota provided excerpts of Scott's deposition, where she testified that she used the Vehicle for seven years, had it serviced multiple times, then sold it after filing her complaint without retaining an expert to inspect the Vehicle. (SGD ¶¶ 7–8, 23–24, 31.) Whether the Vehicle was in the same condition at the time of the crash as when it left the manufacturer's control is a material fact because it is a necessary element of a manufacturing defect claim. Scott cannot manufacture a "genuine dispute" by relying on allegations in the pleadings, Anderson, 477 U.S. at 251, and thus, Scott fails to provide this Court with a shred of evidence for it to draw any reasonable inferences in its favor. Tolan, 572 U.S. at 655–59.

Even if the Court were to proceed with Scott's case on a non-specific defect theory[7], Bensenberg suggests the opposite—to bring a non-specific defect is "not to say that expert testimony was not required to support [a plaintiff's] theory of the case." 31

---

issues in their vehicles, but that they cannot exist in Scott's Prius. The Court additionally notes that new issues raised for the first time at a hearing need not be addressed. See Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc., 2018 WL 6038277, at *6 n.4 (C.D. Cal. Apr. 24, 2018); Ramirez v. Salvation Army, 2006 WL 1867722, at *9 (N.D. Cal. July 6, 2006).

[7]Scott should not be able to raise a new theory for the first time in a motion for summary judgment. See Pickern v. Pier 1 Imps. (U.S.), Inc., 457 F.3d 963, 968–69 (9th Cir. 2006) (affirming district court's refusal to consider the plaintiff's new theory raised for the first time in a motion for summary judgment motion where the allegations were not included in the amended complaint); Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) (same).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
|---|---|---|---|

| Title | Patricia Scott v. Toyota Motor Corporation et al | | |
|---|---|---|---|

F.4th at 539. In Bensenberg, the plaintiff presented a non-specific malfunction theory, and both parties retained an expert to provide circumstantial evidence of the vehicle's speed based on his expertise in accident reconstruction, information from the vehicle's EDR, witnesses, and damage to the vehicle. Id. Similarly, in Tweedy, the plaintiff still provided "evidence [] that the brakes of an automobile driven approximately 7,500 miles, inspected by [an expert] prior to delivery, inspected again at 6,000 miles, and subjected to no abnormal use prior to the occurrence failed to function in the manner reasonably to be expected." 64 Ill. 2d at 574. Additionally, the plaintiff demonstrated that despite the car being a relatively new vehicle,"(t)he emergency brake was jammed all the way into the carpet, and the steering wheel was broke, the dash crushed in, and the floor was shoved up to the bottom of the power brake" after the accident. Id. at 572 (alterations in original).

Here, contrarily, Scott did not disclose an expert or provide similar circumstantial evidence that a defect existed when it left the manufacturer's control or that there are no reasonable secondary causes. Bensenberg, 31 F.4th at 574. At this stage, Scott relies on pictures of her car post-accident, allegations in the complaint, and an existence of a potential witness, Scott's daughter-in-law (without citing to specific parts of the witness's deposition as evidence in her brief). Scott merely claims that it is a disputed fact whether her foot was on the accelerator at the time of the accident and that is a fact to be determined by the jury. (Opp'n at 8.) However, this argument is a non sequitur. Though this may be a disputed fact, this is not the dispositive issue. Scott fails to provide the Court with any similar circumstantial evidence as in Tweedy that she properly used the car or by excluding other reasonable secondary causes that could have led to an unintended acceleration. See Tweedy, 64 Ill. 2d at 574; Doyle, 249 Ill. App. 3d at 377. She merely claims that she has used the car in a normal manner. (Opp'n at 7.) On the other hand, Toyota argues that the NHTSA found that pedal misapplication is often the cause of unintended acceleration, and Scott has failed to demonstrate that this cannot be an alternative cause for her accident. (Reply at 9.) At the hearing, Scott consistently claimed that there is no evidence that she used the Vehicle in a reckless manner. But the burden is on Scott after the moving party establishes that there is an absence of material fact. She must present evidence disputing the material fact. See Galen, 477 F.3d at 658.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

    2.    Other Claims

Finally, the Court also notes that Scott brings various other claims, including common law conspiracy and RICO claims. However, these claims also cannot withstand a motion for summary judgment. For instance, regarding the RICO claims, the FAC simply alleges that Toyota violated " RICO 18 US Code §§1961–1968."[8] (FAC ¶ 34.) As an initial matter, the FAC fails to state which RICO statute it violated. For instance, a claim for a violation of RICO under Section 1962(c) is substantively different from a claim for conspiracy to violate RICO under Section 1962(d). If Scott intended to bring a civil RICO claim under 18 U.S.C. § 1964(c), she must demonstrate the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" Living Designs, Inc. v. E.I. Dupont de September 5, 2025Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation omitted). "'[R]acketeering activity' is any act indictable under several provisions of Title 18 of the United States Code . . . ." Turner v. Cook, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing 18 U.S.C. § 1961(1)). Scott again fails to state even which "racketeering activity" under the RICO statute was committed by Toyota. With respect to this motion, Scott does not provide this Court with any facts or evidence aside from her allegations in the FAC regarding these elements, less mention the conspiracy and RICO causes of action in her opposition.

    C.    Conclusion

Accordingly, the Court **GRANTS** Toyota's motion for summary judgment.

---

    [8]Such conclusory claims would not have withstood a motion to dismiss. Further, the Court notes that the FAC fails to come close to the 9(b) standard, which requires that "that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

### III. MOTION FOR SANCTIONS

Toyota also seeks dismissal of this action, or in the alternative, preclusion of Scott's evidence regarding the condition of the Vehicle in its motion for sanctions for spoliation of evidence. (Sanctions Mot. at 2.)

*A.  Legal Standard*

In a diversity case, state law governs the issue of spoliation. Allstate Ins. Co. v. Sunbeam Corp., 53 F.3d 804, 806 (7th Cir. 1995). Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case. Crabtree v. Nat'l Steel Corp., 261 F.3d 715, 721 (7th Cir.2001).

To impose sanction for spoliation, the court must find that: "(1) there was a duty to preserve the specific documents and/or evidence; (2) the duty was breached; (3) the other party was harmed by the breach; and (4) the breach was caused by the breaching party's willfulness, bad faith, or fault." Cohn v. Guaranteed Rate, Inc., 318 F.R.D. 350, 354 (N.D. Ill. 2016) (citing Jones v. Bremen High Sch., No. 08-cv-3548, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010)). "At the latest, this duty attaches when the plaintiff informs the defendant of her potential claim." Id. (citation and quotations omitted). Thus, under Illinois law, there is a duty to preserve evidence before litigation commences. Sunbeam Corp., 53 F.3d at 806. The moving party bears the burden to show spoliation by a preponderance of the evidence. Ramirez v. T&H Lemont, Inc., 845 F.3d 772, 781 (7th Cir. 2016)

Upon a finding of spoliation, the court has discretion to employ a variety of sanctions, including "awarding reasonable expenses, attorney fees, barring evidence or arguments, permitting adverse inferences, and dismissing claims or entering default judgment." Bryant v. Gardner, 587 F.Supp.2d 951, 967-68 (N.D. Ill. Nov. 21, 2008) (citation omitted); Cyntegra, Inc. v. Idexx Laboratories, Inc., 2007 U.S. Dist. LEXIS 97417, at *4 (C.D. Cal. Sept. 21, 2007) (citing Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.3d 363, 367 (9th Cir. 1992); see In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006); see also Pension Comm. of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

<u>Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC</u>, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010) ("The choices include—from least harsh to most harsh—further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal (terminating sanctions).").

  *B.*  *Discussion*

  First, there is a duty to preserve evidence where one "has control and reasonably knows or can foresee [it] would be material—and thus relevant—to a potential legal action." <u>Domanus v. Lewicki</u>, 284 F.R.D. 379, 386–87 (N.D. Ill. 2012). Although Scott claims the general rule is that there is no duty to preserve evidence in Illinois, Scott misconstrues the law. (Opp'n at 9–10 (citing <u>Martin v. Keeley & Sons, Inc.</u>, 2012 IL 113270, ¶ 27, 979 N.E.2d 22, 28).) The court in <u>Martin</u> cited to <u>Boyd v. Travelers Insurance Co.</u>, 166 Ill.2d 188 (1995), holding that the duty arises where one "should have foreseen that the evidence was material to a potential civil action." 979 N.E.2d at 28. Illinois courts have found that "[t]he preservation of an allegedly defective product is of the utmost importance in both proving and defending against a strict liability action." <u>Kambylis v. Ford Motor Co.</u>, 338 Ill. App. 3d 788, 793, 788 N.E.2d 1, 5 (2003) (citation omitted and alterations in original). Such is the case here.

  Scott had a duty to preserve the Vehicle when she informed Toyota of her intent to file a complaint and could reasonably foresee litigation. See <u>Cohn</u>, 318 F.R.D. at 354. The Vehicle is material to her product liability and negligence claim, and central to all her other claims. (<u>See</u> FAC.) Scott also does not dispute that she knew or could foresee that her Vehicle would be relevant to this suit.

  Second, she breached her duty when she sold the Vehicle, a key evidence in this action, after she filed a complaint. She contends that she "did not obstruct Toyota's inspection of the car in any way." (Opp'n at 9.) At the hearing, Scott argued for the first time that she, in fact, invited Toyota to take the car during the settlement process. The Court found no evidence of this in the record and invited both parties to submit additional briefing on the matter. A closer look at the supplemental briefs reveals that Scott's counsel, Joseph Morris, did propose settling Scott's property damage claim by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

having Toyota "buy[] the wreckage of Plaintiff's car," which Toyota did not accept. (Morris Decl. ¶¶ 4–5.) However, as Toyota points out, it is their routine practice to take possession of any vehicle subject to a product liability claim settlement. (Response at 5; Dkt. No. 87-1, Ex. B ("Bush Decl."), ¶ 4.) This settlement proposal did not put Toyota on notice that the vehicle would be disposed of if they failed to accept, and Scott provides no evidence that she gave notice to Toyota prior to disposing of her vehicle outside of the settlement process. (See Morris Decl.) This unaccepted settlement proposal did not relieve Scott of her duty to preserve the Vehicle. See Cohn, 318 F.R.D. at 354.

She further argues that Toyota had previously inspected the car in December 2011 and is now seeking to re-inspect the Vehicle after 11 years. (Opp'n at 8–9.) However, the Court remains unconvinced. Inspection of the Vehicle in 2011, which occurred prior to commencement of this action, does not obviate her duty to preserve vital evidence for her own case. Toyota's inspector would not have known what to look for prior to being on notice what Toyota was being sued for. Toyota also did not seek further detailed inspection that might go into an expert report as the case was stayed when the Court ordered the parties to participate in the intensive settlement process. (Sanctions Reply at 2–3.) When they could not reach a settlement, Scott should have reasonably foreseen that the case would continue to trial and discovery was inevitable. Not only did she sell the car to a scrap yard with no notice to Toyota, but without hiring her own expert to assess the cause of the unintended acceleration and the state of her Prius. (SGD ¶¶ 24–25); see O'Connor v. Ford Motor Co., 683 F. Supp. 3d 793, 797 (N.D. Ill. 2023). Thus, the Court finds that she breached her duty by selling her Vehicle.

Third, Toyota convincingly argues that it has been prejudiced because Scott's disposal of the Vehicle limited Toyota's ability to defend itself against Scott's claims. (Sanctions Mot. at 9–10.) There is a handful of Illinois cases where the courts dismissed actions where plaintiffs voluntarily destroyed crucial evidence. See e.g., Graves v. Daley, 172 Ill. App. 3d 35, 38 (1988) (dismissing the case where the plaintiffs brought a claim for a defective furnace but destroyed it, and collecting similar cases); Am. Fam. Ins. Co. v. Vill. Pontiac-GMC, Inc., 223 Ill. App. 3d 624, 627 (1992) (granting sanctions where plaintiff intentionally destroyed the evidence although they "should have known

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
|---|---|---|---|
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

that potential defendants to a case alleging negligence and product liability would undoubtedly want to inspect, as plaintiffs' experts had done, and perhaps test the object alleged to have caused the damage.") Here, there is no alternative evidence other than the photographs taken by Elite Auto Body after the accident and Toyota's inspection prior to commencement of this case. Scott does not argue that this inspection was sufficient. And there is no doubt that Scott lost the central piece of evidence that would have not only helped Scott establish her own case, but also Toyota's defenses.

The last element justifying spoliation sanctions requires that the "noncomplying party acted *either* with willfulness, bad faith *or* fault." Marrocco, 966 F.2d at 224 (citation omitted and emphasis in original). "[E]xtraordinarily poor judgment" can constitute fault. Id. at 224. Similar to O'Connor v. Ford Motor, the Court finds that Scott's disposal of her Vehicle without notice to Toyota, particularly "in the context of active litigation centrally involving the vehicle," qualifies as willful spoliation. 683 F. Supp. 3d at 798; see also Leon v. IDX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." (citation and quotation marks omitted)).

The Court must now determine what sanction is appropriate. While dismissal is a "harsh sanction," it is warranted here. Marrocco, 966 F.2d at 224. Lesser sanctions cannot readily remedy the prejudice suffered by Toyota. See O'Connor, 683 F. Supp. 3d at 798. Moreover, preclusion of any evidence regarding the condition of the Vehicle would be functionally equivalent to dismissal as the Vehicle is central to this case. Thus, the Court finds that dismissal is an appropriate sanction.

  C. Conclusion

The Court **GRANTS** the motion for sanctions and dismisses the case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:15-cv-01088-JVS-E<br>8:10-ml-02151-JVS-FMO | Date | September 26, 2025 |
|---|---|---|---|
| Title | Patricia Scott v. Toyota Motor Corporation et al | | |

### IV. CONCLUSION

For the foregoing reasons, the Court makes the following rulings:
- **GRANTS** the motion for summary judgment (Dkt. No. 69, 6191) and
- **GRANTS** the motion for sanctions, dismissing this case (Dkt. No. 72, 6194).

**IT IS SO ORDERED.**